EXHIBIT C

## Internal Resource Response

| | | | | | |
|---|---|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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 | **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE OF CORNE | **Account #** | NYK0001972 | **Incurred Date** | 06/08/2000 |
| **Claim Manager** | Mark Sodders | **Incident #** | 513554 | **Claim Eff Dt-Status** | 09/28/2005 - Closed |

***Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits***

**Referral Type** Vocational

**Role** Vocational Rehab Counselor **Name** Ginny Schmidt ☐ New Nurse/VRC of Record

**Check all that apply for Medical or Vocational**

- ☐ Symptoms insufficient to support diagnosis
- ☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis
- ☐ Occupational requirements assessment is needed
- ☐ Determine Functional Capacity
- ☐ Projected return to work date is unclear or undetermined
- ☐ Return to Work Assistance
- ☑ Internal Transferable Skills Assessment
- ☐ Claim Complexity Changed
- ☐ Other **Specify Other**

**Comments**

08/08/05 referring for TSA based on L/R provided by the 07/26/05 FCE. Please note that there is no A/O date. However, Disability is defined as either unable to perform all the material duties of the regular occupation, or an inability to earn more than 80% of the Indexed BME.

As such, if cx's own occ is not identified on the TSA, then the earnings requirement is $5,172.32 monthly.

MDSodders CM

**Title** TSA Results

**Referral Accepted** Yes **Date** 08/09/2005

**Comments**

**Investigation Result**

The TSA has been performed using the sedentary restrictions from the FCE done on 7/26/05 on the claimant, along with his work history of being a Wage and Salary Manager twice in his history, and as an Asst. Director of Human Resources, having a Bachelors Degree in Business Administration/Psychology, and having taken 1 year of classwork in Graduate School for MIS, and the wage requirement of $5,172.63 a month. Using those criteria, several jobs were indicated for his current abilities, which should allow alternation of physical positions throughout the workday, at his will, including his own job as a Salary and Wages Manager Compensation Manager for the Policyholder. Along with this position, several others were indicated, including management in data processing and computer operations, employee welfare and mediation and credit analysis. See full report in the file. Returning file and report to the CM for review.

**Last Changed User** Ginny Schmidt **Last Changed Date** 08/09/2005 11:20 AM

**Status:** Completed **Assigned To:** Ginny Schmidt **Created:** 08/08/2005 09:15 AM

## Internal Resource Referral

| | | | | | |
|---|---|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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 | **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE OF CORNE | **Account #** | NYK0001972 | **Incurred Date** | 06/06/2000 |
| **Claim Manager** | Mark Sodders | **Incident #** | 513554 | **Claim Eff DI-Status** | 09/28/2005 - Closed |

** Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

**Title** TSA

**Referral Type** Vocational

**Role** Vocational Rehab Counselor **Name** Ginny Schmidt ☐ **New Nurse/VRC of Record**

**Check all that apply for Medical or Vocational**

☐ **Symptoms insufficient to support diagnosis**

☐ **Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis**

☐ **Occupational requirements assessment is needed**

☐ **Determine Functional Capacity**

☐ **Projected return to work date is unclear or undetermined**

☐ **Return to Work Assistance**

☑ **Internal Transferable Skills Assessment**

☐ **Claim Complexity Changed**

☐ **Other** **Specify Other**

**Comments**

08/08/05 referring for TSA based on L/R provided by the 07/26/05 FCE. Please note that there is no A/O date. However, Disability is defined as either unable to perform all the material duties of the regular occupation, or an inability to earn more than 80% of the Indexed BME.

As such, if cx's own occ is not identified on the TSA, then the earnings requirement is $5,172.32 monthly.

MDSodders CM

**Last Changed User** Mark Sodders **Last Changed Date** 08/08/2005 09:15 AM

**Status:** Completed **Assigned To:** Mark Sodders **Created:** 08/08/2005 09:15 AM

## Internal Resource Response

| | | | | | |
|---|---|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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 | **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE OF CORNE | **Account #** | NYK0001972 | **Incurred Date** | 06/06/2000 |
| **Claim Manager** | Mark Sodders | **Incident #** | 513554 | **Claim Eff Dt-Status** | 09/28/2005 - Closed |

***Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-BAM/SAM, Overpayment, Settlement, Social Security and Other Benefits***

**Referral Type** Vocational

**Role** Vocational Rehab Counselor **Name** Ginny Schmidt ☐ New Nurse/VRC of Record

**Check all that apply for Medical or Vocational**

- ☐ Symptoms insufficient to support diagnosis
- ☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis
- ☐ Occupational requirements assessment is needed
- ☑ Determine Functional Capacity
- ☐ Projected return to work date is unclear or undetermined
- ☐ Return to Work Assistance
- ☐ Internal Transferable Skills Assessment
- ☐ Claim Complexity Changed
- ☐ Other **Specify Other**

**Comments**

referring for 1-day FCE.
MDsodders CM

**Title** FCE Scheduling

**Referral Accepted** Yes **Date** 06/10/2005

**Comments**

File being given to Tiffany to set up 1 day FCE. GS Appt now set for 7/26/05. GS

**Investigation Result**

The FCE report has been received. The claimant was found to be able to function at the sedentary level of work, for and 8 hour workday, but it would have to be a position in which he would not have to perform any lifting and carrying of more than negligible amounts, and he will need to be able to be able to change positions while sitting approximately every 10-15 minutes. They were unable to complete the dynamic and static lifting tests, the aerobic testing on the treadmill and much of the other testing due to his complaints of pain and needing to lie down to get relief. He was found to be able to perform fine manipulation, handling, reaching, pushing/pulling, climb stairs, sitting, standing and walking all on an occasional basis, and was unable to climb ladders, stoop, kneel, crouch, crawl, or balance, and had the need to use a cane for ambulation. On a constant basis, he is able to see, hear, talk. They felt he gave a maximum effort during testing, due to his increase in respiration and heart rate during the tests. See full report in the file. Returning file and report to the CM for review.

**Last Changed User** Ginny Schmidt **Last Changed Date** 08/05/2005 03:38 PM

**Status:** Completed **Assigned To:** Ginny Schmidt **Created:** 08/09/2005 01:37 PM

## Internal Resource Response

| | | | | | |
|---|---|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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 | **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE OF CORNE | **Account #** | NYK0001972 | **Incurred Date** | 06/08/2000 |
| **Claim Manager** | Mark Sodders | **Incident #** | 513554 | **Claim Eff Dt-Status** | 09/29/2005 - Closed |

***Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits***

**Referral Type** Vocational

**Role** Vocational Rehab Counselor **Name** Holly Jule ☐ New Nurse/VRC of Record

**Check all that apply for Medical or Vocational**

☐ Symptoms insufficient to support diagnosis

☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis

☐ Occupational requirements assessment is needed

☐ Determine Functional Capacity

☐ Projected return to work date is unclear or undetermined

☐ Return to Work Assistance

☑ Internal Transferable Skills Assessment

☐ Claim Complexity Changed

☐ Other **Specify Other**

**Comments**

12/02/04 referring for formal TSA. Exploratory TSA located occs. and need to send results of TSA to AP for comment on cx's abilities.

Wage Requirement is $4,986.57 Monthly.

**Title**

**Referral Accepted** Yes **Date** 12/13/2004

**Comments**

Results of exploratory TSA discussed w/ VRC. Four sedentary occupations, including Cx's own occupation, were agreed as appropriate to send to AP for comment. All meet target wage and all allow for ability to get up and move about, alternate sit, stand and walk at the employee's discretion. It is also noted that cx's job allowed for alternating positions- see job requirements in claim file. HJ

**Investigation Result**

DOT's for the following occupations were selected for the exploratory TSA in order to consult with the AP for comment on Cx's ability to perform them. Personnel Manager, DOT#166.117-018, Employment manager DOT#166.167-030, Employment Agency Manager, DOT#187.167-098 and Department Manager, DOT#189.167-022. Returning file with occupational descriptions to CM. HJ

**Last Changed User** Holly Jule **Last Changed Date** 12/13/2004 03:46 PM

**Status:** Completed **Assigned To:** Holly Jule **Created:** 12/02/2004 09:53 AM

## Internal Resource Response

| | | | | | |
|---|---|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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 | **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE OF CORNE | **Account #** | NYK0001972 | **Incurred Date** | 06/06/2000 |
| **Claim Manager** | Mark Sodders | **Incident #** | 513554 | **Claim Eff Dt-Status** | 09/28/2005 - Closed |

***Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits***

**Referral Type** Vocational

**Role** Vocational Rehab Counselor **Name** Rosemary Jenkins ☐ New Nurse/VRC of Record

**Check all that apply for Medical or Vocational**

- ☐ Symptoms insufficient to support diagnosis
- ☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis
- ☐ Occupational requirements assessment is needed
- ☐ Determine Functional Capacity
- ☐ Projected return to work date is unclear or undetermined
- ☐ Return to Work Assistance
- ☑ Internal Transferable Skills Assessment
- ☐ Claim Complexity Changed
- ☐ Other **Specify Other**

**Comments**

based on 11/03/04 staffing with NCM, need to run exploratory TSA based on AP's PAA dated 10/20/04. Wage requirement is .80 of indexed covered earnings, which totals 4,986.57 monthly, 59,838.84 yearly.

MDSodders CM

**Title**

**Referral Accepted** Yes **Date** 11/18/2004

**Comments**

**Investigation Result**

Exploratory TSA

An exploratory TSA was conducted using the PAA dated 10/20/04 and collective information from cx's DQ & JD. Using the OASYS edition, 9 occ were identified as potential transf skills 4 are within the Professional and Kindred industry 4 within any industry and 1 within the Government industry. The annual wages as per year 2000 labor statistics ranged from $77,000.00 to $123,000.00.

**Last Changed User** Rosemary Jenkins **Last Changed Date** 11/18/2004 06:40 PM

**Status:** Completed **Assigned To:** Rosemary Jenkins **Created:** 11/10/2004 09:12 AM

## Strategy Documentation

**Level of Functional Capacity**

**Restrictions & Limitations**

**Subjective / Objective Findings / Treatment**

**Outstanding Issues and Follow-up Dates**

**Strategy**

11/03/04 staffed claim with NCM. Based on review of current medical, and PAA, run exploratory TSA on L/R provided. Concurrently, send APS to CX for COD, LOV. If TSA positive, send to AP for comments.
MDSodders CM

| **Last Changed User** | Mark Sodders | **Last Changed Date** | 11/09/2004 11:51 AM |
|---|---|---|---|

| **Status:** | Completed | **Assigned To:** | Mark Sodders | **Created:** | 11/09/2004 11:50 AM |
|---|---|---|---|---|---|

Staffing. Cx experiences problems secondary to back and neck pain. A Functional Capacity Evaluation shows an ability to operate at a sedentary level occupation. The Transferable Skills Analysis identifies the capacity to perform own occupation. Claim should be denied, not TD OO.
MDSodders CM

**Internal Resource Response** 08/09/2005 11:20:27 AM glschm Top

Referral Resource Role: Vocational Rehab Counselor

Referral Resource Name: Ginny Schmidt

Initiator Comments

08/08/05 referring for TSA based on L/A provided by the 07/26/05 FCE. Please note that there is no A/O date. However, Disability is defined as either unable to perform all the material duties of the regular occupation, or an inability to earn more than 80% of the Indexed BME.

As such, if cx's own occ is not identified on the TSA, then the earnings requirement is $5,172.32 monthly.

MDSodders CM

Referral Comments

Investigation Result

The TSA has been performed using the sedentary restrictions from the FCE done on 7/26/05 on the claimant, along with his work history of being a Wage and Salary Manager twice in his history, and as an Asst. Director of Human Resources, having a Bachelors Degree in Business Administration/Psychology, and having taken 1 year of classwork in Graduate School for MIS, and the wage requirement of $5,172.63 a month. Using these criteria, several jobs were indicated for his current abilities, which should allow alternation of physical positions throughout the workday, at his will, including his own job as a Salary and Wages Manager Compensation Manager for the Policyholder. Along with this position, several others were indicated, including management in data processing and computer operations, employee welfare and mediation and credit analysis. See full report in the file. Returning file and report to the CM for review.

**Internal Resource Response** 08/05/2005 3:38:57 PM glschm Top

| Referral Resource Role | Vocational Rehab Counselor |
|---|---|
| Referral Resource Name | Ginny Schmidt |

Initiator Comments

referring for 1-day FCE.
MDsodders CM

Referral Comments

File being given to Tiffany to set up 1 day FCE. GS Appt now set for 7/26/05. GS

Investigation Result

The FCE report has been received. The claimant was found to be able to function at the sedentary level of work, for and 8 hour workday, but it would have to be a position in which he would not have to perform any lifting and carrying of more than negligible amounts, and he will need to be able to be able to change positions while sitting approximately every 10-15 minutes. They were unable to complete the dynamic and static lifting tests, the aerobic testing on the treadmill and much of the other testing due to his complaints of pain and needing to lie down to get relief. He was found to be able to perform fine manipulation, handling, reaching, pushing/pulling, climb stairs, sitting, standing and walking all on an occasional basis, and was unable to climb ladders, stoop, kneel, crouch, crawl, or balance, and had the need to use a cane for ambulation. On a constant basis, he is able to see, hear, talk. They felt he gave a maximum effort during testing, due to his increase in respiration and heart rate during the tests. See full report in the file. Returning file and report to the CM for review.

**Claimant Contact** 07/05/2005 2:56:22 PM a56816 Top

Primary Diagnosis/Symptoms/Co-Morbid Conditions

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

Functionality/Job Duties/Set Expectations

06/09/05 called cx at 718-884-2067 to inform of the FCE. Cx stated his understanding
MDSodders CM

**Internal Resource Response** 06/09/2005 8:40:35 AM 591806 Top

| | |
|---|---|
| Referral Resource Role | Associate Medical Director |
| Referral Resource Name | Scott Taylor |

Initiator Comments

From 04/27/05 staffing with AMD. As AP provided L/R's for the DOT's found, and then states cx unable to perform those DOT's, AMD to contact AP to discuss this alleged reversal. Updated O/N from 08/01/04 through present obtained.
Dr. Roach's number is 212-746-8127.
MDsodders CM

Referral Comments

6/3/05 Title Wage & Salary Mgr. Work Demands Any Occupation. Diagnosis Lumbar spinal stenosis cervical DDD. Incur Date 6/6/2000.
PAA said sedentary. TSA showed transferrable skills for 4 occupations. TSA info sent to Dr but he never answered CM so FCE was ordered. Then Dr changed mind & said Cx could not do any of the 4 occupations found. Says Cx can only work if sits w/o frequent standing, & can lay down as needed & ice. Had hip arthroscopy 4/16/03. No ortho notes since 5/03. Last Internal med notes 1/22/04, however DQ says seen 7/20/04. Agree w/ D2D since to information to support L&Rs.
RECORD REVIEW Medical records reviewed include but are not limited to Lumbar MRI. 6/9/2000 moderate to severe L5-S1 spondylosis w/ impingement L L5 nerve root. Progress notes, Dr Keith Roach Internal Medicine, 1/18/02 here for pre-operative evaluation from IM standpoint because to have arthroscopic shoulder surgery. Has had previous rotator cuff repair. PMH severe L5-S1 spinal stenosis. BP 140/104. Impression low risk for planned surgery. Operative report, Michael Alexiades orthopedist, 1/28/02 Right shoulder arthroscopy w/ subacrromial decompression, distal claviculectomy, bursectomy, & lysis of subacromial adhesions. MRI R Hip, 5/23/02 superficial cartilage loss over R joint, acetabular dysplasia, torn hyperplastic degenerated anterior acetabular labrum. Progress notes, Dr Roach, 6/11/02 here for pre-operative evaluation from IM standpoint because to have hip surgery. Old benign tumor of femur compatible w/ chondral lesion. BP 124/84. Still has moderate impingement in shoulder. Impression low risk for planned surgery. Operative report, Michael Alexiades orthopedist, 6/13/02 Left shoulder arthroscopy w/ subacrromial decompression & AC joint resection. Progress notes, Dr Roach, 9/27/02 BP 130/90, Using Vicodin prn. No change in tx. IME, Dr David Trotter orthopedist, 12/10/02 support unable to work normal occupation from 12/1/200 until present. Continued on IRR #2.

Investigation Result

ASSESSMENT Based upon the medical data available at the time of the review, which includes speaking with the attending internist, the L&Rs of no sitting for prolonged periods of time and the requirement that claimant be allowed frequent positional changes including standing and laying down along with ability to apply ice to the back are not supported as evidenced by absence of clinically measurable tests or documented abnormalities in strength or ROM testing. Clinically measurable tests like an FCE might be helpful in determining functional capacities.
Scott C, Taylor, DO

**Internal Resource Response** 08/08/2005 9:40:09 AM b91895 Top

Referral Resource Role: Associate Medical Director

Referral Resource Name: Scott Taylor

Initiator Comments

Insufficient space on IRR #1. Please complete on IRR #2.
Scott C. Taylor, DO

Referral Comments

Continued from IRR #1..........
Operative report, Dr Alexiades, 4/16/03 R hip athroplasty & labrectomy. Cx had inverted labral tear. Anterior & posterior labrum removed in entirety. Progress notes, Dr Roach, 5/21/03 surgery for hip went well. Considering surgery for back. BP 130/90. Progress notes, Dr Roach, 9/22/03 BP 110/80. Given Oxycontin for C5 stenosis. Progress notes, Dr Dempsey Sprinfield Internal Medicine, 1/22/04 remains asymptomatic. No change in proximal femur lesion. RTC 1 year. Progress notes, Dr Roach, 9/10/04 ran out of OxyContin. BP 140/100, 126/96. c/o neck pain & stiffness. Using Lisinopril & Zestril. d/c Zestril. Get x-rays of neck. Cervical X-rays, 9/14/04 DDD with space narrowing & osteophytes at C6-7. L foraminal narrowing secondary to osteophyte formation. Physical Ability Assessment form, Dr. Roach, 10/20/04 Occasional sitting, standing, walking. lift/carry up to 10 pounds, push/pull up to 10 pounds, climbing. Supplementary Claim Disability Benefits Form, Dr Roach, 11/30/04 Class 5 Physical limitations incapable of sedentary activity. Transferable Skills Analysis, 12/2/04 used PAA as basis. Several jobs found. Letter from Dr Roach, 4/19/05 Cxs disability is not able to sit for prolonged periods of time. Unable to sit without frequent positional changes including standing and laying down. He must also be able to ice back. See Provider Contact Task.

Investigation Result

Primary Diagnosis/Symptoms/Co-Morbid Conditions

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

Functionality/Job Duties/Set Expectations

Other Income Benefits

Overall Comments

04/11/05 called cx at 718-884-2067 to inform of the FCE. Cx stated his understanding, but insisted that he would have his doctor respond. Cx asked for the information to be sent to him so he can expedite our request. Informed cx that I will fax the information over and is to the same number.

**Internal Resource Response** **12/13/2004 3:46:33 PM** **hxjule** Top

Referral Resource Role: Vocational Rehab Counselor

Referral Resource Name: Holly Jule

Initiator Comments

12/02/04 referring for formal TSA. Exploratory TSA located occs, and need to send results of TSA to AP for comment on cx's abilities.

Wage Requirement is $4,986.57 Monthly.

Referral Comments

Results of exploratory TSA discussed w/ VRC. Four sedentary occupations, including Cx's own occupation, were agreed as appropriate to send to AP for comment. All meet target wage and all allow for ability to get up and move about, alternate sit, stand and walk at the employee's discretion. It is also noted that cx's job allowed for alternating positions- see job requirements in claim file. HJ

Investigation Result

DOT's for the following occupations were selected for the exploratory TSA in order to consult with the AP for comment on Cx's ability to perform them. Personnel Manager, DOT#166.117-018, Employment manager DOT#166.167-030, Employment Agency Manager, DOT#187.167-098 and Department Manager, DOT#189.167-022. Returning file with occupational descriptions to CM. HJ

**Internal Resource Response** 11/18/2004 6:40:15 PM rxjenk Top

Referral Resource Role: Vocational Rehab Counselor

Referral Resource Name: Rosemary Jenkins

Initiator Comments

based on 11/03/04 staffing with NCM, need to run exploratory TSA based on AP's PAA dated 10/20/04. Wage requirement is .80 of indexed covered earnings, which totals 4,986.57 monthly, 59,838.84 yearly.

MDSodders CM

Referral Comments

Investigation Result

Exploratory TSA

An exploratory TSA was conducted using the PAA dated 10/20/04 and collective information from cx's DQ & JD. Using the OASYS edition, 9 occ were identified as potential transf skills 4 are within the Professional and Kindred industry 4 within any industry and 1 within the Government industry. The annual wages as per year 2000 labor statistics ranged from $77,000.00 to $121,000.00.

**Claim Strategy** 11/09/2004 11:51:09 AM a66816 Top

Claim Status Comments

**Request Sheet**

Date Sent: March 4, 2005

1. Please request the medical records and current tests from the following doctors:

**2nd Request the following**

The January 20, 2005 letter to Dr. Roach asking for a review of the four DOT's.

- Please note that they received the DOT"s in their office as of January 27, 2005 (no need to send the DOT's again, just the 2nd Request Letter and the January 20, 2005 letter).
- Please provide a deadline of March 25, 2005, and in the absence of Dr. Roach's reponse by March 25, 2005, we will assume Dr. Roach is in agreement with his patient's ability to perform the occupations listed in the four DOT's.

From: Mark Sodders x5693

F. 212-746-8127
+ 212-746-2879

**Please refile claim after requesting.**

Folder | Contents | Notes (0/0)

## Folder: Current Case Plan

Logs (0)

Details

| | | | | | |
|---|---|---|---|---|---|
| Name | STEVEN ALFANO | SSN | 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 | DOB | 01/14/1958 |
| Account Name | WEILL MEDICAL COLLEGE | Account # | NYK0001972 | Incurred Date | 06/06/2000 |
| Claim Manager | Mark Sodders | Incident # | 513554 | Claim Eff Dt-Status | 01/21/2003 - Active |

HideDetails

**Internal Resource Response** 12/13/2004 3:46:23 PM hxjule Top

Referral Resource Role: Vocational Rehab Counselor

Referral Resource Name: Holly Jule

Initiator Comments

12/02/04 referring for formal TSA. Exploratory TSA located occs, and need to send results of TSA to AP for comment on cx's abilities.

Wage Requirement is $4,986.57 Monthly.

Referral Comments

Results of exploratory TSA discussed w/ VRC. Four sedentary occupations, including Cx's own occupation, were agreed as appropriate to send to AP for comment. All meet target wage and all allow for ability to get up and move about, alternate sit, stand and walk at the employee's discretion. It is also noted that cx's job allowed for alternating positions- see job requirements in claim file. HJ

Investigation Result

DOT's for the following occupations were selected for the exploratory TSA in order to consult with the AP for comment on Cx's ability to perform them. Personnel Manager, DOT#166.117-018, Employment manager DOT#166.167-030, Employment Agency Manager, DOT#187.167-098 and Department Manager, DOT#189.167-022. Returning file with occupational descriptions to CM. HJ

**Internal Resource Response** 11/18/2004 6:40:15 PM rxjenk Top

Referral Resource Role: Vocational Rehab Counselor



Folder | Contents | Notes (0/0)

## Folder: Current Case Plan

Logs (0)

**Details**

| | | | | | |
|---|---|---|---|---|---|
| Name | STEVEN ALFANO | SSN | 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 | DOB | 01/14/1958 |
| Account Name | WEILL MEDICAL COLLEGE | Account # | NYK0001972 | Incurred Date | 06/06/2000 |
| Claim Manager | Mark Sodders | Incident # | 513554 | Claim Eff Dt-Status | 01/21/2003 - Active |

**Internal Resource Response** 11/16/2004 6:40:15 PM rxjenk Top

Referral Resource Role: Vocational Rehab Counselor

Referral Resource Name: Rosemary Jenkins

Initiator Comments

based on 11/03/04 staffing with NCM, need to run exploratory TSA based on AP's PAA dated 10/20/04. Wage requirement is .80 of indexed covered earnings, which totals 4,986.57 monthly, 59,838.84 yearly.

MDSodders CK

Referral Comments

Investigation Result

Exploratory TSA

An exploratory TSA was conducted using the PAA dated 10/20/04 and collective information from cx's DQ & JD. Using the OASYS edition, 9 occ were identified as potential transf skills 4 are within the Professional and Kindred industry 4 within any industry and 1 within the Government Industry. The annual wages as per year 2000 labor statistics ranged from $77,000.00 to $123,000.00.

**Claim Strategy** 11/09/2004 11:51:09 AM a66816 Top

Folder | Contents | Notes (0/0)

# Folder: Current Case Plan

Logs (0)

## Details

| | | | | | |
|---|---|---|---|---|---|
| Name | STEVEN ALFANO | SSN | 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 | DOB | 01/14/1958 |
| Account Name | WEILL MEDICAL COLLEGE | Account # | NYK0001972 | Incurred Date | 06/06/2000 |
| Claim Manager | Mark Sodders | Incident # | 513554 | Claim Eff Dt-Status | 01/21/2003 - Active |

HideDetails

## Claim Strategy 11/09/2004 11:51:09 AM a66816 Top

Claim Status Comments

11/03/04 staffed claim with NCM. Based on recview of current medical, and PAA, run exploratory TSA on L/R provided. Concurrently, send APS to CX for COD, LOV. If TSA positive, send to AP for comments.
MDSodders CM

Level of Functional Capacity

With Restrictions

Restrictions and Limitations

Subjective/Objective Findings/Treatment

Outstanding Issues and Follow-up Dates

Strategy

7/31/2003

Claimant Name: Steven Alfano SS#: 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 Page #1

# CURRENT CASE PLAN

7/31/03 - Clmt is 44 yr old wage and salary mgr for Cornell university medical college. Incur date - 6/6/00. Claim was denied as meds in file did not support clmt td through the waiting period. Decision was appealed and upheld. Clmt's atty appealed decision and it was overturned. Meds in file support symptomatic multilevel spinal stenosis and nerve root impingement supported by clinical exam findings and peer review. All of his Dr's (4) have indicated that clmt needs surgery. Clmt has opted for conservative tx. There was a peer to peer review on 12/10/02 which supports clmt is td. At At this time, we are requesting medical updates. Current DQ is in file. Possible surveillance in the future to make sure he is not active. Also do tpc. R. Castellon Sr. CM

8/19/03 - received meds from Dr. Alexiades. Med show client had shoulder and hip arthroscopy surgery. Surgeries were helpful an client is doing much better. Still waiting 4 meds from Dr. Roach.

alf9648

12/28/2000

## GENERAL INFO.

| | | | |
|---|---|---|---|
| Date Claim Rec'd | 12/08/00 | Date of Hire | 08/05/1991 |
| Policy Eff. Date | 07/01/1989 | EE Class | 1 |
| Policy Canceled? | n | Date elected | 08/05/1991 |
| Initial EE (Y/N) | n | EE Eff. Date | 09/01/1991 |
| Eligibility WP | 1 month | Eligible? (Y/N) | y |
| Incur Date | 06/06/2000 | PCL Descr: | 30/5 |
| Inv. PCL (Y/N) | n | Inv Dates | |
| Ben. Start Date | 12/03/2000 | Any Occ. Date | 01/13/2023 |
| DOB: | 01/14/1958 | Ben Term Date | 01/13/2023 |
| PO Age Red? | n | FMI (Y/N) | y |
| MI Limit (Y/N) | y | W.O.P (Y/N) | n |
| SS Policy Lang: | | Primary/Full | full |
| R/A Rec'd(Y/N)? | n | Freeze (Y/N)? | y |

| Other benefits: | Amount/ Status: | |
|---|---|---|
| Short Term Disability (01) | 2894.41 | thru 12/6/2000 |
| Primary SSDI w/ Freeze (04) | | |
| Dep SS w/ Freeze (06) | | |
| Gov't/State Dis Benefits (16) | | |
| WC/Jones Act (18) | | |
| Salary Continuance (19) | | |
| Other: | | |
| Other: | | |

Note: EWP -- Watch for 1st of month following DOH, etc.

## MEDICAL INFORMATION

| | | |
|---|---|---|
| Initial DX | Radiculopathy | |
| ICD-9/DSM IV | 722.52 | |
| Surgery/Hosp | | |
| Accident? (Type?) | | |
| Work Related (Reported?) | | |
| **Attending Physician:** | **Phone:** | **Fax:** |
| James Farmer, MD | 212.606.1591 | 212.774.2909 |
| Stephen Scelsa, MD | 212.844.8490 | 212.844.8481 |
| Robert Snow, MD | 212.746.2830 | 212.744.3529 |
| Steven Digiovanni, M | 212.434.3432 | 212.434.3358 |
| Andrew Schiff, MD | 212.746.2879 | 212.746.4609 |
| Sean McCance, MD | 212 546.9285 | 212.546.9288 |
| Michael Alexiades, M | 212.734.1288 | 212.288.1524 |
| Thera - Ex | 914.476.0951 | |

## BENEFIT INFORMATION

| | | | |
|---|---|---|---|
| BME/Salary | $5,933.32 | | |
| Gross Benefit | $3,560.00 | Override Benefit | |
| Basic % | 60% | Override % | |
| Minimum | $100.00 | Maximum | $15,000.00 |
| EE Contribution % | 50 | Pre/Post | post |

## EMPLOYER INFORMATION

| | |
|---|---|
| Policy Number | NYK 1972 |
| Policy Name | Weill Medical College |
| PH Address | |
| Phone # | 212.746.1035 |
| Contact Name/ Title | Rosemary Cius |

## OCCUPATIONAL INFORMATION

| | |
|---|---|
| Occupation | Wage and Salary Manager |
| Job Description (Y/N) | y |
| Occ. Desc. - Sed., Light Med., Hvy, Very Hvy | sedentary |
| Education <8th Grade | |
| <12 Grade | |
| H.S. Diploma / GED | |
| College - #Years | |
| Degree (List titles) | |
| Specialty, Certificate, or License | |
| Experience | |
| RTW Language | |

## CLAIMANT INFORMATION

| | | | |
|---|---|---|---|
| Claimant Name: | Steven Alfano | Social Security # | 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 |
| Address | 3600 Waldo Ave Apt 13-G | Phone/ Fax # | 718.884.2067 |
| | Bronx, NY 10463 | Spouse Name | Eva Alfano |
| Cx Age @ Dis. | 42 Clmt Age 62 01/14/2020 | Spouse SS# | 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 |
| Spouse DOB | 05/25/1962 | Spouse Age 62 | 05/25/2024 |

| Dependent Name | DOB | Date Age 18 | Age 25 (disabled) |
|---|---|---|---|
| Andrea | 10/01/1992 | 10/01/2010 | 10/01/2017 |
| Michael | 05/18/1995 | 05/18/2013 | 05/18/2020 |

Additional Information:

alf9648

| EE: ALFANO, STEVEN | SSN: 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 | DOI: 06/06/2000 | ER: WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY(DIS) | ID: 854973378660580 |
|---|---|---|---|---|
| WCC: | LTO: | STD: | ICMS: | Other: |

**Current Case Plan**

Add a New Current Case Plan Entry Bottom of Page

Paperwork sent as an appeal was set up by Intake as new claim but was recognized as a "no load". Appeal was tracked to DAllas Appeals Team on 6/4/02. Copy of correspondence will be again referred & this Unilnyx file closed out at assigned in error. MR
06-17-2002 08:02 AM - RYAN, MARY

Top of Page

I am overturning the prior denial. This is a voluntary appeal. Cx was 42 years old at time of disability. ID is 06/06/00. Cx was a Wage and Salary Manager, which was considered to be sedentary. Peer Review was done by an orthopaedic doctor. Dr. Trotter did the Peer Review. Dr. Trotter stated that the medical documentation supports cx's inability to perform his occupation from 06/06/00 forward. Also the medical records indicate that the cx has a combination of symptoms, exam abnormalities, including ancillary test results that support ongoing diagnosis of severe multilevel spinal stenosis and nerve root impingement. This is severe enough that would preclude cx from performing his full time occupation from ID forward. Dr. Trotter stated from his review of the records, no matter what position cx assumes, he has symptomatic spinal stenosis and nerve root impingement on the basis of both soft tissue (discopathy and bony osteophytes). Nerves at the level of L5-S1 appear to be resulting in ongoing radiculopathy in particular of the LLE. Cx has not responded to nonoperative treatment and cx appears to have an indication for surgical intervention. Cx's overall pain level severity correlates with sx and exam findings. Cx's overly large body habitus may well have contributed toward his ongoing relatively severe spinal pathology. Dr. Trotter stated that the claimant appears to have significant ongoing symptomology of back pain and lower extremity radiculopathy that would not allow cx to reasonably perform his occupation on a full time basis. Cx has a well documented case of spinal stenosis with radiculopathy resistant to nonoperative means and appears to have a significant correlation overall between the sx, exam findings, and ancillary test results rendering cx unable to perform his occupation. COntinued on next entry...
01-14-2003 01:47 PM - BHARADWAJ, MEDHA

Top of Page

continued from previous entry: Based on the medical evidence in file supporting cx's inability to perform his occupation, along with the peer review findings, I am overturning the prior denial. File returned to core team for further handling. SS award in file. Core team to ensure that the offset is put in place and do calculations, manage claim, etc.. Gary Person reviewed file and agreed.
01-14-2003 01:48 PM - BHARADWAJ, MEDHA

Top of Page

Add a New Current Case Plan Entry



File Plan
Claimant: Steven Alfano
SSN 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

12-5-02 MC completed referral to Intracorp for Ortho/PR as requested by ACE. MC will f/u by 12-23-02.
Karen Haley RN, CLNC

12-30-02 MC received Ortho/PR report back from Intracorp. Reviewer found that medical records do identify severity of condition that would preclude cx from performing at the sedentary level. Reviewer noted that cx has significant symptomatic spinal stenosis and nerve root impingement and claimant has not responded to conservative treatment modalities. Please see report for details. Medical sufficient to support cx's inability to function in the sedentary capacity during the time period of 6-6-00 through present. MC discussed with ACE and file returned.
Karen Haley RN, CLNC



MICHAEL M. ALEXIADES, M.D., P.
159 EAST 74TH
NEW YORK, N.Y. 10021

TELEPHONE (212) 734-1288

Alfano, Steven
Page 3

04/22/02          Mr. Steven Alfano returns with increasing pain in his left shoulder which previous MRI showed tendinopathy. In addition he is having some right anterolateral hip pain. Right shoulder is doing relatively well. We discussed options en he will consider a left shoulder arthroscopic procedure. In the interim we will get films of the right hip.

07/08/02          Mr. Steven Alfano returns post shoulder arthroscopy. Range of motion and strength are good. Plan: Continue rehab on his own. The patient will return for follow up in six weeks. At that point we will discuss his right hip and possible arthroscopy. He saw Dr. Springfield who has cleared the hip from an oncology point of view.

09/23/02          Mr. Steven Alfano returns post shoulder arthroscopy. Occasional AC joint discomfort but strength and range of motion are excellent. Plan: Continue exercise regimen. The patient will return for follow up in the future prn.
                   He wished to discuss hip arthroscopy. The material risks, benefits and alternatives were discussed with the patient who understands and will decide.

03/24/02          Mr. Steven Alfano returns for follow up and his right hip anterolateral pain persists. Physical Examination is consistent with his labral tear. Plan: We discussed his options and he wishes to undergo arthroscopic hip surgery. The material risks, benefits and alternatives were discussed with the patient who understands and wishes to proceed.

04/24/03          Mr. Steven Alfano returns one week post arthroscopy. He has no pain; good motion. He is walking well. Wound are fine. Sutures are removed. Plan: Continue home exercise program. The patient will return for follow up in six weeks.

05/22/03          Mr. Steven Alfano returns for follow up and his hip is doing great. He has no complaints; good motion. Plan: The patient will return for follow up in the future prn.



MICHAEL M. ALEXIADES, M.D., P.C.
159 EAST 74TH
NEW YORK, N.Y. 10021

TELEPHONE (212) 734-1288

Alfano, Steven
Page 3

04/22/02                          Mr. Steven Alfano returns with increasing pain in
his left shoulder which previous MRI showed tendinopathy. In addition he is having some
right anterolateral hip pain. Right shoulder is doing relatively well. We discussed options
an he will consider a left shoulder arthroscopic procedure. In the interim we will get films
of the right hip.

07/08/02                          Mr. Steven Alfano returns post shoulder
arthroscopy. Range of motion and strength are good. Plan: Continue rehab on his own. The
patient will return for follow up in six weeks. At that point we will discuss his right hip and
possible arthroscopy. He saw Dr. Springfield who has cleared the hip from an oncology
point of view.

09/23/02                          Mr. Steven Alfano returns post shoulder
arthroscopy. Occasional AC joint discomfort but strength and range of motion are excellent.
Plan: Continue exercise regimen. The patient will return for follow up in the future prn.
                                 He wished to discuss hip arthroscopy. The
material risks, benefits and alternatives were discussed with the patient who understands
and will decide.

03/24/02                          Mr. Steven Alfano returns for follow up and his
right hip anterolateral pain persists. Physical Examination is consistent with his labral tear.
Plan: We discussed his options and he wishes to undergo arthroscopic hip surgery. The
material risks, benefits and alternatives were discussed with the patient who understands
and wishes to proceed.

4/16/03:  LHH "AMB"
4/16/03:  SURGERY - RIGHT HIP ARTHROSCOPY, LABRECTOMY
          DISCHARGED

MICHAEL M. ALEXIADES, M.D., P.C.
159 EAST 74TH STREET
NEW YORK, N.Y. 10021

TELEPHONE (212) 734-1288

Alfano, Steven
Page 3

04/22/02                    Mr. Steven Alfano returns with increasing pain in
his left shoulder which previous MRI showed tendonopathy. In addition he is having some
right anterolateral hip pain. Right shoulder is doing relatively well. We discussed options an
he will consider a left shoulder arthroscopic procedure. In the interim we will get films of the
right hip.

6/13/02:    LAB "AMB"
6/13/02:    SURGERY - LEFT SHOULDER ARTHROSCOPIC DECOMPRESSION
                        AC RESECTION
            DISCHARGED



MICHAEL M. ALEXIADES, M.D., P.C.
159 EAST 74TH STREET
NEW YORK, N.Y. 10021
TELEPHONE (212) 734-1286

Alfano, Steven
Page 2

06/05/00 Mr. Steven Alfano returns complaining of lumbar radiculopathy into the left leg for the last couple of weeks. It has gotten quite severe. He is taking Motrin with only minimal relief. Physical Examination reveals normal heel/toe/tandem gait; decreased range of motion of the LS spine; motor is 5 out-of 5; reflexes are 1+ both knees, 2+ both ankles. Plan: We will get an MRI to evaluate for a herniated disc. He is unable at this point to work. We will discuss treatment options after the test.

07/31/00 Mr. Steven Alfano returns with persistent low back pain with occasional numbness in the left leg. He saw a neurologist who felt he had some nerve damage but did not justify surgery. However, his back pain is quite severe despite two epidural injections. He is neurologically intact today although he has difficulty with toe walking. Plan: My recommendation is that he see a spine surgeon for possible fusion at L5 - S1.

05/24/01 Mr. Steven Alfano returns for follow up with recurrent right shoulder pain for the last couple of months. He has been doing some weight training to try and build up his shoulder and that may have aggravated it. He has also been going to physical therapy for his back which has gotten worse. He is contemplating surgery with Dr. Farmer at The Hospital for Special Surgery. Physical Examination today is consistent with impingement. He has some crepitus on range of motion. After discussion the patient was injected with Lidocaine and Depo-Medrol. Plan: If symptoms recur we will get an MRI.

11/14/01 Mr. Steven Alfano returns for follow up. Shoulder MRI on the left shows inflammation but no tear. After discussion the patient was injected with Lidocaine and Depo-Medrol. Plan: We will see how he responds.

01/03/02 Mr. Steven Alfano returns for follow up and his left shoulder is doing well post injection. The right shoulder only did well for a few months and then the pain returned. Plan: We discussed his options and he wishes to undergo another arthroscopic decompression and lysis of adhesions and bursectomy. We will evaluate the previous repair to insure that it is intact. The material risks, benefits and alternatives were discussed with the patient who understands and agrees.

02/04/02 Mr. Steven Alfano returns for follow up post arthroscopic decompression/AC resection. Wounds are fine. Sutures are removed. Plan: Continue home exercise program. The patient will return for follow up in four weeks.

03/11/02 Mr. Steven Alfano returns and is doing well except for occasional discomfort over the AC joint. Strength is good. Plan: Start home strengthening program. The patient will return for follow up in six weeks.



MICHAEL M. ALEXIADES, M.D., P.C.
159 EAST 74TH STREET
NEW YORK, N.Y. 10021
TELEPHONE (212) 734-1288

Alfano, Steven
Page 2

06/05/00 Mr. Steven Alfano returns complaining of lumbar radiculopathy into the left leg for the last couple of weeks. It has gotten quite severe. He is taking Motrin with only minimal relief. Physical Examination reveals normal heel/toe/tandem gait; decreased range of motion of the LS spine; motor is 5 out of 5; reflexes are 1+ both knees, 2+ both ankles. Plan: We will get an MRI to evaluate for a herniated disc. He is unable at this point to work. We will discuss treatment options after the test.

07/31/00 Mr. Steven Alfano returns with persistent low back pain with occasional numbness in the left leg. He saw a neurologist who felt he had some nerve damage but did not justify surgery. However, his back pain is quite severe despite two epidural injections. He is neurologically intact today although he has difficulty with toe walking. Plan: My recommendation is that he see a spine surgeon for possible fusion at L5 - S1.

05/24/01 Mr. Steven Alfano returns for follow up with recurrent right shoulder pain for the last couple of months. He has been doing some weight training to try and build up his shoulder and that may have aggravated it. He has also been going to physical therapy for his back which has gotten worse. He is contemplating surgery with Dr. Farmer at The Hospital for Special Surgery. Physical Examination today is consistent with impingement. He has some crepitus on range of motion. After discussion the patient was injected with Lidocaine and Depo-Medrol. Plan: If symptoms recur we will get an MRI.

11/14/01 Mr. Steven Alfano returns for follow up. Shoulder MRI on the left shows inflammation but no tear. After discussion the patient was injected with Lidocaine and Depo-Medrol. Plan: We will see how he responds.

01/03/02 Mr. Steven Alfano returns for follow up and his left shoulder is doing well post injection. The right shoulder only did well for a few months and then the pain returned. Plan: We discussed his options and he wishes to undergo another arthroscopic decompression and lysis of adhesions and bursectomy. We will evaluate the previous repair to insure that it is intact. The material risks, benefits and alternatives were discussed with the patient who understands and agrees.

01/28/02: HSS "AMB"
01/28/02: SURGERY - RIGHT SHOULDER ARTHROSCOPIC DECOMPRESSION DISCHARGED

**Lenox Hill Hospital**, New York City OPERATIVE RECORD

Name ALFANO, STEVEN Date 4/16/03 Hist. No. 1404949

Service of DR. M. ALEXIADES
Operator(s): DR. M. ALEXIADES
Assistant(s): DR. S. SIEGAL

Anesthetist:
Anesthesia: SPINAL
Duration of Oper.:

Preoperative Diagnosis: Right hip labral tear.

Postoperative Diagnosis: Same.

Operation: RIGHT HIP ARTHROSCOPY AND LABRAL RESECTION.

---

Description: (Incision, Findings, Technique, Sutures, Drains, Culture, Specimen)

Findings: The patient had an inverted labral tear.

Estimated blood loss: Minimal.

Complications: None.

Disposition: The patient was taken in stable condition to the post anesthesia care unit.

Procedure: The patient was brought to the operating room and induced under spinal anesthesia and general sedation. The right lower extremity was prepped and draped in the usual sterile fashion.

Using the fluoroscopy a spinal needle was placed intra-capsularly and the hip was distended with approximately 30 cc of air. The guide wire was placed over the spinal needle after the correct placement had been confirmed with AP and lateral views. A small stab wound was made over the guide wire in order to create the lateral portal. A series of 3 trocars were passed over the guide wire into the hip capsule. The cannula was then introduced over the 5.5 mm trocar and the camera was placed through the cannula. The hip was distracted manually and further distended with the arthroscopy fluid.

The interior of the hip was examined arthroscopically and the inverted labrum was seen freely mobile within the hip joint. Again, an anterior portal was created in a similar fashion under

Name ALFANO, STE[redacted]N Date 4/16/03 Hist. [redacted] 1404949

fluoroscopic guidance. Once the anterior cannula was visible through the lateral trocar the shaver was placed through the anterior portal in order to remove the soft tissue debris. The labrum was well visualized and resected using both the Oratec as well as the shaver device. Once the anterior portion of the labrum was fully resected we switched portals using the anterior portal as a viewing portal and the lateral portal as a working portal.

In a similar fashion the posterior portion of the labrum was resected and the joint was examined arthroscopically. There was minimal chondral damage noted. The labrum had been resected in its entirety. A final last look through the lateral portal confirmed this. The hip was irrigated with copious solution. 30 cc of 0.5% Marcaine was infused into the hip joint and the soft tissues of both the anterior and lateral portals. The portal sites were closed with #2-0 nylon sutures. A sterile dressing was applied.

The traction was released and the patient was transferred to a stretcher and to the recovery room in stable condition.

Dictated by DR. S. SIEGAL
For DR. M. ALEXIADES

SS/HMT325/51438
D: 4/16/03
T: 4/17/03

**Lenox Hill Hospital**, New York City OPERATIVE RECORD

Name ALFANO, STEVEN Date 06/13/02 Hist. No. 1404949

Service of: DR. MICHAEL ALEXIADES Anesthetist:
Operator(s): DR. MICHAEL ALEXIADES Anesthesia:
Assistant(s): DR. PAUL S. DEGENFELDER Duration of Oper.:

Preoperative Diagnosis: Left shoulder impingement, acromioclavicular joint arthritis.

Postoperative Diagnosis: Same.

Operation: LEFT SHOULDER ARTHROSCOPY; SUBACROMIAL DECOMPRESSION; ACROMIOCLAVICULAR JOINT RESECTION.

---

Description: (Incision, Findings, Technique, Sutures, Drains, Culture, Specimen)

Indications: This 44-year-old male was brought to the operating room where scalene block was introduced. The patient was positioned in the beachchair position and left lower extremity was prepped and draped in the usual sterile fashion. The glenohumeral joint was entered using standard posterior portal. Diagnostic arthroscopy performed. There was noted to be no rotator cuff tear or biceps or SLAP lesion. There was some fraying of the anterior labrum.

Next, the subacromial space was entered and the anterolateral portal was made. The 6.0 oval bur was used to do a subacromial decompression resecting a spur from the anterolateral portal. The scope was pushed to the anterolateral portal, and the bur was introduced posteriorly, and this was feathered back smooth with the posterior aspect of the acromion.

Next, using the Arthrocare wand, the soft tissues were debrided from the AC joint and the anteromedial portal was made in line with the AC joint. Using the 6.5 bur, the distal clavicle resected was approximately 9 mm. This was carried out anterior to posterior, inferior to superior. This was confirmed by switching the arthroscope to the anteromedial portal.

Once this was accomplished, the subacromial space was irrigated with normal saline. All instruments were removed. The skin was closed using #4-0 nylon simple sutures. Xeroform and sterile dressing were applied followed by a sling. The patient was transferred to the stretcher

Name ALFANO, STEVEN Date 06/13/02 Hist. No. 1404949

taken to the recovery room where he was noted to be in stable condition having tolerated the procedure well.

There were no complications. Findings were as noted above with large anterior subacromial spur. Dr. Alexiades was present through the entire procedure.

Dictated by DR. PAUL S. DEGENFELDER
For DR. MICHAEL ALEXIADES

PD/HMT322/32998
D: 06/13/02
T: 06/14/02

THE HOSPITAL FOR SPECIAL SURGERY

535 East 70th Street
New York, N.Y. 10021

DEPARTMENT OF RADIOLOGY AND IMAGING

Patient Name
ALFANO,STEVEN A
Ordering Physician
ALEXIADES,MICHAEL M
Adm/Reg Physician
ALEXIADES,MICHAEL M
Consulting Physician

Location
DIS

| Medical Record # | Date of Birth | Age |
|---|---|---|
| 689443 | 01/14/58 | 44Y |

Check-in Date: 04/30/02 0734

| Chk-in # | Order | Exam | |
|---|---|---|---|
| 965650 | 0001 | 0513 | MRI LOW EXTREMITY - RT JOINT |

Ord Diag: 719.45-JOINT PAIN-PELVIS

Page :1

JED

MRI of the right hip:

Magnetic resonance imaging of the right hip was performed utilizing coronal fast inversion recovery followed by coronal, sagittal and axial fast spin echo techniques.

There is no stress fracture, transient marrow ischemia or frank osteonecrosis. No trochanteric bursitis is seen.

Surface coil images of the right hip, slightly degraded due to motion, demonstrate partial thickness cartilage loss in the immediate suprafoveal portion of the femoral head without displaced surface flap or exposure down to subchondral bone. Mild superficial chondromalacia of the posterosuperior margin of the acetabulum is seen wihh additional mild wear over the anterolateral margin of the dome.

There is a torn degenerated anterior acetabular labrum without associated ganglion cyst formation. Borderline acetabular dysplasia is noted. There is no inflammatory synovitis.

Hip abductors appear preserved. Iliopsoas tendon also appears intact.

Intrapelvically, there is no bulky pelvic adenopathy. Fat-filled inguinal hernias are noted. There is marrow replacement process affecting the proximal left femur with foci of cystic signal

ALEXIADES,MICHAEL M
159 EAST 74TH ST
NEW YORK NY 10021

FINAL

THE HOSPITAL FOR SPECIAL SURGERY

535 East 70th Street
New York, N.Y. 10021

DEPARTMENT OF RADIOLOGY AND IMAGING

Patient Name
ALFANO,STEVEN A
Ordering Physician
ALEXIADES,MICHAEL M
Adm/Reg Physician
ALEXIADES,MICHAEL M
Consulting Physician

Location
DIS

Medical Record # 689443
Date of Birth 01/14/58
Age 44Y

Checkin-Exam Code Summary
965650-0513

(Continued) Page 2

hyperintensity as well as relatively hypointensity. There is cortical expansion. Differential possibilities include remnant of cystic fibrous dysplasia, or possibility of a previously treated unicameral bone cyst. This area may be more comprehensively studied with surface coil images when clinically warranted. There is no pathologic fracture and the lesion overall has a nonaggressive appearance.

Impression:

Magnetic resonance imaging of the right hip demonstrating superficial cartilage loss over the hip joint, borderline acetabular dysplasia and a torn, hyperplastic and degenerated anterior acetabular labrum.

There is a marrow replacement process affecting the left femur which overall has a nonaggressive appearance. Differential possibilities are noted, as above.

ICD 9 Code: 843. 8

/Dictated by/ HOLLIS POTTER M.D.
/Personally Viewed & Interpreted by/ HOLLIS POTTER
/Agreed with/Edited Report by/ HOLLIS POTTER M.D.

JED 04/30/02 1637
04/30/02 1639

ALEXIADES,MICHAEL M
159 EAST 74TH ST
NEW YORK NY 10021

FINAL



MANHATTAN DIAGNOSTIC RADIOLOGY

L. Daniel Neistadt, MD
Morton Jacobs, MD
Ilona Hertz, MD

Craig H. Sherman, MD
Elias Kazam, MD
Steven Sferlazza, MD

400 East 66th Street, New York, NY 10021
Tel: 212. 838.4243. Fax: 212. 838.7370

203 East 60th Street, New York, NY 10022
Tel: 212. 486.5510. Fax: 212. 758.6286

8982AAAA

May 6, 2002

Michael M. Alexiades M.D.
159 East 74th Street
New York, New York 10021

Dear Dr. Alexiades,

Re: ALFANO, Steven

EXAMINATION OF THE RIGHT HIP with AP view of the PELVIS shows normal width of the right hip joint and well rounded femoral head. No bone lesion, productive change, periarticular calcification, bone lesion or fracture is identified in the right hip.

The PELVIC film shows slight asymmetry of the pelvis due to slight rotation. The left proximal femur shows a large bony lesion.

EXAMINATION OF THE LEFT HIP AND PROXIMAL FEMUR shows a sharply defined 13.5 x 6.5 x 5.5 cm multi-loculated lucent lesion extending from the mid femoral neck into the proximal femoral shaft and slightly expanding the bone. There are multiple punctate, small, rounded and linear calcifications within the lesion, compatible with a chondral lesion. There is no dense sclerotic rim. Adjacent cortex is well maintained with no focal cortical thinning or cortical break. There is no periosteal reaction. The soft tissues around the femur show no soft tissue calcification. The left hip joint appears normal and the femoral head is well rounded with normal texture. Very small apron osteophyte is present, consistent with a mild degenerative change.

IMPRESSION: Large non-aggressive bony lesion expands and remodels the proximal femur from the femoral neck through the proximal shaft and has matrix calcification, compatible with a chondral lesion. Bone Scan is recommended to assess activity of the lesion. Chondrosarcoma is in the differential.

Thank you for referring this patient to us.

Very truly yours,

L. Daniel Neistadt, M.D.

LDN/am
05/07/02
PM

917-597-6019

5/9

CLICNY 0125

COPY

**THE HOSPITAL FOR SPECIAL SURGERY**
**OPERATIVE RECORD**

Patient Name: ALFANO, STEVEN Date: 1/28/2002 Service: MR# 689443

| | |
|---|---|
| **ATTENDING SURGEON:** | M. ALEXIADES, M.D. |
| **OPERATING SURGEON:** | M. ALEXIADES, M.D. |
| **ASSISTANT:** | KRISTEN WARNER, M.D. |
| **PRELIMINARY DIAGNOSIS:** | IMPINGEMENT RIGHT SHOULDER AND ARTHROFIBROSIS RIGHT SHOULDER. |
| **POSTOPERATIVE DIAGNOSIS:** | IMPINGEMENT RIGHT SHOULDER AND ARTHROFIBROSIS RIGHT SHOULDER. |
| **NAME OF OPERATION:** | RIGHT SHOULDER ARTHROSCOPIC DECOMPRESSION, DISTAL CLAVICULECTOMY, BURSECTOMY AND LYSIS OF SUBACROMIAL ADHESIONS. |
| **ANESTHESIA:** | REGIONAL. |
| **ANESTHESIOLOGIST:** | BRAD CARSON, M.D. |

**PROCEDURE:**
Once the regional anesthesia was administered, the right shoulder was prepped and draped in the usual fashion, after the patient was placed in the beach chair position.

After the shoulder was prepped and draped, the posterior portal incision was made and the arthroscope was placed into the glenohumeral joint. The glenohumeral joint revealed normal articular surfaces, intact anterior labrum, intact ligamentous structures. The articular surfaces were intact. There were no loose bodies. Examination of the biceps tendon revealed it to be intact. Examination of the rotator cuff, supra and infraspinatus, revealed these to be intact.

At this point, the arthroscope was placed into the subacromial space. There was

Continued..

**THE HOSPITAL FOR SPECIAL SURGERY**
**OPERATIVE RECORD**

Patient Name: ALFANO, STEVEN Date: 1/28/2002 Service: MR# 689443

a great deal of bursal tissue present and multiple adhesions, particularly in the region of the acromioclavicular joint. The examination of the superior portion of the cuff, after a bursectomy was performed, by anterolateral portal incision, using the shaver, revealed the rotator cuff to be intact.

There was regrowth of the anterior subacromial spurring as well as medially along the acromioclavicular joint. Utilizing the ArthriCare the soft tissue was resected off of the undersurface of the acromion and the acromion was resected along its undersurface forming a type I acromion using a cutting block technique. Once the subacromial space was adequately decompressed, attention was paid to the acromioclavicular joint.

Using an anterior portal and the ArthriCare, the capsule of the acromioclavicular joint was resected. The distal clavicle was then resected back a distance of approximately 1 cm using a 6.0 oval bur. Once the distal clavicle was resected appropriately, the shoulder was thoroughly irrigated and drained.

The wounds were closed using 4-0 nylon sutures, Xeroform and sterile dressings were applied. The patient was placed in the sling and was taken to the Recovery Room in stable condition.

CC: M. ALEXIADES, M.D.

DATE

M. ALEXIADES, M.D.

Dictated by: ,/M. ALEXIADES, M.D.
Dict Date: 1/28/2002 Typed by: PMC/pw/24921 Trans Date: 01/29/2002

End

LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

Page 1 of 1

Carmel Donovan, M.D.
Erich Eidenschenk, M.D.
David A. Follett, M.D.
William Louie, M.D.
Keith S. Tobin, M.D.
Lynn Ladetsky, M.D.
Scott R. Gerst, M.D.

61 East 77th Street
New York, NY 10021
TEL 212-772-3111
FAX: 212-288-1637
FAX: 212-861-1796
www.lenoxhillradiology.com

MICHAEL ALEXIADES, MD

9/7 — 597-6049

Patient: ALFANO, STEVEN ID: 139521 2001109161624139521 1

**MRI LEFT SHOULDER 11/1/01**

An MRI examination of the left shoulder was performed using oblique coronal proton density and T2 fat suppression, oblique sagittal T1 and FSE T2 fat suppression, and axial T2 * sequences.

The osseous structures comprising the left shoulder demonstrate normal marrow signal. There is mild degenerative change in the acromioclavicular joint, with only minimal spurring noted at the undersurface. The acromion is slopes laterally downwards, and there is a broad-based small-to-moderate subacromial enthesophyte at the point of attachment of the coracoacromial ligament. There is evidence of significant focal narrowing of the acromiohumeral space along the lateral margin of the acromion. Mild inflammatory change is noted in the underlying subacromial/subdeltoid bursa. No definite full-thickness rotator cuff tear seen, however. The bursal surface of the distal supraspinatus tendon has a fibrillated margin. The infraspinatus, teres minor, subscapularis and long biceps tendons are all intact. There is no joint effusion. There is no evidence of labral detachment.

**IMPRESSION:**

1. Hypertrophic changes of the acromion, as described above.
2. Mild inflammatory change in the underlying subacromial/subdeltoid bursa.
3. Study negative for full-thickness rotator cuff tear. There is irregularity of the bursal surface of the supraspinatus tendon.

Thank you for referring this patient.

Electronically Signed By: Keith Tobin, MD 11/1/01

11/5

MRI HIGHFIELD 1.5T • MID FIELD • OPEN MRI · CAT SCAN HELICAL · ULTRASOUND HDI · NUCLEAR MEDICINE · PET
GENERAL X-RAY · FLUOROSCOPY · MAMMOGRAPHY · BONE DENSITOMETRY
ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY
MRI • ULTRASOUND • MAMMOGRAPHY

CLICNY 0130

Page 1 of 1

Carmel Donovan, M.D.
Erich Eklenschenk, M.D.
David A. Follett, M.D.

William Louie, M.D.
Keith S. Tobin, M.D.
Lynn Ladetsky, M.D.
Scott R. Gerst, M.D.

61 East 77th Street
New York, NY 10021
TEL: 212-772-3111
FAX: 212-288-1627
FAX: 212-861-1796
www.lenoxhillradiology.com

JAMES C FARMER, MD

Patient: ALFANO, STEVEN ID: 139521 20010817551501393211

**MRI OF THE LUMBAR SPINE 8/18/01:**

**Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit. 43 year-old with chronic low back pain and bilateral radiculopathy. Comparison is made to report of prior study 6/9/00.**

**There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type II end-plate marrow change and vacuum disc phenomena. The remaining lumbar intervertebral discs are normal. There are no destructive marrow processes. Small, typical hemangiomata are seen within the L4 and L5 vertebral bodies. The conus medullaris is at the approximate L1-2 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. The paraspinal soft tissues are grossly normal.**
**At L1-2 through L3-4, there are no disc protrusions, significant disc bulges spinal stenosis or neural foraminal narrowing.**
**At L4-5, there is minimal anular disc bulge and moderate facet osteoarthritis. There are mild developmentally shortened pedicles and mild spinal stenosis. There is also mild narrowing of both neural foramen. This shows slight interval increase.**
**At L5-S1, there is a prominent posterior disc osteophyte complex impinging upon the anterior thecal sac causing moderate spinal stenosis. This disc osteophyte complex measures 8 mm cephalocaudad x 7 mm AP x 20 mm transverse dimension. This has shown slight interval increase in size by report. However direct comparison to prior study is suggested for interval change. There is moderate facet osteoarthritis and mild moderate left sided neural foraminal narrowing.**

**IMPRESSION:**
**1. MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.**
**2. POSTERIOR DISC OSTEOPHYTE COMPLEX AT L5-S1 CAUSING MODERATE SPINAL STENOSIS.**
**3. MILD L4-5 SPINAL STENOSIS.**

**Thank you for referring this patient.**
**Electronically Signed By: William Louie, MD 8/20/01**

MRI HIGHFIELD 1.5T • MID FIELD • OPEN MRI | CAT SCAN HELICAL | ULTRASOUND HDI | NUCLEAR MEDICINE | PET
GENERAL X-RAY FLUOROSCOPY MAMMOGRAPHY BONE DENSITOMETRY
ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY
MRI • ULTRASOUND • MAMMOGRAPHY

LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

61 East 77th Street
New York, NY 10021
TEL: 212-772-3111
FAX: 212-288-1637
FAX: 212-861-1796
www.lenoxhillradiology.com

Page 1 of 1
Carmel Donovan, M.D.
Erich Eidenschenk, M.D.
David A. Folleu, M.D.

William Louie, M.D.
Keith S. Tobin, M.D.
Lynn Ladetsky, M.D.
Scott R. Gerst, M.D.

MICHAEL ALEXIADES, MD

Patient: ALFANO, STEVEN ID: 139521 20011012347841395211

**MRI RIGHT SHOULDER 10/12/01**

**An MRI examination of the right shoulder was performed using oblique coronal proton density and T2 fat suppression, oblique sagittal T1 and FSE T2 fat suppression, and axial T2 fat-suppression and T2 * sequences.**

**The osseous structures comprising the right shoulder demonstrate normal marrow signal. There is evidence of prior acromioplasty procedure. The acromial remnant is noted to slope laterally downward, and there is a small broad-based subacromial enthesophyte at the point where the coracoacromial ligament attaches. These changes appear to cause some focal narrowing of the acromiohumeral space. A fluid collection occupies the subacromial/subdeltoid bursa, appearance consistent with bursitis in the moderate range. No definite full-thickness rotator cuff tear is seen distally. There is evidence of some tendinosis of the supraspinatus tendon, and the bursal surface of the tendon appears markedly fibrillated in contour. The infraspinatus, teres minor, subscapularis and long biceps tendons are intact. There is no joint effusion. There is evidence of a small focal defect in the inferior-posterior corner of the labrum; an associated small cluster of perilabral cysts is noted at the site. The remainder of the labrum appears intact.**

**IMPRESSION:**

**1. Study negative for full-thickness rotator cuff tear. There is evidence of tendinosis in the distal supraspinatus tendon, and the bursal surface of the tendon appears frayed.**
**2. Hypertrophic changes of the acromial remnant, as described above.**
**3. Subacromial/subdeltoid bursitis in the moderate range.**
**4. Evidence of a focal inferior-posterior labral tear with associated cluster of tiny perilabral cysts.**

**Thank you for referring this patient.**

10/15

**Electronically Signed By: Keith Tobin, MD** 10/12/01

Xray
[illegible]

MRI
HIGHFIELD 1.5T • MID FIELD • OPEN MRI
CAT SCAN
HELICAL
ULTRASOUND
HDI
NUCLEAR
MEDICINE
PET
GENERAL X-RAY FLUOROSCOPY MAMMOGRAPHY BONE DENSITOMETRY
ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY

CLICNY 0132



08/05/03 03:57pm P. 001

# Michael M. Alexiades, M.D., P.C.

159 East 74th Street
New York, NY 10021

(212) 734-1288

August 5, 2003

RE: Steven Alfano

To Whom It May Concern:

Please be advised that a disability and physical capabilities form has come to my attention. The fee for this form is $50.00. Please be advised that once payment is received the form will be returned to you as soon as possible.

Yours truly,

Velma
Secretary to
Michael M. Alexiades, M.D.

MMA:vjp

Tax ID# 13-3517927

paid $50.00
ckc 8/6/03

**FRAUD WARNING:** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information: or (2) conceals for the purpose of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see the reverse side of this form: *Colorado, District of Columbia, Florida, Maryland, New Jersey, New York, Pennsylvania, Oregon or Virginia.*

| Name: STEVEN ALFANO | Social Security No.: 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 |
|---|---|
| Address: 3800 WALDO AVE APT. 13-G BRONX, NY 10463 | Telephone No.: 718-884-2067 |

1. In your own words, tell us why you cannot work in your own or in any occupation.
CONSTANT BACK/LEG PAIN PREVENTS CONCENTRATION ON MENTAL TASKS. CONDITION IS MADE WORSE BY SITTING, STANDING OR WALKING. SITTING ESPECIALLY PRODUCES PAIN AND NUMBNESS IN BUTTOCKS, LEGS AND FEET

2. What is primary physical and/or mental condition preventing you from working now?
SAME AS ANSWER TO #1 ABOVE PLUS I AM UNABLE TO STAND FOR ANY PERIOD OF TIME OR WALK DISTANCES DUE TO "FOOT DROP". I MUST LIE DOWN FREQUENTLY THROUGH THE DAY FOR 1-2 HOURS AT A TIME.

3. Can you drive? ☑ Yes ☐ No How far? 10-20 MINUTES

4. What time do you get up in the morning? BETWEEN 5-8 AM What time do you go to bed? BETWEEN 10-12 AM

5. Where do you live? ☑ Apartment ☐ House
How many floors in the apartment/house? 20 Does it have an elevator? ☑ Yes ☐ No
Do you use any special equipment - ramps, handrails, wheelchair? ☐ Yes ☑ No
If yes, describe

6. Do you own a personal computer? ☑ Yes ☐ No
Is it connected to the Internet? ☑ Yes ☐ No
What computer programs or software can you use? NETSCAPE, WORD PERFECT
How often do you use the computer? 3-5 TIMES/WEEK

7. Check the things you do regularly:

| Activity | Hours per day? | Days per week? |
|---|---|---|
| ☐ Cook | | |
| ☐ Clean | | |
| ☐ Shop | | |
| ☐ Laundry | | |
| ☐ Yardwork | | |
| ☐ Gardening | | |
| ☐ Read | | |
| ☑ Watch TV | 2-3 HRS | 7 |
| ☐ Other (school, attend religious services, volunteer work, etc.) | | |

What do you do for recreation? WATCH TV, LISTEN TO RADIO/MUSIC.

8. Are there things you attend to with regard to your personal needs (grooming, dressing, etc.)?
I MUST TAKE LONG HOT BATHS DAILY TO EASE STIFFNESS. I DRESS IF I'M LEAVING THE HOUSE!

GB-609-78b

9. Do you go for walks? ☐ Yes ☑ No How often? ________
How far do you walk? ________ For how long? ________

10. Do you engage in a regular exercise program? ☐ Yes ☑ No
Where (home, gym, etc.) ________
How often? ________
Describe your exercise program ________

11. Please circle the highest grade you completed in school:

1 2 3 4 5 6 7 8 9 10 11 12 GED High School Diploma

College? 1 yr. 2 yrs. 3 yrs. 4 yrs. (BA/BS Degree) Masters Degree Other

Type of degree? (Business, History, Social Sciences, etc.) BBA
Date Received 2/81
List any professional/educational certificates, licenses, etc. awarded NONE

List any vocational programs you have attended/completed NONE
In the last 3 years, what type of certificates or licenses have you received? NONE

12. Are you taking any professional/educational/vocational classes now? ☐ Yes ☑ No
Please list them ________

13. Are you working? ☐ Yes ☑ No
If so, please list how many hours per day you work, and the name of your employer. ________

**Employment History**

| | |
|---|---|
| 1. Job Title: WAGE + SALARY MGR. | Employed date: From: 8/91 Through: 12/00 |
| Major Duties: DEVELOP AND ADMINISTER COMPENSATION SYSTEMS, NEGOTIATE SALARIES | Minor Duties: ADMINISTER PERFORMANCE EVALUATION SYSTEMS, APPROVE JOB DESCRIPTIONS |
| Tools/Equipment used: COMPUTER, CALCULATOR | Machinery/Computers used: PC, MAINFRAME |
| 2. Job Title: ASST DIR., HUMAN RESOURCES | Employed date: From: 9/90 Through: 11/90 |
| Major Duties: ADMINISTERED COMPENSATION AND EMPLOYMENT FUNCTIONS | Minor Duties: ADMINISTER EMPLOYEES IMMIGRATION, HOUSING AND ORIENTATION PROGRAMS |
| Tools/Equipment used: CALCULATOR | Machinery/Computers used: PC |
| 3. Job Title: WAGE AND SALARY ANALYST/MGR | Employed date: From: 9/82 Through: 2/90 |
| Major Duties: ADMINISTRATION OF WAGES AND SALARIES | Minor Duties: LABOR RELATIONS |
| Tools/Equipment used: CALCULATOR | Machinery/Computers used: PC |

14. Have you ever owned or operated your own business? ☐ Yes ☑ No
Do you own, operate or have ownership interest in a business now? ☐ Yes ☑ No
Business Name ________
Address ________
City ________
Telephone Number (____) ________
Date business began ________
Describe the business ________

15. Are you married? ☑ Yes ☐ No
If yes, please provide: Spouse's Name: EVA ALFANO DOB: 5/25/62
Spouse's SSN: 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

Do you have any children under age 18? ☑ Yes ☐ No
Please list their names and dates of birth in order:
ANDREA ALFANO 10/1/92
MICHAEL ALFANO 5/16/95

Do you have any handicapped children over 18? ☐ Yes ☑ No

16. List any prescription medications you take: Use other side if you need more space.

| Medication | Dose | Frequency | Medication | Dose | Frequency |
|---|---|---|---|---|---|
| VIOXX | 50 MG | 1/DAY | PREVACID | 30 MG | 1/DAY |
| VICODIN | 5 MG | 1-2 EVERY 4 HRS | WELLBUTRIN | 150 MG | 2/DAY |
| ZESTRIL | 20 MG | 1/DAY | | | |

17. List any doctor(s) you see regularly. Use the other side if you need more room.

| Doctor's Name/Specialty: KEITH ROACH / INTERNAL MEDICINE | | Doctor's Name/Specialty: MICHAEL ALEXIADES / ORTHOPEDIC SURGERY | |
|---|---|---|---|
| Address: 505 E 70 ST. HT 450 NY NY 10021 | | Address: 159 E 74 ST NY NY 10021 | |
| Telephone #: 212-746-2879 | Fax #: 212-746-8127 | Telephone #: 212-734-1288 | Fax #: 212-439-6855 |
| Frequency of visits: 3-6 MOS. | Date of last visit: 4/7/03 | Frequency of visits: 3-6 MOS | Date of last visit: 4/16/03 |
| Doctor's Name/Specialty: | | Doctor's Name/Specialty: | |
| Address: | | Address: | |
| Telephone #: | Fax #: | Telephone #: | Fax #: |
| Frequency of visits: | Date of last visit: | Frequency of visits: | Date of last visit: |

18. Are you right handed or left handed? ☐ Right ☑ Left
What is your height? 6'3"
What is your weight? 290
What is your date of birth? 1/14/58

19. Are you a veteran? ☐ Yes ☑ No
If yes, have you applied for VA benefits for this disability? ☐ Yes ☐ No
Please attach a copy of your VA disability award.

20. What other types of income/money/compensation/benefits are you receiving or eligible to receive?

| | | | $ Amount/Frequency | Date Began | Date Paid Through |
|---|---|---|---|---|---|
| ☐ Yes | ☑ No | Salary Continuance | | | |
| ☐ Yes | ☑ No | State Disability Benefits | | | |
| ☐ Yes | ☑ No | Group Disability Benefits | EXCEPT THIS POLICY | | |
| ☐ Yes | ☑ No | Workers' Compensation | | | |
| ☐ Yes | ☑ No | Pension Benefits | | | |
| ☐ Yes | ☑ No | No-Fault Auto Disability Insurance | | | |
| ☑ Yes | ☐ No | Any Other Disability Income | SOCIAL SECURITY DIB 5,591/mo. | 6/2000 | PRESENT |

I certify that the information in this document is true and correct.

Signature [signature] Date 4/20/03



Maria Clarkin
Case Manager
Disability Management Solutions

CIGNA Group Insurance
Life · Accident · Disability

Revised Letter

April 10, 2003

STEVEN ALFANO
3800 WALDO AVE APT 13-G
BRONX NY 10463

| | |
|---|---|
| Claimant: | Steven Alfano |
| Policy Number: | NYK 1972 |
| Policyholder Name: | Weill Medical Group |
| Underwriting Company: | Life Insurance Company of North America |

Dear Mr. Alfano,

As you know we have been reviewing your claim.

Based on our review of your file, your claim has been re-opened and benefits approved to date. You will be receiving a check under separate cover for the period of December 3, 2002 through February 2, 2003. in the amount of $48,806.88.

To qualify for benefits under your Long Term Disability (LTD) contract, you must be unable to engage in the essential duties of your regular occupation to qualify for benefits, subject to any other benefit limitations stated in your contract. We will be requesting periodic updates on the status of your disability and we reserve the right to have you examined by a physician of our choice.

Please note that Monthly Benefits are payable only while you are under the care of a licensed physician.

If you have any questions regarding your claim, please feel free to contact me at any time.

Sincerely,

Maria Clarkin

CC: Clare McDonough

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York



Joan and Sanford I. Weill
Medical College

Department of Human Resources
Benefits Office
445 East 69th Street, Room 220
New York, NY 10021

March 27, 2003

Ms. Maria Clarkin
Case Manager
CIGNA Group Insurance
Routing 1115
P.O. Box 2052
Tarrytown, NY 10591-9052

Re: NYK 1972
Steven Alfano – Long Term Disability Plan Benefit Recipient

Dear Ms. Clarkin:

I wish to point out an error contained in the letter you sent to Mr. Steven Alfano on January 24, 2003. As you may recall, our contract with CIGNA is occupation specific; therefore, the statement contained in the letter referenced – "you must be unable to engage in the essential duties of any occupation to qualify for benefits" is incorrect.

Please issue Mr. Alfano a revised letter with correct reference to occupation specific. I appreciate your assistance and please call me at (212) 746-1035 if you need any additional information.

Sincerely,

Clare McDonough
Associate Director – Benefits & Administration

Cc: S. Alfano

| EE: ALFANO, STEVEN | SSN: 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 | DOI: 06/06/2000 | ER: WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY(DIS) | ID: 854973378660580 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |

View the Details for an Incident Note

Add a New Incident Note (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 01/27/2003 02:24:24 PM Edit | Medical/Disability Management | Narrative | SCOTTON, LISA | ICARE |

ICARE Note Text

**Occupation: Wage and Salary Mgr. (sedentary)**
**Incur Date: 6/6/00 BSD: 12/3/00**
**Policy # NYK 1972 A/O date: 12/3/00**
**Date of Referral: 1/27/03**

**Referral Questions: Claim reopen on appeal. Per medical ex found to have severe multilevel spinal stenosis & nerve root impingement. Please review medical and advise if ex may rtw in the future w/tx or would a referral to SAM be reasonable.**

FILE DISCUSSED @ WALK-UP.
MEDICAL AT HAND SUPPORTS SYMPTOMATIC MULTILEVEL SPINAL STENOSIS AND NERVE ROOT IMPINGEMENT SUPPORTED BY CLINICAL EXAM FINDINGS AND PEER REVIEW. CLMNT HAS NOT RESPONDED TO CONSERVATIVE MANANGEMENT.
12/10/02 PEER REVIEW INDICATES SEVERAL APs HAVE RECOMMENDED SURGERY:
* 7/00 DR. ALEXIADES REFERS TO SPINE SURGEON FOR POSSIBLE FUSION; 1/01 SURGERY STILL RECOMMENDED.
* 8/00 DR. SNOW INDICATES PLAN IS FOR L5-S1 LUMBAR LAMINECTOMY @ L5 BILATERALLY W/ POSSIBLE DISCKECTOMY @ L5-S1 ON THE LEFT.
* 1/01 DR. SCHIFF NOTES CLMNT NEEDS SURGERY FOR L5-S1 STENOSIS/SPONDYLOSIS
* 2/01 DR. FARMER (HOSPITAL FOR SPECIAL SURGERY) NOTES CLMNT MAY REQUIRE A LUMBAR FUSION IF NO IMPROVEMENT W/ CONSERVATIVE CARE. HOWEVER, AS OF 2/02,CLMNT REMAINS IN CONSERVATIVE TX OF PT, ESI & MEDS. IT IS UNCLEAR IF CLMNT HAS ELECTED TO PURSUE SURGICAL INTERVENTION - MOST RECENT MEDICAL @ HAND IS A 7/12/02 NARRATIVE FROM DR. ALEXIADES INDICATING THAT SURGERY HAS BEEN DISCUSSED.
AT THIS TIME, WOULD SUGGEST OBTAINING UPDATE FROM CLMNT AND DR. ALEXIADES AS SIX MONTHS HAVE PASSED SINCE THIS NARRATIVE AND CURRENT STATUS IS UNCLEAR.

January 22, 2003

Maria Clarkin
CIGNA
P.O. Box 2052
Tarrytown, NY 10591-9052

Dear Ms. Clarkin,

Re: Steven Alfano, Soc.Sec. #: 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

Enclosed per your request, please find copies the Social Security Notices of Award for myself and my family.

Steven Alfano
3800 Waldo Ave., Apt. 13-G
Bronx, NY 10463



# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: October 22, 2002
Claim Number: 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HC1

STEVEN ALFANO FOR
MICHAEL JAMES ALFANO
3800 WALDO AVEUE
APT 13G
BRONX, NY 10463-2169

MICHAEL J ALFANO is entitled to monthly child's benefits beginning December 2000.

We have chosen you to be his representative payee. Therefore, you will receive his checks and use the money for his needs.

**What We Will Pay And When**

- You will receive $8,393.00 around October 28, 2002.

- This is the money MICHAEL is due for December 2000 through September 2002.

- MICHAEL J ALFANO's next payment of $387.00, which is for October 2002, will be received on or about the third Wednesday of November 2002.

- After that you will receive $387.00 on or about the third Wednesday of each month.

The day we make payments on this record is based on STEVEN A ALFANO's date of birth.

**Your Benefits**

We raised his monthly benefit amount beginning December 2001 because the cost of living increased.

We changed his monthly benefit amount beginning January 2001 because we raised Mr. ALFANO's benefit.

Enclosure(s):
Pub 05-10076
Pub 05-10077
Pub 05-10058

C

See Next Page

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HC1                                              Page 2 of 3

## Work And Earnings Affect Payments

The monthly earnings test applies only to 1 year. That year is the first year a
beneficiary has a non-work month after entitlement to Social Security benefits.
Our records show that MICHAEL had or will have at least one non-work month
in 2000. If he ever goes to work, we will pay benefits for each year based on his
work and earnings for that year.

## Health Insurance For Children

If this notice is for a child under age 19 who is not covered by health insurance,
there is a Children's Health Insurance Program that may help. To find out
more, you can look on the Internet at www.insurekidsnow.gov or call, toll free,
1-877-KIDS-NOW (1-877-543-7669). The number connects you to your state
program.

## Other Social Security Benefits

The benefit described in this letter is the only one he can receive from Social
Security. If you think that he might qualify for another kind of Social Security
benefit in the future, you will have to file another application.

## Your Responsibilities

MICHAEL's benefits are based on the information you gave us. If this
information changes, it could affect his benefits. For this reason, it is important
that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security or Survivors
Benefits...What You Need to Know". It tells you what must be reported and how
to report. Please be sure to read that part of the pamphlet which explains how
work could change payments.

As a representative payee, you have additional responsibilities. They are
discussed in the enclosed pamphlet, "A Guide for Representative Payees."

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review
your case and consider any new facts you have. A person who did not make the
first decision will decide MICHAEL's case. We will correct any mistakes. We
will review those parts of the decision which you believe are wrong and will look
at any new facts you have. We may also review those parts which you believe
are correct and may make them unfavorable or less favorable to him.

* You have 60 days to ask for an appeal.

* The 60 days start the day after you get this letter. We assume you got
  this letter 5 days after the date on it unless you show us that you did not
  get it within the 5-day period.

* You must have a good reason for waiting more than 60 days to ask for an
  appeal.

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HC1                                      Page  3 of  3

- You have to ask for an appeal in writing.  We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration".  Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim".  It contains more information about the appeal.

**If You Want Help With Your Appeal**

You can have a friend, lawyer or someone else help you.  There are groups that can help you find a lawyer or give you free legal services if you qualify.  There are also lawyers who do not charge unless you win your appeal.  Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know.  If you hire someone, we must approve the fee before he or she can collect it.  And if you hire a lawyer, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

**If You Have Any Questions**

We invite you to visit our website at www.ssa.gov on the Internet to find general information about Social Security.  If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-212-923-7960.  We can answer most questions over the phone.  If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778.  You can also write or visit any Social Security office.  The office that serves your area is located at:

SOCIAL SECURITY
CORNER 182 ST
4292 BROADWAY
NEW YORK, NY 10033

If you do call or visit an office, please have this letter with you.  It will help us answer your questions.  Also, if you plan to visit an office, you may call ahead to make an appointment.  This will help us serve you more quickly when you arrive at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

CLICNY 0176

Social Security Administration
**Retirement, Survivors and Disability Insurance**
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500



# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: October 22, 2002
Claim Number: 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HC2

STEVEN ALFANO FOR
ANDREA ROSE ALFANO
3800 WALDO AVEUE
APT 13G
BRONX, NY 10463-2169

ANDREA R ALFANO is entitled to monthly child's benefits beginning December 2000.

We have chosen you to be her representative payee. Therefore, you will receive her checks and use the money for her needs.

**What We Will Pay And When**

- You will receive $8,393.00 around October 28, 2002.
- This is the money ANDREA is due for December 2000 through September 2002.
- ANDREA R ALFANO's next payment of $387.00, which is for October 2002, will be received on or about the third Wednesday of November 2002.
- After that you will receive $387.00 on or about the third Wednesday of each month.

The day we make payments on this record is based on STEVEN A ALFANO's date of birth.

**Your Benefits**

We raised her monthly benefit amount beginning December 2001 because the cost of living increased.

We changed her monthly benefit amount beginning January 2001 because we raised Mr. ALFANO's benefit.

Enclosure(s):
Pub 05-10076
Pub 05-10077
Pub 05-10058

C

See Next Page

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 HC2                                                    Page 2 of 3

## Work And Earnings Affect Payments

The monthly earnings test applies only to 1 year. That year is the first year a
beneficiary has a non-work month after entitlement to Social Security benefits.
Our records show that ANDREA had or will have at least one non-work month
in 2000. If she ever goes to work, we will pay benefits for each year based on
her work and earnings for that year.

## Health Insurance For Children

If this notice is for a child under age 19 who is not covered by health insurance,
there is a Children's Health Insurance Program that may help. To find out
more, you can look on the Internet at www.insurekidsnow.gov or call, toll free,
1-877-KIDS-NOW (1-877-543-7669). The number connects you to your state
program.

## Other Social Security Benefits

The benefit described in this letter is the only one she can receive from Social
Security. If you think that she might qualify for another kind of Social Security
benefit in the future, you will have to file another application.

## Your Responsibilities

ANDREA's benefits are based on the information you gave us. If this
information changes, it could affect her benefits. For this reason, it is important
that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security or Survivors
Benefits...What You Need to Know". It tells you what must be reported and how
to report. Please be sure to read that part of the pamphlet which explains how
work could change payments.

As a representative payee, you have additional responsibilities. They are
discussed in the enclosed pamphlet, "A Guide for Representative Payees."

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review
your case and consider any new facts you have. A person who did not make the
first decision will decide ANDREA's case. We will correct any mistakes. We will
review those parts of the decision which you believe are wrong and will look at
any new facts you have. We may also review those parts which you believe are
correct and may make them unfavorable or less favorable to her.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got
  this letter 5 days after the date on it unless you show us that you did not
  get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an
  appeal.

CLICNY 0178

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HC2

- You have to ask for an appeal in writing. We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim". It contains more information about the appeal.

### If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

### If You Have Any Questions

We invite you to visit our website at www.ssa.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-212-923-7960. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
CORNER 182 ST
4292 BROADWAY
NEW YORK, NY 10033

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

Social Security Administration
**Retirement, Survivors and Disability Insurance**
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: October 14, 2002
Claim Number: 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HA

STEVEN A ALPANO
3800 WALDO AVE
APT 13G
BRONX, NY 10463-2169

You are entitled to monthly disability benefits beginning December 2000.

**The Date You Became Disabled**

We found that you became disabled under our rules on June 5, 2000.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is December 2000.

**What We Will Pay And When**

- You will receive $1,550.00 for October 2002 around November 20, 2002.
- After that you will receive $1,550.00 on or about the third Wednesday of each month.
- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153
Pub 05-10058

C

See Next Page



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HA

## Your Benefits

The following chart shows your benefit amount(s) before any deductions or rounding. The amount you actually receive(s) may differ from your full benefit amount. When we figure how much to pay you, we must deduct certain amounts, such as Medicare premiums. We must also round down to the nearest dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| December | 2000 | $1,507.40 | Entitlement began |
| January | 2001 | $1,510.80 | Credit for additional earnings |
| December | 2001 | $1,550.00 | Cost-of-living adjustment |

## Other Government Payments Affect Benefits

We are holding your Social Security benefits for December 2000 through September 2002. We may have to reduce these benefits if you received Supplemental Security Income (SSI) for this period. We will not reduce your past-due benefits if you did not get SSI benefits for those months.

However, we will withhold part of any past-due benefits to pay your lawyer. Later in this letter, we will tell you more about the money we are withholding to pay your lawyer. When we decide how much you are due for this period, we will send you another letter.

## Information About Medicare

You are entitled to medicare hospital and medical insurance beginning December 2002.

We will send you a Medicare card. You should take this card with you when you need medical care. If you need medical care before receiving the card and your coverage has already begun, use this letter as proof that you are covered by Medicare.

## Information About Lawyer's Fees

We have approved the fee agreement between you and your lawyer.

Your past-due benefits are $33,617.00 for December 2000 through September 2002. Under the fee agreement, the lawyer cannot charge you more than $4,000.00 for his or her work. The amount of the fee does not include any out-of-pocket expenses (for example, costs to get copies of doctors' or hospitals' reports). This is a matter between you and the lawyer.

If we approve your claim for SSI, the lawyer may be able to charge an additional amount for his or her work. We will send you another letter about SSI telling you the additional amount of the fee, if any, he or she can charge.

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HA                                          Page 3 of 6

## How To Ask Us To Review The Determination On The Fee Amount

You, the lawyer or the person who decided your case can ask us to review the amount of the fee we say the lawyer can charge.

If you think the amount of the fee is too high, write us within 15 days from the day you get this letter. Tell us that you disagree with the amount of the fee and give your reasons. Send your request to this address:

> Social Security Administration
> Office of Hearings and Appeals
> Attorney Fee Branch
> 5107 Leesburg Pike
> Falls Church, Virginia 22041-3255

The lawyer also has 15 days to write us if he or she thinks the amount of the fee is too low.

If we do not hear from you or the lawyer, we will assume you both agree with the amount of the fee shown.

## Information About Past-Due Benefits Withheld To Pay A Lawyer

Because of the law, we usually withhold 25 percent of the total past-due benefits to pay an approved lawyer's fee. We withheld $8,404.25 from your past-due benefits to pay the lawyer.

We are paying the lawyer from the benefits we withheld. Therefore, we must collect from the lawyer a service charge of 6.3 percent of the fee amount we pay. We will subtract the service charge from the amount payable to the lawyer. This means that we subtract $252.00 from the $4,000.00 we are paying toward the lawyer's fee, and send him or her $3,748.00.

The lawyer cannot ask you to pay for the service charge. If the lawyer disagrees with the amount of the service charge, he or she must write to the address shown at the top of this letter. The lawyer must tell us why he or she disagrees within 15 days from the day he or she gets this letter.

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social Security. If you think that you might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Your Responsibilities

The decisions we made on your claim are based on information you gave us. If this information changes, it could affect your benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security Disability Benefits...What You Need To Know." It will tell you what must be reported and how to report. Please be sure to read the parts of the pamphlet which explain what to do if you go to work or if your health improves.

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HA                                         Page 4 of 6

A state or other public or private vocational rehabilitation provider may contact
you to talk about their services. The rehabilitation provider may offer you
counseling, training, and other services that may help you go to work. To keep
getting disability benefits, you have to accept the services offered unless we
decide you have a good reason for not accepting.

You do not have to wait to be contacted about vocational rehabilitation services.
You can contact the nearest state vocational rehabilitation office directly and let
them know that you are interested in receiving services.

If you go to work, special rules can allow us to continue your cash payments and
health insurance coverage. For more information about how work and earnings
may affect disability benefits, you may call or visit any Social Security office.
You may wish to ask for any of the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA
  Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication
  No. 05-10052).

- How Social Security Can Help With Vocational Rehabilitation (SSA
  Publication No. 05-10050).

**Other Information**

We are sending a copy of this notice to KENNETH SCHEER and ADAM
COHEN.

**Do You Disagree With The Decision?**

This action supersedes our previous determination and is in accordance with the
decision on your hearing request. You have already been notified of your appeal
rights regarding the decision made on your hearing request and what you must
do to have that decision reexamined. If you want this reconsideration, you may
request it through any Social Security office. If additional evidence is available,
you should submit it with your request. We will review the case and consider
any new facts you have. A person who did not make the first decision will decide
your case. We will correct any mistakes. We will review those parts of the
decision which you believe are wrong and will look at any new facts you have.
We may also review those parts which you believe are correct and may make
them unfavorable or less favorable to you.



CLICNY 0183

- You have 60 days to ask for an appeal.
- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.
- You must have a good reason for waiting more than 60 days to ask for an appeal.
- You have to ask for an appeal in writing. We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim". It contains more information about the appeal.

**Things To Remember For The Future**

Doctors and other trained staff decided that you are disabled under our rules. But, this decision must be reviewed at least once every 3 years. We will send you a letter before we start the review. Based on that review, your benefits will continue if you are still disabled, but will end if you are no longer disabled.

**If You Have Any Questions**

We invite you to visit our website at www.ssa.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-212-923-7960. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
CORNER 182 ST
4292 BROADWAY
NEW YORK, NY 10033

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security



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HA

# PAYMENT SUMMARY

**Your Regular Monthly Payment**

Here is how we figured your
regular monthly payment effective October 2002:

You are entitled to a monthly benefit of ....................$ 1,550.00

This equals the amount of
your regular monthly payment ..............................$ 1,550.00

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: October 14, 2002
Claim Number: 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HA

STEVEN A ALFANO
3800 WALDO AVE
APT 13G
BRONX, NY 10463-2169

You are entitled to monthly disability benefits beginning December 2000.

**The Date You Became Disabled**

We found that you became disabled under our rules on June 5, 2000.

However, you have to be disabled for 5 full calendar months in a row before you can be entitled to benefits. For these reasons, your first month of entitlement to benefits is December 2000.

**What We Will Pay And When**

- You will receive $1,550.00 for October 2002 around November 20, 2002.
- After that you will receive $1,550.00 on or about the third Wednesday of each month.
- Later in this letter, we will show you how we figured these amounts.

The day we make payments on this record is based on your date of birth.

Enclosure(s):
Pub 05-10153
Pub 05-10058

C

See Next Page



From: Eva Alfano/Steven Alfano   To: Maria Clark   Date: 1/23/03 Time: 4:37:08 PM   Page 3 of 15

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HA                                    Page 2 of 6

## Your Benefits

The following chart shows your benefit amount(s) before any deductions or
rounding. The amount you actually receive(s) may differ from your full benefit
amount. When we figure how much to pay you, we must deduct certain
amounts, such as Medicare premiums. We must also round down to the nearest
dollar.

| Beginning Date | | Benefit Amount | Reason |
|---|---|---|---|
| December | 2000 | $1,507.40 | Entitlement began |
| January | 2001 | $1,510.80 | Credit for additional earnings |
| December | 2001 | $1,550.00 | Cost-of-living adjustment |

## Other Government Payments Affect Benefits

We are holding your Social Security benefits for December 2000 through
September 2002. We may have to reduce these benefits if you received
Supplemental Security Income (SSI) for this period. We will not reduce your
past-due benefits if you did not get SSI benefits for those months.

However, we will withhold part of any past-due benefits to pay your lawyer.
Later in this letter, we will tell you more about the money we are withholding to
pay your lawyer. When we decide how much you are due for this period, we will
send you another letter.

## Information About Medicare

You are entitled to medicare hospital and medical insurance beginning
December 2002.

We will send you a Medicare card. You should take this card with you when you
need medical care. If you need medical care before receiving the card and your
coverage has already begun, use this letter as proof that you are covered by
Medicare.

## Information About Lawyer's Fees

We have approved the fee agreement between you and your lawyer.

Your past-due benefits are $33,617.00 for December 2000 through
September 2002. Under the fee agreement, the lawyer cannot charge you more
than $4,000.00 for his or her work. The amount of the fee does not include any
out-of-pocket expenses (for example, costs to get copies of doctors' or hospitals'
reports). This is a matter between you and the lawyer.

If we approve your claim for SSI, the lawyer may be able to charge an additional
amount for his or her work. We will send you another letter about SSI telling
you the additional amount of the fee, if any, he or she can charge.

CLICNY 0218

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HA                                    Page 3 of 6

## How To Ask Us To Review The Determination On The Fee Amount

You, the lawyer or the person who decided your case can ask us to review the
amount of the fee we say the lawyer can charge.

If you think the amount of the fee is too high, write us within 15 days from the
day you get this letter. Tell us that you disagree with the amount of the fee and
give your reasons. Send your request to this address:

> Social Security Administration
> Office of Hearings and Appeals
> Attorney Fee Branch
> 5107 Leesburg Pike
> Falls Church, Virginia 22041-3255

The lawyer also has 15 days to write us if he or she thinks the amount of the fee
is too low.

If we do not hear from you or the lawyer, we will assume you both agree with
the amount of the fee shown.

## Information About Past-Due Benefits Withheld To Pay A Lawyer

Because of the law, we usually withhold 25 percent of the total past-due benefits
to pay an approved lawyer's fee. We withheld $8,404.25 from your past-due
benefits to pay the lawyer.

We are paying the lawyer from the benefits we withheld. Therefore, we must
collect from the lawyer a service charge of 6.3 percent of the fee amount we pay.
We will subtract the service charge from the amount payable to the lawyer. This
means that we subtract $252.00 from the $4,000.00 we are paying toward the
lawyer's fee, and send him or her $3,748.00.

The lawyer cannot ask you to pay for the service charge. If the lawyer disagrees
with the amount of the service charge, he or she must write to the address shown
at the top of this letter. The lawyer must tell us why he or she disagrees within
15 days from the day he or she gets this letter.

## Other Social Security Benefits

The benefit described in this letter is the only one you can receive from Social
Security. If you think that you might qualify for another kind of Social Security
benefit in the future, you will have to file another application.

## Your Responsibilities

The decisions we made on your claim are based on information you gave us. If
this information changes, it could affect your benefits. For this reason, it is
important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security Disability
Benefits...What You Need To Know." It will tell you what must be reported and
how to report. Please be sure to read the parts of the pamphlet which explain
what to do if you go to work or if your health improves.

CLICNY 0219

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HA                                                        Page  4 of 6

A state or other public or private vocational rehabilitation provider may contact
you to talk about their services.  The rehabilitation provider may offer you
counseling, training, and other services that may help you go to work.  To keep
getting disability benefits, you have to accept the services offered unless we
decide you have a good reason for not accepting.

You do not have to wait to be contacted about vocational rehabilitation services.
You can contact the nearest state vocational rehabilitation office directly and let
them know that you are interested in receiving services.

If you go to work, special rules can allow us to continue your cash payments and
health insurance coverage.  For more information about how work and earnings
may affect disability benefits, you may call or visit any Social Security office.
You may wish to ask for any of the following publications:

- Social Security - Working While Disabled...How We Can Help (SSA
  Publication No. 05-10095).

- Social Security - If You Are Blind--How We Can Help (SSA Publication
  No. 05-10052).

- How Social Security Can Help With Vocational Rehabilitation (SSA
  Publication No. 05-10050).

**Other Information**

We are sending a copy of this notice to KENNETH SCHEER and ADAM
COHEN.

**Do You Disagree With The Decision?**

This action supersedes our previous determination and is in accordance with the
decision on your hearing request.  You have already been notified of your appeal
rights regarding the decision made on your hearing request and what you must
do to have that decision reexamined.  If you want this reconsideration, you may
request it through any Social Security office.  If additional evidence is available,
you should submit it with your request.  We will review the case and consider
any new facts you have.  A person who did not make the first decision will decide
your case.  We will correct any mistakes.  We will review those parts of the
decision which you believe are wrong and will look at any new facts you have.
We may also review those parts which you believe are correct and may make
them unfavorable or less favorable to you.

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HA                                              Page 5 of 6

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got
  this letter 5 days after the date on it unless you show us that you did not
  get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an
  appeal.

- You have to ask for an appeal in writing. We will ask you to sign a Form
  SSA-561-U2, called "Request for Reconsideration". Contact one of our
  offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made
on Your Social Security Claim". It contains more information about the appeal.

**Things To Remember For The Future**

Doctors and other trained staff decided that you are disabled under our rules.
But, this decision must be reviewed at least once every 3 years. We will send
you a letter before we start the review. Based on that review, your benefits will
continue if you are still disabled, but will end if you are no longer disabled.

**If You Have Any Questions**

We invite you to visit our website at www.ssa.gov on the Internet to find general
information about Social Security. If you have any specific questions, you may
call us toll-free at 1-800-772-1213, or call your local Social Security office at
1-212-923-7960. We can answer most questions over the phone. If you are deaf
or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also
write or visit any Social Security office. The office that serves your area is
located at:

SOCIAL SECURITY
CORNER 182 ST
4292 BROADWAY
NEW YORK, NY 10033

If you do call or visit an office, please have this letter with you. It will help us
answer your questions. Also, if you plan to visit an office, you may call ahead to
make an appointment. This will help us serve you more quickly when you arrive
at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

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HA

# PAYMENT SUMMARY

**Your Regular Monthly Payment**

Here is how we figured your
regular monthly payment effective October 2002:

You are entitled to a monthly benefit of ....................$ 1,550.00

This equals the amount of
your regular monthly payment ..............................$ 1,550.00

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: October 22, 2002
Claim Number: 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HC2

STEVEN ALFANO FOR
ANDREA ROSE ALFANO
3800 WALDO AVEUE
APT 13G
BRONX, NY 10463-2169

ANDREA R ALFANO is entitled to monthly child's benefits beginning December 2000.

We have chosen you to be her representative payee. Therefore, you will receive her checks and use the money for her needs.

**What We Will Pay And When**

- You will receive $8,393.00 around October 28, 2002.
- This is the money ANDREA is due for December 2000 through September 2002.
- ANDREA R ALFANO's next payment of $387.00, which is for October 2002, will be received on or about the third Wednesday of November 2002.
- After that you will receive $387.00 on or about the third Wednesday of each month.

The day we make payments on this record is based on STEVEN A ALFANO's date of birth.

**Your Benefits**

We raised her monthly benefit amount beginning December 2001 because the cost of living increased.

We changed her monthly benefit amount beginning January 2001 because we raised Mr. ALFANO's benefit.

Enclosure(s):
Pub 05-10076
Pub 05-10077
Pub 05-10058

C

See Next Page

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HC2                                           Page 2 of 3

## Work And Earnings Affect Payments

The monthly earnings test applies only to 1 year. That year is the first year a
beneficiary has a non-work month after entitlement to Social Security benefits.
Our records show that ANDREA had or will have at least one non-work month
in 2000. If she ever goes to work, we will pay benefits for each year based on
her work and earnings for that year.

## Health Insurance For Children

If this notice is for a child under age 19 who is not covered by health insurance,
there is a Children's Health Insurance Program that may help. To find out
more, you can look on the Internet at www.insurekidsnow.gov or call, toll free,
1-877-KIDS-NOW (1-877-543-7669). The number connects you to your state
program.

## Other Social Security Benefits

The benefit described in this letter is the only one she can receive from Social
Security. If you think that she might qualify for another kind of Social Security
benefit in the future, you will have to file another application.

## Your Responsibilities

ANDREA's benefits are based on the information you gave us. If this
information changes, it could affect her benefits. For this reason, it is important
that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security or Survivors
Benefits...What You Need to Know". It tells you what must be reported and how
to report. Please be sure to read that part of the pamphlet which explains how
work could change payments.

As a representative payee, you have additional responsibilities. They are
discussed in the enclosed pamphlet, "A Guide for Representative Payees."

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review
your case and consider any new facts you have. A person who did not make the
first decision will decide ANDREA's case. We will correct any mistakes. We will
review those parts of the decision which you believe are wrong and will look at
any new facts you have. We may also review those parts which you believe are
correct and may make them unfavorable or less favorable to her.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got
  this letter 5 days after the date on it unless you show us that you did not
  get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an
  appeal.

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 HC2                                              Page 3 of 3

- You have to ask for an appeal in writing. We will ask you to sign a Form SSA-561-U2, called "Request for Reconsideration". Contact one of our offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made on Your Social Security Claim". It contains more information about the appeal.

### If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you. There are groups that can help you find a lawyer or give you free legal services if you qualify. There are also lawyers who do not charge unless you win your appeal. Your local Social Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know. If you hire someone, we must approve the fee before he or she can collect it. And if you hire a lawyer, we will withhold up to 25 percent of any past due benefits to pay toward the fee.

### If You Have Any Questions

We invite you to visit our website at www.ssa.gov on the Internet to find general information about Social Security. If you have any specific questions, you may call us toll-free at 1-800-772-1213, or call your local Social Security office at 1-212-923-7960. We can answer most questions over the phone. If you are deaf or hard of hearing, you may call our TTY number, 1-800-325-0778. You can also write or visit any Social Security office. The office that serves your area is located at:

SOCIAL SECURITY
CORNER 182 ST
4292 BROADWAY
NEW YORK, NY 10033

If you do call or visit an office, please have this letter with you. It will help us answer your questions. Also, if you plan to visit an office, you may call ahead to make an appointment. This will help us serve you more quickly when you arrive at the office.

Jo Anne B. Barnhart
Commissioner
of Social Security

CLICNY 0225

# Social Security Administration
## Retirement, Survivors and Disability Insurance
Notice of Award

Office of Central Operations
1500 Woodlawn Drive
Baltimore, Maryland 21241-1500
Date: October 22, 2002
Claim Number: 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HC1

STEVEN ALFANO FOR
MICHAEL JAMES ALFANO
3800 WALDO AVEUE
APT 13G
BRONX, NY 10463-2169

MICHAEL J ALFANO is entitled to monthly child's benefits beginning
December 2000.

We have chosen you to be his representative payee. Therefore, you will receive his
checks and use the money for his needs.

**What We Will Pay And When**

- You will receive $8,393.00 around October 28, 2002.

- This is the money MICHAEL is due for December 2000 through
  September 2002.

- MICHAEL J ALFANO's next payment of $387.00, which is for
  October 2002, will be received on or about the third Wednesday of
  November 2002.

- After that you will receive $387.00 on or about the third Wednesday of
  each month.

The day we make payments on this record is based on STEVEN A ALFANO's
date of birth.

**Your Benefits**

We raised his monthly benefit amount beginning December 2001 because the cost
of living increased.

We changed his monthly benefit amount beginning January 2001 because we
raised Mr. ALFANO's benefit.

Enclosure(s):
Pub 05-10076
Pub 05-10077
Pub 05-10058

C                                  See Next Page

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HCI                                    Page 2 of 3

## Work And Earnings Affect Payments

The monthly earnings test applies only to 1 year. That year is the first year a beneficiary has a non-work month after entitlement to Social Security benefits. Our records show that MICHAEL had or will have at least one non-work month in 2000. If he ever goes to work, we will pay benefits for each year based on his work and earnings for that year.

## Health Insurance For Children

If this notice is for a child under age 19 who is not covered by health insurance, there is a Children's Health Insurance Program that may help. To find out more, you can look on the Internet at www.insurekidsnow.gov or call, toll free, 1-877-KIDS-NOW (1-877-543-7669). The number connects you to your state program.

## Other Social Security Benefits

The benefit described in this letter is the only one he can receive from Social Security. If you think that he might qualify for another kind of Social Security benefit in the future, you will have to file another application.

## Your Responsibilities

MICHAEL's benefits are based on the information you gave us. If this information changes, it could affect his benefits. For this reason, it is important that you report changes to us right away.

We have enclosed a pamphlet, "When You Get Social Security or Survivors Benefits...What You Need to Know". It tells you what must be reported and how to report. Please be sure to read that part of the pamphlet which explains how work could change payments.

As a representative payee, you have additional responsibilities. They are discussed in the enclosed pamphlet, "A Guide for Representative Payees."

## Do You Disagree With The Decision?

If you disagree with this decision, you have the right to appeal. We will review your case and consider any new facts you have. A person who did not make the first decision will decide MICHAEL's case. We will correct any mistakes. We will review those parts of the decision which you believe are wrong and will look at any new facts you have. We may also review those parts which you believe are correct and may make them unfavorable or less favorable to him.

- You have 60 days to ask for an appeal.

- The 60 days start the day after you get this letter. We assume you got this letter 5 days after the date on it unless you show us that you did not get it within the 5-day period.

- You must have a good reason for waiting more than 60 days to ask for an appeal.

CLICNY 0227

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HC1                                            Page  3 of  3

- You have to ask for an appeal in writing.  We will ask you to sign a Form
  SSA-561-U2, called "Request for Reconsideration".  Contact one of our
  offices if you want help.

Please read the enclosed pamphlet, "Your Right to Question the Decision Made
on Your Social Security Claim".  It contains more information about the appeal.

### If You Want Help With Your Appeal

You can have a friend, lawyer or someone else help you.  There are groups that
can help you find a lawyer or give you free legal services if you qualify.  There
are also lawyers who do not charge unless you win your appeal.  Your local Social
Security office has a list of groups that can help you with your appeal.

If you get someone to help you, you should let us know.  If you hire someone, we
must approve the fee before he or she can collect it.  And if you hire a lawyer, we
will withhold up to 25 percent of any past due benefits to pay toward the fee.

### If You Have Any Questions

We invite you to visit our website at www.ssa.gov on the Internet to find general
information about Social Security.  If you have any specific questions, you may
call us toll-free at 1-800-772-1213, or call your local Social Security office at
1-212-923-7960.  We can answer most questions over the phone.  If you are deaf
or hard of hearing, you may call our TTY number, 1-800-325-0778.  You can also
write or visit any Social Security office.  The office that serves your area is
located at:

                    SOCIAL SECURITY
                    CORNER 182 ST
                    4292 BROADWAY
                    NEW YORK, NY 10033

If you do call or visit an office, please have this letter with you.  It will help us
answer your questions.  Also, if you plan to visit an office, you may call ahead to
make an appointment.  This will help us serve you more quickly when you arrive
at the office.

                    *Jo Anne B. Barnhart*

                    Jo Anne B. Barnhart
                    Commissioner
                    of Social Security

CENTRALIZED APPEAL TEAM
MANAGER REVIEW

Date Submitted for Review 1-13-03

Date Reviewed 1-14-03

Comments: 11 - VOL Appeal
Denied 4-12-02 - Letter Had Been Rec'd From Atty Requesting Time To Submit Additional Info - The Additional Info Rec'd 4-15-01 - Nothing on File From Then until F/U Letter From Atty 4-15-02 w/ Additional Info - Acknowledged as Appeal 6-02
Significant med submitted & SS Award - Disabled Since 6-5-00
PR Requested - L/R Supported

Approved____________

Rejected____________

**DAVID H. TROTTER, M.D.**

Diplomate, American Board of Orthopaedic Surgeons
Fellow, American Academy of Orthopaedic Surgeons
Diplomate, American Board of Quality Assurance and Utilization Review Physicians

December 10, 2002

PATIENT: STEVEN ALFANO
FILE#: FS09073
DOB: 01/14/58

To Whom It May Concern:

The provided disability related medical records were thoroughly reviewed and evaluated. The initial provided record was a disability questionnaire apparently filled out by the claimant who indicated that he could not perform his own occupational activities due to "constant back pain prevents concentration...made worse by sitting...also produces pain and numbness in buttocks, legs and feet..." The claimant additionally indicated that he could not engage in any gainful employment due to the same rationale plus, "am unable to stand for periods of time or walk distance without stooping and experiencing foot drop. Must lay down frequently to rest."

The claimant indicated that he was 6'3' with a weight of 290 pounds and having been born in the year 1962. The claimant additionally indicated that his job title was that of a "wage and salary manager". The major and minor duties, equipment utilized, including a desktop computer were noted as indicated by the claimant.

The position description at the Weill Medical College of Cornell University of a compensation manager, including the position summary and major responsibilities, positional requirements and physical requirements were noted in a document September 2000.

A July 12, 2002 note from Dr. M. Alexiades was reviewed. It was noted that on June 15, 2000 the claimant had ceased working due to low back pain radiating into the left leg and causing pain in the leg. The claimant had exhibited a positive straight leg raising test and weakness of the left lower extremity. An MRI from June 9, 2000 had revealed that the claimant "suffers from moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type 3 end plate marrow changes, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation with impingement of the exiting L5 nerve root and moderate spinal stenosis. EMG/NCV studies taken on July 20, 2000 showed that he suffers from an L5-S1 radiculopathy with an antalgic gait.
He cannot perform heel toe walking and has decreased sensation in the lower left extremities. Further MRI studies taken on August 18, 2001 showed that he also has mild stenosis and narrowing of the neural foramen at the L4-5 level of the spine as well as impingement on the thecal sac at L5-S1." The claimant was diagnosed "as suffering from lumbar spondylosis with stenosis and radiculopathy...despite conservative treatment he continues to be symptomatic and has a poor prognosis and surgery has been discussed...." The claimant's condition, "has essentially been the same since June 5, 2000 and all of these limitations have been applicable since that time and therefore remains totally disabled...."

A July 24, 2002 note from Dr. K. Roach was reviewed and it was noted that the claimant had

multiple medical conditions as documented, including spinal stenosis, among others. It was noted that the claimant had been diagnosed as suffering from L5-S1 spondylosis with stenosis and radiculopathy, "based on all of this conservative treatment, In his opinion Dr. Alexiades feels that his prognosis is poor. I agree with Dr. Alexiades... believe that he is totally disabled and should not return to work. He experiences constant pain. He must lie down for approximately ½ to 2 hours per day because of fatigue associated with his pain...."

An August 31, 2000 document from a Dr. J. Farmer documented the claimant's symptoms and exam findings and MRI scan. The impression was that of degenerative disc disease at L5-S1 with bilateral lower extremity pain. The consideration at that point in time was for ongoing nonoperative intervention. A series of notes from the fall and into the early winter of 2000 from Dr. Farmer reiterated the diagnoses and noted the claimant's ongoing symptoms and exam findings along with ancillary test results.

It was noted as of February 26, 2001 by Dr. Farmer that "I do believe that a significant portion of his symptoms are coming from the degenerative disc disease and if he does not improve with conservative care he may require a lumbar fusion."

The February 7, 2002 assessment form indicated that the claimant had a poor prognosis and had severe ongoing limitations of overall activities as per Dr. M. Alexiades. Numerous notes from the year 2000 from Dr. Alexiades were also reviewed. The claimant had persistent low back pain with occasional numbness in the left leg and the back pain had been "quite severe despite 2 epidural injections...my recommendation is that he see a spine surgeon for possible fusion at L5-S1."

The MRI from June 9, 2000 revealed moderate to severe L5-S1 spondylosis with impingement on the inferior aspect of the left L5 nerve root.

The Physical Ability Assessment from January 15, 2001 from Dr. Alexiades revealed diagnosis of L5-S1 HNP with mechanical back pain and radiculopathy and that surgery was recommended and that the claimant could only lift 10 pounds occasionally, push or pull 10 pounds occasionally and climb regular stairs occasionally.

The January 8, 2001 note form Dr. A. Schiff revealed that the claimant was 42 years of age, "needs surgery for L5-S1 stenosis/spondylosis for neurosurgery now on disability, will RX Celexa for depression." A series of notes from that physician were also noted.

An August 17, 2000 note from Dr. S. McChance was reviewed. The claimant was noted to have ongoing low back pain with lower extremity radiculopathy "he did have a car accident in 1997, at which time he felt that he began losing strength of the left leg...severe low back pain...numbness in both feet...pain down the left leg with sitting and standing, pain in the left buttock and posterior thigh...."

The exam findings were also reviewed. The claimant was noted to be 6'4" with a weight of 300 pounds. The claimant was noted to have decreased sensation in the left L5 and S1 distribution with weak left tibialis anterior and left hip abductor. The MRI findings were reviewed. The overall diagnosis was felt to be discogenic low back pain with left L5-S1 radiculopathy. There was a consideration for an L5-S1 fusion.

The December 18, 2000 Physical Ability Assessment form that appears to have been filled out by a neurologist revealed that the claimant could sit for less than 5.5 hours, stand for less than 5.5 hours and lift 10 pounds occasionally, among other findings. "I saw this patient only once, July 20, 2000."

The electrodiagnostic study from July 20, 2000 was reviewed and the findings revealed nonspecific neurogenic abnormalities in both legs, "these findings did not clearly differentiate bilateral L5-S1 radiculopathies from mild polyneuropathy...."

The August 23, 2000 note from Dr. R. Snow was reviewed. The impression was that of L5-S1 radiculopathy, left side greater than right secondary to lumbar stenosis. The plan was for a lumbar laminectomy at L5 bilaterally with a possible discectomy at L5-S1 on the left. The patient was going to be thinking about that procedure. The December 15, 2000 Physical Ability Assessment by Dr. Snow revealed that the claimant could sit or stand for less than 2.5 hours, among other findings.

The note from September 14, 2000 from Dr. J. Farmer revealed that: "I do feel it is likely that the pain he is experiencing is from the significant degenerative changes seen at L5-S1. He feels that his pain is severe and continues to limit him on a daily basis and wishes to obtain surgical intervention. ..."

As noted, the additional notes from Dr. Farmer from the summer of 2000 were reviewed and the claimant was felt to be impaired on an ongoing basis as per the disability form dated October 30, 2000.

The August 18, 2001 lumbar spine MRI revealed moderate to severe L5-S1 spondylosis along with a posterior disc osteophyte complete at L5-S1 causing moderate spinal stenosis along with mild L4-5 spinal stenosis. There was noted to be narrowing in the neural foramen at L4-5 in particular and mild to moderate left sided neural foraminal narrowing at L5-S1.

No additional records were provided nor available.

**ANALYSIS AND DISCUSSION:**

After having reviewed and evaluated the entirety of the provided medical records it is this reviewer's impression in response to the queries by the medical review specialist that:

1. The medical documentation does support the claimant's apparent inability to perform his occupation as a wage and salary manager considered to be overwhelmingly in the sedentary category from June 6, 2000 through December 3, 2000.

2. Additionally, the medical documentation supports the claimant's inability to perform his occupation as a wage and salary manager from December 3, 2000 through the present.

3. The provided medical records do indicate that the claimant has a combination of symptoms, exam abnormalities, including ancillary test results that do support the ongoing diagnosis of relatively severe multilevel spinal stenosis and nerve root impingement/radiculopathy that does appear to be overall as an aggregate quite severe and severe enough that the claimant would appear to have been precluded from working his full time sedentary occupation as a wage and salary manager from June 6, 2000 through December 3, 2000 and from December 3, 2000 through the present.

4. The aforementioned rationale with regards to this reviewer's opinion that the claimant appears to be stable on an ongoing basis from his usual job activities are that no matter what position this claimant assumes he does appear to have symptomatic spinal stenosis and nerve root impingement on the basis of both soft tissue, i.e. discopathy and bony osteophytes. The nerves at the level of L5-S1 at a minimum appear to be resulting in ongoing radiculopathy in particular of the left lower extremity. The claimant appears to have unfortunately not responded to significant nonoperative treatment and the claimant appears to have an indication for surgical intervention. The claimant's overall pain level severity does appear to correlate with his overall symptoms and exam findings and his overall large body habitus may well have contributed towards his ongoing relatively severe spinal pathology. Overall, the claimant does appear to have significant ongoing symptomatology



of back pain and lower extremity radiculopathy that would not allow the claimant to reasonably perform his job activities on a full time basis. Therefore, to a reasonable degree of medical probability, the claimant would overall appear to be disabled from his usual occupational activities certainly a full time basis and plausibly on a part time basis assuming that frequent changes of position and/or even allowances for occasional lying down accommodations are not available. The claimant as noted, does appear to have a well documented case of spinal stenosis with radiculopathy resistant to nonoperative means and appears to have a significant correlation overall between the symptoms, exam findings and ancillary test results rendering the claimant, I this reviewer's opinion, disabled form his usual job activities when correlating those apparent activities with the claimant's provided medical records.

5. Finally, from an informational standpoint, the medical records clearly document the evaluating and/or treating physician's opinions and therefore from an informational standpoint, a telephonic discussion would not be productive. Should any additional records be provided or available in the future then certainly an addendum could be rendered either by this or an alternate reviewer if applicable.

The opinions rendered in this report are the opinions of the reviewer. The review has been conducted without a medical examination of the individual reviewed. The review is based on documentation provided with the assumption that the material is true and correct. If more information becomes available at a later date, an addendum may be requested. Such information may or may not change the opinions rendered in this report. This report is a clinical assessment of the documentation and the opinions are based on the information available. This opinion does not constitute per se, a recommendation for specific claims or administrative functions to be made or enforced.

Sincerely,

DAVID H. TROTTER, M.D.
Diplomate, American Board of Orthopedic Surgeons
Fellow, American Academy of Orthopedic Surgeons
Diplomate, American Board of Quality Assurance and Utilization Review Physicians
Illinois License # 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
Texas License # L3854

DHT/da

D: 12/09/02
T: 12/10/02

Medha Bharadwaj
Appeals Claim Examiner

Cigna Disability Management Solutions

CIGNA Group Insurance
Life · Accident · Disability

December 2, 2002

Routing 212
12225 Greenville Avenue
Suite 1000 LB-179
Dallas, TX 75243-9382
Telephone 800.352.0611 ext. 1249
Facsimile 860.731.3211
medha.bharadwaj@cigna.com

ADAM S COHEN
ATTORNEY AT LAW
81 MAIN STREET SUITE 300
WHITE PLAINS NY 10601

Re: Long Term Disability
Claimant: Steven Alfano
Social Security #: 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
Account Name: Weill Medical College
Policy #: NYK 1972
Life Insurance Company of North America

Dear Mr. Cohen:

I am writing to advise you of the status of your client's Long Term Disability (LTD) claim under the above captioned policy. At this time, I am not in a position to render a determination.

The original decision was based on a medical judgment, therefore we must consult a health care professional with the appropriate training and experience in the field of medical involved in the medical judgment. To meet this requirement we will be requesting a peer review.

We hope to receive the Peer Review Report within 30 days. When we receive the Peer Review report, we will review the information within 30 dates of receipt of the Peer Review and update you with the status of your appeal.

Thank you for your understanding and cooperation. Should you have any questions, please feel free to contact me at the number listed above.

Sincerely,

Medha Bharadwaj

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

CORNELL UNIVERSITY

Joan and Sanford I. Weill Medical College

Keith W Roach, MD
Associate Professor of Clinical Medicine
Associate Professor of Public Health and Epidemiology
Program Director, Primary Care Residency Program
Cornell Internal Medicine Associates
Department of Medicine

NEWYORK PRESBYTERIAN HOSPITAL

505 East 70th Street, HT-4
Helmsley Tower, Suite 450
New York, NY 10021
Telephone: 212 746-9663
Fax: 212 746-4609

Steven Alfano
3800 Waldo Ave #13G
Bronx, NY 10463

July 24, 2002

NYH # 228-41-47

Steven Alfano is under my care at the Cornell Internal Medicine Associates at The New York Hospital for the following medical conditions:

ICD 213.7 BEN NEO LONG BONES LEG [05/13/02-06/05/02]
ICD V72.84 PREOP EXAMINATION NOS [01/18/02-06/11/02]
ICD 724.02 SPINAL STENOSIS-LUMBAR [09/06/00-06/11/02]
ICD 724.00 SPINAL STENOSIS NOS [06/19/00-10/16/01]
ICD 600. HYPERPLASIA OF PROSTATE [03/13/00-03/13/00]
ICD 535.40 GASTRITIS NEC [06/03/99-06/03/99]
ICD 535.50 GASTRITIS/DUODENITIS NOS [06/03/99-03/13/00]
ICD 735.9 ACQ DEFORMITY OF TOE NOS [04/23/99-04/23/99]
ICD 681.9 CELLULITIS OF DIGIT NOS [02/22/99-05/22/00]
ICD 716.84 ARTHROPATHY NEC-HAND [02/18/99-02/18/99]
ICD 346.00 CLSSC MIGRAINE/NOT INTRC [09/28/98-01/18/02]
ICD 490. BRONCHITIS NOS [09/08/98-10/23/00]
ICD 784.0 HEADACHE [03/02/98-03/31/98]
ICD 278.00 OBESITY NOS [06/30/97-10/23/00]
ICD E929.0 LATE EFF MOTOR VEHIC ACC [06/30/97-06/30/97]
ICD 305.11 TOBACCO ABUSE-CONTINUOUS [04/09/97-12/21/99]
ICD 726.19 ROTATOR CUFF DIS NEC [04/09/97-06/11/02]
ICD 478.9 UPPER RESP DIS NEC/NOS [01/17/97-01/17/97]
ICD 346.0 CLASSICAL MIGRAINE [10/01/96-10/01/96]
ICD 401.9 HYPERTENSION NOS [10/01/96-10/23/00]
ICD 716.17 TRAUM ARTHROPATHY-ANKLE [04/30/96-05/22/00]
ICD 727.41 GANGLION OF JOINT [01/30/96-03/11/97]
ICD 462. ACUTE PHARYNGITIS [11/01/95-11/01/95]
ICD 278.0 OBESITY [10/17/95-01/30/96]
ICD 401. ESSENTIAL HYPERTENSION [09/29/95-09/29/95]
ICD 686.9 LOCAL SKIN INFECTION NOS [07/31/95-04/27/01]
ICD 079.99 VIRAL INFECTION NOS [12/21/99-12/21/99]

The patient is on the following medications:

- 2 -

VICODIN 5/500 TABLET / 1 tab po q 4 h prn
TRIAMCINOLONE 0.1% CREAM / apply bid
VIOXX 50MG TABLET / 1 tab po qd
CELEXA 20MG TABLET / 1 po qd
ZESTRIL 20MG TABLET / 1 po qd
PREVACID 30MG CAPSULES / 1 po qd
IMITREX NASAL SPRAY 20MG/SPRAY / 1 spray intranasally prn
IMITREX 50MG TABLET / 1-2 tabs with onset of migrain
ASPIRIN 81MG TABLET EC / 1 po qd
WELLBUTRIN SR 150MG TABLET / 1 tab po bid

The patient was referred to Dr. Michael Alexiades who is an orthopedist. He has been treating Mr. Alfano for numerous injuries since May 15, 1996. On June 5, 2000 Mr. Alfano ceased working due to low back pain radiating into the left leg and causing pain in the leg. He exhibited a positive straight leg raising test and weakness of the left lower extremity, as demonstrated in heel-toe walking tests.

On June 9, 2000 Mr. Alfano had an MRI taken. The results specified that he suffers from moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end-plate marrow changes, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation, with impingement of the exiting L5 nerve root and a moderate spinal stenosis. EMG/NCV studies taken on July 20, 2000 show that he suffers from an L5-S1 radiculopathy, with an antalgic gait. He cannot perform heel-toe walking and has decreased sensation in the left lower extremity. Further MRI studies taken on August 18, 2001 show that he also has mild stenosis and narrowing of the neural foramina at the L4-5 level of the spine as well as impingement on the thecal sac at L5-S1.

Based on the foregoing, Mr. Alfano has been diagnosed as suffering from L5-S1 spondylosis with stenosis and radiculopathy. Treatment has been prescribed in the form of physical therapy, epidural injections and antiinflammatory medication. The possibility of surgery has also been discussed to correct this condition. Based on all of this conservative treatment, in his opinion, Dr. Alexiades feels that his prognosis is poor. I agree with Dr. Alexiades.

With regard to whether Mr. Alfano can return to work, I believe that he is totally disabled and should not return to work. He experiences constant pain. He must lie down for approximately one-half to two hours per day because of fatigue associated with his pain. He cannot sit, stand or walk for any prolonged period of time (i.e., 15-20 minutes), and cannot lift or carry anything weighing over five pounds. Moreover, his condition has essentially been the same since June 5, 2000, and all of these limitations have been applicable since that time. I remain hopeful that with proper treatment (which is increasingly likely to include surgery) that Mr. Alfano will be able to work, however, at this time, it is therefore my medical opinion that Mr. Steven Alfano has been totally disabled since June 5, 2000. Please consider this letter in connection with his claim for Long Term Disability benefits.



FROM: EVA ALFANO/STEVEN ALFANO TO: AD[illegible] COHEN DATE: 7/29/02 TIME: [illegible] PM PAGE 4 OF 4

-3-

If you have any questions, please call me at the number above.

Sincerely,

Keith Roach, MD

Michael M. Alexiades, M.D., P.C.
159 East 74th Street
New York, NY 10021
212-734-1288

July 12, 2002

Re: Mr. Steven Alfano

To Whom It May Concern:

I have been treating Steven Alfano for numerous injuries since May 15, 1996.

On June 15, 2000, Mr. Alfano ceased working due to low back pain radiating into the left leg and causing pain in the leg. He exhibited a positive straight leg raising test and weakness of the left lower extremity, as demonstrated in heel-toe walking tests.

An MRI taken on June 9, 2000 revealed that Mr. Alfano suffers from moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end plate marrow changes, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation, with impingement of the exiting L5 nerve root and moderate spinal stenosis. EMG/NCV studies taken on July 20, 2000 show that he suffers from an L5-S1 radiculopathy, with an antalgic gait. He cannot perform heel-toe walking and has decreased sensation in the lower left extremity. Further MRI studies taken on August 18, 2001 show that he also has mild stenosis and narrowing of the neural foramina at the L4-5 level of the spine as well as impingement on the thecal sac at L5-S1.

Based on the foregoing, as well as my own clinical testing, I have diagnosed Mr. Alfano as suffering from lumbar spondylosis with stenosis and radiculopathy. He has received treatment in the form of physical therapy, epidural injections and anti-inflammatory medication. Unfortunately, despite conservative treatment he continues to be symptomatic and has a poor prognosis and surgery has been discussed.

Mr. Alfano experiences pain and must lie down for approximately one-half to two hours per day because of fatigue associated with his pain. He cannot sit, stand or walk for any prolonged period of time (i.e., 15-20 minutes) and cannot lift or carry anything weighing over five pounds. His condition has essentially been the same since June 5, 2000 and all of these limitation have been applicable since that time and therefore remains totally disabled



FROM: EVA ALFANO/STEVEN ALFANO TO: A[illegible] COHEN DATE: [illegible] TIME: 10:[illegible] AM PAGE 1 OF 4

since.

Please consider this letter in connection with his claim for Long Term Disability benefits.

If I can be of further assistance, please do not hesitate to contact me at the above number.

Sincerely,

Michael M. Alexiades, M.D.

MMA:vjp

1



TELEPHONE
(212) 734-1288

FAX # (212) 288-1524

MICHAEL M. ALEXIADES, M.D., P.C.
ORTHOPAEDIC SURGERY

BY APPOINTMENT

159 EAST 74TH STREET
NEW YORK, NY 10021



LAW OFFICES OF
ADAM S. COHEN
81 MAIN STREET, SUITE 300
WHITE PLAINS, NEW YORK 10601

(914) 421-0080
(718) 681-3907
FAX: (914) 421-0035

ADAM S. COHEN*

DONALD N. SILVERMAN
ROBIN A. BROGAL
OF COUNSEL

*ADMITTED IN NY AND CT

1015 GRAND CONCOURSE
BRONX, NY 10452

9 W. PROSPECT AVENUE
MT. VERNON, NY 10550

9-16-02

CIGNA-D.O.1.2

September 13, 2002

Mary D. Ryan
Case Manager
CIGNA Group Insurance
Disability Appeals Team
12225 Greenville Ave., 5th Floor
Dallas, Texas 75243

Tarrytown

NOT SAME

| | |
|---|---|
| Re: | Steven Alfano |
| SS# | 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 |
| Policy # | NYK 1972 |
| Policy Name: | Weill Medical College |
| Underwriter: | Life Ins. Company of America |

Dear Ms. Ryan:

We are writing to inform you that Steven Alfano has been found totally disabled by the Social Security Administration, as of June 5, 2000. You may recall that he is also claiming that he is totally disabled as of June 5, 2000 in this case as well.

We hereby assert that this decision should be determinative in his claim for Long Term Disability benefits. The Social Security Administration adjudicated that same claim, with the same evidence and ruled that Mr. Alfano has been disabled since June 5, 2002. We would expect that CIGNA would naturally reach the same result.

Please consider this decision as evidence of Mr. Alfano's disability. Moreover, please inform us when a decision has been reached in this matter.

Very truly yours,

Adam S. Cohen

Adam S. Cohen, Esq.

ASC/ac
encl.
cc: Steven Alfano

SOCIAL SECURITY ADMINISTRATION

Refer To: 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

Office of Hearings and Appeals
226 E. 161st St.
2nd Floor, Suite 4
Bronx, New York 10451

Date: AUG 27 2002

DATE MAILED SEP 05 2002

Steven A. Alfano
3800 Waldo Avenue
Apt. 13G
Bronx, NY 10463

**NOTICE OF DECISION – FULLY FAVORABLE**

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

**This Decision is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another office may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How To File An Appeal**

To file an appeal you or your representative must request the Appeals Council to review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255. Please put the Social Security number shown above on any appeal you file.

See Next Page



Steven A Alfano (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)



Page 2 of 3

## Time To File An Appeal

To file an appeal, you must file your request for review within 60 days from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time To Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider with your request for review.

## How An Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulations exists. Section 404.970 and 416.1470 of the regulation list these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## If No Appeal And No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

Steven A Alfano (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)

Page 3 of 3

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is 212-740-0936. Its address is 4292 Broadway, New York NY 10033.

Kenneth L. Scheer
Administrative Law Judge

cc:     Adam S. Cohen, Esq.
        81 Main Street, Suite 300
        White Plains, NY 10601

CLICNY 0259

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings and Appeals**

**DECISION**

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| Steven A Alfano (Claimant) | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |
| (Wage Earner) | 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 (Social Security Number) |

This case is before the undersigned Administrative Law Judge pursuant to a request for hearing filed on July 30, 2001. (Exhibit 2B). I carefully have considered the documents identified in the record as exhibits. Every reasonable effort has been made to develop the medical record pursuant to 20 CFR §§ 404.1512 and 416.912. I find that the evidence of record is adequate to reach a conclusion regarding the claimant's disability and that no further evidence is required in this case. Any evidence received after the hearing has been proffered to the claimant.

## PROCEDURAL HISTORY

The claimant filed an application for Title II Disability Insurance benefits and an application for Title XVI Supplemental Security Income benefits on February 21, 2001, alleging disability based on obesity, an arm problem, a back problem and hypertension as of June 5, 2000. His applications were denied initially only. Because this is a prototype claim, no reconsideration determination was rendered. Thereafter, the claimant filed a timely request for hearing before an Administrative Law Judge on July 30, 2001. (Exhibits 1A; 1B; 2B; 1D).

Accordingly, after proper notice, a hearing was held before me on August 1, 2002 at the Office of Hearings and Appeals in Bronx, New York. The claimant personally appeared and testified before me, as did Adam Cohen, Esq., who represents the claimant in this matter. Edna Clark, who testified in her capacity as a vocational expert witness, was also present at the hearing.

## ISSUES

The general issue to be determined in this case is whether the claimant is "disabled" within the meaning of the Social Security Act ("Act"). The Act defines "disability" as the inability to

engage in any substantial gainful activity due to physical or mental impairment(s) which can be expected to either result in death or last for a continuous period of not less than twelve months. 20 CFR §§ 404.1505, 416.905. The specific issues are whether the claimant was under a disability as defined in the Act and, if so, when such disability commenced and the duration thereof.

In order to meet the requirements of Title II of the Act, the claimant must be found disabled on or before December 31, 2005, the date the claimant will be last insured for Title II benefits. (Exhibit 2D). In order to meet the requirements of Title XVI of the Act, the claimant must be found disabled on February 21, 2001, the filing date of the Title XVI application, or thereafter.

## EVALUATION OF THE EVIDENCE

After an evaluation of the entire record and for the reasons set forth below, I find that the claimant has been disabled since June 5, 2000, the alleged onset date of disability. Therefore, the claimant is entitled to a period of disability commencing June 5, 2000, and to Disability Insurance benefits, and he is eligible for Supplemental Security Income benefits.

Born January 14, 1958, the claimant is currently 44 years old and he was 42 years old on the alleged onset date of disability, both of which is characterized by the Regulations as a "younger person." 20 CFR §§ 404.1563, 416.963. He is a college graduate. 20 CFR §§ 404.1564, 416.964. The claimant's past relevant work experience includes that of a wage and salary administrator, a personnel administrator, and a personnel analyst, jobs Edna Clark, the vocational expert witness, testified were exertionally sedentary to light, skilled jobs. Ms. Clark further testified that the claimant acquired transferable skills performing these jobs. These transferable skills included planning, developing, supervising, interpersonal communications, record keeping, and report writing. (Exhibits 2E; 7E; the claimant's testimony). 20 CFR §§ 404.1567, 404.1568, 416.967, 416.968.

The Regulations provide a five-step sequential evaluation to be followed when reviewing the question of whether the claimant is disabled. If it is determined that the claimant is or is not disabled at any point in the review, no further review is necessary.

The first step of the sequential evaluation involves an inquiry into the claimant's participation in substantial gainful activity from June 5, 2000, the alleged onset date of disability. Regulation 20 CFR Sections 404.1572 and 416.972 defines substantial work activity as work that involves doing significant physical or mental activities. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or work responsibilities are lessened from previous employment. Gainful work activity is the kind of work usually done for pay or profit, whether or not a profit is realized. The evidence of record and the claimant's testimony establish that the claimant has not performed substantial gainful activity at all relevant times. 20 CFR §§ 404.1571, 416.971.

In step two of the sequential evaluation process, I find that the claimant has the following impairments, which are considered to be "severe" within the meaning of the Social Security Act and Regulations: 1) spinal stenosis; and 2) L5-S1 spondylosis. These impairments are "severe"



because they impose more than a minimal or slight limitation on the claimant's ability to perform basic work-related activities. 20 CFR §§ 404.1520(c), 416.920(c), Social Security Ruling 96-3p.

At step three of the sequential evaluation process, I find that the claimant does not have clinical or laboratory findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 ("Listings"). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Therefore, the claimant's residual functional capacity must be assessed to determine whether he can perform his prior work or any other work that exists in significant numbers in the national and regional economies.

Diagnostic studies include a June 9, 2000 MRI of the lumbosacral spine, which showed moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end plate marrow changes, an annular disc bulge, facet osteoarthritis, a prominent posterolateral osteophyte formation with impingement of the exiting L5 nerve root, and moderate spinal stenosis. (Exhibits 2F, p. 2; 13F, p. 1; 14F, p. 1). An August 18, 2001 MRI of the lumbar spine showed moderate to severe L5-S1 spondylosis, posterior disc osteophyte complex at L5-S1 causing moderate spinal stenosis, and mild L4-5 spinal stenosis. (Exhibit 14F, p. 6).

Treatment has included epidural steroid injections, which have provided only mild benefit (Exhibits 9F; 14F, p. 1), and physical therapy (Exhibit 13F, p. 1). Other medications have included Triamcinolone, Vioxx, Celexa, Zestril, Prevacid, Imitrex and aspirin. (Exhibit 14F, p. 7).

Further, a May 31, 2001 treating report lists a diagnosis of left L5/S1 radiculopathy and herniated disc with symptoms to include back and left leg pain. The report also notes that the claimant cannot sit for long periods of time. Findings of a physical exam were unremarkable. (Exhibit 5F).

Andrew Schiff, M.D., referred the claimant to the Electromyography Laboratory of Beth Israel Medical Center on July 20, 2000 for possible left lumbosacral radiculopathy. The report notes that 2 months prior, the claimant made a sudden movement and felt sudden lower back pain and stiffness. A few days later, the pain radiated into the left buttock, posterior thigh and the ankle. The report further indicates that the claimant has had lower back pain since a 1997 car accident that is aggravated by sitting for long periods. Examination revealed full motor strength of 5/5 in all groups, although there was some give-way in left plantar and dorsiflexion of the foot and toes. His gait was slightly antalgic. He was able to stand, but not walk, on his heels and toes. A sensory exam revealed diminished pin in the left lateral border of the foot, and vibration was impaired in the great toes bilaterally. Electrophysiologic findings included prolonged left tibial and bilateral peroneal F-wave minimal latencies. The final medical impression included nonspecific neurogenic abnormalities in both legs of "uncertain significance" and late responses were prolonged bilaterally. These findings did not clearly differentiate bilateral L5/S1 radiculopathies from mild polyneuropathy. However, the report concludes that the clinical and electrophysiologic features taken together suggest left S1 more than L5, radiculopathy. There was no associated weakness or reflex change. The claimant was advised to avoid lifting objects weighing more than 10 pounds. (Exhibit 14F, pp. 1-2).



Steven A Alfano (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)                                    Page 4 of 8

The claimant also has received treatment at the New York Presbyterian Hospital. A February 12, 2002 follow-up session revealed a positive straight leg raising test bilaterally, decreased muscle strength to 4/5 in the quadriceps and decreased left patellar reflex. (Exhibit 14F[b 7).

Michael Alexiades, M.D., an orthopedic surgery, has also treated the claimant beginning in 1996. His July 12, 2002 letter indicates that the claimant stopped working on June 15, 2000 due to low back pain radiating into the left leg and causing pain in the left leg. He exhibited a positive straight leg raising test and weakness of the left lower extremity, as demonstrated in heel-toe walking. Dr. Alexiades has diagnosed the claimant with lumbar spondylosis with stenosis and radiculopathy. He notes that despite conservative treatment, including physical therapy, epidural injections and anti-inflammatory medication, the claimant continues to be symptomatic and has a poor prognosis. (Exhibit 13F).

Dr. Alexiades' February 2002 report records symptoms of left leg pain and numbness with associated back pain. He notes clinical findings to include a positive straight leg raising test, and weakness on walking on his toes. Dr. Alexiades also records the findings of the diagnostic studies aforementioned. He concludes that the claimant's prognosis is poor. (Exhibit 11F).

Steven Rocker, M.D., conducted a consultative exam on April 21, 2001, during which the claimant reported his back pain, for which he was attending physical therapy. Examination of the lumbar spine revealed no tenderness or spasm but restricted range of motion – forward flexion was subjectively limited to 30 degrees and lateral flexion to 15 degrees bilaterally. A neurological exam revealed a positive straight leg raising test to 30 degrees on the left. Further, Dr. Rocker observed that the claimant had some difficulty sitting up from a lying position. Examination also included a lumbosacral spine x-ray that revealed mild degenerative changes, and negative chest and right shoulder x-rays, and a normal EKG. (Exhibit 4F).

In evaluating the claimant's complaints regarding all symptoms, I have considered the nature, location and intensity of the pain and other symptoms, any precipitating or aggravating factors, the effectiveness of medication and other treatment, and the claimant's daily activities, under the rationale of 20 CFR § 416.929, and Social Security Ruling 96-7p, which relate to the evaluation of all symptoms.

The claimant testified before me that he experiences daily pain in his legs and back, and must lie down between ½ hour and 2 hours on a daily basis. He also stated that he uses a cane for ambulation, and he reported a significantly reduced self-assessed residual functional capacity. Specifically, he stated that he can walk only 1 block, stand only 10 minutes before experiencing pain, sit only 20 minutes during the course of an 8-hour workday, and lift and carry only a "couple of pounds." I find the claimant's testimony concerning disabling symptoms and limitations generally credible as it is well supported by the balance of the record and by the opinions of treating and examining sources, noted below.

Based on the aforementioned medical evidence and the opinions noted below, I find that the claimant has a residual functional capacity for sedentary work activity as that term is defined by the Regulations with limitations. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.



Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally. 20 CFR §§ 404.1567(a), 416.967(a). However, the claimant requires the option to sit and stand at will, and he must lie down at least ½ hour to 2 hours each day, thereby limiting his ability to perform a full range of sedentary work activity.

One of the claimant's treating physicians, Michael Alexiades, M.D., notes in a July 12, 2002 report that the claimant must lie down for approximately ½ hour to 2 hours per day due to fatigue associated with his pain. Further, he notes that the claimant cannot sit, stand or walk for any prolonged period of time, and he cannot lift or carry anything weighing over 5 pounds. He further notes that the claimant's condition has essentially been the same since June 2000. (Exhibit 13F).

Dr. Alexiades provided a residual functional capacity assessment dated February 7, 2002, in which he again notes that the claimant must lie down approximately ½ hour to 2 hours each day. He adds that the claimant can sit 2 hours continuously during an 8-hour workday, walk less than 1 hour continuously during an 8-hour workday, and stand less than 1 ½ hour during an 8-hour workday. (Exhibit 11F).

Another treating physician, Keith Roach, M.D., completed a residual functional capacity assessment, dated February 12, 2002, in which he too notes that the claimant must lie down ½ hour to 2 hours each day. He also indicates that the claimant can lift and carry up to 5 pounds, sit up to 2 hours during an 8-hour workday, stand up to 1 hour during an 8-hour workday, and walk up to 1 hour during an 8-hour workday. (Exhibit 12F).

In light of these opinions, I accord no weight to Dr. Rocker's consulting opinion that the claimant is capable of performing sedentary, light and most moderate work activities. (Exhibit 4F).

Thus, I find it reasonable to conclude that the claimant is capable of performing sedentary work as that term is defined by the Regulations with the aforementioned limitations.

At step four of the sequential evaluation, I must determine whether the claimant can return to his past relevant work. Given his residual functional capacity for sedentary work with the aforementioned limitations, as confirmed by vocational expert testimony, the claimant is precluded from performing all of his past relevant work activity given his need to sit and stand at will and his need to lie down approximately ½ hour to 2 hours during each day.

Once the claimant has established that he can no longer perform his past relevant work activity, in accordance with Acquiescence Ruling 00-4(2), the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other jobs existing in significant numbers in the national economy.

In order to define the claimant's vocational profile, Edna Clark, a fully qualified vocational expert, appeared and testified before me on August 1, 2002 at the Office of Hearings and Appeals in Bronx, New York. Having reviewed the record, Ms. Clark was asked to assume a person of the same age, education, past relevant work activity and residual functional capacity as the claimant.

She then was asked whether such a person could perform other jobs that exist in significant numbers in the national and regional economies.

In response to the hypothetical question posed, Ms. Clark testified that there are no jobs that exist in significant numbers in the national and regional economies that such a person could perform given his limitations. Ms. Clark concluded that, given the claimant's limitations, he could not perform gainful employment on a full time basis in the real work world.

I believe that the assumptions given to the vocational expert appropriately trace the claimant's actual educational-vocational profile and appropriately coincide with his residual functional capacity so that the expert's responses are entitled to substantial weight.

Therefore, the claimant was under a "disability" within the meaning of the Social Security Act and Regulations beginning June 5, 2000, the alleged onset date of disability. Therefore, he is entitled to a period of disability commencing June 5, 2000 and to Disability Insurance benefits, and he is eligible for Supplemental Security Income benefits.

In reaching this conclusion, I have considered the prior conclusions from State Agency reviewing physicians. Such conclusions were given little weight because they were made by non-examining physicians for whom the whole record considered in this decision was not available.

## FINDINGS

After consideration of the entire record, I make the following findings:

1. The claimant was last insured for Title II Disability Insurance benefits on December 31, 2005. (Exhibit 2D).

2. The claimant has not performed substantial gainful activity at all relevant times. 20 CFR §§ 404.1571, 416.971.

3. The claimant's impairments, which are considered to be "severe" under the Social Security Act, are: 1) L5-S1 spondylosis; and 2) spinal stenosis. 20 CFR §§ 404.1520(c), 416.920(c), Social Security Ruling 96-3p.

4. The claimant's impairments, singly or in combination, do not meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).

5. The objective medical evidence establishes that the claimant had a residual functional capacity for sedentary work activity. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally. 20 CFR §§ 404.1567(a), 416.967(a). However, the claimant requires an option to sit and stand at will and must lie

Steven A. Alfano (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) 

Page 7 of 8

down approximately ½ hour to 2 hours each day, thereby limiting his ability to perform a full range of sedentary work activity.

6. The claimant's testimony of disabling symptoms and limitations generally is generally credible as it is well supported by the balance of the medical report.

7. The claimant's past relevant work experience includes that of a wage and salary administrator, a personnel administrator, and a personnel analyst, jobs Edna Clark, the vocational expert witness, testified were exertionally sedentary to light, skilled jobs. Ms. Clark further testified that the claimant acquired transferable skills performing these jobs, including planning, developing, supervising, interpersonal communications, record keeping, and report writing. (Exhibits 2E; 7E; the claimant's testimony). 20 CFR §§ 404.1567, 404.1568, 416.967, 416.968.

8. Born January 14, 1958, the claimant is characterized as a "younger person" at all relevant times, and he is a college graduate. 20 CFR §§ 404.1563, 404.1564, 416.963, 416.964.

9. Edna Clark, the vocational expert witness, testified that there are no jobs that exist in significant numbers in the national and regional economies that such a person could perform given the claimant's limitations. Ms. Clark concluded that, given the claimant's limitations, he cannot perform gainful employment on a full time basis in the real work world.

10. I believe that the assumptions given to the vocational expert appropriately trace the claimant's actual educational-vocational profile and appropriately coincide with his residual functional capacity so that the expert's responses are entitled to substantial weight.

11. I certify that there is sufficient evidence to support the findings regarding the claimant's residual functional capacity at step five and that evidence can be found throughout this decision.

12. The claimant was under a "disability" as is defined in the Social Security Act since June 5, 2000, the alleged onset date of disability. 20 CFR §§ 404.1520, 416.920.

13. The claimant is entitled to a period of disability from June 5, 2000, and to Disability Insurance benefits, and is eligible for Supplemental Security Income benefits.

## DECISION

It is the decision of the Administrative Law Judge that, based on the application filed on February 21, 2001, the claimant is entitled to a period of disability commencing June 5, 2000 and to Disability Insurance Benefits under sections 216(i) and 223, respectively, of the Social Security Act.



Steven A Alfano (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)

Page 8 of 8

It is the further decision of the Administrative Law Judge that, based on the application filed on February 21, 2001, the claimant was disabled under section 1614(a)(3)(A) of the Social Security Act, beginning June 5, 2000, and that the claimant's disability has continued at least through the date of this decision.

The component of the Social Security Administration responsible for authorizing Supplemental Security Income payments will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

Kenneth L. Scheer
Administrative Law Judge

**AUG 2 7 2002**

Date

*Interoffice Memo*

CIGNA Group Insurance
Life · Accident · Disability

Date : May 30, 2002
To : Kevin O'Hanlon, Tarrytown Claims Office

From : Susan Kerr, P250

Telephone : 1-800-238-2125, ext. 3025
Facsimile : 412-402-3542

Subject : Steven Alfano, #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

Hi Kevin,

This appeal was erroneously forwarded to me by our Bethlehem Customer Service Center. I understand appeals are handled in Dallas, however, this group originally handled in Rochester, is now in your office. Therefore the closed claim will hopefully be in Tarrytown and the closed claim and appeal can be forwarded to Dallas together.

Please contact me if you have any questions.

Thanks!

Susan
412-402-3025

Susan Kerr
Case Manager

CIGNA Group Insurance
Life - Accident - Disability

# IntegratedCare Telephone Log

Date: 5/30/02

Time: 9:10 am

Incoming:

Phone Number:

Outgoing: **Scott Paules, Bethlehem Customer Service Center**

Phone Number:

| **Re: appeal** | **Policyholder: Weill Medical College** |
|---|---|
| | |

| **Cx: Steven Alfano, #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** | **Policy #: NYK 1972** |
|---|---|

Called Scott Paules and asked why he forwarded this appeal to my attention since I never handled the claim and the group policy is now handled in Tarrytown, not Pittsburgh. He said he thought it was a new Conversion claim, he did not look through the packet to see what it really was. I confirmed it is an appeal, not a Conversion claim application.
I asked if the cx did convert the group plan and if so from what group policy he... according to this letter, the cx's LDW was 6/5/00 and he converted in 4/01. According to the conversion plan, the cx must convert within 31 days of termination under group plan.
Scott Paules advised that according to the Conversion application completed by the cx and ER (Weill Medical College), the cx's LDW was 3/31/01, so 6/5/00 is not his actual LDW, as cited in the appeal letter by the attorney. Additionally, on the Conversion application, when asked if the employee is disabled at the time he is converting the cx said "no" but the employer said "yes". If the cx was disabled at the time he applied for Conversion he should not have been eligible.
Scott Paules agreed and said Conversion premiums paid thus far should be refunded since the cx should not have been eligible for Conversion coverage in the first place.



M : SOHO SPORTS MEDICINE FAX NO. : 212 2801524 Jun. 22 2000 09:33AM P2

Page 1 of 2

LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

Carmel Donovan, M.D.
Erich Hildenschenk, M.D.
David A. Folleu, M.D.

Hisoo Jeannie Choe, M.D.
William Louie, M.D.
Keith S. Tobin, M.D.

51 East 77th Street
New York, NY 10021
Tel. 212-772-3111
Fax 212-288-1637
Fax 212-861-1796

June 12, 2000

MICHAEL ALEXIADES, MD

| Patient: | ALEANO, STEVEN | ID: 139521 |
|---|---|---|
| | MRI LUMBAR SPINE | 200006081395211 |

MRI OF THE LUMBAR SPINE 6/9/2000:
Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit.
42 year-old with low back pain and left-sided radiculopathy. There are no prior studies for comparison.

There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end-plate marrow change and prominent posterolateral osteophyte formation. The remaining lumbar discs are within normal. Small, benign-appearing hemangiomata are seen within the L4 and L5 vertebral bodies. No destructive marrow lesions are seen. The conus medullaris is at the lower L1 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. Paraspinal soft tissues are grossly normal.
At the L1-2 through L4-5 levels, there are no disc protrusions, significant disc bulges, spinal stenosis or neural foraminal narrowing.
At L5-S1, there is anular disc bulge and posterolateral osteophytes and facet osteoarthritis present. There is impingement upon the inferior aspect of the exiting left L5 nerve root seen on the sagittal images. There is moderate spinal stenosis. The right neural foramen is patent.

IMPRESSION: MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.
MILD IMPINGEMENT ON THE INFERIOR ASPECT OF THE LEFT L5 NERVE ROOT AS DESCRIBED ABOVE.
MODERATE L5-S1 SPINAL STENOSIS.

6/19 Discussed ... 6/16 LM

MRI: HIGHFIELD 1.5T • MID FIELD • OPEN MRI | CAT SCAN HELICAL | BONE DENSITOMETRY | ULTRASOUND HHI | NUCLEAR MEDICINE
GENERAL X-RAY FLUOROSCOPY MAMMOGRAPHY
ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY

**ELECTROMYOGRAPHY LABORATORY**
**DEPARTMENT OF NEUROLOGY**
**BETH ISRAEL MEDICAL CENTER**
**NEW YORK, NEW YORK**

| | |
|---|---|
| NAME | ALFANO, STEVEN |
| SOCIAL SEC # | 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 |
| EXAM DATE | 07/20/2000 |
| REFERRED BY | Andrew Schiff, M.D. |

| AGE | 42 | HEIGHT (INCHES) | 76 | TEMP | 32 | SEX | Male |
|---|---|---|---|---|---|---|---|

History: Mr. Alfano is a 42-year-old man referred for possible left lumbosacral radiculopathy. Two months ago, he made a sudden movement and felt sudden lower back pain and stiffness. A few days later, he began to feel radiation of the pain into the left buttock, posterior thigh to the ankle.

He has had lower back pain intermittently for many years since a car accident in 1997. Since that time, he has intermittently noted some weakness in his left leg, particularly in the calf when pushing off with his foot. Occasionally, he thought there was some weakness in the anterior thigh. Sitting for a long time aggravates the pain. Sitting slightly flexed and hunched over was partially alleviating. He also had pain while lying down at night in the posterior thigh. For four months, he has had some urinary retention and erectile dysfunction. He saw a urologist who found no abnormalities.

He recently saw an orthopedic surgeon. He had an MRI of his lumbosacral spine which showed spondylosis and stenosis at L5/S1 with impingement of the left L5 nerve root at the lateral recess. He has had two epidural steroid injections, which have provided only mild benefit. A third and final one was planned. Constitutional symptoms, such as weight loss, fever, and rash, were absent.

Past Medical History: Migraines, hypertension, reflux esophagitis.

Drug Allergies: Codeine caused headache (aggravation of migraines) and nausea.

Social History: Works for human resources. Does desk work. He has been out of work since the beginning of June (a month and a half).

Family History: No history of diabetes.

**Medications:** Imitrex p.r.n., Norvasc, Prevacid.

**Review of Systems:** See above. No diabetes. No recent trauma. Other systems were reviewed and were negative.

**General Examination:** Appearance: Appeared well, in no distress. Integument: No dermatomal eruptions in the legs. Neck: Supple. Extremities: No clubbing, cyanosis or edema. Straight-leg raising was negative bilaterally. Patrick's maneuver was, also, negative bilaterally.

**Neurologic Examination:**

**Mental Status:** Alert and oriented x 3. Fluent speech. He gave a detailed description of his symptoms and recalled dates well.

**Cranial Nerves:** Extraocular movements intact. Face symmetric.

**Motor:** No atrophy, fasciculations, or pronator drift. Strength was 5/5 in all groups, although there was some give-way in left plantar and dorsiflexion of the foot and toes. Strength seemed normal.

**Gait:** Slightly antalgic. Able to stand, but not walk, on his heels and toes; this was painful.

**Coordination:** Finger-to-nose and tandem gait steady.

**Sensory:** Negative Romberg. Pin was diminished in the left lateral border of the foot. Vibration was impaired in the great toes bilaterally. Pin and vibration were, otherwise, intact.

**Reflexes:** Reflexes 2+ throughout. Plantar responses were flexor bilaterally.

**Electrophysiologic Findings:** Bilateral peroneal and tibial motor conduction studies were normal. Left tibial and bilateral peroneal F-wave minimal latencies were prolonged. Right tibial F-wave minimal latencies were normal. Bilateral sural and peroneal sensory responses were normal. Bilateral tibial H-reflex latencies were prolonged. Needle EMG of bilateral gluteus maximus, left leg, and lumbosacral paraspinal muscles showed no spontaneous activity. There was borderline decreased recruitment in the left tibialis anterior and quadriceps muscle, but motor unit potential morphology was normal throughout.

**Clinical/Electrophysiologic Impression:** There were nonspecific neurogenic abnormalities in both legs of uncertain significant. Late responses were prolonged bilaterally. These findings did not clearly differentiate bilateral L5/S1 radiculopathies from mild polyneuropathy. There was not definitive electrophysiologic evidence of either.

Taken together, the clinical and electrophysiologic features suggest

The patient has left S1, more than L5, radiculopathy. There was no associated weakness or reflex change. Further conservative management is planned, at this point. He will follow up for a third epidural injection. In the interim, he was told to stop the Motrin and to start Pamelor 25 mg p.o. q.h.s., to be increased to 50 mg p.o. q.h.s. in seven days, and to 75 mg p.o. q.h.s. at the end of two weeks, if tolerated. He was also started on Ultram one or two tablets p.o. q.i.d. p.r.n. pain. The side effects of the medicine were fully explained. He will hold off exercising for now. He was told that he could return to work, and that he should get up from his desk a few times an hour to stretch and walk around. He was also told he should avoid lifting anything heavy (greater than ten pounds). The patient will see me in followup in six weeks. I requested that he try to bring a copy of his MRI of lumbosacral spine films, if available.

Stephen Scelsa, M.D.
Director of the Neuromuscular Division
Assistant Professor of Neurology

SS/TL975/01190
T: 07/21/2000

| Motor Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency ms | Amp mV | Dur ms | Dist mm | Vel m/sec | Comment |
| R.Peroneal Ankle-EDB | 4.26 | 4.2 | 7.32 | | | Nl |
| R.Tibial Ankle-AH | 4.00 | 11.3 | 6.40 | | | Nl |
| L.Tibial AK-AH | 4.04 | 12.1 | 6.82 | | | Nl |
| L.Tibial Pop-AH | 15.1 | 9.6 | 7.80 | 520.0 | 46.8 | Nl |
| L. Peroneal AK-EDB | 5.82 | 7.4 | 6.75 | | | Nl |
| L. Peroneal BFH-EDB | 14.3 | 6.5 | 8.04 | 420 | 49.5 | Nl |
| L.Peroneal AFH-AK | 16.2 | 6.3 | 8.16 | 91 | 49 | Nl |

| F-Waves | | | |
|---|---|---|---|
| Nerve | Latency(ms) Min | Latency(ms) Max | Comment |
| R.Peroneal EDB | 59.0 | | ↑Lat |
| R.Tibial AH | 58.2 | 63.6 | Nl |
| L.Tibial AH | 59.7 | 63.0 | ↑Lat |
| L.Peroneal EDB | 58.9 | 61.8 | ↑Lat |

| Sensory Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency | Amp uV | Dur | Distance mm | Velocity m/sec | Comment |
| L.Peroneal Leg-Dorsum Ft | 2.69 | 10.1 | 3.12 | 130.0 | 48.3 | Nl |
| R.Sural Calf-LatMal | 3.50 | 16.9 | 1.95 | 160.0 | 45.7 | Nl |
| L.Sural Calf-LatMal | 3.30 | 17.2 | 1.71 | 150.0 | 45.5 | Nl |
| R.Peroneal Leg-Dorsum Ft | 2.42 | 8.11 | 1.94 | 120.0 | 49.6 | Nl |

Alfano, Steven, 099449648 July 20, 2000

| H Reflex | | | |
|---|---|---|---|
| Nerve | Latency mS | Amplitude uV | Comment |
| L.Tibial H Reflex | 36.5 | | ↑ Lat |
| R.Tibial H Reflex | 38 | | ↑ Lat |

| Routine Needle EMG Examination | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Muscle | Fib PSW | Fasc | Misc | MUP Amp | MUP Dur | MUP Phase | Rec Patt | Comment |
| L.Glut Max | 0 | 0 | | | | | | Nl |
| L.Quad | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Tib Ant | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Per Longus | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Gastroc | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.L-PSpinal L4,5 | 0 | 0 | | | | | | Nl |
| L.L-PSpinal L5,S1 | 0 | 0 | | | | | | Nl |
| R.Glut Max | 0 | 0 | | | | | | Nl |

Alfano,Steven, 099449648 July 20, 2000



Page 1 of 1

LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

61 East 77th Street
New York, NY 10021
TEL: 212-772-3111
FAX: 212-288-3637
FAX: 212-861-1796
www.lenoxhillradiology.com

Conrad Donovan, M.D.
Erich Eidmaschenk, M.D.
David A. Follett, M.D.

William Louie, M.D.
Keith S. Tobin, M.D.
Lynn Ladensky, M.D.
Scott R. Germ, M.D.

JAMES C FARMER MD

Patient: ALFANO, STEVEN ID: 139521 20010817551501395211

**MRI OF THE LUMBAR SPINE 8/18/01:**

Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit. 43 year-old with chronic low back pain and bilateral radiculopathy. Comparison is made to report of prior study 6/9/00.

There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type II end-plate marrow change and vacuum disc phenomenon. The remaining lumbar intervertebral discs are normal. There are no destructive marrow processes. Small, typical hemangiomata are seen within the L4 and L5 vertebral bodies. The conus medullaris is at the approximate L1-2 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. The paraspinal soft tissues are grossly normal.
At L1-2 through L3-4, there are no disc protrusions, significant disc bulges spinal stenosis or neural foraminal narrowing.
At L4-5, there is minimal anular disc bulge and moderate facet osteoarthritis. There are mild developmentally shortened pedicles and mild spinal stenosis. There is also mild narrowing of both neural foramen. This shows slight interval increase.
At L5-S1, there is a prominent posterior disc osteophyte complex impinging upon the anterior thecal sac causing moderate spinal stenosis. This disc osteophyte complex measures 8 mm cephalocaudad x 7 mm AP x 20 mm transverse dimension. This has shown slight interval increase in size by report. However direct comparison to prior study is suggested for interval change. There is moderate facet osteoarthritis and mild moderate left sided neural foraminal narrowing.

IMPRESSION:
1. MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.
2. POSTERIOR DISC OSTEOPHYTE COMPLEX AT L5-S1 CAUSING MODERATE SPINAL STENOSIS.
3. MILD L4-5 SPINAL STENOSIS.

Thank you for referring this patient.
Electronically Signed By: William Louie, MD 8/26/01

MRI HIGHFIELD 1.5T • MIDFIELD • OPEN MRI — CAT SCAN HELICAL — ULTRASOUND MDI — NUCLEAR MEDICINE — PET
GENERAL X-RAY FLUOROSCOPY MAMMOGRAPHY BONE DENSITOMETRY
ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY
MRI • ULTRASOUND • MAMMOGRAPHY

CLICNY 0289

07/05/1934 23:28 2127341288 PAGE 01

JOAN AND SANFORD I. WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY
Human Resources Department
445 East 69th Street, Room 220
New York, New York 10021
(212) 746-1197 Fax: (212) 746-0988

**Medical Certification for Family and Medical Leave**

| Name (Last, First, Middle Init.) ALFANO, STEVEN | | Social Security Number 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 | Room No. OH-220 |
|---|---|---|---|
| Position WAGE & SALARY MGR | Dept. / Div. HUMAN RESOURCES | | Extension 61038 |
| Employee's Signature [signature] | | | Date 7-5-00 |

***To be completed by an authorized health care provider. The information sought on this form relates only to the condition for which the employee is taking FMLA Leave.***

The attached *Description of Serious Health Condition* describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

(1)__ (2)__ (3)__ (4) ✓ (5)__ (6)__, or None of the above__

Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria for one of these categories: __________

Date patient will be/was unable to work because of this condition 7/12/00 Probable Date Thatshing of this condition will end 8/5/00*

Date patient will be able to return to work 8/5/00* OR PENDING NEUROLOGIST EXAM

Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described below)? Yes ☒ No ☐

If yes, give the probable duration: undetermined

If the condition is a pregnancy (condition #3) or chronic condition (condition #4), state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity: __________

057 1/98 (Rev.)

Continued on the reverse....

If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments: approximately 3

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide any estimate of the probable number and interval between such treatment, actual or estimated dates of treatment if known, and period required for recovery if any: 3-4 days

If any of these treatments will be provided by another provider of health service (e.g., physical therapist), please state the nature of the treatments: Epidural injections

If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment): ________

Is employee able to perform work of any kind? (If "No", skip the next question) Yes ☐ No ☑

Is employee able to perform any one or more of the functions of the employee's position? (Answer after reviewing statement from employer of essential functions of employee's position, or if none provided, after discussing with employee.) Yes ☐ No ☐ If Yes, list the essential function the employee is unable to perform:

no lifting, Prolonged Standing / Sitting

If neither of the above statements apply, is it necessary for the employee to be absent from work for treatment? Yes ☑ No ☐

| Print Name of Health Care Provider: Michael M. Alexiades MD | Type of Practice or Specialty: Orthopedics |
|---|---|
| Signature of Health Care Provider: [signature] | Date: 6/20/00 |
| Address: 159 East 74th St NY NY 10021 | Telephone Number: 212-734-1288 |

*This form should be submitted to the Human Resources Department - Weill Medical College at the above address.*



**JAMES C. FARMER, M.D.**
**Hospital for Special Surgery**
**535 E. 70th St.**
**New York, N.Y. 10021**

---

Alfano, Steven D.O.B.:
August 31, 2000 MR#:

Mr. Alfano is a 42 year old male who reports he has had a long history of intermittent low back pain. In April of this year, his back went out and he began to experience pain that was severe. He notes that prior to the episode in April, he felt that his low back pain had overall increased in severity for the last 2 years or so. He has also noted some leg pain involving his posterior thigh and posterior calf. He at times has felt some numbness in his entire foot. Overall, he notes that his leg pain is worse than his low back pain and that the left leg is significantly worse than the right. He reports he has had episodes of occasional urinary retention in the past and saw a urologist who did not recommend any treatment. His bowel function is normal. He notes his pain is made better with rest and is made worse with prolonged sitting, standing and walking. His treatment to date has consisted of Vioxx, Nortriptyline and physical therapy in the past and recent epidural steroid injections which gave him some day relief of pain.

**Past Medical History:** Significant for borderline hypertension and migraines.

**Past Surgical History:** Non-contributory.

**Medications:** Vioxx, Nortriptyline and Norvasc.

**Allergies:** He has a drug allergy to Codeine.

**Family History:** Significant for colon cancer in his father and hypertension in his mother.

**Social History:** He has a 25 pack a year smoking history and does not drink.

**Review of Systems:** Negative in detail.

**Physical Examination:** Physical examination today reveals a well developed, well nourished male in no acute distress. He walks with a normal gait. Examination of his lumbar spine does not show any skin abnormalities and there is no tenderness to palpation. He is able to forward flex, bring his fingers to within 6 inches of the floor and extends approximately 30 degrees. He laterally bends bilaterally which is symmetric. Neurologically, motor strength is 5/5 in the lower extremities bilaterally with intact sensation. Deep tendon reflexes are 1+ and symmetric in the lower extremities. His toes are downgoing and there is no clonus. Range of motion of the hips is full and painless. Neural tension signs are negative. Dorsalis pedis pulses are 1+ and symmetric.



NOV. 21. 2000 (TUE) 11:44 PAGE 3/3

JAMES C. FARMER, M.D.

Alfano, Steven
August 31, 2000
Page two

MR#:

**MRI:** An MRI scan of his lumbar spine was reviewed from June 12, 2000. This shows evidence of severe degenerative changes within the disk at L5-S1. There does appear to be some moderate stenosis at this level.

**Impression:** Degenerative disk disease at L5-S1 with bilateral lower extremity pain.

**Recommendations:** At this point, I have reviewed with the patient in detail the nature of the diagnosis of lumbar degenerative disk disease along with treatment options and risks and benefits. At this point, he has not had any significant conservative management with the exception of the epidural. I do feel that he should undergo some physical therapy to see if this will improve his back and lower extremity symptoms. I have asked that he continue to take the anti-inflammatories. I have asked that he follow up with me in approximately 4-6 weeks time to see how he is doing. Should his symptoms still be persistent at that point, then we will discuss the options available to him.

James C. Farmer, M.D.

JCF/ss



**JAMES C. FARMER, M.D.**
**Hospital for Special Surgery**
**535 E. 70th St.**
**New York, N.Y. 10021**

Alfano, Steven
September 14, 2000

D.O.B.:
MR#:

Mr. Alfano returns today for follow up. He reports that he has performed the physical therapy but has had no improvement whatsoever in his pain and feels that overall the therapy has exacerbated his pain. He does have some intermittent fatigue in the left leg with prolonged walking but notes his primary complaint is his lower back pain. He does feel that at times he has weakness in his tibialis anterior on the left. He denies any bowel or bladder symptoms or night pain.

**Physical Examination:** Today shows his lumbar spine is non-tender to palpation. He does tend to get significant back pain with forward flexion. His neurologic examination is stable. Neural tension signs are negative.

**Impression:** Degenerative disk disease of the lumbar spine with some intermittent radicular symptoms on the left probably secondary to L5 nerve root compression noted on the MRI.

**Recommendation:** At this point, I have reviewed with the patient in detail the nature of the diagnosis of degenerative disk disease and lumbar radiculopathy along with treatment options and risks and benefits. At this point, he reports his back pain is severe and continues to limit him significantly on a daily basis. I do feel it is likely that the pain he is experiencing is from the significant degenerative changes seen at L5-S1. He feels that his pain is severe and continues to limit him on a daily basis and wishes to consider surgical intervention. I have explained to him that I do feel that we would need to obtain a discogram to clearly discern that the L5-S1 disk is the painful level and whether the levels above are normal. After the discogram if it is confirmatory, then I would recommend he have a new MRI as his old one is greater than [illegible] months old. He is going to have the above performed and will follow up with me afterwards to review it or sooner should he have any questions, problems or concerns.

James C. Farmer, M.D.

JCF/las

JAMES C. FARMER, M.D.
Hospital for Special Surgery
535 E. 70th St.
New York, N.Y. 10021

Alfano, Steven
November 7, 2000

D.O.B.:
MR#:

Mr. Alfano returns today for follow up. He is still having significant low back pain. He does have some lower extremity pain but notes the low back pain is predominant. He denies any change in his bowel or bladder symptoms. He is not having any night pain.

**Physical Examination:** Today shows no change in range of motion of his lumbar spine. His neurologic exam is stable from a motor and sensory standpoint. Neural tension signs are negative.

**Impression:** Low back pain with degenerative disk disease.

**Recommendation:** At this point, the patient wishes to continue with conservative management and wishes to perform more physical therapy, which I think, is reasonable. A prescription was given for this. Additionally, he asked for a renewal for his Vioxx, which was given for 50 mg PO QD PRN. I have asked him to follow up with me when his physical therapy is complete to reevaluate him or sooner should he have any questions, problems or concerns.

**James C. Farmer, M.D.**

JCF/lss

**JAMES C. FARMER, MD**
**Hospital for Special Surgery**
**535 E. 70th Street**
**New York, N.Y. 10021**

---

Alfano, Steven
February 26, 2001

D.O.B.:
MR#: 068-94-43

Mr. Alfano returns today for follow up. He reports he has lost 40 lbs. since his last visit with me. He has had no change in his low back pain and notes he is still severely limited. He is having some intermittent pain in his left buttock and posterior thigh. He denies any bowel or bladder symptoms or night pain. He reports his pain is still severe with sitting and that he is currently still taking Vioxx for pain relief. He has not started physical therapy yet.

**Physical Examination:** Physical examination today shows his lumbar spine continues to be nontender. He continues to have severely limited forward flexion due to his pain. Extension is not painful. Neurologically his exam is stable. He continues to have some weakness of the left EHL and tibialis anterior which appear to be give-out with repetitive testing. Deep tendon reflexes are unchanged. Range of motion of the hips is full and painless.

**X-rays:** No new x-rays were obtained today.

**Impression:** Low back pain with left lower extremity symptoms and lumbar degenerative disk disease.

**Recommendations:** At this point I have reinforced with the patient that I do want him to begin the physical therapy and I would also like him to see Neurology again to reevaluate the intermittent weakness he gets in the left leg. I do believe that a significant portion of his symptoms are coming from the degenerative disk disease and if he does not improve with conservative care he may require a lumbar fusion. He understands all of this. All of his questions were answered.

He is going to follow up with me in six weeks time to reevaluate him or sooner should he have any questions, problems or concerns.

**James C. Farmer, MD**

/fts

**PHYSICIAN'S REPORT FOR CLAIM OF**

**DISABILITY DUE TO PHYSICAL IMPAIRMENT**

Patient's Name: Steven Alfaro

Patient's Address: 3800 Waldo Avenue
Bronx, NY 10463
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

Dear Doctor

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments.

5/15/96 and 2/4/02

2. Describe in detail the patient's symptoms (complaints, including pain).

Left leg pain and numbness with associated back pain

3. Describe in detail the patient's signs (clinical findings).

(+) straight leg raise
weakness on walking on toes

4. Give the laboratory tests and results.

MRI (+) for L5 S1 Spondylosis with
L5 nerve root Impingement + Stenosis

5. Diagnoses. L5 S1 Spondylosis with stenosis
and Radiculopathy

6. Prognosis Poor

7. Have any of the patient's medical conditions lasted or can any be expected to last at least twelve months?

Yes X No ____

8. Does the patient have to lie down during the day?

Yes X No ____. If yes, for how long and for what reasons? 1/2h - 2hrs two to three times per day

9. Describe the treatment the patient has received.

Physical Therapy
Epidural injection
anti inflammatories

10. Give the medications prescribed for the patient, including the dosage.

OTC NSAIDS + 50mg Vioxx (7/31/00

Do any of the medications have any side effects or limit the patient's activities?

Yes_____ No ✓ If yes, explain._____

11. Does or could any condition cause the patient pain?

Yes ✓ No_____ If yes, explain See above.

If yes, does any medication affect the patient's pain and how does it affect the pain?

temporary decrease in pain

12. Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

(a) The patient can:

(i) Sit up to 30 minutes continuously and a total of 2 hours in an 8-hour workday;

(ii) Stand up to 15 minutes continuously and a total of < 1 hrs in an 8-hour workday;

(iii) Walk up to < 1 block continuously and a total of < 1 hour in an 8-hour workday;

(b) During an entire 8-hour workday:*

(i) The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | ( ) | ( ) |

(ii) The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | ( ) | ( ) |

(iii) The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | (✓) | ( ) | ( ) | ( ) |
| Squat | ( ) | (✓) | ( ) | ( ) |
| Crawl | (✓) | ( ) | ( ) | ( ) |
| Climb | (✓) | ( ) | ( ) | ( ) |
| Reach | ( ) | (✓) | ( ) | ( ) |

*Occassionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%.

(v) The patient can use hands for repetitive action such as:

| | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |
| Left | (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |

(v) The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

| Right | Left | Both |
|---|---|---|
| (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |

13. The patient has restrictions in activities involving:

| | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | (✓) | ( ) | ( ) |
| Being around moving machinery | ( ) | (✓) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | (✓) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | (✓) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | ✓ | | | |

14. This question applies only if its number is circled. The Social Security Administration has established what is called a "Listing of Impairments." If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled. Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints. Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain ______________________

15. Can the patient travel alone on a daily basis.

(a) By bus? Yes ✓ No ____

(b) By subway? Yes ✓ No ____

16. Other comments ____

[signature]
Physician (signed)

Date 2-7-02

Michael M. Alexiades, MD
Physician (print name)

159 East 74th St NY, NY 10021
Address

212-734-1288
Telephone Number

**PHYSICIAN'S REPORT FOR CLAIM OF**

**DISABILITY DUE TO PHYSICAL IMPAIRMENT**

Patient's Name: Stelin Alfonso SS# 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

Patient's Address: 3800 Waldo Avenue
Bronx, NY 10467

Dear Doctor Keith Roach, M.D.

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments:

[illegible] 9/06/[illegible] [illegible] Dr. [illegible] [illegible] 4/1[illegible]

2. Describe in detail the patient's symptoms (complaints, including pain).

[illegible]

3. Describe in detail the patient's signs (clinical findings).

[illegible handwriting]

4. Give the laboratory tests and results.

[illegible handwriting]

5. Diagnoses. [illegible handwriting]

6. Prognosis unlikely to improve without surgery

7. Have any of the patient's medical conditions lasted or can any be expected to last at least twelve months?

Yes ✓ No

8. Does the patient have to lie down during the day?

Yes ✓ No If yes, for how long and for what reasons?

1/2 - 2 hours 2 or 3 times daily

9. Describe the treatment the patient has received.

physical therapy

epidural injections

[illegible]

[illegible]

CLICNY 0306

10. Give the medications prescribed for the patient, including the dosage.

Do any of the medications have any side effects or limit the patient's activities?

Yes____ No____ If yes, explain.____

11. Does or could any condition cause the patient pain?

Yes____ No____ If yes, explain____

If yes, does any medication affect the patient's pain and how does it affect the pain?

12. Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

(a) The patient can:

(i) Sit up to 10 min continuously and a total of 1 hr in an 8-hour workday;

(ii) Stand up to 15 min continuously and a total of 1 hour in an 8-hour workday;

(iii) Walk up to 1 1/2 block continuously and a total of 1 hr in an 8-hour workday;

(b) During an entire 8-hour workday:*

(i) The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | ( ) | ( ) |

(ii) The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | ( ) | ( ) |

(iii) The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | (✓) | ( ) | ( ) | ( ) |
| Squat | (✓) | ( ) | ( ) | ( ) |
| Crawl | (✓) | ( ) | ( ) | ( ) |
| Climb | (✓) | ( ) | ( ) | ( ) |
| Reach | ( ) | (✓) | ( ) | ( ) |

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%:

(v) The patient can use hands for repetitive action such as:

| | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |
| Left | (✓) Yes ( ) No | (✓) Yes ( ) No | ( ) Yes ( ) No |

(v) The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

| Right | Left | Both |
|---|---|---|
| (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |

13. The patient has restrictions in activities involving:

| | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | (✓) | ( ) | ( ) |
| Being around moving machinery | ( ) | (✓) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | (✓) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | (✓) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | | | | |

(14.) This question applies only if its number is circled. The Social Security Administration has established what is called a "Listing of Impairments." If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled. Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints. Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain yes, spinal stenosis specifically

1.05 # C

CLICNY 0309

15. Can the patient travel alone on a daily basis:

(a) By bus? Yes ✓ No ____

(b) By subway? Yes ____ No ____

16. Other comments ____________________

[signature]
Physician (signed)

Date 2/12/02

Physician (print name)

Address

Telephone Number

**PHYSICIAN'S REPORT FOR CLAIM OF**

**DISABILITY DUE TO PHYSICAL IMPAIRMENT**

SS#: 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

Patient's Name: Steven Alfano

Patient's Address: 3800 Waldo Avenue
Bronx, New York 10463

Dear Doctor Alexiades:

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments.

5/15/96 through 7/31/01

2. Describe in detail the patient's symptoms (complaints, including pain).

(1) leg pain and numbness with [illegible] back pain



CONCENTRA MEDICAL EXAMINATIONS

2-6-0068-1-02-01

| | |
|---|---|
| Date: | February 9, 2001 |
| Claimant: | STEVEN ALFANO |
| Account File: | 099440648 |
| CME File: | 003801191-01 |
| Insured: | |
| Date of Injury: | Jun 06, 2000 |

STEVEN ALFANO
3800 WALDO AVE #13G
BRONX, NY 10463

Dear STEVEN ALFANO:

At the request of CIGNA INTEGRETED CARE, your appointment for an Independent Medical Examination has been *cancelled* with an Orthopedist on Tuesday Feb 20, 2001 at 02:30 pm.

If you should have any questions, or need additional information, please feel free to call us.

Sincerely,

jld/CONCENTRA MEDICAL EXAMINATIONS

cc: LINDA CUFARI
CIGNA INTEGRETED CARE
255 EAST AVENUE
ROCHESTER, NY 14604



CONCENTRA MEDICAL EXAMINATIONS

| | |
|---|---|
| Date: | February 7, 2001 |
| Claimant: | STEVEN ALFANO |
| Account File: | 099449648 |
| CME File: | 003831191-01 |
| Insured: | |
| Date of Injury: | Jun 06, 2000 |

STEVEN ALFANO
3800 WALDO AVE #13G
BRONX, NY 10463

Dear STEVEN ALFANO:

At the request of CIGNA INTEGRETED CARE, an appointment for an Independent Medical Examination has been arranged for you with an Orthopedist on Tuesday Feb 20, 2001 at 02:30 pm.

The examining physician is:

JOSEPH PAUL M.D.
3250 WESTCHESTER AVENUE
SUITE L14
Bronx, NY 10461
(718)332-0490

***FAILURE TO SUBMIT TO THE EXAMINATION AS REQUESTED MAY RESULT IN THE TERMINATION OF YOUR PRESENT AND FUTURE BENEFITS.***

**You must present a Photo Identification at the time of this examination. If necessary, you must appear with an interpreter.** If you have any x-rays or medical reports, please bring them with you to the appointment. Please call the physician two days prior to the appointment to confirm date and time.

Sincerely,

jld/CONCENTRA MEDICAL EXAMINATIONS

cc: LINDA CUFARI
CIGNA INTEGRETED CARE
255 EAST AVENUE
ROCHESTER, NY 14604

100 CROSSWAYS PARK DR WEST • SUITE 107 • WOODBURY, NY 11797-2021 • PHONE (516)364-4054 • FAX (516)364-3575 or Toll Free at 1 (800) MDS-EXAM

full and painless." Dr. Farmer recommended physical therapy and to continue taking anti-inflammatories.

At your follow up evaluation on 9/14/2000 you reported to Dr. Farmer that you had performed physical therapy but has had no improvement whatsoever in your pain and felt that overall the therapy has exacerbated your pain. Dr. Farmer noted that you reported some intermittent fatigue in the left leg with prolonged walking but notes your primary complaint is in the lower back.

Physical exam on 9/14/2000 showed that the lumbar spine was non-tender to palpation. Back pain was noted on forward flexion. Your neurologic exam was stable. Dr. Farmer indicated that he felt that the back pain was from degenerative changes at L5-S1. That notes stated, "At this point, he reports his back pain is severe and continues to limit him on a daily basis and wishes to consider surgical intervention. Dr. Farmer recommended a discogram, then a repeat MRI to confirm that the L5-S1 disc is the painful level. You were to follow up after the recommended tests.

You followed up with Dr. Farmer on 11/7/2000. You reported having significant low back pain. Dr. Farmer reports on exam, no change in range of motion of the lumbar spine. Neurologic exam is stable from a motor and sensory standpoint. Dr. Farmer indicated that in the notes that you wished to continue with conservative management and wished to perform more physical therapy. Dr. Farmer recommended that you follow up after you had completed your course of physical therapy. No evaluations beyond 11/7/2000 were provided.

**Summary**

After an evaluation of the medical information on file, you do not satisfy the 180 day waiting period of continuous disability. For consideration of disability benefits, medical documentation of limitations and restrictions must be provided showing that you were continuously disabled throughout the waiting period. These limitations and restrictions must support the inability to perform your own occupation.

We contacted Rosemary Cius at Weill Medical College for clarification of the physical requirements of your job. The duties of your occupation fall within the sedentary physical demand level as outlined by the U.S. Department of Labor's Dictionary of Occupational Titles. We were advised that your job does not require any lifting but does allow you to get up and walk around as needed.

After evaluating the physical ability assessments completed by Dr. Alexiades, Dr. Scelsa, and Dr. Snow, you do not have any limitations and restrictions that would prevent you from performing your own occupation. In addition, you were released to work following your 7/20/2000 evaluation with Dr. Scelsa with restrictions that fell within your occupational requirements.

Following the release to work given by Dr. Scelsa, you were not treated again until 8/17/2000 with Dr. McCance. While we understand that you were continuously treated for your back condition following your return to work date, and your treatment plan includes the need for surgery, there were no limitations or restrictions that would prevent you from performing a sedentary job. In addition, your complaints of lower back pain and left leg fatigue have been present for several years.

You had been released to work following your 7/20/2000 evaluation and your physical exam with Dr. Farmer on 8/31/2000 showed no tenderness to the lumbar spine with palpation. You were able to

**Questions for IME**

**RE: ALFANO, STEVEN SS# 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**

1. What is the current diagnosis/diagnoses?

2. What are the claimant's current symptoms and signs, their severity and frequency?

3. How do the symptoms impact the claimant's ability to perform his sedentary job functions? ***Please refer to Occupational Requirements form forwarded with medical.

4. Please address the claimant's diagnostic findings, and how/if these findings impede the claimant's functional capabilities.

I am particularly interested in EMG studies performed on 7/20/00, which documents the following impression: "There were nonspecific neurogenic abnormalities in both legs of uncertain significance. Late responses were prolonged bilaterally. These findings did not clearly differentiate bilateral L5/S1 radiculopathies from mild polyneuropathies. There was not definitive electrophysiologic evidence of either. Taken together, the clinical and electrophysiologic features suggest the patient has left S1, more than L5, radiculopathy. There was no associated weakness or reflex change."

5. If the claimant is, indeed, limited due to physical symptoms, please provide your impression of diagnosis and your restrictions and limitations.

6. Has he been receiving appropriate treatment and what would you recommend for future treatment?

7. If the claimant is currently limited, please address his/her prognosis for recovery and prognosis for return to work?

8. Any other recommendations for changes to the claimant's treatment plan to facilitate recovery and return to work?

9. Are the claimant's subjective complaints in keeping with his/her clinical/objective findings?

**Thank You,**

Lara D'Ambrosio
Case Manager
Long Term Disability

CIGNA

February 2, 2001

Routing
Corporate Place
Rochester NY 14604
Telephone 716.231.6521
Facsimile 716.231.6502

Steven Alfano
3800 Waldo Ave
Apt 13-G
Bronx, NY 10463

| RE: | | |
|---|---|---|
| | Claimant: | Steven Alfano |
| | Certholder: | S099449648 |
| | Policy Keys: | NYK 1972 |
| | Account Name: | Weill Medical College |
| | Company Name: | CIGNA Life Insurance Company of New York |

Dear Mr. Alfano;

We regret the delay in making a decision on your claim. We are currently awaiting medical information from:

1. Independent Medical Exam

We hope to get this information within the next 30 days. At that time, we will advise you of the status of your disability claim.

If there are any questions, please do not hesitate to contact me. Thank you.

Sincerely,

Lara D'Ambrosio
Case Manager
1-800-532-9288 ext 6521

CIGNA Life Insurance Company of New York
Life Insurance Company of North America
Connecticut General Life Insurance Company
Insurance Company of North America
Subsidiaries of CIGNA Corporation



# PHYSICAL ABILITY ASSESSMENT

*(To be completed by the medical professional)*

Please complete the following items based on your clinical evaluation of:

Patient Name____Steven Alfano________________ SS#____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____________

Diagnosis(es)/ICD9 Code(s)__________________________________________

**In an 8-hour workday, the patient can perform the following activities:**

| | | Continuously (67-100%) (5.5 + hrs) | Frequently (34 66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| **Lifting:** | 10 lbs. | | | | |
| | 11-20 lbs. | | | | |
| | 21-50 lbs. | | | | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Carrying:** | 10 lbs. | | | | |
| | 11-20 lbs. | | | | |
| | 21-50 lbs. | | | | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Pushing:** | (Max. Wt.:________) | | | | |
| **Pulling:** | (Max. Wt.:________) | | | | |
| **Sitting:** | | | | | |
| **Standing:** | | | | | |
| **Walking:** | | | | | |
| **Climbing:** | Regular Stairs | | | | |
| | Regular Ladders | | | | |
| **Balancing:** | | | | | |
| **Stooping:** | | | | | |
| **Kneeling:** | | | | | |
| **Crouching:** | | | | | |
| **Crawling:** | | | | | |
| **Seeing:** | | | | | |
| **Hearing:** | | | | | |
| **Smell/Taste:** | | | | | |

| | | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| **Reaching:** | Overhead | | | | |
| | Desk Level | | | | |
| | Below Waist | | | | |
| **Fine Manipulation:** | Right | | | | |
| | Left | | | | |
| **Simple Grasp:** | Right | | | | |
| | Left | | | | |
| **Firm Grasp:** | Right | | | | |
| | Left | | | | |
| **Environmental Conditions:** Exposure to extremes in heat | | | | | |
| Exposure to extremes in cold | | | | | |
| Exposure to wet / humid conditions | | | | | |
| Exposure to vibration | | | | | |
| Exposure to odors / fumes / particles | | | | | |
| **Ability to work extended shifts/ overtime:** | | | | | |
| **Use of lower extremities for foot controls:** | | | | | |

*Please use this space to elaborate on ANY of the above categories:*

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

______________________________________________

**Name:** ______________________ **Signature:** ______________________
Specialty: ______________________ Date: ______________________
Address: ______________________ Phone: ______________________

**Please include any objective test or narrative if available.**

**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

SEAN E. MCCANCE, M.D.
SPINAL SURGERY
121 East 61st Street
New York, NY 10021
212 546-9285

**ALFANO, STEVEN** **8/17/00**

**HISTORY:** Patient is a 42–year-old female referred by Dr. Alexiades for evaluation of pain in the low back radiating down the left leg with numbness in both feet. He has lose of strength in the left leg with walking.

He tells me this has been going on since April and getting worse. He did have a car accident in 1997 at which time he felt he began losing strength in the left leg. His complaint is in the early mornings he has severe low back pain for about an hour but that is getting better with Vioxx. He has numbness in both feet, left worse than right with sitting. He has pain down the left leg with sitting and standing. Pain in the left buttock and left posterior thigh. It ranges from mild to moderate, helped somewhat by two epidural injections. It is located in the left lumbosacral area and radiates into the central area. He has numbness and pins and needles in both feet and weakness in the left ankle with walking. Urinary retention has been a problem since about April of this year. Arms and neck are okay. The back and legs hurt equally. Coughing and sneezing hurts the back and the legs. He has less pain at night. He feels like his balance is off because he starts tripping over the left foot after a block or two. Walking after one block causes a functional foot drop. Standing bothers him after about 10 minutes. Sitting causes low back pain and left leg more than right pain after 10 minutes. Sleeping is interrupted due to his urinary problems. Also, he is having erectile dysfunction, not achieving the same quality as in the past.

**SOCIAL HISTORY:** He has been out of work for the last 2 months due to this problem and is on disability. Recreation is playing with his children. He does smoke a pack a day and does not drink. He is married.

**PAST MEDICAL HISTORY:** Notable for borderline hypertension and migraines.

**ALLERGIES:** Codeine.

**MEDICATIONS:** Prevacid, Norvasc, Vioxx, and Nortriptyline.

**PAST SURGICAL HISTORY:** Shoulder surgery 1996, tonsillectomy 1996.

**EXAMINATION:** Reveals a large well-developed male who stands at 6'4" and weighs 300 pounds. He walks with a normal but slow gait but he does have trouble with heel walking on the left side. Reflexes are 2+ at knees, 2+ right ankle, 1+ left ankle. Sensation is decreased in the left L5 and especially S1 distribution. Power testing is 4/5 left tibialis anterior and left hip abductor. Straight leg raise is negative. Hip range of motion is pain free. He does have a lot of pain with pressure palpation of the L5 vertebra. He has pain with lumbar range of motion especially extension.

SEAN E. MCCANCE, M.D.
SPINAL SURGERY
121 East 61st Street
New York, NY 10021
212 546-9285

**ALFANO, STEVEN (continued)** **8/17/00**

I have reviewed the patient's MRI scan. He does have significant degenerative disc changes with modic endplate changes at L5-S1 with diffuse disc bulging and a moderate spinal stenosis. He does have impingement of the left-sided L5 nerve root.

**DIAGNOSIS:**
1. Discogenic low back pain.
2. Left L5-S1 radiculopathy.

**ASSESSMENT AND PLAN:** I advised the patient that I am concerned about his weakness in the left leg and his difficulty walking after 1-2 blocks. That problem has been going on for the last 1-2 years and does not appear to be improving. His pain flare in his back is most likely related to the changes at L5-S1.

I did advise him that the most definitive solution for him would be an L5-S1 fusion with decompression. He is undergoing treatments with a neurologist who is managing him conservatively. I did advise him to strongly consider having surgery. He will consider his options. I also advised him to stop smoking if he does consider surgery, for at least one month prior to surgery and 3 months following.

**Sean E. McCance, M.D.**

SEM/es

From: Steve Alfano To: Shannon Bailey/L. D'Ambrosio Date: 1/5/01 Time: 9:57:50 AM Page 1 of 2

**FACSIMILE COVER PAGE**

| | | | |
|---|---|---|---|
| **To :** | **Shannon Bailey/L. D'Ambrosio** | **From :** | Steve Alfano |
| **Sent :** | 1/5/01 at 9:56:06 AM | **Pages :** | 2 (Including Cover) |
| **Subject :** | SS DBL Application Receipt | | |

Here is my DBL application receipt from Social Security. Let me know if there's anything else you need.
Thanks,

Steve

JAN 0 5 2001

## RECEIPT FOR YOUR CLAIM FOR SOCIAL SECURITY DISABILITY INSURANCE BENEFITS

| PERSON TO CONTACT ABOUT YOUR CLAIM | SSA OFFICE | DATE CLAIM RECEIVED |
|---|---|---|
| | | 1380 PARK... JAN 4 2001 SSA |
| TELEPHONE NUMBER (INCLUDE AREA CODE) | | |

Your application for Social Security disability benefits has been received and will be processed as quickly as possible.

You should hear from use within ________ days after you have given us all the information we requested. Some claims may take longer if additional information is needed.

In the meantime, if you change your address, or if there is some other change that may affect your claim, you - or someone for you - should report the change. The changes to be reported are listed below.

Always give us your claim number when writing or telephoning about your claim.

If you have any questions about your claim, we will be glad to help you.

| CLAIMANT | SOCIAL SECURITY CLAIM NUMBER |
|---|---|
| Steven Alfano | 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 |

### CHANGES TO BE REPORTED AND HOW TO REPORT
### FAILURE TO REPORT MAY RESULT IN OVERPAYMENTS THAT MUST BE REPAID

- You change your mailing address for checks or residence. To avoid delay in receipt of checks you should ALSO file a regular change of address notice with your post office.
- You go outside the U.S.A. for 30 consecutive days or longer.
- Any beneficiary dies or becomes unable to handle benefits.
- Custody Change—Report if a person for whom you are filing or who is in your care dies, leaves your care or custody, or changes address.
- You are confined to jail, prison, penal institution or correctional facility for conviction of a crime or you are confined to a public institution by court order in connection with a crime.
- You become entitled to a pension or annuity based on your employment after 1956 not covered by Social Security, or if such pension or annuity stops.
- Your stepchild is entitled to benefits on your record and you and the stepchild's parent divorce. Stepchild benefits are not payable beginning with the month after the month the divorce becomes final.
- Change of Marital Status—Marriage, divorce, annulment of marriage.
- You return to work (as an employee or self-employed) regardless of amount of earnings.
- Your condition improves.
- If you apply for or begin to receive workers' compensation (including black lung benefits) or another public disability benefit, or the amount of your present workers' compensation or public disability benefit changes or stops, or you receive a lump-sum settlement.

**HOW TO REPORT**
You can make your reports by telephone, mail, or in person, whichever you prefer.

If you are awarded benefits, and one or more of the above changes occur, the change(s) should be reported by calling:

________________________
(Telephone Number—Include Area Code)

*U.S. Government Printing Office: 2000— 461-[illegible]

**REIMBURSEMENT AGREEMENT**

Claimant STEVEN ALFAND

Social Security 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 Insuring Company

Account Name Account Number

I have filed a claim for benefit under Group Short Term Disability (STD) and/or Long Term Disability (LTD). I understand that under the terms of the STD/LTD policy Benefits may be reduced by any amounts that I or my dependents, if applicable, receive or are assumed to receive including, but not limited to:

- the Canada and Quebec Pension Plans;
- the Railroad Retirement Act;
- local, state, provincial or federal government disability or retirement plan or law;
- work loss provision in "No Fault" auto insurance;
- Social Security disability or retirement benefits;
- Permanent or temporary Worker's Compensation or similar state or Federal law;
- Veteran's Administration Plans.

I also understand the Insurance Company has the right to immediately reduce benefits by an amount it estimates will be received, but by signing this agreement and complying with its terms the Insurance Company will not reduce any benefits.

I have applied or will apply for Other Benefits and am not currently receiving such Benefits. I further understand that an agreement not to estimate my Other Benefits is only valid if I provide proof of the following events:

- Insurance Company receives proof of my application within the first six months from the date my disability commences.
- Payments were denied prior to one year from the date my disability commences.
- Signed Reimbursement Agreement was submitted to the Insurance Company.

Beginning with the 13th month after my disability commences, the Insurance Company will begin estimating my Other Benefits and will reduce my STD/LTD benefits accordingly. Such estimation will continue until I have satisfied the requirements stated in the policy.

If I later receive Other Benefits for myself or my dependents, if applicable, I agree to reimburse the full amount of any overpayment within 30 days after receiving the award. In addition, I understand that the Insurance Company, at is option, will retain any future benefits payable including Minimum Monthly Benefits, and use it to reduce the overpayment not refunded within 30 days. The Insurance Company reserves the right to obtain a lump payment to recover an overpayment even if future benefits are being withheld.

I agree to provide any information about my Other Benefits claim needed to determine the benefits I am entitled to under the Short Term or Long Term Disability policy. In addition, I agree to keep the Insurance Company advised of the progress of my claim for Other Benefits and promptly notify the Insurance Company when benefits have been awarded.

This Agreement does not modify or amend any other provisions in the STD/LTD policy.

**NOTE:** As a service to you, we have created this agreement so that you are able to receive your Net STD/LTD Benefit while waiting for your Other Benefits award or denial. If you choose not to sign and return this form, we will estimate Other Benefits and deduct the amount from your STD/LTD benefits according to the provisions of the contract.

STEVEN ALFAND
Name (Please Print)

12/15/00
Date

[signature]
Signature

Witness

General
LM-674154 Rev. 3/00



Grade: E10

**WEILL MEDICAL COLLEGE of CORNELL UNIVERSITY**
**POSITION DESCRIPTION**

Position Title: Manager, Compensation

FLSA Status: Exempt

Department: Human Resources

Division:

Incumbent: Steven Alfano

Reports to: Sr Director, Human Resources

Edited by: Susan McCreight

Date: September 2000

Reviewed by: Susan McCreight

Scheduled Weekly Hours: 35

## I. POSITION SUMMARY

Under the general direction of the Senior Director, Human Resources, administers the non-academic compensation program to ensure internal and external equity and compliance with internal policy and federal and local laws governing wage and salary.

## II. MAJOR RESPONSIBILITIES

- Works with the SDHR to develop, implement, communicate and administer compensation policies for non-academic employees of WMC to ensure competitive compensation, complience with policy and laws and adequate opportunity for reward for performance and promotion.

- Develops and updates a system of compensation ranges to offer competitive pay, opportunity for continuing reward and ability to keep pace with inflation and employment market issues.

- Develops and maintains relationships with appropriate external professionals and professional organizations through informal and formal meetings, memberships, etc. to ensure continuing education in the field of compensation for the purpose of maintaining sound and up-to-date compensation practices that support the employment and retention of highly qualified employees.

- Administers a program of job analysis to ensure the assignment of appropriate pay scales to all non-academic positions.



- Designs, implements, maintains and oversees the administration of a performance management system for all non-academic employees to ensure accurate documentation of performance, fair and equitable ratings of performance, salary increases tied to performance and regular feedback to employees on matters of job performance.

- Develops and prepares regular reports on compensation matters for presentation to the SDHR (and others as requested) analyzing significant compensation issues, identifying developing trends and recommending plans of action to ensure effective administration of compensation programs at WMC.

III. POSITION REQUIREMENTS

Requires undergraduate college degree and a minimum of 7 years in professional human resources capacity, with at least 2 years in a managerial role. Must have at least 3 years in compensation, both exempt and non-exempt. Must have strong organization and analytical skills, have demonstrated ability to creatively solve problems and well-developed interpersonal skills. Needs demonstrated ability to communicate effectively both orally and in writing. Must work well under pressure and be results and deadline-oriented. Ability to work with word processing and spreadsheet softwares required. Must be able to forecast project costs and develop appropriate budget plans.

May be required to work overtime to complete projects on time. Must be a self-starter and be able to effectively manage others. Must have the ability to persuade and influence others.

IV. DIRECT REPORTS

Senior Compensation Analyst
Human Resources Clerk

V. PHYSICAL REQUIREMENTS

Work performed in modern office environment. Most work performed sitting at desk. Must be able to use Personal Computer, telephone, copier, facsimile, calculator on a daily basis. Must be able to sit for extended periods.



DOCUMENT NO.

THE CITY OF NEW YORK
DEPARTMENT OF HEALTH
BUREAU OF VITAL RECORDS
CERTIFICATION OF BIRTH

This is a certification of name and birth facts on file in the Bureau of Vital Records, Department of Health, City of New York

DATE OF BIRTH: JANUARY 14, 1958 CERTIFICATE NO.: 156-58-200597

BOROUGH: BRONX DATE FILED: 01-22-58 DATE ISSUED: 09-19-90

NAME: STEVEN ANTHONY ALFANO ***

SEX: MALE

MOTHER'S MAIDEN NAME: GLORIA DOLORES COMPARATO

FATHER'S NAME: ANTHONY SAMUEL ALFANO

CITY REGISTRAR

Do not accept this transcript unless it bears the raised seal of the Department of Health. The reproduction or alteration of this certification is prohibited by Section 3.21 of the New York City Health Code.

# PHYSICAL ABILITY ASSESSMENT

*(To be completed by the medical professional)*

Please complete the following items based on your clinical evaluation of:

Patient Name: Stephen A[illegible] SS# 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

Diagnosis(es)/ICD9 Code(s): Lumbosacral Radiculopathy (724.4)

**In an 8-hour workday, the patient can perform the following activities:**

| | | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| **Lifting:** | 10 lbs. | | ✓ | | |
| | 11-20 lbs. | | | | |
| | 21-50 lbs. | | | | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Carrying:** | 10 lbs. | | ✓ | | |
| | 11-20 lbs. | | | | |
| | 21-50 lbs. | | | | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Pushing:** | (Max. Wt.: 20 lbs) | | ✓ | | |
| **Pulling:** | (Max. Wt.: 20 lbs) | | ✓ | | |
| **Sitting:** | | | ✓ | | |
| **Standing:** | | | ✓ | | |
| **Walking:** | | | | ✓ | |
| **Climbing:** | Regular Stairs | | | ✓ | |
| | Regular Ladders | | | ✓ | |
| **Balancing:** | | | ✓ | | |
| **Stooping:** | | | | ✓ | |
| **Kneeling:** | | | | ✓ | |
| **Crouching:** | | | | ✓ | |
| **Crawling:** | | | | ✓ | |
| **Seeing:** | | | | | ✓ |
| **Hearing:** | | | | | ✓ |
| **Smell/Taste:** | | | | | ✓ |

12/14/2000 10:21 FAX 716 231 8502 CIGNA INTEGRATED CLAIM 004/004

| | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|
| **Reaching:** Overhead | | | ✓ | |
| Desk Level | | | ✓ | |
| Below Waist | | | ✓ | |
| **Fine Manipulation:** Right | | | | ✓ |
| Left | | | | ✓ |
| **Simple Grasp:** Right | | | | ✓ |
| Left | | | | ✓ |
| **Firm Grasp:** Right | | | | ✓ |
| Left | | | | ✓ |
| **Environmental Conditions:** Exposure to extremes in heat | | | | ✓ |
| Exposure to extremes in cold | | | | ✓ |
| Exposure to wet / humid conditions | | | ✓ | |
| Exposure to vibration | | | ✓ | |
| Exposure to odors / fumes / particles | | | | ✓ |
| **Ability to work extended shifts/ overtime:** | | | ✓ | |
| **Use of lower extremities for foot controls:** | | ✓ | | |

*Please use this space to elaborate on ANY of the above categories:*

I saw this patient only once 7/20/2000

**Name:** Stephen Scelsa **Signature:** [signature]

Specialty: Neurology Date: 12/18/00

Address: Phone: (212) 844-8490

**Please include any objective test or narrative if available.**

**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

**ELECTROMYOGRAPHY LABORATORY**
**DEPARTMENT OF NEUROLOGY**
**BETH ISRAEL MEDICAL CENTER**
**NEW YORK, NEW YORK**

| NAME | ALFANO, STEVEN |
|---|---|
| SOCIAL SEC # | 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 |
| EXAM DATE | 07/20/2000 |
| REFERRED BY | Andrew Schiff, M.D. |

| AGE | 42 | HEIGHT (INCHES) | 76 | TEMP | 32 | SEX | Male |
|---|---|---|---|---|---|---|---|

**History:** Mr. Alfano is a 42-year-old man referred for possible left lumbosacral radiculopathy. Two months ago, he made a sudden movement and felt sudden lower back pain and stiffness. A few days later, he began to feel radiation of the pain into the left buttock, posterior thigh to the ankle.

He has had lower back pain intermittently for many years since a car accident in 1997. Since that time, he has intermittently noted some weakness in his left leg, particularly in the calf when pushing off with his foot. Occasionally, he thought there was some weakness in the anterior thigh. Sitting for a long time aggravates the pain. Sitting slightly flexed and hunched over was partially alleviating. He also had pain while lying down at night in the posterior thigh. For four months, he has had some urinary retention and erectile dysfunction. He saw a urologist who found no abnormalities.

He recently saw an orthopedic surgeon. He had an MRI of his lumbosacral spine which showed spondylosis and stenosis at L5/S1, with impingement of the left L5 nerve root at the lateral recess. He has had two epidural steroid injections, which have provided only mild benefit. A third and final one was planned. Constitutional symptoms, such as weight loss, fever, and rash, were absent.

**Past Medical History:** Migraines, hypertension, reflux esophagitis.

**Drug Allergies:** Codeine caused headache (aggravation of migraines) and nausea.

**Social History:** Works for human resources. Does desk work. He has been out of work since the beginning of June (a month and a half).

**Family History:** No history of diabetes.

**Medications:** Imitrex p.r.n., Norvasc, Prevacid.

**Review of Systems:** See above. No diabetes. No recent trauma. Other systems were reviewed and were negative.

**General Examination:** Appearance: Appeared well, in no distress. Integument: No dermatomal eruptions in the legs. Neck: Supple. Extremities: No clubbing, cyanosis or edema. Straight-leg raising was negative bilaterally. Patrick's maneuver was, also, negative bilaterally.

**Neurologic Examination:**

**Mental Status:** Alert and oriented x 3. Fluent speech. He gave a detailed description of his symptoms and recalled dates well.

**Cranial Nerves:** Extraocular movements intact. Face symmetric.

**Motor:** No atrophy, fasciculations, or pronator drift. Strength was 5/5 in all groups, although there was some give-way in left plantar and dorsiflexion of the foot and toes. Strength seemed normal.

**Gait:** Slightly antalgic. Able to stand, but not walk, on his heels and toes; this was painful.

**Coordination:** Finger-to-nose and tandem gait steady.

**Sensory:** Negative Romberg. Pin was diminished in the left lateral border of the foot. Vibration was impaired in the great toes bilaterally. Pin and vibration were, otherwise, intact.

**Reflexes:** Reflexes 2+ throughout. Plantar responses were flexor bilaterally.

**Electrophysiologic Findings:** Bilateral peroneal and tibial motor conduction studies were normal. Left tibial and bilateral peroneal F-wave minimal latencies were prolonged. Right tibial F-wave minimal latencies were normal. Bilateral sural and peroneal sensory responses were normal. Bilateral tibial H-reflex latencies were prolonged. Needle EMG of bilateral gluteus maximus, left leg, and lumbosacral paraspinal muscles showed no spontaneous activity. There was borderline decreased recruitment in the left tibialis anterior and quadriceps muscle, but motor unit potential morphology was normal throughout.

**Clinical/Electrophysiologic Impression:** There were nonspecific neurogenic abnormalities in both legs of uncertain significant. Late responses were prolonged bilaterally. These findings did not clearly differentiate bilateral L5/S1 radiculopathies from mild polyneuropathy. There was not definitive electrophysiologic evidence of either.

Taken together, the clinical and electrophysiologic features suggest

the patient has left S1, more than L5, radiculopathy. There was no associated weakness or reflex change. Further conservative management is planned, at this point. He will follow up for a third epidural injection. In the interim, he was told to stop the Motrin and to start Pamelor 25 mg p.o. q.h.s., to be increased to 50 mg p.o. q.h.s. in seven days, and to 75 mg p.o. q.h.s. at the end of two weeks, if tolerated. He was also started on Ultram one or two tablets p.o. q.i.d. p.r.n. pain. The side effects of the medicine were fully explained. He will hold off exercising for now. He was told that he could return to work, and that he should get up from his desk a few times an hour to stretch and walk around. He was also told he should avoid lifting anything heavy (greater than ten pounds). The patient will see me in followup in six weeks. I requested that he try to bring a copy of his MRI of lumbosacral spine films, if available.

Stephen Scelsa, M.D.
Director of the Neuromuscular Division
Assistant Professor of Neurology

SS/TL975/01190
T: 07/21/2000

| Motor Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency ms | Amp mV | Dur ms | Dist mm | Vel m/sec | Comment |
| R.Peroneal Ankle-EDB | 4.26 | 4.2 | 7.32 | | | Nl |
| R.Tibial Ankle-AH | 4.00 | 11.3 | 6.40 | | | Nl |
| L.Tibial AK-AH | 4.04 | 12.1 | 6.82 | | | Nl |
| L.Tibial Pop-AH | 15.1 | 9.6 | 7.80 | 520.0 | 46.8 | Nl |
| L. Peroneal AK-EDB | 5.82 | 7.4 | 6.75 | | | Nl |
| L. Peroneal BFH-EDB | 14.3 | 6.5 | 8.04 | 420 | 49.5 | Nl |
| L.Peroneal AFH-AK | 16.2 | 6.3 | 8.16 | 91 | 49 | Nl |

| F-Waves | | | |
|---|---|---|---|
| Nerve | Latency(ms) Min | Latency(ms) Max | Comment |
| R.Peroneal EDB | 59.0 | | ↑Lat |
| R.Tibial AH | 58.2 | 63.6 | Nl |
| L.Tibial AH | 59.7 | 63.0 | ↑Lat |
| L.Peroneal EDB | 58.9 | 61.8 | ↑Lat |

| Sensory Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency | Amp uV | Dur | Distance mm | Velocity m/s | Comment |
| L.Peroneal Leg-Dorsum Ft | 2.69 | 10.1 | 3.12 | 130.0 | 48.3 | Nl |
| R.Sural Calf-LatMal | 3.50 | 16.9 | 1.95 | 160.0 | 45.7 | Nl |
| L.Sural Calf-LatMal | 3.30 | 17.2 | 1.71 | 150.0 | 45.5 | Nl |
| R.Peroneal Leg-Dorsum Ft | 2.42 | 8.11 | 1.94 | 120.0 | 49.6 | Nl |

Alfano,Steven, 099449648 July 20, 2000

| H Reflex | | | |
|---|---|---|---|
| Nerve | Latency mS | Amplitude mV | Comment |
| L.Tibial H Reflex | 36.5 | | ↑Lat |
| R.Tibial H Reflex | 38 | | ↑Lat |

| Routine Needle EMG Examination | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Muscle | Fib PSW | Fasc | Misc | MUP | | | Rec Patt | Comment |
| | | | | Amp | Dur | Phase | | |
| L.Glut Max | 0 | 0 | | | | | | Nl |
| L.Quad | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Tib Ant | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Per Longus | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Gastroc | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.L-PSPinal L4,5 | 0 | 0 | | | | | | Nl |
| L.L-PSpinal L5,S1 | 0 | 0 | | | | | | Nl |
| R.Glut Max | 0 | 0 | | | | | | Nl |

Alfano,Steven, 099449648 July 20, 2000

August 23, 2000

NEW PATIENT VISIT
NEUROSURGICAL CONSULTATION NOTE

RE: STEVE ALFANO

Mr. Alfano is a 42 year old man complaining of low back pain and intermittent leg pain since he was about 16 years old. More recently it's gotten much more severe and he has left much greater than right leg pain. Also if he walks more than a block he gets numbness and weakness and a dropped foot in his left leg more than the right leg but also numbness in the right leg. He also states that he has erectile problems and also some urinary retention. He's had epidural steroids x 2 with slight benefit. He's been on Vioxx recently with slight benefit.

Surgery: Tonsillectomy and soft palate procedure, sinus surgery and right shoulder rotator cuff surgery. Medical Illnesses: Hypertension, esophageal reflux and also has migraines. Medications: Norvasc, Prevacid, Vioxx, Elavil and Imitrex. Allergies: Codeine caused headaches. He smokes one pack per day.

MRI scan reveals moderate stenosis at L5-S1 with severe lateral recess stenosis and a possible disc at L5-S1 towards the left. EMG/nerve conduction studies are suggestive of probable lumbar radiculopathy on the left.

Exam is remarkable for a large man who weighs 300lbs with pain with extension or flexion of the low back and positive straight leg raising bilaterally at 45 degrees. Motor and sensory exam is intact. Deep tendon reflexes absent in the ankle jerks otherwise 2+ and symmetrical.