12/18 '00 10:39 NO.269  03/05

Page 2
Re: Steve Alfano

12·18·00

My impression is L5-S1 radiculopathy left much greater than right secondary to lumbar stenosis. Plan is a lumbar laminectomy at L5 bilaterally with possible discectomy at L5-S1 on the left. Patient is going to think about this.

*Robert B. Snow*

Robert B. Snow, M.D., Ph.D., F.A.C.S.
Associate Professor of Surgery
(Neurosurgery)

cc: Dr. Andrew Schiff
    525 E. 68 Street – HT-4
    New York, NY 10021


RBS/vl

CLICNY 0492

12/18 '00 10:39 NO.269  04/05

# PHYSICAL ABILITY ASSESSMENT
### (To be completed by the medical professional)

Please complete the following items based on your clinical evaluation of:

Patient Name _____ Stephen Alfano _____ SS# _____
Diagnosis(es)/ICD9 Code(s) _____ 721.3 _____

## In an 8-hour workday, the patient can perform the following activities:

| | | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| **Lifting:** | 10 lbs. | | X | | |
| | 11-20 lbs. | | X | | |
| | 21-50 lbs. | | | X | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Carrying:** | 10 lbs. | | X | | |
| | 11-20 lbs. | | X | | |
| | 21-50 lbs. | | | X | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Pushing:** | (Max. Wt.: _____) | | | | |
| **Pulling:** | (Max. Wt.: _____) | | | | |
| **Sitting:** | | | | X | |
| **Standing:** | | | | X | |
| **Walking:** | | | | X | |
| **Climbing:** | Regular Stairs | | | X | |
| | Regular Ladders | | | X | |
| **Balancing:** | | | | | |
| **Stooping:** | | | | X | |
| **Kneeling:** | | | | X | |
| **Crouching:** | | | | X | |
| **Crawling:** | | | | X | |
| **Seeing:** | | X | | | |
| **Hearing:** | | X | | | |
| **Smell/Taste:** | | 7 | | | |

₪003/004          CIGNA INTEGRATED CLAIM          12/14/2000 16:14 FAX 716 251 0802

12/18 '00 10:40 NO.269  05/05

| | | Continuously (67-100%) (5.0 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| Reaching: | Overhead | X | | | |
| | Desk Level | X | | | |
| | Below Waist | X | | | |
| Fine Manipulation: | Right | X | | | |
| | Left | X | | | |
| Simple Grasp: | Right | X | | | |
| | Left | X | | | |
| Firm Grasp: | Right | X | | | |
| | Left | X | | | |
| Environmental Conditions: | | | | | |
| Exposure to extremes in heat | | X | | | |
| Exposure to extremes in cold | | X | | | |
| Exposure to wet / humid conditions | | X | | | |
| Exposure to vibration | | X | | | |
| Exposure to odors / fumes / particles | | X | | | |
| Ability to work extended shifts/ overtime: | | X | | | |
| Use of lower extremities for foot controls: | | X | | | |

Please use this space to elaborate on ANY of the above categories:

_____

_____

_____

_____

_____

_____

**Name:** Robert Snow          **Signature:** _____
**Specialty:** Neurosurgery          **Date:** 12/15/00
**Address:** 523 E 72nd St NYNY     **Phone:** 212 2120256

**Please include any objective test or narrative if available.**

**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**



## PHYSICAL ABILITY ASSESSMENT
*(To be completed by the medical professional)*

Please complete the following items based on your clinical evaluation of:

Patient Name_____ SS#_____

Diagnosis(es)/ICD9 Code(s)_____

### In an 8-hour workday, the patient can perform the following activities:

| | | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| **Lifting:** | 10 lbs. | | | | |
| | 11-20 lbs. | | | | |
| | 21-50 lbs. | | | | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Carrying:** | 10 lbs. | | | | |
| | 11-20 lbs. | | | | |
| | 21-50 lbs. | | | | |
| | 51-100 lbs. | | | | |
| | 100+ lbs. | | | | |
| **Pushing:** | (Max. Wt.:_____) | | | | |
| **Pulling:** | (Max. Wt.:_____) | | | | |
| **Sitting:** | | | | | |
| **Standing:** | | | | | |
| **Walking:** | | | | | |
| **Climbing:** | Regular Stairs | | | | |
| | Regular Ladders | | | | |
| **Balancing:** | | | | | |
| **Stooping:** | | | | | |
| **Kneeling:** | | | | | |
| **Crouching:** | | | | | |
| **Crawling:** | | | | | |
| **Seeing:** | | | | | |
| **Hearing:** | | | | | |
| **Smell/Taste:** | | | | | |

|  | | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Not applicable to diagnosis(es) |
|---|---|---|---|---|---|
| **Reaching:** | Overhead | | | | |
| | Desk Level | | | | |
| | Below Waist | | | | |
| **Fine Manipulation:** | Right | | | | |
| | Left | | | | |
| **Simple Grasp:** | Right | | | | |
| | Left | | | | |
| **Firm Grasp:** | Right | | | | |
| | Left | | | | |
| **Environmental Conditions:** | | | | | |
| Exposure to extremes in heat | | | | | |
| Exposure to extremes in cold | | | | | |
| Exposure to wet / humid conditions | | | | | |
| Exposure to vibration | | | | | |
| Exposure to odors / fumes / particles | | | | | |
| **Ability to work extended shifts/ overtime:** | | | | | |
| **Use of lower extremities for foot controls:** | | | | | |

*Please use this space to elaborate on ANY of the above categories:*

_____

_____

_____

_____

_____

_____

_____

**Name:** _____   **Signature:** _____

Specialty: _____   Date: _____

Address: _____   Phone: _____

**Please include any objective test or narrative if available.**

**Thank you for your time.**

**Please return this form in the enclosed addressed envelope.**

**Lara D'Ambrosio**
Case Manager
Long Term Disability




**CIGNA**

December 8, 2000

Routing 1760
255 East Ave
Rochester NY 14604
Telephone 800.532.9288 ext 6521
Facsimile 716.258.1760

Steven Alfano
3800 Waldo Ave
Apt 13-G
Bronx, NY 10463

RE:    Steven Alfano
       S099449648
       NYK 1972
       Weill Medical College
       CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

We received your claim for Long Term Disability (LTD) benefits on 12/072000. You may be entitled to LTD benefits beginning 12/03/2000, however, we are unable to make a decision at this time. To fully understand how your condition prevents you from working, we had to request additional information from your physician(s), Dr. Alexiades, Dr. Digiovanni, Dr. Scelsa, Dr. McCance, Dr. Snow, and Dr. Farmer. We have also requested information from your employer. When we receive this information, we should be able to make a decision on your claim. If we are unable to make the decision within 30 days of the day we received your claim, we will contact you and explain the reason for the delay.

To assist us in managing your claim, we ask that you provide us with:

    1. The enclosed Reimbursement Agreement (signed and dated).
    2. The enclosed Disability Questionnaire (completed in full).
    3. Proof of your age (a copy of your driver's license or birth certificate is acceptable).

We ask that you return these items in the envelope provided by 12/27/2000.

Your LTD benefits are generally reduced by the amount of any other benefits you receive because of your Disability. This includes any Social Security disability or retirement benefits you and your dependents receive, if so stated in your policy. Please notify us immediately if you are receiving or become entitled to receive any income from sources such as:

Life Insurance of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

December 8, 2000
Page 2

- Social Security Disability or Retirement
- Statutory Disability*
- Employer Sick Leave
- Veterans Administration
- Worker's Compensation
- No-Fault automobile insurance
- Employer Pension

*If you work in California, Hawaii, New Jersey, New York, Rhode Island, or Puerto Rico, you should be eligible for disability benefits under Statutory Disability benefit plans.

If you are eligible for Social Security disability benefits, you should apply for these benefits now. If you are not sure if you would qualify, we can help. One of our Economic Consultants, who are experts on Social Security, may contact you to discuss your case and may ask you to apply for Social Security. If we feel that you would qualify for Social Security benefits, and you choose not to apply for these benefits, your group policy allows us to reduce your Long Term Disability benefit by an amount that we estimate you would be eligible to receive.

We also have Medical Consultants and Occupational Consultants on staff who may be contacting you in the future to discuss other issues that may affect your disability claim. We ask that you extend your full cooperation to these consultants.

If you have other types of coverage that may pay benefits for this condition, you may submit a claim. For example, if your life insurance plan includes a waiver of premium for disability, you may be eligible to submit a waiver claim. Please review the provisions of your employee booklet or certificate.

Mr. Alfano, thank you for your cooperation in completing and returning the requested forms and information. If you have any questions, please call me. I can be reached at our toll free number 1.800.532.9288 extension 6521 from 7:30 a.m. to 3:30 p.m. Eastern Time, Monday through Friday.

Sincerely,

Lara D'Ambrosio
Case Manager



**CORNELL**
U N I V E R S I T Y

Joan and Sanford I. Weill
Medical College

12-07-01

Department of Human Resources
1300 York Avenue
New York, NY 10021

December 1, 2000

Ms. Lara D'Ambrosio
Case Manager
CIGNA
Routing 1760
225 East Ave.
Rochester, New York 14604

RE: LTD Claim for Mr. Steven Alfano

Dear Lara,

Enclosed please find a long term disability claim and attending physician's statement for our employee Mr. Steve Alfano. Mr. Alfano has been continuously disabled by back pain since June 5, 2000. He is applying for LTD benefits to begin December 7, 2000.

I have also enclosed the following for Dr. Clayson.:

1.. Job description for his duties as a Wage and Salary Manager.
2. Copy of his LTD enrollment Card..

Please process this claim as soon as administratively possible and if you need any additional information please call me at (212) 746-1035.

Sincerely,

Rosemary Cins
Benefits Specialist

## TO BE COMPLETED BY THE EMPLOYER
### PLEASE COMPLETE IN FULL

| | | |
|---|---|---|
| NAME OF EMPLOYEE (Last, First, M.I.) ALFANO, STEVEN | SOCIAL SECURITY NO. 028-214-70 | ACCOUNT NUMBER NYK 1972 |

| DATE HIRED 8/5/91 | EFFECTIVE DATE OF EMPLOYEE'S LTD COVERAGE WITH CIGNA CO. 9/1/91 | WAS EMPLOYEE'S LTD INSURANCE ISSUED ON THE BASIS OF A STATEMENT OF PHYSICAL CONDITION? ☐ Yes ☒ No   IF YES, ATTACH COPY |

| BASIC EARNINGS 1346.15 ☒Wk. ☐Mo. | DATE OF LAST CHANGE IN EARNINGS 7/1/99 | LAST DATE(S) WORKED 6/5/00  # Hrs. 7 | DAYE(S) RETURNED TO WORK N/A |

PLEASE CHECK THE APPROPRIATE BLOCKS:
☒ Exempt   ☒ Management   ☒ Supervisory   ☐ Union Local #   ☒ Salaried   ☒ Full Time 35
☐ Non-Exempt   ☐ Non-Management   ☐ Non-Supervisory   ☐ Non-Union   ☐ Hourly   Hrs/wk.   ☐ Part Time

| HAS EMPLOYEE BEEN TERMINATED? ☒ Yes  ☐ No | IF YES, DATE 12/6/00 | REASON End of Disability |

| PERCENTAGE OF EMPLOYEE CONTRIBUTION TOWARD DISABILITY PREMIUM (see Internal Revenue Code Section 105(a) and Regulations thereunder) 50 % | EMPLOYEE'S CONTRIBUTIONS WERE MADE ON: ☐ Pre-or ☒ Post-tax basis | PREMIUM PAID THRU DATE 12/30/00 |

| WAS SALARY CONTINUED BEYOND LAST DAY WORKED? ☐ Yes ☒ No | IF YES, WEEKLY AMOUNT $ | PAID THRU 12/6/00 |

| HAS EMPLOYEE RECEIVED SHORT TERM BENEFITS? ☒ Yes  ☐ No | IF YES, WEEKLY AMOUNT $ 667.94 | FROM 6/5/00 | THRU 12/6/00 |

| HAS EMPLOYEE RECEIVED STATE DISABILITY BENEFITS? ☐ Yes ☒ No | IF YES, WEEKLY AMOUNT $ | FROM | THRU |

| HAS EMPLOYEE FILED A WORKERS' COMPENSATION CLAIM? ☐ Yes ☒ No | IF YES, WEEKLY AMOUNT $ | FROM | THRU |
If yes, ☐ approved or ☐ pending?   ☐ Yes ☒ No
NAME AND ADDRESS OF WC CARRIER AND WC CLAIM NUMBER

| IS EMPLOYEE ELIGIBLE FOR GROUP REASON ☐ Yes ☒ No | IF YES, MONTHLY AMOUNT $  To Pension | EMPLOYEE % CONTRIBUTION % | EFFECTIVE | IS THIS A ☐ DISABILITY PENSION  ☐ EARLY RETIREMENT  ☐ NORMAL RETIREMENT |

LIST ANY OTHER SOURCE OF INCOME TO WHICH THE EMPLOYEE IS ENTITLED AS A RESULT OF THIS DISABILITY

| OCCUPATION Wage & Salary Mgr. | (ATTACH JOB DESCRIPTION IF AVAILABLE: IF NOT, DESCRIBE JOB DUTIES BELOW) |

Was employee's job primarily ☐ a sedentary or ☐ did it involve considerable physical activity?
AS CLOSELY AS POSSIBLE, PLEASE ESTIMATE THE PERCENT OF TIME SPENT (TOTAL PERCENTAGE MUST EQUAL 100%):

_____ Sitting   _____ Walking   _____ Stooping   _____ Pushing   _____ Carrying*
_____ Standing   _____ Climbing   _____ Bending   _____ Lifting

*If job duties require lifting or carrying, indicate average and maximum weights handled. _____

REMARKS

| EMPLOYER Weill Medical College | DIVISION |

| ADDRESS 1300 York Ave Box 220, NY NY 10021 | TELEPHONE NUMBER (212) 746-108 |

| AUTHORIZED REPRESENTATIVE PRINT: Rosemary Cius   SIGNATURE: Rosemary Cius | DATE 12/1/00 |

ARE BOTH SIDES OF THIS FORM COMPLETED IN FULL?
ATTACH THE ATTENDING PHYSICIAN'S STATEMENT OF DISABILITY AND ANY OTHER DOCUMENTATION.

 

**IMPORTANT CLAIM NOTICE**

*Colorado Residents:* It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

*Florida Residents:* Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

*Maryland Residents:* Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act.

*New Jersey:* Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

*New York Residents:* Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and shall also be subject to a civil penalty not to exceed $5000 and the stated value of the claim for each such violation.

*Pennsylvania Residents:* Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

*Oregon Residents:* Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

*Virginia Residents:* Any person who, with the intent to defraud or knowing that he is facilitating a fraud against an insurer, submits application or files a claim containing a false or deceptive statement may have violated state law.

Grade: E8

## WEILL MEDICAL COLLEGE POSITION DESCRIPTION

| | | | |
|---|---|---|---|
| Position: | Wage and Salary Manager | FLSA Status: | Exempt |
| Department: | Human Resources | Division: | |
| Incumbent: | Steven Alfano | Reports to: | Associate Dean |
| Edited by: | Patricia Flamm | Date: | March, 1999 (rev) |
| Reviewed by: | Patricia Flamm | Hours worked: | 35 |

### I.    POSITION SUMMARY

Under general direction, is responsible for the administration of WMC's non-academic Wage and Salary program, the annual performance appraisal program, and temporary employee administration.

### II.    POSITION ACTIVITIES

A.    Administers the non-academic wage and salary system: audits jobs and prepares job descriptions for promotional evaluation or establishment of formal job description and grade determination; approves and evaluates all exempt and non-exempt positions via the WMC Point-Factor Wage and Salary Systems. Approves all Personnel actions within guidelines involving a change in salary rate. Advises Human Resources Department Head regarding special salary requests and problems; and recommends changes in policy.

B.    Handles questions and problems from all levels of faculty, administration and staff regarding wage and salary policy and procedures, holds meetings to discuss as necessary. Advises/counsels administrative staff on various other personnel related matters, refers staff to other authority such as Department Manager or Employee Relations Manager as appropriate. Participates in orientation and training for WMC administrative staff on wage and salary and other general procedural matters.

C.    Oversees the processing and posting process of employment requisitions for replacement and new positions. Reviews new positions for content and determines tentative grade and suitability for non-academic posting. Resolves wage and salary problems relating to new positions, new hires, salary increases, and other issues, consults with Department Head as necessary on unusual problems. Works closely with Budget office, Payroll office, WMC Departments and NYPH to resolve problems as they arise.

D.    Oversees and supervises the development, updating and maintenance of the Human Resources Department's Web Page (WWW) listing of available positions for internal and external applicants. Oversees weekly production and distribution of paper posting and HR internal Open and Filled Report.

CLICNY 0529

E.     Supervises one Sr. Wage and Salary Analyst and one Personnel Clerk: hires, makes recommendations regarding salary adjustments, trains in procedures, assigns work, evaluates performance, assists with questions and problems.

F.     Oversees and maintains WMC system of employment of temporary employees; reviews and approves temporary assignments extension requests per established guidelines and policies; approves salary advances for temporary employees in absence of Department Head; resolves problems with hiring departments and/or payroll as necessary.

G.     Provides support and back-up coverage to Department Head and Employee Relations Manager as necessary in Employee Relations related matters: assists with investigations and provides input on matters relating to employee grievances and legal cases; officiates Step 1 grievances as necessary due to scheduling necessities or to ensure objectivity; reviews and approves lay-off requests in absence of the Department Head; may represent WMC in Administrative Hearings such as Unemployment Hearings.

H.     Assists in the implementation of new HRS Information System and system modules: serves on User Advisory Committee; attends and participates in implementation meetings; assists in testing, evaluation and debugging activities as necessary.

I.     Conducts analysis of non-academic salary range structures on an annual basis: obtains third party salary survey data; may conduct benchmark survey on WMC positions as allowable; and analyzes data via microcomputer. Assimilates and addresses problems and observances in current structures; assists with preparation of various cost estimates; compiles data, graphs and charts and presents findings with salary range adjustment and merit pool recommendations to Department Head.

J.     Manages annual non-academic performance appraisal review process: updates and revises exempt and non-exempt performance appraisal instruments; oversees distribution of blank performance appraisal forms to departments and collection of completed forms for incorporation into employee files; advises staff regarding the proper performance appraisal process, including appraisal format and content considerations; brings substandard evaluations to the attention of Employment/Employee Relations Manager.

K.     Manages annual employee merit increase program: advises/counsels administrative staff on merit increase guidelines and policies; reviews all annual merit increases for compliance with fiscal year and Human Resources guidelines; ensures completion and submission of employee performance appraisals prior to implementation of merit increases.

L.     Provides staff support to Wage and Salary Committee: recommends new Committee members; receives requests for action by committee; collects and prepares data; prepares agenda; presents materials, background information and insight to Committee members; performs follow-up activities. Advises requesting departments on preparation of justification and recommends salary request. Informs departments of Committee decisions.

CLICNY 0530

M.    Prepares periodic and special reports concerning analysis of wage and salary matters for Department Head or for use in annual budgeting process, annual affirmative action reporting, and layoff analyses. Uses standard statistical methods in analyzing and preparing data. Utilizes microcomputer for selected programs and special reports.

O.    Confers with outside educational, hospital and research institutions to survey for individual positions, wage and salary policy and annual increase information as allowable under Department of Labor and University guidelines. Participates in commercial surveys and completes questionnaires and surveys from Federal Department of Labor and other government agencies and other institutions.

P.    Works on special projects as required including design and implementation of revised performance appraisal systems; review and revision of evaluation systems, HR policy and procedure manual, modifications to HRS, development of BDS, installation of computer systems.

Q.    Modifies and runs mainframe computer reports via HRS Z-writer report writing system; utilizes system for running of standard and modified reports for use in wage and salary section and other areas of Human Resources and by request; de-bugs and modifies programs as necessary; maintains usage log. Oversees additions and revisions to HRS Job Classification Table. Inputs approved salary ranges into HRS Bracket/Step Table; proofs new fiscal year Table for accuracy.

R.    Performs other related duties as required.

III.    MINIMUM REQUIREMENTS

College Degree with courses in statistics and minimum of five years of managerial wage and salary experience, with in-depth knowledge of point-factor compensation systems; plus a background including experience in employee relations. Excellent written and oral communication skills, supervisory skills, and knowledge of mainframe payroll/personnel systems and micro computers required.

Master Summary Report

| Period of Lost Time: | | | | |
|---|---|---|---|---|
| First Day Off | RTW Date | Duty Type | Job | RTW Ho |
| 06/06/2000 | | | | |

RTW Notes: UNKNOWN

## Notes

LLVAHL                                06/12/2002

RECEIVED CLAIM BY MAIL HIT FAX BY MISTAKE. ***********RECEIVED ADDITIONAL INFORMAT
CLAIM WAS LOADED INTO SRO, BUT WAS NEVER LOADED INTO UNILYNX. PER MARY ROBER
INFORMATION OFF SRO AND GIVEN INFORMATION AND LOADED THE CLAIM TO UNILYNX.

## Employer Confirmation Information

| Data Element | Value | Confirmation M |
|---|---|---|
| EE Work Address | Addr1: 445 E. 69TH ST. RM 220<br>Addr2:<br>City: NEW YORK<br>County:<br>State: NY Zip: 10021 Country: US | None |
| Department Name | | None |
| Job Title | UNKNOWN | None |
| Occupation Classification | | None |
| Description of Job Duties | UNKNOWN | None |
| Union Indicator | ? | None |
| Union Number | | None |
| Date of Hire | 05/05/1991 | None |
| Date of Last Earnings Change | 09/01/2001 | None |
| Last Day Worked | 06/05/2000 | None |
| # Hours Worked Last Day | 0 | None |
| Expected RTW Date | | None |
| Full Time | ? | None |

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp                    06/12/2002



*Everything goes through attorney*



INA LIFE INSURANCE COMPANY OF NEW YORK
127 JOHN STREET, NEW YORK, NEW YORK 10038
A STOCK INSURANCE COMPANY

CIGNA

GROUP
LONG TERM DISABILITY
INCOME POLICY

(Non-Participating)

Group Policy No. NYK-4672

Policy Effective Date: July 1, 1988          Policy Delivered in: New York

Premium Due Dates: July 31 and the last day of each calendar month thereafter.          Policy Anniversary Date: July 1

This is a contract between us, the INA Life Insurance Company of New York, and you,

CORNELL UNIVERSITY MEDICAL COLLEGE
1300 York Avenue
New York, New York  10021
(the Policyholder).

In return for your application, and for the payment of premium as set forth in this policy, we agree to pay the benefits described in this policy. These benefits are subject to all of the terms of this policy, including any riders, endorsements, and amendments.

This policy goes into effect on the Policy Effective Date, at 12:01 a.m. at your address. The policy will stay in force as long as the premium is paid, until terminated by you or us.

This contract shall be governed by the laws of the state in which it is delivered.

IN WITNESS WHEREOF, we have signed this policy at New York, New York.

Registrar

SPECIMEN

LTD-625          Group Long Term Disability Income Policy          Page 1

03/22/2001 14:49 FAX                                    @007

CIGNA

...NG TERM DISABILITY INCOME PO...

## DEFINITIONS (Continued)

Applicable to Class 1 & 2 Only)

DISABILITY. An Employee will be considered Disabled if because of Injury or Sickness:

1. he is unable to perform all the material duties of his regular occupation;
   or

2. he is earning less than 80% of his Indexed Basic Earnings.

LM-8009              Definitions (Continued)              Page 6

CLICNY 0593

...NG TERM DISABILITY INCOME POLIC...

## SCHEDULE

Applicable to Class 1 only

BENEFIT WAITING PERIOD. the Benefit Waiting Period for an employee will be 180 days of continuous Disability. A period of Disability will be considered continuous even if the Disabled Employee returns to work, if, however, at the end of the Benefit Waiting Period, the Employee has earned more than 60% of his Basic Monthly Earnings for any month during the Benefit Waiting Period, it will be extended for 1 month. if, the Employee earns more than 60% of his Basic Monthly Earnings for more than one month during the Benefit Waiting Period, his period of Disability will not be considered continuous.

MONTHLY BENEFIT. The Monthly Benefit for any month is the lesser of (1) or (2):

(1)  60% of the Employee's Monthly Basic Earnings at the time he becomes Disabled, provided in the nearest dollar, up to a maximum of $16,000, and reduced by the amount of all Other Benefits, for that month, excluding any Other Benefits received by or on behalf of the Employee's dependents.

(2)  70% of the Employee's Basic Earnings at the time he becomes Disabled, reduced by the amount of all Other Benefits which the Employee and his dependents receive for that month.

However, if the Employee returns to work and is earning less than 60% of his Indexed Basic Earnings in his regular occupation his Monthly Benefit is:

1.  the Monthly Benefit at figured above for the first 12 months benefits are payable; and

2.  the Monthly Benefit as figured above minus 50% of the Employee's monthly earnings received while he is Disabled after the first 12 months benefits are payable.

If, during any month, the Employee returns to work, the amount of his Monthly Benefit as figured above, his earnings and any other Benefits, exceed:

1.  100% of his Indexed Basic Monthly Earnings for the first 12 months benefits are payable; or

2.  80% of his Indexed Basic Monthly Earnings after the first 12 months are payable,

his Monthly Benefit for that month will be further reduced by such excess amount.

The Monthly Benefits will not be less than $100, or 10% of the Policy benefit before reductions due to "Other Benefits" whichever is greater, regardless of any reductions shown in this schedule. Monthly Benefits will be pro-rated if payable for any period less than a month.

CLICNY 0598

CIGNA

LONG TERM DISABILITY INCOME POLICY

## SCHEDULE

### Applicable to Class 2 only

BENEFIT WAITING PERIOD. The Benefit Waiting Period for an Employee will be 180 days of continuous Disability. A period of Disability will be considered continuous even if the Disabled Employee returns to work on a full-time basis. If, however, at the end of the Benefit Waiting Period, the Employee has earned more than 80% of his Basic Monthly Earnings for any month during the Benefit Waiting Period, it will be extended for 1 month. If the Employee earns more than 80% of his Basic Monthly Earnings for one month during the Benefit Waiting Period, his period of Disability will not be considered continuous.

MONTHLY BENEFIT. The Monthly Benefit for any month is the lesser of (1) or (2):

(1)  60% of the Employee's Monthly Basic Earnings at the time he becomes Disabled (subject, however, to the maximum dollar limit to a maximum of $65,000, and reduced by the amount of all Other Benefits, for that month, excluding any Other Benefits received by or on behalf of the Employee's dependents.

(2)  17% of the Employee's Basic Earnings at the time he becomes Disabled, reduced by the amount of all Other Benefits which the Employee and his dependents receive for that month.

However, if the Employee returns to work and is earning less than 80% of his indexed Basic Earnings in his regular occupation or any other occupation his Monthly Benefit is:

1.  the Monthly Benefit as figured above for the first 12 months benefits are payable; and

2.  the Monthly Benefit as figured above minus 50% of the Employee's monthly earnings received while he is Disabled, after the first 12 months benefits are payable.

If, during any month the Employee returns to work, the sum of his Monthly Benefit as figured above, his earnings and any other benefits, exceed:

1.  100% of his indexed Basic Monthly Earnings for the first 12 months benefits are payable, or

2.  80% of the indexed Basic Monthly Earnings after the first 12 months are payable;

his Monthly Benefit for that month will be further reduced by such excess amount.

The Monthly Benefit will not be less than $100, or 10% of the Monthly Benefit before reductions due to "Other Benefits" whichever is greater, regardless of any reductions shown in this Schedule. Monthly Benefits will be pro-rated if payable for any period less than a month.

CLICNY 0599

SCHEDULE (Continued)

OTHER BENEFITS.  Other Benefits include:

(1) any amounts which the Employee receives on account of his disability under:

   (a) any group or franchise insurance or similar plan for persons in a group;

   (b) the Canada and Quebec Pension Plans;

   (c) any local, state, provincial or federal government disability or retirement plan or law;

   (d) any salary or wage continuance plan of the Employer;

   (e) the Jones Act or any workers' compensation, occupational diseases or similar law including all permanent as well as temporary disability benefits;

   (f) any work loss provision in the mandatory part of any "No-Fault" auto insurance policy;

(2) any disability or Old Age benefit payable under the Federal Social Security Act, which the Employee receives (or is assumed to receive*) at his own behalf;

(3) any retirement benefits which an Employee receives under: (a) a Retirement Plan sponsored by the Employer; (b) the Canada and Quebec Pension Plans; (c) the Railroad Retirement Act or the Railroad Unemployment Insurance Act.

*See the Assumed Receipt of Benefits provision.

OTHER INSURANCE.  If there is other Group Disability Insurance which:
   a)  applies to the same claim for Disability; and
   b)  contains the same or similar provision for reduction because of Other Benefits,

the policy shall be liable for its pro rata share of the total claim.

"Pro rata share" means the proportion of the total benefit that the amount payable under one policy, in the absence of such other insurance, bears to the total applicable benefits under all such policies.

CLICNY 0600

01/22/2002 11:51 FAX    CIGNA    ⊠016

___JC TERM DISABILITY INCOME POL___

## SCHEDULE (Continued)

### ASSUMED RECEIPT OF BENEFITS.

If an Employee is covered under the Federal Social Security Act, for any disability or Old Age Benefit, Statutory Disability (if applicable), Worker's Compensation, or similar laws, he will be assumed to be receiving such benefits for himself (and/or his dependents, if applicable). These assumed benefits will be the amount the Insurance Company estimates he (and his dependents, if applicable) is eligible to receive. This assumption will not be made if the Employee gives the Insurance Company proof that:

(1) he has applied for these benefits; and

(2) payments were denied.

However, if payment for disability were denied solely because the disability was not expected to last at least 12 consecutive months, the Employee will be assumed to be receiving such benefits after his disability has continued for 12 consecutive months. This assumption will not be made if he gives the Insurance Company proof that:

(1) he has re-applied for benefits; and

(2) payments were again denied.

The Insurance Company will not assume receipt of, nor reduce the Monthly Benefit by, any elective, actuarially reduced, early retirement benefits under such laws until the Employee actually receives such benefits.

### INCREASES IN OTHER BENEFITS

The Insurance Company will not consider any cost of living increase in any Other Benefits which is effective after:

(1) the first payment of such Other Benefit becomes due; and

(2) Monthly Benefits become payable under the policy.

### RECOVERY OF OVERPAYMENT

If the Monthly Benefit for any month is overpaid, the Insurance Company has the right to recover the amount overpaid by either of the following methods:

(1) a deduction of the overpaid amount from any future payments by the Insurance Company; or

(2) a lump sum repayment by the Employee of the overpaid amount.

LTD5119    Assured Receipt of Benefits; Increased Overpayments    Page 14

CLICNY 0501

07/22/2008 11:12 FAX    GROUP BENEFIT INSURE POLICY    ☐007

## SCHEDULE (Continued)

COST OF LIVING ADJUSTMENT.

On January 1, any Employee who is entitled to receive a Monthly Benefit and has been disabled for 12 months following the end of the Benefit Waiting Period will be eligible for a Cost of Living Adjustment. The Monthly Benefit payable to him, beginning with the month of January, will be increased by 3%.

The Cost of Living Adjustment will be determined on each January 1 until a total of 5 annual adjustments have been made. This adjustment will not be subject to the overall maximum Monthly Benefit.

DI-5016    Cost of Living Adjustment    Page 16    (9/92)

CLICNY 0603

03-12/2001 14:11 FAX    CIGNA    ...NG TERM DISABILITY INCOME POLIC...    page

INSURING PROVISIONS

LONG TERM DISABILITY BENEFITS

COMMENCEMENT OF BENEFITS.

The Insurance Company will begin paying Monthly Benefits in amounts determined from the Schedule when it receives due proof that:

(1) the Employee becomes Disabled while insured for this Long Term Disability Insurance; and

(2) his Disability has continued for a period longer than the Benefit Waiting Period shown in the Schedule.

DURATION OF BENEFITS.

The Insurance Company will stop paying Monthly Benefits on the earlier of the following dates:

(1) the date the Employee ceases to be Disabled;

(2) whichever of the following dates is applicable to the Employee:

| Age When Disability Began | Date Monthly Benefits Cease |
| --- | --- |
| Age 60 or under | The later of: (a) the Employee's 65th birthday; or (b) the date the 42nd Monthly Benefit is payable; |
| Age 61 | The date the 84th Monthly Benefit is payable; |
| Age 64 | The date the 36th Monthly Benefit is payable; |
| Age 65 | The date the 24th Monthly Benefit is payable; |
| Age 66 | The date the 21st Monthly Benefit is payable; |
| Age 67 | The date the 18th Monthly Benefit is payable; |
| Age 68 | The date the 18th Monthly Benefit is payable; |
| Age 69 or over | The date the 12th Monthly Benefit is payable. |

CLICNY 0604

Medha Bharadwaj
Appeal Claim Manager

CIGNA Disability Management Solutions

December 7, 2006

**CIGNA** Group Insurance
Life · Accident · Disability

ANDREW SIEGEL
ATTORNEY AT LAW
14 MAMARONECK AVENUE, SUITE 401
WHITE PLAINS, NY 10601

Routing 212
12225 Greenville Ave.
Suite 1000
Dallas, TX 75243-9382
Telephone 800.352.0611 ext.
1249
Facsimile 860.731.3211

Re:     Long Term Disability
        Claimant:            Steven Alfano
        Account Name;        Weill Medical College
        Policy #:            NYK 1972
        Underwriting Co:     CIGNA Life Insurance Company of New York

Dear Mr. Siegel:

We have carefully reviewed your client's claim for Long Term Disability (LTD) benefits, and must affirm our previous denial of his claim. Please refer to our September 28, 2005 and March 29, 2006 letters for specific policy definitions and previously reviewed information. In addition to the above, please refer to the following policy provisions:

**Definition of Disability**

"An Employee is Disabled if, because of Injury or Sickness:
  1. he is unable to perform all the material duties of his; or
  2. he is earning less than 80% of his Indexed Basic Earnings."

**Overview of Eligibility of Benefits**

We based our decision on Mr. Alfano's claim for benefits upon Policy language and all documents contained in his claim file, viewed as a whole.

I am aware that Mr. Alfano has been off work since June 06, 2000 due to chronic back pain. As outlined to you in our letter dated October 27, 2006, as the previous decision on Mr. Alfano's claim was based on a medical judgment, we requested a peer review. The peer review was completed by Dr. Michael Weiss. As part of his review, Dr. Weiss reviewed all the medical information contained in Mr. Alfano's file.

After review of the entirety of the medical records contained in Mr. Alfano's claim file, Dr. Weiss stated that the medical records contained in Mr. Alfano's file does not support limitations and/or restrictions precluding Mr. Alfano from functioning in a sedentary capacity. Dr. Weiss noted that a Functional Capacity Evaluation of July 26, 2005 revealed Mr. Alfano's ability to perform in a sedentary work capacity. Please note that Mr. Alfano's occupation as a Wage and Salary Manager is considered to be sedentary. Dr. Weiss stated that Mr. Alfano would be restricted from prolonged sitting, in that he would require intermittent standing. In addition, Mr. Alfano would be restricted to limited walking. However, these restrictions are within the requirements of a sedentary occupation.

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

CLICNY 0629



Page 2

### Summary

Mr. Siegel, the plan provides that CIGNA Life Insurance Company of New York would pay benefits only if Mr. Alfano met the plan's requirements, including the definition of Disability. Disability is determined by medically supported limitations and restrictions which would preclude Mr. Alfano from performing the duties of his sedentary occupation as a Wage and Salary Manager.

We do not dispute Mr. Alfano may have been somewhat limited or restricted due to his subsequent diagnoses and treatment as Mr. Alfano was initially paid Long Term Disability benefits through October 27, 2005; however, an explanation of Mr. Alfano's functionality and how his functional capacity prevented him from continuously performing the material duties of his occupation beyond October 27, 2005 was not clinically supported. The presence of a condition, diagnosis or treatment does not necessarily equate to a presence of a disabling condition or decreased level of functionality. As such, we are reaffirming our previous denial decisions of September 28, 2005 and March 29, 2006 within the meaning and terms of Mr. Alfano's group Long Term Disability plan.

At this point in time, Mr. Alfano has exhausted all administrative levels of appeal and no further appeals will be considered.

Please note that Mr. Alfano has a right to bring legal action regarding his claim under the ERISA section 502(a). Mr. Alfano and his plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact Mr. Alfano's local United States Department of Labor Office or his State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review Mr. Alfano's insurance booklet, certificate or coverage information available from his employer to determine if he is eligible for additional benefits.

Should you have any questions, please call me at 1.800.352.0611 ext. 1249 between the hours of 8:00am and 4:30pm Central Time.

Sincerely,


Medha Bharadwaj

## TRI RIVERS ASSESSMENT SERVICES, INC.

9104 Babcock Boulevard
Suite 2120
Pittsburgh, PA 15237

### Peer Review Services

| | |
|---|---|
| **Date:** | November 13, 2006 |
| **Claimant:** | Steven Alfano |
| **Date of Birth:** | 01/14/1958 |
| **File#:** | FS51810 |

### Contact with the provider:

A call was placed to Dr. Alexiades on 11/09/06 at 12:25 pm, EST; and the number for call back and message as to the nature of call were left with Wanda, Secretary, who advised that she would leave the message for Dr. Alexiades. A call was placed to Dr. Alexiades on 11/13/06 at 10:01 am, EST; and the number for call back and a message as to the nature of the call were left with Wanda, Secretary. A call was received from Wanda, Dr. Alexiades' Secretary, on 11/13/06 at 11:13 am, EST; stating Dr. Alexiades would not do a peer review unless we send him authorization from the patient. Physician discussion did not occur for this review.

A call was placed to Dr. Roach 11/10/06 at 11:46 am, 11:50 am, and 11:58 am, EST; and the line rang busy all three times. A call was placed on 11/13/06 at 9:55 am, EST; and the number for call back and a message as to the nature of the call were left with Carmen, Staff Assistant. Physician discussion did not occur for this review.

### Summary of Records:

This is a 48 year old male human resource manager. Past medical history included 01/28/02 right shoulder arthroscopic decompression, 06/13/02 left shoulder arthroscopic subacromial decompression and acromioclavicular resection, and 04/16/03 right hip arthroscopy and labral resection. The claimant's chronic low back complaints dated back to a 1997 motor vehicle accident. The 06/9/00 MRI of the lumbar spine showed moderate to severe L5-S1 spondylosis, mild impingement on inferior aspect of the L5 nerve root, and moderate L5-S1 spinal stenosis. On 07/20/00, Dr. Scelsa of neurology saw the claimant for his persistent low back complaints. Physical exam findings revealed 5/5 strength in all groups, some giveaway left plantar and dorsiflexion of the foot/toes, and a slight antalgic gait. The claimant was able to stand but not walk on his heels and toes. Records documented an electromyography that showed left S1 more than L5 radiculopathy.

On 12/18/00, Dr. Scelsa placed restrictions of no lifting greater than ten pounds. The claimant has treated with multiple physicians through the years for his low back and intermittent leg complaints. On 05/10/01, Dr. Alexiades deemed the claimant's disability was due to L5-S1 spondylolysis and left L5 nerve root impingement. The 08/18/01 MRI of the lumbar spine showed moderate to severe L5-S1 spondylolysis, posterior disc osteophyte complex at L5-S1 causing moderate spinal stenosis and mild L4-5 stenosis. Dr. Trotter performed a review of the medical record and opined that the claimant was not capable of sedentary work due to multiple level severe spinal stenosis and nerve root impingement with radiculopathy. The primary treating physician was Dr. Roach. Dr. Roach prescribed analgesics, physical therapy and over the counter medications.

CLICNY 0631



Page 2

November 13, 2006
Physician Advisor Review
Alfano, Steven

On 04/19/05, Dr. Roach authored a letter stating that the claimant was unable to perform his occupation due to his inability to sit for prolonged periods without a need to stand or lie down. On 06/14/05, Dr. Roach stated his conclusions were based on the history of the claimant and also on direct observation of his level of discomfort in a twenty to thirty minute office visit.

The 07/08/05 MRI of the lumbar spine showed LS-S1 moderate spinal stenosis related to spondylosis and degenerative disc bulging. There was moderate spinal stenosis at L4-5 and interval progression related to facet joint degenerative change. The 07/26/05 functional capacity evaluation recommendation was sedentary work. On 01/06/06, Dr. Roach completed a physician's disability report. The claimant's complaints were low back pain with radiation down his leg. Physical exam findings were right quadriceps weakness of 4/5, and decreased patella reflex on the left. The diagnosis was LS-S1 spondylolysis and spinal stenosis. The claimant was treated with physical therapy, epidural steroids, anti-inflammatory medications and analgesics. Dr. Roach placed restrictions of sitting up to twenty minutes continuously for a total of two hours in an eight hour work day, standing for fifteen minutes continuously for a total of one hour in an eight hour work day and the ability to walk one block. On 01/11/06, Dr. Alexiades placed essentially the same restrictions on the claimant for his complaints of continued pain in the leg, hip and back.

**Physician Advisor Review Questions/Determination:**

1.  **Please review the medical information sent to you and comment whether the restrictions and limitations precluding claimant from sedentary work capacity are supported or not in the documentation provided for review from 10/27/05 through present.**

Upon review of the medical information, the restrictions and limitations precluding the claimant from sedentary work capacity are not supported in the documentation provided to me from 10/27/05 to present. A functional capacity evaluation of 07/26/05 recommended sedentary work duties. The claimant would be capable of sedentary duty, but would be restricted from prolonged sitting, in that he would require intermittent standing. He would also be restricted to limited walking, not greater than one block.

2.  **List documents provided for review, identifying provider and date of the service provided. Include a beginning comment that the opinions reached are based on the documents provided and available to review and any telephonic conversation with the Attending physician.**

The documents listed for review were:

Office notes, provider unknown, 06/30/79, 09/28/98, 02/18/99, 04/23/99, 06/05/00, 07/31/00, 05/24/01, 11/14/01, 01/03/02 and 03/11/02
Lumbar spine MRI, 06/09/00
Office notes, Dr. Scelsa, 07/20/00 and 12/18/00
Office notes, Dr. McCance, 08/17/00
Office notes, Dr. Snow, 08/23/00 and 12/15/00
Office notes, Dr. Farmer, 08/31/00, 09/14/00 and 11/07/02
Office notes, Dr. Roach, 03/22/01, 02/12/02, 06/11/02, 08/27/02, 12/11/02, 05/21/03, 09/22/03, 09/10/04, 09/14/04 and 10/08/04
Office note, Dr. Alexiades, 05/10/01
Lumbar spine MRIs, 08/18/01 and 07/08/05

CLICNY 0632

Page 3

November 13, 2006
Physician Advisor Review
Alfano, Steven


Right shoulder MRI, 10/12/01
Left shoulder MRI, 11/01/01
Right shoulder arthroscopic decompression, 01/28/02
Treated with Dr. Alexaides, 04/22/02 to 05/22/03
Right hip MRI, 04/30/02
Right hip x-rays, 05/06/02, 03/24/03
Surgery report, 06/13/02
Letter To Whom It May Concern from Dr. Alexiades, 07/24/02
Office note, Dr. Trotter, 12/10/02
Internal medicine note, 01/24/03
Right hip arthroscopy and labral resection, 04/16/03
Letter to Cigna from Dr. Roach, 04/19/05
Telephone conservation, Dr. Taylor, 06/08/05
Letter to Dr. Taylor, Dr. Roach, 06/14/05
Functional capacity evaluation, 07/26/05
Report of disability, Dr. Roach, 01/06/06
Disability note, Dr. Alexaides, 01/11/06

3.  If you find the available information conflicting or if you disagree with the attending
    provider (AP), please contact the claimant's AP, Dr. Michael Alexiades at 212-734-
    1288 and Dr. Roach at 212-746-2879.  Please discuss with the attending physician
    your conclusion as well as any conflicting medical information, and include a
    summarization of this conversation in your report.

I do not agree with the data presented forth. I see no further need to contact either Dr. Alexaides
or Dr. Roach.

Demeter, Stephen C., Anderson, Gunnar B.J.; Disability Evaluation, second edition.

Sincerely,

Michael W. Weiss, M.D.
Board Certified Orthopedic Surgeon
American Board of Orthopaedic Surgery
Texas License #H1317
PA License # MD-051197-E
ADL Level 2, Exp. 12/08

Page 4

November 13, 2006
Physician Advisor Review
Alfano, Steven

**ADDENDUM**
November 22, 2006

A call was placed to Dr. Alexiades on 11/17/06 at 11:07 am, EST; the number for call back and a message as to the nature of the call were left with Wanda. A call was placed on 11/20/06 at 12:50 pm, EST; the number for call back and a message as to the nature of the call were left with Wanda. A call was placed on 11/21/06 at 11:15 am, EST; the number for call back and a message as to the nature of the call were left with Wanda. Physician discussion did not occur for this review.

I did a record review on 11/13/06 and opined that the restrictions and limitations precluding the claimant from sedentary work capacity were not supported in the documentation provided from 10/27/05 through the present. Apparently, I did not clearly describe the 04/19/05 Dr. Roach letter or the 06/14/05 Dr. Roach report documenting this person's inability to do sedentary activities. While these reports describe Dr. Roach's impression, they do not contain objective physical findings which would clearly correlate with the claimant's complaints or provide a specific reason why he could not function at a sedentary to light duty level. Therefore, my opinions as noted in my prior 11/13/06 report do not change when taking this new information into account.

Sincerely,

Michael W. Weiss, M.D.
Board Certified Orthopedic Surgeon
American Board of Orthopaedic Surgery
Texas License #H1317
PA License # MD-031197-E
ADL Level 2, Exp. 12/08

CLICNY 0634

**INTRACORP**
4100 International Parkway Suite 1010
Carollton, TX 75007
972-307-2700
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## THIS IS A GROUP HEALTH DISABILITY CLAIM
## 10 WORKING DAYS TURNAROUND FOR PA REPORT

### REFERRAL FORM FOR PHYSICIAN REVIEW

Nurse Name: Karen Haley RN, CLNC          Case Managers Name:  Medha Bharadwaj
Phone # 800-352-0611 ext 5628                              Date:  10/27/06
Fax # 860-731-3211

Client Name:  Steven Alfano                               DOD:  06/06/00
      DOB:  1/14/58                                       BSD:  12/03/00
Incident #:  513554                                     State:  NY

Diagnosis:
      1.  Chronic back pain                       Denial Date:  10/27/05
                                                 Type of Denial:  Ongoing his occ

Treating Physician(s) Name:       **Dr. Michael Alexiades**

Treating Physician(s) Phone:      **212.734.1288**

Treating Physician(s) Specialty:  **orthopaedic**


Treating Physician(s) Name:       **Dr. Keith Roach**

Treating Physician(s) Phone:      **212.746.2879**

Treating Physician(s) Specialty:  **Internal medicine**


Reviewing Physician(s):  **orthopaedic**

**Special Instructions:**

1.  Please review the attached medical information provided;
2.  Interview the attending physician and
3.  In your narrative report, please include the answers to the questions below

**Medical Treatment Case Summary:**

48 y/om Wage and Salary Manager, sedentary, off work since 06/06/00 due to chronic back pain.
Cx was paid LTD from 12/03/00 through 10/27/2005. Claim was denied based on an FCE
showing cx could do sedentary work.



**Page 2**
**Peer to Peer Review**
**SS#**

**Questions to Answer in the Review:**

1. Please review the medical information sent to you and comment whether the Restrictions and Limitations precluding cx from sedentary work capacity are supported or not in the documentation provided for review from 10/27/05 through present.

2. List the documents provided for review, identifying provider and date of the service provided. Include a beginning comment that the opinions reached are based on the documents provided and available to review and any telephonic conversation with the Attending Physician

3. If you find the available information conflicting or if you disagree with the Attending Provider (AP), please contact the claimant's AP, Dr. Michael Alexiades at 212.734.1288 and Dr. Roach at 212.746.2879. Please discuss with the Attending Physician your conclusion as well as any conflicting medical information, and include a summarization of this conversation in your report.

## COHEN & SIEGEL, LLP

14 MAMARONECK AVENUE. SUITE 401
WHITE PLAINS. NEW YORK 10601

---

(914) 421-0080
(718) 681-1907
FAX: (914) 421-0135

ANDREW R. SIEGEL+
ADAM S. COHEN"

190 E. 162ᴿᴰ STREET
BRONX, NY 10451

FORTUNATO J. CALABRO
OF COUNSEL
+Admitted In NY And NE
"Admitted In NY And CT

November 20, 2006

Medha Bharadwaj, FLMI, ACS
CIGNA Group Insurance
12225 Greenville Avenue, Suite 1000
Dallas, TX 75243-9337

Re:                  Steven Alfano
Incident Number:     513554
Plan/Policy Number:  NYK0001972
Plan/Policy Holder:  Will Medical College of Cornell University
Underwriting Company: CIGNA Life Insurance Company of NY

Dear Mr/Ms. Bharadwaj:

We are in receipt of your recent letters in this matter and thank you for your consideration.

We do have one correction to make for your records. In our letter to you dated September 15, 2006, we noted that Mr. Alfano takes medication "such as Vicodin". In fact, he takes Oxycontin, a much stronger narcotic medication. His dosage is 80 mg, and he takes 4 takes tablet per day. He experiences extremely significant drowsiness to concentrate to the extent that he cannot work.

We ask that you include this information in your assessment of his disability status.

Very truly yours,

Andrew R. Siegel, Esq.

ARS/lr
cc:   Steven Alfano

CLICNY 0638

## COHEN & SIEGEL, LLP
14 MAMARONECK AVENUE, SUITE 401
WHITE PLAINS, NEW YORK 10601

(914) 421-0080
(718) 681-3907
FAX: (914) 421-0015

ANDREW R. SIEGEL+
ADAM S. COHEN*

190 E. 162ND STREET
BRONX, NY 10451

FORTUNATO J. CALABRO
OF COUNSEL
+Admitted In NY And NE
*Admitted In NY And CT

September 15, 2006

Noemi Landis
Case Manager
CIGNA Disability Management Solutions
CIGNA Group Insurance
12225 Greenville Avenue
Suite 1000, LB 179
Dallas, TX 75243-9384

Re:     Steven Alfano
Acct:.  Weill Medical College
Policy# NYK 960010
Underwriter: Life Ins. Co. Of New York.

Dear Ms. Landis:

We are in receipt of you letter dated March 29, 2006 in this matter. We disagree with your decision, and hereby request a review. We believe, based upon the voluminous evidence in this claim, that Mr. Alfano is entitled to a reinstatement of his benefits. We request that you reevaluate this matter and once again grant Mr. Alfano his benefits. In making this appeal, we incorporate all prior appeals made in this claim.

Initially, we note that essentially all of the medical evidence by any treating or examining source associated with this case for the past five years has consistently opined that Mr. Alfano has been totally disabled and entitled to benefits. The doctors' reports have all been wholly in concert for this period of time. In addition, there is absolutely no evidence of any medical improvement made by Mr. Alfano. If anything, diagnostic testing shows that his condition is worse. Therefore, we do not believe that it is proper for you to now find that he is not disabled where before, with lesser impairments, you found that was entitled to benefits.

Further, we note that all of the treating doctors, along with your own functional capacity examiner, all have highlighted Mr. Alfano's need to lie down multiple times throughout the day. Dr. Alexiades has said in numerous reports that Mr. Alfano must lie down several times per day, for up to two hours per day. Dr. Roach also writes in several reports that Mr. Alfano must lie

CLICNY 0641

down for several hours during the day. Your own functional capacity evaluation states that "during the exam he frequently lied down to alleviate symptoms. His physiological changes were appropriate with his increased subjective complaints." This therapist also noted that Mr. Alfano "was unable to tolerate sitting greater than approximately 10-15 minutes" and that he is unable to perform any lifting whatsoever. Significantly, she notes that his performance was consistent, thus showing that it was highly credible. This gives rise to the query, if Mr. Alfano must lie down for up to two hours per day, cannot sit for longer than 10-15 minutes and cannot lift anything, how can he perform any work? We would submit that he cannot. Therefore, we argue that your decision must be reversed and Mr. Alfano granted benefits.

I am certain that you are aware that both the United States Department of Labor and the Social Security Administration dictate that in order to perform sedentary work, an individual must have the capability of being in a seated position for a total of six hours out of an eight hour workday. If Mr. Alfano must lie down after sitting for 10-15 minutes, then according to these two federal agencies he cannot work. Similarly, these same two departments state that an individual must be able to lift five pounds on a frequent basis and ten pounds on an occasional basis to perform sedentary work. Again, if Mr. Alfano cannot lift anything whatsoever, he must be considered disabled and entitled to his benefits.

Indeed, given these same limitations, a qualified vocational expert retained by the Social Security Administration testified that there are no jobs which exist in significant numbers in the national or regional economy that the claimant can perform. The Administrative Law Judge in Mr. Alfano's Social Security claim, based in part on the vocational expert's testimony, considered the claimant's need to lie down for up to two hours per day and concluded that he is totally disabled and entitled to Social Security Disability benefits. That decision was rendered on August 27, 2002 and remains in effect to this day. According to the Social Security Administration, Mr. Alfano has been disabled since June 5, 2000 and remains disabled through the present time. There is no conceivable reason that your decision should differ from the findings of the Social Security Administration.

Furthermore, your decision that Mr. Alfano is no longer entitled to benefits does not withstand medical scrutiny. You had already found Mr. Alfano disabled with lesser medical problems than he has now. In fact, the doctor's opinions that Mr. Alfano's condition has remained the same or worsened is confirmed by the July 8, 2005 MRI. Previously, the MRIs performed on June 12, 2000 and August 18, 2001 show significant findings only at the L5-S1 levels of the spine. Indeed, the only finding referable to the L4-5 area before July 8, 2005 is mild L4-5 stenosis. Now, however, the spinal stenosis at the L5-S1 area remains, but there is also moderate stenosis at L4-5 as well. Also, previously the stenosis at L5-S1 caused only mild stenosis of the left L5 nerve root. Now there is a mass effect on the thecal sac and the S1 nerve roots bilaterally. Certainly, this shows that the condition is unquestionably worse. Therefore, logic dictates that if Mr. Alfano was disabled and entitled to benefits before, since his condition has now gotten worse, not better, he must still be entitled to benefits.

Additionally, there is no way that Mr. Alfano can function at any occupation because the side effects that he experiences due to his medication are so severe that he cannot concentrate

CLICNY 0642

well enough to work. He suffers from severe drowsiness because he takes narcotic pain relievers such as Vicodin. We would submit that not only would an employer not want him to perform his type of work because of his inability to concentrate, but that it would also be completely unrealistic to expect him to be able to perform at an acceptable level for any employer.

We hereby submit yet another letter from the claimant's doctor Keith Roach, M.D., which shows that he cannot sit for even thirty minutes and requires narcotics. This physician unequivocally states that Mr. Alfano continues to be totally disabled, going so far as to say that "there is absolutely no doubt of his condition and his disability." Again, given all of the evidence from all of Mr. Alfano's doctors for more than five years, we would argue that there is simply no way that you can credibly assert he is not entitled to benefits.

We also do not believe that the conclusions reached in the functional capacity evaluation (FCE) test fairly or accurately reflect Mr. Alfano's inability to work. First, the report concludes that he is functioning "safely at a sedentary level for an eight hour period according to NY Depratment of Labor Standards." This is absolutely untrue. Even the definition of sedentary work in the form itself displays that this is untrue. As page one of the form states, and I have said in this and prior letters, sedentary work is defined as being able to exert "up to 10 lbs force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including human body." See FCE form, page 1. This therapist concluded after her evaluation that Mr. Alfano could not perform ANY lifting or carrying. In fact, the therapist states that "I stopped these tests due to frequent buckeling (sic) and increased risk of falling. He had two episodes of loss of balance requiring the assistance of the examiner in order to prevent a fall." Moreover, he could only occasionally push or pull objects (please note that the ability to frequently push or pull items is listed on the assessment form). If he cannot lift, carry, push or pull anything, much less perform any of these activities frequently, there is no way that he meets even this therapist's definition of sedentary work. In addition, if he cannot safely lift or carry anything, and requires assistance to perform these activities or he will fall, he clearly cannot work safely at a sedentary level, as this examiner improperly concludes.

But these are not all the limitations that the examiner found. She also concludes that Mr. Alfano cannot perform any balancing, stooping, kneeling, crouching or crawling. He cannot reach for any items at floor level. Although his effort in the FCE exam was good, he still was unable to tolerate sitting for more than 10-15 minutes "without a drastic change in position." He also "frequently lied down to eleviate (sic) symptoms." He requires a cane to ambulate because his legs buckle. His range of motion is "significant[ly] limited" in the lumbar spine, and his strength is quite limited as well. He could not perform grip testing without the need to frequently lie down due to increased pain while sitting. This belies the examiner's conclusion that he can occasionally perform grasping bilaterally. He could not perform the Canadian Fitness Test and required assistance to keep from falling. He could not perform the Dynamic Lifting Test. He was unable to perform the Positional Tolerance Test. In essence, he could not perform or was unable to complete most of the tests that comprised this FCE. He even had moments where the therapist had to assist him to keep him from falling. Yet, incredibly, she concludes that he can "safely" perform sedentary work.

We believe this finding is completely inappropriate and incorrect. Certainly, if Mr. Alfano cannot perform the necessary lifting, carrying, pushing, pulling, standing or walking he cannot do sedentary work. However, to conclude that he can "safely" work at a sedentary level when another individual has to support him to keep him from falling is simply ludicrous.

Interestingly, the FCE results regarding lifting, carrying and sitting are similar to the findings of the claimant's treating doctors. We would again note that these findings show that Mr. Alfano does **not** have the physical ability to perform sedentary work, as defined by the Department of Labor and Social Security Administration. In fact, the Social Security Administration used the same or very similar findings from the claimant's doctors to find that he is totally disabled and entitled to Social Security Disability benefits. For the FCE to have the same findings and conclude that he can somehow perform sedentary work is improper, and for your office to adhere to the FCE's erroneous conclusion is, we would submit, an abuse of your discretion. We therefore implore you to correct your denial and grant Mr. Alfano the benefits he is rightfully due, even under your own FCE's evaluation.

Finally, we would submit that your review of our appeal in this case is inadequate, at best. It appears that the entire review was performed by a doctor referred to as "J. Mendez, M.D." Apparently, Dr. Mendez wrote one very short, handwritten paragraph in which he affirmed the denial. In this paragraph, he indicates he reviewed the FCE and the job requirements. There is no indication that he read any of the six years of medical records amassed in this claim; no indication that he read any of the numerous reports submitted by the claimant's three treating doctors; no indication that he read any of the MRI reports. Indeed, there is no indication that he read anything other than the FCE's conclusion that Mr. Alfano could perform sedentary work. If he had read the entire FCE, we would hope that he would have seen the inconsistencies we have pointed out. If he had read the doctor's records, we would hope that he would see the severity of Mr. Alfano's condition. If he read the MRI's, we would hope that he would see the condition has worsened. If he read the doctor's reports, we would hope that he would agree that Mr. Alfano is so limited that he cannot perform sedentary work. Instead, he wrote one very short paragraph which does not indicate any of this.

It is our contention that this evaluation is wholly inadequate. We believe that this file demands a complete, impartial analysis, and we do not see evidence that such an assessment was performed. There does not appear to have been a full record review. There does not appear to have been a peer review, as was previously done in this very same case. Certainly, there was no examination performed by a qualified physician. We believe that these shortcomings in the review process alone demand a reinstatement of benefits, or at least a new evaluation of this case.

Wherefore, for all of the foregoing reasons, we request that you reinstate Steven Alfano's benefits, retroactive to the date of their termination.

Very truly yours,

Adam S. Cohen, Esq.

Enc.

cc:    Steven Alfano



Noemi Landis
Case Manager
CIGNA Disability Management Solutions

March 29, 2006

**CIGNA** Group Insurance
Life · Accident · Disability

MR STEVEN ALFANO
3800 WALDO AVENUE
13-G
BRONX, NY 10463

Routing
CIGNA Group Insurance
12225 Greenville Avenue
Suite 1000, LB 179
Dallas TX 75243-9384
Phone 800-352-0611x1249
Facsimile 860-731-3211

Re: Long Term Disability
    Claimant:        Steven Alfano
    Account Name:    Weill Medical College
    Policy #:        NYK 960010
    Underwriting Co: Life Insurance Company of New York

Dear Mr. Alfano:

As we have not received your third party authorization form allowing us to communicate directly with attorney Adam Cohen, we must communicate directly with you.  We have carefully reviewed your claim for Long Term Disability (LTD) and must affirm our previous denial of benefits.

The evidence on file indicates you are appealing for Long Term Disability benefits from performing your sedentary occupation as a Wage and Salary Manager from October 27, 2005 forward.

Weill Medical College's Long Term Disability policy provides the following definitions:

Definition of Disability
    "An Employee is Disabled if, because of Injury or Sickness:
    1.  he is unable to perform all the material duties of his; or
    2.  he is earning less than 80% of his Indexed Basic Earnings."

According to the information on file you are claiming Long Term Disability benefits from October 28, 2005 forward.  In order to qualify for these benefits the medical evidence on file must support you were continuously unable to perform your regular occupation from that time forward.

For the appeal of your claim we received a letter from attorney Adam Cohen along with the following information:
    • Physician's report signed by Dr. Alexaides on January 11, 2006
    • Physician's report signed by Dr. Roach on January 6, 2006
    • MRI of the lumbar spine dated July 8, 2005

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation.  Products and services are provided by these subsidiaries and not by CIGNA Corporation.  These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

Page 2



The medical evidence on file was evaluated by a medical director. During this evaluation the validity measures were met and the exam concluded you were able to function at a sedentary capacity. The new additional medical evidence does not provide any clinical findings that would alter the functional abilities you demonstrated during the Functional Capacity Evaluation of July 26, 2005.

In reviewing your claim, Life Insurance Company of New York considered your claim file as a whole for purposes of determining your entitlement to benefits. The Policy provides that Life Insurance Company of New York would pay benefits only if you were prevented by disability to perform the duties of your sedentary occupation. Although we understand you have spinal stenosis related to spondylosis and degenerative disc bulging, the presence of a condition, diagnosis or treatment plan does not equate disability under the policy. Based on the documentation on file regarding your functionality you do not meet the definition of Disability and we must affirm the previous denial of your claim.

You may request a review of this decision by writing to the Life Insurance Company of New York representative signing this letter at the address noted on the letterhead. The written request for review must be sent within 180 days of the receipt of this letter. In addition to any written comments, your request for review must include new documentation you wish us to consider. New documentation includes, but is not limited to office notes, test results, therapy notes, hospitalization records, etc from October 27, 2005 forward.

Under normal circumstances, you will be notified of a decision on your appeal within 45 days of the date your request for review is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days of receipt of your request, and every 30 days thereafter. A final decision will be made no later than 90 days.

Please note that you have a right to bring legal action regarding your claim. You and your plan may have other voluntary alternative dispute resolution options, such as mediation. One way to find out what may be available is to contact your local United States Department of Labor Office or your State Insurance Regulatory Agency.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein.

Please review your insurance booklet, certificate or coverage information available from your employer to determine if you are eligible for additional benefits. Upon written request, you may receive a copy of your claim file, free of charge.

Sincerely,


Noemi Landis

# LTD Appeal Team File Review

**CX:** Steven Alfano
**Inc#:** 513554
**DOB:** 1/14/58  (48)

**ACE:** NLandis
**Date:** 3/28/06
**AMD:** Taylor

**DOD:** 6/6/00
**BSD:** 12/3/00
**A/O:** N/A HO only contract

**Type of claim:** HO
**Denial date:** 10/27/05
**State:** NY

**Occupation and Level:** Wage & Salary manager, sedentary occ

**Reason for Denial: (Be specific):** Functional deficits for sed work no longer supported after FCE/TSA which identified cx's Own occ.

**Diagnoses:**
1. Chronic back pain

**Treating Physicians with Specialty & Phone Numbers:**

| Name | Specialty | Phone |
|------|-----------|-------|
| 1. Dr. Roach | IM | |
| 2. Dr. Alexaides | Ortho sx | |

**Review of File:**
48 yom claiming LTD benefits from 10/28/05 forward due to back pain. Benefits were paid from 12/3/00-10/27/05. Tx plan consisted of PT, epidural injections, and anti-inflamatories. Cx MD indicates he can do less than sedentary.

MRI 7/05 shows moderate spinal stenosis. FCE was requested by CM on dated 07/26/05. Medical submitted from Dr. Aleiades and Dr. Roach, indicates both AP's cites findings on PE, imaging tests, and L/R in one actual medical records submitted, which is an MRI Lumbar Spine dates 07/08/2005 showing moderate spinal stenosis L4-L5 and L5-S1.

3·28·06 — FCE reviewed along with job requirements. Validity measures met. Exam concluded Mr Alfano was able to perform his sedentary-level work duties! So original appeal decision remains supported.

Méndez MD.

Mark Sodders
Claim Manager
CIGNA Disability Management Solutions

**CIGNA** Group Insurance
Life · Accident · Disability

September 28, 2005

Routing 212E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 x5693
Facsimile 860.731.2907
Mark.Sodders@Cigna.com

Steven Alfano
3800 Waldo Avenue, 13-G
Bronx, NY 10463

RE:    Claimant:    Steven Alfano
       Policy #:     NYK 1972
       Policyholder: Weill Medical College of Cornell University
       CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

We have carefully reviewed your claim for Long Term Disability benefits and must advise
you that we cannot consider any benefits payable to you after September 28, 2005.

Under the terms of the Weill Medical College group insurance policy (NYK 1972), Disability
is defined as follows:

### Disability

An Employee will be considered Disabled if because of Injury or Sickness:
1.   he is unable to perform all the material duties of his regular occupation;
     or
2.   he is earning less than 80% of his Indexed Covered Earnings.

### Overview of Eligibility for Benefits

In order to determine your continued eligibility for disability benefits, we considered your
claim file as a whole as well as medical information provided by your treating physicians,
the results of your Functional Capacity Evaluation, the results of a Transferable Skills
Analysis, a file review by our Associate Medical Director with a conversation with your
treating provider and information provided by you.

Your original date of Disability is June 6, 2000. You are claiming a period of disability from
your occupation as a Compensation Manager (Wage and Salary Manager), ~~sedentary~~
~~occupation~~, secondary to symptoms related to lumbar degenerative disc disease and lumbar
radiculopathy. Monthly Benefits commenced on December 3, 2000. You must be

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of
North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries
and is a registered service mark.

Steven Alfano
September 28, 2005
Page 2

considered Disabled per the aforementioned definition of Total Disability to receive
Monthly Benefits.

According to your July 20, 2004 Activities of Daily Living and Disability Questionnaire, you
state an inability to work due to constant back and leg pain causing an inability to
concentrate or perform mental tasks. You state that this condition is worse with sitting,
standing or walking. You state that you must lie down frequently through the day for one
to two hours at a time. You state that you do not go for walks and that you do not have a
routine exercise program. You state that you drive short distances; 10 miles or up to 30
minutes. You indicate that you watch TV three hours daily five days weekly. You do not
indicate that you cook, clean, shop, do laundry, yardwork, garden, read or attend other
activities such as school, religious services, and volunteer work. You indicate that have a
Business degree.

You report that you are treated by Dr. Keith Roach and Dr. Michael Alexiadres. The current
medications you list as taking are Oxycontin, Vioxx, Zestril, and Prevacid.

We reviewed the medical information submitted by Dr. Alexiadres. These records show
treatment for pain in your left shoulder and right anterolateral hip pain in 2002. On June
13, 2002, you had a left shoulder arthroscopic decompression and acromioclavicular
resection. On April 16, 2003, you had a right hip arthroscopy, labrectomy. As of May 22,
2003, you were released to see Dr. Alexiadres on an as needed basis.

We reviewed the medical records submitted by Dr. Roach's office. The diagnosis provided in
these records is spinal stenosis, L5-S1 and cervical degenerative disc disease. These records
included: your June 9, 2000 Lumbar MRI, which showed a moderate to severe L5-S1
spondylosis with impingement at the L5 nerve root; pre-operative evaluations for your
shoulder and hip surgeries; your MRI of your right hip on May 23, 2002, that showed
superficial cartilage loss over the right joint, acetabular dysplasia, a torn hyperplastic
degenerated anterior acetabular labrum; your September 14, 2004 x-rays of your neck,
showing Degenerative Disc Disease with space narrowing & osteophytes at the C6-C7 level,
and left foraminal narrowing secondary to osteophyte formation.

According to Dr. Roach' October 10, 2004 Physical Abilities Assessment form, you were
noted to have limitations in the following areas: occasional sitting, standing, walking,
lifting, carrying, pushing and pulling up to ten pounds, climbing regular stairs and ladders.

Based on the aforementioned physical limitations and restrictions as provided by Dr. Roach,
occupations were identified on the basis of these functionally limiting factors, your
education, work history and experience.

We submitted a copy of the physical work requirements for these occupations to Dr. Roach
on January 20, 2005, for his review and comments. We have a certified receipt from Dr.
Roach's office dated January 27, 2005. On March 7, 2005, we submitted a second request for
Dr. Roach's review and comments. We attempted to follow-up via telephone on March 4,

CLICNY 0669

Steven Alfano
September 28, 2005
Page 3

2005 and March 28, 2005. Due to the lack of response from Dr. Roach, we notified you on
April 11, 2005 of our intention to schedule a Functional Capacities Evaluation. You
informed us that you will have Dr. Roach submit his response before scheduling this
Functional Capacities Evaluation.

On April 19, 2005, Dr. Roach submitted his response, and stated that you are physically
unable to perform the occupations in our January 20, 2005 request to him. Dr. Roach states
that your primary disability is being able to sit for prolonged periods; you are physical
unable to sit without frequent need for standing, laying down, or using ice on your back.

Our Associate Medical Director contacted Dr. Roach on June 8, 2005, due to the conflicting
information provided by Dr. Roach, from his aforementioned Physical Abilities Assessment
form, the resulting occupations identified and his April 19, 2005 response.

Dr. Roach informed our Associate Medical Director that conflicting information is due to a
misinterpretation of his response on the Physical Abilities Assessment form. Dr. Roach
stated that his work restrictions for you are based primarily on your reports to him, but also
on his own observations of your behavior during examinations. Dr. Roach indicated that
your limitations stem from your back; your hip is not impairing. Dr. Roach stated that if
you return to work, it should be for four hours total, with increases as tolerated; a Functional
Capacity Evaluation would provide more specific functionality guidelines.

Therefore, in order to obtain information concerning your functionality, a Functional
Capacity Evaluation was scheduled to document how your medical conditions are affecting
your functionality.

We received a letter from Dr. Roach dated June 14, 2005. Dr. Roach stated in his letter to us
that you have some residual functional capacity to do sedentary work. However, you are
limited by your need for sitting, standing and laying down as needed during the day. Dr.
Roach indicated that you are not capable of performing even sedentary work neither for
more than 30 minutes at a time, nor for two hours total during the day. Dr. Roach
reiterated that your hip/femur condition is not disabling; your primary problem is your neck
and back. Dr. Roach again stated that his work restrictions for you are based primarily on
your history and on his own observations of your behavior during twenty to thirty minute
examinations.

On July 26, 2005, you completed the aforementioned Functional Capacity Evaluation. This
report shows that, while you did no complete all the tests, you gave consistent effort and
were able to safely perform in the sedentary duty category for an 8 hour day, in accord with
the U.S. Department of Labor Standards. This report does highlight your need to drastically
change your position with sitting for a duration of greater than ten to fifteen minutes.

A Transferable Skills Analysis dated August 9, 2005, based on the aforementioned results of
the Functional Capacity Evaluation and your past training, education and experience,
inclusive of the need to allow for alternation of your position when necessary, identifies and

CLICNY 0670

Steven Alfano
September 28, 2005
Page 4

confirms that you retain the capacity to perform your own occupation as a Compensation
Manager and six additional sedentary occupations, all commensurate with your Long Term
Disability income requirement of $49,839.84 annually.

We have information from your treating physician that state you experience problems
secondary to back and neck pain. A Functional Capacity Evaluation shows you are able to
operate at a sedentary level occupation, in accord with the U.S. Department of Labor
Standards. The Transferable Skills Analysis dated August 9, 2005 identifies and confirms that
you retain the capacity to perform your own occupation based on the Functional Capacity
Evaluation restrictions.

### Summary

Based upon the pertinent vocational and medical documentation contained in the file, we
have determined that you retain the capacity to perform your own occupation as identified
in the formal Transferable Skills Analysis. Therefore, we must deny your claim for Long-
Term Disability benefits beyond September 28, 2005.

In reviewing your claim, CIGNA Life Insurance Company of New York considered your
claim file as a whole for purposes of determining your entitlement to benefits. The Policy
provides that CIGNA Life Insurance Company of New York would pay benefits only if you
were prevented by Disability as defined above, and would continue to provide information
to us validating such. However, based on the information listed above, you do not meet the
definition of disability. As such, your claim is denied as of September 28, 2005, and to
prevent financial hardship, we will pay benefits through October 27, 2005, and no benefits
are payable under Policy number NYK 1972 beyond October 27, 2005.

### Appeal Rights

If you are not satisfied or do not agree with the reason(s) for the denial of your claim, you
may request a review of this denial by writing to CIGNA Life Insurance Company of New
York representative signing this letter and addressing it to :

CIGNA Disability Management Solutions
12225 Greenville Ave
Suite 655-LB179
Dallas, TX 75243-9382

The written request for review must be sent within 180 days of receipt of this letter and state
the reasons why you feel your claim should not have been denied. Your appeal should be in
writing and can be made by your or your duly authorized representative. It must contain:

- The reasons for your appeal and/or disagreement, and
- Medical evidence or documentation to support your position.

Acenza: Task

🗒 Task | 🗒 Contacts | 📧 Notes (0/0) |

## Task: Internal Resource Response

Logs (0)

**Start Date:** 03/03/2006    **Due Date:** 03/14/2006

### Details

| Name | STEVEN ALFANO | SSN | 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 | DOB | 01/14/1959 |
|---|---|---|---|---|---|
| Account Name | WEILL MEDICAL COLLEGE OF CORNE | Account # | NYK0031972 | Incurred Date | 06/06/2000 |
| Claim Manager | Mark Bodders | Incident # | 513554 | Claim Eff Dt-Status | 09/28/2005 - Closed |

*"Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),
Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| Referral Type | Medical |
|---|---|
| Role | Nurse Case Manager    Name Kay Rhodes    ☑ New Nurse/VRC of Record |

Check all that apply for Medical or Vocational
☐ Symptoms insufficient to support diagnosis
☐ Treatment plan and/or provider specialty is not consistent with Claimant's Diagnosis
☐ Occupational requirements assessment is needed
☐ Determine Functional Capacity
☐ Projected return to work date is unclear or undetermined
☑ Return to Work Assistance
☐ Internal Transferable Skills Assessment
☐ Claim Complexity Changed
☑ Other        Specify Other    Appeal Medical Review

Comments

CLICNY 0673

Acenza: Task

Attorney submitted appeal letter. This letter states that cx remains TD from both parts of the disability definition. Attny stated cited tests indicating L5 Nerve Root Impingement and Radiculopathy, and indicates that this is correlated by physical examination. Attorney also cited the SSA ALJ decision to award Cx. Information posed to this office is prior to FCE dated 07/26/05, most notably medical from 2002. Attorney submitted medical from 2006 that shows, according to attorney, a worsening of cx's condition. However, no mention was ever made concerning the findings of the FCE in correlation to this medical. Attorney did state that the FCE was the only item we utilized in making the determination. Attorney surmised that, based on the therapists report in the FCE. Sedentary was chosen as it was the lowest available on the form. Attny stated that based on the aforementioned information, and that the sum of evidence also indicates Cx is unable to earn more than 80 indexed covered earnings, Cx's claim should be reopened.

Medical submitted is from Dr. Aleiados and Dr. Mosch, which is a form completed from both AP's that cites findings on PE, imaging tests, and I/R only one actual medical records submitted, which is an MRI Lumbar Spine dates 07/08/2005, which indicates moderate spinal stenosis L4-L5 and L5-S1.

Referring medical submitted with Appeal to NCM for review.

NDSodders  CX

| Title | Appeal Medical Review | |
| --- | --- | --- |
| Referral | Yes | |
| Accepted | | Date 03/03/2006 |
| Comments | | |

CLICNY 0674

Case 1:07-cv-09661-GEL     Document 12-5     Filed 07/25/2008     Page 46 of 140

3/3/06 Additional medical sent w/appeal letter from attorney. Referred to NCM at this time for review of new medical to assess if there has been a change in cx condition providing a severity of deficits that impac functionality since FCE which identified functionality. Kay Rhodes, RN, CCM

Additional medical-
7/8/05 L/5 NRI-T4, L5 mod stenosis, no nerve root displacement, stable.
1/6/06 Form completed by Dr Roach-provided tx dates from 7/6/00-7/1/05. Documented cx condition-chronic and has to lie down several times daily. State medications have S/E. R/L-sit 20 min cont for 2 hrs, stand 15 minutes for 1 hr, walk 1 block for 1 hr. He can never lift, carry, bend, squat, crawl, climb. He can reach occes and use upper extremity to grasp, push/pull, fine manipulation. He can use feet for repetitive mvmts. He has mild R/L for heights, being around machinery, otherwise no environmental R/L. He can travel.
1/11/06 Form completed by Dr Alexiades/orthoox-provided tx dates from 5/15/95-7/14/05. Cont pain-various sites-leg, hip, back, numbness associated w/back pain. Exam-SLR-pos. weakness walking on toes, RT lateral hip pain, bursitis. MRI positive for stenosis, degenerative disc disease. Prognosis-poor. Has to lie down .5-2 hrs, x2-3/day. Meds-Vicodin, Foldene, OTC NSAIDS. No side effects reports. R/L-sit 20 min for 2 hrs, stand 15 min for less than 1.5 hrs, walk less than 1 block less than 1 hr. lift/carry-5 lbs occas. never ben, crawl, climb. Can squat, reach-occas. He can use hands for repetitive action. for simple grasp, push/pull, fine manip. He can use feet for repetitive mvmts. He is restricted to mild in heights and being around machinery. He can travel.

Investigation Result

NCM ASSESSMENT/PLAN
Additional medical provided is insufficient to support a change in severity of deficits that significantly impacts function after the FCE. This is evidenced by the FCE which was performed on 7/25/06 revealing that the cx had functionality at the sedentary level. The VRC identified positions that included the restrictions and limitations for alternating cx position when necessary. The forms that were completed by the APs with the additional medical provided vague responses from both APs with no objective measureable findings for range of motion and neurological deficits. One form from Dr Roach contained many illegible responses. The R/L the forms gave were inconsistent with what the cx tested in capabilities on the FCE on 7/26/05. Discussed with CM and file returned. Kay Rhodes, RN, CCM

---

Last Changed User: Kay Rhodes

Last Changed Date: 03/03/2006 11:29 AM

Active Contents

| Type | Due Date | Created By | Assigned To | Title |
|---|---|---|---|---|
| LTD | 06/06/2000 | L | Mark Sanders | ALFANO,STEVEN – 089449648 – 01/14/1958 |

CLICNY 0675

# COHEN & SIEGEL, LLP

14 MAMARONECK AVENUE, SUITE 401
WHITE PLAINS, NEW YORK 10601

(914) 421-0980
(718) 681-3907
FAX: (914) 421-0034

ANDREW R. SIEGEL∗
ADAM S. COHEN+

FORTUNATO J. CALABRO
OF COUNSEL
+Admitted In NY And NE
∗Admitted In NY And CT

903-B SHERIDAN AVENUE
BRONX, NY 10451

February 22, 2006

Mark Sodders
Claim Manager
CIGNA Disability Management Solutions
Routing 212E, 12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382

Regarding:   Steven Alfano
Policy No.   NYK 1972
Policy Holder: Weill Medical College of Cornell University
Underwriter:  CIGNA Life Insurance Company of New York

Dear Mr. Sodders:

This office has been retained by Steven Alfano to appeal the September 28, 2005 letter stating that he is no longer entitled to Long Term Disability benefits pursuant to the above-captioned policy. It is our contention that this determination is in error and that Mr. Alfano's benefits should be reinstated.

Pursuant to Weill Medical College group insurance policy NYK 1972, a claimant is disabled if he is unable to perform all the material duties of his regular occupation, or he is earning less than eighty percent (80%) of his Indexed Covered earnings. We would assert that Mr. Alfano remains disabled because he is both unable to perform all the material duties of his regular occupation and he is earning less than 80% of his Indexed Covered Earnings.

A review of this file should indicate that Mr. Alfano worked as a Compensation Manager until he was found disabled as of June 6, 2000. It is uncontroverted that this is a sedentary occupation. When he ceased working, Mr. Alfano stated that he could not perform his job duties because of constant pain and numbness, a dropped foot, an inability to sit, stand or walk for any significant period of time and the need to lie down

frequently to rest his back. At that time, Mr. Alfano indicated that his back condition is aggravated by sitting, which produces increased pain and numbness.

Diagnostic testing shows that Mr. Alfano suffers from moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc dessication, a degenerative type end-plate marrow change, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation. See June 9, 2000 MRI, submitted to CIGNA on April 15, 2002. As a result of these problems, there is an impingement of the exiting L5 nerve root along with moderate spinal stenosis.

EMG/NCV studies from July 20, 2000 display that Mr. Alfano suffers from an L5-S1 radiculopathy. This is confirmed by a physical examination, which shows that he has an antalgic gait, is unable to walk on his heels and toes and has decreased sensation in his left lower extremity. This test was also submitted to CIGNA on April 15, 2002. Moreover, another MRI performed on August 18, 2001 shows that Mr. Alfano has spinal stenosis at the L5-S1 level of the spine as well as impingement of the thecal sac at the L5-S1 level of the spine. It also shows that he has moderate facet osteoarthritis and narrowing of the L4-5 neural foramen. The MRI was submitted on April 15, 2002 as well.

Your records display that Mr. Alfano applied for and is currently receiving Social Security disability benefits as a result of his spinal conditions. In that claim, the Administrative Law Judge (referred to hereinafter as "ALJ") determined that Mr. Alfano has severe impairments of L5-S1 spondylosis and spinal stenosis. As a result of these conditions, the ALJ found that the claimant has been under a disability since June 5, 2000. This determination remains in effect to this day, and Mr. Alfano is currently considered "disabled" and eligible for Social Security disability benefits.

This decision was supported by the medical records and reports of claimant's treating doctors Michael Alexiades, M.D., Keith Roach, M.D. and James Farmer, M.D. Dr. Alexiades, an orthopedic surgeon who treats Mr. Alfano, submitted three reports, dated May 10, 2001, February 7, 2002 and July 12, 2002. These reports show that due to his limitations Mr. Alfano is unable to perform sedentary work as he cannot perform the necessary sitting, standing, walking, lifting or carrying to do this work. Similarly, Dr. Roach's report dated February 12, 2002 also shows that the claimant cannot perform sedentary work. These reports were completely supported by the records from these same doctors as well as the records from Dr. Farmer, Mr. Alfano's former treating spine surgeon. In fact, Dr. Farmer notes that Mr. Alfano has low back pain which radiates into both of his legs along with numbness in his entire right foot. As a result of these problems, he cannot engage in any prolonged sitting, standing or walking; simply, the pain and severe limitations are totally disabling.

Dr. Alexiades notes in his reports that Mr. Alfano suffers from back pain, left leg pain and numbness due to his L5-S1 spondylosis, stenosis and radiculopathy. He exhibits a positive straight leg raising test along with weakness in his leg. He must lie down during the day for up to two hours because of the pain he suffers, despite treatment of

physical therapy, epidural injections and anti-inflammatory medication. According to Dr. Alexiades, Mr. Alfano can only occasionally lift or carry up to five pounds, and cannot lift anything frequently. He cannot bend, crawl or climb, and can only occasionally squat or reach for items. He can only sit for a total of twenty minutes continuously and a maximum of two hours, stand for only fifteen minutes continuously and a total of one and one-half hours, and walk for a maximum of one block continuously and a total of less than one hour in an eight hour workday.

Dr. Roach's February 12, 2002 report fully buttresses the findings of Dr. Alexiades. Dr. Roach also determines that Mr. Alfano has spondylosis with spinal stenosis, causing low back pain radiating into his right leg, numbness in the right leg, decreased reflexes, decreased strength and diminished sensation. Dr. Roach agrees that Mr. Alfano must lie down during the day, stating that he might have to do so three times per day for up to two hours each time. Given this indication alone, there is no way that Mr. Alfano can perform any type of work. However, Dr. Roach continues to list Mr. Alfano's limitations, noting that he can only sit for a total of twenty minutes continuously and a maximum of two hours, stand for only fifteen minutes continuously and a total of one hour, and walk for a maximum of one block continuously and a total of one hour in an eight hour workday.

On December 10, 2002 you had David Trotter, M.D. review the medical records in this file and provide an opinion as to the limitations presented by Mr. Alfano. That doctor determined that "[T]he medical documentation does support the claimant's apparent inability to perform his occupation....the claimant would overall appear to be disabled from his usual occupational activities certainly [on] a full time basis and plausibly on a part time basis assuming that frequent changes of position and/or even allowances for occasional lying down accommodations are not available."

Based upon these reports, you have continued to pay Mr. Alfano his long term disability benefits. However, you have continued to evaluate this claim on a periodic basis. It is our contention that those evaluations continue to support Mr. Alfano's claim that he is disabled and entitled to benefits. In fact, the evidence clearly displays that Mr. Alfano's condition has worsened, and that he still cannot work and must receive benefits.

On September 14, 2004, Mr. Alfano had an x-ray of his neck performed. This test reveals that he now has degenerative disc disease in his cervical spine, with narrowing as well as osteophytes at the C6-7 level. The osteophyte formation causes narrowing of the neural foramina at this level, left greater than right. Approximately one month later, Dr. Roach completed a physical ability assessment which further shows that Mr. Alfano is disabled. According to this evaluation, the objective evidence shows that Mr. Alfano cannot sit, stand or even walk for 2.5 hours per day. He further can not lift or carry even 10 pounds, which I will point out is the minimum amount of weight designated in your form.

Given these limitations, Mr. Alfano would be unable to perform even sedentary work as defined by the U.S. Department of Labor in the Dictionary of Occupational

Titles (the DOT). Nonetheless, you identified several occupations that you believed that Mr. Alfano might be able to perform even with his restrictions. When you forwarded these to Dr. Roach, he stated on April 19, 2005 that "Mr. Alfano is physically unable to perform the occupations as described....He is physically unable to sit without frequent need for standing, laying down, or using ice on his back. He is not able to stay seated for a meal at a restaurant, due to pain and stiffness." Moreover, the doctor specifically agreed with the determination of the Social Security Administration that Mr. Alfano is totally disabled and unable to work.

You continued to seek clarification from Dr. Roach, claiming that there was an inconsistency between his letter and the assessment. However, we would argue that any perceived inconsistency is due to the fact that your form does not provide any space for providing limitations less than those given by Dr. Roach. Moreover, his April 19, 2005 letter is perfectly clear in showing that Mr. Alfano's impairments render him totally disabled. Yet, you then asked Dr. Roach to provide still another letter to further explain Mr. Alfano's disabilities.

On June 14, 2005, Dr. Roach did provide another letter. This one states that in his opinion Mr. Alfano can perform only sedentary work, but can only do so for 30 minutes at a time, and for a maximum of two hours during an eight hour day. Dr. Roach states that Mr. Alfano has not improved over the past five years, and that he is unlikely to do so. Moreover, Mr. Alfano lies down frequently during the day, often takes hot baths because of the pain and must use prescribed narcotics, all in attempts to alleviate his pain.

In addition to the foregoing, we hereby submit an updated report from Dr. Roach which further demonstrates that Mr. Alfano is still disabled and entitled to his benefits. In this January 6, 2006 report Dr. Roach states that Mr. Alfano continues to have severe low back pain which radiates down his legs. The pain can be a 10 out of a scale from 1 to ten and it creates fatigue, which limits his ability to sit and stand. Both of his quadriceps muscles are weak, and he has decreased reflexes along with positive straight leg raising tests bilaterally. According to Dr. Roach, he must lie down several times daily, for several hours. Dr. Roach indicates that Mr. Alfano can sit for up to 20 minutes continuously and a total of 2 hours in an 8 hour workday, stand for up to 15 minutes continuously and a total of 1 hour in an 8 hour workday and walk for up to 1-block continuously and a total of 1 hour in an 8 hour workday. Dr. Roach further opines that he can lift or carry only 5 pounds, on an occasional basis, and cannot lift or carry anything more.

Clearly, Dr. Roach in his most recent report concludes that Mr. Alfano is totally disabled and unable to work, as he has found in all of his statements and reports throughout his years of treating Mr. Alfano.

We also submit another report from treating orthopedic surgeon Dr. Alexiades, dated January 11, 2006. Dr. Alexiades states that Mr. Alfano has continuous pain in his leg, hip and back, along with numbness in his back. Dr. Alexiades reports that he has a positive straight leg raising test with weakness. He notes that MRI findings show L4-5

and L5-S1 spinal stenosis with spondylosis, degenerative disc bulging and an interval progression related to facet joint degenerative changes. This is confirmed by an MRI dated July 8, 2005, which is submitted as well. As a result of these findings, Dr. Alexiades diagnoses Mr. Alfano as suffering from L5-S1 spondylosis with stenosis and radiculopathy.

Dr. Alexiades notes that Mr. Alfano has to lie down 3 times during the day for ½ to 2 hours. He finds that Mr. Alfano can sit for up to 20 minutes continuously and a total of 2 hours in an 8 hour workday, stand for up to 15 minutes continuously and a total of less than 1 ½ hours in an 8 hour workday and walk for less than 1 block continuously and a total of less than 1 hour in an 8 hour workday. Like Dr. Roach, he also opines that Mr. Alfano can only occasionally lift or carry 5 pounds and cannot lift or carry anything more. Also like Dr. Roach, Dr. Alexiades' report is wholly consistent with all of his previous reports regarding Mr. Alfano's condition.

Given all of the foregoing, voluminous medical evidence, including the report of your own expert, it is obvious that Mr. Alfano has not worked, cannot work, and will likely be unable to work in the foreseeable future. Obviously, he is unable to earn up to 80% of his Indexed Covered Earnings, as is required by your policy to find that he is not entitled to benefits. Indeed, the medical evidence quite plainly shows that not only has Mr. Alfano's condition not improved to the extent that he can work, but it has <u>worsened</u>, as is displayed by the July 8, 2005 MRI along with the January, 2006 reports of Drs. Roach and Alexiades.

There can also be no doubt that Mr. Alfano cannot perform either the material duties of his occupation, nor can he perform any of the other sedentary jobs you have outlined for him. As you are no doubt aware, the United States Department of Labor defines sedentary work as being able to sit for six hours out of an eight hour day, stand or walk for two hours out of an eight hour day, and lift or carry up to five pounds frequently and ten pounds occasionally. <u>See</u>, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles; <u>see also</u> 20 CFR 404.1567 (the Social Security Act).

Every shred of medical evidence shows that Mr. Alfano cannot perform work at this level of physical exertion. He cannot sit long enough, he cannot stand long enough, he cannot lift enough and he cannot carry enough. Moreover, he has to lie down for lengthy periods of time during the day, for up to several hours each day. He also has to take frequent hot baths and must constantly alter his positions because of his pain. Based upon this medical evidence there can be no doubt that Mr. Alfano has been and continues to be totally disabled. He must therefore be found entitled to continuing benefits.

The only evidence proffered by you in supposed support of your claim that Mr. Alfano can somehow work is a functional capacity evaluation performed by a physical therapist that you retained. While this report does conclude that Mr. Alfano is functioning "safely" at a sedentary level, we would suggest that a careful review of the

CLICNY 0682

report unquestionably shows that Mr. Alfano cannot engage in any work on a regular, sustained basis, and is therefore entitled to received his benefits.

The functional capacity evaluation shows that the claimant cannot perform any lifting or carrying, as is required to perform every type of work. In fact, he is so limited that the therapist "stopped these tests due to frequent buckeling and increased risk of falling." Indeed, the therapist notes that he had two episodes of loss of balance during the tests, and later during the report notes that she had to assist Mr. Alfano to prevent him from falling. Moreover, all of the sedentary jobs you have listed indicate that they must be performed "mostly sitting", as we have indicated is required for sedentary work. However, this report indicates that "The clinical data obtained at this evaluation does not support his ability to tolerate sitting for any duration greater than 10-15 minutes without a drastic change in position. During the exam he frequently lied down to eleviate symptoms. His physiologic changes were appropriate with his increased subjective complaints....His range of motion was severely limited both when the patient was aware and unaware of observation."

Given these statements, it appears that the only reason the therapist found that Mr. Alfano falls into the sedentary category is simply because it is the lowest category on the evaluation form. Certainly, since the definition immediately next to that category includes the ability to exert up to 10 pounds of force occasionally and a negligible amount of force to frequently lift or carry items, and since this evaluator finds that Mr. Alfano cannot engage in any lifting or carrying, it is clear that he cannot perform sedentary work. But even if one disregards this inconsistency, it cannot be contested that all of the medical evidence as well as this evaluation show that in no way, shape or form can Mr. Alfano perform the sitting, standing and walking necessary to perform sedentary work.

In sum, all of the evidence shows that Steven Alfano cannot perform any type of work and remains eligible for benefits. He also cannot earn the required 80% of his Indexed Covered Earnings, and cannot perform the material duties of his occupation or any similar or sedentary occupation. We therefore request that you reinstate his benefits immediately.

Very truly yours,

Adam S. Cohen, Esq.

ASC/ac
Enc.

## PHYSICIAN'S REPORT FOR CLAIM OF

### DISABILITY DUE TO PHYSICAL IMPAIRMENT

SS#: 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

Patient's Name:    Steven Alfano

Patient's Address:    3800 Waldo Avenue
Bronx, New York 10463

Dear Doctor ALEXIADES;

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments. 5-15-96 : → 7-14-2005 (consecutive visits)

2. Describe in detail the patient's symptoms (complaints, including pain).

Continuous pain in various sites; leg, hip and back. Numbness associated to back pain.

.3. Describe in detail the patient's signs (clinical findings).

(1) straight leg raise
weakness on walking on toes
(2) lateral hip pain consistent with
trochanteric bursitis of the hip.

4. Give the laboratory tests and results.

MRI ⊕ for L5S1 spinal stenosis related to
spondylosis and degenerative disc bulging
spinal stenosis L4-L5. Interval progression
related to facet joint degenerative change.

5. Diagnoses. L5S1 spondylosis with stenosis
and radiculopathy.

2

CLICNY 0685

6. Prognosis  POOr

7. Have any of the patient's medical conditions lasted or can any be expected to last at least twelve months?

Yes  ✓          No

8. Does the patient have to lie down during the day?

Yes ✓          No          .  If yes, for how long and for what reasons? ½ h - 2 hrs two to three times per day.

9. Describe the treatment the patient has received.
Physical therapy, Epidural injection + anti inflammatories.

CLICNY 0686

3

10. Give the medications prescribed for the patient, including the dosage.

Vicodin, Feldene 20mg  OTC NSAIDs

Do any of the medications have any side effects or limit the patient's activities?

Yes_____    No __✓__    If yes, explain. _____

11. Does or could any condition cause the patient pain?

Yes __✓__    No _____    If yes, explain __See above.__

If yes, does any medication affect the patient's pain and how does it affect the pain?

Temporary decrease in pain.

4

12. Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

(a) The patient can:

(i) Sit up to __20 minutes__ continuously and a total of __2 hrs.__ in an 8-hour workday;

(ii) Stand up to __15 minutes__ continuously and a total of __< 1½ hrs__ in an 8-hour workday;

(iii) Walk up to __< 1 block__ continuously and a total of __< 1 hr.__ in an 8-hour workday;

(b) During an entire 8-hour workday:*

(i) The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | ( ) | ( ) |

(ii) The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | ( ) | ( ) |

(iii) The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | (✓) | ( ) | ( ) | ( ) |
| Squat | ( ) | ( ) | ( ) | ( ) |
| Crawl | (✓) | ( ) | ( ) | ( ) |
| Climb | (✓) | ( ) | ( ) | ( ) |
| Reach | ( ) | (✓) | ( ) | ( ) |

5

CLICNY 0688

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%.

(v)   The patient can use hands for repetitive action such as:

| | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | (✓) Yes  ( ) No | (✓) Yes  ( ) No | (✓) Yes  ( ) No |
| Left | (✓) Yes  ( ) No | (✓) Yes  ( ) No | (✓) Yes  ( ) No |

(v)   The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

| Right | Left | Both |
|---|---|---|
| (✓) Yes  ( ) No | (✓) Yes  ( ) No | (✓) Yes  ( ) No |

13.   The patient has restrictions in activities involving:

| | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | (✓) | ( ) | ( ) |
| Being around moving machinery | ( ) | (✓) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | (✓) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | (✓) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | (✓) | | | |

14.   This question applies only if its number is circled.  The Social Security Administration has established what is called a "Listing of Impairments."  If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled.  Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints.  Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain _____

_____

_____

6

CLICNY 0689

15. Can the patient travel alone on a daily basis.

    (a)  By bus?      Yes ✓       No _____

    (b)  By subway?   Yes ✓       No _____

16. Other comments _____

_____

_____

_____

_____

_____

_____

_____

_____

_____     Date 1-11-06.
Physician (signed)

MICHAEL M. ALEXIADES, M.D.
Physician (print name)
523 East 72th Street
New York, NY 10021
(212) 734-1208
Address

Telephone Number

## PHYSICIAN'S REPORT FOR CLAIM OF

## DISABILITY DUE TO PHYSICAL IMPAIRMENT
SS#: 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

Patient's Name:      Steven Alfano

Patient's Address:   3800 Waldo Avenue
                     Bronx, New York 10463

Dear Doctor  ROACH:

    Please answer each of the following questions about the patient.  They
concern the patient's claim of entitlement to disability benefits under the
Social Security Act.  Since this form will be used by the Social Security
Administration in deciding if the patient is disabled, please make sure that
it is legible and that every question is answered completely.  If a question
is not applicable to the patient, please do indicate.

1.  Give first and last dates of treatment and the average frequency of
treatments.

2.  Describe in detail the patient's symptoms (complaints, including pain).

CLICNY 0691

3. Describe in detail the patient's signs (clinical findings).

_quadriceps wasten_ ®/s

_decreased patellar reflex_ r- Ⓛ

_normal_ _sensation_

Ⓡ Ⓛ _straight_ _leg_ _nno_

4. Give the laboratory tests and results.

_no_ _results_ _cmeld_

5. Diagnoses. _L5 /s1_ _symptoms_ _and spinal stenosis_

CLICNY 0692

6. Prognosis _____ *chronic — expect to recur* _____

_____

_____

_____

_____

7. Have any of the patient's medical conditions lasted or can any be
expected to last at least twelve months?

   Yes ___✓___          No _____

8. Does the patient have to lie down during the day?

   Yes ___✓___          No _____ - If yes, for how long and for what

   reasons? _____ *based need daily, at least hourly* _____

   _____ *may need to lay down for several hrs* _____

   _____

   _____

   _____

   _____

9. Describe the treatment the patient has received. _____

   _____ *physical therapy* _____

   _____ *epidural injections* _____

   _____ *NSAIDs* _____

   _____ *narcotics* _____

   _____

   _____

   _____

3

10. Give the medications prescribed for the patient, including the dosage.

_____ arrested _____

_____

Do any of the medications have any side effects or limit the patient's activities?

Yes _✓_        No _✗_        If yes, explain._____

_____ yes   side  effects
_____ her   being  serious

_____

_____

11. Does or could any condition cause the patient pain?

Yes _✓_        No_____        If yes, explain_____

_____ as    clip

_____

_____

_____

_____

_____

If yes, does any medication affect the patient's pain and how does it affect the pain?

_____ medicines    are   her   pain  relief

_____

_____

_____

4

12. Please answer each question by estimating the degree of the patient's
ability to do the following on a daily basis.

    (a)   The patient can:

       (i)   Sit up to ____10 _____ continuously and a total

of ____2 hrs____ in an 8-hour workday;

       (ii)   Stand up to ____15 _____ continuously and a total

of ____1 hr____ in an 8-hour workday;

       (iii)   Walk up to ____1  1 blc____ continuously and a total

of ____1 hr____ in an 8-hour workday;

    (b)   During an entire 8-hour workday:*

      (i)   The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | ( ✓) | ( ) | ( ) |
| 6-10 | ( ) | ( ) | ( ) | ( ) |
| 11-20 | ( ) | ( ) | ( ) | ( ) |
| 21-25 | ( ) | ( ) | ( ) | ( ) |
| 26-50 | ( ) | ( ) | ( ) | ( ) |
| 51-100 | ( ) | ( ) | ( ) | ( ) |

      (ii)   The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | ( ✓) | ( ) | ( ) |
| 6-10 | ( ) | ( ) | ( ) | ( ) |
| 11-20 | ( ) | ( ) | ( ) | ( ) |
| 21-25 | ( ) | ( ) | ( ) | ( ) |
| 26-50 | ( ) | ( ) | ( ) | ( ) |
| 51-100 | ( ) | ( ) | ( ) | ( ) |

      (iii)   The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | ( ) | ( ) | ( ) | ( ) |
| Squat | ( ) | | | ( ) |
| Crawl | ( ) | | | ( ) |
| Climb | ( ) | | | ( ) |
| Reach | ( ) | ( ✓) | | ( ) |

5

CLICNY 0695

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%.

(v)   The patient can use hands for repetitive action such as:

| | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |
| Left | (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |

(v)   The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

| Right | Left | Both |
|---|---|---|
| (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |

13.  The patient has restrictions in activities involving:

| | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | (✓) | ( ) | ( ) |
| Being around moving machinery | ( ) | (✓) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | (✓) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | (✓) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | ✓ | | | |

14.  This question applies only if its number is circled.  The Social Security Administration has established what is called a "Listing of Impairments."  If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled.  Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints.  Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain_____

_____

_____

6

CLICNY 0696

15:  Can the patient travel alone on a daily basis.

    (a)  By bus?      Yes____✓____    No_____

    (b)  By subway?   Yes____L____    No_____

16.  Other comments _____

_____

_____

_____

_____

_____

_____

_____

Physician (signed) _____    Date ___1/6/06___

Physician (print name) ___Keith Raol___

Address ___505 E 70th St  NY NY  100✓___

Telephone Number ___212  716  2179___

CLICNY 0697



Erich Eisenschenk, M.D.
David A. Felker, M.D.
Keith S. Tobin, M.D.
William Lowe, M.D.
Karen B. Wagner, M.D
Shelley E. Wertheim, M.D.
Peter Roumanis, M.D.
Kathy J. Tobin, M.D.
Ronald S. Wagner, M.D.
Philip Karver, M.D.
Joseph Turvia, M.D.
Fred A. Pezzulli, M.D.
Mykola Moluchy, M.D.

LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

61 East 77th Street, New York, NY 10021 • TEL: 212-772-3111 • FAX: 212-772-0468 • www.lenoxhillradiology.com

KEITH ROACH,MD
505 EAST 70TH STREET
NEW YORK, NY 10021
Patient Name: Alfano, Steven
Date of Birth: 01/14/1958
Identification#: 139521
Accession: 670023
Exam Date: 07/08/2005

Dear Dr. Roach,

EXAM: MRI OF THE LUMBAR SPINE

TECHNIQUE: Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 3.0 Tesla MRI unit.
HISTORY: Pain and stiffness, comparison exams, 6/9/2000 and 8/20/2001.
FINDINGS: Curvature and alignment are maintained. Developmentally small lower spinal canal.

L5-S1 prominent spurs, disc bulging and facet joint arthropathy superimposed contribute to moderate spinal stenosis, mass-effect upon the thecal sac and S1 nerve roots. Foramen are patent.

L4-L5 spurring and disc bulging, exuberant facet joint arthropathy contribute to moderate spinal stenosis. Bilateral foraminal narrowing, without exiting nerve root sleeve displacement.

L3-L4 mild spurring of the disc bulging and facet joint arthropathy contributes to mild spinal stenosis. Proximal foraminal narrowing on the left, without exiting nerve root sleeve displacement.

Conus medullaris ends at L1 and is unremarkable as is the subarachnoid space. No evidence of a paraspinal mass.
IMPRESSION:
1 L5-S1 moderate spinal stenosis related to spondylosis and degenerative disc bulging. Relatively stable.
2. Moderate spinal stenosis L4-L5. Interval progression related to facet joint degenerative change.

Thank you for referring this patient.

Electronically Signed By: Shelley Wertheim, MD        07/08/2005

Mark Sodders
Claim Manager
CIGNA Disability Management Solutions

**CIGNA Group Insurance**
Life · Accident · Disability

September 28, 2005

Steven Alfano
3800 Waldo Avenue, 13-G
Bronx, NY 10463

Routing 212E
12225 Greenville Avenue
Suite 1000 LB 175
Dallas, TX 75243-9582
Telephone 800.352.0611 x5693
Facsimile 860.731.2907
Mark.Sodders@Cigna.com

RE:     Claimant:     Steven Alfano
        Policy #:     NYK 1972
        Policyholder:  Weill Medical College of Cornell University
        CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

We have carefully reviewed your claim for Long Term Disability benefits and must advise
you that we cannot consider any benefits payable to you after September 28, 2005.

Under the terms of the Weill Medical College group insurance policy (NYK 1972), Disability
is defined as follows:

#### Disability

An Employee will be considered Disabled if because of Injury or Sickness:
1. he is unable to perform all the material duties of his regular occupation;
   or
2. he is earning less than 80% of his Indexed Covered Earnings.

#### Overview of Eligibility for Benefits

In order to determine your continued eligibility for disability benefits, we considered your
claim file as a whole as well as medical information provided by your treating physicians,
the results of your Functional Capacity Evaluation, the results of a Transferable Skills
Analysis, a file review by our Associate Medical Director with a conversation with your
treating provider and information provided by you.

Your original date of Disability is June 6, 2000.  You are claiming a period of disability from
your occupation as a Compensation Manager (Wage and Salary Manager), a sedentary
occupation, secondary to symptoms related to lumbar degenerative disc disease and lumbar
radiculopathy.  Monthly Benefits commenced on December 3, 2000.  You must be

CIGNA Group insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

Steven Alfano
September 28, 2005
Page 5

**THE APPEAL MUST BE MADE WITHIN 180 DAYS OF THE DATE YOU RECEIVE THIS LETTER.**

Please note that you have a right to bring legal action for benefits under ERISA section 502(a) if your appeal is denied.

You may request review of this denial by writing to the CIGNA Life Insurance Company of New York representative signing this letter. The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. Please include any documentation which you feel supports your claim. Under normal circumstances, you will be notified in writing of the final decision within 30 days of the date your request is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days thereafter. A final decision will be made no later than 90 days after your request is received.

We realize there may be factors of which we are unaware, and if you feel this determination is incorrect, we shall be pleased to review any evidence you may wish to submit which will support your claim, and if the information warrants, alter our decision.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

In reviewing your claim, we considered your claim file as a whole for the purposes of determining your entitlement to plan benefits. The weight of the medical evidence in your claim file does not document a disability severe enough to render you disabled under the meaning and terms of the above group insurance plan.

Sincerely,

Mark Sodders

CLICNY 0710

## Claim Direction Staffing Form

**Please complete the sections that are applicable for the staffing purpose**

### Comments/ Review outcome/Rationale/Plan:

| MD_____ | NCM/BHS_____ | VRC_____ |
| --- | --- | --- |

**Future Claim Direction/Actions  (Please indicate person responsible for action)**
1. Based on FCE/TSA results, claim s/b denied; A/F indicated
2. RTW s/b gradual, but a new FCE can est. RTW guidelines
3.
4.

| F/U Medical _____ | SSDI _____ |
| --- | --- |
| VOC Rehab _____ | F/U W/C _____ |
| SIU _____ | Other _____ |

### Parties in Attendance:

Please list printed staffing participant names with  signatures:
1. mark Saddis
2. Claw Kitting
3.
4.

Date: 9/27/05

2

CLICNY 0717

 

## TRANSFERABLE SKILLS ANALYSIS

Claimant's Name: Steven Alfano
Referrer: Mark Sodders, CM

Date:   08/09/05
Policyholder:   Weill Medical College
Policy #: NYX 1972

**Referrer Request**: Please complete a TSA to determine the claimant's transferable work skills and residual functional capacities, and do those occupations exist at or above wage requirements?

**Documents Reviewed/Resources Used** JD, DOs, DOT, OASYS, FCE dated 07/26/05 by Jacqueline Genovese, MSPT, ERI Salary Assessor, and the OOH.

**RC Response**: The following information obtained from the file was utilized in determining what occupations Mr. Alfano is qualified and able to perform.

**Work Experience:**

| Occupational Title | YRs | DOT | SVP | Phy |
|---|---|---|---|---|
| Wage & Salary Manager | 1991-00 | 166.167-022 | 8 | Sedentary |
| Asst. Director of HR | 1990 | 166.117-018 | 8 | Sedentary |
| Wage & Salary Manager/Analyst | 1982-90 | 166.167-022 | 8 | Sedentary |

**Education & Training**: High School; Bachelors Degree in Business Administration/Psychology; 1 year of Graduate Work in MIS

**Diagnosis/L&R's**: Spinal Stenosis
Limitations include: Sedentary work level with no significant lifting or carrying; continuous ability for seeing, hearing, taste/smelling; occasional ability for sitting, standing, walking, pushing up to 20 lbs., pulling up to 14 lbs., reaching overhead and at desk level, bilateral fine manipulation, simple and firm grasping, and using the feet for foot controls; no climbing, balancing, stooping, kneeling, crouching or crawling, reaching below the waist, working overtime shifts. All other areas were marked as not applicable to the diagnosis. The type of job would need to be one that would allow alternation of position when necessary.

**Indexed BME**: $6,465.79
**Wage Requirement**: $5,172.63 a month, or $29.84 an hour

**Transferable Skills**: Directing, controlling, or planning the activities of others; dealing with people, making judgments and decisions, speaking and signaling, coordinating, performing some handling activities, negotiating, analyzing, mentoring.

**Occupations the claimant can perform in the labor market of: Bronx, NY.**

| Title | DOT | SVP | Phy | Wages | Wage Source |
|---|---|---|---|---|---|
| Compensation Manager | 166.167-022 | 8 | Sedentary | $77,500 | ERI 7/1/05 **** |
| Manager, Data Processing | 169.167-030 | 8 | Sedentary | $77,500 | ERI 7/1/05 |
| Manager, Computer Operations | 169.187-082 | 8 | Sedentary | $77,500 | ERI 7/1/05 |
| Manager, Employee Welfare | 166.117-014 | 7 | Sedentary | $90,410 | OES 2003 |
| Manager, Employment Agency | 187.167-098 | 7 | Sedentary | $69,609 | ERI 7/1/05 |
| Conciliator | 169.207-010 | 8 | Sedentary | $65,040 | OES 2003 |
| Credit Analyst | 241.267-022 | 7 | Sedentary | $72,520 | OES 2003 |

(**** = own occupation)

**Summary:**
A Transferable Skills Analysis was completed using the above noted information.  Suitable positions were identified that met Mr. Alfano's skills, education, work history, and wage replacement requirements, including his own job with the policyholder at the time of disability. Also, the positions indicated would be the type that would allow much personal autonomy and ability to accommodate oneself for physical positions throughout the workday. The most appropriate wage source was utilized for occupations using the most up to date source available.

Ginny Schmidt, M.S., CRC
Rehab Specialist

Acenza: Task

Page 1 of 2

Task    Contents    Notes (0/0)

## Task: Internal Resource Response

**Start Date:** 08/08/2005          **Due Date:**                    08/17/2005

Details

| | | | |
|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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 | **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE | **Account #** | NYK0901972 | **Incurred Date** | 06/05/2000 |
| **Claim Manager** | Mark Sadders | **Incident #** | 513554 | **Claim Eff Dt-Status** | 01/21/2003 - Active |

*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

**Referral Type** Vocational

**Role** Vocational Rehab Counselor    **Name** Ginny Schmidt    ☒ New Nurse/VRC of Record

Check all that apply for Medical or Vocational:

☐ Symptoms insufficient to support diagnosis
☐ Treatment plan and/or provider specialty is not consistent with Claimant's Diagnosis
☐ Occupational requirements assessment is needed
☒ Determine Functional Capacity
☐ Projected return to work date is unclear or undetermined
☐ Return to Work Assistance
☒ Internal Transferable Skills Assessment
☒ Claim Complexity Changed
☐ Other          Specify Other

**Comments**

08/08/05 referring for TSA based on L/R provided by the 07/26/05 FCE. Please note that there is no R/O date. However, Disability is defined as either unable to perform all the material duties of the regular occupation, or an inability to earn more than 80% of the Indexed EME.

As such, if cx's own occ is not identified on the TSA, then the earnings requirement is $5,172.32 monthly.

MGSadders CM

CLICNY 0719

Acenza Task

Page 2 of 2

| Title | | TSA Results | | | Date | 08/06/2005 |

Referral
Accepted  Yes
Comments

---

**Investigation Result**

The TSA has been performed using the sedentary restrictions from the FCE done on 7/26/05
on the claimant, along with his work history of being a Wage and Salary Manager twice in
his history, and as an Asst. Director of Human Resources, having a Bachelors Degree in
Business Administration/Psychology, and having taken 1 year of classwork in Graduate
School for MIS, and the wage requirement of $5,172.63 a month. Using those criteria,
several jobs were indicated for his current abilities, which should allow alternation of
physical positions throughout the workday, at his will, including his own job as a Salary
and Wages Manager Compensation Manager for the Policyholder. Along with this position,
several others were indicated, including management in data processing and computer
operations, employee welfare and mediation and credit analysis. See full report in the
file. Returning file and report to the CM for review.

---

| Last Changed User | Ginny Schmidt | Last Changed Date | 08/09/2005 11:20 AM |

**Active Contents**

| Type | Due Date | Created By | Assigned To | Title |
|------|----------|-----------|-------------|-------|
| LTD | 08/05/2005 | Ginny Schmidt | Mark Soddars | ALFANO,STEVEN – 0094453848 – 011541988 |

**Status:** Completed   Assigned To: Ginny Schmidt   Created: 08/08/2005 09:15 AM

https://dms-acclaim.group.cigna.com/acenza/Task/TaskOTCTASK_INTERNAL_RESOURCE_RESPONSEDisplay.asp?id=1...   08/09/2005

CLICNY 0720

**CIGNA**

# Transferable Skills Analysis Referral Form
# Labor Market Survey Referral Form

| | |
|---|---|
| Claimant Name: Steven Alfano | Date of Referral: 8/8/2005 |
| Policyholder: Weill Meidcal College | Policy #: NYK 1972 |
| Case Manager: Mark Sodders | RUSH/TL Signature: |

| | | |
|---|---|---|
| List Primary Diagnosis: Spinal Stenosis | Indexing required according to policy? | yes |
| | Is the account ERISA or Non-ERISA? | yes |
| | Earnings threshold for this referral: | 80% |
| | (based on contract and/or procedure) | |

| | | | |
|---|---|---|---|
| Index Earnings as of this date: | 8/8/2005 | | |
| Initial Covered Earnings (BME) AS OF: | 6/6/2000 | = | 55,933.32 |
| | Incurred Date | | 8.97% |
| Current Indexed Covered Earnings: | | | 56,465.79 |

CPI for 2000 through 2003

Wage Requirement for this referral  =  $       5,172.63

1    Why are you referring this file for a TSA? **Other**          Other Reason **Continuing TD**

Any Occ Date: **n/a**

2 LMS will be conducted if necessary.          Please provide:

City: **Bronx**
State: **NY**
Zip: **10463**

3 For work history information, TAB the following documents in the file for use in performing TSA:

| Document | Tabbed in File? |
|---|---|
| 1 DQ | yes |
| 2 Job Description | yes |
| 3 Resume/Job Application *(From ER if possible)* | ~ |

4 For Limitations and Restrictions, please TAB the following items in the file:

| Document | Tabbed in File? |
|---|---|
| Current Medical (< 6 mos. old) | yes |

examples: *PAA, Psych Abilities Form, IME, FCE, AMD/NCM Documentation of L's / R's*

5 State any other pertinent information or other specific issues which need to be addressed by the TSA:

There is no A/O date. However, Disability is defined as either unable to perform all the material duties of the regular occupation, or an inability to earn more than 80% of the Indexed BME.

Select Office Location: **Dallas**

Return this form and the file to: **Ginny Schmidt, MS, CRC
Rehabilitation Specialist
Extension 7158**

CLICNY 0721

File being given to Tiffany to set up 1 day FCE. GS Appt now set for 7/26/05. GS

### Investigation Result

The FCE report has been received. The claimant was found to be able to function at the sedentary level of work, for and 8 hour workday, but it would have to be a position in which he would not have to perform any lifting and carrying of more than negligible amounts, and he will need to be able to be able to change positions while sitting approximately every 10-15 minutes. They were unable to complete the dynamic and static lifting tests, the aerobic testing on the treadmill and much of the other testing due to his complaints of pain and needing to lie down to get relief. He was found to be able to perform fine manipulation, handling, reaching, pushing/pulling, climb stairs, sitting, standing and walking all on an occasional basis, and was unable to climb ladders, stoop, kneel, crouch, crawl, or balance, and had the need to use a cane for ambulation. On a constant basis, he is able to see, hear, talk. They feel he gave a maximum effort during testing, due to his increase in respiration and heart rate during the tests. See full report in the file. Returning file and report to the CM for review.

| Last Changed User | Ginny Schmidt | Last Changed Date | 06/05/2005 03:38 PM |
|---|---|---|---|

| | Title |
|---|---|
| | ALFANO,STEVEN – 089440648 – 01/14/1958 |

### Active Contents

| | Type | Due Date | Created By | Assigned To |
|---|---|---|---|---|
| | LTD | 08/08/2000 | Ginny Schmidt | Mark Bodden |

| Status: | Completed | Assigned To: | Ginny Schmidt | Created: | 08/08/2005 01:37 PM |
|---|---|---|---|---|---|

CLICNY 0722

Acenzia: Task

Page 1 of 2

🗇 Task | 🔗 Contents | 🔲 Notes (0/0)

## 📝 Task: Internal Resource Response

**Start Date:** 07/05/2005    **Due Date:**    07/29/2005

### 🔧 Details

| | | | | |
|---|---|---|---|---|
| **Name** | STEVEN ALFANO | **SSN** | 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   **DOB** | 01/14/1958 |
| **Account Name** | WEILL MEDICAL COLLEGE | **Account #** | NYK0001972   **Incurred Date** | 06/06/2000 |
| **Claim Manager** | Mark Sodders | **Incident #** | 513554   **Claim EM Dt-Status** | 01/21/2003 - Active |

*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| | |
|---|---|
| **Referral Type** | Vocational |
| **Role** | Vocational Rehab Counselor    **Name** | Ginny Schmidt    ☒ New Nurse/VRC of Record |

Check all that apply for Medical or Vocational

☒ Symptoms insufficient to support diagnosis
☒ Treatment plan and/or provider specialty is not consistent with Claimant's Diagnosis
☒ Occupational requirements assessment is needed
☒ Determine Functional Capacity
☐ Projected return to work date is unclear or undetermined
☐ Return to Work Assistance
☐ Internal Transferable Skills Assessment
☐ Claim Complexity Changed
☒ Other          Specify Other _____

**Comments**
referring for 1-day FCE.
MSodders  CM

| | | |
|---|---|---|
| **Title** | FCE Scheduling | |
| **Referral Accepted** | Yes    **Date** | 06/10/2005 |
| **Comments** | | |

https://dms-acclaim.group.cigna.com/acenzzi/Task/TaskOTCYASK_INTERNAL_RESOURCE_RESPONSEDisplay.asp?id=1...   08/05/2005

CLICNY 0723

AUG-04-2005 THU 01:04 PM        FAX NO.                    P. 04

09/04/2005  01:27   8452941423        SPORTS PT OF NY           PAGE 02/25

## Sports Physical Therapy of New York, P.C.

# FUNCTIONAL CAPACITY EVALUATION

**CLIENT:** Steven Alfano
**EMPLOYER:** Cornell Medical College
**DATE OF INJURY/ILLNESS:** 09/05/00
**DATE OF EVALUATION:** 07/26/05
**DATE OF REPORT:** 07/28/05
**SPORTS PHYSICAL THERAPY OF NY**
**I.D. NO.:** N/A
**DATE OF BIRTH:** 01/14/1969

**REFERRED BY:** Mark Sodders
**PHYSICIAN:** Keith Roach MD
**INSURANCE CARRIER:** Cigna Insurance
**INSURANCE REP.:** Mark Sodders
**INSURANCE I.D. NO.:** N/A
**SOCIAL SECURITY NO.:** xxx-xx-9848
**DIAGNOSIS:** Lumbar Stenosis

### VITAL SIGNS

**HEIGHT:** 72 "  **WEIGHT:** 270 lbs.
**RESTING HEART RATE:** 80 bpm
**Starting Time:** 10:00am  **Ending Time** 1:30pm

**HAND DOMINANCE:** LEFT
**RESTING BLOOD PRESSURE:** 138/80 mm/Hg

### PURPOSE OF ASSESSMENT

☒ Comprehensive Functional Evaluation
☐ Return to Work
☐ See Attached

☐ Occupational/Work Capacity
☒ Address Specific Referral Questions
☒ Other/Comments: Please qualify the patients capability to perform any occupation for an eight hour period. Determine safe, permissible sitting abilities and general physical demand category. Did the individual demonstrate a maximal effort throughout testing. Provide report of any discrepancies between subjective complaints and observed behaviors.

### CONCLUSION

The results of this evaluation indicate that Steven Alfano is currently functioning safely at a sedentary level for an eight hour period according to NY Department of Labor Standards. He is able to manipulate objects at desk level, push 20 lbs and pull 14 lbs. He was unable to stoop, kneel, crouch, or crawl due to decreased range of motion as well as weakness and buckling of his lower extremities. Although, Mr. Alfano was very cooperative attempting all required tasks, he was unable to complete the lifting, both static and dynamic, as well as the step test. I stopped these tests due to frequent buckling and increased risk of falling. He had two episodes of loss of balance due to buckling requiring the assistance of the examiner in order to prevent a fall. As described by Mr. Alfano, his job required him to be in a prolonged sitting posture. The clinical data obtained at this evaluation does not support his ability to tolerate sitting for any duration greater than 10-15 minutes without a drastic change in position. During the exam he frequently laid down to alleviate symptoms. His physiologic changes were appropriate with his increased subjective complaints. His effort during the exam was maximal and consistent with a negative REG score and appropriate physiological changes. His range of motion was severely limited both when the patient was aware and unaware of observation. He was driven and accompanied to the exam by his wife.

### PHYSICAL DEMAND CATEGORY (U.S. Department of Labor, Dictionary of Occupational Titles)

☒ **Sedentary Work:** Exerting up to 10 lbs. force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull or otherwise move objects, including human body.

☐ **Light Work:** Exerting up to 20 lbs. force occasionally, and/or up to 10 lbs. force frequency, and/or a negligible amount of force constantly to move objects.

☐ **Medium Work:** Exerting 20 lbs. to 50 lbs. of force occasionally, and/or 10 lbs. to 25 lbs. of force frequently, and/or greater than negligible up to 10 lbs. of force constantly to move objects.

☐ **Heavy Work:** Exerting 50 lbs. to 100 lbs. of force occasionally, and/or 25 lbs. to 50 lbs. of force frequently, and/or 10 lbs. to 20 lbs. of force constantly to move objects.

☐ **Very Heavy Work:** Exerting in excess of 100 lbs. of force occasionally, and/or in excess of 50 lbs. of force frequently, and/or in excess of 20 lbs. of force constantly to move objects.

Thank you for referring Steven Alfano to Sports Physical Therapy of New York, P.C.   . If you have any further questions regarding this evaluation, please do not hesitate to contact us.

70 Irving Place Floor 2 • New York • NY • 10003 • 212-677-3989 •

PAGE 2/25 ' RCVD AT 8/4/2005 12:24:53 PM [Central Daylight Time] ' SVR:USFAX01/84 ' DNIS:2121 ' CSID:8452941423 ' DURATION (mm-ss):07-30

CLICNY 0726

AUG-04-2005 THU 01:05 PM                          FAX NO.                        P. 05

06/04/2005   01:27   8452941423            SPORTS PT OF NY                 PAGE  03/25

**Functional Capacity Evaluation**
Re:  Steven Alfano      BSN:  xxx-xx-9648           Insurance I.D. No.: N/A

Professionally,

Jacqueline Genovese, MSPT
Physical Therapist

cc: Mark Sodders        file

33 Irving Place Floor 9 • New York • NY • 10003 • 212-677-3989 •

CLICNY 0727

AUG-04-2005 THU 01:05 PM                    FAX NO.                          P. 06

08/04/2005  01:27   8452941423        SPORTS PT OF NY                    PAGE 04/25

## Functional Capacity Evaluation
Re: Steven Alfano    SSN: xxx-xx-9848              Insurance I.D. No.: N/A

| U.S Department of Labor (D.O.T. Category) | | Occasional (1-33%) (< 2.5 hrs) | | Frequent (34-66%) (2.5-5.5hrs) | | Constant (67-100%) (5.5+ hrs) | | Occ Required | Adequate |
|---|---|---|---|---|---|---|---|---|---|
| Lifting - Floor to Knuckle | | ☐ | lbs. | ☐ | lbs. | ☐ | lbs. | ☐ | ☒ Unable |
| - Knuckle to Shoulder | | ☐ | lbs. | ☐ | lbs. | ☐ | lbs. | ☐ | ☒ Unable |
| - Floor to Shoulder | | ☐ | lbs. | ☐ | lbs. | ☐ | lbs. | ☐ | ☒ Unable |
| Carrying: | Distance ft. | ☐ | lbs. | ☐ | lbs. | ☐ | lbs. | ☐ | ☒ Unable |
| Pushing: | (Max. Wt.: 26 lbs.) | ☒ | | | | | | ☐ | ☐ |
| Pulling: | (Max. Wt.: 14 lbs.) | ☒ | | | | | | ☐ | ☐ |
| Sitting: | | ☒ | | ☐ | | | | | ☐ |
| Standing: | | ☒ | | ☐ | | | | | ☐ |
| Walking: | | ☒ | | ☐ | | | | | ☐ |
| Climbing: | Regular Stairs | ☒ | | | | | | | |
| | Regular Ladders | | | ☐ | | | | | ☒ N.T. |
| Balancing: | | ☐ | | ☐ | | ☐ | | | ☒ Unable |
| Stooping: | | ☐ | | ☐ | | ☐ | | | ☒ Unable |
| Kneeling: | | ☐ | | ☐ | | ☐ | | | ☒ Unable |
| Crouching: | | ☐ | | ☐ | | ☐ | | | ☒ Unable |
| Crawling: | | ☐ | | ☐ | | ☐ | | | ☒ unable |
| Reaching: | Overhead | ☒ | | | | | | | ☐ |
| | Desk Level | | | | | | | | |
| | Floor Level | | | | | | | | ☒ Unable |
| Handling: Firm Grasp | Right | ☒ | | | | | | | |
| | Left | ☒ | | | | | | | |
| Handling: Simple Grasp | Right | ☒ | | | | | | | |
| | Left | ☒ | | ☐ | | | | | |
| Fingering: Fine Motor | Right | ☒ | | | | | | | |
| | Left | ☒ | | | | | | | |
| Foot Controls | Right | ☒ | | | | | | | |
| | Left | ☒ | | | | | | | |
| Seeing: | | | | | | ☒ | | | ☐ |
| Hearing: | | | | | | ☒ | | | ☐ |
| Talking: | | | | | | ☒ | | | ☐ |
| Other: | | | | | | | | | |

Comments:   Mr. Alfano's cardiovascular endurance was maintained at < or = 65% of his age predicted max heart rate.
            See dynamic lifting and positional tolerance section for more details.                     1-13-05

Clinician's Name:    Jacqueline Genovese, MSPT      Clinician's Signature:
Company:             SPORTS PHYSICAL THERAPY        Date:                    07/26/05
                     OF NEW YORK, P.C.

PAGE 4/25 · RCVD AT 8/4/2005 12:24:50 PM [Central Daylight Time] · SVR:HSM1/8/3/8 · DNIS:3121 · CSID:8452941423 · DURATION (mm-ss):07-30

CLICNY 0728

AUG-04-2005 THU 01:05 PM                FAX NO.                          P. 07

08/04/2005  01:27   8452941423          SPORTS PT OF NY                 PAGE  05/25

**Functional Capacity Evaluation**
Re: Steven Alfano      SSN: xxx-xx-8648                    Insurance I.D. No.: N/A

## SUBJECTIVE HISTORY

Steven Alfano is a 67 year old male with the current diagnosis of Lumbar Stenosis, onset 06/05/05. He had on and
off pain in his lumbar spine and then went to reach for a bottle falling from the refrigerator and experienced intense
and severe pain that persisted. .
He is presently not working.    Current medication includes:   Oxycontin 80 mg 4x/ day, Nexium 40 mg 1x/day,
Lisinopril 20 mg 1x/day, and Aspirin 81mg 1x/ day. He did take his medication as he normally would this morning.
He was planning on taking his second dose this afternoon.

Previous treatment for this injury/illness (as reported by patient) includes:
         He followed up with the MD who sent him for an MRI and physical therapy. He had two bouts of 4 weeks of
therapy without much success. He also saw a neurosurgeon and pain management doctor. He opted to avoid
surgery due to the reported limited success rate. Physical therapy two separate clinics for four weeks. He had a
combination of treatments including exercises, modalities and manual therapy with limited success. He also had
epidural injections with limited success.

Steven Alfano reported severe pain at an intensity of 7 (0 = no pain; 1,2,3 = low; 4,5,6 = moderate; 7,8,9 = severe
10 = emergency pain). He reported that the pain ranges from 7 at best to 10 at its worst. He states that prolonged
sitting aggravate lumbar symptoms, and that lying down and ice provides relief. Perceived abilities include: sitting
10-15 minutes, standing 10-15 minutes, walking 10-20 minutes, driving 10-20 minutes, and lifting 0 lbs.

The patient requires minimal assistance with activities of daily living (ADL's).
His wife aids in his ADL's including dressing, his children also help him with grocery shopping by carrying groceries
He describes a typical day as: waking and dressing with wifes assistance, walking his children to the bus, coming
home to rest, getting chicken from the bus and maybe go to the store, then returning home to rest. He eats his
dinner in his recliner as it is reported easier for him to tolerate a reclined position than an upright one.
Sleep is disturbed with frequent awakenings. He reported difficulty with finding comfortable positions.
The patient reports that he does not perform  an exercise program.

Additional subjective information includes: (N/A)

## VOCATIONAL/JOB HISTORY: Job description reported by client.

Mr. Alfano described his job as primarily a desk position working on a computer. He was interviewing candidates for
positions and negotiating salaries. He did state that sometimes he went from site to site for the interviews but
mostly was at his desk.

## DOT #: NA

PAGE 5/25 * RCVD AT 8/4/2005 12:24:33 PM [Central Daylight Time] * SVR:NSRFAX01/3 * DNIS:3131 * CSID:8452941423 *DURATION (mm-ss):07-33

CLICNY 0729

**Functional Capacity Evaluation**
Re: Steven Alfano        SSN: xxx-xx-3648              Insurance I.D. No.: N/A

## MUSCULOSKELETAL SCREENING

| | |
|---|---|
| Gait | Mr. Alfano ambulates with a straight cane for support and to prevent buckleing of his lower extremities. He did buckle twice during the evaluation when he did not have the support of the cane. |
| Posture | Mr. Alfano presents with a forward flexed trunk posture. He compensates for lack of mobility by turning his whole body. he reports that he does not bend at all at home without assistance. |
| Soft Tissue: | Increased tightness noted in soft tissue of his entire lumbar spine and lower extremities. He reported "a good pain" during the straight leg raise portion of the screen. |
| Flexibility: | Mr. Alfano demonstrates limited flexibility in his spine and lower extremities that was consistent when he was aware and unaware of the testing. He uses compensatory movement of his entire body to change positions. |
| Range of Motion: | Significant Limitation in lumbar range of motion as noted in the attached range of motion screen. The limitations were consistent when the client was aware and/or unaware of testing. He was able to increase his lumbar range with upper extremity support. |
| Strength: | Mr. Alfano's lower extremity strength was limited and grossly assessed at 3+/5. He did have frequent episodes of buckleing in his lower extremities which twice required the assistance of the examiner to prevent a fall. Upper extremity was screened and was within normal limits |
| Neurological: | Symmetrical bilaterally, mildly decreased in lower extremities. |
| Additional Testing: | Mr Alfano was unable to complete the Jamar grip test without frequent rests to lie down supine due to report of increased pain with sitting. |

## ENDURANCE / AEROBIC CAPACITY

Modified Canadian Fitness Test      ☐ Completed Test     ☒ Incomplete Test
   ml/kg/min     Classification: Unable to Determine      <= 2 METS
   HR Increase  YES     Respiration Increase: YES    Blood Pressure:

   Comments: Mr. Alfano was unable to maintain cadence on the step test. He attempted to perform the step three or four times with upper extremity support and while climbing his left lower extremity buckled and he lost his balance and required assistance from the evaluator to prevent his falling. The test was stopped due to the safety risk. His heart rate with this incident elevated from 80bpm at resting to 114bpm when the test was stopped. His functional cardiovascular endurance was unable to be assessed due to the exam being stopped.

## DYNAMIC LIFT TESTING:
Comments: Mr. Alfano attempted to complete the lifting component of this exam and during the knuckle to shoulder he was able to pick up the box, but when he attempted to bring it over his head his left lower extremity buckled and he dropped the box. He reported his pain was too severe to continue and he had to lie down. His heart rate elevated 10% with each attempt supporting a maximal effort.

## POSITIONAL TOLERANCE TESTING:

33 Irving Place Floor 9 • New York • NY • 10003 • 212-677-3989 •       v2-070503            5

CLICNY 0736

**Functional Capacity Evaluation**
Re:  Steven Alfano        SSN:  xxx-xx-9648            Insurance I.D. No.: N/A

Comments:  Mr. Alfano was unable to tolerate sitting greater than approximately 10-15 minutes.  He frequently changed positions lying down and sitting in a reclined position on the plinth.  His decreased range of motion and flexibility limits his ability to kneel, stoop, and crawl.

<u>CONSISTENCY OF PERFORMANCE SUMMARY:</u> 13 of 15 Consistent Tests

<u>PERFORMANCE :</u>  [X] Consistent Performance  [ ] Inconsistent Performance  [ ] Self Limiting Behavior

Discomfort/Pain: Post  Mr. Alfano post test pain level was at 9/10 with increased soreness in overall lumbar area.
Comments: Mr. Alfano's effort was consistent throughout the exam attempting each task required.  His physiologic responses had a direct correlation with his subjective complaints.

<u>ADDITIONAL TESTING / COMMENTS:</u>  N/A

33 Irving Place Floor 9 • New York • NY • 10003 • 212-677-3986 •      v2-070805                    8

FACE 7/25 • RCVD AT 8/4/2005 12:24:53 PM [Central Daylight Time] • SVR:RS01 INS1/34 • DNS:3131 • CSID:8452941423 • DURATION (mm-ss):07-30

CLICNY 0731

AUG-04-2005 THU 01:06 PM          FAX NO.                    P. 10

09/04/2005  01:27   8452941423    SPORTS PT OF NY            PAGE  09/25

**Functional Capacity Evaluation**
Re:  Steven Alfano     SSN:  xxx-xx-9848          Insurance I.D. No.: N/A

<u>ADDITIONAL INFORMATION:</u>
N/A

Professionally,

Jacqueline Genovese, MSPT
Physical Therapist

PAGE 9/25 ' RCVD AT 8/4/2005 12:24:33 PM [Central Daylight Time] ' SVR:RSFAX/5 ' DNIS:2121 ' CSID:8452941423 ' DURATION (mm-ss):07-30

CLICNY 0732

AUG-04-2005 THU 01:08 PM          FAX NO.                    P. 11

09/04/2005  01:27   8452941423      SPORTS PT OF NY         PAGE  09/25

**Functional Capacity Evaluation**
Re:  Steven Alfano      SSN:  xxx-xx-9548          Insurance I.D. No.: N/A

Sports Physical Therapy of New York P.C.
33 Irving Place Floor 9
New York, NY 10003
Phone: 212-677-3989
Fax:

PAGE 8/25 * RCVD AT 8/7/2005 12:24:53 PM [Central Daylight Time] * SVR:HTDM03/138 * DNIS:2121 * CSID:8452941423 * DURATION (mm-ss):07-38

CLICNY 0733

AUG-04-2005 THU 01:06 PM                           FAX NO.                    P. 12

08/04/2005  01:27    8452941423                SPORTS PT OF NY         PAGE 10/25

JUN-29-05 WED 04:09 PM                      FAX NO.                      P. 08

## PHYSICAL ABILITY ASSESSMENT

are evaluating your patient's disability claim in order to determine functional impairment
ease check the boxes corresponding to the patient's level of physical functioning. Please
bstantiate your findings with medical documentation. (Failure to provide the requested
ports/data may result in delay in claim determination).

tient Name  Steven Alfano                      Date of Birth  1/14/58

ignosis(es)//ICD-9 Code _____

aroughout an 8-hour workday, the patient can tolerate, with positional changes and meal
reaks, the following activities for the specified durations:

| | Not applicable to diagnosis(es) | Continuously (6½-8hrs) (6.5 + hrs) | Frequently (2½-6½hrs) (2.5 - 6.5 hrs) | Occasionally (½-2½hrs) (.5-2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Sitting: | | | | X | |
| Standing: | | | | X | |
| Walking: | | | | X | |
| Reaching: Overhead | | | | X | |
| Desk Level | | | | X | |
| Below Waist | | | | | Unable X |
| Fine Manipulation: Right: | | | | X | |
| Left: | | | | X | |
| Simple Grasp: Right: | | | | X | |
| Left: | | | | X | |
| Firm Grasp: Right: | | | | X | |
| Left: | | | | X | |
| Lifting: 10 lbs. | | | | | Unable X |
| 11-20 lbs. | | | | | Unable X |
| 21-50 lbs. | | | | | Unable X |
| 51-100 lbs. | | | | | Unable X |
| 100+ lbs. | | | | | Unable X |
| Carrying: 10 lbs. | | | | | Unable X |
| 11-20 lbs. | | | | | Unable X |
| 21-50 lbs. | | | | | Unable X |
| 51-100 lbs | | | | | Unable X |
| 100+ lbs. | | | | | Unable X |

PAGE 10/25 * RCVD AT 8/4/2005 12:26:53 PM [Central Daylight Time] * SVR:HS01/8S13/4 * DNIS:3124 * CSID:8452941423 * DURATION (mm-ss):07:30

CLICNY 0734

AUG-04-2005 THU 01:06 PM          FAX NO.                    P. 13

06/04/2005  01:27   8452941423        SPORTS PT OF NY              PAGE 11/25

JUN-28-05 WED 04:09 PM          FAX NO.                  P. 09

| | Not applicable to diagnosis(es) | Continuously (67-100%) (9.5 + hrs) | Frequently (34-66%) (5.5 + 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Pushing:        (Max. lbs) | | | | Y | |
| Pulling:        (Max. lbs) | | | | X | |
| Climbing:  Regular stairs | | | | | Unable X |
| Climbing Ladders | | | | | NOT |
| Balancing | | | | | Unable X |
| Stooping: | | | | | Unable X |
| Kneeling: | | | | | Unable X |
| Crouching: | | | | | Unable X |
| Crawling: | | | | | Unable X |
| Seeing: | | X | | | |
| Hearing: | | X | | | |
| Smell/Taste: | | | X | | |
| Environmental Conditions: | | | | | |
| Exposure to extremes in heat | X | | | | |
| Exposure to extremes in cold | X | | | | |
| Exposure to wet / humid conditions | X | | | | |
| Exposure to vibration | X | | | | |
| Exposure to odors / fumes / particles | X | | | | |
| Can work around machinery | X | | | | |
| Ability to work extended shifts/ overtime: | | | | | Unable X |
| Use lower extremities for foot controls: | | | | X | |

Please use this space to elaborate on ANY of the above categories:
Please see Report for more details

Name: Steven Thibaud   Jacqueline Genovese   Signature: _____

Medical Specialty: Physical Therapy   Date: _____

Address: _____   Phone: _____

Federal ID tax number: _____

Please include any objective test or narrative if available.

PAGE 11/25 * RCVD AT 8/4/2005 12:34:59 PM [Central Daylight Time] * SVR:HS01/MS1 * DNIS:3121 * CSID:8452941423 * DURATION (mm-ss):07-30

CLICNY 0735

AUG-04-2005 THU 01:07 PM                    FAX NO.                        P. 14

08/04/2005  01:27    8452941423            SPORTS PT OF NY              PAGE  12/29

# FUNCTIONAL ABILITIES EVALUATION

## Client Information

Client Name: Mr. Steven Altman
Address:

Dominant Hand: Left Hand
SSN: 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

Date of Birth: January 14, 1959
Gender: Male
Height: 76 inches
Weight: 270 lbs
Marital Status: Married

### Employment Information

Occupation: Wage and Salary Manager
Employer: Cornell Medical College
Address:

Department: Personnel

Work Status: Not currently working

Start & Finish Date: Jul 26, 2005

### Canadian Aerobic Fitness Test (mCAFT) Test Summary          © 1996 Philip Osborne, M.D.

| HR at start of test | Peak HR | HR at end of recovery | Pain Rating | Blood pressure Start | Blood pressure Finish | VO2 Max ml/kg/min | MET level | Work equivalency |
|---|---|---|---|---|---|---|---|---|
| 108 BPM | 114 BPM | 114 BPM | | | 138/80 | N/A | -0.1 | 0 | Light |

He was unable to continue the test due to biomechanical factors. He was unable to complete his right and left leg buckeled twice and client lost his balance and was assisted by evaluator and wife to a plinth.

### Isometric Strength Testing Summary                     © 1996 Philip Osborne, M.D.

| Posture | Results | H-Changes | Results | Appropriate | Start HR | Max HR | Final HR | Expected |
|---|---|---|---|---|---|---|---|---|
| Squat Lift | | H Squat Lift | | Decrease? N/A | | | | |
| Back Lift | | H Back Lift | | Increase? N/A | | | | |
| Pull Out | 14.8 lbs. | L=7.7 R=7.1 | | | | | | N/A |
| Push In | 21.2 lbs. | L=12.8 R=8.4 | | | | | | N/A |
| High Near Lift | | H High Near Lift | | Decrease? N/A | | | | |

Graphs below shows the change in heart rate for each test.

■ Incline & Alter Test (BPM)
■ Dining Test (BPM)

PUSH IN NOTE: Test 2 right foot forward, test 3 left foot forward

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
11 IRVING PLACE, NORTH FLOOR NEW YORK NY 10003 (212) 88-9,6999

The Halmos recharge & rehab exercise system is a personal (a) personal (minutes) process of Sports & Recita Inc.

PAGE 12/29 * RCVD AT 8/4/2005 12:24:53 PM [Central Daylight Time] * SVR:HSG1HS13/4 * DNIS:3111 * CSID:2453941423 * DURATION (mm-ss):07:30

CLICNY 0736

AUG-04-2005 THU 01:07 PM          FAX NO.                    P. 15

89/84/2089  01:27    8452941423        SPORTS PT OF NY        PAGE  13/25



| Jamar Grip Testing Summary | | | | © 1996 VV36p Debora, M.D. |
|---|---|---|---|---|

| REG RESULTS | MVE Performance | REG Performance | REG Test Score | REG% Change |
|---|---|---|---|---|
| Dominant (L) | 55.1 lbs | 50.2 lbs. | -4.9 lbs. | -8.9% |
| Non-Dominant (R) | 74.1 lbs | 53.8 lbs. | -20.3 lbs. | -27.4% |
| AMA Norms | • Right Strength = 33.7 kg. AMA Norm = 47.3 kg, Percent of Norm = 71.2%<br>• Left Strength = 25.0 kg. AMA Norm = 49 kg, Percent of Norm = 51.1% | | | |
| Validity | • Coefficients of variation greater than or equal to 15% on the left (dominant) side are 2 and 4 on the right (non-dominant) side (MVE).<br>• Inappropriate strength curves were exhibited (MVE).<br>• The variation in the greatest strength position #2 was 8.2% in the left (dominant) side and 13.6% in the right (non-dominant) side.<br>• Negative REG score on both of the sides (REG). | | | |

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
13 RIVING PLACE, NINTH FLOOR NEW YORK NY 10003  (212) 467-0540

PAGE 13/25 * RCVD AT 8/4/2005 12:24:53 PM [Central Daylight Time] * SVR:FMSFMSN30 * DNIS:5121 * CSID:8452941423 * DURATION (mm-ss):07-58

CLICNY 0737

## EPIC Lifting Summary

© 1996 Phillip Osburn, M.D.

**Lumbar 1. Knuckle to Shoulder (Occasional)**

| Final Weight | Perceived Load | Termination Reason | Work Equivalency | HR Start of Test | HR Peak | Final HR | Expected |
|---|---|---|---|---|---|---|---|
| 20 Lbs. | Heavy | Psychophysical | Light | 115 | 114 | 102 | NO |

**Lumbar 2. Floor to Knuckle (Occasional)**

| Final Weight | Perceived Load | Termination Reason | Work Equivalency | HR Start of Test | HR Peak | Final HR | Expected |
|---|---|---|---|---|---|---|---|
| 0 Lbs. | | Psychophysical | Sedentary | 106 | 109 | 103 | NO |

**Lumbar 3. Floor to Shoulder (Occasional)**

| Final Weight | Perceived Load | Termination Reason | Work Equivalency | HR Start of Test | HR Peak | Final HR | Expected |
|---|---|---|---|---|---|---|---|
| 0 Lbs. | None | Biomechanical | Sedentary | 107 | 107 | 106 | NO |

**Lumbar 4. Knuckle to Shoulder (Frequent)**

| Final Weight | Perceived Load | Termination Reason | Work Equivalency | HR Start of Test | HR Peak | Final HR | Expected |
|---|---|---|---|---|---|---|---|
| 0 Lbs. | None | Biomechanical | Sedentary | 105 | 0 | None | NO |

**Lumbar 5. Floor to Knuckle (Frequent)**

| Final Weight | Perceived Load | Termination Reason | Work Equivalency | HR Start of Test | HR Peak | Final HR | Expected |
|---|---|---|---|---|---|---|---|
| 0 Lbs. | None | Biomechanical | Sedentary | 104 | 0 | None | NO |

**Lumbar 6. Floor to Shoulder (Frequent)**

| Final Weight | Perceived Load | Termination Reason | Work Equivalency | HR Start of Test | HR Peak | Final HR | Expected |
|---|---|---|---|---|---|---|---|
| 0 Lbs. | None | Biomechanical | Sedentary | 99 | 0 | None | NO |

- The peak heart rates for each subtest are NOT in the expected ascending order.
- 6 of the EPIC subtests did NOT display the expected 10% increase in heart rate.
- Based on the documented physiological and biomechanical changes it is our opinion that the evaluee did provide a maximal acceptable effort during the ELC evaluation.



P. 3

CLICNY 0738



AUG-04-2005 THU 01:08 PM                    FAX NO.                              P. 17

08/04/2005  01:27   8452941420              SPORTS PT OF NY                    PAGE 15/25

**Range of Motion** ► Lumbar                                      Jul 26, 2005 11:48:37 AM



| | True Lumbar Flexion | True Lumbar Extension | Left Lateral Flexion | Right Lateral Flexion | Left Straight Leg Raise | Right Straight Leg Raise |
|---|---|---|---|---|---|---|
| Normals | 60 | 25 | 25 | 25 | 80 | 80 |
| Trial 1: | 0 | 1 | 2 | 1 | 36 | 12 |
| Trial 2: | 1 | 4 | 2 | 4 | 26 | 13 |
| Trial 3: | 0 | 3 | 2 | 7 | 13 | 11 |
| | | | | | | |
| Average | 0.3 | 2.7 | 2.0 | 4.0 | 25.7 | 12.0 |
| Maximum | 1.0 | 4.0 | 2.0 | 7.0 | 36.0 | 13.0 |
| AMA Valid | YES | YES | YES | YES | NO | YES |
| % of Normal | 1% | 11% | 8% | 16% | 33% | 15% |

Reference Information
American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
33 IRVING PLACE NINTH FLOOR NEW YORK NY 10003  (212) 667-5920

PAGE 15/25 ' RCVD AT 8/4/2005 12:24:53 PM (Central Daylight Time) ' SVR:HSO1/NS1GR ' DNIS:3121 ' CSID:8452941473 ' DURATION (mm-ss):07-38



AUG-04-2005 THU 01:08 PM                    FAX NO.                    P. 16

08/04/2005  01:27   8452941423            SPORTS PT OF NY            PAGE 16/25

**Hand Grip Strength**

The JAMAR hand dynamometer was used in order to quantify grip strength and determine whether Mr. Steven Alfano exerted consistent effort during grip strength testing. Mr. Steven Alfano was tested using the maximum voluntary effort and rapid exchange hand grip protocols. Mr. Steven Alfano is left hand dominant. Normative data is based on the assumption that right and left hand dominant subjects, analyzed separately show little functional difference between their mean scores [1, 2].

**Maximum Voluntary Effort (MVE)**                        Jul 26, 2005 11:09:28 AM





| | Left | COV | Right | COV |
|---|---|---|---|---|
| Pos 03 | 47.5 Lbs. | 13.7% | 54.1 Lbs. | 17.7% |
| Pos 02 | 55.1 Lbs. | 3.5% | 74.1 Lbs. | 12.5% |
| Pos 03 | 61.5 Lbs. | 7.5% | 55.9 Lbs. | 30.7% |
| Pos 04 | 51.9 Lbs. | 19.3% | 46.1 Lbs. | 23.4% |
| Pos 05 | 43.9 Lbs. | 18.0% | 17.6 Lbs. | 28.7% |
| St. Dev. 4.8 Lbs. | | | 12.1 Lbs. | |

Using the Maximum Voluntary Effort (MVE) protocol over a range of five positions on the hand dynamometer, it is expected that the strength graphs obtained results in a bell-shaped curve [1, 3, 12, 13], even in a disabled population or if the client's hand is injured [1, 3] with at least 6 of the 10 coefficients of variation within the acceptable 15% or less limit [13].

The graph obtained for Mr. Steven Alfano did not demonstrate a bell shaped curve which may be an indicator of submaximal effort and the coefficients of variation of the underlying data may be an indicator of varied effort with only 5 out of the 10 coefficients of variation within the 15% acceptable limits.

**Rapid Exchange Grip (REG)**                        Jul 26, 2005 11:46:23 AM



| | Left | Right |
|---|---|---|
| Trial #1 | 49.3 Lbs. | 53.9 Lbs. |
| Trial #2 | 57.5 Lbs. | 60.2 Lbs. |
| Trial #3 | 47.9 Lbs. | 65.9 Lbs. |
| Trial #4 | 51.9 Lbs. | 53.7 Lbs. |
| Trial #5 | 66.5 Lbs. | 84.6 Lbs. |
| Trial #6 | 59.1 Lbs. | 54.3 Lbs. |
| Average | 55.3 Lbs. | 53.8 Lbs. |
| Maximum | 67.6 Lbs. | 65.9 Lbs. |
| Diff. Vs. R. | | 6.6% |

The peak average force value recorded during the maximum voluntary effort protocol was 74.1 Lbs performed at position 2. The Rapid Exchange Grip (REG) protocol was therefore administered at this position. A negative rapid exchange grip (REG) occurs when the average of the values recorded during the rapid exchange grip protocol are less than the average of the values recorded during the maximum voluntary effort protocol in the same position and for the same hand. Conversely, a positive REG occurs when the average of the values recorded during the rapid exchange grip protocol exceed the average of the values recorded during the maximum voluntary effort protocol in the same position and for the same hand. A negative REG allows the evaluator to have more confidence that the evaluee is performing maximally. A positive REG may be an indicator of submaximal effort [9]. Mr. Steven Alfano produced an average value of 50.2 Lbs for the left hand and 53.8 Lbs for the right hand during the rapid exchange protocol. He produced an average value of 55.3 Lbs for the left hand and 74.1 Lbs for the right hand during the maximum voluntary effort protocol. Mr. Steven Alfano therefore demonstrated a negative REG which may be an indicator of maximal effort.

[1] Stokes H. 1983. The uniquely uninjured hand - variations of grip. J Occup Med 13(5):610-494.
[2] Niebuhr B, Marion R. 1990. Voluntary control of submaximal grip strength. Am J Phys Med Rehabil 69(2): 96-101.
[3] Matheson L, Carlton R, Niemeyer L. 1988. Grip strength in a disabled sample: reliability and normative standards. Ind Rehabil Q 1(3):9,12-13.
[12] Mandak D, Breidenbach W, LaBing G, Hodges A. 1989. Detection of submaximal effort by use of the rapid exchange grip. J Hand Surgery 14(A): 742-745.
[13] Klouda B, Knst J. 1997. Validism is hazardness: testing the validity of effort measurement. J Occup Med 5(7) 548.

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
37 IRVING PLACE, NORTH FLOOR, NEW YORK NY XXXXX  (212) 607-5595



Mr. Steven Alfano

PAGE 16/25 * RCVD AT 8/4/2005 12:24:43 PM [Central Daylight Time] * SVR:RS01NS134 * DNIS:2121 * CSID:8452941423 * DURATION (mm-ss):07-00

CLICNY 0740

AUG-04-2005 THU 01:08 PM                    FAX NO.                      P. 19

08/04/2005  01:27    8452941423            SPORTS PT OF NY             PAGE  17/25

▶ **Pull Out Test**

This test is designed to measure the pull force of the patient as a cart-height equivalent. The test measures the average force of the patient over a five-second time period.

**Test Date:** Jul. 26, 2005 12:07:05 PM

Combined Average Force: 10.3 Lbs



| Trial 1: 5.0 Lbs | Average:  5.0 Lbs | Trial 1: 5.3 Lbs | Average:  5.3 Lbs |

% Diff: 5.7%

Mr. Steven Alfano reached a combined average force of 10.3 Lbs. during the pull out test. The combined average is calculated by adding the average force of 5.0 Lbs. for the left side and 5.3 Lbs. for the right side. This yields 5.7% difference between the sides.

**Test Date:** Jul. 26, 2005 12:07:22 PM

Combined Average Force: 9.6 Lbs



| Trial 1: 4.6 Lbs | Average:  4.6 Lbs | Trial 1: 5.0 Lbs | Average:  5.0 Lbs |

% Diff: 8.0%

Mr. Steven Alfano reached a combined average force of 9.6 Lbs. during the pull out test. The combined average is calculated by adding the average force of 4.6 Lbs. for the left side and 5.0 Lbs. for the right side. This yields 8.0% difference between the sides.

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
33 IRVING PLACE, NINTH FLOOR NEW YORK NY 10003  (212) 667-1909
P. 6

Mr. Steven Alfano

PAGE 17/25 * RCVD AT 8/4/2005 1:26:20 PM [Central Daylight Time] * SVR:HSMSRV01/34 * DNIS:3121 * CSID:8452941423 * DURATION (mm-ss):07-39

CLICNY 0741

AUG-04-2005 THU 01:09 PM            FAX NO.                    P. 20

88/84/2005  01:27   8452941423        SPORTS PT OF NY          PAGE  18/25

Test Date: Jul. 26, 2005 12:07:35 PM

Combined Average Force: 14.8 Lbs.



Trial 1: 7.7 Lbs    Average:   7.7 Lbs        Trial 1: 7.1 Lbs    Average:   7.1 Lbs

% Diff: 8.5%

Mr. Steven Affaro reached a combined average force of 14.8 Lbs during the pull out test. The combined average is calculated by adding the average force of 7.7 Lbs. for the left side and 7.1 Lbs. for the right side. This yields 8.5% difference between the sides.

### Push In Test

This test is designed to measure the push force of the patient at a cart-height equivalent. The test measures the average force of the patient over a five-second time period.

Test Date: Jul. 26, 2005 12:05:16 PM

Combined Average Force: 26.7 Lbs.



Trial 1: 13.8 Lbs    Average:   13.8 Lbs        Trial 1: 12.9 Lbs    Average:   12.9 Lbs

% Diff: 7.0%

Mr. Steven Affaro reached a combined average force of 26.7 Lbs. during the push in test. The combined average is calculated by adding the average force of 13.8 Lbs. for the left side and 12.9 Lbs. for the right side. This yields 7.0% difference between the sides.

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
11 DIVING PLACE, NINTH FLOOR NEW YORK NY 10003 (212) 661-9589

P. 7

CLICNY 0742

AUG-04-2005 THU 01:09 PM                    FAX NO.                        P. 21

08/04/2005  01:27  9452941423              SPORTS PT OF NY              PAGE  19/25



Test Date: Jul. 26, 2005 12:05:47 PM

Combined Average Force: 20.6 Lbs.

Mr. Steven Alfano reached a combined average force of 20.6 Lbs. during the push in test. The combined average is calculated by adding the average force of 9.5 Lbs. for the left side and 11.1 Lbs. for the right side. This yields 14.4% difference between the sides.

Test Date: Jul. 26, 2005 12:06:11 PM

Combined Average Force: 21.3 Lbs.



Mr. Steven Alfano reached a combined average force of 21.3 Lbs. during the push in test. The combined average is calculated by adding the average force of 12.8 Lbs. for the left side and 8.4 Lbs. for the right side. This yields 52.4% difference between the sides.

Evaluator Comments:

Test 2 right foot forward, test 3 left foot forward

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
15 IRVING PLACE, NINTH FLOOR NEW YORK, NY 10003 (212) 627-0600

Mr. Steven Alfano                                                           P. 8

PAGE 19/25 * ECHO AT 8/4/2005 12:24:51 PM [Central Daylight Time]* SVR: RS01RAS1CA * DNIS: 3121 * CSID: 2452941423* DURATION (mm:ss):07:20

CLICNY 0743

AUG-04-2005 THU 01:09 PM                  FAX NO.                              P. 22

08/04/2005  01:27    8452941423              SPORTS PT OF NY                 PAGE  20/25

## Epic Lifting Capacity™                                              Jul 26, 2004 12:17:44 PM



The EPIC Lift Capacity Test (ELC) was used to determine Mr. Steven Alfano's dynamic lifting and lowering capacity. The ELC is a progressive anthropometric protocol designed to determine the maximal acceptable load someone is capable of manually handling on a safe and dependable basis. The ELC is administered over three shelf heights at two rates of frequency. The two rates of frequency correspond to the occasional and frequent lifting demands as defined by the Dictionary of Occupational Titles. For each subtest the load is systematically increased until one of the three termination criteria (physiological, biomechanical or psychophysiological) are met. During the evaluation physiological, biomechanical and psychophysiological observational data are utilized to determine if the participant provided a maximal acceptable effort.

Mr. Steven Alfano provided the following results:

| Test | Range | Frequency | Job Demand | Load | %tile | RAW | %tile | Termination |
|---|---|---|---|---|---|---|---|---|
| 1 | Knuckle to Shoulder | 1/cycle | | 20 Lbs | <10th | 0.074 | <5th | Psychophysical |
| 2 | Floor to Knuckle | 1/cycle | | 0 Lbs | <10th | 0.000 | <5th | Psychophysical |
| 3 | Floor to Shoulder | 1/cycle | | 0 Lbs | <10th | 0.000 | <5th | Biomechanical |
| 4 | Knuckle to Shoulder | 4/cycle | | 0 Lbs | <10th | 0.000 | <5th | Biomechanical |
| 5 | Floor to Knuckle | 4/cycle | | 0 Lbs | <10th | 0.000 | <5th | Biomechanical |
| 6 | Floor to Shoulder | 4/cycle | | 0 Lbs | <10th | 0.000 | <5th | Biomechanical |

The results from tests numbers 3 & 6 are used to determine the participant's occasional and frequent physical demand level as defined by the Dictionary of Occupational Titles (DOT). Based on these results Mr. Steven Alfano has demonstrated at minimum a sedentary occasional strength demand and at minimum a sedentary frequent strength demand.

### Physiological and Biomechanical Changes

Under normal test conditions it is expected that the participant provided the following physiological responses:

1) 10% increase in heart rate for each subtest
2) The peak heart rate for each of the 6 subtests are in ascending order.

Mr. Steven Alfano provided the following physiological responses:



### Global Effort Rating

Based on the documented physiological and biomechanical changes it is our opinion that Mr. Steven Alfano did provide a maximal acceptable effort during the ELC evaluation.

1. [illegible reference text]
2. [illegible reference text]
3. [illegible reference text]
4. [illegible reference text]
5. [illegible reference text]
6. [illegible reference text]

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
33 IRVING PLACE NINTH FLOOR NEW YORK NY 10003 (212) 667-1799

Mr. Steven Alfano

PAGE 20/25 * RCVD AT 8/4/2005 12:24:53 PM [Central Daylight Time] * SVR:HSNY/HSP1/24 * DNIS:1121 * CSID:8452941423 * DURATION (mm-ss):07-30

CLICNY 0744

AUG-04-2005 THU 01:10 PM                    FAX NO.                        P. 23

06/04/2005  01:27     8452941420          SPORTS PT OF NY              PAGE  21/25

**Occasional - F.R.O.M.**
**Axial Rotation Reach**



The Sustained Standing Reach with Axial Rotation Evaluation protocol was used to determine Mr. Steven Alfano's ability to perform axial rotation activities in a standing position and performing functional reaching on a sustained basis. Mr. Steven Alfano was tested using the Functional Range of Motion (FROM) System and the performance was calculated using the internationally-recognized MTM (methods-time measurement) standard. Methods-Time Measurement (MTM) is the industrial engineering-based method for the determination of time-motion performance in conjunction with work-related activities. This MTM standard score allows for the means to determine an exact percentage score of performance against the most widely recognized criteria for the assessment of time-motion activities. MTM scoring is based on a criterion referenced time-motion standard to complete a task as opposed to an estimate of ability.

The client while performing the sustained posture moves from areas of page being separated in another until back using a hand to hand transfer. A total of five cycles are completed.

| Test Date | Time (min) | MTM Percentage | MTM Rating |
|---|---|---|---|
| Jul 26, 2005 12:24:14 PM | 10:40 | 54% | Below Competitive |

The test scoring is based upon the total time necessary to complete five cycles of the task. The time required to complete the test is converted automatically into the equivalent MTM (methods-time measurement) standard score. Mr. Steven Alfano had a MTM score of 54% which correlates to a rating of below competitive.

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
10 BEYOND PLACE, FIRST FLOOR NEW YORK NY 10001 (212) 667-3999

Mr. Steven Alfano



CLICNY 0745

## Dallas Pain Questionnaire

**Please read:**
This questionnaire has been designed to give the doctor information as to how your pain has affected your life. Be sure that these are your answers. Do not ask anyone else to fill out the questionnaire for you. Please click on the line in the position that expresses your thoughts from 0 to 100% in each section.

Scoring:  Factor I:    55%  Daily Activities
Factor II:   90%  Work/Leisure Activities
Factor III:  55%  Anxiety/Depression
Factor IV:   85%  Social Interest

**Primary Approach:**  Combined medical & behavioral intervention

Jul 26, 2005

### SECTION I: PAIN AND INTENSITY
To what degree do you rely on pain medications or pain relieving substances for you to be comfortable?

NONE                          SOME                        ALL THE TIME
                                                                X        9
0%                                                         100%

### SECTION II: PERSONAL CARE
How much does pain interfere with your personal care (getting out of bed, teeth brushing, dressing, etc)?

NONE (NO PAIN)                 SOME                  I CANNOT GET OUT OF BED
                                              X                            6
0%                                                         100%

### SECTION III: LIFTING
How much limitation do you notice in lifting?

NONE                          SOME                       I CANNOT LIFT
(I CAN LIFT AS I DID)                                     ANYTHING
                                                                X        5
0%                                                         100%

### SECTION IV: WALKING
Compared to how far you could walk before your injury or back trouble, how much does pain restrict your walking now?

I CAN WALK        ALMOST              VERY LITTLE         I CANNOT
THE SAME          THE SAME                                WALK
                                                                X        4
0%                                                         100%

### SECTION V: SITTING
Back pain limits my sitting in a chair to:

NONE                          SOME                        I CANNOT
PAIN SAME AS BEFORE                                       SIT AT ALL
                                                                X        5
0%                                                         100%

### SECTION VI: STANDING
How much does your pain interfere with your tolerance to stand for long periods?

NONE                          SOME                        I CANNOT
SAME AS BEFORE                                            STAND
                                                                X        4
0%                                                         100%

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
33 IRVING PLACE, NINTH FLOOR NEW YORK NY 10003  (212) 867-1083

Mr. Steven Alfaro

P. 11

PAGE 22/24 * RCVD AT 8/4/2005 1:24:10 PM [Central Daylight Time] * SVR:FSO1/MSXGA * DNIS:2124 * CSID:8462901423 * DURATION (mm-ss):03-30

CLICNY 0746

AUG-04-2005 THU 01:10 PM          FAX NO.                    P. 25

08/04/2005  01:27  8452941423     SPORTS PT OF NY           PAGE  23/25



**SECTION VII: SLEEPING**
How much does pain interfere with your sleeping?

NONE
SAME AS BEFORE                     SOME                      I CANNOT
                                                            SLEEP AT ALL

0%                                                          100%

**SECTION VIII: SOCIAL LIFE**
How much does pain interfere with your social life (dancing, games, going out, eating with friends, etc)?

NONE
SAME AS BEFORE                     SOME                      NO ACTIVITIES
                                                            TOTAL LOSS

0%                                                          100%

**SECTION IX: TRAVELING**
How much does pain interfere with traveling in a car?

NONE
SAME AS BEFORE                     SOME                      I CANNOT
                                                            TRAVEL

0%                                                          100%

**SECTION X: VOCATIONAL**
How much does pain interfere with your job?

NONE
NO INTERFERENCES                   SOME                      I CANNOT
                                                            WORK

0%                                                          100%

**SECTION XI: ANXIETY/MOOD**
How much control do you feel that you have over demands made on you?

(NO CHANGE)
TOTAL                              SOME                      NONE

0%                                                          100%

**SECTION XII: EMOTIONAL CONTROL**
How much control do you feel you have over your emotions?

(NO CHANGE)
TOTAL                              SOME                      NONE

0%                                                          100%

**SECTION XIII: DEPRESSION**
How depressed have you been since the onset of pain?

NOT DEPRESSED                                               OVERWHELMED
SIGNIFICANTLY                                               BY DEPRESSION

0%                                                          100%

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
15 IRVING PLACE, NINTH FLOOR NEW YORK NY 10003  (212) 462-8599

Mr. George Andrew                                           P. 12

PAGE 23/25 * RCVD AT 8/4/2005 12:24:13 PM [Central Daylight Time] * SVR:ASPRN01/04 * DNIS:3121 * CSID:8452941423 * DURATION (mm-ss):07-38

CLICNY 0747



**SECTION XIV:  INTERPERSONAL RELATIONSHIPS**

How much do you think your pain has changed your relationships with others?

NOT CHANGED                                                      DRASTICALLY
                                                                CHANGED

0%                                                              100%                    [7]

**SECTION XV:  SOCIAL SUPPORT**

How much support do you need from others to help you during this onset of pain (taking over chores, fixing meals, etc.)?

NONE NEEDED                                                     ALL THE TIME

0%                                                              100%                    [6]

**SECTION XVI:  PUNISHING RESPONSE**

How much do you think others express irritation, frustration or anger toward you because of your pain?

NONE                                    SOME                   ALL THE TIME

0%                                                              100%                    [4]

**Cardiovascular Intake** ▶  Jul 26, 2005

| | Resting Rate (bpm) | Systolic (mm Hg) | Diastolic (mm Hg) |
|---|---|---|---|
| | 51 | 134 | 80 |

| Result | Normal Heart Rate | Normal Blood Pressure | Normal Blood Pressure |
|---|---|---|---|

SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
31 IRVING PLACE, NORTH FLOOR NEW YORK NY 10003  (212) 667-3759

Mr. Barrett Alburn                                                                P. 15

CLICNY 0748

AUG-04-2005 THU 01:10 PM          FAX NO.                    P. 27

08/04/2005  01:27   8452941423        SPORTS PT OF NY              PAGE 25/25

**Modified Canadian Aerobic Fitness Test (mCAFT)**



The client uses a double step and if necessary a single step while their hands only is being positioned. When their heart rate reaches the 85% age predictive maximum heart rate level the test is stopped.

▶ The Canadian Aerobic Fitness Test (CAFT) consists of a series of step tests used to determine aerobic fitness. It consists of a succession of different stepping sequences varying in tempo and step height. The test is performed using a double 20.3 cm step and a single 40.6 cm step and a computerized metronome that sets the appropriate tempo. Participants begin with a warm-up exercise at a cadence intensity of 65 to 70% of the average aerobic power of a person 10 years older. The participant performs the test until one of the following end points: 1) The patient can no longer continue, 2) The patient's heart rate reaches the predetermined 85% age predictive maximum heart rate level, or 3) The instructor terminates testing for biomechanical reasons. During the evaluation physiological, biomechanical and psychophysiological observational data are utilized to determine if the participant provided a maximum acceptable effort.

Mr. Steven Alfano provided the following results :                Jul 26, 2005 11:22:06 AM

| Level | Cadence (steps/min) | Step Height (cm) | Age Predicted 85% Max Heart Rate (bpm) | Initial Heart Rate (bpm) | Peak Heart Rate (bpm) |
|---|---|---|---|---|---|
| 3 | 102 | 20.3 | 116>147 | 108 | 114 |

The test was stopped during the 3 stage due to biomechanical factors.

**Physiological Changes**

Under normal test conditions it is expected that the patient's peak heart rate for each stage successfully completed should be in ascending order.

In Mr. Steven Alfano's case it was noted that he did achieve the anticipated physiological result.

**Physical Work Intensity by Oxygen Consumption**

| Max VO2 | -0.20 ml/kg/min | Sustained Max VO2 | -0.08 ml/kg/min | MET Level | 0 METS |
|---|---|---|---|---|---|

| Work Intensity for 70-kg Person | Oxygen Consumption | Excess Energy Expenditure |
|---|---|---|
| Light work | 7 mL/kg, 0.5 L/min | <= 2 METS |
| Moderate work | 8-15 mL/kg, 0.6-1.0 L/min | 2-4 METS |
| Heavy work | 16-20 mL/kg, 1.1-1.5 L/min | 5-6 METS |
| Very heavy work | 21-30 mL/kg, 1.6-2.0 L/min | 7-8 METS |
| Arduous work | >30 mL/kg, > 2.0 L/min | > 8 METS |

**Evaluator Comments**

He was unable to continue the test due to biomechanical factors. He was unable to complete test and right leg buckled twice and client lost his balance and was assisted by evaluator and walked to a plinth.



| | |
|---|---|
| Initial Heart Rate: | 108 BPM |
| Peak Heart Rate: | 114 BPM |
| Final Heart Rate: | 114 BPM |
| Heart Rate Cut off: | 147 BPM |
| | Systolic  Diastolic |
| Initial Blood Pressure: | 136   80 |



SPORTS PHYSICAL THERAPY OF NY MANAGED BY HEALTHSOUTH
51 [name] PLACE, MONTEBELLO, NEW YORK NY 10012  (212) 557-5955

P. 10

PAGE 25/25 * RCVD AT 8/4/2005 (2:24:53 PM [Central Daylight Time] * SVR:HSFAXMS1/04 * DNIS:7171 * CSID:8452941423 * DURATION (mm-ss):07-10

GLICNY 0749

# FCE Referral Questions

Claimant Name: Steven Alfano

Case Manager: Mark Sedders                    Date: June 9, 2005

CIGNA Group Insurance                         FCO location:_____    ___ ___ ___

The Functional Capacity Evaluation has been requested to determine the following information or because of the following: (Please check all that are applicable.)

**X**  1. Please quantify physical and functional abilities to determine individual's capability to perform any occupation for an 8-hour day. Provide objective rationale if unable to perform a full 8-hour day.

☐  2. Can this individual safely return to his/her occupation? (Determine work ability based on: DOT and/or job description enclosed.)

☐  3. Does the functional level of the client match those of his/her own occupation, or are reasonable accommodations needed to return to work?

☐  4. If the client is unable to safely perform his/her own occupation, what are the limiting factors from performing the job in a safe manner?

☐  5. Can the individual return to work in a modified or light duty status?

**X**  6. Determine safe, permissible lifting abilities and general physical demand category.

**X**  7. Perform consistency of effort testing and correlate clinical versus functional presentation.

**X**  8. Did individual demonstrate maximal effort throughout testing, or were self limiting behaviors observed?

**X**  9. Provide a report of any discrepancy between the subjective complaints, objective findings, and observed behavior.

☐  10. Complicated case presentation involving multiple systems, i.e. fibromyalgia, RSD, chronic fatigue syndrome, myofascial syndrome, cancer, diabetes, etc.

☐  11. Provide treatment recommendations with objective rationale explaining purpose, goal and prognosis for improved functioning.

**X**  12. Do **not** provide treatment recommendations with report.

**X**  13. Provide written observations of the individual's physical appearance, timeliness, mode of transportation, and if anyone accompanied the individual to the evaluation.

**X**  14. Provide physical abilities or capabilities form with final report.

☐  15. Other Specific Instructions: _____    ___ ___

CLICNY 0751

JUN. 14. 2005  3:32PM     NYPH                                        NO. 483    P. 1

  

Joan and Sanford I. Weill
Medical College

Keith W. Roach, M.D.

Associate Professor of Clinical Medicine
Associate Professor of Public Health and Epidemiology
Program Director, Primary Care Residency Program
Cornell Internal Medicine Associates
Department of Medicine

505 East 70th Street
Helmsley Tower, Suite 450
New York, NY 10021
Telephone 212 746-2879
Fax 212 746-4609

Dr Scott C. Taylor, D.O.                                June 14, 2005
Cigna Insurance
By fax 860-731-3211

Dear Dr Taylor:

I wanted to provide a summary of Mr Alfano's condition and my recommendations for
his future work, following our telephone conversation and the summary you sent me on
June 8, 2005.

Mr. Alfano has some residual functional capacity to do sedentary work. He is limited,
however, by his need for sitting, standing, and laying down ad lib frequently during the
day. I do not think Mr Alfano is capable of performing even sedentary work for more
than ½ hour at a time, nor for more than two hours total during the day. While it is
possible that he may improve his ability to do work, he unfortunately has not improved in
the last five years and it seems to be less likely that he will have significant improvement.
He continues to require daily narcotics, and frequent hot baths for pain control. The neck
and back are the primary problem; the LSMFT of the femur is not a disabling condition.

My recommendations are indeed based primarily on the history of Mr Alfano, but also on
my direct observation of his level of discomfort in a 20 to 30 minute office visit. I
continue to affirm the findings of the prior disability determinations.

Sincerely,

Keith W. Roach, M.D.

CLICNY 0843

Acenzn: Task

Page 1 of 2

| Task | Contents | Notes (0/0) |

## Task: Claimant Contact

**Details**

| Start Date: | 05/09/2005 | | Due Date: | | 06/17/2005 |

### Contact Information

| Name | STEVEN ALFANO | SSN | 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 | DOB | 01/14/1958 |
| Account Name | WEILL MEDICAL COLLEGE | Account # | NYK0001972 | Incurred Date | 06/06/2000 |
| Claim Manager | Mark Sodders | Incident # | 513564 | Claim Eff Dt-Status | 01/21/2003 - Active |

Contact Information - Interview Documentation - Spouse Information

Title FCE re-notification

☒ First Phone Call

Result Left Message - With Individual          Date 06/08/2005 12:49 PM          User ID Mark Sodders

☐ Second Phone Call

   Result _____          Date _____          User ID _____

☐ Generate Letter/Fax          Date _____          User ID _____

☐ Incoming Call          Date _____          User ID _____

☐ Mail Received          Date _____          User ID _____

Contact Comments
06/09/05 called cx at 718-884-2067 to inform the FCE.  Cx stated his understanding
MJSodders  CM

### Interview Documentation

Primary Diagnosis/Symptoms/Co-Morbid Conditions

_____

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

_____

CLICNY 0853

## Claim Direction Staffing Form



Please complete the sections that are applicable for the staffing purpose

### Claim Information:

| | | | |
|---|---|---|---|
| Staffing Date: | April 25, 2005 | Claim Manager: | Mark Sodders |
| Cx Name: | Steven Alfano | SSN: | 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 |
| DOB/Age: | 01/14/58 | Height/WT: | 6'3"/288 lbs. |
| Employer | Weil Medical College | Occupation: | Wage & Salary Manager |
| Incur Date: | 06/06/2000 | Date of Hire: | 05/05/1991 |
| | | Employment term Date: | After LD of 06/06/2000 |
| BSD or AO Date | 12/03/2000 | Claim Received Date: | 12/07/2000 |
| Prior Claim ? | No | MI Max date: | 24 mos. |
| Diagnosis/ICD 9 code: | | | |
| Status: | fl        Ongoing  XX        A/O _____ Appeal _____ Pre-Ex _____ | | |
| Specific staffing questions that need to be addressed : | | | |
| Claim direction | | | |
| Claim synopsis: please see printed claim strategy: | | | |

### Vocational / Occupational History:

| | | | |
|---|---|---|---|
| Occupational requirements (DOT MUST BE ON FILE & TABBED) | | | |
| X☐ Sedentary  ☐ Light  ☐ Medium   ☐ Heavy  ☐ Very Heavy | | | |
| Policy definition of disability please check: | | DOT on file: no, just JD | |
| Own Occ  XX     Any Occ        , Other: | | | |
| Training/Education/Experience | Dominant | VRC assigned:        Yes  X        No | |
| Bus Degree in 1982 | hand: Left | | |

### Medical / Offsets:

| Treating Physicians (name, specialty, initial & LOV, frequency): | | | | | | | |
|---|---|---|---|---|---|---|---|
| Provider | Specialty | Initial OV | LOV | TX | PAA? | R ` | U. |
| K. Rusch, M.D. | IM | | | | | | |
| M. Alexander | Ortho Sx | | | | | | |
| | | | | | | | |
| Projected RTW Date and Provider: | | No work | | | | | |
| CGT Guidelines: | | | | | | | |
| Other Benefits: | ☐ STD    ☐ WC  X☐ SSDI  ☐ SSR  ☐ Pension  ☐ Other | | | | | | |

I

CLICNY 0879

## Claim Direction Staffing Form 

Please complete the sections that are applicable for the staffing purpose

*Comments/ Review outcome/Rationale/Plan:*

MD____ NCM/BHS____ VRC____

File does Not support deficits which
precluded work activity. Dr. Roach
indicated could Not do 4 phs based on
PAA from Dr. 10/10/04. Concern of
need for plan to plan c Dr Roach
at 212-746-2879 (fax 212 746 8127)

Future Claim Direction/Actions (Please indicate person responsible for action)
1.
2.
3.
4.

F/U Medical _____          SSDI _____
VOC Rehab _____          F/U W/C _____
SIU _____                Other _____

*Parties in Attendance:*

Please list printed staffing participant names with signatures:
1. _____ 4/27/05
2. _____ 4/27/05
3.
4.

Date:

2

CLICNY 0880

# CORNELL UNIVERSITY

## NEW YORK PRESBYTERIAN HOSPITAL

Joan and Sanford Weill Medical College

KEITH W. ROACH, M.D.
Associate Professor of Clinical Medicine
Associate Professor of Public Health and Epidemiology
Program Director, Primary Care Residency Program
Cornell Internal Medicine Associates

Weill Medical College
Department of Medicine
525 East 68th Street, NY 450
New York, NY 10021

Tel: 212-746-2579
Fax: 212-746-8731
krw2074@med.cornell.edu

## FAX COVER SHEET

CONFIDENTIALITY NOTICE: THE DOCUMENTS ACCOMPANYING THIS TELECOPY TRANSMISSION CONTAIN CONFIDENTIAL INFORMATION, BELONGING TO THE SENDER, THAT IS LEGALLY PRIVILEGED. THIS INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL ENTITY NAMED BELOW. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, OR ACTION TAKEN IN RELIANCE ON THE CONTENTS OF THESE DOCUMENTS IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TELECOPY IN ERROR, PLEASE NOTIFY THE SENDER IMMEDIATELY TO ARRANGE FOR RETURN OF THESE DOCUMENTS.

TO: MARK Sodders

LOCATION: CIGNA Disability Dept

PHONE: 800 352 0611x5693     860 = 731-2907

DATE: 4/19/05

PAGES (INCLUDING THIS COVER SHEET): 2

COMMENTS: Regarding

Steven Alfano

CIGNY 0882



# CORNELL
UNIVERSITY

# NEW YORK
PRESBYTERIAN
HOSPITAL

Joan and Sanford I. Weill
Medical College

Keith W Roach, MD
Associate Professor of Clinical Medicine
Associate Professor of Public Health and
Epidemiology
Program Director, Primary Care Residency Program
Cornell Internal Medicine Associates
Department of Medicine

525 East 70th Street, HT-4
Helmsley Tower, Suite 450
New York, NY 10022
Telephone: 212 746-9663
Fax: 212 746-8609

Steven Alfano
3800 Waldo Ave #13G
Bronx, NY 10463

April 19, 2005

NYH # 228-41-47

Mr. Mark Sodders
Cigna Insurance

Dear Mr. Sodders:

Steven Alfano is under my care at the Cornell Internal Medicine Associates at The New York Hospital for his ongoing primary medical care. In regards to your letter of January 20, 2005, I will reiterate that Mr Alfano is physically unable to perform the occupations as described in the attachments to the letter. Specifically, his primary disability is being able to sit for prolonged periods. He is physically unable to sit without frequent need for standing, laying down, or using ice on his back. He is not able to stay seated for a meal at a restaurant, due to pain and stiffness.

I have also reviewed the decision by Judge Scheer of Aug 27,2005. I believe that the medical facts which corroborate my findings as above are well summarized in his judgment.

If you have any questions, please call me at the number above.

Sincerely,

Keith Roach, M.D.

CLICNY 0883

# *Facsimile Transmission Cover Sheet*



**CIGNA Group Insurance**
Life · Accident · Disability

| Transmit to FAX number: 718-884-2067 | Date April 11, 2005 | Time 2:54 PM | Total number of pages (including this sheet): 10 |
|---|---|---|---|

| To | From |
|---|---|
| Name Steven Alfano | Name Mark Sodders |
| Company | Department CIGNA Disability Management Solutions |
| Phone 718-884-2067 | Phone 800.352.0611 x5693 |
| Address | Address 212E 12225 Greenville Avenue Suite 1000 LB 179 Dallas, TX 75243-9382 |

**Comments**

Re:   Claimant:              Steven Alfano
      Policy Number:          NYK 1972
      Policy Holder:          Weill Medical College
      Underwriting Company:   CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

Enclosed is the request sent via certified mail to Dr. Roach on January 20, 2005. Please contact Dr. Roach's office to expedite our request. If we have not received his response by April 28, 2005, we will continue with the scheduling of the Functional Capacities Evaluation.

Please contact me at 800-352-0611 x5693 should there be any questions.

Sincerely,

Mark Sodders

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

[ ] Acknowledgment Requested                    To Fax a reply, dial : 860.731.2907

CLICNY 0885

Mark Sodders
Case Manager
CIGNA Disability Management Solutions



**CIGNA Group Insurance**
Life · Accident · Disability

January 20, 2005

Routing 212E
12225 Greenville Avenue
Suite 1006 LB 179
Dallas, TX 75243-9382
Telephone 800.362.0611 x5693
Facsimile 860.731.3907
Mark.Sodders@Cigna.com

Keith Roach, M.D.
505 E. 70 St.
HT 450
New York, NY 10021

Re:   Claimant:              Steven Alfano
      DOB:                   01/14/58
      Policy Number:         NYK 1972
      Policy Holder:         Weill Medical College
      Underwriting Company:  CIGNA Life Insurance Company of New York

Dear Dr. Roach:

From your last Physical Abilities Assessment Form dated October 10, 2004, you report that Mr. Roach may Occasionally: push, pull, climb, balance, stoop, lift and carry 10 pounds, sit stand and walk.

We have enclosed four potential occupations that Mr. Roach may perform based on his prior education, training and experience for your review. To properly understand his current physical work restrictions, please provide the following information:

- Is Mr. Roach able to physically perform the four occupations as described in the attachment?

- If no, please provide the medical documentation to support your position of Mr. Roach's functional deficits and that significantly impact his ability to perform these occupations which require physical exertion in an 8 hour day based on your October 10, 2004 Physical Abilities Assessment form.

We will consider a reasonable charge for this report. Please include your Tax identification number for your invoice.

Your assistance in providing this information is appreciated and will aid in the prompt handling of the claim.

Sincerely,

Mark Sodders

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

# OCCUPATIONAL DESCRIPTION 

**166.117-018  Manager, Personnel**
**O*NET SOC Code:  11-3040.00  Human Resources Managers**

Alternate Titles:  Manager, Human Resources

Plans and carries out policies relating to all phases of personnel activity: Recruits, interviews, and selects employees to fill vacant positions. Plans and conducts new employee orientation to foster positive attitude toward company goals. Keeps record of insurance coverage, pension plan, and personnel transactions, such as hires, promotions, transfers, and terminations. Investigates accidents and prepares reports for insurance carrier. Conducts wage survey within labor market to determine competitive wage rate. Prepares budget of personnel operations. Meets with shop stewards and supervisors to resolve grievances.  Writes separation notices for employees separating with cause and conducts exit interviews to determine reasons behind separations. Prepares reports and recommends procedures to reduce absenteeism and turnover. Represents company at personnel-related hearings and investigations.  Contracts with outside suppliers to provide employee services, such as canteen, transportation, or relocation service. May prepare budget of personnel operations, using computer terminal. May administer manual and dexterity tests to applicants. May supervise clerical workers. May keep records of hired employee characteristics for governmental reporting purposes. May negotiate collective bargaining agreement with BUSINESS REPRESENTATIVE, LABOR UNION (profess & kin.) 187.167-018.

DLU: 1988

---

**O*NET SOC Title: Human Resources Managers**
**O*NET SOC Code: 11-3040.00**

Plan, direct, and coordinate human resource management activities of an organization to maximize the strategic use of human resources and maintain functions such as employee compensation, recruitment, personnel policies, and regulatory compliance.

Formulates policies and procedures for recruitment, testing, placement, classification, orientation, benefits, and labor and industrial relations.  Plans, directs, supervises, and coordinates work activities of subordinates and staff relating to employment, compensation, labor relations, and employee relations.  Directs preparation and distribution of written and verbal information to inform employees of benefits, compensation, and personnel policies.  Evaluates and modifies benefits policies to establish competitive programs and to ensure compliance with legal requirements.  Analyzes compensation policies, government regulations, and prevailing wage rates to develop competitive compensation plan. Develops methods to improve employment policies, processes, and practices and recommends changes to management. Prepares personnel forecast to project employment needs.  Prepares budget for personnel operations.  Prepares and delivers presentations and reports to corporate officers or other management regarding human resource management policies and practices and recommendations for chan  Negotiates agreements and resolves labor disputes. Meets with shop stewards and supervisors to resolve grievances.  Conducts exit interviews to identify reasons for employee termination and writes separation notices.  Plans and conducts new employee orientation to foster positive attitude toward organizational objectives.  Writes directives advising department managers of organization policy in personnel matters such as equal employment opportunity, sexual harassment, and discrimination.  Studies legislation, arbitration decisions, and collective bargaining contracts to assess industry trends.  Maintains records and compiles statistical reports concerning personnel-related data such as hires, transfers, performance appraisals, and absenteeism rates.  Analyzes statistical data and reports to identify and determine causes of personnel problems and develop recommendations for improvement of organization's personnel policies and  Represents organization at personnel-related hearings and investigations.  Contracts with vendors to provide employee services, such as canteen, transportation, or relocation service.  Investigates industrial accidents and prepares reports for insurance carrier.

Preliminary Crosswalk shows this DOT Occupation is 1 of 6 DOTs under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

CIGCNY 0887

 

# OCCUPATIONAL REQUIREMENTS

**Title:** Manager, Personnel
**Industry:** Professional and Kindred

**DOT Code:** 166.117-018

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning Level 5
Mathematics Level 5
Language Level 5

**Strength:** Sedentary — Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Performing a Variety of Duties | | |
|---|---|---|---|
| | Directing, Controlling, or Planning Activities of Others | **Data:** | Coordinating |
| | Dealing with People (Beyond receiving work instructions) | **People:** | Negotiating |
| | Making Judgments and Decisions | **Things:** | Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 1 (Above 89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 1 (Above 89%) | 3- (34 - 44%) |
| Numerical Aptitude | 2 (67-89%) | 3 (46 - 54%) |
| Spatial Aptitude | 3 (34-66%) | Not Included |
| Form Perception | 3 (34-66%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

CIGNA
12/13/2004

Page 3

CLICNY 0888

# OCCUPATIONAL DESCRIPTION 

**166.167-030  Manager, Employment**
**O*NET SOC Code:  11-3040.00  Human Resources Managers**

Alternate Titles:  Employment Supervisor

  Manages employment activities of establishment: Plans and directs activities of staff workers concerned with such functions as developing sources of qualified applicants, conducting screening interviews, administering tests, checking references and background, evaluating applicants' qualifications, and arranging for preliminary indoctrination and training for newly hired employees according to policy formulated by DIRECTOR, INDUSTRIAL RELATIONS (profess. & kin.) 166.117-010.  Keeps records and compiles statistical reports concerning recruitments, interviews, hires, transfers, promotions, terminations, and performance appraisals, utilizing knowledge of job requirements, valid selection processes, and legislation concerning equal employment practices.  Coordinates employment activities, such as those concerned with preparing job requisitions; interviewing, selecting, and hiring candidates; on-the-job indoctrination and additional training; supervisory follow-up, development, and rating of employees; and conducting exit interviews. Analyzes statistical data and other reports concerning all aspects of employment function in order to identify and determine causes of personnel problems and to develop and present recommendations for improvement of establishment's employment policies, processes, and practices.

DLU:  1987

**O*NET SOC Title:  Human Resources Managers**
**O*NET SOC Code:  11-3040.00**

Plan, direct, and coordinate human resource management activities of an organization to maximize the strategic use of human resources and maintain functions such as employee compensation, recruitment, personnel policies, and regulatory compliance.

  Formulates policies and procedures for recruitment, testing, placement, classification, orientation, benefits, and labor and industrial relations.  Plans, directs, supervises, and coordinates work activities of subordinates and staff relating to employment, compensation, labor relations, and employee relations.  Directs preparation and distribution of written and verbal information to inform employees of benefits, compensation, and personnel policies.  Evaluates and modifies benefits policies to establish competitive programs and to ensure compliance with legal requirements.  Analyzes compensation policies, government regulations, and prevailing wage rates to develop competitive compensation plan. Develops methods to improve employment policies, processes, and practices and recommends changes to management. Prepares personnel forecast to project employment needs.  Prepares budget for personnel operations.  Prepares and delivers presentations and reports to corporate officers or other management regarding human resource management policies and practices and recommendations for change.  Negotiates bargaining agreements and resolves labor disputes. Meets with shop stewards and supervisors to resolve grievances.  Conducts exit interviews to identify reasons for employee termination and writes separation notices.  Plans and conducts new employee orientation to foster positive attitude toward organizational objectives.  Writes directives advising department managers of organization policy in personnel matters such as equal employment opportunity, sexual harassment, and discrimination.  Studies legislation, arbitration decisions, and collective bargaining contracts to assess industry trends.  Maintains records and compiles statistical reports concerning personnel-related data such as hires, transfers, performance appraisals, and absenteeism rates.  Analyzes statistical data and reports to identify and determine causes of personnel problems and develop recommendations for improvement of organization's personnel policies and  Represents organization at personnel-related hearings and investigations.  Contracts with vendors to provide employee services, such as canteen, transportation, or relocation service.  Investigates industrial accidents and prepares reports for insurance carrier.

Preliminary Crosswalk shows this DOT Occupation is 1 of 6 DOT's under this O*NET Code.

**Please note:  O*NET Codes are under development and subject to change.**

CLICNY 0889

# OCCUPATIONAL REQUIREMENTS 

| | |
|---|---|
| **Title:** Manager, Employment | **DOT Code:** 166.167-030 |
| **Industry:** Professional and Kindred | |

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning Level 5
Mathematics Level 4
Language Level 5

**Strength:** Sedentary — Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Quiet |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Directing, Controlling, or Planning Activities of Others | Data: | Coordinating |
|---|---|---|---|
| | Dealing with People (Beyond receiving work instructions) | People: | Speaking-Signaling |
| | Making Judgments and Decisions | Things: | Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Spatial Aptitude | 5 (Below 11%) | Not Included |
| Form Perception | 5 (Below 11%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 5 (Below 11%) | Not Included |
| Finger Dexterity | 5 (Below 11%) | Not Included |
| Manual Dexterity | 5 (Below 11%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

CLICNY 0890

# OCCUPATIONAL DESCRIPTION



187.167-098 Manager, Employment Agency
O*NET SOC Code: 41-1012.00 First-Line Supervisors/Managers of Non-Retail Sales Workers

Manages employment services and business operations of private employment agency: Directs hiring, training, and evaluation of employees. Analyzes placement reports to determine effectiveness of EMPLOYMENT INTERVIEWERS (profess. & kin.). Participates in development and utilization of job development methods to promote business for agency. Enforces, through subordinate staff, agency policies, procedures, safety rules, and regulations. Approves or disapproves requests for purchase of new equipment and supplies. Ensures maintenance and repair of facilities and equipment. Prepares budget requests. Investigates and resolves customer complaints. May negotiate leases and order equipment and supplies for agency.

DLU: 1977

---

O*NET SOC Title: First-Line Supervisors/Managers of Non-Retail Sales Workers
O*NET SOC Code: 41-1012.00

Directly supervise and coordinate activities of sales workers other than retail sales workers. May perform duties, such as budgeting, accounting, and personnel work, in addition to supervisory duties.

Directs and supervises employees engaged in sales, inventory-taking, reconciling cash receipts, or performing specific service such as pumping gasoline for customers. Plans and prepares work schedules and assigns employees to specific duties. Hires, trains, and evaluates personnel in sales or marketing establishment. Coordinates sales promotion activities and prepares merchandise displays and advertising copy. Listens to and resolves customer complaints regarding service, product, or personnel. Examines merchandise to ensure that it is correctly priced, displayed or functions as advertised. Inventories stock and reorders when inventories drop to specified level. Examines products purchased for resale or received for storage to determine condition of product or item. Prepares rental or lease agreement, specifying charges and payment procedures, for use of machinery, tools, or other such items. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Keeps records pertaining to purchases, sales, and requisitions. Assists sales staff in completing complicated and difficult sales. Prepares sales and inventory reports for management and budget departments. Confers with company officials to develop methods and procedures to increase sales, expand markets, and promote business.

Preliminary Crosswalk shows this DOT Occupation is 1 of 17 DOTs under this O*NET Code.

**Please note: O*NET Codes are under development and subject to change.**

CLICNY 0891

# OCCUPATIONAL REQUIREMENTS 

Title: Manager, Employment Agency
Industry: Professional and Kindred

DOT Code: 187.167-098

Specific Vocational Preparation:  Level 7 (2 to 4 years)

General Educational Development:  Reasoning Level 4
Mathematics Level 3
Language Level 4

Strength: Sedentary

Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Occasionally | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

Work Situations:  Directing, Controlling, or Planning Activities of Others
Making Judgments and Decisions
Performing a Variety of Duties

Data:  Coordinating
People:  Speaking-Signaling
Things:  Handling

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3 (46 - 54%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3- (34 - 44%) |
| Spatial Aptitude | 4 (11-33%) | Not Included |
| Form Perception | 4 (11-33%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

CLICNY 0892

# OCCUPATIONAL DESCRIPTION 

189.167-022 Manager, Department
O*NET SOC Code: 11-1011.02 Private Sector Executives

Alternate Titles: Department Head; Superintendent

 Directs and coordinates, through subordinate supervisors, department activities in commercial, industrial, or service establishment: Reviews and analyzes reports, records, and directives, and confers with supervisors to obtain data required for planning department activities, such as new commitments, status of work in progress, and problems encountered. Assigns, or delegates responsibility for, specified work or functional activities and disseminates policy to supervisors. Gives work directions, resolves problems, prepares schedules, and sets deadlines to ensure timely completion of work. Coordinates activities of department with related activities of other departments to ensure efficiency and economy. Monitors and analyzes costs and prepares budget, using computer. Prepares reports and records on department activities for management, using computer. Evaluates current procedures and practices for accomplishing department objectives to develop and implement improved procedures and practices. May initiate or authorize employee hire, promotion, discharge, or transfer. Workers are designated according to functions, activities, or type of department managed.

DLU: 1989

O*NET SOC Title: Private Sector Executives
O*NET SOC Code: 11-1011.02

Determine and formulate policies and business strategies and provide overall direction of private sector organizations. Plan, direct, and coordinate operational activities at the highest level of management with the help of subordinate managers.

 Directs, plans, and implements policies and objectives of organization or business in accordance with charter and board of directors. Directs activities of organization to plan procedures, establish responsibilities, and coordinate functions among departments and sites. Analyzes operations to evaluate performance of company and staff and to determine areas of cost reduction and program improvement. Confers with board members, organization officials, and staff members to establish policies and formulate plans. Reviews financial statements and sales and activity reports to ensure that organization's objectives are achieved. Assigns or delegates responsibilities to subordinates. Directs and coordinates activities of business involved with buying and selling investment products and financial services. Establishes internal control procedures. Presides over or serves on board of directors, management committees, or other governing boards. Directs inservice training of staff. Administers program for selection of sites, construction of buildings, and provision of equipment and supplies. Screens, selects, hires, transfers, and discharges employees. Promotes objectives of institution or business before associations, public, government agencies, or community groups. Negotiates or approves contracts with suppliers and distributors, and with maintenance, janitorial, and security providers. Prepares reports and budgets. Directs non-merchandising departments of business, such as advertising, purchasing, credit, and accounting. Directs and coordinates activities of business or department concerned with production, pricing, sales, and/or distribution of products. Directs and coordinates organization's financial and budget activities to fund operations, maximize investments, and increase efficiency.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOTs under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

CLICNY 089

# OCCUPATIONAL REQUIREMENTS 

Title: Manager, Department
Industry: Any Industry

DOT Code: 189.167-022

Specific Vocational Preparation:  Level 7 (2 to 4 years)

General Educational Development:  Reasoning Level 5
Mathematics Level 4
Language Level 4

Strength: Sedentary

Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situation: | Directing, Controlling, or Planning Activities of Others | Data: | Coordinating |
|---|---|---|---|
| | Dealing with People (Beyond receiving work instructions) | People: | Speaking-Signaling |
| | Making Judgments and Decisions | Things: | Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Spatial Aptitude | 3 (34-66%) | Not Included |
| Form Perception | 3 (34-66%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

CLICNY 0894

Mark Sodders
Case Manager
CIGNA Disability Management Solutions



**CIGNA Group Insurance**
Life · Accident · Disability

January 20, 2005

Routing 212E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 x5693
Facsimile 860.731.2907
Mark.Sodders@Cigna.com

Keith Roach, M.D.
505 E. 70 St.
HT 450
New York, NY 10021

Re:    Claimant:                Steven Alfano
       DOB:                     01/14/58
       Policy Number:           NYK 1972
       Policy Holder:           Weill Medical College
       Underwriting Company:    CIGNA Life Insurance Company of New York

Dear Dr. Roach:

From your last Physical Abilities Assessment Form dated October 10, 2004, you report that Mr. Roach may Occasionally: push, pull, climb, balance, stoop, lift and carry 10 pounds, sit stand and walk.

We have enclosed four potential occupations that Mr. Roach may perform based on his prior education, training and experience for your review.  To properly understand his current physical work restrictions, please provide the following information:

- Is Mr. Roach able to physically perform the four occupations as described in the attachment?

- If no, please provide the medical documentation to support your position of Mr. Roach's functional deficits and that significantly impact his ability to perform these occupations which require physical exertion in an 8 hour day based on your October 10, 2004 Physical Abilities Assessment form.

We will consider a reasonable charge for this report.  Please include your Tax identification number for your invoice.

Your assistance in providing this information is appreciated and will aid in the prompt handling of the claim.

Sincerely,

Mark Sodders

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

Sodders, Mark D    212

From:          Jule, Holly    212
Sent:          Monday, December 13, 2004 2:49 PM
To:            Sodders, Mark D    212
Subject:       Steven Alfano DOT's

Hi Mark.
This file and DOT's are ready.  Acclaim would not let me print
Out my summary in IRR.  Let me know if you have any questions.
Thanks!


Holly Jule. M.S., CRC
Vocational Rehabilitation Counselor
Cigna Disability Management Solutions
12225 Greenville Avenue
Dallas, Texas 75240
Phone 972-952-1019
Toll Free 1800-352-0511 EXT. 1019


Confidential, unpublished property of CIGNA.
Do not duplicate or distribute.
Use and distribution limited solely to authorized personnel.
© Copyright 2004 by CIGNA

1

CLICNY 0944

# OCCUPATIONAL DESCRIPTION

**166.117-018 Manager, Personnel**
**O*NET SOC Code:  11-3040.00  Human Resources Managers**

Alternate Titles:  Manager, Human Resources
  Plans and carries out policies relating to all phases of personnel activity:  Recruits, interviews, and selects employees to fill vacant positions.  Plans and conducts new employee orientation to foster positive attitude toward company goals. Keeps record of insurance coverage, pension plan, and personnel transactions, such as hires, promotions, transfers, and terminations.  Investigates accidents and prepares reports for insurance carrier.  Conducts wage survey within labor market to determine competitive wage rate.  Prepares budget of personnel operations.  Meets with shop stewards and supervisors to resolve grievances.  Writes separation notices for employees separating with cause and conducts exit interviews to determine reasons behind separations.  Prepares reports and recommends procedures to reduce absenteeism and turnover.  Represents company at personnel-related hearings and investigations.  Contracts with outside suppliers to provide employee services, such as canteen, transportation, or relocation service.  May prepare budget of personnel operations, using computer terminal.  May administer manual and dexterity tests to applicants.  May supervise clerical workers.  May keep records of hired employee characteristics for governmental reporting purposes.  May negotiate collective bargaining agreement with BUSINESS REPRESENTATIVE, LABOR UNION (profess & kin.) 187.167-018.

DLU: 1988

---

**O*NET SOC Title: Human Resources Managers**
**O*NET SOC Code: 11-3040.00**

Plan, direct, and coordinate human resource management activities of an organization to maximize the strategic use of human resources and maintain functions such as employee compensation, recruitment, personnel policies, and regulatory compliance.

  Formulates policies and procedures for recruitment, testing, placement, classification, orientation, benefits, and labor and industrial relations.  Plans, directs, supervises, and coordinates work activities of subordinates and staff relating to employment, compensation, labor relations, and employee relations.  Directs preparation and distribution of written and verbal information to inform employees of benefits, compensation, and personnel policies.  Evaluates and modifies benefits policies to establish competitive programs and to ensure compliance with legal requirements.  Analyzes compensation policies, government regulations, and prevailing wage rates to develop competitive compensation plan. Develops methods to improve employment policies, processes, and practices and recommends changes to management. Prepares personnel forecast to project employment needs.  Prepares budget for personnel operations.  Prepares and delivers presentations and reports to corporate officers or other management regarding human resource management policies and practices and recommendations for chan  Negotiates bargaining agreements and resolves labor disputes. Meets with shop stewards and supervisors to resolve grievances.  Conducts exit interviews to identify reasons for employee termination and writes separation notices.  Plans and conducts new employee orientation to foster positive attitude toward organizational objectives.  Writes directives advising department managers of organization policy in personnel matters such as equal employment opportunity, sexual harassment, and discrimination.  Studies legislation, arbitration decisions, and collective bargaining contracts to assess industry trends.  Maintains records and compiles statistical reports concerning personnel-related data such as hires, transfers, performance appraisals, and absenteeism rates.  Analyzes statistical data and reports to identify and determine causes of personnel problems and develop recommendations for improvement of organization's personnel policies and  Represents organization at personnel-related hearings and investigations.  Contracts with vendors to provide employee services, such as canteen, transportation, or relocation service.  Investigates industrial accidents and prepares reports for insurance carrier.

Preliminary Crosswalk shows this OOT Occupation is 1 of 6 DOT's under this O*NET Code.

**Please note: O*NET Codes are under development and subject to change.**

CLICNY 0945

# OCCUPATIONAL REQUIREMENTS 

Title: Manager, Personnel                                      DOT Code: 166.117-018
Industry: Professional and Kindred

Specific Vocational Preparation:  Level 8 (4 to 10 years)

General Educational Development:  Reasoning Level 5
                                  Mathematics Level 5
                                  Language Level 5

---

Strength: Sedentary                     Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may
                                        involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

---

| Work Situations: | Performing a Variety of Duties | | |
|---|---|---|---|
| | Directing, Controlling, or Planning Activities of Others | Data: | Coordinating |
| | Dealing with People (Beyond receiving work instructions) | People: | Negotiating |
| | Making Judgments and Decisions | Things: | Handling |

---

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 1 (Above 89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 1 (Above 89%) | 3- (34 - 44%) |
| Numerical Aptitude | 2 (67-89%) | 3 (46 - 54%) |
| Spatial Aptitude | 3 (54-66%) | Not Included |
| Form Perception | 3 (34-66%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

---

CLICNY 0946

# OCCUPATIONAL DESCRIPTION 

**166.167-030  Manager, Employment**
**O\*NET SOC Code:  11-3040.00  Human Resources Managers**

Alternate Titles:  Employment Supervisor

Manages employment activities of establishment:  Plans and directs activities of staff workers concerned with such functions as developing sources of qualified applicants, conducting screening interviews, administering tests, checking references and background, evaluating applicants' qualifications, and arranging for preliminary indoctrination and training for newly hired employees according to policy formulated by DIRECTOR, INDUSTRIAL RELATIONS (profess. & kin.) 166.117-010.  Keeps records and compiles statistical reports concerning recruitment, interviews, hires, transfers, promotions, terminations, and performance appraisals, utilizing knowledge of job requirements, valid selection processes, and legislation concerning equal employment practices.  Coordinates employment activities, such as those concerned with preparing job requisitions; interviewing, selecting, and hiring candidates; on-the-job indoctrination and additional training; supervisory follow-up, development, and rating of employees; and conducting exit interviews.  Analyzes statistical data and other reports concerning all aspects of employment function in order to identify and determine causes of personnel problems and to develop and present recommendations for improvement of establishment's employment policies, processes, and practices.

DLU:  1987

O\*NET SOC Title: Human Resources Managers
O\*NET SOC Code: 11-3040.00

Plan, direct, and coordinate human resource management activities of an organization to maximize the strategic use of human resources and maintain functions such as employee compensation, recruitment, personnel policies, and regulatory compliance.

Formulates policies and procedures for recruitment, testing, placement, classification, orientation, benefits, and labor and industrial relations.  Plans, directs, supervises, and coordinates work activities of subordinates and staff relating to employment, compensation, labor relations, and employee relations.  Directs preparation and distribution of written and verbal information to inform employees of benefits, compensation, and personnel policies.  Evaluates and modifies benefits policies to establish competitive programs and to ensure compliance with legal requirements.  Analyzes compensation policies, government regulations, and prevailing wage rates to develop competitive compensation plan.  Develops methods to improve employment policies, processes, and practices and recommends changes to management.  Prepares personnel forecast to project employment needs.  Prepares budget for personnel operations.  Prepares and delivers presentations and reports to corporate officers or other management regarding human resource management policies and practices and recommendations for chan  Negotiates bargaining agreements and resolves labor disputes.  Meets with shop stewards and supervisors to resolve grievances.  Conducts exit interviews to identify reasons for employee termination and writes separation notices.  Plans and conducts new employee orientation to foster positive attitude toward organizational objectives.  Writes directives advising department managers of organization policy in personnel matters such as equal employment opportunity, sexual harassment, and discrimination.  Studies legislation, arbitration decisions, and collective bargaining contracts to assess industry trends.  Maintains records and compiles statistical reports concerning personnel-related data such as hires, transfers, performance appraisals, and absenteeism rates.  Analyzes statistical data and reports to identify and determine causes of personnel problems and develop recommendations for improvement of organization's personnel policies and  Represents organization at personnel-related hearings and investigations.  Contracts with vendors to provide employee services, such as canteen, transportation, or relocation service.  Investigates industrial accidents and prepares reports for insurance carrier.

Preliminary Crosswalk shows this DOT Occupation is 1 of 6 DOT's under this O\*NET Code.

**Please note:** O\*NET Codes are under development and subject to change.

CLICNY 0947

# OCCUPATIONAL RQUIREMENTS

**Title:** Manager, Employment
**Industry:** Professional and Kindred

**DOT Code:** 166.167-030

**Specific Vocational Preparation:** Level 8 (4 to 10 years)

**General Educational Development:** Reasoning Level 5
Mathematics Level 4
Language Level 5

---

**Strength:** Sedentary

Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Quiet |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Frequently | Atmospheric Conditions | Never |
| Handling | Frequently | Proximity to Moving Mechanical Parts | Never |
| Fingering | Frequently | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

---

| Work Situations: | Directing, Controlling, or Planning Activities of Others | Data: | Coordinating |
|---|---|---|---|
| | Dealing with People (Beyond receiving work instructions) | People: | Speaking-Signaling |
| | Making Judgments and Decisions | Things: | Handling |

---

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 1+ (56 – 66%) |
| Verbal Aptitude | 2 (67-89%) | 1- (34 – 44%) |
| Numerical Aptitude | 3 (34-66%) | 3 (46 – 54%) |
| Spatial Aptitude | 5 (Below 11%) | Not Included |
| Form Perception | 5 (Below 11%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 1 (46 – 54%) |
| Motor Coordination | 5 (Below 11%) | Not Included |
| Finger Dexterity | 5 (Below 11%) | Not Included |
| Manual Dexterity | 5 (Below 11%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

CLICNY 0

# OCCUPATIONAL DESCRIPTION



187.167-098 Manager, Employment Agency
O*NET SOC Code: 41-1012.00 First-Line Supervisors/Managers of Non-Retail Sales Workers

Manages employment services and business operations of private employment agency. Directs hiring, training, and evaluation of employees. Analyzes placement reports to determine effectiveness of EMPLOYMENT INTERVIEWERS (profess. & kin.). Participates in development and utilization of job development methods to promote business for agency. Enforces, through subordinate staff, agency policies, procedures, safety rules, and regulations. Approves or disapproves requests for purchase of new equipment and supplies. Ensures maintenance and repair of facilities and equipment. Prepares budget requests. Investigates and resolves customer complaints. May negotiate leases and order equipment and supplies for agency.

DLU: 1977

O*NET SOC Title: First-Line Supervisors/Managers of Non-Retail Sales Workers
O*NET SOC Code: 41-1012.00

Directly supervise and coordinate activities of sales workers other than retail sales workers. May perform duties, such as budgeting, accounting, and personnel work, in addition to supervisory duties.

Directs and supervises employees engaged in sales, inventory-taking, reconciling cash receipts, or performing specific service such as pumping gasoline for customers. Plans and prepares work schedules and assigns employees to specific duties. Hires, trains, and evaluates personnel in sales or marketing establishment. Coordinates sales promotion activities and prepares merchandise displays and advertising copy. Listens to and resolves customer complaints regarding service, product, or personnel. Examines merchandise to ensure that it is correctly priced, displayed or functions as advertised. Inventories stock and reorders when inventories drop to specified level. Examines products purchased for resale or received for storage to determine condition of product or item. Prepares rental or lease agreement, specifying charges and payment procedures, for use of machinery, tools, or other such items. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Keeps records pertaining to purchases, sales, and requisitions. Assists sales staff in completing complicated and difficult sales. Prepares sales and inventory reports for management and budget departments. Confers with company officials to develop methods and procedures to increase sales, expand markets, and promote business.

Preliminary Crosswalk shows this DOT Occupation is 1 of 17 DOT's under this O*NET Code.

Please note: O*NET Codes are under development and subject to change.

CLICNY 0949

# OCCUPATIONAL REQUIREMENTS 

**Title:** Manager, Employment Agency          **DOT Code:** 187.167-098
**Industry:** Professional and Kindred

**Specific Vocational Preparation:** Level 7 (2 to 4 years)

**General Educational Development:** Reasoning Level 4
Mathematics Level 3
Language Level 4

**Strength:** Sedentary          Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Occasionally | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Never | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

| Work Situations: | Directing, Controlling, or Planning Activities of Others | **Data:** Coordinating |
|---|---|---|
| | Making Judgments and Decisions | **People:** Speaking-Signaling |
| | Performing a Variety of Duties | **Things:** Handling |

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3 (46 - 54%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3- (34 - 44%) |
| Spatial Aptitude | 4 (11-33%) | Not Included |
| Form Perception | 4 (11-33%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

CLICNY 0950

# OCCUPATIONAL DESCRIPTION

**189.167-022 Manager, Department**
**O*NET SOC Code: 11-1011.02 Private Sector Executives**

Alternate Titles: Department Head; Superintendent

  Directs and coordinates, through subordinate supervisors, department activities in commercial, industrial, or service establishment: Reviews and analyzes reports, records, and directives, and confers with supervisors to obtain data required for planning department activities, such as new commitments, status of work in progress, and problems encountered. Assigns, or delegates responsibility for, specified work or functional activities and disseminates policy to supervisors. Gives work directions, resolves problems, prepares schedules, and sets deadlines to ensure timely completion of work. Coordinates activities of department with related activities of other departments to ensure efficiency and economy. Monitors and analyzes costs and prepares budget, using computer. Prepares reports and records on department activities for management, using computer. Evaluates current procedures and practices for accomplishing department objectives to develop and implement improved procedures and practices. May initiate or authorize employee hire, promotion, discharge, or transfer. Workers are designated according to functions, activities, or type of department managed.

DLU: 1989

---

**O*NET SOC Title: Private Sector Executives**
**O*NET SOC Code: 11-1011.02**

Determine and formulate policies and business strategies and provide overall direction of private sector organizations. Plan, direct, and coordinate operational activities at the highest level of management with the help of subordinate managers.

  Directs, plans, and implements policies and objectives of organization or business in accordance with charter and board of directors. Directs activities of organization to plan procedures, establish responsibilities, and coordinate functions among departments and sites. Analyzes operations to evaluate performance of company and staff and to determine areas of cost reduction and program improvement. Confers with board members, organization officials, and staff members to establish policies and formulate plans. Reviews financial statements and sales and activity reports to ensure that organization's objectives are achieved. Assigns or delegates responsibilities to subordinates. Directs and coordinates activities of business involved with buying and selling investment products and financial services. Establishes internal control procedures. Presides over or serves on board of directors, management committees, or other governing boards. Directs inservice training of staff. Administers program for selection of sites, construction of buildings, and provision of equipment and supplies. Screens, selects, hires, transfers, and discharges employees. Promotes objectives of institution or business before associations, public, government agencies, or community groups. Negotiates or approves contracts with suppliers and distributors, and with maintenance, janitorial, and security providers. Prepares reports and budgets. Directs non-merchandising departments of business, such as advertising, purchasing, credit, and accounting. Directs and coordinates activities of business or department concerned with production, pricing, sales, and/or distribution of products. Directs and coordinates organization's financial and budget activities to fund operations, maximize investments, and increase efficiency.

Preliminary Crosswalk shows this DOT Occupation is 1 of 13 DOTs under this O*NET Code.

**Please note:** O*NET Codes are under development and subject to change.

---

CLICNY 0951

# OCCUPATIONAL REQUIREMENTS 

**Title:** Manager, Department
**Industry:** Any Industry                                    **DOT Code:** 189.167-022

**Specific Vocational Preparation:**  Level 7 (2 to 4 years)

**General Educational Development:**  Reasoning Level 5
Mathematics Level 4
Language Level 4

---

**Strength:** Sedentary                  Lifting, Carrying, Pushing, Pulling 10 Lbs. occasionally. Mostly sitting, may involve standing or walking for brief periods of time.

| Physical Demands: | | Environmental Conditions: | |
|---|---|---|---|
| Climbing | Never | Noise Intensity Level | Moderate |
| Balancing | Never | Exposure to Weather | Never |
| Stooping | Never | Extreme Cold | Never |
| Kneeling | Never | Extreme Heat | Never |
| Crouching | Never | Wet and/or Humid | Never |
| Crawling | Never | Vibration | Never |
| Reaching | Occasionally | Atmospheric Conditions | Never |
| Handling | Occasionally | Proximity to Moving Mechanical Parts | Never |
| Fingering | Occasionally | Exposure to Electrical Shock | Never |
| Feeling | Never | Working in High Exposed Places | Never |
| Talking | Frequently | Exposure to Radiation | Never |
| Hearing | Frequently | Working with Explosives | Never |
| Tasting/Smelling | Never | Exposure to Toxic or Caustic Chemicals | Never |
| Near Acuity | Frequently | Other Environmental Conditions | Never |
| Far Acuity | Never | | |
| Depth Perception | Never | | |
| Accommodation | Occasionally | | |
| Color Vision | Never | | |
| Field of Vision | Never | | |

---

| Work Situations: | Directing, Controlling, or Planning Activities of Others | Data: | Coordinating |
|---|---|---|---|
| | Dealing with People (Beyond receiving work instructions) | People: | Speaking-Signaling |
| | Making Judgments and Decisions | Things: | Handling |

---

| Aptitudes: | DOT | OAP |
|---|---|---|
| General Learning Ability | 2 (67-89%) | 3+ (56 - 66%) |
| Verbal Aptitude | 2 (67-89%) | 3- (34 - 44%) |
| Numerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Spatial Aptitude | 3 (34-66%) | Not Included |
| Form Perception | 3 (34-66%) | Not Included |
| Clerical Aptitude | 3 (34-66%) | 3 (46 - 54%) |
| Motor Coordination | 4 (11-33%) | Not Included |
| Finger Dexterity | 4 (11-33%) | Not Included |
| Manual Dexterity | 4 (11-33%) | Not Included |
| Eye-Hand-Foot Coordination | 5 (Below 11%) | |
| Color Discrimination | 5 (Below 11%) | |

---

CLICNY 0952

## Transferable Skills Analysis Referral Form
## Labor Market Survey Referral Form

Claimant Name: Steven Alfano                Date of Referral: December 2, 2004

Policyholder: Weill Medical College         Policy #: NYK 1972

CM: Mark Sodders                            Ext.5693        RUSH/TL Signature:_____

List primary diagnoses: Spinal Stenosis

BME: $5,933.32/monthly

INDEXING REQUIRED?:    (circle one)        **YES**
If so, provide calculation: $6,233.21

CONTRACT STIPULATES: (circle one)          80%***
If other, please specify: *** Contract states unable to perform all the material duties of his regular
occupation; or he is earning less than 80% of his Indexed Basic Earnings.

WAGE REQUIREMENT:      $4986.57/monthly

1. Why are you referring claim for a TSA? (circle one)    **OTHER**
      Any Occ Date: n/a

      OTHER-specify reason here: continuing TD


2. LMS will be conducted if necessary. **Please provide:**
      City/State/Zip code for search: Bronx, NY 10463
3. For work history information, TAB the following documents for use in performing TSA:

|   | Document | Completed |
|---|---|---|
| * | DQ | (Y) |
| * | Job Description | (Y) |
| * | Resume/Job Application | (N) |
|   | (From ER if possible) | |


4. For Limitations and Restrictions, TAB the following:

|   | Document | Completed |
|---|---|---|
| * | Current Medical (< 6 mos. old) | (Y) |
|   | examples: PAA, Psych abilities form, | |
|   | IME, FCE or AMD/NCM documentation | |
|   | of L/Rs. | |


5. State any other pertinent information or other specific issues which need to be addressed by the TSA:

Need    DOT's    to    send    to    AP    for    review    and    comment.


Return this form and file to:          Holly Jule, MS, CRC
                                       Rehabilitation Specialist
                                       Ext. 1019

CLICNY 0953



**Sodders, Mark D    212**

| | |
|---|---|
| **From:** | Jenkins, Rosemary    212 |
| **Sent:** | Wednesday, December 01, 2004 5:11 PM |
| **To:** | Sodders, Mark D    212 |
| **Subject:** | RE: Exp TSA--Steven Alfano |

Mark,

For exp TSA, the results are not placed in a file and are to be used only for rtw planning only. Should you want DOT's for AP comment, you can request a formal TSA from Holly Jule.

Rosemary

---Original Message---

| | |
|---|---|
| **From:** | Sodders, Mark D    212 |
| **Sent:** | Wednesday, December 01, 2004 11:54 AM |
| **To:** | Jenkins, Rosemary    212 |
| **Subject:** | Exp TSA--Steven Alfano |

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

Rosemary:

Do you still have the exp TSA results for Steven Alfano?

His doctor is certifying disability, and does state Class 5 Pf, but his PAA was utilized for the 11/09/04 exp TSA.

Can I have a print out of the DOT's so that I may send to his doctor for comment?

???

Mark Sodders
Case Manager
CIGNA Disability Management Solutions
972.907.5693 Network: 933.5693
800.352.0611 Ext. 5693
Fax: 860.731.2907
mark.sodders@CIGNA.com

CONFIDENTIALITY NOTICE: If you have received this communication in error, please immediately notify the sender at the address shown. This transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete or destroy from your files if you are not the intended recipient. Thank you for your compliance.

Confidential, unpublished property of CIGNA. Do not duplicate or distribute. Use and distribution limited solely to authorized personnel. © Copyright 2002 by CIGNA

1

CLICNY 0957

NOV. 30. 2004  1:29PM      NYPH                              NO. 279    P. 2

Mark Sodders
Case Manager
CIGNA Disability Management Solutions



**CIGNA Group Insurance**
Life · Accident · Disability

November 9, 2004

Routing 312E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9782
Telephone 800.352.0611 x5693
Facsimile 862.731.2907
Mark.Sodders@Cigna.com

Steven Alfano
3800 Waldo Avenue, 13-G
Bronx, NY 10463

Re:   Claimant:          Steven Alfano
      Policyholder:       Weill Medical College
      Policy Number:      NYK 1972
      CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

This letter is in reference to the captioned Long Term Disability claim.

A review of our file reveals the need for updated information. One of the provisions of your contract specifies that you may not be considered totally disabled for any period if you are not under the care of a licensed physician. Please complete the following information and return to this office by November 30, 2004:

- Supplementary Claim Disability Benefits form.

You may fax this information back, attention to the undersigned, to 860-731-2907. Or, a return envelope is enclosed for your convenience.

Your assistance in providing this information is appreciated and will aid in the prompt handling of your claim.

Sincerely,

Mark Sodders

"CIGNA" and "CIGNA Group Insurance" are registered service marks and prior to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

NOV. 30. 2004  3:29PM    NYPU                                    NO. 279   P. 4

**5. PHYSICAL IMPAIRMENT** (* as defined in Federal Dictionary of Occupational Titles)

- ☒ Class 1 - No limitation of functional capacity; capable of heavy work*  No restrictions (0 - 10%)
- ☒ Class 2 - Medium manual activity*  (15 - 30%)
- ☐ Class 3 - Slight limitation of functional capacity; capable of light work*  (35 - 55%)
- ☐ Class 4 - Moderate limitation of functional capacity; capable of clerical/administrative (sedentary*) activity (60 - 70%)
- ☒ Class 5 - Severe limitations of functional capacity; incapable of minimal (sedentary*) activity (75 - 100%)
- ☐ Remarks: _all  members  of  #Y  are  swap_

**6. MENTAL/NERVOUS IMPAIRMENT** (if applicable)

(a) Please define "stress" as it applies to the claimant.

- ☐ Class 1 - Patient is able to function under stress and engage in interpersonal relations (no limitations)
- ☐ Class 2 - Patient is able to function in most stress situations and engage in most interpersonal relations (slight limitation)
- ☐ Class 3 - Patient is able to engage in only limited stress situations and engage in only limited interpersonal relations (moderate limitations)
- ☐ Class 4 - Patient is unable to engage in stress situations or engage in interpersonal relations (marked limitations)
- ☐ Class 5 - Patient has significant loss of psychological, physiological, personal and social adjustment (severe limitations)
- ☐ Remarks:

**7. EXTENT OF DISABILITY**                Patient's Regular Occupation        Any Occupation

When was patient able to go to work?        Mo.____ Day____ Yr.____   Mo.____ Day____ Yr.____

**8. REHABILITATION**

(a) Is patient a suitable candidate for further rehabilitation services?   ☐ YES ☒ NO

(b) Can present job be modified to allow for handling with impairment?   ☐ YES ☒ NO

(c) When could this employment   ___/___/___        ___/___/___
    commence?                    Mo. Day Yr.         Mo. Day Yr.

    PATIENT'S JOB              ANY OTHER WORK
    Full-time ☐               Full-time ☐
    Part-time ☐               Part-time ☐

(d) Would vocational counseling and/or retraining be recommended?   ☐ YES ☐ NO

**9. REMARKS**

DATE _11/30/04_  PRINT NAME _Kenti Rowl_  SIGNATURE OF ATTENDING PHYSICIAN  DEGREE _M.D._  TELEPHONE _212 746 2727_

STREET ADDRESS _505 E 70th_  CITY OR TOWN _New York_  STATE (OR PROVINCE) _NY_  ZIP CODE _10021_

Page 3 of 5

CLICNY 0961

Alf.NOV. 30. 2004M 3:30PM41-4NYR;                            NO. 279    P. 6

09/14/04 107486 7701200    CERVICAL SPINE MINIMUM 4 VIEWS           Final
----------------------------------------------------------------------
Ordered:09/14/2004        Location: COMPRE CARE-HT4
Order time: 0929                    Name: ALFANO, STEVEN
                                    MRN:  (00000)002284147
RADIOLOGY REPORT.                   Age: 46 YRS Sex: M DOB:01/14/58
                              Admitting M.D.:ROACH, KEITH W DR. MD
EXAM DATE:    Accession #:          Exam Ordered:      Order M.D.
09/14/04      01-RA-04-107486       CSP 4 V    ROACH, KEITH W DR. MD
          FINDINGS:
Clinical History: Neck pain. Lumbar stenosis.
Technique: Frontal lateral and oblique views of the cervical spine. Five
views.
Comparison: None
Findings: Degenerative disk disease with disk space narrowing noted at
C6-C7. Uncal-vertebral joint osteophyte narrows the neural foramen at
this level greater on the left than the right. Remainder of examination
is normal. Alignment is normal and there is no evidence of fracture or
dislocation. Regional soft tissues and osseous structures are normal.
          IMPRESSION:
Degenerative disk disease with disk space narrowing and
osteophyte formation at C6-C7. Left foraminal narrowing secondary to
uncal vertebral joint osteophyte formation.
DIAGNOSIS:
01RA04107486
  Study interpreted and report approved by: Robert D. Zimmerman M.D.
  Electronically signed Diagnostic Imaging Report
  14SEP200/ 14SEP2004/ RZ
  Exam start / Sign-off / Transcription initials.

CLICNY 0963

OCT-15-2004 14:47 From:CIGNA DALLAS          9729521205          To:1212 746 8127          P.2

# PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning. **Please substantiate your findings with medical documentation.** **(Failure to provide the requested reports/data may result in delay in claim determinations).**

Patient Name ___Sten p/luo___  Date of Birth _____

Diagnosis(es)/ICD-9 Code ___ol-.l streor'___

*Throughout* an 8-hour workday, the patient can tolerate, *with positional changes and meal breaks*, the following activities for the specified durations:

| | | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|---|
| Sitting: | | | | | ✓ | ✓ |
| Standing: | | | | | ✓ | ✓ |
| Walking: | | | | | ✓ | ✓ |
| Reaching: | Overhead | ✓ | | | | |
| | Desk Level | ✓ | | | | |
| | Below Waist | ✓ | | | | |
| Fine Manipulation: | Right: | ✓ | | | | |
| | Left: | ✓ | | | | |
| Simple Grasp: | Right: | ✓ | | | | |
| | Left: | ✓ | | | | |
| Firm Grasp: | Right: | ✓ | | | | |
| | Left: | ✓ | | | | |
| Lifting: | 10 lbs. | | | | ✓ | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs. | | | | ✓ | |
| | 100+ lbs. | | | | | |
| Carrying: | 10 lbs. | | | | ✓ | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs | | | | ✓ | |
| | 100+ lbs. | | | | | |

CLICNY 0968

OCT-15-2004 14:47 From:CIGNA DALLAS        9729521205        To:1212 746 9127        P.3

| | Not applicable to diagnosix(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Pushing: (Max. Wt.: _10 )_ ) | | | | L | |
| Pulling: (Max. Wt.: _10 )_ ) | | | | L | |
| Climbing:    Regular Stairs | | | | ✓ | |
| Regular Ladders | | | | ✓ | |
| Balancing: | | | | ✓ | |
| Stooping: | | | | | |
| Kneeling: | | | | | |
| Crouching: | | | | | |
| Crawling: | | | | • | |
| Seeing: | ✓ | | | | |
| Hearing: | ✓ | | | | |
| Smell/Taste: | ✓ | | | | |
| Environmental Conditions: | | | | | |
| Exposure to extremes in heat | ✓ | | | | |
| Exposure to extremes in cold | ✓ | | | | |
| Exposure to wet / humid conditions | ✓ | | | | |
| Exposure to vibration | ✓ | | | | |
| Exposure to odors / fumes / particles | ✓ | | | | |
| Can work around machinery | | | | • | |
| Ability to work extended shifts/ overtime: | | | | | |
| Use lower extremities for foot controls: | • | | | ✓ | |

Please use this space to elaborate on ANY of the above categories:

Name: _Kerl Rout_    Signature: _____
Medical Specialty: _TOS & ort_    Date: _10/15/04_
Address: _New York NY_    Phone: _212 76 2375_
Federal ID tax number: _____

Please include any objective test or narrative if available.
Thank you for your time.
Please return this form in the enclosed addressed envelope.

CLICNY 0969

OCT-15-2004 14:47 From:CIGNA DALLAS          9729521285          To:1212 746 8127          P.4

## DISCLOSURE AUTHORIZATION

Claimant's Name (Please Print):     STEVEN   ALFANO

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, pharmacy, employee assistance plan, insurance company, health maintenance organization or similar entity to provide access to or to give the company named below (Company) or the Plan Administrator or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: cause, treatment, diagnoses, prognoses, consultations, examinations, tests, prescriptions, or advice regarding my physical or mental condition, or other information concerning me. This may also include, but is not limited to, information concerning: mental illness, psychiatric, drug or alcohol use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome), as well as communicable diseases and genetic testing. If my plan administrator sponsors both a disability plan underwritten or administered by Company and a medical plan of any type written by another CIGNA company, the information and records described in this form may also be given to any CIGNA Company which administers such medical or disability benefits for the purpose of evaluating any claim that may be submitted by me or on my behalf for benefits, for evaluating return to employment opportunities, and for administering any feature described in the plan. This information may also be extracted for use in audits or for statistical purposes.

I AUTHORIZE: any financial institution, accountant, tax preparer, insurance company or reinsurer, consumer reporting agency, insurance support organization, Claimant's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or the Plan Administrator or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim files and claim history, work history and work related activities.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used to determine eligibility for claim benefits, any amounts payable, return to employment opportunities, and to administer any other feature described in the plan with respect to the Claimant. This authorization shall remain valid and apply to all records, information and events that occur over the duration of the claim, but not to exceed 24 months. A photocopy of this form is as valid as the original and or my authorized representative may request one. I or my representative may revoke this authorization at any time as it applies to future disclosures by writing the Company. The information obtained will not be disclosed to anyone EXCEPT: a)reinsuring companies; b)the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c)fraud or overinsurance detection bureaus; d)anyone performing business, medical or legal functions with respect to the claim or the plan, including any entity providing assistance to the Company under its Social Security Assistance Program and employers involved in return to employment discussions; e)for audit or statistical purposes; f)as may be required or permitted by law; g) as I may further authorize. A valid authorization or court order for information does not waive other privacy rights.

If my medical information contains information regarding drug or alcohol abuse. I understand that my records may be protected under federal law (42 CFR Part 2) and some state laws. To the extent permitted under law. I can ask the party that disclosed information to the Company to permit me to inspect and copy the information it disclosed. I understand that I can refuse to sign this disclosure authorization; however, if I do so, Company may deny my claim for benefits pursuant to the plan. The use and further disclosure of information disclosed hereunder may not be subject to the Health Insurance Portability and Accountability Act (HIPAA).

Signature of Claimant or
Claimant's Authorized Representative:                                   Date: 7/20/04

Relationship.
If other than Claimant                    Claimant's Social Security Number: 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

Company Name:

### PROHIBITION ON RE-DISCLOSURE

If the medical information contains information regarding drug or alcohol abuse, it may be protected under federal law. Federal regulations (42 CFR Part 2) prohibit any person or entity who receives such protected information from the Company from making any further disclosure of it without the specific written consent of the person to whom it pertains, or as otherwise permitted by such regulation. A general authorization for the release of medical or other information is not sufficient for this purpose. The federal rules restrict any use of such protected information to criminally investigate or prosecute any alcohol or drug abuse patient.

CLICNY 0970

OCT. 20. 2004  1:00PM  NYPH
-15-2004 14:46 FROM:CIGNA  LRS    9725521205    T 212 746 NO. 915    P. 1

## *Facsimile Transmission Cover Sheet*

Also
Mailing
Original!

CIGNA Group Insurance
Life · Accident · Disability

## THIRD REQUEST

| Transmit to FAX number 212-746-8127 | Date October 15, 2004 | Time 2:00 p.m. | Total number of pages (including this sheet) |
|---|---|---|---|

| Name Dr. Roach | Name Mark Sodders |
|---|---|
| Company | Department CIGNA Disability Management Solutions |
| Phone 212-746-2879 | Phone 1.800.352.0611 Extension 5693 |
| Address 505 E. 70th St.  Ht. 450 New York, NY. 10021 | Address 12225 Greenville Avenue Suite 1000, LB 179 Dallas Texas 75243 |

Comments

| RE: | Steven Alfano |
|---|---|
| DOB: | 1/14/58 |
| Policyholder: | Weill Medical College  NYK 1972 |
| Underwriting Company: | Life Insurance Company of North America |

In order to evaluate your patient's eligibility for Long Term Disability benefits (e.g. lost wage income) we are in need of the following information:

♦ **A completed Physical Abilities Assessment form (attached).**

We ask that you kindly respond by **10/29/04** to avoid any delay in your patient's claim for lost wages.

Naturally, we will consider a reasonable charge for this medical information. Please include your tax identification number. If this request requires a pre-payment, please call me at the phone number above or fax (860.731.2907) a fee request to my attention.

Sincerely,

Mark Sodders

*CONFIDENTIALITY NOTICE: If you have received this facsimile in error, please immediately notify the sender by telephone at the number above. The documents accompanying this facsimile transmission contain confidential information. This information is intended only for the use of the individual(s) or entity named above. Thank you for your compliance.*

Life Insurance Company of North America
Connecticut General Life Insurance Company
CIGNA Life Insurance Company of New York

[ ] Acknowledgment Requested                     To Fax a reply, dial: 860.731.2907

CLICNY 0971

OCT-OCT. 20. 2004₁ 1:30?M CIGNA NYPH AS          9725581005          T₁ 1212 746 NO. 916     P. 2₂

## PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning. Please substantiate your findings with medical documentation. (Failure to provide the requested reports/data may result in delay in claim determinations).

Patient Name _____ Stron Alfaro _____     Date of Birth _____
Diagnosis(es)/ICD-9 Code _____

*Throughout an 8-hour workday, the patient can tolerate, with positional changes and meal breaks, the following activities for the specified durations:*

| | Not applicable to diagnosis(es) | Continuously (67-100%) (6.5 + hrs) | Frequently (34-66%) (2.5 - 6.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| **Sitting:** | | | | ✓ | ✓ |
| **Standing:** | | | | ✓ | ✓ |
| **Walking:** | | | | ✓ | ✓ |
| **Reaching:** Overhead | ✓ | | | | |
| Desk Level | ✓ | | | | |
| Below Waist | ✓ | | | | |
| **Fine Manipulation: Right:** | ✓ | | | | |
| Left: | ✓ | | | | |
| **Simple Grasp: Right:** | ✓ | | | | |
| Left: | ✓ | | | | |
| **Firm Grasp: Right:** | ✓ | | | | |
| Left: | ✓ | | | | |
| **Lifting:** 10 lbs. | | | | ✓ | |
| 11-20 lbs. | | | | | |
| 21-50 lbs. | | | | | |
| 51-100 lbs. | | | | ✓ | |
| 100+ lbs. | | | | | |
| **Carrying:** 10 lbs. | | | | ✓ | |
| 11-20 lbs. | | | | | |
| 21-50 lbs. | | | | | |
| 51-100 lbs | | | | ✓ | |
| 100+ lbs. | | | | | |

CLICNY 0975

OCT-OCT. 20. 2004 4 1:01PMCIGNANYPH.AG          37295211385          To.1212 746NO. 916    P. 3 3

| | Not applicable to diagnosis(s) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 6.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Pushing:  (Max Wt. _10 1_ ) | | | | ✓ | |
| Pulling:  (Max. Wt. _10 1_ ) | | | | ✓ | |
| Climbing:        Regular Stairs | | | | ✓ | |
|                       Regular Ladders | | | | ✓ | |
| Balancing: | | | | ✓ | |
| Stooping: | | | | | |
| Kneeling: | | | | | |
| Crouching: | | | | ✓ | |
| Crawling: | | | | ● | |
| Seeing: | ✓ | | | | |
| Hearing: | ✓ | | | | |
| Smell/Taste: | ✓ | | | | |
| Environmental Conditions: | | | | | |
|     Exposure to extremes in heat | ✓ | | | | |
|     Exposure to extremes in cold | ✓ | | | | |
|     Exposure to wet / humid conditions | ✓ | | | | |
|     Exposure to vibration | ✓ | | | | |
|     Exposure to odors / fumes / particles | ✓ | | | | |
|     Can work around machinery | ✓ | | | ● | |
| Ability to work extended shifts/ overtime: | | | | | |
| Use lower extremities for foot controls: | | | | ✓ | |

*Please use this space to elaborate on ANY of the above categories:*

Name: _Karl Rome_          Signature: _____
Medical Specialty: _____          Date: _6/9/04_
Address: _New York NY_          Phone: _212 746 2359_
Federal ID tax number: _____

**Please include any objective test or narrative if available.**
**Thank you for your time.**

Please return this form in the enclosed addressed envelope.

CLICNY 0976

## PHYSICAL ABILITY ASSESSMENT

We are evaluating your patient's disability claim in order to determine functional impairment Please check the boxes corresponding to the patient's level of physical functioning. **Please substantiate your findings with medical documentation.  (Failure to provide the requested reports/data may result in delay in claim determinations).**

Patient Name_____ Date of Birth_____

Diagnosis(es)/ICD-9 Code_____

*Throughout* an 8-hour workday, the patient can tolerate, *with positional changes and meal breaks,* the following activities for the specified durations:

| | | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|---|
| **Sitting:** | | | | | | |
| **Standing:** | | | | | | |
| **Walking:** | | | | | | |
| **Reaching:** | Overhead | | | | | |
| | Desk Level | | | | | |
| | Below Waist | | | | | |
| **Fine Manipulation:** | Right: | | | | | |
| | Left: | | | | | |
| **Simple Grasp:** | Right: | | | | | |
| | Left: | | | | | |
| **Firm Grasp:** | Right: | | | | | |
| | Left: | | | | | |
| **Lifting:** | 10 lbs. | | | | | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs. | | | | | |
| | 100+ lbs. | | | | | |
| **Carrying:** | 10 lbs. | | | | | |
| | 11-20 lbs. | | | | | |
| | 21-50 lbs. | | | | | |
| | 51-100 lbs | | | | | |
| | 100+ lbs. | | | | | |

| | Not applicable to diagnosis(es) | Continuously (67-100%) (5.5 + hrs) | Frequently (34-66%) (2.5 - 5.5 hrs) | Occasionally (1-33%) (<2.5 hrs) | Check if supported by objective findings |
|---|---|---|---|---|---|
| Pushing:  (Max. Wt.:_____) | | | | | |
| Pulling:  (Max. Wt.:_____) | | | | | |
| Climbing:      Regular Stairs | | | | | |
|                     Regular Ladders | | | | | |
| Balancing: | | | | | |
| Stooping: | | | | | |
| Kneeling: | | | | | |
| Crouching: | | | | | |
| Crawling: | | | | | |
| Seeing: | | | | | |
| Hearing: | | | | | |
| Smell/Taste: | | | | | |
| Environmental Conditions: | | | | | |
|      Exposure to extremes in heat | | | | | |
|      Exposure to extremes in cold | | | | | |
|      Exposure to wet / humid conditions | | | | | |
|      Exposure to vibration | | | | | |
|      Exposure to odors / fumes / particles | | | | | |
|      Can work around machinery | | | | | |
| Ability to work extended shifts/ overtime: | | | | | |
| Use lower extremities for foot controls: | | | | | |

Please use this space to elaborate on ANY of the above categories:

_____

_____

_____

Name: _____          Signature: _____
Medical Specialty: _____          Date: _____
Address: _____          Phone: _____
Federal ID tax number:_____

**Please include any objective test or narrative if available.**
**Thank you for your time.**

Please return this form in the enclosed addressed envelope.