**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**STEVEN ALFANO,**

                         Plaintiff,

        - against -


**INA LIFE INSURANCE COMPANY OF NEW YORK, LONG TERM DISABILITY INSURANCE PLAN FOR CORNELL UNIVERSITY MEDICAL COLLEGE, WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY RETIREMENT PLAN FOR FACULTY AND EXEMPT EMPLOYEES, CHILDREN'S TUITION SCHOLARSHIP PLAN, CORNELL UNIVERSITY GROUP LIFE INSURANCE PLAN, CORNELL UNIVERSITY MEDICAL COLLEGE HEALTH INSURANCE PLAN and CORNELL UNIVERSITY MEDICAL COLLEGE DENTAL INSURANCE PLAN,**

                         Defendants.

**07 Civ. 9661 (GEL)**

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT**

**LAW OFFICES OF JEFFREY DELOTT**
Attorneys for Plaintiff
366 North Broadway
Suite 410
Jericho, NY  11753
(516) 939-2999

## TABLE OF CONTENTS

Page

Table of Authorities.................................................................................................................... ii

PRELIMINARY STATEMENT ……………………………………………………………..1

STATEMENT OF FACTS……………………………………………………………………...3

ARGUMENT..........................................................................….......................................... 16

I.   STANDARD FOR GRANTING SUMMARY JUDGMENT…..................................................16

II.  CIGNA'S TERMINATION MUST BE REVERSED………...……………………………...18

    A. *Rappa*…………………......................................................................................... 20

    B. Applying *Rappa*……………………………………………………………...24

    C. *Brooking* …………………………………………………………………..…… 29

    D. Applying *Brooking* …………………….…………………………………… 30

    CONCLUSION …………….…......…………………………………...………….….............. 32

## TABLE OF AUTHORITIES

**Cases**

*Alexander v. Winthrop, Stimson LTD Coverage***,** 497 F.Supp.2d 429 (E.D.N.Y. 2007)………..…………17

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1987)………………………………..………………16

*Bd. of Ed., Yonkers School Dist. v. CNA Ins. Co.,* 647 F.Supp. 1495 (S.D.N.Y. 1986)…………..............16

*Brooking v. Hartford Life and Acc. Ins. Co.,* 167 Fed.Appx. 544 (6th Cir. 2006)…………………..3, 29-31

*Burch v. Bowen*, 1987 WL 9193 (S.D.N.Y. Mar 30, 1987)………………………………………………………18

*Connors v. Connecticut General Life Ins. Co.,* 272 F.3d 127 (2d Cir 2001) …………………………19, 23

*Conrad v. Reliance,* 292 F.Supp.2d 233 (D. Mass. 2003)…………………………………….……………29

*Gomez v. Sullivan*, 1989 WL 160559 (E.D.N.Y. Dec 21, 1989)……………………………………....18

*Grady v. Paul Revere Life Ins. Co.***,** 10 F.Supp.2d 100 (D.R.I. 1998 ………………………………………17

*Henar v. First Unum Life Ins. Co.***,** 2002 WL 31098495 (S.D.N.Y. Sep. 19, 2002….................................25

*Hoover v. Provident Life and Acc. Ins. Co.,* 290 F.3d 801 (6th Cir. 2002)……………………………17

*Keppler v. Heckler*, 587 F.Supp. 1319 (S.D.N.Y. 1984) ………………………………………...............18

*Knight v. U.S. Fire Ins.* Co.*,* 804 F.2d 9 (2d Cir. 1986),*cert. denied.,* 480 U.S. 932 (1987)……………...16

*Krizek v. CIGNA,* 2005 WL 928637 (N.D.N.Y. Mar. 22, 2005)…………………………………………19

*Leventhal v. Knapek,* 266 F.3d 64 (2d Cir. 2001)…………………………………………………… 16

*Mazzella v. Secretary of U.S. Dept. of HHS*, 588 F.Supp. 603 (S.D.N.Y. 1984)…………………………..18

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574 (1986)……………………..…..16

*McOsker v. Paul Revere Life, Ins. Co.,* 279 F.3d 586 (8th Cir. 2002) …………………………..………23

*MetLife v. Glenn,* 128 S.Ct. 2343 (2008)…………………………………………………...……..6

*Niles v. American Airlines, Inc.***,** 2008 WL 711630 (10th Cir. Mar 17, 2008)………………………...17

*O'Grady v. Heckler,* 588 F.Supp. 850 (S.D.N.Y.1984)…………………………………………..………18

*Paese v. Hartford Life and Accident Ins. Co,* 2004 WL 764760,
        *vacated in part on other grounds*, 449 F.3d 435 (2d Cir. 2006)……………………………22-23

*Parker v. Sullivan*, 1992 WL 77552 (S.D.N.Y. Apr. 8, 1992) ………………………………………...18

*Plummer v. Hartford Life Ins. Co.,* 2007 WL 43549 (S.D.Ohio Jan. 5, 2007)…………………………17

*Rappa v. Connecticut General Life Ins. Co*., 2007 WL 4373949 (E.D.N.Y. Dec. 11, 2007)……....*passim*

*Soron* v. *Liberty Life Assurance Co. of Boston*, 2005 WL 1173076 (N.D.N.Y. May 2, 2005)……...........24

*Troy v. Unum Life Ins. Co. of America***,** 2006 WL 846355 (S.D.N.Y. Mar 31, 2006) ……………..……..25

*Troupe v. Heckler*, 618 F.Supp. 248 (S.D.N.Y. 1985) …………………………………………………18

*Ubides v. Secretary of Dept. of HHS*, 1986 WL 978 (S.D.N.Y. Jan 15, 1986)…………………………19

*Visser v. Heckler***,** 1986 WL 2205  (S.D.N.Y. Feb 10, 1986) ……………………………………..………18

*Williams Dental Co., Inc. v. Air Exp. Intern*., 824 F.Supp. 435 (S.D.N.Y. 1993),
        *aff'd* 17 F.3d 392 (2d Cir. 1993)……………………………………………………...…..16

*Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 167 (2d Cir. 2001) …………………………………2-3


**Rules**

Rule 56 of the Federal Rules of Civil Procedure…………………………………………………..1, 2, 11


**Other**

Dictionary of Occupational Titles ("DOT") ………………………………………………………*passim*

Plaintiff, Steven Alfano, by his attorneys, Law Offices of Jeffrey Delott, submits this Memorandum of Law in Support of his Motion for Summary Judgment.

## PRELIMINARY STATEMENT

Plaintiff commenced this action because CIGNA, the claims administrator of Plaintiff's Long Term Disability ("LTD") Plan (the "Plan"), wrongfully terminated his disability benefits under the Plan. CIGNA has refused to restore Plaintiff's benefits even though the medical and vocational evidence completely supports his claim that he has remained disabled.

Medha Bharadway is the CIGNA case manager who approved Plaintiff's LTD benefits on January 14, 2003, concluding that the medical evidence supported Plaintiff's inability to perform his sedentary occupation as a Wage and Salary Manager (105).[1] On December 7, 2006, Ms. Bharadway reached the exact opposition conclusion in issuing CIGNA's final decision terminating Plaintiff's LTD benefits, asserting Plaintiff could do his sedentary work as a Wage and Salary Manager (630; Tr. p. 88).[2] The only records Ms. Bharadway could identify that supposedly showed Plaintiff's condition had improved so that he could resume working as a Wage and Salary Manager was a Functional Capacity Examination ("FCE") by a physical therapist and peer review by a Dr. Weiss that relied on the FCE (Tr. pp. 89, 98-99).

When asked what data in the FCE showed that Plaintiff could do sedentary work, Ms. Bharadway said, "I don't know." (Tr. 63). Ms. Bharadwaj testified that in order to determine if a person was able to do sedentary work, she had to compare the physical demands for sedentary

---

[1] Numbers in parentheses refer to the bates stamp number on the claim file documents that CIGNA produced, copies of which are attached to Plaintiff's Rule 56.1 Statement.

[2] "Tr." refers to the pages from the deposition transcript of Medha Bharadwaj, copies of which are attached to Plaintiff's Rule 56.1 Statement.

work taken from the Dictionary of Occupational Titles ("DOT") with the medical data (Tr. 57-58).  However, Ms. Bharadway testified that although she has reviewed thousands of disability claims for CIGNA for over a decade she does not know what the physical demands are of sedentary work (Tr. 35-36, 41-44, 46-50, 57-59).  <u>Ms. Bharadwaj admitted that if the DOT required the ability to sit for between 2.5 and 5.5 hours during an 8 hour work day, then the FCE would not support Plaintiff's ability to do sedentary work because the FCE revealed that Plaintiff could only sit between 0 and 2.5 hours a day (Tr. 55-56).  Ms. Bharadwaj further admitted that if the DOT required sitting for more than 5.5 hours a day for sedentary work, then the FCE would not support Plaintiff's ability to do sedentary work (Tr. 56).  As detailed below, the DOT requires six (6) hours of sitting to do sedentary work.</u>

The only other document that Ms. Bharadwaj said showed Plaintiff's condition had improved was the Weiss peer review (Tr. 89, 97-99).  However, the only document that the Weiss peer review was able to identify as supporting Plaintiff's ability to do sedentary work was the FCE (632).  To make matters even worse, Ms. Bharadway testified that she could not tell what records Dr. Weiss believed supported Plaintiff's ability to do sedentary work (Tr. 77).

Thus, the only two documents that Ms. Bharadway identified as supporting her decision, CIGNA's final decision, to terminate Plaintiff's LTD benefits on the grounds that his condition had improved so he could resume his sedentary work were the FCE and the Weiss peer review, which depended entirely on the FCE.  However, Ms. Bharadway admitted that she could not identify a single fact from the 24 pages of FCE test data that showed Plaintiff could do sedentary work (Tr. 52, 53, 64-70).  CIGNA's own admission that the FCE fails to support the termination of Plaintiff's LTD benefits requires granting Plaintiff's summary judgment motion.

2

By letter dated July 10, 2008, CIGNA conceded that the applicable standard of review in this case is *de novo*.  "*De novo* review is review without deference."  *Zervos v. Verizon New York, Inc.*, 252 F.3d 163, 167 (2d Cir. 2001).  However, even if the arbitrary and capricious standard had applied, *Rappa v. Connecticut General Life Ins. Co.*, 2007 WL 4373949 (E.D.N.Y. Dec. 11, 2007) and *Brooking v. Hartford Life and Acc. Ins. Co.*, 167 Fed.Appx. 544, 2006 WL 357881 (6th Cir. 2006), are directly on point, and each reversed the termination of LTD benefits. If CIGNA's decision could not withstand scrutiny under deferential review in *Rappa*, its decision here certainly cannot be sustained under *de novo* review.  Regardless of the standard of review, CIGNA cannot identify any evidence that shows Plaintiff could do sedentary work.

## STATEMENT OF FACTS

Plaintiff was hired to work as a Wage and Salary Manager (104, 527, 529-531, 668, 879). The physical requirements provided by the Employer's job description include: "Most work performed sitting at desk," and "Must be able to sit for extended periods." (479).  CIGNA uses the definitions from the DOT to determine the physical demands of sedentary work (Tr. 41-42). According to CIGNA, Plaintiff's occupation is sedentary (104, 668, 879).

Plaintiff began treating with Dr. Michael Alexiades, an orthopedic surgeon, on May 15, 1996, after experiencing back pain and left leg weakness after a car accident (350).  Plaintiff's medical condition progressively worsened, and he finally stopped working on June 5, 2000, after Dr. Alexiades concluded Plaintiff was "unable at this point to work" (116, 515, 527).  A few days later, a lumbar MRI revealed that Plaintiff had moderate to severe spondylosis and spinal stenosis at the L5-S1 level, with mild impingement of the left L5 nerve root (283).  On July 20,

2000, an EMG indicated Plaintiff had either an L5-S1 radiculopathy or polyneuropathy (284, 485-489).

Because Plaintiff continued to have severe back pain and leg numbness despite having received two epidural injections, Dr. Alexiades referred Plaintiff to Dr. Sean McCance, a spine specialist (116).  Dr. McCance diagnosed Plaintiff with discogenic back pain and L5-S1 radiculopathy from impingement of the L5 nerve root, and recommended surgery because of his leg weakness (454-455).  Plaintiff saw Dr. Robert Snow, a neurosurgeon, for a second opinion, and he also diagnosed Plaintiff with L5-S1 radiculopathy secondary to lumbar stenosis, and recommended a laminectomy and possible discectomy (492).  Because Plaintiff wanted to see if there were any alternatives to surgery, he saw Dr. James Farmer, orthopedic spine specialist, for yet another opinion (292-293).  Dr. Farmer diagnosed Plaintiff with degenerative disc disease at the L5-S1 level and prescribed physical therapy (293).  When physical therapy failed, Dr. Farmer also diagnosed Plaintiff with radicular symptoms due to L5 nerve root compression (294).

Plaintiff filed an application for LTD benefits with CIGNA on December 8, 2000 (513, Answer ¶ 46), which required Plaintiff's doctors to complete CIGNA's Physical Ability Assessment ("PAA") form (497-498, 1006-1007, Answer ¶ 47).  The PAA uses the DOT terms "continuously," "frequently," and "occasionally," which correspond to 67-100%, 34-66% and 1-33% respectively (444-445, Answer ¶ 47).  The PAA further clarified that continuously meant 5.5+ hours, frequently meant 2.5 to 5.5 hours, and occasionally meant less than 2.5 hours, in an 8 hour day (444-445, Answer ¶ 47).

4

According to Dr. Snow's PAA, Plaintiff was limited to sitting only "occasionally," *i.e.,* less than 2.5 hours in an 8 hour day (493), while the PAA of Dr. Stephen Scelsa, Plaintiff's neurologist, limited Plaintiff to sitting "frequently," *i.e.*, only between 2.5 and 5.5 hours in an 8 hour day (483). Nonetheless, on February 12, 2001, CIGNA denied Plaintiff's LTD claim on the grounds that Plaintiff's back problem should not stop him from doing his occupation which fell "within the sedentary physical demand level as outlined by the U.S. Department of Labor's Dictionary of Occupational Titles" (379, 483, 493, Answer ¶ 55).

Plaintiff had also developed shoulder problems. An October 12, 2001 MRI of Plaintiff's right shoulder revealed tendonosis, hypertrophic changes, bursitis, and a labral tear (132). A couple of weeks later, Plaintiff had a left shoulder MRI, which revealed hypertrophic acromion changes, mild inflammation, and abnormal supraspinatus tendon (130). On November 14, 2001, Dr. Alexiades injected Plaintiff's left shoulder with Lidocaine and Depo-Medrol, and on January 3, 2002, because the pain injections failed to alleviate Plaintiff's symptoms, Dr. Alexiades scheduled Plaintiff for surgery (116). On January 28, 2002, Dr. Alexiades performed right shoulder decompression, bursectomy and and lysis surgery for impingement and arthofibrosis (117, 126-127). On June 13, 2002, Dr. Alexiades operated on Plaintiff's left shoulder, decompressing and resecting it to alleviate impingement and acromioclavicular arthritis (115, 121-122). Keith Roach, Plaintiff primary care physician. Dr. Alexiades diagnosed Plaintiff with spondylosis, stenosis and radiculopathy, and concluded that Plaintiff (a) must lie down .5 – 2 hours, two or three times, during an 8 hour work day, and (b) was limited to sitting only two hours in 8 hour work day (297-303). Dr. Roach also concluded Plaintiff (a) must lie down .5 – 2 hours, three times, during an 8 hour work day, and (b) was limited to sitting only two hours in 8

hour work day (304-310).  In April 2002, Dr. Alexiades diagnosed Plaintiff with left shoulder tendinopathy, and scheduled a right hip MRI because it was painful (113), which revealed cartilage loss, dysplasia, torn and degenerated labrum, while hip x-rays revealed pelvic asymmetry, and bony and chondral lesions (123-125).

In July 2002, Plaintiff submitted additional reports from Dr. Alexiades and Dr. Roach. Dr. Alexiades concluded that Plaintiff (a) had to lie down 1.5 to 2 hours a day, (b) could not sit, stand or walk for prolonged time, (c) could not lift or carry more than 5 pounds, (d) had no change in condition since June 5, 2000, and (e) remained totally disabled (253-254).  Dr. Roach diagnosed Plaintiff with 27 different medical conditions, prescribed Vicodin and Vioxx, gave Plaintiff a poor prognosis, and specified that "he is totally disabled and should not return to work." (250-252; Answer ¶ 77).

The LTD Plan required Plaintiff to apply for Social Security Disability ("SSD") benefits; otherwise, the LTD Plan would deduct the estimated amount of the SSD benefits (56.1 Ex. A p. 9; Answer ¶27; 514, 601).  On August 27, 2002, the Social Security Administration (the "SSA") concluded that Plaintiff was totally disabled as of June 5, 2000, and awarded him a monthly SSD benefit (266; Answer ¶30).  A United States Administrative Law Judge ("ALJ") determined that Plaintiff's impairments were so severe that not only was he unable to perform his past work as a wage and salary administrator, but was also unable to do any other type of work as well (266). CIGNA accepted the SSA decision without question in order to reduce Plaintiff's LTD benefits by the amount of the SSD benefits (173-185, 217-228, 231; Answer ¶33); however, CIGNA

failed to explain why it rejected the SSA decision without question when it decided to terminate Plaintiff's LTD benefits (706-710).[3]

In December 2002, despite having the conclusions of Dr. Alexiades, Dr. Roach, and the SSA, CIGNA paid Dr. David Trotter to review Plaintiff's file, and he concluded that the medical evidence supported Plaintiff's "inability to perform his occupation as a wage and salary manager considered to be overwhelmingly in the sedentary category" (235, Answer ¶ 81). Dr. Trotter also concluded that the medical records showed Plaintiff's severe multilevel spinal stenosis and nerve root impingement/radiculopathy precluded him from working his full time sedentary occupation as a wage and salary manager (235, Answer ¶ 82). Dr. Trotter added that Plaintiff's symptomatic stenosis and nerve root impingement would persist regardless of what position he assumed (0235). Dr. Trotter concluded that Plaintiff was disabled from his usual occupational activities even on a part time basis (0236, Answer ¶ 83).

On December 30, 2002, a CIGNA medical review by a nurse named Karen Haley stated that Plaintiff's medical records supported his inability to perform sedentary work (106). On January 14, 2003, Ms. Bharadwaj overturned CIGNA's denial of Plaintiff's claim because his symptoms, abnormal exam and tests findings supported ongoing severe multilevel spinal stenosis and nerve root impingement severe enough to preclude performing his occupation (105, 231).

Since the time that Dr. Snow, Dr. McCance, Dr. Alexiades, Dr. Roach, Dr. Trotter, and Dr. Scelsa, the ALJ and Nurse Haley all concluded that Plaintiff lacked the physical ability to do sedentary work as defined by the DOT, no medical records have showed that Plaintiff's stenosis,

---

3  In *MetLife v. Glenn*, 128 S.Ct. 2343, 2352 (2008), the Supreme Court ruled that such conduct is a key factor that reveals an insurance company abused its discretion in denying LTD benefits: "In particular, the court found questionable the fact that MetLife had encouraged Glenn to argue to the Social Security Administration that she

nerve root impingement or radiculopathy went away, abated, or improved (1-1027). There are no records showing that Plaintiff's other conditions improved either.

On March 24, 2003, because Dr. Alexiades's exam indicated Plaintiff had a labral tear of the right hip, he was scheduled for hip surgery (113), and on April 16, 2003, Dr. Alexiades performed right hip surgery to repair Plaintiff's labral tear (114, 118-119).

On September 14, 2004, Plaintiff had x-rays of his cervical spine, which revealed degenerative disc disease, disc space narrowing and osteophytes at the C6-7 level (963). On October 20, 2004, Dr. Roach faxed another PAA that CIGNA had requested (968-971). Among other things, Dr. Roach said Plaintiff was limited to sitting only occasionally, which was less than 2.5 hours during an 8 hour day (975). After reviewing that PAA, CIGNA decided that an exploratory transferable skills analysis ("TSA") was needed (80, 101, Answer ¶ 93). The purpose of a TSA is to see if a person acquired work skills from one occupation that can be used in another occupation. CIGNA's request for an exploratory TSA made no sense because Plaintiff only had to prove that he was unable to perform his regular occupation. Nonetheless, on November 18, 2004, based on Dr. Roach's October 20, 2004 PAA, which limited Plaintiff to sitting for less than 2.5 hours a day, CIGNA did an exploratory TSA that identified 9 occupations with potential transferable skills that Plaintiff could perform (99). On November 30, 2004, consistent with his conclusion that Plaintiff could not even sit for 2.5 hours a work day, Dr. Roach said Plaintiff had a class 5 physical impairment, which is a severe limitation of functional capacity; incapable of even minimal sedentary activity (961).

---

could do no work, received the bulk of the benefits of her success in doing so (the remainder going to the lawyers it recommended), and then ignored the agency's finding in concluding that Glenn could in fact do sedentary work."

CIGNA sent four DOT occupational descriptions to Dr. Roach and asked him if Plaintiff could perform them, even though CIGNA knew that Plaintiff was only required to prove that he was unable to engage in his regular occupation as a Wage and Salary Manager (168, 903; Answer ¶ 99).  Dr. Roach stated that Plaintiff could not perform any of the four occupations because of his limited ability to sit and need to lie down (882-883; Answer ¶ 102).  In response, CIGNA's Scott Taylor, an osteopath, decided a peer to peer review was needed, and he reviewed Plaintiff's file (880).  Taylor concluded Dr. Roach's PAA, which limited Plaintiff to sitting for less than 2.5 hours a day, somehow showed he had a sedentary work capacity; and that because the TSA showed Plaintiff had transferable skills for 4 sedentary occupations, Taylor said that Plaintiff's LTD benefits should be terminated (885-886; Answer ¶ 105).

Dr. Taylor failed to cite a single piece of medical evidence that indicated Plaintiff's medical condition had improved, and failed to explain why the same medical evidence that CIGNA found supported the approval of Plaintiff's claim previously no longer supported it (885-886).  Dr. Taylor stated that "clinically measurable tests like an FCE" were needed to determine Plaintiff's functional capacity, but he failed to explain how CIGNA was able to determine Plaintiff's functional capacity previously without needing an FCE (856-857; Answer ¶ 112).  Taylor also failed to explain why a physical therapist's FCE functional assessment would be more reliable than a treating doctor's functional assessment based upon his examinations.

On June 14, 2005, Dr. Roach sent Taylor a letter stating that Plaintiff could only work for 30 minutes at a time and not for more than two hours total in a day (843; Answer ¶ 113).  Dr. Roach explained that based upon his treating and observing Plaintiff, he remained unable to do sedentary work because of his daily need for narcotic pain medication, need to lie down ad lib,

and limited ability to sit, which showed that his condition had not improved during the past five

years (843; Answer ¶ 113).  Consistent with Dr. Roach's letter, Plaintiff's subsequent July 8,

2005 lumbar MRI revealed that his back condition had deteriorated -- while his August 18, 2001

MRI revealed that only the thecal sac, which encloses the nerve roots, was being impinged at the

L5-S1 level, the 2005 MRI now revealed that there was a "mass effect upon thecal sac and S1

nerve roots" (698).

       CIGNA required Plaintiff to attend an FCE on July 26, 2005, which was performed by a

physical therapist (726-749).  **The FCE test results showed exactly what Dr. Roach had**

**concluded;** *i.e.***, that Plaintiff could only sit on an occasional basis, between 1 and 33% of**

**the time, which is equal to less than 2.5 hours during an 8 hour work day** (728, 734, Answer

¶ 118).  The FCE test results also showed that Plaintiff was unable to do any lifting – floor to

knuckle, knuckle to shoulder, or floor to shoulder – or carrying (728, 734, Answer ¶ 119).  The

FCE test results further showed that Plaintiff could not stoop, kneel, crouch, or crawl due to

decreased range of motion, and weakness and buckling of the lower extremities (728, 730, 7343,

Answer ¶¶ 120, 121).  The FCE added that Plaintiff walks with a cane, and has an abnormal

posture, limited flexibility, severely limited range of motion, including significantly limited

lumbar range of motion, and limited lower extremity strength (730, Answer ¶ 120).  The FCE

also concluded that Plaintiff could not sit for more than 10 -15 minutes at a time (731, Answer ¶

122).  The FCE found Plaintiff was "very cooperative," gave "maximal" effort, and "consistent

performance" that was not "self limiting," but was unable to complete the static and dynamic

lifting and step tests due to "frequent buckeling (sic) and increased risk of falling," and twice

needed assistance to avoid falling down (730, 731, Answer ¶ 123).  The FCE stated that it

stopped the Canadian Fitness Test "due to the safety risk," and that Plaintiff had to lie down during the testing (730, Answer ¶ 123).

Despite all of the "clinically measurable tests" from the FCE that show Plaintiff cannot meet the DOT physical demands for sedentary work, the physical therapist who performed the FCE concluded that Plaintiff could function "safely at a sedentary level for an eight hour period" (726, Answer ¶ 124). Ms. Bharaday was unable to find a single test finding in the 25 page FCE report that supposedly supported the conclusion that Plaintiff could do sedentary work (Tr. 52, 53, 64-70). On August 9, 2005, even though Plaintiff's ability to do other occupations was irrelevant under the Plan, Mark Sodders asked Ginny Schmidt, CIGNA's vocational consultant, to do a TSA, which identified occupations that Plaintiff supposedly could do based on the FCE (718-723).

CIGNA terminated Plaintiff's benefits based on the conclusion of the physical therapist who performed the FCE, that Plaintiff could do sedentary work, and the TSA (41), not the actual FCE test data, which revealed Plaintiff could not even sit 2.5 hours a day, or Plaintiff's medical evidence (717, 706-710). CIGNA failed to explain (a) why it accepted the physical therapist's conclusion over the opinions of Plaintiff's doctors, (b) what medical records showed that Plaintiff's condition had improved, (c) how Plaintiff could do sedentary work when the FCE and Dr. Roach limited Plaintiff's ability to sit to less than 2.5 hours in an 8 hour day, (d) how Plaintiff could perform at a sedentary level if unable to lift or carry any weight, and why the SSA's conclusion that Plaintiff could not do sedentary work was wrong (706-710).

11

Plaintiff responded to the termination of his LTD benefits by submitting updated reports from Dr. Alexiades and Dr. Roach and a lumbar MRI dated July 8, 2005 (678-698; Answer ¶ 132). Dr. Alexiades' January 11, 2006 report provided that Plaintiff (a) had to lie down for .5 to 2 hours at a time two or three times during the day, (b) was limited to sitting for a total of 2 hours during an 8 hour work day, was limited to standing and walking for less than 1.5 hours during an 8 hour work day, and (d) was limited to lifting and carrying between 0 and 5 pounds and then only on an occasional basis (684-690, Answer ¶ 133). Dr. Roach's January 6, 2006 report provided that Plaintiff (a) had to lie down several times a day, sometimes hourly, and for up to several hours, (b)was limited to sitting for a total of 2 hours during an 8 hour work day, (c) was limited to standing and walking for less than 1 hour, during an 8 hour work day, and (d) was limited to lifting and carrying between 0 and 5 pounds and then only on an occasional basis during an 8 hour work day (691-697, Answer ¶ 134).

On March 28, 2006, CIGNA had a doctor Mendez, whose credentials CIGNA failed to identify, review Plaintiff's file, whose entire analysis was:

> FCE reviewed along with job requirements. Validity measures met. Exam concluded Mr. Alfano was able to perform his sedentary – level work. So original decision remains supported.

(657). Dr. Mendez failed to explain why he rejected every piece of medical evidence, including the MRIs, Dr. Alexiades' and Roach's January 2006 reports and treatment records, the operative reports, the prescribed pain medication and Plaintiff's symptoms, and the Trotter report, in favor of the opinion of the physical therapist who did the FCE (657, 726-749).

By letter dated March 29, 2006, CIGNA upheld its termination of benefits based on the two sentence review of Dr. Mendez, which was based on the conclusion of the FCE physical

12

therapist, not the FCE data that limited Plaintiff to sitting for less than 2.5 hours during an 8 hour work day and concluded that he could not lift or carry any weight (655-657, 726-749; Answer ¶ 147). The only explanation CIGNA offered for rejecting the additional medical reports from Dr. Alexiades and Dr. Roach was a purported lack of "any clinical findings" (656). However, Dr. Alexiades and Dr. Roach stated that the clinical findings that supported Plaintiff's limited functionality included: positive straight leg raises, numbness associated with back pain, weakness on walking on toes, back pain radiating down the leg, quadriceps weakness, and decreased patellar reflex (684-697). Moreover, CIGNA failed to explain what clinical findings that previously supported Plaintiff's entitlement to benefits were no longer present (655-656).

On August 24, 2006, Dr. Roach concluded that Plaintiff continued to be totally disabled from his spinal stenosis, and required large doses of narcotics (646, Answer ¶ 153 or 155). Plaintiff submitted a final appeal, pointng out that the side effects of his medication were so severe that he lacked the ability to concentrate well enough to perform his work tasks (641-645; Answer ¶ 152). CIGNA responded by referring some of Plaintiff's medical records for an orthopedist to review, and summarized the claim by stating it was denied based on an FCE that showed Plaintiff could do sedentary work (636-637). CIGNA did not explain why it failed to ask Dr. Trotter, the orthopedist it paid previously to review Plaintiff's medical records, to review the new medical records to see if Plaintiff's condition had improved (1-1027). Instead, CIGNA asked Michael Weiss, who according to his web site specializes in hip and knee replacements, did the peer review (631-633; http://www.tririversortho.com/physician_detail.asp?id=3).

Dr. Weiss was asked to call Dr. Alexiades and Dr. Roach if he disagreed with their opinions, or if he found the medical information conflicting (637); however, while Dr. Weiss did

disagree, he failed to call them (633, Answer ¶ 159, dep. tr 71). Dr. Weiss was also asked if the records supported Plaintiff's inability to do sedentary work from October 27, 2005 through the present (637, Answer ¶ 160), and his entire analysis was four sentences:

> Upon review of the medical information, the restrictions and limitations precluding the claimant from sedentary work capacity are not supported in the documentation provided to me from 10/27/05 to present. A functional capacity evaluation of 7/26/05 recommended sedentary work duties. The claimant would be capable of sedentary duty, but would be restricted from prolonged sitting, in that he would require intermittent standing. He would also be restricted to limited walking, not greater than one block.

(632). Dr. Weiss failed to explain why he rejected (a) records from Dr. McCance, Dr. Snow, Dr. Farmer, Dr. Scelsa, Dr. Roach, and Dr. Alexiades, (b) the three lumbar, right shoulder, left shoulder, and right hip MRIs, (c) the right hip x-rays, (d) the functional assessments of Drs. Alexiades and Roach, (e) the operative reports, (f) Dr. Trotter's IME, (g) Dr. Roach's letters to Dr. Taylor, (h) Nurse Haley's review, (i) the SSA decision, and (j) the FCE test data, all in favor of the opinion of the FCE physical therapist (631-633). Dr. Weiss failed to explain how Plaintiff could be capable of sedentary duty when the FCE limited Plaintiff to sitting for less than 2.5 hours a day (631-633).

Because Dr. Weiss' report was inadequate, he completed an "addendum" on November 22, 2006, in which he asserted that Dr. Roach failed to provide "objective physical findings" to support Plaintiff's inability to do sedentary work; however, Dr. Weiss failed to explain what objective physical findings supported his conclusion that Plaintiff's condition improved so he could perform sedentary work (634; Answer ¶ 165). Dr. Weiss also failed to explain (a) what objective physical findings that supported CIGNA's prior opinion that Plaintiff was disabled no longer existed, and (b) why Dr. Roach's objective physical findings that Plaintiff had back pain radiating down the leg, quadriceps weakness, decreased patellar reflex, and positive straight leg

14

raises, failed to support his conclusion that Plaintiff was only capable of sitting for less than 2.5 hours a day (631-634).

CIGNA denied Plaintiff's appeal based on Dr. Weiss's paper review (629-630; Answer ¶ 166). CIGNA claimed the because the FCE showed Plaintiff had the functional capacity to work as a Wage and Salary Manager there was no clinical support for disability after October 27, 2005 (629-630). However, CIGNA failed to explain how the FCE showed Plaintiff could work as a Wage and Salary Manager since the FCE showed Plaintiff was limited to sitting for less than 2.5 hours in an 8 hour work day, and from lifting or carrying any weight (629-630). To make matters even worse, Ms. Bharadwaj testified that she did not even know how many hours of sitting Plaintiff's occupation required, even though the purpose of the peer review was to clarify Plaintiff's functionality, and even though she had reviewed thousands of claims for CIGNA (Tr. 27, 35-36, 41-44, 46-50, 57-59). CIGNA and Ms. Bhradwaj also failed to explain what clinical evidence supported Plaintiff's disability before October 27, 2005, but not after that date (629-630; Tr. 99). CIGNA failed to explain why it rejected six years of treatment records, operative reports, diagnostic tests, functional assessments, Dr. Trotter's report, the objective FCE test data, and SSA's decision in favor of the opinion of the FCE physical therapist, which contradicted her own FCE test findings (629-630).

Most importantly, CIGNA purported to rely on the U.S. Department of Labor's standards for sedentary work (Tr. 41, 379, 670, 671), yet CIGNA failed to explain where the DOT identifies any occupation that can be performed if a person is limited to sitting for less than 2.5 hours, as well as restricted from lifting and carrying any weight (629-630). Incredibly, even though Ms. Bharadwaj testified that she has evaluated thousands of claims for CIGNA for over a

decade, and that she used her independent judgment to determine if the FCE data and PAA

supported Plaintiff's ability to do sedentary work, she testified that she did not know what the

physical demands of sedentary work are (Tr. 35-36, 41-44, 46-50, 57-59).

## ARGUMENT

### I.    STANDARD FOR GRANTING SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs a motion for summary judgment.  Pursuant to

Rule 56(c), the court must grant a motion for summary judgment if the pleadings, discovery

responses and admissions demonstrate that there is no "genuine" issue of "material" fact, and

that the movant is entitled to judgment as a matter of law.

To demonstrate the existence of a genuine factual dispute, the non-moving party must

show more than a metaphysical doubt or a scintilla of evidence to support its position.  *Anderson*

*v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1987); *Bd. of Ed., Yonkers School Dist. v. CNA Ins.*

*Co.,* 647 F.Supp. 1495, 1503 (S.D.N.Y. 1986).  The non-moving party cannot rest on

unsupported or conclusory allegations or denials.  *Anderson*, 477 U.S. at 259.  A party cannot

successfully oppose a motion for summary judgment by relying on speculation, conjecture or

conclusory allegations as to facts, *Knight v. U.S. Fire Ins*. Co*.,* 804 F.2d 9, 12 (2d Cir. 1986),

*cert. denied*., 480 U.S. 932 (1987), or by claiming that the evidence the movant adduced is not

credible.  *Williams Dental Co., Inc. v. Air Exp. Intern*., 824 F.Supp. 435, 438 (S.D.N.Y. 1993);

*aff'd* 17 F.3d 392 (2d Cir. 1993).  "Where the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, there is no "genuine issue of fact for trial.'"

*Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986); *Leventhal v.*

*Knapek,* 266 F.3d 64, 71 (2d Cir. 2001). Taking the record as a whole, a rational trier of fact could not find for CIGNA. Accordingly, there is no genuine issue of material fact for trial, and Plaintiff is entitled to an award of summary judgment in his favor.

Applying *de novo* review, because a preponderance, if not all, of the evidence in the record shows that Plaintiff's medical condition did not improve and that he remains unable to perform the duties of sedentary work, Plaintiff's summary judgment motion should be granted. *Alexander v. Winthrop, Stimson, Putnam and Roberts LTD Coverage*, 497 F.Supp.2d 429, 440 (E.D.N.Y. 2007). In other words, Plaintiff's summary judgment motion should be granted because the record shows that CIGNA failed to make the correct decision in terminating Plaintiff's long term disability benefits. *See e.g., Plummer v. Hartford Life Ins. Co.,* 2007 WL 43549 at *13 (S.D.Ohio Jan. 5, 2007); *Niles v. American Airlines, Inc.*, 2008 WL 711630 at *4 (10th Cir. Mar 17, 2008); *Hoover v. Provident Life and Acc. Ins. Co.,* 290 F.3d 801, 808-809 (6th Cir. 2002); *Grady v. Paul Revere Life Ins. Co.*, 10 F.Supp.2d 100, 111 (D.R.I. 1998).

Plaintiff would have been entitled to summary judgment even if an arbitrary and capricious standard of review had applied. As detailed below, the facts of this case are nearly identical to those in *Rappa v. Connecticut General Life Ins. Co.*, 2007 WL 4373949 (E.D.N.Y. Dec. 11, 2007), wherein the court ruled that CIGNA's decision could not even withstand a deferential standard of review. Taking the record as a whole, a rational trier of fact could not find that CIGNA's decision to terminate Plaintiff's LTD benefits was correct. Consequently, Plaintiff's motion for summary judgment should be granted.

17

## II.  <u>CIGNA'S TERMINATION MUST BE REVERSED</u>

CIGNA's decision to terminate Plaintiff's LTD benefits must be reversed because it is

undeniably wrong, and lacks any evidence, let alone a preponderance of evidence, to support it.

CIGNA specified that it used "the sedentary physical demand level as outlined by the U.S.

Department of Labor's Dictionary of Occupational Titles" to evaluate Plaintiff's ability to work

(C0379).  Moreover, CIGNA terminated Plaintiff's benefits based on the FCE, which was

performed "in accord with the U.S. Department of Labor Standards" (670, 671).  Thus, it is

indisputable that CIGNA terminated Plaintiff's LTD benefits based on the DOT's definition of

sedentary work.

It is well settled that the DOT defines sedentary work as the ability to sit for at least six

(6) hours a day:

> **that plaintiff could sit for only five hours per day further demonstrates that
> plaintiff is unable to perform the range of activities encompassed in the category
> of sedentary work.**  The physical exertional requirements of jobs involving sedentary
> work are defined by the Secretary in accordance with the criteria set forth in the
> *Dictionary of Occupational Titles* published by the Department of Labor.  20 C.F.R. §
> 404.1567.  **As the courts have explained:**
>
> The *Dictionary of Occupational Titles,* which is a generally accepted guide in
> gauging employment capability in these cases, **states that sedentary work implies
> a capacity to sit for *at least* 6 hours in an eight hour work day.**

*Mazzella v. Secretary of U.S. Dept. of Health and Human Services*, 588 F.Supp. 603, 606-607

(S.D.N.Y. Mar 08, 1984)(citations omitted); *Keppler v. Heckler*, 587 F.Supp. 1319, 1323

(S.D.N.Y. 1984); *Troupe v. Heckler*, 618 F.Supp. 248, 253 (S.D.N.Y. 1985); *Burch v. Bowen*,

1987 WL 9193 at *7  (S.D.N.Y. Mar 30, 1987); *Parker v. Sullivan*, 1992 WL 77552 at *5

(S.D.N.Y. Apr. 8, 1992); *Visser v. Heckler***,** 1986 WL 2205 at *5 (S.D.N.Y. Feb 10, 1986);

*Gomez v. Sullivan*, 1989 WL 160559 at *2 (E.D.N.Y. Dec 21, 1989)(adding "Courts have

repeatedly held that sedentary work requires sitting for at least six hours in an eight-hour day");

*O'Grady v. Heckler,* 588 F.Supp. 850, 855 (E.D.N.Y.1984)("The term 'sedentary' in the Social

Security Regulations has the same meaning as it has in *The Dictionary of Occupational Titles* ....

That authority defines sedentary work to comprise a capacity to sit for a *least six hours in an*

*eight hour workday."*); *Ubides v. Secretary of Dept. of HHS*, 1986 WL 978 at *6 (S.D.N.Y. Jan

15, 1986).  Moreover, CIGNA knows from both *Connors v. Connecticut General Life Ins. Co.,*

272 F.3d 127, 136 n. 5 (2d Cir 2001) and *Krizek v. CIGNA,* 2005 WL 928637 at *5 n. 5

(N.D.N.Y. Mar. 22, 2005), that "Sedentary work ... generally involves up to two hours of

standing or walking and six hours of sitting in an eight-hour work day."  Thus, it is absolutely

clear that CIGNA knows sedentary work requires the ability to sit for at least six (6) hours a day.

        CIGNA's terminating Plaintiff's LTD benefits because he could do sedentary work

required evidence that he had the ability to sit for at least 6 hours a day.  Inexplicably, while

citing many findings of the FCE test data in her review, CIGNA's vocational consultant in this

case, Ginny Schmidt, failed to mention the most important one, *i.e.*, that the FCE limited

Plaintiff to sitting for less than 2.5 hours a day (46, 728, 734); which is exactly what Dr. Roach

had just told CIGNA a month earlier (843).  Ms. Schmidt failed to explain how Plaintiff could

work as a Wage and Salary Manager since the FCE test data showed that Plaintiff could sit only

for only up to 2.5 hours a day and could not do any lifting or carrying (85-86).  Ms. Schmidt, and

every other vocational consultant, knows that a person who is limited to sitting for less than 2.5

hours during an 8 hour day cannot do any sedentary occupation on a full time basis.

There is no genuine issue of material fact that CIGNA's decision to terminate Plaintiff's benefits was wrong. The only evidence that supposedly showed Plaintiff could do sedentary work – the FCE and Weiss peer review relying on the FCE – show that Plaintiff can only sit for at most 2.5 hours a day, which does not come close to the 6 hours of sitting that the DOT requires for sedentary work. Looking at all of the medical records in the claim file, a rational trier of fact could not find that CIGNA's decision to terminate Plaintiff's LTD benefits was correct. Accordingly, Plaintiff's summary judgment motion should be granted.

Even if an arbitrary and capricious standard of review had applied Plaintiff's summary judgment motion would have to be granted. A review of Plaintiff's 56.1 Statement reveals that the facts of this case are virtually indistinguishable from those in *Rappa,* in which the court concluded that CIGNA's termination of LTD benefits was not based on substantial evidence.

**A.   _Rappa_**

In *Rappa*, the court reviewed the facts under the deferential arbitrary and capricious standard, and found that because CIGNA's decision lacked substantial evidence, it had to pay the plaintiff benefits. "Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rappa*, 2007 WL 4373949 at *9. *A fortiori,* when reviewing the facts *de novo* there can be no doubt that CIGNA's decision to terminate Plaintiff's benefits was wrong and that he is entitled to receive them, with interest and attorney fees.

In *Rappa,* the plaintiff stopped working at his sedentary occupation because of lumbar spine orthopedic impairments, such as degenerative disc disease. Among other things, an MRI showed nerve root compression. Reports from the plaintiff's treating doctors provided a less

20

than sedentary functional capacity, except for a cardiologist who did not consider the orthopedic impairments.

Five years after finding the plaintiff disabled under the plan and approving benefits, CIGNA decided that an FCE was needed, which was done by a physical therapist.  The plaintiff told the physical therapist that prolonged sitting increased his pain, he lied down a lot, and walked about a half mile.  Musculoskeletal screening revealed the plaintiff had decreased lumbar range of motion, he was unable to keep pace on a cardiac stress test for 3 minutes, and was also unable to do other testing because of an inability to bend forward.  Nonetheless, the physical therapist concluded the plaintiff could do sedentary work for 8 hours.

CIGNA then obtained a TSA from a vocational consultant, who - based entirely on the conclusion of the physical therapist who did the FCE regarding the plaintiff's ability to function - found that there were four jobs the plaintiff could do in light of his vocational background. Years after approving and continuing to find the plaintiff disabled and incapable of performing sedentary work, based on the FCE and TSA, CIGNA terminated the plaintiff's LTD benefits.

The plaintiff appealed the termination by submitting reports from his treating physicians that explained their treatment and findings, and concluded that the plaintiff was disabled and unable to do sedentary work.  CIGNA responded to the appeal by arranging for a Dr. Kern to do a peer review of the plaintiff's file.  Kern was asked if the plaintiff could perform full-time sedentary work, and Kern concluded that the FCE demonstrated that the plaintiff could because he had demonstrated the ability to sit for thirty minutes.  Then Kern was asked if he agreed with the conclusion of Dr. Kim, the treating doctor, that the plaintiff could not work at any exertional level, and Kern stated that he did not because it was based on the subjective reporting of the

plaintiff.  The court noted that Kern failed to indicate why it was appropriate to reject Dr. Kim's opinion that was based on subjective evidence from the plaintiff, especially since the record indicated that Dr. Kim thoroughly examined the plaintiff –"quite unlike the 'medical report' offered by Dr. Kern on only the paper record that he was provided by" CIGNA.  *Rappa*, 2007 WL 4373949 at *6**.**

CIGNA relied heavily on the conclusion of the FCE it commissioned, and the plaintiff disputed its diagnostic value and conclusions.  The court agreed that there was no reasonable basis for the conclusions reached by the physical therapist in the FCE since they were inconsistent with her own observations.   Therefore, the court concluded that the FCE was suspect and failed to provide a sufficient basis on which to deny the plaintiff's benefits.

The court then found that the TSA was based on the faulty FCE, and therefore could not be relied upon either.  The TSA conclusion - that the plaintiff could do certain sedentary jobs and is therefore not disabled -rested on the conclusion reached in the FCE.  However, the court found that contrary to the TSA, all of the examining physicians agreed that the plaintiff lacked the ability to do sedentary work-including his prior job as a systems analyst.[4]

The court found that besides being inconsistent with the conclusions of the examining doctors, CIGNA's and the TSA's determination that the plaintiff had the ability to do sedentary work was contradicted by CIGNA's own prior conclusion that the plaintiff was totally disabled. The reports from the treating doctors both before and after the termination indicated that the plaintiff could only sit for up to 30 minutes at a time, with which the FCE agreed.  The court

---

4  While no special deference is required for treating doctors, a district court engaging in a *de novo* review can chose to give more weight to a treating physician's conclusions if the opinions are reliable and probative.  *Paese v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 442 (2d Cir. 2006).

ruled that this demonstrated the plaintiff's condition had not improved since the time his benefits

were approved.  *See also Paese v. Hartford Life and Accident Ins. Co,* 2004 WL 764760 at * 9,

*vacated in part on other grounds*, 449 F.3d 435, 441(2d Cir. 2006)(insurer "has simply not

demonstrated that Paese's condition had improved by October 11, 2001, to the point that he was

no longer disabled.")  The court specified that there was not one piece of evidence in the record

which indicated the plaintiff could sit for more than 30 minutes at a time, the capacity at which

CIGNA provided him benefits.  To the contrary, the treating doctor explicitly noted that the

plaintiff's back condition had not improved and all of the other doctors who examined the

plaintiff regarding his orthopedic issues also indicated that his condition had not improved, and

opined that he would be totally and permanently disabled.

 The court rejected CIGNA's contention that the plaintiff had improved.  The court held

that:

> Decisions to terminate benefits in the absence of a change in condition have been
> held to have been arbitrary and capricious.  *See Connors v. **Connecticut Gen. Life Ins.
> Co.,*** 272 F.3d 127, 136 (2d Cir. 2001)(a "reversal in policy preceded by no significant
> change in [plaintiff's] physical condition" is reason to accord less weight to the
> defendant's evidence); *McOsker v. Paul Revere Life, Ins. Co.,* 279 F.3d 586, 589 (8th Cir.
> 2002) ("[U]nless information available to an insurer alters in some significant way, the
> previous payment of benefits is a circumstance that must weigh against the propriety
> of an insurer's decision to discontinue those payments.").

*Rappa*, 2007 WL 4373949 at *10**.**  Therefore, the court ruled that CIGNA's conclusion that the

plaintiff could do certain sedentary jobs based upon the TSA and the ability to sit for up to 30

minutes at a time failed to provide CIGNA with a sufficient basis on which to deny his benefits.

 CIGNA also based its termination on the report prepared by the doctor it hired to

evaluate the plaintiff's records, Dr. Kern.  The court explained why the Kern peer review was

insufficient to substantiate CIGNA's decision to deny the plaintiff's benefits:

23

Additionally, Dr. Kern's report can not reasonably be relied upon in the face of the substantial contradictory evidence from Rappa's treating and examining physicians. Foremost, Kern's report was not based on any interaction with Rappa, but rather merely on review of the paper record. Further, rather than prepare his own independent report, Dr. Kern was merely given five specific questions by CGLIC-which were all answered in CGLIC's favor. Moreover, in answering those questions and concluding that Rappa could return to work, Kern fails to adequately and credibly rebut the findings of Rappa's treating physicians. Dr. Kern's report does not constitute substantial evidence. It directly contradicts the opinions of the examining physicians, all of who stated that Rappa is permanently disabled and could not return to work. It provides no reasons for why he disagrees with them. By contrast, with the exception of Dr. Vergara's inconsistent and somewhat confusing statement, the examining physicians (Drs. Spivak, Gilbert, Reitberg, and Gilbert) all clearly provided the basis for their conclusions and stated them without equivocation-and those conclusions are far more probative that Dr. Kern's. *See Soron* v. *Liberty Life Assurance Co. of Boston,* No. 5:02CV1514, 2005 WL 1173076, at *12 (N.D.N.Y. May 2, 2005) (discussing the logically superior probative value of reports prepared by treating physicians as compared to the lesser value of those prepared by non-examining reviewers).

*Rappa*, 2007 WL 4373949 at *11.

The court's ultimate conclusion was clear:

In short, the evidence relied upon by CGLIC (skewed readings of the reports of Drs. Vergara and Fisk, Kern's response to CGLIC's questions, and the FCA and TSA) is, in light of the opinions of Rappa's examining physicians and the lack of evidence that Rappa's condition has improved, insubstantial. Because CGLIC's decisions to terminate Rappa's benefits and then deny their reinstatement were not based upon substantial evidence, they were arbitrary and capricious.

*Rappa*, 2007 WL 4373949 at *12. Accordingly, the court granted plaintiff's motion and reversed

CIGNA's termination of benefits.

**B.     Applying *Rappa***

As in *Rappa,* Plaintiff stopped working at his sedentary occupation because of lumbar

spine orthopedic impairments, including as degenerative disc disease (293, 379, 515, 527). Also,

as in *Rappa,* among other things, an MRI showed nerve root compression (235, 283, 294, 454-

455, 698). Furthermore, as in *Rappa,* every report from Plaintiff's treating doctors provided a

less than sedentary functional capacity using the DOT definitions (106, 235, 297-303, 304-310, 493, 483, 961).

As in *Rappa*, five years after Plaintiff stopped working and after CIGNA found him disabled under the plan and approved benefits, CIGNA decided that an FCE was needed (853), which was done by a physical therapist (726-749). The FCE measured Plaintiff's functionality using DOT categories (728). The FCE testing revealed that Plaintiff was limited to sitting only on an "occasional" basis, between "1-33%" of time, equal to "< 2.5 hrs" (728, 734). Thus, while sedentary work requires the ability to sit for at least six (6) hours a day, the FCE testing demonstrated that Plaintiff could not even sit for 2.5 hours a day. That is exactly what Dr. Roach concluded numerous times, including June 14, 2005, October 20, 2004 and November 30, 2004 (843, 961, 968, 975).

The FCE testing also revealed that Plaintiff was unable to do any lifting or carrying, even a negligible amount, even on an occasional basis, even though his documented physiological and biomechanical changes showed he was giving a maximal effort in attempts to lift and carry (728, 734, 738, 744). According to the DOT, a sedentary occupation, "with respect to strength requirements, require[es] lifting up to ten pounds occasionally and negligible amounts frequently." *Troy v. Unum Life Ins. Co. of America*, 2006 WL 846355 at *3 (S.D.N.Y. Mar 31, 2006); *Henar v. First Unum Life Ins. Co.*, 2002 WL 31098495 at *2 (S.D.N.Y. Sep. 19, 2002). Thus, the FCE testing revealed that Plaintiff's ability to lift and carry was even more restrictive than his ability to sit. Incredibly, even though Ms. Bharadwaj admitted that she evaluated thousands of claims for CIGNA, she testified that she did not know how much weight a person needed to lift and carry to do sedentary work (Tr. 52, 53, 69-70).

25

As was the case in *Rappa*, Plaintiff told the physical therapist that prolonged sitting increases his pain; he can only sit for 10-15 minutes (which was borne out by the FCE testing (731); can only walk 10-20 minutes; spends a lot of time in a recliner, and was driven to the FCE by his wife. Musculoskeletal screening revealed decreased lumbar range of motion, use of a cane to walk, and observation of buckling without the cane, forward flexed posture, tightness throughout the lumbar spine and lower extremities, limited flexibility, limited lower extremity strength with "frequent episodes of buckeling in his lower extremities which twice required the assistance of the examiner to prevent a fall," and an inability to complete the jamar grip test without the need to lie down (730, 749). The decreased flexibility and range of motion precluded balancing, crouching, kneeling, stooping and crawling (726, 728, 731, 735). Plaintiff's physiologic testing responses corroborated his subjective complaints (731). Also as in *Rappa*, Plaintiff was unable to keep pace on a step test, and was stopped due to the safety risk (730).

The physical therapist began the 24 page report with a one paragraph conclusion. Consistent with the testing data discussed above, the physical therapist concluded that Plaintiff: (a) is unable to stoop, kneel, crouch, or crawl due to decreased range of motion, weakness and buckling of the lower extremities; (b) was cooperative, yet unable to complete the lifting and step tests due to risk of and actually losing balance and falling; (c) is unable to sit for more than 10-15 minutes and has to lie down frequently to alleviate the pain; (d) his physiologic changes corroborated his subjective complaints; (e) gave maximal and consistent performance; (f) had a severely limited range of motion; and (g) was driven to the FCE by his wife (726). Nonetheless, the physical therapist concluded that Plaintiff could do eight hours of sedentary work as defined

by the DOT (726).

The preponderance of the evidence shows that there is no rational way to interpret the FCE data as evidencing an ability to perform sedentary work. Even under a deferential review, as was the case in *Rappa*, the Court should find that there was no reasonable basis for the conclusions reached by the physical therapist in the FCE since they were inconsistent with her own observations. Moreover, the Court should find that there was no reasonable basis for the conclusions reached by the physical therapist in the FCE since they were inconsistent with the actual testing data of the FCE. Regardless of the standard of review, the Court must conclude that the FCE failed to provide a sufficient basis to terminate Plaintiff's benefits.

Just as in *Rappa*, the Court should also find that because the TSA was based on the faulty FCE, it could not be relied upon either. The TSA conclusion - that Plaintiff could do four sedentary jobs including his regular occupation as a Wage and Salary Manager - rested on the conclusion reached in the FCE. However, because all of the examining physicians agreed that Plaintiff lacked the ability to do sedentary work, including his prior job, the Court should find that, besides being inconsistent with the conclusions of the examining doctors, CIGNA's and the TSA's determination that Plaintiff had the ability to do sedentary work was contradicted by CIGNA's own prior conclusion that Plaintiff was totally disabled. The reports from Plaintiff's treating doctors both before and after the termination indicated that he could not sit for more than 2.5 hours a day, which the FCE corroborated.

As was the case in *Rappa*, - which was deferentially reviewed - the Court should rule that the treating doctors' reports demonstrate Plaintiff's condition has not improved since the time his benefits were approved. There is not a single piece of evidence in the record that indicates

27

Plaintiff could sit for more than 2.5 hours a day, the capacity at which CIGNA provided him benefits. To the contrary, the treating doctors explicitly noted that Plaintiff's back condition had progressed and all of the other doctors who examined him regarding his orthopedic issues indicated that his condition had not improved, and opined that he would be totally and permanently disabled. Just as the FCE failed to provide CIGNA with a sufficient basis on which to deny Plaintiff's benefits, the TSA, which is based on the faulty conclusion of the FCE physical therapist, cannot provide CIGNA with a sufficient basis on which to deny Plaintiff's benefits.

Again, just as in *Rappa*, Plaintiff appealed CIGNA's termination by submitting reports from his treating physicians that explained their treatment and findings, and concluded that Plaintiff was disabled and unable to do sedentary work (641-646). And, just as in *Rappa*, CIGNA responded to the appeal by arranging for a peer review (636-637), which was done by Dr. Weiss without any interaction with Plaintiff (631-634). Rather than prepare his own independent report, Dr. Weiss was merely given a few questions by CIGNA, such as asking Dr. Weiss if the records supported Plaintiff's inability to do sedentary work from October 27, 2005 through the present (637). Weiss said no because the FCE "recommended sedentary work duties," no other documents were identified as supporting his position (632).

Ms. Bharadwaj admitted that there were no other records other than the FCE and Weiss peer review that showed Plaintiff's condition changed between 2003 and 2005 (Tr. 99). Dr. Weiss failed to explain why he rejected (a) records from Dr. McCance, Dr. Snow, Dr. Farmer, Dr. Scelsa, Dr. Roach, and Dr. Alexiades, (b) the three lumbar, right shoulder, left shoulder, and right hip MRIs, (c) the right hip x-rays, (d) the functional assessments of Drs. Alexiades, Roach,

Scelsa, and Snow (e) the operative reports, (f) Dr. Trotter's IME, (g) Dr. Roach's letters to Dr. Taylor, (h) the decision of the SSA, and (i) the FCE test data, all in favor of the opinion of the FCE physical therapist (631-633). Similarly, Dr. Weiss failed to explain how the records failed to support Plaintiff's inability to do sedentary work since they, as well as the FCE, limited Plaintiff to sitting for less than 2.5 hours a day. A peer reviewer is biased when his assessment is based on reports of treating doctors supporting a disability claim, yet arrives at a dramatically contradictory conclusion. *Conrad v. Reliance,* 292 F.Supp.2d 233, 240 (D. Mass. 2003).

A review of Plaintiff's 56.1 Statement reveals that the facts of this case are virtually indistinguishable from those in *Rappa,* in which the court concluded that CIGNA's termination of LTD benefits was not based on substantial evidence, and that CIGNA had to pay both LTD benefits and attorneys' fees.

## C. *Brooking*

The facts of *Brooking* track those of *Rappa.* The plaintiff, who was diagnosed with degenerative arthritis and degenerative disk disease in her spinal region and who had received a series of lumbar epidural steroid injections for the purpose of relieving her pain, was approved for LTD benefits. She was then placed on a variety of pain medications, which provided little relief. Sitting caused pain, and her treating physician, Dr. Witt, opined that Brooking was unable to sit for more than one hour at any given time, or for more than four hours total during a single day.

Hartford terminated the plaintiff's LTD benefits based on its conclusion that she was capable of performing the duties of two sedentary positions. However, Dr. Witt stated the plaintiff was unable to sit for more than four hours a day, and Hartford's FCE stated the plaintiff

29

could only sit on an "occasional basis," which is defined as up to one-third of an eight-hour day.

> Dr. Witt's opinion that Brooking "can sit for no more than 1 hour at a time for 4 hours total due to pain" is entirely consistent with the results of the FCE, which state that Brooking can sit only occasionally, or two hours and forty minutes of an eight-hour day. Furthermore, the FCE evidences not only that Brooking is unable to sit for more than one-third of a business day, she is unable to do the work associated with a position that requires prolonged sitting.

*Brooking,* 167 Fed.Appx. at 548. The court noted that while Hartford concluded the plaintiff could work as either a cardiac monitor technician or nurse consultant, both of which are classified as "sedentary," "**According to U.S. Department of Labor definitions, sedentary jobs require sitting for most of the day. There is no evidence that Brooking could perform either of these jobs, or any other sedentary job."** *Brooking,* 167 Fed.Appx. at 548-549.

Reviewing Hartford's decision under the deferential arbitrary and capricious standard of review, the court concluded: "Given that Brooking cannot sit for more than four hours a day, Hartford Life has not offered a reasoned explanation for its decision to terminate her benefits." 167 Fed.Appx. at 549. The court added that:

> Based on the uncontested fact that she cannot maintain a seated position for more than an hour at a time and that sitting provokes considerable pain, work in a sedentary job is clearly not possible."… Brooking is not able to perform the positions of cardiac monitor technician or nurse consultant which, on their face, require more than four hours of sitting a day. Given that Brooking's termination runs contrary to the opinions of her treating physician, the objective evidence in the administrative record, and the conclusions of the FCE, Hartford Life's decision to deny her long-term disability benefits was arbitrary and capricious.

167 Fed.Appx. at 549. Consequently, the court reversed the termination of benefits with interest.

**D**. **Applying *Brooking***

Here too, Plaintiff was diagnosed with degenerative arthritis and degenerative disk disease in his spine, for which he received a series of lumbar epidural steroid injections for the purpose of relieving his pain. Here too, after CIGNA approved Plaintiff's LTD benefits, he was

30

placed on a variety of pain medications that provided little relief, and sitting causes pain. Whereas Dr. Witt opined that Brooking was unable to sit for more than one hour at any given time, or for more than four hours total during a single day, Dr. Roach opined that Plaintiff was unable to sit for more than 30 minutes at a time or even 2.5 hours in a day.

As in *Brooking*, CIGNA also terminated Plaintiff's benefits based on its conclusion that he was capable of performing sedentary work. However, because Dr. Roach (as well as all of the other treating doctors) stated Plaintiff was unable to sit for more than 2.5 hours a day, and CIGNA's FCE stated Plaintiff could only sit on an "occasional basis," which the FCE defined as up to one-third of an eight-hour day or less than 2.5 hours a day, it proves that Plaintiff is unable to do the work associated with a position that requires prolonged sitting. The physical requirements provided by the Plaintiff's job description include: "Most work performed sitting at desk," and "Must be able to sit for extended periods." (479). **Ms. Bharadwaj admitted that if the DOT required the ability to sit for between 2.5 and 5.5 hours a day, then the FCE, which revealed Plaintiff could only sit between 0 and 2.5 hours day, would not support Plaintiff's ability to do sedentary work (Tr. 55-56). Ms. Bharadwaj further admitted that if the DOT required sitting for more than 5.5 hours a day for sedentary work, then the FCE would not support Plaintiff's ability to do sedentary work (Tr. 56).**

CIGNA concluded Plaintiff could resume his sedentary occupation, which according to the DOT requires sitting for most of the day, *i.e.,* at least 6 hours during an 8 hour work day. There is no evidence that Plaintiff could perform his regular or any other sedentary job. No treating physician states that Plaintiff can sit for 6 hours. The SSA concluded Plaintiff cannot sit for 6 hours. The FCE specified that Plaintiff is limited to sitting for less than 2.5 hours (728,

31

734).  Given that Plaintiff cannot sit for more than 2.5 hours a day, let alone 4 hours a day as was

the case in *Brooking*, CIGNA failed to offer a reasoned explanation for its decision to terminate

his benefits even under an arbitrary and capricious standard of review.  Accordingly, the Court

should reverse CIGNA's decision to terminate Plaintiff's LTD benefits, and require CIGNA to

pay interest and attorneys fees.


### Conclusion

For the reasons set forth above, Plaintiff's motion for summary judgment should be

granted in its entirety.

Dated:  Jericho, NY
        July 25, 2008

                            RESPECTFULLY SUBMITTED,
                            LAW OFFICES OF JEFFREY DELOTT
                            Attorneys for Plaintiff


            By:    _____
                   Jeffrey Delott, Esq. (JD8688)

                    366 North Broadway
                    Suite 410
                    Jericho, NY  11753
                    (516) 939-2999

32