UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STEVEN ALFANO,                                     :

                          Plaintiff,      :          07 Civ. 9661 (GEL)

           - against -                              :

CIGNA LIFE INSURANCE COMPANY OF
NEW YORK, LONG TERM DISABILITY             :
INSURANCE PLAN FOR CORNELL
UNIVERSITY MEDICAL COLLEGE, WEILL          :
MEDICAL COLLEGE OF CORNELL
UNIVERSITY RETIREMENT PLAN FOR             :
FACULTY AND EXEMPT EMPLOYEES,
CHILDREN'S TUITION SCHOLARSHIP PLAN,       :
CORNELL UNIVERSITY GROUP LIFE
INSURANCE PLAN, CORNELL UNIVERSITY         :
MEDICAL COLLEGE HEALTH INSURANCE
PLAN, and WEILL MEDICAL COLLEGE OF         :
CORNELL UNIVERSITY DENTAL ASSISTANCE
PLAN,                                      :

                     Defendants.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT CIGNA LIFE INSURANCE COMPANY OF NEW YORK'S MOTION FOR
## SUMMARY JUDGMENT

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
        Attorneys for Defendant CIGNA Life Insurance
        Company of New York
        3 Gannett Drive
        White Plains, New York 10604
        (914) 323-7000

Of Counsel:

    Fred N. Knopf (FNK 4625)
    Emily A. Hayes (EH 5243)

## TABLE OF CONTENTS

Page

TABLE OF AUTHORTIES ................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................1

STATEMENT OF FACTS ...............................................................................................1

STANDARD OF REVIEW ..............................................................................................9

ARGUMENT ....................................................................................................................9

I. CLICNY's Termination of Plaintiff's Claim for Long Term Disability Benefits Should Be Reviewed Under a De Novo Standard of Review ..........................................................9

II. The Court's Review is Limited to the Administrative Record and Plaintiff is Not Entitled to Submit Additional Documentation Outside of the Administrative Record ..........................................................................................................10

III. CLICNY's Denial of Plaintiff's Claim for Long Term Disability Benefits Should be Upheld ............................................................................................................................11

1. As of October 27, 2005, Plaintiff Does Not Meet the Policy Definition of Disability .....11

2. CLICNY Properly Considered Plaintiff's Occupational Requirements in Making its Determinations ................................................................................................................15

CONCLUSION................................................................................................................19

## Table of Authorities

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)..................................................9

Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003).....................................14

Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 32-33
(2d Cir. 2000)..........................................................................................................................9

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) ..............................................................9

Dawes v. First Unum Life Ins. Co., 851 F. Supp. 118, 122 (S.D.N.Y. 1994) .......................18

DeFelice v. American Int'l Life Assur. Co., 112 F.3d 61 (2d Cir. 1997)...............................10

Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101 (1989)................................................10

Guglielmi v. Northwestern Mutual Life Ins. Co., 06 Civ. 3431, 2007 U.S. Dist. LEXIS
49182, *11-12 n.2 (S.D.N.Y. July 6, 2007) .........................................................................10

Juliano v. The Health Maint. Org. of N.J., 221 F.3d 279, 289 (2d Cir. 2000).......................11

Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252-53 (2d Cir. 1999).......18

Locher v. Unum Life Ins. Co. of Am., 389 F.3d 288 (2d Cir. 2004).....................................10

Mario v. P & C Food Markets, Inc., 313 F.3d 758, 765 (2d Cir. 2002) ................................11

Mood v. Prudential Ins. Co. of Am., 379 F. Supp. 2d 267, 281 (E.D.N.Y. 2005) ...............14

Muller v. First Unum Life Ins. Co., 341 F.3d 119, 125 (2d Cir. 2003) .................................10

Napoli v. First Unum Life Ins. Co., No. 99 Civ. 1329, 2005 U.S. Dist. LEXIS 7310, *20
(S.D.N.Y. Apr. 22, 2005)......................................................................................................11

Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006)....................14

Vormwald v. Liberty Mutual Life Assur. Co. of Boston, No. 5:05-CV-671, 2007 U.S.
Dist. LEXIS 62631, at *10 (N.D.N.Y. Aug. 23, 2007)........................................................11

## Preliminary Statement

Defendant CIGNA Life Insurance Company of New York ("CLICNY") respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

This is an action by plaintiff Steven Alfano ("Plaintiff" or "Alfano") seeking long term disability benefits pursuant to a claim terminated by CLICNY after a determination that he was no longer eligible for benefits as he was not disabled pursuant to the applicable long term disability policy.[1] Plaintiff alleges that the denial was a violation of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq.

As demonstrated below, the correct standard of review to be used by the Court to review CLICNY's determination is the de novo standard, the Court's review should be limited to the contents of CLICNY's administrative record, and CLICNY's decision was correct and supported by substantial evidence, as Plaintiff failed to establish that he was entitled to receive additional benefits.

## Statement of Facts

The facts are further set out in CLICNY's Statement of Material Facts Pursuant to Local Rule 56.1, dated July 25, 2008.

Plaintiff Steven Alfano was employed by Cornell Weill Medical College ("WMC") as a Wage and Salary Manager. As an employee of WMC, Plaintiff participated in a long term

---

[1] Plaintiff names a number of other entities as defendants in this matter, including Long Term Disability Plan for Cornell University Medical College, Weill Medical College of Cornell University Retirement Plan for Faculty and Exempt Employees, Children's Tuition Scholarship Plan, Cornell University Group Life Insurance Plan, Cornell University Medical College Health Insurance Plan, and Weill Medical College of Cornell University Dental Assistance Plan. CLICNY is the only defendant that has appeared in this matter. To the extent that the Complaint, dated October 23, 2007 ("Complaint"), seeks the payment of employee benefits other than long term disability benefits, CLICNY was not the provider of those benefits and so is not liable here.

disability benefit plan, with benefits provided pursuant to a policy, NYK-1972, issued by

CLICNY to WMC[2] ("Policy"). Complaint at ¶ 15; (Administrative Record at CLICNY 588,

attached to Declaration of Emily A. Hayes, dated July 25, 2008, as Exhibit A(documents from

the Administrative Record are hereinafter cited as CLICNY ____)).

In order to be eligible for benefits, the Policy requires that a claimant be continuously

disabled throughout the 180 day benefit waiting period. (CLICNY 598). The Policy contains the

following definition of disability:

> DISABILITY. An Employee will be considered Disabled if because of Injury or
> Sickness:
> 1. he is unable to perform all the material duties of his regular occupation or
> 2. he is earning less than 80% of his Indexed Basic Earnings.

(CLICNY 593).

The Policy provides for a monthly payment of the lesser of (1) or (2):

> (1) 60% of the Employee's Monthly Basic Earnings at the time that he becomes
> Disabled, rounded to the nearer dollar up to a maximum of $15,000, and reduced by the
> amount of all Other Benefits, for that month, excluding any Other Benefits received by or
> on behalf of the Employee's dependants.
> (2) 70% of the Employee's Monthly Basic Earnings at the time that he becomes
> Disabled, reduced by the amount of all Other Benefits which the Employee and his
> dependants receive for that month.

(CLICNY 598). The Policy also includes a cost of living adjustment. (CLICNY 603). "Other

Benefits" include, among other things, social security benefits. (CLICNY 600). Benefits are paid

through the earlier of (1) the date the Employee ceases to be disabled; or (2) the Employee's 65th

birthday. (CLICNY 604).

Plaintiff stopped working on June 6, 2000 because of back problems, among other

problems, and subsequently filed a claim for LTD benefits through WMC in December 2000.

---

[2] The Policy was originally issued to Cornell Medical College by INA Life Insurance Company with an effective
date of July 1, 1989. (CLICNY 588). INA Life Insurance Company is now known as CIGNA Life Insurance
Company of New York. (Complaint ¶ 8).

(CLICNY 515-32). In support of his claim, Plaintiff submitted various medical records from his treating physicians, including Dr. Farmer, Dr. Scelsa, Dr. Snow, Dr. Schiff, Dr. McCance, and Dr. Alexiades, as well as a disability questionnaire dated December 15, 2000. (CLICNY 438-39, 448-55, 475-77, 483-94, 515-32).

Plaintiff's claim was initially denied on February 12, 2001 after CLICNY determined that he did not satisfy the 180 day benefit waiting period, as the medical records received from Dr. Alexiades, Dr. Scelsa, and Dr. Snow did not contain any limitations or restrictions that would prevent Mr. Alfano from doing his own sedentary occupation. (CLICNY 376-80). This was based largely on the fact that, in a medical record dated July 20, 2000, Dr. Scelsa released Plaintiff to work with restrictions that fell within his own occupation requirements. (Id., CLICNY 453-55). Plaintiff appealed the denial by letter dated March 19, 2001 from his then-attorney Adam Cohen. (CLICNY 371). By letter dated April 12, 2001, the denial was upheld for the same reasons. (CLICNY 362-65).

Plaintiff appealed again by letter dated April 15, 2002, with additional information submitted with a letter dated August 3, 2002, submitting additional medical records, including spinal MRIs and office notes and reports from Dr. Alexiades, Dr. Farmer, and Dr. Roach. (CLICNY 248-54, 279-317). CLICNY then had a peer file review done by David Trotter, MD, an orthopedic surgeon. In a report dated December 10, 2003, after reviewing all of the medical information in the file, Dr. Trotter concluded that the medical information supported the apparent inability of Plaintiff to perform his regular occupation from June 6, 2000 to December 10, 2003. (CLICNY 233-36). Based on Dr. Trotter's report, CLICNY reversed the denial decision and Plaintiff's claim was re-opened. (CLICNY 105, 231). Plaintiff was notified of the decision by letter dated January 24, 2003, and was paid benefits due from December 3, 2000 to February 2,

2003. (CLICNY 186). A revised decision letter was issued on April 10, 2003 to clarify the applicable Policy definition of disability. (CLICNY 168).

After Plaintiff's benefits were approved, CLICNY, as it stated to Plaintiff in the January 24, 2003 and April 10, 2003 decision letters, continued to review his claim periodically to see whether he continued to meet the Policy definition of disability and therefore continued to be eligible to receive long term disability benefits. As part of that process, CLICNY periodically received and reviewed updated documents from the Plaintiff and his physicians, including medical records and disability questionnaires. Among those records was a Physical Ability Assessment form ("PAA") from Dr. Roach dated October 20, 2004, which stated that plaintiff could, among other things, occasionally sit, stand, and walk. (CLICNY 968-69).

After this PAA was received, an exploratory transferable skills analysis was done on November 18, 2004 by Vocational Rehab Counselor ("VRC") Rosemary Jenkins using the PAA, as well as information from Plaintiff's disability questionnaires and job description. (CLICNY 73). The TSA identified four sedentary occupations that Plaintiff would be capable of performing given the restrictions provided by Dr. Roach in the PAA. (Id.) The exploratory TSA was then reviewed by Holly Jule, VRC, who, in a report dated December 13, 2004, noted that one of the occupations identified by Ms. Jenkins was Plaintiff's own occupation, that all of the occupations allowed for the ability to get up and move about, alternate sitting, standing and walking at the employee's discretion, and that the Plaintiff's occupation, according to information received from his employer, allowed for the ability to alternate positions as needed. (CLICNY 69, 944-52). The DOT definitions of the four identified occupations were sent to Dr. Roach for his review; by letter dated April 19, 2005, he opined that the Plaintiff was incapable of performing them because he was physically unable to sit for prolonged periods of time without frequent need

for standing, lying down, or using ice on his back. (CLICNY 886, 872).

To resolve the difference between the October 20, 2004 PAA and the April 19, 2005 letter, CLICNY medical director Scott Taylor, DO, performed a file review which included a telephone call with Dr. Roach. (CLICNY 58, 855-56). In his report, dated June 8, 2005, Dr. Taylor noted that, in their telephone call, Dr. Roach stated that the difference between the two documents was due to a misinterpretation of what the PAA form meant, that over the entire work day Plaintiff could work three to four hours collectively, and that he could not sit continuously for more than thirty minutes at a time, at which time he would have to move to another activity. (Id.) Dr. Roach also stated that, if Plaintiff returned to work, it needed to be a gradual transition, starting with four hours at a time and increased as needed. (Id.). Dr. Roach also opined that a Functional Capacity Evaluation ("FCE") would be helpful to ascertain plaintiff's physical capabilities. (Id.) Based on his review of the file and conversation with Dr. Roach, Dr. Taylor concluded that the limitations and restrictions, including no sitting for prolonged periods of time and required position changes, were not supported as evidenced by the absence of clinically measurable tests or documented abnormalities in strength or range of motion testing. (Id.) Like Dr. Roach, Dr. Taylor recommended an FCE to determine his functional capacity. (Id.)

Plaintiff attended an FCE on July 26, 2005 with an external physical therapist, Jacqueline Genovese of Sports Physical Therapy of New York. After Mr. Alfano completed the various testing, Ms. Genovese concluded in her report that he was currently functioning safely at a sedentary level for an 8 hour period according to New York Department of Labor standards. (CLICNY 725).

On August 9, 2005, another TSA was done by Ginny Schmidt, VRC, based on the conclusions of the FCE, and the limitations of a sedentary occupation with no significant lifting

or carrying, with the occasional ability to sit, stand and walk, and which must allow for position

changes when necessary. (CLICNY 718). She identified seven occupations that were consistent

with these limitations as well as Plaintiff's wage replacement requirement, including his own

regular occupation of wage and salary manager. (Id.)

Based on Dr. Taylor's report, the FCE and the TSA, CLICNY concluded that Plaintiff

was no longer disabled because he was capable of performing his regular occupation and that

benefits should be terminated effective October 27, 2005. Plaintiff was notified of the

termination by letter dated September 28, 2005, which stated in part:

> Based upon the pertinent vocational and medical documentation contained in the file, we
> have determined that you retain the capacity to perform your own occupation as
> identified in the formal Transferable Skills Analysis. Therefore, we must deny your claim
> for Long-Term Disability benefits beyond September 28, 2005.
>
> In reviewing your claim, CIGNA Life Insurance Company of New York considered your
> claim file as a whole for purposes of determining your entitlement to benefits. The Policy
> provides that CIGNA Life Insurance Company of New York would pay benefits only if
> you were prevented by Disability as defined [in the Policy], and would continue to
> provide information to us validating such. However, based on the information listed
> above, you do not meet the definition of disability. As such, your claim is denied as of
> September 28, 2005, and to prevent financial hardship, we will pay benefits through
> October 27, 2005, and no benefits are payable under Policy number NYK 1972 beyond
> October 27, 2005.

(CLICNY 668-72).

Plaintiff appealed the termination twice and it was upheld by CLICNY each time, by

letters dated March 29, 2006 and December 27, 2006.

Plaintiff's first appeal was submitted by attorney Adam Cohen by letter dated February

22, 2006, submitting additional medical records including disability forms completed by Dr.

Alexiades, dated January 11, 2006, and Dr. Roach, dated January 6, 2006, and a July 18, 2005

MRI of the lumbar spine. (CLICNY 678-98). The additional records were reviewed by a nurse

case manager, Kay Rhodes, on March 3, 2006, who noted that the:

> Additional medical provided is insufficient to support a change in severity of deficits that significantly impacts function after the FCE. This is evidenced by the FCE which was performed on 7/25/06 revealing that the [claimant] had functionality at the sedentary level. The VRC identified positions that included the restrictions and limitations for alternating [claimant] position when necessary. The forms that were completed by the APs with the additional medical provided vague responses from both APs with no objective measurable findings for range of motion and neurological deficits. . . . The [restrictions and limitations] the forms gave were inconsistent with what the [claimant] tested in capabilities on the FCE on 7/26/05.

(CLICNY 34-35).

The file was then reviewed by the LTD appeal team on March 28, 2006, and medical director Dr. Mendez noted, after reviewing the file and additional records reviewed that "FCE reviewed along with job requirements. Validity measures met. Exam concluded Mr. Alfano was able to perform his sedentary level work duties. So original decision remains supported." (CLICNY 657).

Plaintiff was notified that the decision was upheld by letter dated March 29, 2006, which noted that the information submitted had been reviewed by a medical director, who concluded that he was able to function at a sedentary level, and that the new information did not provide any clinical findings that would alter functional abilities as demonstrated in the FCE. (CLICNY 655-56). The letter further stated that CLICNY understood that the Plaintiff has spinal stenosis, but that "the presence of a condition, diagnosis, or treatment plan does not equate disability under the policy. Based on the documentation on file regarding your functionality you do not meet the definition of Disability and we must affirm the previous denial of your claim." (Id.)

Plaintiff appealed again by letter from Mr. Cohen dated September 15, 2006, enclosing a letter from Dr. Roach dated August 24, 2006 stating that Mr. Alfano continued to be totally disabled from spinal stenosis. (CLICNY 641-45). CLICNY then referred the file for a peer review, which was done by Michael Weiss, M.D., an orthopedic surgeon, who prepared a report

dated November 13, 2006. (CLICNY 631-34). Dr. Weiss attempted to contact Dr. Alexiades and

Dr. Roach but neither doctor returned his telephone calls. (Id.) Dr. Weiss reviewed the entire file,

including the additional information submitted on appeal, and concluded that the restrictions and

limitations given by Plaintiff's treating physicians were not supported by documentation from

October 27, 2005 (the date benefits were terminated) to the present. (Id.) Noting that the FCE

recommended sedentary work duties, Dr. Weiss stated that the Plaintiff would be capable of

sedentary duty, that he would be restricted from prolonged sitting and would require intermittent

sitting, and that he would also be restricted to limited walking, not greater than one block. (Id.)

At CLICNY's request, Dr. Weiss attempted to reach Dr. Alexiades by telephone several more

times, but his calls were not returned. (Id.) This was reflected in an addendum to Dr. Weiss'

report dated November 13, 2006, in which he also discussed his review of two documents from

Dr. Roach, a letter dated April 19, 2005 and a report dated June 14, 2005, which stated that

Plaintiff was unable to do sedentary work. (Id.) Dr. Weiss stated that while these documents

contain Dr. Roach's impressions, they do not contain objective physical findings which would

clearly correlate with the Plaintiff's complaints or provide a specific reason why he could not

function at a sedentary to light duty level. (Id.)

    Based on Dr. Weiss' report, the decision was upheld, and Plaintiff was notified by letter

dated December 7, 2006 from appeal claims manager Medha Bharadwaj. (CLICNY 629-30).

The letter concluded that, while CLICNY did not dispute that Plaintiff was somewhat limited or

restricted due to his diagnoses and treatment as he had originally received long term disability

benefits, "an explanation of Mr. Alfano's functionality and how his functional capacity

prevented him from continuously performing the material duties of his occupation beyond

10/27/05 was not clinically supported. The presence of a condition, diagnosis or treatment does

not necessarily equate to a presence of a clinically disabling condition or decreased level of functionality." (Id.)

With his second appeal, Plaintiff exhausted his administrative remedies. (Id.)

## Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment will be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is not genuine issue as to any material issue of fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of informing the district court of the basis for its motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party which must set forth specific facts showing that there is a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. "The district court must draw all reasonable inferences in favor of the nonmoving party and grant summary judgment only if no reasonable trier of fact could find in favor of the nonmoving party." Carrion v. Enterprise Ass'n, Metal Trades Branch Local Union 638, 227 F.3d 29, 32-33 (2d Cir. 2000).

## Argument

### I. CLICNY's Termination of Plaintiff's Claim for Long Term Disability Benefits Should Be Reviewed Under a De Novo Standard of Review

"[A] denial of benefits challenged under 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." <u>Firestone Tire & Rubber</u>

<u>Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). Here, the Policy does not contain language conferring

discretion on CLICNY, and so the Court must review the denial of benefits de novo. See <u>Locher</u>

<u>v. Unum Life Ins. Co. of Am.</u>, 389 F.3d 288, 296 (2d Cir. 2004) ("[U]pon de novo review, a

district court may render a determination on a claim without deferring to an administrator's

evaluation of the evidence.").


II. <u>The Court's Review is Limited to the Administrative Record and Plaintiff is Not Entitled to</u>
<u>Submit Additional Documentation Outside of the Administrative Record</u>

     A district court's review is limited to the administrative record, even under a de novo

standard of review. <u>Muller v. First Unum Life Ins. Co.</u>, 341 F.3d 119, 125 (2d Cir. 2003)("[T]he

presumption is that judicial review is limited to the record in front of the claims administrator

unless the district court finds good cause to consider additional evidence."); <u>Guglielmi v.</u>

<u>Northwestern Mutual Life Ins. Co.</u>, 06 Civ. 3431, 2007 U.S. Dist. LEXIS 49182, *11-12 n.2

(S.D.N.Y. July 6, 2007). To introduce additional evidence, Plaintiff would have to show good

cause why additional evidence should be admitted. <u>DeFelice v. American Int'l Life Assur. Co.</u>,

112 F.3d 61, 67 (2d Cir. 1997) ("Where the district court reviews an administrative decision

under a plan that does not grant such discretion, the review is de novo and is limited to record in

front of the claims administrator unless the district court finds good cause to consider additional

evidence."). In <u>Locher</u>, the Second Circuit held that "a conflicted administrator does not *per se*

constitute good cause, and [we] caution district courts that a finding of a conflicted administrator

alone should not be translated *necessarily* into a finding of good cause." <u>Locher</u>, 389 F.3d at 296.

III. CLICNY's Denial of Plaintiff's Claim for Long Term Disability Benefits Should be Upheld

In this ERISA action, as the claimant of insurance benefits, Plaintiff bears the burden of proving by a preponderance of the evidence that he is entitled to the claimed benefits. See Mario v. P & C Food Markets, Inc., 313 F.3d 758, 765 (2d Cir. 2002) ("The insured has the burden of proving that a benefit is covered."); Juliano v. The Health Maint. Org. of N.J., 221 F.3d 279, 289 (2d Cir. 2000); Vormwald v. Liberty Mutual Life Assur. Co. of Boston, No. 5:05-CV-671, 2007 U.S. Dist. LEXIS 62631, at *10 (N.D.N.Y. Aug. 23, 2007) ("The claimant has the burden of proving by a preponderance of the evidence that she is disabled in accordance with the plan's terms."); Napoli v. First Unum Life Ins. Co., No. 99 Civ. 1329, 2005 U.S. Dist. LEXIS 7310, *20 (S.D.N.Y. Apr. 22, 2005). Here, Mr. Alfano must show that he is disabled pursuant to the Policy's definition of disability, specifically that, because of injury or sickness, (1) he is unable to perform all the material duties of his regular occupation or; (2) he is earning less than 80% of his Indexed Basic Earnings. (CLICNY 593).

1. As of October 27, 2005, Plaintiff Does Not Meet the Policy Definition of Disability

As discussed in the statement of facts, after CLICNY determined in January 2003 that Mr. Alfano was entitled to long term disability benefits beginning in December 2000, CLICNY continued to conduct periodic reviews of his claim with updated information to see if he was still entitled to benefits pursuant to the Policy definition of disability. The Policy requires that a claimant be continuously disabled in order to continue to receive benefits, and provides that benefits will be terminated if he no longer meets the definition of disability.

CLICNY's decision that Plaintiff no longer established that he was disabled was based on substantial evidence in the Administrative Record. As part of its ongoing review, CLICNY received evidence that showed that the Plaintiff had the capabilities to perform his regular

occupation, the October 20, 2004 PAA completed by Dr. Roach, which stated, among other things, that the Plaintiff could occasionally sit, stand, and walk. (CLICNY 968-69).

Thereafter, CLICNY associate medical director Scott Taylor, DO, conducted a review of Plaintiff's file and also spoke to Dr. Roach to attempt to resolve differences between Dr. Roach's October 20, 2004 PAA and certain other submissions he had made to CLICNY in support of Mr. Alfano's claim. In his report of his findings, dated June 8, 2005, Dr. Taylor stated that the limitations and restrictions of no sitting for prolonged periods of time, required frequent position changes, with the need to lie down, and ice his back, were not supported as evidenced by the absence of clinically measurable tests or documented abnormalities in strength or range of motion testing. (CLICNY 855-56). Dr. Taylor also stated that a functional capacity evaluation ("FCE") might be helpful to determine Plaintiff's functional capacities. (Id.).

On July 26, 2005, an FCE was done to determine Mr. Alfano's functional capacities. The FCE, which had been recommended both by Dr. Taylor in his June 8, 2005 report and by Dr. Roach during his June 8, 2005 telephone call with Dr. Taylor, was done by Jacqueline Genovese, MSPT of Sports Physical Therapy of New York PC. In her report, she concluded that Mr. Alfano was currently functioning safely at a sedentary level for an 8 hour period according to NY Department of Labor standards. (CLICNY 725).

Because Mr. Alfano's regular occupation of wage and salary manager is a sedentary occupation, CLICNY determined that he was capable of performing his regular occupation and therefore was not disabled pursuant to the Policy definition of disability. Mr. Alfano was notified of the termination of his benefits by letter dated September 28, 2005 from CLICNY claims manager Mark Sodders.

Plaintiff appealed CLICNY's decision twice, and it was upheld each time because the

additional evidence submitted by plaintiff in support of each appeal did not establish that he was disabled pursuant to the Policy definition, including the fact that the additional information did not change the conclusion of the FCE that he was capable of sedentary work for an 8 hour period according to NY Department of Labor standards. (CLICNY 629-30, 655-56).

The information submitted by plaintiff in support of his first appeal was reviewed internally by Kay Rhodes, NCM, and Dr. Mendez. Ms. Rhodes, on March 3, 2006, noted that the "additional medical provided is insufficient to support a change in severity of deficits that significantly impacts function after the FCE." (CLICNY 34-35). Dr. Mendez, on March 28, 2006, after reviewing the file and additional records reviewed that "FCE reviewed along with job requirements. Validity measures met. Exam concluded Mr. Alfano was able to perform his sedentary level work duties. So original decision remains supported." (CLICNY 657).

Plaintiff was notified of the decision on appeal by letter from claim manager Noemi Landis dated March 29, 2006. (CLICNY 655-56). The letter explained the basis for the decision, including that everything had been reviewed by a medical director who stated that the validity measures were met and that the FCE concluded that Plaintiff was able to function at a sedentary capacity. The new information submitted did not provide any clinical findings that would alter the functional abilities demonstrated in the FCE. The letter further stated that CLICNY understood that he had spinal stenosis, but that "the presence of a condition, diagnosis, or treatment plan does not equate disability under the policy. Based on the documentation on file regarding your functionality you do not meet the definition of Disability and we must affirm the previous denial of your claim." (CLICNY 655-56).

Following Plaintiff's submission of his second appeal, a peer review was done by orthopedic surgeon Dr. Weiss. (CLICNY 631-34). After reviewing the entire file, Dr. Weiss

opined that the restrictions and limitations given by Plaintiff's treating physicians were not supported by documentation from October 27, 2005 to the present. (Id.). Dr. Weiss further stated that the July 26, 2005 FCE recommended sedentary work duties, and that the claimant would be capable of sedentary duty, but would be restricted from prolonged sitting and would require intermittent sitting. (Id.) Plaintiff would also be restricted to limited walking, not greater than one block. (Id.).

Plaintiff's appeal was denied based on previous documentation received by CLICNY and Dr. Weiss' report and Plaintiff was notified by letter from Medha Bharadwaj, ACM, dated December 7, 2006. The letter noted, among other things, that a peer review had been done by Dr. Michael Weiss of all the medical information in file, and he concluded that the file did not support limitations and/or restrictions precluding Mr. Alfano from functioning in a sedentary capacity. (CLICNY 629-30).

Under ERISA, CLICNY is not required to defer to the conclusions of Plaintiff's treating physicians; the treating physician rule that is used in the context of Social Security disability determinations is not applicable in the ERISA context. Black & Decker Disability Plan v. Nord, 538 U.S. 822, 831 (2003); Mood v. Prudential Ins. Co. of Am., 379 F. Supp. 2d 267, 281 (E.D.N.Y. 2005). Therefore, although Plaintiff's treating physicians opined that he is totally disabled, this is not binding on CLICNY, and CLICNY may use rely on  the credible opinions of other medical professionals, id, which it did.

For the reasons given above, CLICNY's decision was based on substantial evidence that Mr. Alfano was not disabled pursuant to the Policy definition of disability, and so therefore was no longer eligible to receive long term disability benefits. See Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 441 (2d Cir. 2006) ("The placement of the burden of proof is a question

of law . . . All parties agree that 'as a matter of general insurance law, the insured has the burden

of proving that a benefit is covered.'" (citation omitted)).


## 2. CLICNY Properly Considered Plaintiff's Occupational Requirements in Making its Determinations

Throughout its reviews of Plaintiff's claim and consideration of his appeals, CLICNY

considered Plaintiff's occupational requirements, and properly concluded that he was capable of

performing them based on the medical records on file. As part of the initial review of Plaintiff's

claim, on February 6, 2001, claim manager Lara D'Ambrosio spoke to Rosemary Cius of Weill

Medical College's human resources department to clarify the Plaintiff's occupational

requirements. (CLICNY 382). Ms. Cius stated that his job is sedentary, that the Plaintiff had the

ability to get up and move about as needed, and that the job required no lifting. (Id.). CLICNY

also received and considered two position descriptions for Plaintiff's position. The first, dated

March 1999 for the position of Wage and Salary Manager, was received from WMC in

December 2000 with the submission of Plaintiff's initial long term disability claim. (CLICNY

529-31). The position description summarizes the position as: "Under general direction, is

responsible for the administration of WMC's non-academic Wage and Salary program, the

annual performance appraisal program, and temporary employee administration," and includes a

list of seventeen position activities. (CLICNY 529-31). The description also lists the following

minimum requirements: "College degree with courses in statistics and minimum of five years of

managerial wage and salary experience, with in-depth knowledge of point-factor compensation

systems; plus a background including experience in employee relations. Excellent written and

oral communication skills, supervisory skills, and knowledge of mainframe payroll/personnel

systems and micro computers required." (CLICNY 531). Another version of the position description for "Manager, Compensation," dated September 2000, was submitted by Mr. Alfano with his December 2000 disability questionnaire and was also received from WMC in 2002. (CLICNY 272-73). The position summary is: "Under the general direction of the Senior Director, Human Resources, administers the non-academic compensation program to ensure internal and external equity and compliance with internal policy and federal and local laws governing wage and salary," and the description included a list of six major responsibilities. (CLICNY 272-73). It also included the following physical requirements: "Work performed in modern office environment. Most work performed sitting at desk. Must be able to use Personal Computer, telephone, copier, facsimile, calculator on a daily basis. Must be able to sit for extended periods." (CLICNY 273).

Prior to the termination of benefits, several additional vocational reviews using plaintiff's restrictions and limitations and also the definition of disability of plaintiff's regular occupation. First, an exploratory TSA was conducted by Rosemary Jenkins on November 18, 2004 using the PAA from Dr. Roach dated October 20, 2004 and information from claimant's disability questionnaire and job description. (CLICNY 73). The Policy definition of disability also mandated a wage requirement of 80% of plaintiff's Indexed Covered Earnings. Using the OASYS edition, Ms. Jenkins identified nine occupations identified as with potentially transferable skills. Of these, four are within the Professional and Kindred industry: personnel manager (dot # 166.117-018), employment manager (dot # 166.167-030), employment agency manager (dot # 187.167-098), department manager (dot # 189.167-022). (Id., CLICNY 69).

The results of the exploratory TSA were then reviewed by Holly Jule, VRC on December 13, 2004. (CLICNY 69, 944-52). She found that four sedentary positions identified by Ms.

Jenkins, including Plaintiff's own occupation, which fell into the definition of Personnel

Manager, met the target wage and allowed for the ability to get up and move about, alternate sit,

stand and walk at the employee's discretion. (Id.). According to Rosemary Cius of WMC,

Plaintiff's individual job allowed for alternating positions. (CLICNY 382).

A formal TSA was done by Ginny Schmidt, VRC on August 9, 2005 based on limitations

and restrictions identified by the July 26, 2005 FCE. (CLICNY 718). Her report stated that the

Policy contained the regular occupation definition of disability, requiring that he be unable to

perform all the material duties of his regular occupation, or an inability to earn more than 80% of

his indexed basic monthly earnings. (Id.). Ms. Schmidt considered Plaintiff's current and past

occupations, education and training, and also applied the following limitations and restrictions:

sedentary occupation with no significant lifting or carrying, with the occasional ability for

sitting, standing, walking, and must allow to change position when necessary. (Id.). Ms. Schmidt

identified Plaintiff's own occupation and several others, which all met the skills, education, work

history, and wage replacement requirements, and which would allow personal autonomy and the

ability to accommodate himself for physical positions throughout the work day. (Id.).

The Policy definition of disability requires that the plaintiff be incapable of performing

the material duties of his own occupation, so admittedly the inquiry whether he could do other

occupations was not necessarily determinative. However, the results of these analyses are still

relevant and support CLICNY's decision because they concluded that, not only did he have the

capabilities of performing his regular occupation, he could do so as he had previously done it.

It is important to remember that the applicable definition of disability that requires that

the Plaintiff be unable to perform his regular occupation (and does not ask whether he is able to

do any occupation for which he may be suited), it is still broader than asking whether he can

2054646.1                                17

perform his own job as he did it previously. In Dawes, Judge Wood stated that "the applicable definition of 'regular occupation' shall be a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties" and is "defined more narrowly than any means for making a living, but is not limited to the insured's particular job." Dawes v. First Unum Life Ins. Co., 851 F. Supp. 118, 122 (S.D.N.Y. 1994). In Kinstler, the Second Circuit endorsed Judge Wood's definition, and also held that the determination of regular occupation "may not be defined without some consideration of the nature of the institution where she was employed. Though her 'regular occupation' is not to be defined so narrowly as to include only the characteristics of her job . . . it must be defined as a position of the 'same general character' as her job . . ." Kinstler v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 252-53 (2d Cir. 1999).

Here, CLICNY determined, through the use of vocational rehabilitation professionals, that, considering the position descriptions provided by Plaintiff's employer as well as the definition of the requirements of positions with the same general character of his previous job, that he had the capabilities to perform his regular occupation. His prior position was sedentary, and the medical evidence showed that he was not disabled from doing a sedentary job of that nature. Also, although his previous job involved mainly sitting, Rosemary Cius of WMC stated that his job allowed for alternating positions, indicating that it did not require him to sit at his desk for eight straight hours without breaks. Therefore, CLICNY properly utilized the available occupational information in determining that Plaintiff was able to perform his regular occupation beginning October 27, 2005, and so did not meet the Policy's definition of disability, making him ineligible for long term disability benefits.

<u>Conclusion</u>

For the reasons set out above, CLICNY's decision was supported by substantial evidence, as Plaintiff did not establish his eligibility for long term disability benefits. Therefore, Plaintiff's Complaint should be dismissed and judgment entered on behalf of CIGNA Life Insurance Company of New York.

Dated:     White Plains, New York
           July 25, 2008

                          Respectfully submitted,

           WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

                          By: _____
                          Fred N. Knopf (FNK 4625)
                          Emily A. Hayes (EH 5243)
                          *Attorneys for the Defendant CIGNA Life Insurance*
                          *Company of New York*
                          3 Gannett Drive
                          White Plains, New York 10604
                          (914) 323-7000

CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2008, the foregoing Memorandum of Law in Support of Defendant CLICNY's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

Emily A. Hayes (EH 5243)
3 Gannett Drive
White Plains, New York 10604-3407
Phone (914) 323-7000
Facsimile (914) 323-7001
emily.hayes@wilsonelser.com