

- 2 -

VICODIN 5/500 TABLET / 1 tab po q 4 h prn
TRIAMCINOLONE 0.1% CREAM / apply bid
VIOXX 50MG TABLET / 1 tab po qd
CELEXA 20MG TABLET / 1 po qd
ZESTRIL 20MG TABLET / 1 po qd
PREVACID 30MG CAPSULES / 1 po qd
IMITREX NASAL SPRAY 20MG/SPRAY / 1 spray intranasally prn
IMITREX 50MG TABLET / 1-2 tabs with onset of migrain
ASPIRIN 81MG TABLET EC / 1 po qd
WELLBUTRIN SR 150MG TABLET / 1 tab po bid

The patient was referred to Dr. Michael Alexindes who is an orthopedist. He has been treating Mr. Alfano for numerous injuries since May 15, 1996. On June 5, 2000 Mr. Alfano ceased working due to low back pain radiating into the left leg and causing pain in the leg. He exhibited a positive straight leg raising test and weakness of the left lower extremity, as demonstrated in heel-toe walking tests.

On June 9, 2000 Mr. Alfano had an MRI taken. The results specified that he suffers from moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end-plate marrow changes, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation, with impingement of the exiting L5 nerve root and moderate spinal stenosis. EMG/NCV studies taken on July 20, 2000 show that he suffers from an L5-S1 radiculopathy, with an antalgic gait. He cannot perform heel-toe walking and has decreased sensation in the left lower extremity. Further MRI studies taken on August 18, 2001 show that he also has mild stenosis and narrowing of the neural foramina at the L4-5 level of the spine as well as impingement on the thecal sac at L5-S1.

Based on the foregoing, Mr. Alfano has been diagnosed as suffering from L5-S1 spondylosis with stenosis and radiculopathy. Treatment has been prescribed in the form of physical therapy, epidural injections and antiflammatory medication. The possibility of surgery has also been discussed to correct this condition. Based on all of this conservative treatment, in his opinion, Dr. Alexiades feels that his prognosis is poor. I agree with Dr. Alexiades.

With regard to whether Mr. Alfano can return to work, I believe that he is totally disabled and should not return to work. He experiences constant pain. He must lie down for approximately one-half to two hours per day because of fatigue associated with his pain. He cannot sit, stand or walk for any prolonged period of time (i.e., 15-20 minutes), and cannot lift or carry anything weighing over five pounds. Moreover, his condition has essentially been the same since June 5, 2000, and all of these limitations have been applicable since that time. I remain hopeful that with proper treatment (which is increasingly likely to include surgery) that Mr. Alfano will be able to work, however, at this time, it is therefore my medical opinion that Mr. Steven Alfano has been totally disabled since June 5, 2000. Please consider this letter in connection with his claim for Long Term Disability benefits.

FROM: EVA MEANO/STEVEN ALFANO   TO: AL___OHEN

DATE: 7/29/02  TIME: 6:01:52 PM    PAGE 4 OF 4

- 3 -

If you have any questions, please call me at the number above.

Sincerely,

Keith Rosch, MD

CLICNY 0252

FROM :EVA ALFANO/STEVEN ALFANO   TO:ADAM COHEN            DATE:7/29/02  TIME:10:32:04 AM          PAGE 3 OF 4

**Michael M. Alexiades, M.D.**
159 East 74th Street
New York, NY 10021
212-734-1288

July 12, 2002

Re: Mr. Steven Alfano

To Whom It May Concern:

I have been treating Steven Alfano for numerous injuries since May 15, 1996.

On June 15, 2000, Mr. Alfano ceased working due to low back pain radiating into the left leg and causing pain in the leg. He exhibited a positive straight leg raising test and weakness of the left lower extremity, as demonstrated in heel-toe walking test.

An MRI taken on June 9, 2000 revealed that Mr. Alfano suffers from moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end plate marrow changes, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation, with impingement of the exiting L5 nerve root and moderate spinal stenosis. EMG/NCV studies taken on July 20, 2000 show that he suffers from an L5-S1 radiculopathy, with an antalgic gait. He cannot perform heel-toe walking and has decreased sensation in the lower left extremity. Further MRI studies taken on August 18, 2001 show that he also has mild stenosis and narrowing of the neural foramina at the L4-5 level of the spine as well as impingement on the thecal sac at L5-S1.

Based on the foregoing, as well as my own clinical testing, I have diagnosed Mr. Alfano as suffering from lumbar spondylosis with stenosis and radiculopathy. He has received treatment in the form of physical therapy, epidural injections and anti-inflammatory medication.  Unfortunately, despite conservative treatment he continues to be symptomatic and has a poor prognosis and surgery has been discussed.

Mr. Alfano experiences pain and must lie down for approximately one-half to two hours per day because of fatigue associated with his pain. He cannot sit, stand or walk for any prolonged period of time (i.e., 15-20 minutes) and cannot lift or carry anything weighing over five pounds. His condition has essentially been the same since June 5, 2000 and all of these limitation have been applicable since that time and therefore remains totally disabled

CLICNY 0253

FROM: IVA ALIANO/STEVEN ALIANO   TO: ... OHIN          DATE: 2/07/01 TIME: 10:... AM          PAGE 3 OF 4

since,

Please consider this letter in connection with his claim for Long Term Disability benefits.

If I can be of further assistance, please do not hesitate to contact me at the above number.

Sincerely,

Michael N. Alexiades, M.D.

MNA:vjp



TELEPHONE
(212) 734-1288

FAX # (212) 288-1524

**MICHAEL M. ALEXIADES, M.D., P.C.**
ORTHOPAEDIC SURGERY

BY APPOINTMENT

159 EAST 74TH STREET
NEW YORK, NY 10021

CLICNY 0255

LAW OFFICES OF
## ADAM S. COHEN
81 MAIN STREET, SUITE 300
WHITE PLAINS, NEW YORK 10601

9·16·02

CIGNA-D212

(914) 421-0080
(718) 681-3907
FAX: (914) 421-0098

ADAM S. COHEN*

1015 GRAND CONCOURSE
BRONX, NY 10452

DONALD H. SILVERMAN
ROBIN A. BROGAL
OF COUNSEL

September 13, 2002

0 W. PROSPECT AVENUE
MT. VERNON. NY 10550

*ADMITTED IN NY AND CT

TARRYTOWN

NOT SAME

Mary D. Ryan
Case Manager
CIGNA Group Insurance
Disability Appeals Team
12225 Greenville Ave., 5th Floor
Dallas, Texas 75243

Re:        Steven Alfano
SS#        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
Policy #   NYK 1972
Policy Name: Weill Medical College
Underwriter: Life Ins. Company of America

Dear Ms. Ryan:

We are writing to inform you that Steven Alfano has been found totally disabled by the Social Security Administration, as of June 5, 2000. You may recall that he is also claiming that he is totally disabled as of June 5, 2000 in this case as well.

We hereby assert that this decision should be determinative in his claim for Long Term Disability benefits. The Social Security Administration adjudicated that same claim, with the same evidence and ruled that Mr. Alfano has been disabled since June 5, 2002. We would expect that CIGNA would naturally reach the same result.

Please consider this decision as evidence of Mr. Alfano's disability. Moreover, please inform us when a decision has been reached in this matter.

Very truly yours,

Adam S. Cohen, Esq.

ASC/ac
encl.
cc:    Steven Alfano

 **SOCIAL SECURITY ADMINISTRATION**

Refer To: 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



Office of Hearings and Appeals
226 E. 161st St.
2nd Floor, Suite 4
Bronx, New York 10451

Date: AUG 2 7 2002

SEP 05 2002

DATE MAILED

Steven A. Alfano
3800 Waldo Avenue
Apt. 13G
Bronx, NY 10463

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

### This Decision Is Fully Favorable To You

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another office may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

### The Appeals Council May Review The Decision On Its Own

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

### If You Disagree With The Decision

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

### How To File An Appeal

To file an appeal you or your representative must request the Appeals Council to review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the Appeals Council, Office of Hearings and Appeals, 5107 Leesburg Pike, Falls Church, VA 22041-3255. Please put the Social Security number shown above on any appeal you file.

See Next Page

CLICNY 0257



Steven A. Alfano (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)

Page 2 of 3

## Time To File An Appeal

To file an appeal, you must file your request for review within 60 days from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

## Time To Submit New Evidence

You should submit any new evidence you wish to the Appeals Council to consider with your request for review.

## How An Appeal Works

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J) and Part 416 (Subpart N).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It will review your case if one of the reasons for review listed in our regulations exists. Section 404.970 and 416.1470 of the regulation list these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

## If No Appeal And No Appeals Council Review

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

Steven A Alfano (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)

Page 3 of 3

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is 212-740-0936. Its address is 4292 Broadway, New York NY 10033.

Kenneth L. Scheer
Administrative Law Judge

cc:   Adam S. Cohen, Esq.
      81 Main Street, Suite 300
      White Plains, NY 10601

## SOCIAL SECURITY ADMINISTRATION
### Office of Hearings and Appeals

### DECISION

| IN THE CASE OF | CLAIM FOR |
|---|---|
| | Period of Disability, Disability Insurance Benefits, and Supplemental Security Income |

Steven A Alfano
_____
(Claimant)

_____
(Wage Earner)

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
_____
(Social Security Number)

This case is before the undersigned Administrative Law Judge pursuant to a request for hearing filed on July 30, 2001. (Exhibit 2B). I carefully have considered the documents identified in the record as exhibits. Every reasonable effort has been made to develop the medical record pursuant to 20 CFR §§ 404.1512 and 416.912. I find that the evidence of record is adequate to reach a conclusion regarding the claimant's disability and that no further evidence is required in this case. Any evidence received after the hearing has been proffered to the claimant.

### PROCEDURAL HISTORY

The claimant filed an application for Title II Disability Insurance benefits and an application for Title XVI Supplemental Security Income benefits on February 21, 2001, alleging disability based on obesity, an arm problem, a back problem and hypertension as of June 5, 2000. His applications were denied initially only. Because this is a prototype claim, no reconsideration determination was rendered. Thereafter, the claimant filed a timely request for hearing before an Administrative Law Judge on July 30, 2001. (Exhibits 1A; 1B; 2B; 1D).

Accordingly, after proper notice, a hearing was held before me on August 1, 2002 at the Office of Hearings and Appeals in Bronx, New York. The claimant personally appeared and testified before me, as did Adam Cohen, Esq., who represents the claimant in this matter. Edna Clark, who testified in her capacity as a vocational expert witness, was also present at the hearing.

### ISSUES

The general issue to be determined in this case is whether the claimant is "disabled" within the meaning of the Social Security Act ("Act"). The Act defines "disability" as the inability to

Steven A Alfano (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)                                    Page 2 of 8

engage in any substantial gainful activity due to physical or mental impairment(s) which can be
expected to either result in death or last for a continuous period of not less than twelve months.
20 CFR §§ 404.1505, 416.905. The specific issues are whether the claimant was under a
disability as defined in the Act and, if so, when such disability commenced and the duration
thereof.

In order to meet the requirements of Title II of the Act, the claimant must be found disabled on or
before December 31, 2005, the date the claimant will be last insured for Title II benefits.
(Exhibit 2D). In order to meet the requirements of Title XVI of the Act, the claimant must be
found disabled on February 21, 2001, the filing date of the Title XVI application, or thereafter.

## EVALUATION OF THE EVIDENCE

After an evaluation of the entire record and for the reasons set forth below, I find that the
claimant has been disabled since June 5, 2000, the alleged onset date of disability. Therefore, the
claimant is entitled to a period of disability commencing June 5, 2000, and to Disability
Insurance benefits, and he is eligible for Supplemental Security Income benefits.

Born January 14, 1958, the claimant is currently 44 years old and he was 42 years old on the
alleged onset date of disability, both of which is characterized by the Regulations as a "younger
person." 20 CFR §§ 404.1563, 416.963. He is a college graduate. 20 CFR §§ 404.1564,
416.964. The claimant's past relevant work experience includes that of a wage and salary
administrator, a personnel administrator, and a personnel analyst, jobs Edna Clark, the vocational
expert witness, testified were exertionally sedentary to light, skilled jobs. Ms. Clark further
testified that the claimant acquired transferable skills performing these jobs. These transferable
skills included planning, developing, supervising, interpersonal communications, record keeping,
and report writing. (Exhibits 2E; 7E; the claimant's testimony). 20 CFR §§ 404.1567, 404.1568,
416.967, 416.968.

The Regulations provide a five-step sequential evaluation to be followed when reviewing the
question of whether the claimant is disabled. If it is determined that the claimant is or is not
disabled at any point in the review, no further review is necessary.

The first step of the sequential evaluation involves an inquiry into the claimant's participation in
substantial gainful activity from June 5, 2000, the alleged onset date of disability. Regulation
20 CFR Sections 404.1572 and 416.972 defines substantial work activity as work that involves
doing significant physical or mental activities. Work can be considered substantial even if it is
done on a part-time basis or if less money is earned or work responsibilities are lessened from
previous employment. Gainful work activity is the kind of work usually done for pay or profit,
whether or not a profit is realized. The evidence of record and the claimant's testimony establish
that the claimant has not performed substantial gainful activity at all relevant times. 20 CFR §§
404.1571, 416.971.

In step two of the sequential evaluation process, I find that the claimant has the following
impairments, which are considered to be "severe" within the meaning of the Social Security Act
and Regulations: 1) spinal stenosis; and 2) L5-S1 spondylosis. These impairments are "severe"



Steven A. Alfano (099-44-96~~~)                                    Page 3 of 8

because they impose more than a minimal or slight limitation on the claimant's ability to perform basic work-related activities. 20 CFR §§ 404.1520(c), 416.920(c), Social Security Ruling 96-3p.

At step three of the sequential evaluation process, I find that the claimant does not have clinical or laboratory findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulations No. 4 ("Listings"). No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment. Therefore, the claimant's residual functional capacity must be assessed to determine whether he can perform his prior work or any other work that exists in significant numbers in the national and regional economies.

Diagnostic studies include a June 9, 2000 MRI of the lumbosacral spine, which showed moderate to severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end plate marrow changes, an annular disc bulge, facet osteoarthritis, a prominent posterolateral osteophyte formation with impingement of the exiting L5 nerve root, and moderate spinal stenosis. (Exhibits 2F, p. 2; 13F, p. 1; 14F, p. 1). An August 18, 2001 MRI of the lumbar spine showed moderate to severe L5-S1 spondylosis, posterior disc osteophyte complex at L5-S1 causing moderate spinal stenosis, and mild L4-5 spinal stenosis. (Exhibit 14F, p. 6).

Treatment has included epidural steroid injections, which have provided only mild benefit (Exhibits 9F; 14F, p. 1), and physical therapy (Exhibit 13F, p. 1). Other medications have included Triamcinolone, Vioxx, Celexa, Zestril, Prevacid, Imitrex and aspirin. (Exhibit 14F, p. 7).

Further, a May 31, 2001 treating report lists a diagnosis of left L5/S1 radiculopathy and herniated disc with symptoms to include back and left leg pain. The report also notes that the claimant cannot sit for long periods of time. Findings of a physical exam were unremarkable. (Exhibit 5F).

Andrew Schiff, M.D., referred the claimant to the Electromyography Laboratory of Beth Israel Medical Center on July 20, 2000 for possible left lumbosacral radiculopathy. The report notes that 2 months prior, the claimant made a sudden movement and felt sudden lower back pain and stiffness. A few days later, the pain radiated into the left buttock, posterior thigh and the ankle. The report further indicates that the claimant has had lower back pain since a 1997 car accident that is aggravated by sitting for long periods. Examination revealed full motor strength of 5/5 in all groups, although there was some give-way in left plantar and dorsiflexion of the foot and toes. His gait was slightly antalgic. He was able to stand, but not walk, on his heels and toes. A sensory exam revealed diminished pin in the left lateral border of the foot and vibration was impaired in the great toes bilaterally. Electrophysiologic findings included prolonged left tibial and bilateral peroneal F-wave minimal latencies. The final medical impression included nonspecific neurogenic abnormalities in both legs of "uncertain significance" and late responses were prolonged bilaterally. These findings did not clearly differentiate bilateral L5/S1 radiculopathies from mild polyneuropathy. However, the report concludes that the clinical and electrophysiologic features taken together suggest left S1 more than L5, radiculopathy. There was no associated weakness or reflex change. The claimant was advised to avoid lifting objects weighing more than 10 pounds. (Exhibit 14F, pp. 1-2).

Steven A Alfano (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)

The claimant also has received treatment at the New York Presbyterian Hospital. A February 12, 2002 follow-up session revealed a positive straight leg raising test bilaterally, decreased muscle strength to 4/5 in the quadriceps and decreased left patellar reflex. (Exhibit 13F, 7F).

Michael Alexiades, M.D., an orthopedic surgery, has also treated the claimant beginning in 1996. His July 12, 2002 letter indicates that the claimant stopped working on June 18, 2000 due to low back pain radiating into the left leg and causing pain in the left leg. He exhibited a positive straight leg raising test and weakness of the left lower extremity, as demonstrated in heel-toe walking. Dr. Alexiades has diagnosed the claimant with lumbar spondylosis with stenosis and radiculopathy. He notes that despite conservative treatment, including physical therapy, epidural injections and anti-inflammatory medication, the claimant continues to be symptomatic and has a poor prognosis. (Exhibit 13F).

Dr. Alexiades' February 2002 report records symptoms of left leg pain and numbness with associated back pain. He notes clinical findings to include a positive straight leg raising test, and weakness on walking on his toes. Dr. Alexiades also records the findings of the diagnostic studies aforementioned. He concludes that the claimant's prognosis is poor. (Exhibit 11F).

Steven Rocker, M.D., conducted a consultative exam on April 21, 2001, during which the claimant reported his back pain, for which he was attending physical therapy. Examination of the lumbar spine revealed no tenderness or spasm but restricted range of motion – forward flexion was subjectively limited to 30 degrees and lateral flexion to 15 degrees bilaterally. A neurological exam revealed a positive straight leg raising test to 30 degrees on the left. Further, Dr. Rocker observed that the claimant had some difficulty sitting up from a lying position. Examination also included a lumbosacral spine x-ray that revealed mild degenerative changes, and negative chest and right shoulder x-rays, and a normal EKG. (Exhibit 4F).

In evaluating the claimant's complaints regarding all symptoms, I have considered the nature, location and intensity of the pain and other symptoms, any precipitating or aggravating factors, the effectiveness of medication and other treatment, and the claimant's daily activities, under the rationale of 20 CFR § 416.929, and Social Security Ruling 96-7p, which relate to the evaluation of all symptoms.

The claimant testified before me that he experiences daily pain in his legs and back, and must lie down between ½ hour and 2 hours on a daily basis. He also stated that he uses a cane for ambulation, and he reported a significantly reduced self-assessed residual functional capacity. Specifically, he stated that he can walk only 1 block, stand only 10 minutes before experiencing pain, sit only 20 minutes during the course of an 8-hour workday, and lift and carry only a "couple of pounds." I find the claimant's testimony concerning disabling symptoms and limitations generally credible as it is well supported by the balance of the record and by the opinions of treating and examining sources, noted below.

Based on the aforementioned medical evidence and the opinions noted below, I find that the claimant has a residual functional capacity for sedentary work activity as that term is defined by the Regulations with limitations. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools.

Steven A Alfano (099-44-96~~46~~)                                    Page 5 of 8

Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally. 20 CFR §§ 404.1567(a), 416.967(a). However, the claimant requires the option to sit and stand at will, and he must lie down at least ½ hour to 2 hours each day, thereby limiting his ability to perform a full range of sedentary work activity.

One of the claimant's treating physicians, Michael Alexiades, M.D., notes in a July 12, 2002 report that the claimant must lie down for approximately ½ hour to 2 hours per day due to fatigue associated with his pain. Further, he notes that the claimant cannot sit, stand or walk for any prolonged period of time, and he cannot lift or carry anything weighing over 5 pounds. He further notes that the claimant's condition has essentially been the same since June 2000. (Exhibit 13F).

Dr. Alexiades provided a residual functional capacity assessment dated February 7, 2002, in which he again notes that the claimant must lie down approximately ½ hour to 2 hours each day. He adds that the claimant can sit 2 hours continuously during an 8-hour workday, walk less than 1 hour continuously during an 8-hour workday, and stand less than 1 ½ hour during an 8-hour workday. (Exhibit 11F).

Another treating physician, Keith Roach, M.D., completed a residual functional capacity assessment, dated February 12, 2002, in which he too notes that the claimant must lie down ½ hour to 2 hours each day. He also indicates that the claimant can lift and carry up to 5 pounds, sit up to 2 hours during an 8-hour workday, stand up to 1 hour during an 8-hour workday, and walk up to 1 hour during an 8-hour workday. (Exhibit 12F).

In light of these opinions, I accord no weight to Dr. Rocker's consulting opinion that the claimant is capable of performing sedentary, light and most moderate work activities. (Exhibit 4F).

Thus, I find it reasonable to conclude that the claimant is capable of performing sedentary work as that term is defined by the Regulations with the aforementioned limitations.

At step four of the sequential evaluation, I must determine whether the claimant can return to his past relevant work. Given his residual functional capacity for sedentary work with the aforementioned limitations, as confirmed by vocational expert testimony, the claimant is precluded from performing all of his past relevant work activity given his need to sit and stand at will and his need to lie down approximately ½ hour to 2 hours during each day.

Once the claimant has established that he can no longer perform his past relevant work activity, in accordance with Acquiescence Ruling 00-4(2), the burden shifts to the Commissioner to show that the claimant has the residual functional capacity to perform other jobs existing in significant numbers in the national economy.

In order to define the claimant's vocational profile, Edna Clark, a fully qualified vocational expert, appeared and testified before me on August 1, 2002 at the Office of Hearings and Appeals in Bronx, New York. Having reviewed the record, Ms. Clark was asked to assume a person of the same age, education, past relevant work activity and residual functional capacity as the claimant.

Steven A Alfano (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)



Page 6 of 8

She then was asked whether such a person could perform other jobs that exist in significant numbers in the national and regional economies.

In response to the hypothetical question posed, Ms. Clark testified that there are no jobs that exist in significant numbers in the national and regional economies that such a person could perform given his limitations. Ms. Clark concluded that, given the claimant's limitations, he could not perform gainful employment on a full time basis in the real work world.

I believe that the assumptions given to the vocational expert appropriately trace the claimant's actual educational-vocational profile and appropriately coincide with his residual functional capacity so that the expert's responses are entitled to substantial weight.

Therefore, the claimant was under a "disability" within the meaning of the Social Security Act and Regulations beginning June 5, 2000, the alleged onset date of disability. Therefore, he is entitled to a period of disability commencing June 5, 2000 and to Disability Insurance benefits, and he is eligible for Supplemental Security Income benefits.

In reaching this conclusion, I have considered the prior conclusions from State Agency reviewing physicians. Such conclusions were given little weight because they were made by non-examining physicians for whom the whole record considered in this decision was not available.

### FINDINGS

After consideration of the entire record, I make the following findings:

1. The claimant was last insured for Title II Disability Insurance benefits on December 31, 2005. (Exhibit 2D).

2. The claimant has not performed substantial gainful activity at all relevant times. 20 CFR §§ 404.1571, 416.971.

3. The claimant's impairments, which are considered to be "severe" under the Social Security Act, are: 1) L5-S1 spondylosis; and 2) spinal stenosis. 20 CFR §§ 404.1520(c), 416.920(c), Social Security Ruling 96-3p.

4. The claimant's impairments, singly or in combination, do not meet or equal in severity the appropriate medical findings contained in 20 CFR Part 404, Appendix 1 to Subpart P (Listing of Impairments).

5. The objective medical evidence establishes that the claimant had a residual functional capacity for sedentary work activity. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally. 20 CFR §§ 404.1567(a), 416.967(a). However, the claimant requires an option to sit and stand at will and must lie

Steven A Alfano (099-44-964?)                                                        Page 7 of 8

down approximately ½ hour to 2 hours each day, thereby limiting his ability to perform a
full range of sedentary work activity.

6.  The claimant's testimony of disabling symptoms and limitations generally is generally
    credible as it is well supported by the balance of the medical report.

7.  The claimant's past relevant work experience includes that of a wage and salary
    administrator, a personnel administrator, and a personnel analyst, jobs Edna Clark, the
    vocational expert witness, testified were exertionally sedentary to light, skilled jobs. Ms.
    Clark further testified that the claimant acquired transferable skills performing these jobs,
    including planning, developing, supervising, interpersonal communications, record keeping,
    and report writing. (Exhibits 2E; 7E; the claimant's testimony). 20 CFR §§ 404.1567,
    404.1568, 416.967, 416.968.

8.  Born January 14, 1958, the claimant is characterized as a "younger person" at all
    relevant times, and he is a college graduate. 20 CFR §§ 404.1563, 404.1564, 416.963,
    416.964.

9.  Edna Clark, the vocational expert witness, testified that there are no jobs that exist in
    significant numbers in the national and regional economies that such a person could perform
    given the claimant's limitations. Ms. Clark concluded that, given the claimant's limitations,
    he cannot perform gainful employment on a full time basis in the real work world.

10. I believe that the assumptions given to the vocational expert appropriately trace the
    claimant's actual educational-vocational profile and appropriately coincide with his
    residual functional capacity so that the expert's responses are entitled to substantial
    weight.

11. I certify that there is sufficient evidence to support the findings regarding the claimant's
    residual functional capacity at step five and that evidence can be found throughout this
    decision.

12. The claimant was under a "disability" as is defined in the Social Security Act since June
    5, 2000, the alleged onset date of disability. 20 CFR §§ 404.1520, 416.920.

13. The claimant is entitled to a period of disability from June 5, 2000, and to Disability
    Insurance benefits, and is eligible for Supplemental Security Income benefits.

## DECISION

It is the decision of the Administrative Law Judge that, based on the application filed on
February 21, 2001, the claimant is entitled to a period of disability commencing June 5, 2000 and
to Disability Insurance Benefits under sections 216(i) and 223, respectively, of the Social
Security Act.

Steven A Alfano (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)



Page 8 of 8

It is the further decision of the Administrative Law Judge that, based on the application filed on February 21, 2001, the claimant was disabled under section 1614(a)(3)(A) of the Social Security Act, beginning June 5, 2000, and that the claimant's disability has continued at least through the date of this decision.

The component of the Social Security Administration responsible for authorizing Supplemental Security Income payments will advise the claimant regarding the nondisability requirements for these payments, and if eligible, the amount and the months for which payment will be made.

Kenneth L. Scheer
Administrative Law Judge

AUG 27 2002

Date

CLICNY 0267

**MAIL ROUTE SLIP**

DATE: 6/20/02

From: Mary Regan

Phone #: 1249

RE:

CX Name: Steven Alfaro

Policy #: NYK 1972

Policy Holder Name: Weill Medical College

Other: _____

*********************************************************

WITHIN TARRYTOWN CLAIM OFFICE: (direct to specific employee or unit if known)

To: _____

STD Unit     2nd floor ☐     3rd floor ☐

LTD Unit     2nd floor ☐     3rd floor ☐

*********************************************************

OUTSIDE OF TARRYTOWN CLAIMS OFFICE: (direct to specific employee or unit if known)

To: Appeals Team - Active Appeal.

Dallas route - 212 ☐ ☒ Pittsburgh route - 250 ☐ Home Office General route - TLP10 ☐

Rochester route - 238 ☐ Other _____ route _____

CLICNY 0268

*Policy / Coverage Nos. N?X0001972*
*Integrated STD/LTD*
*Disability Proof of Loss*



CIGNA Group Insurance
Life. Accident. Disability
Administered by:
Life Insurance Company of North America
Connecticut General Life Insurance Company
Life Insurance Company of New York
CIGNA Claim Office
1(800) 36-CIGNA . 1(800) 362-4402

**CIGNA**

Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purposes of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see enclosure: Colorado, Florida, Maryland, New Jersey, New York, Oregon, Pennsylvania, or Virginia.

| INSTRUCTIONS FOR FILING A CLAIM |
|---|
| This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center. |
| To The Employee: A. Please review this information carefully. |
| B. Make any changes you feel are necessary. |
| C. Sign the section marked Employee Certification and the Disclosure Authorization. |
| D. Return the signed forms to our office. |
| If these instructions are not followed, your claim may be subject to a delay or return. |

| EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| Name of Employee (Last, First, Middle): ALFANO; STEVEN | Date of Birth: 01/14/1958 | Social Security Number: 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 | Sex: ⦿Male ◯Female ◯Unknown |
| Address (Street, Apt): 3800 WALDO AVE. L3-G | | | Telephone No. 718-884- (099)999-9999 2067 |
| City: BRONX | State: NY | Zip Code: 10463 | |

Please describe your condition:
MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS WITH DISC SPACE NARROWING, DISC DESICCATION, A DEGENERATIVE TYPE III END-PLATE MARROW CHANGE, AN ANNULAR DISC BULGE, FACET OSTEOARTHRITIS AND A PROMINENT POSTEROLATERAL OSTEOPHYTE.
+ ALL OTHER INFORMATION ON FILE.

| PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION | | | |
|---|---|---|---|
| **A** Is this an injury? ◯Yes ⦿No ◯Unknown | Date of Injury: | Time of Injury: | Is this work related? ◯Yes ◯No ⦿Unknown |
| Describe the cause of injury: | | | |
| **B** Is this an illness? ⦿Yes ◯No ◯Unknown | Date of illness: 06/01/2000 | | Is this work related? ◯Yes ◯No ⦿Unknown |
| Describe the cause of illness: UNKNOWN | | | |
| **C** Is this an Pregnancy? ◯Yes ⦿No ◯Unknown | Delivery/Due Date: | Delivery Method: | Were there complications? ◯Yes ◯No ◯Unknown |
| Describe the Complications: | | | |

| | | |
|---|---|---|
| Are you currently losing time from work? ⦿Yes ◯No ◯Unknown | If yes, what specifically prevents you from working? ASSOCIATED Pain + IMPAIRMENT - SEE INFORMATION ON FILE | |
| Last Day Worked: 06/05/2000  # hours worked: 0.00 | Date first unable to work: 06/06/2000 | Date You Plan to Return to Work: UNKNOWN |
| Have you had the same or similar condition in the past? ◯Yes ◯No ⦿Unknown | If yes, when did it occur (dates)? | Please describe: |

Please list any states in which you may be liable for filing tax returns.
NY

| Are you receiving any other income or benefits? If so, please complete the following. | | | |
|---|---|---|---|
| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
| | | | |
| | | | |
| | | | |
| | | | |

Page 1 of 2

612256

CLICNY 0269

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| JAMES PARKER<br>61 EAST 77TH STREET<br>NEW YORK, NY 10021 | (212) 772-3112 | Other | 8/31/00 | 12/18/01 |
| MICHAEL ALEXIADES<br>159 EAST 74TH ST.<br>NEW YORK, NY 10021 | (212) 734-1288 | Orthopedic | Approx 1996 | 6/20/02 |
| SCHIFF/ROACH ASSOCIATES<br>CORNELL INTERNAL MEDICINE<br>505 E. 70 ST<br>NY NY 10021 | 212<br>746-2879 | PRIMARY CARE | Approx. 1994 | 6/11/02 |

## EMPLOYMENT INFORMATION

Occupation: WAGE & SALARY MGR.
Date Hired: 05/05/1991  Basic Earnings: $70,000  Frequency: YR YEARLY
Date of last change in earnings:

Please provide a brief description of daily job duties: JOB DESCRIPTION ATTACHED

Please check the appropriate item regarding the employee:
☑ Exempt ☑ Non-Exempt ☑ Management ☑ Non-Management ☑ Supervisory ☑ Non-Supervisory ☑ Salaried ☐ Hourly ☑ Full Time ☐ Part Time  Hours/Week 35 ☐ Union - Local # ☑ Non-Union

Has Employee been laid off? ○ Yes ● No ○ Unknown  Or terminated? ○ Yes ● No ○ Unknown
If yes, please indicate the date and reason: UNABLE TO RETURN TO WORK

STD Policy / Cert. Number: N/A SELF INSURED EMPLOYERS PLAN  Effective date of employee's STD coverage: 9/11/91
Was STD insurance issued on the basis of a statement of physical condition? ○ Yes ● No ○ Unknown

Percent of Employer's STD contribution: ____%
Employee's contributions were made on: ○ Pre-Tax Basis ○ Post-Tax Basis N/A
Premium Paid Thru Date: N/A

LTD Policy / Cert. Number: ___972  Effective date of employee's LTD coverage: 9/11/91
Was LTD insurance issued on the basis of a statement of physical condition? ○ Yes ● No ○ Unknown

Percent of Employer's LTD contribution: 50%
Employer's contributions were made on: ○ Pre-Tax Basis ● Post-Tax Basis
Premium Paid Thru Date: MARCH 2001

## EMPLOYEE WORK LOCATION

Employer Name: NEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY
Address (include Street, City, State & Zip): 445 E. 69TH ST. RM 220  NEW YORK NY 10021
Contact Person: R. CIUS
Telephone No.: (212) 746-1201

## ADDITIONAL EMPLOYERS (If applicable)

| Employer Name: | Title: | Contact Person: |
|---|---|---|
| Address (include Street, City, State & Zip): | | Telephone No.: |

Name of Employee (Last, First, Middle): ALFANO, STEVEN
Social Security Number: 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

### CERTIFICATION
This is to certify the facts as indicated above are true to the best of my knowledge and belief
Signature of Employee: ___
Date of Signature: 6/22/02

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

CLICNY 0270



*Disclosure Authorization*

 

CIGNA Group Insurance
Life • Accident • Disability

**CIGNA**

Insured's Name (Please Print)  ALFANO, STEVEN

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, or pharmacy to give the Insurance Company named below (Company) or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me.  This information and/or records may include, but is not limited to:  I) cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions of advice of my physical or mental condition of information concerning me which may be needed to determine policy claim benefits with respect to Insured.  This may also include (but is not limited to) information concerning: mental illness, psychiatric, alcohol or drug use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome.)

I AUTHORIZE: any financial institution, accountant, tax preparer, insurer or reinsurance consumer reporting agency, insurance support organization, Insured's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim history, work history, and work related activities.

I AUTHORIZE: the Company to contact my employer to investigate and evaluate return to work opportunities.  I understand that in doing so the Company may release medical information and other information related to my physical limitations to my employer.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used by the Company to determine eligibility for claim benefits and any amounts payable with respect to the Claimant. This authorization shall apply to all records, information and events that occur over the duration of the claim. A photocopy of this form is as valid as the original and I or my authorized representative may request one.  I may revoke this authorization at any time for information not then obtained by writing to the Company.  The information obtained will not be released to anyone else EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim; e) for audit or statistical purposes; f) as may be required by law; g) as I may further authorize.

Claimant's Signature  _____  Date: 6/22/02
(Claimant or Claimant's authorized representative)

Relationship, if other than Claimant  _____

Claimant's Social Security Number  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

Insurance Company Name  Life Insurance Company of North America .

617786

CLICNY 0271

Grade: E10

## WEILL MEDICAL COLLEGE of CORNELL UNIVERSITY
## POSITION DESCRIPTION

Position Title: Manager, Compensation

FLSA Status: Exempt

Department: Human Resources

Division:

Incumbent: Steven Alfano

Reports to: Sr Director, Human
Resources

Edited by: Susan McCreight

Date: September 2000

Reviewed by: Susan McCreight

Scheduled Weekly Hours: 35

## I.    POSITION SUMMARY

Under the general direction of the Senior Director, Human Resources,
administers the non-academic compensation program to ensure internal and
external equity and compliance with internal policy and federal and local laws
governing wage and salary.

## II.    MAJOR RESPONSIBILITIES

- Works with the SDHR to develop, implement, communicate and
  administer compensation policies for non-academic employees of WMC to
  ensure competitive compensation, compliance with policy and laws and
  adequate opportunity for reward for performance and promotion.

- Develops and updates a system of compensation ranges to offer
  competitive pay, opportunity for continuing reward and ability to keep pace
  with inflation and employment market issues.

- Develops and maintains relationships with appropriate external
  professionals and professional organizations through informal and formal
  meetings, memberships, etc. to ensure continuing education in the field of
  compensation for the purpose of maintaining sound and up-to-date
  compensation practices that support the employment and retention of
  highly qualified employees.

- Administers a program of job analysis to ensure the assignment of
  appropriate pay scales to all non-academic positions.



- Designs, implements, maintains and oversees the administration of a performance management system for all non-academic employees to ensure accurate documentation of performance, fair and equitable ratings of performance, salary increases tied to performance and regular feedback to employees on matters of job performance.

- Develops and prepares regular reports on compensation matters for presentation to the SDHR (and others as requested) analyzing significant compensation issues, identifying developing trends and recommending plans of action to ensure effective administration of compensation programs at WMC.

## III.     POSITION REQUIREMENTS

Requires undergraduate college degree and a minimum of 7 years in professional human resources capacity, with at least 2 years in a managerial role. Must have at least 3 years in compensation, both exempt and non-exempt. Must have strong organization and analytical skills, have demonstrated ability to creatively solve problems and well-developed interpersonal skills. Needs demonstrated ability to communicate effectively both orally and in writing. Must work well under pressure and be results and deadline-oriented. Ability to work with word processing and spreadsheet softwares required. Must be able to forecast project costs and develop appropriate budget plans.

May be required to work overtime to complete projects on time. Must be a self-starter and be able to effectively manage others. Must have the ability to persuade and influence others.

## IV.     DIRECT REPORTS

Senior Compensation Analyst
Human Resources Clerk

## V.     PHYSICAL REQUIREMENTS

Work performed in modern office environment. Most work performed sitting at desk. Must be able to use Personal Computer, telephone, copier, facsimile, calculator on a daily basis. Must be able to sit for extended periods.



**Ryan, Mary D     1115**

From:            Ryan, Mary D     1115
Sent:            Monday, June 03, 2002 4:45 PM
To:              Appeals Team     212
Subject:         Referral



ALLsneappealthative.do

Thank you,
Mary Ryan
Case Manager
CIGNA Disability Management Solutions
Phone: (800) 376-0725 ext. 1249
Fax: (800) 377-4286
Mary.Ryan@Cigna.com

*CONFIDENTIALITY NOTICE: If you have received this e-mail in error, please immediately notify the sender by e-mail at the address shown. This e-mail transmission may contain confidential information. This information is intended only for the use of the individual(s) or entity to whom it is intended even if addressed incorrectly. Please delete from your files if you are not the intended recipient. Thank you for your compliance.*

CLICNY 5274

Mary D. Ryan
Case Manager
CIGNA Disability Management Solutions

**CIGNA** Group Insurance
Life · Accident · Disability

June 3, 2002

ADAM S. COHEN, ESQ.
81 MAIN STREET, SUITE 300
WHITE PLAINS, NY 10601

Re:

| | |
|---|---|
| Claimant: | Steven Alfano |
| Social Security #: | 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 |
| Policy Number: | NYK 1972 |
| Policyholder Name: | Weill Medical College |
| Underwriting Company: | Life Insurance Company of North America |

Dear Mr. Cohen:

We are in receipt of your request for review of Mr. Alfano's claim for Long-Term Disability (LTD) benefits, that was submitted regarding the LTD claim denied on February 12, 2001.

This claim will be forwarded within 48 hours to our Disability Appeals Team in Dallas, TX. They will review the claim and any additional medical information provided, and you will be notified as soon as a decision is made. It may be necessary for us to request additional information from the doctor in order for us to make our decision. In case additional information is needed, we ask that you sign and date the enclosed Disclosure Authorization, which will enable us to obtain any updated information on the condition. This form should be returned to:

CIGNA Group Insurance
Disability Appeals Team
12225 Greenville Ave., 5th Floor
Dallas, TX 75243

Under normal circumstances, you will be notified of the decision within 30 days from the date that the appeal is received. If additional time is needed, we will notify you of the reason for the delay. Please be aware that as part of the appeals process, you may have access to information relevant to this claim, which will be provided to you upon request free of charge.

The Appeals Claims Examiner there will contact you if they need additional information from you. You can reach the Disability Appeals Team at 1.800.352.0611 should you have any questions.

Steven Alfano
Page 2

Sincerely,

Mary D. Ryan
Case Manager

## *Interoffice Memo*

**CIGNA Group Insurance**
Life · Accident · Disability

Date: May 30, 2002
To: Kevin O'Hanlon, Tarrytown Claims Office

From: Susan Kerr, P250

Telephone: 1-800-238-2125, ext. 3025
Facsimile: 412-402-3542

Subject: Steven Alfano, #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

Hi Kevin,

This appeal was erroneously forwarded to me by our Bethlehem Customer Service Center. I understand appeals are handled in Dallas, however, this group originally handled in Rochester, is now in your office. Therefore the closed claim will hopefully be in Tarrytown and the closed claim and appeal can be forwarded to Dallas together.

Please contact me if you have any questions.

Thanks!

Susan
412-402-3025



Susan Kerr
Case Manager



# **IntegratedCare**
# **Telephone Log**

**CIGNA** Group Insurance
Life - Accident · Disability

Date: 5/30/02

Time: 9:10 am

Incoming:

Phone Number:

Outgoing:  **Scott Paules, Bethlehem Customer Service Center**

Phone Number:

| Re:  appeal | Policyholder:  Weill Medical College |
|---|---|
| Cx: Steven Alfano, #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 | Policy #:  NYK 1972 |

Called Scott Paules and asked why he forwarded this appeal to my attention since I never handled the claim and the group policy is now handled in Tarrytown, not Pittsburgh. He said he thought it was a new Conversion claim, he did not look through the packet to see what it really was. I confirmed it is an appeal, not a Conversion claim application.

I asked if the cx did convert the group plan and if so from what group policy b/c according to this letter, the cx's LDW was 6/5/00 and he converted it 4/01. According to the conversion plan, the cx must convert within 31 days of termination under group plan.

Scott Paules advised that according to the Conversion application completed by the cx and ER (Weill Medical College), the cx's LDW was 3/31/01, so 6/5/00 is not his actual LDW, as cited in the appeal letter by the attorney. Additionally, on the Conversion application, when asked if the employee is disabled at the time he is converting the cx said "no" but the employer said "yes". If the cx was disabled at the time he applied for Conversion he should not have been eligible.

Scott Paules agreed and said Conversion premiums paid thus far should be refunded since the cx should not have been eligible for Conversion coverage in the first place.

S Kerr

LAW OFFICES OF
# ADAM S. COHEN
81 MAIN STREET, SUITE 300
WHITE PLAINS, NEW YORK 10601

(914) 421-0080
(718) 681-3907
FAX: (914) 421-0036

ADAM S. COHEN*

DONALD N. SILVERMAN
ROBIN A. BIRNAL
OF COUNSEL

April 15, 2002

*ADMITTED IN NY AND CT

Jennifer Houghton
Case Manager
Integrated Claim Services
CIGNA Group Insurance
Routing 1760
255 East Avenue
Rochester, NY 14604-2624

Re:         Steven Alfano
SS #:       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
Policy #:   NYK 1972
Policy Holder:  Weill Medical College
Underwriters:   CIGNA Life Insurance Co. of America

Dear Ms. Houghton:

This letter is written in further support of the claim of Steven Alfano for Long-Term Disability benefits under policy number NYK 1972. It is our contention that Mr. Alfano has been and continues to remain totally disabled since he stopped working on June 5, 2000.

In accordance with your definition of disability, Steven Alfano will be considered disabled if, because of injury or illness, he is unable to perform the material duties of his regular occupation, or if he is earning less than 80% of his Indexed Covered Earnings.

It is undisputed that Steven Alfano last worked as a Manager of Compensation on June 5, 2000. This is, in essence, a sedentary position. After he ceased working, Mr. Alfano completed a disability questionnaire form for your office wherein he complains of constant back pain and numbness. He also indicates that he suffers from a dropped left foot. As a result of these problems Mr. Alfano is unable to sit, stand or walk for any amount of time, and he must frequently lie down to rest his back. Mr. Alfano states that his condition is aggravated by sitting, which produces pain and numbness. He further indicates that his injuries are degenerative in nature and that he applied for Social Security Disability benefits because he does not anticipate being able to return to work.

On June 9, 2000 Mr. Alfano had an MRI of the lumbar spine performed which shows that he suffers from moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, a degenerative type III end-plate marrow change, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation. The MRI also reveals

CLICNY 0279

impingement on the inferior aspect of the exiting L5 nerve root and moderate spinal stenosis. A copy of the MRI report is enclosed herewith.

Mr. Alfano has also undergone EMG/NCV studies of his lower back on July 20, 2000. These tests were performed by Andrew Schiff, M.D. This study shows that Mr. Alfano suffers from an L5-S1 lumbar radiculopathy. The physical examination associated with the EMG/NCV test demonstrates that he has an antalgic gait, cannot walk on his heels and toes and has decreased sensation in the left lower extremity. A copy of these records is annexed hereto.

A second MRI was performed on Mr. Alfano on August 18, 2001. This MRI confirms the L5-S1 spondylosis and the stenosis at that level of the spine. It also shows mild L4-5 spinal stenosis and impingement on the thecal sac at the L5-S1 level of the spine as well. The MRI further demonstrates moderate facet osteoarthritis and narrowing of the neural foramen at the L4-5 level of the spine. A copy of this MRI report is enclosed herewith.

Mr. Alfano's claim for disability benefits is further strengthened by the reports of his treating doctors. Michael M. Alexiades, M.D., one of Steven Alfano's treating physicians, indicates in a report dated June 20, 2000 that Mr. Alfano is unable to work and will not be able to do so until at least August 5, 2000. A copy of Dr. Alexiades' report is enclosed herewith.

The records of James C. Farmer, M.D., formerly Mr. Alfano's treating spinal surgeon, also show that he is totally disabled. Dr. Farmer states that in April of 2000 Mr. Alfano's back "went out" and he began to experience severe pain. This pain apparently radiates down Mr. Alfano's leg into his posterior thigh and posterior calf. Dr. Farmer's records also indicate that Mr. Alfano suffers from numbness "in his entire foot." His leg pain can be worse than his back pain, and his left leg is worse than his right leg. In fact, Dr. Farmer finds that Mr. Alfano suffers from "fatigue" in his left leg. Dr. Farmer further notes that Mr. Alfano's back pain increases with prolonged sitting, standing and walking, and the pain significantly limits Mr. Alfano. Dr. Farmer opines that because of the severely limited range of motion in his low back with its concomitant left leg weakness, Mr. Alfano may need to undergo lumbar fusion surgery. Certainly, if Mr. Alfano's condition is so severe that surgery is a strong possibility, this supports his argument that he is disabled and unable to perform his occupational duties.

We also enclose two reports from Dr. Alexiades which clearly demonstrate that Mr. Alfano is totally disabled and entitled to benefits. The first report is dated May 10, 2001. In this report Dr. Alexiades states that Mr. Alfano suffers from L5-S1 spondylosis with stenosis and radiculopathy. He suffers from back pain, left leg pain and numbness due to this condition, and demonstrates a positive straight leg raising test as well as weakness in his leg. His prognosis is poor, and he must lie down during the day because of the pain. Dr. Alexiades notes that he has already undergone physical therapy, epidural injections and anti-inflammatory medication, all without success. Dr. Alexiades indicates in this report that Mr. Alfano can only occasionally lift or carry a maximum of ten pounds and can never lift anything on a frequent basis. He further cannot bend, crawl or climb and can only occasionally squat or reach for items. With these limitations as noted by Dr. Alexiades, there is no way that Mr. Alfano can perform his job duties. He therefore must be found disabled and entitled to benefits.

The second report we have submitted from Dr. Alexiades, dated February 7, 2002, confirms the findings of the May 10, 2001 report in every way. In this report Dr. Alexiades again indicates that Mr. Alfano must lie down during the day, stating that this must be done two or three times per day for one-half to two hours each time. He opines that Mr. Alfano can only sit for 20 minutes continuously and a maximum of two hours in an eight hour workday; stand only 15

CLICNY 0280

minutes continuously and a maximum of less that one and one half hours in an eight hour workday; and walk for one block continuously and less than one hour in an eight hour workday. He also states that Mr. Alfano can only lift or carry a maximum of five pounds occasionally and nothing frequently.

Finally, we submit the February 12, 2002 report of treating physician Keith Roach, M.D. Dr. Roach's report completely supports all of the findings of Dr. Alexiades. Dr. Roach diagnoses Mr. Alfano as suffering from an L5-S1 spondylosis with spinal stenosis. His examination of Mr. Alfano reveals that he suffers from low back pain with numbness and pain radiating down his right leg, weakness in his legs, decreased patellar reflexes and diminished sensation. Dr. Roach states that Mr. Alfano must lie down three times per day, for up to two hours, because of these conditions. He further states that Mr. Alfano can only sit for 20 minutes continuously and a maximum of two hours in an eight hour workday; stand only 15 minutes continuously and a maximum of one hour in an eight hour workday; and walk for one block continuously and one hour in an eight hour workday. He opines, as does Dr. Alexiades, that Mr. Alfano can only lift or carry a maximum of five pounds occasionally and nothing frequently.

On the basis of these medical reports and records we hereby assert that Steven Alfano is disabled under the terms of policy NYK 1972 and is therefore entitled to Long-Term Disability benefits pursuant to that policy. He certainly has not worked and has been unable to work during the Benefit Waiting Period, as he has not worked since June 5, 2000. This also shows that he has earned less than 80% of his Indexed Covered Earnings, since he has no earnings whatsoever since June 5, 2000. Indeed, it is clear from the medical records that since June 5, 2000 it is not physically possible for Mr. Alfano to have performed work which would have equaled at least 80% of his Indexed Covered Earnings.

It is also beyond dispute that he cannot perform all of the material duties of his occupation, and has been unable to do so since June 5, 2000. According to his job description, Mr. Alfano's prior work for your insured was performed at the sedentary level. The United States Department of Labor defines sedentary work as lifting and carrying ten pounds on an occasional basis and five pounds on a frequent basis as well as sitting most of the time. See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (U.S. Department of Labor Employment and Training Administration 1993).

The medical evidence establishes that Mr. Alfano cannot frequently perform any lifting or carrying, and has been unable to do so since June of 2000. The numerous reports from Dr. Alexiades and Dr. Roach amply display that he has not been able to do such activities since at least June 20, 2000 (the date of Dr. Alexiades's first report). Additionally, the reports from these physicians indicate that he cannot even lift ten pounds occasionally, as is required to perform his work. These documents also display that he cannot sit for more that two hours total during a workday, thus showing that he cannot perform the sitting requirements for his job.

Wherefore, based on the medical records submitted with this letter, we hereby request that you find Steven Alfano totally disabled as of June 5, 2000, and entitled to benefits as of the expiration of the Benefit Waiting Period.

Additionally, you may be aware that as of April 1, 2001 Mr. Alfano converted his group Long-Term Disability coverage to a personal disability plan. The Certificate Number of that plan is GKC 700835. We hereby demand, without prejudice to this claim in any way, that CIGNA also find him disabled pursuant to the terms of the individual plan as well as the NYK 1972 policy, and grant him benefits immediately under that plan.

CLICNY 0281

If you need any additional information regarding this matter, please contact the undersigned. We kindly request that your forward your decision to this office and Mr. Alfano once it has been made.

Very truly yours,

Adam S. Cohen, Esq.

ASC/ac
cc:    Steven Alfano
       Scott D. Paules, Individual Conversion Unit
Enc.

H : SABR SPORTS MEDICINE          FAX NO. : 212 2801524          Jun. 22 2008 09:33AM  P2

# LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

Page 1 of 2

Carmel Donovan, M.D.

Erich Eidenschenk, M.D.

David A. Follett, M.D.

Hisou Jeannie Choe, M.D.

William Louie, M.D.

Keith S. Tobin, M.D.

51 East 77th Street

New York, NY 10021

TG. 212-772-3111

WX 212-288-1637

WX 212-861-1796

June 12, 2000

MICHAEL ALEXIADES, MD

| Patient: | ALEANO, STEVEN | ID: 139521 |
| --- | --- | --- |
| | MRI LUMBAR SPINE | 200006081395211 |

MRI OF THE LUMBAR SPINE 6/9/2000:

Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit.

42 year-old with low back pain and left-sided radiculopathy. There are no prior studies for comparison.

There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end-plate marrow change and prominent posterolateral osteophyte formation. The remaining lumbar discs are within normal. Small, benign-appearing hemangiomata are seen within the L4 and L5 vertebral bodies. No destructive marrow lesions are seen. The conus medullaris is at the lower L1 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. Paraspinal soft tissues are grossly normal.

At the L1-2 through L4-5 levels, there are no disc protrusions, significant disc bulges, spinal stenosis or neural foraminal narrowing.

At L5-S1, there is anular disc bulge and posterolateral osteophytes and facet osteoarthritis present. There is impingement upon the inferior aspect of the exiting left L5 nerve root as on the sagittal images. There is moderate spinal stenosis. The right neural foramen is patent.

IMPRESSION: MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.
MILD IMPINGEMENT ON THE INFERIOR ASPECT OF THE LEFT L5 NERVE ROOT AS DESCRIBED ABOVE.
MODERATE L5-S1 SPINAL STENOSIS.

| MRI | CAT SCAN | BONE | ULTRASOUND | NUCLEAR |
| --- | --- | --- | --- | --- |
| HIGHFIELD 1.5T · MID FIELD · OPEN MRI | HELICAL | DENSITOMETRY | (MRI) | MEDICINE |
| | GENERAL X-RAY | FLUOROSCOPY | MAMMOGRAPHY | |
| | ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY | | | |

CLICNY 0283

ELECTROMYOGRAPHY LABORATORY
DEPARTMENT OF NEUROLOGY
BETH ISRAEL MEDICAL CENTER
NEW YORK, NEW YORK

| NAME | ALFANO, STEVEN |
|---|---|
| SOCIAL SEC. # | 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 |
| EXAM DATE | 07/20/2000 |
| REFERRED BY: | Andrew Schiff, M.D. |

| AGE | 42 | HEIGHT (INCHES) | 76 | TEMP | 32 | SEX | Male |
|---|---|---|---|---|---|---|---|

History: Mr. Alfano is a 42-year-old man referred for possible left lumbosacral radiculopathy. Two months ago, he made a sudden movement and felt sudden lower back pain and stiffness. A few days later, he began to feel radiation of the pain into the left buttock, posterior thigh to the ankle.

He has had lower back pain intermittently for many years since a car accident in 1997. Since that time, he has intermittently noted some weakness in his left leg, particularly in the calf when pushing off with his foot. Occasionally, he thought there was some weakness in the anterior thigh. Sitting for a long time aggravates the pain. Sitting slightly flexed and hunched over was partially alleviating. He also had pain while lying down at night in the posterior thigh. For four months, he has had some urinary retention and erectile dysfunction. He saw a urologist who found no abnormalities.

He recently saw an orthopedic surgeon. He had an MRI of his lumbosacral spine which showed spondylosis and stenosis at L5/S1 with impingement of the left L5 nerve root at the lateral recess. He has had two epidural steroid injections, which have provided only mild benefit. A third and final one was planned. Constitutional symptoms, such as weight loss, fever, and rash, were absent.

Past Medical History: Migraines, hypertension, reflux esophagitis.

Drug Allergies: Codeine caused headache (aggravation of migraines) and nausea.

Social History: Works for human resources. Does desk work. He has been out of work since the beginning of June (a month and a half).

Family History: No history of diabetes.

CLICNY 0284

ALFANO, STEVEN
07/20/2000

Medications: Imitrex p.r.n., Norvasc, Prevacid.

Review of Systems: See above. No diabetes. No recent trauma. Other systems were reviewed and were negative.

General Examination: Appearance: Appeared well, in no distress. Integument: No dermatomal eruptions in the legs. Neck: Supple. Extremities: No clubbing, cyanosis or edema. Straight-leg raising was negative bilaterally. Patrick's maneuver was, also, negative bilaterally.

Neurologic Examination:

Mental Status: Alert and oriented x 3. Fluent speech. He gave a detailed description of his symptoms and recalled dates well.

Cranial Nerves: Extraocular movements intact. Face symmetric.

Motor: No atrophy, fasciculations, or pronator drift. Strength was 5/5 in all groups, although there was some give-way in left plantar and dorsiflexion of the foot and toes. Strength seemed normal.

Gait: Slightly antalgic. Able to stand, but not walk, on his heels and toes; this was painful.

Coordination: Finger-to-nose and tandem gait steady.

Sensory: Negative Romberg. Pin was diminished in the left lateral border of the foot. Vibration was impaired in the great toes bilaterally. Pin and vibration were, otherwise, intact.

Reflexes: Reflexes 2+ throughout. Plantar responses were flexor bilaterally.

Electrophysiologic Findings: Bilateral peroneal and tibial motor conduction studies were normal. Left tibial and bilateral peroneal F-wave minimal latencies were prolonged. Right tibial F-wave minimal latencies were normal. Bilateral sural and peroneal sensory responses were normal. Bilateral tibial H-reflex latencies were prolonged. Needle EMG of bilateral gluteus maximus, left leg, and lumbosacral paraspinal muscles showed no spontaneous activity. There was borderline decreased recruitment in the left tibialis anterior and quadriceps muscle, but motor unit potential morphology was normal throughout.

Clinical/Electrophysiologic Impression: There were nonspecific neurogenic abnormalities in both legs of uncertain significant. Late responses were prolonged bilaterally. These findings did not clearly differentiate bilateral L5/S1 radiculopathies from mild polyneuropathy. There was not definitive electrophysiologic evidence of either.

Taken together, the clinical and electrophysiologic features suggest

ALFANO, STEVEN
07/20/2000

the patient has left S1, more than L5, radiculopathy.  There was no
associated weakness or reflex change.  Further conservative
management is planned, at this point.  He will follow up for a third
epidural injection.  In the interim, he was told to stop the Motrin
and to start Pamelor 25 mg p.o. q.h.s., to be increased to 50 mg
p.o. q.h.s. in seven days, and to 75 mg p.o. q.h.s. at the end of
two weeks, if tolerated.  He was also started on Ultram one or two
tablets p.o. q.i.d. p.r.n. pain.  The side effects of the medicine
were fully explained.  He will hold off exercising for now.  He was
told that he could return to work, and that he should get up from
his desk a few times an hour to stretch and walk around.  He was
also told he should avoid lifting anything heavy (greater than ten
pounds).  The patient will see me in followup in six weeks.  I
requested that he try to bring a copy of his MRI of lumbosacral
spine films, if available.

Stephen Scelsa, M.D.
Director of the Neuromuscular Division
Assistant Professor of Neurology

SS/TL975/01190
T: 07/21/2000

| Motor Nerve Conduction | | | | | |
|---|---|---|---|---|---|
| Nerve | Latency ms | Amp mV | Dur ms | Dist mm | Vel m/sec | Comment |
| R.Peroneal Ankle-EDB | 4.26 | 4.2 | 7.32 | | | Nl |
| R.Tibial Ankle-AH | 4.00 | 11.3 | 6.40 | | | Nl |
| L.Tibial AK-AH | 4.04 | 12.1 | 6.82 | | | Nl |
| L.Tibial Pop-AH | 15.1 | 9.6 | 7.80 | 520.0 | 46.8 | Nl |
| L. Peroneal AK-EDB | 5.82 | 7.4 | 6.75 | | | Nl |
| L. Peroneal BFH-EDB | 14.3 | 6.5 | 8.04 | 420 | 49.5 | Nl |
| L.Peroneal AFH-AK | 16.2 | 6.3 | 8.16 | 91 | 48 | Nl |

| F-Waves | | | |
|---|---|---|---|
| Nerve | Latency(ms) Min | Latency(ms) Max | Comment |
| R.Peroneal EDB | 59.0 | | ↑Lat |
| R.Tibial AH | 58.2 | 63.6 | Nl |
| L.Tibial AH | 59.7 | 63.0 | ↑Lat |
| L.Peroneal EDB | 58.9 | 61.8 | ↑Lat |

| Sensory Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency | Amp uV | Dur | Distance mm | Velocity m/s | Comment |
| L.Peroneal Leg-Dorsum Ft | 2.69 | 10.1 | 3.12 | 130.0 | 48.3 | Nl |
| R.Sural Calf-LatMal | 3.50 | 16.9 | 1.95 | 160.0 | 45.7 | Nl |
| L.Sural Calf-LatMal | 3.30 | 17.2 | 1.71 | 150.0 | 45.5 | Nl |
| R.Peroneal Leg-Dorsum Ft | 2.42 | 8.11 | 1.94 | 120.0 | 49.6 | Nl |

Alfano. Steven.   099449648              July 20, 2000

CLICNY 0287

| H Reflex | | | |
|---|---|---|---|
| Nerve | Latency<br>mS | Amplitude<br>uV | Comment |
| L.Tibial H Reflex | 36.5 | | ↑ Lat |
| R.Tibial H Reflex | 38 | | ↑ Lat |

| Routine Needle EMG Examination | | | | | | | |
|---|---|---|---|---|---|---|---|
| Muscle | Fib<br>PSW | Fasc | Misc | MUP | | | Rec<br>Patt | Comment |
| | | | | Amp | Dur | Phase | | |
| L.Glut Max | 0 | 0 | | | | | | Nl |
| L.Quad | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Tib Ant | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Per Longus | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Gastroc | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.L-PSpinal L4,5 | 0 | 0 | | | | | | Nl |
| L.L-PSpinal L5,S1 | 0 | 0 | | | | | | Nl |
| R.Glut Max | 0 | 0 | | | | | | Nl |



Alfano, Steven, 099449648          July 20, 2008

CLICNY 0288



**LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.**

Page 1 of 1

Carmel Donovan, M.D.

Erich Eidenschenk, M.D.

David A. Follett, M.D.

61 East 77th Street

New York, NY 10021

TEL: 212-772-3111

FAX: 212-288-1657

FAX: 212-861-1796

www.lenoxhillradiology.com

William Louie, M.D.

Keith S. Tobin, M.D.

Lynn Ladretsky, M.D.

Scott R. Gerst, M.D.

JAMES C FARMER, MD

Patient: ALFANO, STEVEN                 ID: 139521        2001081755150139521I

MRI OF THE LUMBAR SPINE    8/18/01:

Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit. 43 year-old with chronic low back pain and bilateral radiculopathy. Comparison is made to report of prior study 6/9/00.

There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type II end-plate marrow change and vacuum disc phenomena. The remaining lumbar intervertebral discs are normal. There are no destructive marrow processes. Small, typical hemangiomata are seen within the L4 and L5 vertebral bodies. The conus medullaris is at the approximate L1-2 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. The paraspinal soft tissues are grossly normal.

At L1-2 through L3-4, there are no disc protrusions, significant disc bulges spinal stenosis or neural foraminal narrowing.

At L4-5, there is minimal annular disc bulge and moderate facet osteoarthritis. There are mild developmentally shortened pedicles and mild spinal stenosis. There is also mild narrowing of both neural foramen. This shows slight interval increase.

At L5-S1, there is a prominent posterior disc osteophyte complex impinging upon the anterior thecal sac causing moderate spinal stenosis. This disc osteophyte complex measures 8 mm cephalocaudad x 7 mm AP x 20 mm transverse dimension. This has shown slight interval increase in size by report. However direct comparison to prior study is suggested for interval change. There is moderate facet osteoarthritis and mild moderate left sided neural foraminal narrowing.

IMPRESSION:
1. MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.
2. POSTERIOR DISC OSTEOPHYTE COMPLEX AT L5-S1 CAUSING MODERATE SPINAL STENOSIS.
3. MILD L4-5 SPINAL STENOSIS.

Thank you for referring this patient.

Electronically Signed By:        William Louie, MD                    8/24/01

| MRI | CAT SCAN | ULTRASOUND | NUCLEAR MEDICINE | PET |
|-----|----------|------------|------------------|-----|
| HIGH FIELD 1.5T • MID FIELD 0 • OPEN MRI | HELICAL | MDI | | |
| GENERAL X-RAY | FLUOROSCOPY | MAMMOGRAPHY | BONE DENSITOMETRY | |

ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY
MRI • ULTRASOUND • MAMMOGRAPHY

07/05/1994  29:28    2127341398    MMALEXTADESNIPC    PAGE  09



## JOAN AND SANFORD I. WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY
Human Resources Department
445 East 69th Street, Room 229
New York, New York 10021
(212) 746-1197  Fax: (212) 746-0988

### Medical Certification for Family and Medical Leave

| Name (Last, First, Middle Init.) ALFANO, STEVEN | Social Security Number 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 | Room No. OH-220 |
|---|---|---|
| Position WAGE & SALARY MGR | Dept. / Dir. HUMAN RESOURCES | Extension 61038 |
| Employee's Signature | | Date 7/5/00 |

*To be completed by an authorized health care provider. The information sought on this form relates only to the condition for which the employee is taking FMLA Leave.*

The attached *Description of Serious Health Condition* describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

(1)___ (2)___ (3)___ (4)___ (5)___ (6)___ or    None of the above____

Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria for one of these categories: _____

Date patient will be/was unable to work because of this condition 7/2/00 Probable Date of onset of this condition will last 8/5/00*

Date patient will be able to return to work    8/5/00* OR PENDING NEUROLOGIST'S EXAM

Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described below)? Yes ☑ No ☐

If yes, give the probable duration ___Indeterminate___

If the condition is a pregnancy (condition #3) or chronic condition (condition #4), state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity: _____

057   1/98 (Rev.3)    Continued on the reverse.....

CLICNY 0290

From: Steven Atlanta To: Valerie Grubman    Date: 6/22/00 Time: 9:32:36    Page 4 of 4

FROM : SAGA SPORTS MEDICINE    FAX NO. : 212 2981524    Jun. 21 2000 02:23PM  P2

Date: 6/19/00  Time: 12:47:49 PM

---

If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments:
**arthroscopy 3**

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide any estimate of the probable number and interval between such treatment, actual or estimated dates of treatment if known, and period required for recovery if any: **3 - 4 days**

If any of these treatments will be provided by another provider of health service (e.g., physical therapist), please state the nature of the treatments: **cortisone injections**

If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment):

Is employee able to perform work of any kind? (If "No", skip the next question) Yes ☐  No ☑
Is employee able to perform any one or more of the functions of the employee's position? (Answer after reviewing statement from employer of essential functions of employee's position, or if none provided, after discussing with employee.) Yes ☐  No ☐    If Yes, list the essential function the employee is unable to perform:

**no lifting, Prolonged standing, sitting**

If neither of the above statements apply, is it necessary for the employee to be absent from work for treatment?
Yes ☐  No ☐

Print Name of Health Care Provider: **Michael M. Alexiades, MD**    Type of Practice or Specialty: **Orthopedics**

Signature of Health Care Provider:    Date: **6/20/00**

Address: **159 East 74th St N.Y. N.Y. 10021**    Telephone Number: **212-734-1288**

This form should be submitted to the Human Resources Department - Weill Medical College at the above address.

CLICNY 0291



**JAMES C. FARMER, M.D.**
Hospital for Special Surgery
535 E. 70th St.
New York, N.Y. 10021

Alfano, Steven                                          D.O.B.:
August 31, 2000                                        MR#:

Mr. Alfano is a 42 year old male who reports he has had a long history of intermittent low back pain. In April of this year, his back went out and he began to experience pain that was severe. He notes that prior to the episode in April, he felt that his low back pain had overall increased in severity for the last 2 years or so. He has also noted some leg pain involving his posterior thigh and posterior calf. He at times has felt some numbness in his entire foot. Overall, he notes that his leg pain is worse than his low back pain and that the left leg is significantly worse than the right. He reports he has had episodes of occasional urinary retention in the past and saw a urologist who did not recommend any treatment. His bowel function is normal. He notes his pain is made better with rest and is made worse with prolonged sitting, standing and walking. His treatment to date has consisted of Vioxx, Nortriptyline and physical therapy in the past and recent epidural steroid injections which gave him some day relief of pain.

| | |
|---|---|
| **Past Medical History:** | Significant for borderline hypertension and migraines. |
| **Past Surgical History:** | Non-contributory. |
| **Medications:** | Vioxx, Nortriptyline and Norvasc. |
| **Allergies:** | He has a drug allergy to Codeine. |
| **Family History:** | Significant for colon cancer in his father and hypertension in his mother. |
| **Social History:** | He has a 25 pack a year smoking history and does not drink. |
| **Review of Systems:** | Negative in detail. |

**Physical Examination:**    Physical examination today reveals a well developed, well nourished male in no acute distress. He walks with a normal gait. Examination of his lumbar spine does not show any skin abnormalities and there is no tenderness to palpation. He is able to forward flex, bring his fingers to within 6 inches of the floor and extends approximately 30 degrees. He laterally bends bilaterally which is symmetric. Neurologically, motor strength is 5/5 in the lower extremities bilaterally with intact sensation. Deep tendon reflexes are 1+ and symmetric in the lower extremities. His toes are downgoing and there is no clonus. Range of motion of the hips is full and painless. Neural tension signs are negative. Dorsalis pedis pulses are 1+ and symmetric.



NOV. 21. 2000 (TUE)  11:44                                    7942909                          PAGE. 9/8

# JAMES C. FARMER, M.D.

Alfano, Steven
August 31, 2000
Page two

MR#:

**MRI:**      An MRI scan of his lumbar spine was reviewed from June 12, 2000. This shows evidence of severe degenerative changes within the disk at L5-S1. There does appear to be some moderate stenosis at this level.

**Impression:**      Degenerative disk disease at L5-S1 with bilateral lower extremity pain.

**Recommendations:** At this point, I have reviewed with the patient in detail the nature of the diagnosis of lumbar degenerative disk disease along with treatment options and risks and benefits. At this point, he has not had any significant conservative management with the exception of the epidural. I do feel that he should undergo some physical therapy to see if this will improve his back and lower extremity symptoms. I have asked that he continue to take the anti-inflammatories. I have asked that he follow up with me in approximately 4-6 weeks time to see how he is doing. Should his symptoms still be persistent at that point, then we will discuss the options available to him.

James C. Farmer, M.D.

JCF/las



**JAMES C. FARMER, M.D.**
Hospital for Special Surgery
535 E. 70th St.
New York, N.Y. 10021

Alfano, Steven
September 14, 2000

D.O.B.:
MR#:

Mr. Alfano returns today for follow up. He reports that he has performed the physical therapy but has had no improvement whatsoever in his pain and feels that overall the therapy has exacerbated his pain. He does have some intermittent fatigue in the left leg with prolonged walking but notes his primary complaint is his lower back pain. He does feel that at times he has weakness in his tibialis anterior on the left. He denies any bowel or bladder symptoms or night pain.

**Physical Examination:**    Today shows his lumbar spine is non-tender to palpation. He does tend to get significant back pain with forward flexion. His neurologic examination is stable. Nound tension signs are negative.

**Impression:**    Degenerative disk disease of the lumbar spine with some intermittent radicular symptoms on the left probably secondary to L5 nerve root compression noted on the MRI.

**Recommendation:**    At this point, I have reviewed with the patient in detail the nature of the diagnosis of degenerative disk disease and lumbar radiculopathy along with treatment options and risks and benefits. At this point, he reports his back pain is severe and continues to limit him significantly on a daily basis. I do feel it is likely that the pain he is experiencing is from the significant degenerative changes seen at L5-S1. He feels that his pain is severe and continues to limit him on a daily basis and wishes to consider surgical intervention. I have explained to him that I do feel that we would need to obtain a discogram to clearly discern that the L5-S1 disk is the painful level and whether the levels above are normal. After the discogram if it is confirmatory, then I would recommend he have a new MRI as his old one is greater than 3 months old. He is going to have the above performed and will follow up with pre afterwards to review it or sooner should he have any questions, problems or concerns.

James C. Farmer, M.D.

JCF/las

JAMES C. FARMER, M.D.
Hospital for Special Surgery
535 E. 70th St.
New York, N.Y. 10021

Alfano, Steven                                    D.O.B.:
November 7, 2000                                  MR#:

Mr. Alfano returns today for follow up. He is still having significant low back pain. He does have some lower extremity pain but notes the low back pain is predominant. He denies any change in his bowel or bladder symptoms. He is not having any night pain.

**Physical Examination:**    Today shows no change in range of motion of his lumbar spine. His neurologic exam is stable from a motor and sensory standpoint. Neural tension signs are negative.

**Impression:**    Low back pain with degenerative disk disease.

**Recommendation:** At this point, the patient wishes to continue with conservative management and wishes to perform more physical therapy, which I think, is reasonable. A prescription was given for this. Additionally, he asked for a renewal for his Vioxx, which was given for 50 mg PO QD PRN. I have asked him to follow up with me when his physical therapy is complete to reevaluate him or sooner should he have any questions, problems or concerns.

James C. Farmer, M.D.

JCF/lss

JAMES C. FARMER, MD
Hospital for Special Surgery
535 E. 70th Street
New York, N.Y. 10021

Alfano, Steven
February 26, 2001

D.O.B.:
MR#:      068-94-43

Mr. Alfano returns today for follow up. He reports he has lost 40 lbs. since his last visit with me. He has had no change in his low back pain and notes he is still severely limited. He is having some intermittent pain in his left buttock and posterior thigh. He denies any bowel or bladder symptoms or night pain. He reports his pain is still severe with sitting and that he is currently still taking Vioxx for pain relief. He has not started physical therapy yet.

**Physical Examination:**    Physical examination today shows his lumbar spine continues to be nontender. He continues to have severely limited forward flexion due to his pain. Extension is not painful. Neurologically his exam is stable. He continues to have some weakness of the left EHL and tibialis anterior which appear to be give-out with repetitive testing. Deep tendon reflexes are unchanged. Range of motion of the hips is full and painless.

**X-rays:**    No new x-rays were obtained today.

**Impression:**    Low back pain with left lower extremity symptoms and lumbar degenerative disk disease.

**Recommendations:**    At this point I have reinforced with the patient that I do want him to begin the physical therapy and I would also like him to see Neurology again to reevaluate the intermittent weakness he gets in the left leg. I do believe that a significant portion of this symptoms are coming from the degenerative disk disease and if he does not improve with conservative care he may require a lumbar fusion. He understands all of this. All of his questions were answered.

He is going to follow up with me in six weeks time to reevaluate him or sooner should he have any questions, problems or concerns.

James C. Farmer, MD

/fts

<u>PHYSICIAN'S REPORT FOR CLAIM OF</u>

<u>DISABILITY DUE TO PHYSICAL IMPAIRMENT</u>

Patient's Name: Steven Alfano

Patient's Address: 3800 Waldo Avenue
Bronx, Ny 10463
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

Dear Doctor

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments.

5/15/96 and 2/4/02

2. Describe in detail the patient's symptoms (complaints, including pain).

Left Leg pain and numbness with associated back pain

3. Describe in detail the patient's signs (clinical findings).

⊕ straight leg raise

Weakness on walking on toes

4. Give the laboratory tests and results.

MRI ⊕ for L5 S1 Spondylosis with

L5 nerve root Impingement + Stenosis

5. Diagnoses. L5 S1 Spondylosis with Stenosis

and Radiculopathy

2

6. Prognosis _POOR_

7. Have any of the patient's medical conditions lasted or can any be expected to last at least twelve months?

   Yes _X_          No _____

8. Does the patient have to lie down during the day?

   Yes _X_      No _____    If yes, for how long and for what

   reasons? _1/2 h - 2 hrs    two to three times per day_

9. Describe the treatment the patient has received. _____

   _Physical Therapy_
   _Epidural injection_
   _Anti inflammatories_

3

CLICNY 0299

10. Give the medications prescribed for the patient, including the dosage.

OTC NSAIDS + 50mg Vioxx (7/31/00

Do any of the medications have any side effects or limit the patient's activities?

Yes_____     No ✓_____     If yes, explain._____

11. Does or could any condition cause the patient pain?

Yes ✓     No_____     If yes, explain  See above.

If yes, does any medication affect the patient's pain and how does it affect the pain?

temporary decrease in pain

4