March 3, 2006
Page 2

Please contact our office at 800-352-0611 ext. 5693 should you have any further questions.

Sincerely,


Mark Sodders
Disability Claim Manager


cc:   S ALFANO

CLICNY 0667

Mark Sodders
Claim Manager
CIGNA Disability Management Solutions



**CIGNA Group Insurance**
Life · Accident · Disability

September 28, 2005

Routing 212E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 x5693
Facsimile 860.731.2907
Mark.Sodders@Cigna.com

Steven Alfano
3800 Waldo Avenue, 13-G
Bronx, NY 10463

RE:    Claimant:    Steven Alfano
       Policy #:    NYK 1972
       Policyholder:  Weill Medical College of Cornell University
       CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

We have carefully reviewed your claim for Long Term Disability benefits and must advise
you that we cannot consider any benefits payable to you after September 28, 2005.

Under the terms of the Weill Medical College group insurance policy (NYK 1972), Disability
is defined as follows:

### Disability

An Employee will be considered Disabled if because of Injury or Sickness:
1. he is unable to perform all the material duties of his regular occupation;
   or
2. he is earning less than 80% of his Indexed Covered Earnings.

### Overview of Eligibility for Benefits

In order to determine your continued eligibility for disability benefits, we considered your
claim file as a whole as well as medical information provided by your treating physicians,
the results of your Functional Capacity Evaluation, the results of a Transferable Skills
Analysis, a file review by our Associate Medical Director with a conversation with your
treating provider and information provided by you.

Your original date of Disability is June 6, 2000. You are claiming a period of disability from
your occupation as a Compensation Manager (Wage and Salary Manager), a sedentary
occupation, secondary to symptoms related to lumbar degenerative disc disease and lumbar
radiculopathy. Monthly Benefits commenced on December 3, 2000. You must be

CIGNA Group Insurance products and services are provided exclusively by or through operating subsidiaries of CIGNA Corporation, including Life Insurance Company of
North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries
and is a registered service mark

Steven Alfano
September 28, 2005
Page 2

considered Disabled per the aforementioned definition of Total Disability to receive Monthly Benefits.

According to your July 20, 2004 Activities of Daily Living and Disability Questionnaire, you state an inability to work due to constant back and leg pain causing an inability to concentrate or perform mental tasks. You state that this condition is worse with sitting, standing or walking. You state that you must lie down frequently through the day for one to two hours at a time. You state that you do not go for walks and that you do not have a routine exercise program. You state that you drive short distances; 10 miles or up to 30 minutes. You indicate that you: watch TV three hours daily five days weekly. You do not indicate that you cook, clean, shop, do laundry, yardwork, garden, read or attend other activities such as school, religious services, and volunteer work. You indicate that have a Business degree.

You report that you are treated by Dr. Keith Roach and Dr. Michael Alexiadres. The current medications you list as taking are Oxycontin, Vioxx, Zestril, and Prevacid.

We reviewed the medical information submitted by Dr. Alexiadres. These records show treatment for pain in your left shoulder and right anterolateral hip pain in 2002. On June 13, 2002, you had a left shoulder arthroscopic decompression and acromioclavicular resection. On April 16, 2003, you had a right hip arthroscopy, labrectomy. As of May 22, 2003, you were released to see Dr. Alexiadres on an as needed basis.

We reviewed the medical records submitted by Dr. Roach's office. The diagnosis provided in these records is spinal stenosis, L5-S1 and cervical degenerative disc disease. These records included: your June 9, 2000 Lumbar MRI, which showed a moderate to severe L5-S1 spondylosis with impingement at the L5 nerve root; pre-operative evaluations for your shoulder and hip surgeries; your MRI of your right hip on May 23, 2002, that showed superficial cartilage loss over the right joint, acetabular dysplasia, a torn hyperplastic degenerated anterior acetabular labrum; your September 14, 2004 x-rays of your neck, showing Degenerative Disc Disease with space narrowing & osteophytes at the C6-C7 level, and left foraminal narrowing secondary to osteophyte formation.

According to Dr. Roach' October 10, 2004 Physical Abilities Assessment form, you were noted to have limitations in the following areas: occasional sitting, standing, walking, lifting, carrying, pushing and pulling up to ten pounds, climbing regular stairs and ladders.

Based on the aforementioned physical limitations and restrictions as provided by Dr. Roach, occupations were identified on the basis of these functionally limiting factors, your education, work history and experience.

We submitted a copy of the physical work requirements for these occupations to Dr. Roach on January 20, 2005, for his review and comments. We have a certified receipt from Dr. Roach's office dated January 27, 2005. On March 7, 2005, we submitted a second request for Dr. Roach's review and comments. We attempted to follow-up via telephone on March 4,

Steven Alfano
September 28, 2005
Page 3

2005 and March 28, 2005. Due to the lack of response from Dr. Roach, we notified you on April 11, 2005 of our intention to schedule a Functional Capacities Evaluation. You informed us that you will have Dr. Roach submit his response before scheduling this Functional Capacities Evaluation.

On April 19, 2005, Dr. Roach submitted his response, and stated that you are physically unable to perform the occupations in our January 20, 2005 request to him. Dr. Roach states that your primary disability is being able to set for prolonged periods; you are physical unable to sit without frequent need for standing, laying down, or using ice on your back.

Our Associate Medical Director contacted Dr. Roach on June 8, 2005, due to the conflicting information provided by Dr. Roach, from his aforementioned Physical Abilities Assessment form, the resulting occupations identified and his April 19, 2005 response.

Dr. Roach informed our Associate Medical Director that conflicting information is due to a misinterpretation of his response on the Physical Abilities Assessment form. Dr. Roach stated that his work restrictions for you are based primarily on your reports to him, but also on his own observations of your behavior during examinations. Dr. Roach indicated that your limitations stem from your back; your hip is not impairing. Dr. Roach stated that if you return to work, it should be for four hours total, with increases as tolerated; a Functional Capacity Evaluation would provide more specific functionality guidelines.

Therefore, in order to obtain information concerning your functionality, a Functional Capacity Evaluation was scheduled to document how your medical conditions are affecting your functionality.

We received a letter from Dr. Roach dated June 14, 2005. Dr. Roach stated in his letter to us that you have some residual functional capacity to do sedentary work. However, you are limited by your need for sitting, standing and laying down as needed during the day. Dr. Roach indicated that you are not capable of performing even sedentary work neither for more than 30 minutes at a time, nor for two hours total during the day. Dr. Roach reiterated that your hip/femur condition is not disabling; your primary problem is your neck and back. Dr. Roach again stated that his work restrictions for you are based primarily on your history and on his own observations of your behavior during twenty to thirty minute examinations.

On July 26, 2005, you completed the aforementioned Functional Capacity Evaluation. This report shows that, while you did no complete all the tests, you gave consistent effort and were able to safely perform in the sedentary duty category for an 8 hour day, in accord with the U.S. Department of Labor Standards. This report does highlight your need to drastically change your position with sitting for a duration of greater than ten to fifteen minutes.

A Transferable Skills Analysis dated August 9, 2005, based on the aforementioned results of the Functional Capacity Evaluation and your past training, education and experience, inclusive of the need to allow for alternation of your position when necessary, identifies and

Steven Alfano
September 28, 2005
Page 4

confirms that you retain the capacity to perform your own occupation as a Compensation Manager and six additional sedentary occupations, all commensurate with your Long Term Disability income requirement of $49,839.84 annually.

We have information from your treating physician that state you experience problems secondary to back and neck pain. A Functional Capacity Evaluation shows you are able to operate at a sedentary level occupation, in accord with the U.S. Department of Labor Standards. The Transferable Skills Analysis dated August 9, 2005 identifies and confirms that you retain the capacity to perform your own occupation based on the Functional Capacity Evaluation restrictions.

### Summary

Based upon the pertinent vocational and medical documentation contained in the file, we have determined that you retain the capacity to perform your own occupation as identified in the formal Transferable Skills Analysis. Therefore, we must deny your claim for Long-Term Disability benefits beyond September 28, 2005.

In reviewing your claim, CIGNA Life Insurance Company of New York considered your claim file as a whole for purposes of determining your entitlement to benefits. The Policy provides that CIGNA Life Insurance Company of New York would pay benefits only if you were prevented by Disability as defined above, and would continue to provide information to us validating such. However, based on the information listed above, you do not meet the definition of disability. As such, your claim is denied as of September 28, 2005, and to prevent financial hardship, we will pay benefits through October 27, 2005, and no benefits are payable under Policy number NYK 1972 beyond October 27, 2005.

### Appeal Rights

If you are not satisfied or do not agree with the reason(s) for the denial of your claim, you may request a review of this denial by writing to CIGNA Life Insurance Company of New York representative signing this letter and addressing it to :

CIGNA Disability Management Solutions
12225 Greenville Ave
Suite 655-LB179
Dallas, TX 75243-9382

The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. Your appeal should be in writing and can be made by your or your duly authorized representative. It must contain:

- The reasons for your appeal and/or disagreement, and
- Medical evidence or documentation to support your position.

Steven Alfano
September 28, 2005
Page 5

**THE APPEAL MUST BE MADE WITHIN 180 DAYS OF THE DATE YOU RECEIVE THIS LETTER.**

Please note that you have a right to bring legal action for benefits under ERISA section 502(a) if your appeal is denied.

You may request review of this denial by writing to the CIGNA Life Insurance Company of New York representative signing this letter. The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. Please include any documentation which you feel supports your claim. Under normal circumstances, you will be notified in writing of the final decision within 30 days of the date your request is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days thereafter. A final decision will be made no later than 90 days after your request is received.

We realize there may be factors of which we are unaware, and if you feel this determination is incorrect, we shall be pleased to review any evidence you may wish to submit which will support your claim, and if the information warrants, alter our decision.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

In reviewing your claim, we considered your claim file as a whole for the purposes of determining your entitlement to plan benefits. The weight of the medical evidence in your claim file does not document a disability severe enough to render you disabled under the meaning and terms of the above group insurance plan.

Sincerely,

Mark Sodders

Acenza: Task

Page 1 of 4

Tasks | Contents | Notes (0/0)

## Task: Internal Resource Response

| Start Date: | 03/03/2006 | | Due Date: | | 03/14/2006 |

### Details

| | | | | | | |
|---|---|---|---|---|---|---|
| Name | STEVEN ALFANO | | SSN | 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 | DOB | 01/14/1958 |
| Account Name | WEILL MEDICAL COLLEGE OF CORNE | | Account # | NYK0001972 | Incurred Date | 08/06/2000 |
| Claim Manager | Mark Sodders | | Incident # | 513554 | Claim Eff Dt-Status | 09/28/2006 - Closed |

*Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.),
Legal, Pre-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits*

| | |
|---|---|
| Referral Type | Medical |
| Role | Nurse Case Manager | Name | Kay Rhodes | ☑ New Nurse/VRC of Record |

Check all that apply for Medical or Vocational
- ☐ Symptoms insufficient to support diagnosis
- ☐ Treatment plan and/or provider specialty is not consistent with Clemant's Diagnosis
- ☐ Occupational requirements assessment is needed
- ☐ Determine Functional Capacity
- ☐ Projected return to work date is unclear or undetermined
- ☐ Return to Work Assistance
- ☐ Internal Transferable Skills Assessment
- ☐ Claim Complexity Changed
- ☒ Other    Specify Other    Appeal Medical Review

Comments

https://dms-acclaim.group.cigna.com/acenza/Task/TaskOTCTASK_INTERNAL_RESOURCE_RESPONSEDisplay.asp?id=1...    03/03/2006

CLICNY 0873

Case 1:07-cv-09661-GEL    Document 14-18    Filed 07/25/2008    Page 8 of 52

Attorney submitted appeal letter.  This letter states that cx remains TD from both parts of the disability definition.  Attny stated cited tests indicating L5 Nerve Root Impingement and Radiculopathy, and indicates that this is correlated by physical examination.  Attorney also cited the SSA ALJ decision to award Cx.  Information posed to this office is prior to FCE dated 07/26/05, most notably medical from 2002.  Attorney submitted medical from 2006 that shows, according to attorney, a worsening of cx's condition.  However, no mention was ever made concerning the findings of the FCE in correlation to this medical.  Attorney did state that the FCE was the only item we utilized in making the determination.  Attorney surmised that, based on the therapists report in the FCE, Sedentary was chosen as it was the lowest available on the form.  Attny stated that based on the aforementioned information, and that the sum of evidence also indicates Cx is unable to earn more than 80 indexed covered earnings, Cx's claim should be reopened.

Medical submitted is from Dr. Alciades and Dr. Roach, which is a form completed from both AP's that cites findings on PS, imaging tests, and L/R only one actual medical records submitted, which is an MRI Lumbar Spine dates 07/08/2005, which indicates moderate spinal stenosis L4-L5 and L5-S1.

Referring medical submitted with Appeal to NCM for review.

MDSodders   CM

| Title | Appeal Medical Review | |
|---|---|---|
| Referral Accepted Comments | Yes | Date 03/03/2006 |

CLICNY 0674

3/3/06 Additional medical sent w/appeal letter from attorney. Referred to NCM at this time for review of new medical to assess if there has been a change in cx condition providing a severity of deficits that impact functionality since FCE which identified functionality. Kay Rhodes, RN, CCM

Additional medical-
7/8/05 L/S MRI-L4, L5 mod stenosis, no nerve root displacement, stable.
1/6/06 Form completed by Dr Roach-provided tx dates from 7/6/00-7/1/05. Documented cx condition-chronic and has to lie down several times daily. State medications have S/E. R/L-sit 20 min cont for 2 hrs. stand 15 minutes for 1 hr. walk 1 block for 1 hr. He can never lift, carry, bend, squat, crawl, climb. He can reach occas and use upper extremity to grasp, push/pull, fine manipulation. He can use feet for repetitive mvmts. He has mild R/L for heights, being around machinery, otherwise no environmental R/L. He can travel.
1/11/06 FCE Form completed by Dr Sierladios/orthoxx-provided tx dates from 5/15/96-7/14/05.
Cont pain--various sites-leg, hip, back, numbness associated w/back pain. Exam-SLR-pos, weakness walking on toes. RT lateral hip pain, bursitis, MRI positive for stenosis, degenerative disc disease. Prognosis-poor. Has to lie down .5-2 hrs, x2-3/day. Meds-
Vicodin, Feldene, OTC NSAIDS. No side effects reports. R/L-sit 20 min for 2 hrs, stand 15 min for less than 1.5 hrs, walk less than 1 block less than 1 hr. lift/carry-5 lbs occas, never ben, crawl, climb. Can squat, reach-occas. He can use hands for repetitive action for simple grasp, push/pull, fine manip. He can use feet for repetitive mvmts. He is restricted to mild in heights and being around machinery. He can travel.

**Investigation Result**
NCM ASSESSMENT/PLAN
Additional medical provided is insufficient to support a change in severity of deficits that significantly impacts function after the FCE. This is evidenced by the FCE which was performed on 7/25/05 revealing that the cx had functionality at the sedentary level. The VRC identified positions that included the restrictions and limitations for alternating cx position when necessary. The forms that were completed by the APs with the additional medical provided vague responses from both APs with no objective measureable findings for range of motion and neurological deficits. One form from Dr Roach contained many illegible responses. The R/L the forms gave were inconsistent with what the cx tested in capabilities on the FCE on 7/26/05. Discussed with CM and file returned. Kay Rhodes, RN, CCM

| Last Changed User | | Key Rhodes | Last Changed Date | 03/03/2006 11:29 AM |
|---|---|---|---|---|

Active Contents

| Type | Due Date | Created By | Assigned To | Title |
|---|---|---|---|---|
| LTD | 06/05/2002 | | Mark Sadders | ALFANO,STEVEN - 098349648 - 014141948 |

Acenza Task

Page 1 of 2

**Task** | **Contents** | **Notes (0/0)**

## Task: Internal Resource Referral

Start Date: | 03/03/2006 | Due Date: | | 03/07/2006

### Details

Name | STEVEN ALFANO | SSN | 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 | DOB | 01/14/1958

Account Name | WEILL MEDICAL COLLEGE OF CORNE | Account # | NYK0001972 | Incurred Date | 08/06/2000

Claim Manager | Mark Sodders | Incident # | 513554 | Claim Eff Dt-Status | 09/28/2005 - Closed

* Do not use this task for any of the following referrals: Appeals, External Medical/Vocational Referrals (IME, FCE, etc.), Legal, Pro-SAM/SAM, Overpayment, Settlement, Social Security and Other Benefits

Title | Appeal Medical Review

Referral Type | Medical

Role | Nurse Case Manager    Name | Kay Rhodes    ☐ New Nurse/VRC of Record

Check all that apply for Medical or Vocational
☐ Symptoms insufficient to support diagnosis
☐ Treatment plan and/or Provider specialty is not consistent with Claimant's Diagnosis
☐ Occupational requirements assessment is needed
☐ Determine Functional Capacity
☐ Projected return to work date is unclear or undetermined
☐ Return to Work Assistance
☐ Internal Transferable Skills Assessment
☐ Claim Complexity Changed
☒ Other          Specify Other | Appeal Medical Review

Comments

https://dms-acclaim.group.cigna.com/acenza/Task/TaskOTCTASK_INTERNAL_RESOURCE_REFERRALDisplay.asp?id=164...    3/3/2006

CLICNY 0676

Acenza: Task

Attorney submitted appeal letter. This letter states that cx remains TD from both parts of the disability definition. Attny stated cited tests indicating L5 Nerve Root Impingement and Radiculopathy, and indicates that this is correlated by physical examination. Attorney also cited the SSA ALJ decision to award Cx. Information posed to this office is prior to FCE dated 07/26/05, most notably medical from 2002. Attorney submitted medical from 2006 that shows, according to attorney, a worsening of cx's condition. However, no mention was ever made concerning the findings of the FCE in correlation to this medical. Attorney did state that the FCE was the only item we utilized in making the determination. Attorney surmised that, based on the therapists report in the FCE, Sedentary was chosen as it was the lowest available on the form. Attny stated that based on the aforementioned information, and that the sum of evidence also indicates Cx is unable to earn more than 30 indexed covered earnings, Cx's claim should be reopened.

Medical submitted is from Dr. Alciades and Dr. Rosch, which is a form completed from both AP's that cites findings on PE, imaging tests, and L/R only one actual medical records submitted, which is an MRI Lumbar Spine dated 07/08/2005, which indicates moderate spinal stenosis L4-L5 and L5-S1.

Referring medical submitted with Appeal to MCM for review.

MDSodders    CM

| Last Changed User | Last Changed Date |
|---|---|
| Mark Sodders | 03/03/2006 08:48 AM |

Active Contents

| Type | Due Date | Created By | Assigned To | Title |
|---|---|---|---|---|
| LTD | 09/08/2001 | Mark Sodders | Mark Sodders | ALFANO,STEVEN -- 099449648 -- 01/14/1958 |

Status: Completed    Assigned To: Mark Sodders    Created: 03/03/2006 08:49 AM

CLICNY 0677

### COHEN & SIEGEL, LLP

14 MAMARONECK AVENUE, SUITE 401
WHITE PLAINS, NEW YORK 10601

(914) 421-0080
(718) 581-3907
FAX: (914) 421-0035

ANDREW R. SIEGEL+
ADAM S. COHEN*

FORTUNATO J. CALABRO
OF COUNSEL
+Admitted in NY And NJ
*Admitted in NY And CT

903-B SHERIDAN AVENUE
BRONX, NY 10451

February 22, 2006

Mark Sodders
Claim Manager
CIGNA Disability Management Solutions
Routing 212E, 12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382

Regarding:     Steven Alfano
Policy No.     NYK 1972
Policy Holder: Weill Medical College of Cornell University
Underwriter:   CIGNA Life Insurance Company of New York

Dear Mr. Sodders:

This office has been retained by Steven Alfano to appeal the September 28, 2005
letter stating that he is no longer entitled to Long Term Disability benefits pursuant to the
above-captioned policy. It is our contention that this determination is in error and that
Mr. Alfano's benefits should be reinstated.

Pursuant to Weill Medical College group insurance policy NYK 1972, a claimant
is disabled if he is unable to perform all the material duties of his regular occupation, or
he is earning less than eighty percent (80%) of his Indexed Covered earnings. We would
assert that Mr. Alfano remains disabled because he is both unable to perform all the
material duties of his regular occupation and he is earning less than 80% of his Indexed
Covered Earnings.

A review of this file should indicate that Mr. Alfano worked as a Compensation
Manager until he was found disabled as of June 6, 2001. It is uncontroverted that this is a
sedentary occupation. When he ceased working, Mr. Alfano stated that he could not
perform his job duties because of constant pain and numbness, a dropped foot, an
inability to sit, stand or walk for any significant period of time and the need to lie down

frequently to rest his back. At that time, Mr. Alfano indicated that his back condition is aggravated by sitting, which produces increased pain and numbness.

Diagnostic testing shows that Mr. Alfano suffers from moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc dessication, a degenerative type end-plate marrow change, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation. See June 9, 2000 MRI, submitted to CIGNA on April 15, 2002. As a result of these problems, there is an impingement of the exiting L5 nerve root along with moderate spinal stenosis.

EMG/NCV studies from July 20, 2000 display that Mr. Alfano suffers from an L5-S1 radiculopathy. This is confirmed by a physical examination, which shows that he has an antalgic gait, is unable to walk on his heels and toes and has decreased sensation in his left lower extremity. This test was also submitted to CIGNA on April 15, 2002. Moreover, another MRI performed on August 18, 2001 shows that Mr. Alfano has spinal stenosis at the L5-S1 level of the spine as well as impingement of the thecal sac at the L5-S1 level of the spine. It also shows that he has moderate facet osteoarthritis and narrowing of the L4-5 neural foramen. The MRI was submitted on April 15, 2002 as well.

Your records display that Mr. Alfano applied for and is currently receiving Social Security disability benefits as a result of his spinal conditions. In that claim, the Administrative Law Judge (referred to hereinafter as "ALJ") determined that Mr. Alfano has severe impairments of L5-S1 spondylosis and spinal stenosis. As a result of these conditions, the ALJ found that the claimant has been under a disability since June 5, 2000. This determination remains in effect to this day, and Mr. Alfano is currently considered "disabled" and eligible for Social Security disability benefits.

This decision was supported by the medical records and reports of claimant's treating doctors Michael Alexiades, M.D., Keith Roach, M.D. and James Farmer, M.D. Dr. Alexiades, an orthopedic surgeon who treats Mr. Alfano, submitted three reports, dated May 10, 2001, February 7, 2002 and July 12, 2002. These reports show that due to his limitations Mr. Alfano is unable to perform sedentary work as he cannot perform the necessary sitting, standing, walking, lifting or carrying to do this work. Similarly, Dr. Roach's report dated February 12, 2002 also shows that the claimant cannot perform sedentary work. These reports were completely supported by the records from these same doctors as well as the records from Dr. Farmer, Mr. Alfano's former treating spine surgeon. In fact, Dr. Farmer notes that Mr. Alfano has low back pain which radiates into both of his legs along with numbness in his entire right foot. As a result of these problems, he cannot engage in any prolonged sitting, standing or walking; simply, the pain and severe limitations are totally disabling.

Dr. Alexiades notes in his reports that Mr. Alfano suffers from back pain, left leg pain and numbness due to his L5-S1 spondylosis, stenosis and radiculopathy. He exhibits a positive straight leg raising test along with weakness in his leg. He must lie down during the day for up to two hours because of the pain he suffers, despite treatment of

physical therapy, epidural injections and anti-inflammatory medication. According to Dr. Alexiades, Mr. Alfano can only occasionally lift or carry up to five pounds, and cannot lift anything frequently. He cannot bend, crawl or climb, and can only occasionally squat or reach for items. He can only sit for a total of twenty minutes continuously and a maximum of two hours, stand for only fifteen minutes continuously and a total of one and one-half hours, and walk for a maximum of one block continuously and a total of less than one hour in an eight hour workday.

Dr. Roach's February 12, 2002 report fully buttresses the findings of Dr. Alexiades. Dr. Roach also determines that Mr. Alfano has spondylosis with spinal stenosis, causing low back pain radiating into his right leg, numbness in the right leg, decreased reflexes, decreased strength and diminished sensation. Dr. Roach agrees that Mr. Alfano must lie down during the day, stating that he might have to do so three times per day for up to two hours each time. Given this indication alone, there is no way that Mr. Alfano can perform any type of work. However, Dr. Roach continues to list Mr. Alfano's limitations, noting that he can only sit for a total of twenty minutes continuously and a maximum of two hours, stand for only fifteen minutes continuously and a total of one hour, and walk for a maximum of one block continuously and a total of one hour in an eight hour workday.

On December 10, 2002 you had David Trotter, M.D. review the medical records in this file and provide an opinion as to the limitations presented by Mr. Alfano. That doctor determined that "[T]he medical documentation does support the claimant's apparent inability to perform his occupation....the claimant would overall appear to be disabled from his usual occupational activities certainly [on] a full time basis and plausibly on a part time basis assuming that frequent changes of position and/or even allowances for occasional lying down accommodations are not available."

Based upon these reports, you have continued to pay Mr. Alfano his long term disability benefits. However, you have continued to evaluate this claim on a periodic basis. It is our contention that those evaluations continue to support Mr. Alfano's claim that he is disabled and entitled to benefits. In fact, the evidence clearly displays that Mr. Alfano's condition has worsened, and that he still cannot work and must receive benefits.

On September 14, 2004, Mr. Alfano had an x-ray of his neck performed. This test reveals that he now has degenerative disc disease in his cervical spine, with narrowing as well as osteophytes at the C6-7 level. The osteophyte formation causes narrowing of the neural foramina at this level, left greater than right. Approximately one month later, Dr. Roach completed a physical ability assessment which further shows that Mr. Alfano is disabled. According to this evaluation, the objective evidence shows that Mr. Alfano cannot sit, stand or even walk for 2.5 hours per day. He further can not lift or carry even 10 pounds, which I will point out is the minimum amount of weight designated in your form.

Given these limitations, Mr. Alfano would be unable to perform even sedentary work as defined by the U.S. Department of Labor in the Dictionary of Occupational

CLICNY 0680

Titles (the DOT). Nonetheless, you identified several occupations that you believed that Mr. Alfano might be able to perform even with his restrictions. When you forwarded these to Dr. Roach, he stated on April 19, 2005 that "Mr. Alfano is physically unable to perform the occupations as described....He is physically unable to sit without frequent need for standing, laying down, or using ice on his back. He is not able to stay seated for a meal at a restaurant, due to pain and stiffness." Moreover, the doctor specifically agreed with the determination of the Social Security Administration that Mr. Alfano is totally disabled and unable to work.

You continued to seek clarification from Dr. Roach, claiming that there was an inconsistency between his letter and the assessment. However, we would argue that any perceived inconsistency is due to the fact that your form does not provide any space for providing limitations less than those given by Dr. Roach. Moreover, his April 19, 2005 letter is perfectly clear in showing that Mr. Alfano's impairments render him totally disabled. Yet, you then asked Dr. Roach to provide still another letter to further explain Mr. Alfano's disabilities.

On June 14, 2005, Dr. Roach did provide another letter. This one states that in his opinion Mr. Alfano can perform only sedentary work, but can only do so for 30 minutes at a time, and for a maximum of two hours during an eight hour day. Dr. Roach states that Mr. Alfano has not improved over the past five years, and that he is unlikely to do so. Moreover, Mr. Alfano lies down frequently during the day, often takes hot baths because of the pain and must use prescribed narcotics, all in attempts to alleviate his pain.

In addition to the foregoing, we hereby submit an updated report from Dr. Roach which further demonstrates that Mr. Alfano is still disabled and entitled to his benefits. In this January 6, 2006 report Dr. Roach states that Mr. Alfano continues to have severe low back pain which radiates down his legs. The pain can be a 10 out of a scale from 1 to ten and it creates fatigue, which limits his ability to sit and stand. Both of his quadriceps muscles are weak, and he has decreased reflexes along with positive straight leg raising tests bilaterally. According to Dr. Roach, he must lie down several times daily, for several hours. Dr. Roach indicates that Mr. Alfano can sit for up to 20 minutes continuously and a total of 2 hours in an 8 hour workday, stand for up to 15 minutes continuously and a total of 1 hour in an 8 hour workday and walk for up to 1 block continuously and a total of 1 hour in an 8 hour workday. Dr. Roach further opines that he can lift or carry only 5 pounds, on an occasional basis, and cannot lift or carry anything more.

Clearly, Dr. Roach in his most recent report concludes that Mr. Alfano is totally disabled and unable to work, as he has found in all of his statements and reports throughout his years of treating Mr. Alfano.

We also submit another report from treating orthopedic surgeon Dr. Alexiades, dated January 11, 2006. Dr. Alexiades states that Mr. Alfano has continuous pain in his leg, hip and back, along with numbness in the back. Dr. Alexiades reports that he has a positive straight leg raising test with weakness. He notes that MRI findings show L4-5

CLICNY 0681

and L5-S1 spinal stenosis with spondylosis, degenerative disc bulging and an interval progression related to facet joint degenerative changes. This is confirmed by an MRI dated July 8, 2005, which is submitted as well. As a result of these findings, Dr. Alexiades diagnoses Mr. Alfano as suffering from L5-S1 spondylosis with stenosis and radiculopathy.

Dr. Alexiades notes that Mr. Alfano has to lie down 3 times during the day for ½ to 2 hours. He finds that Mr. Alfano can sit for up to 20 minutes continuously and a total of 2 hours in an 8 hour workday, stand for up to 15 minutes continuously and a total of less than 1 ½ hours in an 8 hour workday and walk for less than 1 block continuously and a total of less than 1 hour in an 8 hour workday. Like Dr. Roach, he also opines that Mr. Alfano can only occasionally lift or carry 5 pounds and cannot lift or carry anything more. Also like Dr. Roach, Dr. Alexiades' report is wholly consistent with all of his previous reports regarding Mr. Alfano's condition.

Given all of the foregoing, voluminous medical evidence, including the report of your own expert, it is obvious that Mr. Alfano has not worked, cannot work, and will likely be unable to work in the foreseeable future. Obviously, he is unable to earn up to 80% of his Indexed Covered Earnings, as is required by your policy to find that he is not entitled to benefits. Indeed, the medical evidence quite plainly shows that not only has Mr. Alfano's condition not improved to the extent that he can work, but it has worsened, as is displayed by the July 8, 2005 MRI along with the January, 2006 reports of Drs. Roach and Alexiades.

There can also be no doubt that Mr. Alfano cannot perform either the material duties of his occupation, nor can he perform any of the other sedentary jobs you have outlined for him. As you are no doubt aware, the United States Department of Labor defines sedentary work as being able to sit for six hours out of an eight hour day, stand or walk for two hours out of an eight hour day, and lift or carry up to five pounds frequently and ten pounds occasionally. See, Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles; see also 20 CFR 404.1567 (the Social Security Act).

Every shred of medical evidence shows that Mr. Alfano cannot perform work at this level of physical exertion. He cannot sit long enough, he cannot stand long enough, he cannot lift enough and he cannot carry enough. Moreover, he has to lie down for lengthy periods of time during the day, for up to several hours each day. He also has to take frequent hot baths and must constantly alter his positions because of his pain. Based upon this medical evidence there can be no doubt that Mr. Alfano has been and continues to be totally disabled. He must therefore be found entitled to continuing benefits.

The only evidence proffered by you in supposed support of your claim that Mr. Alfano can somehow work is a functional capacity evaluation performed by a physical therapist that you retained. While this report does conclude that Mr. Alfano is functioning "safely" at a sedentary level, we would suggest that a careful review of the

report unquestionably shows that Mr. Alfano cannot engage in any work on a regular, sustained basis, and is therefore entitled to received his benefits.

The functional capacity evaluation shows that the claimant cannot perform any lifting or carrying, as is required to perform every type of work. In fact, he is so limited that the therapist "stopped these tests due to frequent buckeling and increased risk of falling." Indeed, the therapist notes that he had two episodes of loss of balance during the tests, and later during the report notes that she had to assist Mr. Alfano to prevent him from falling. Moreover, all of the sedentary jobs you have listed indicate that they must be performed "mostly sitting", as we have indicated is required for sedentary work. However, this report indicates that "The clinical data obtained at this evaluation does not support his ability to tolerate sitting for any duration greater than 10-15 minutes without a drastic change in position. During the exam he frequently lied down to eleviate symptoms. His physiologic changes were appropriate with his increased subjective complaints....His range of motion was severely limited both when the patient was aware and unaware of observation."

Given these statements, it appears that the only reason the therapist found that Mr. Alfano falls into the sedentary category is simply because it is the lowest category on the evaluation form. Certainly, since the definition immediately next to that category includes the ability to exert up to 10 pounds of force occasionally and a negligible amount of force to frequently lift or carry items, and since this evaluator finds that Mr. Alfano cannot engage in any lifting or carrying, it is clear that he cannot perform sedentary work. But even if one disregards this inconsistency, it cannot be contested that all of the medical evidence as well as this evaluation show that in no way, shape or form can Mr. Alfano perform the sitting, standing and walking necessary to perform sedentary work.

In sum, all of the evidence shows that Steven Alfano cannot perform any type of work and remains eligible for benefits. He also cannot earn the required 80% of his Indexed Covered Earnings, and cannot perform the material duties of his occupation or any similar or sedentary occupation. We therefore request that you reinstate his benefits immediately.

Very truly yours,

Adam S. Cohen, Esq.

ASC/ac
Enc.

## PHYSICIAN'S REPORT FOR CLAIM OF

### DISABILITY DUE TO PHYSICAL IMPAIRMENT
SS#: 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

Patient's Name:     Steven Alfano

Patient's Address:  3800 Waldo Avenue
                    Bronx, New York 10463

Dear Doctor ALEXIADES;

Please answer each of the following questions about the patient.  They concern the patient's claim of entitlement to disability benefits under the Social Security Act.  Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely.  If a question is not applicable to the patient, please do indicate.

1.  Give first and last dates of treatment and the average frequency of treatments. 5-15-96  -> 7-14-2005 (consecutive visits)

2.  Describe in detail the patient's symptoms (complaints, including pain).

Continuous pain in various sites; leg, hip and back. Numbness associated to back pain.

3. Describe in detail the patient's signs (clinical findings).

(+) straight leg raise
weakness on walking on toes
(2) lateral hip pain consistent with
trochanteric bursitis of the hip.

4. Give the laboratory tests and results.

MRI (+) for L5S1 spinal stenosis related to
spondylosis and degenerative disc bulging
spinal stenosis L4-L5. Interval progression
related to facet joint degenerative change.

5. Diagnoses. L5S1 spondylosis with stenosis
and radiculopathy.

2

6. Prognosis POOr _____

7. Have any of the patient's medical conditions lasted or can any be
expected to last at least twelve months?

   Yes ✓             No_____

8. Does the patient have to lie down during the day?

   Yes ✓         No_____.    If yes, for how long and for what
   reasons? ½ h - 2 hrs two to three times
   per day. _____

9. Describe the treatment the patient has received. _____
   physical therapy, epidural injection +
   anti inflammatories.

GLICNY 9686

10. Give the medications prescribed for the patient, including the dosage.

Vicodin, Felden 20mg OTC NSAIDS

Do any of the medications have any side effects or limit the patient's activities?

Yes_____    No ✓    If yes, explain._____

11. Does or could any condition cause the patient pain?

Yes ✓    No_____    If yes, explain See above.

If yes, does any medication affect the patient's pain and how does it affect the pain?

Temporary decrease in pain.

4

·12.  Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

   (a)  The patient can:

      (i)  Sit up to __20 minutes__ continuously and a total of __2 hrs.__ in an 8-hour workday;

      (ii)  Stand up to __15 minutes__ continuously and a total of __< 1½ hrs__ in an 8-hour workday;

      (iii)  Walk up to __< 1 block__ continuously and a total of __< 1 hr.__ in an 8-hour workday;

   (b)  During an entire 8-hour workday:*

      (i)  The patient can lift (pounds):

|  | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | [ ] | [ ✓ ] | [ ] | [ ] |
| 6-10 | [ ✓ ] | [ ] | [ ] | [ ] |
| 11-20 | [ ✓ ] | [ ] | [ ] | [ ] |
| 21-25 | [ ✓ ] | [ ] | [ ] | [ ] |
| 26-50 | [ ✓ ] | [ ] | [ ] | [ ] |
| 51-100 | [ ✓ ] | [ ] | [ ] | [ ] |

      (ii)  The patient can carry (pounds):

|  | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | [ ] | [ ✓ ] | [ ] | [ ] |
| 6-10 | [ ✓ ] | [ ] | [ ] | [ ] |
| 11-20 | [ ✓ ] | [ ] | [ ] | [ ] |
| 21-25 | [ ✓ ] | [ ] | [ ] | [ ] |
| 26-50 | [ ✓ ] | [ ] | [ ] | [ ] |
| 51-100 | [ ✓ ] | [ ] | [ ] | [ ] |

      (iii)  The patient can:

|  | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | [ ✓ ] | [ ] | [ ] | [ ] |
| Squat | [ ] | [ ] | [ ] | [ ] |
| Crawl | [ ✓ ] | [ ] | [ ] | [ ] |
| Climb | [ ✓ ] | [ ] | [ ] | [ ] |
| Reach | [ ] | [ ✓ ] | [ ] | [ ] |

5

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%.

(v)  The patient can use hands for repetitive action such as:

Pushing and Pulling

| | Simple Grasping | of Arm Controls | Manipulation |
|---|---|---|---|
| Right | (✓) Yes  ( ) No | (✓) Yes  ( ) No | (✓) Yes  ( ) No |
| Left | (✓) Yes  ( ) No | (✓) Yes  ( ) No | (✓) Yes  ( ) No |

(v)  The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

| Right | Left | Both |
|---|---|---|
| (✓) Yes  ( ) No | (✓) Yes  ( ) No | (✓) Yes  ( ) No |

13.  The patient has restrictions in activities involving:

| | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | (✓) | ( ) | ( ) |
| Being around moving machinery | ( ) | (✓) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | (✓) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | (✓) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | (✓) | | | |

14.  This question applies only if its number is circled. The Social Security Administration has established what is called a "Listing of Impairments." If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled. Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints. Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain _____

_____

_____

6

CLICNY 0889

· 15.  Can the patient travel alone on a daily basis.

     (a)  By bus?      Yes ✓     No_____

     (b)  By subway?   Yes ✓     No_____

16.  Other comments_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Date 1-11-06.

_____
Physician (signed)

MICHAEL M. ALEXIADES, M.D.
Physician's Full Name
523 East 72th Street
New York, NY 10021
(212) 734-1869
_____
Address

_____
Telephone Number

CLICNY 0690

## PHYSICIAN'S REPORT FOR CLAIM OF

## DISABILITY DUE TO PHYSICAL IMPAIRMENT
### SS#: 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

Patient's Name:     Steven Alfano

Patient's Address:  3800 Waldo Avenue
                    Bronx, New York 10463

Dear Doctor  *ROACH*

Please answer each of the following questions about the patient. They
concern the patient's claim of entitlement to disability benefits under the
Social Security Act. Since this form will be used by the Social Security
Administration in deciding if the patient is disabled, please make sure that
it is legible and that every question is answered completely. If a question
is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of
treatments. *7/04/00 — 2/01/ow    :    q 2-3 months*

2. Describe in detail the patient's symptoms (complaints, including pain).

*2vere lower back pain wl redom down leg*
*pain c/o l "/10*
*horiye horm asiiry x cm /srund*

3. Describe in detail the patient's signs (clinical findings).

(B) quadriceps weakness 4/5

decreased patellar reflex on (L)

normal sensation

(R) (L) - straight leg raise

4. Give the laboratory tests and results.

- no results provided

5. Diagnoses. L5/S1 spondylosis and spinal stenosis

6. Prognosis _____ *chronic* *or* *recent* *so* *only* _____

7. Have any of the patient's medical conditions lasted or can any be expected to last at least twelve months?

Yes ✓                    No _____

8. Does the patient have to lie down during the day?

Yes ✓           No _____.    If yes, for how long and for what reasons? _____ *sound* *n-ll* *daily* *, or* *kept* *loosely* _____ *only* *amel* *to* *lay* *down* *for* *several* *loss* _____

9. Describe the treatment the patient has received. _____
_____ *physical* *therapy* _____
_____ *epidural* *injections* _____
_____ *NSAIDs* _____
_____ *narcotics* _____



3

10. Give the medications prescribed for the patient, including the dosage.

_arrested_

Do any of the medications have any side effects or limit the patient's activities?

Yes ___   No _✓_   If yes, explain, _____

_yes   side effects_

_her   many medications_

11. Does or could any condition cause the patient pain?

Yes _✓_   No _____   If yes, explain _____

_as   lup_

If yes, does any medication affect the patient's pain and how does it affect the pain?

_medicines   not   her   pain   relif_

⠿⠿⠿⠦⠴⠴⠴  (braille)

⠿⠿⠿⠿  (braille)

4

12. Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

    (a)  The patient can:

        (i)  Sit up to ___20___ ___min___ continuously and a total of ___2 hrs___ in an 8-hour workday;

        (ii)  Stand up to ___15 min___ continuously and a total of ___1 hr___ in an 8-hour workday;

        (iii)  Walk up to ___1 blk___ continuously and a total of ___1 hr___ in an 8-hour workday;

    (b)  During an entire 8-hour workday: *

        (i)  The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | ( ) | ( ) | ( ) | ( ) |
| 11-20 | ( ) | ( ) | ( ) | ( ) |
| 21-25 | ( ) | ( ) | ( ) | ( ) |
| 26-50 | ( ) | ( ) | ( ) | ( ) |
| 51-100 | ( ) | ( ) | ( ) | ( ) |

        (ii)  The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | ( ) | ( ) | ( ) | ( ) |
| 11-20 | ( ) | ( ) | ( ) | ( ) |
| 21-25 | ( ) | ( ) | ( ) | ( ) |
| 26-50 | ( ) | ( ) | ( ) | ( ) |
| 51-100 | ( ) | ( ) | ( ) | ( ) |

        (iii)  The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | ( ) | ( ) | ( ) | ( ) |
| Squat | ( ) | ( ) | ( ) | ( ) |
| Crawl | ( ) | ( ) | ( ) | ( ) |
| Climb | ( ) | ( ) | ( ) | ( ) |
| Reach | ( ) | (✓) | ( ) | ( ) |

5

CLICNY 0695

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously
equals 67% to 100%.

(v)    The patient can use hands for repetitive action such as:
                                    Pushing and Pulling
          Simple Grasping      of Arm Controls          Manipulation

Right      ( ✓ ) Yes  {  } No      ( ✓ ) Yes  {  } No      ( ✓ ) Yes  {  } No
Left       ( ✓ ) Yes  {  } No      ( ✓ ) Yes  {  } No      ( ✓ ) Yes  {  } No

(v)    The patient can use feet for repetitive movements, as in
pushing and pulling of leg controls:

   Right                      Left                      Both

( ✓ ) Yes  {  } No        ( ✓ ) Yes  {  } No        ( ✓ ) Yes  {  } No

13.   The patient has restrictions in activities involving:

|                                              | None | Mild | Moderate | Total |
|----------------------------------------------|------|------|----------|-------|
| Unprotected heights                          | ( )  | ( ✓) | ( )      | ( )   |
| Being around moving machinery                | ( )  | ( ✓) | ( )      | ( )   |
| Exposure to marked changes in temperature and humidity | ( ✓) | ( )  | ( )      | ( )   |
| Driving a motor vehicle                      | ( ✓) | ( )  | ( )      | ( )   |
| Exposure to dust, fumes & gases              | ✓    |      |          |       |

14.  This question applies only if its number is circled.  The Social
Security Administration has established what is called a "Listing of
Impairments."  If an individual's impairment is either listed or is
determined to be medically the equivalent of a listed impairment the
individual is deemed to be disabled.  Attached is a copy of that portion of
the Listing of Impairments that relates to the patient's complaints.  Does
the patient have an impairment that meets or equals the Listings of
Impairments?

If yes, explain_____

_____

_____

6

CLICNY 0696

15:  Can the patient travel alone on a daily basis.

      (a)  By bus?      Yes ___✓___      No _____

      (b)  By subway?    Yes ___✓___      No _____

16.  Other comments _____

_____

_____

_____

_____

_____

_____

_____


Date __1/6/06__

_____
Physician (signed)

Krih  Rm
_____
Physician (print name)

SOJ  E Park  Sr  N Y  N Y     100√
_____
Address

212  716  2379
_____
Telephone Number

CLICNY 0697



## LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

Erich Eidenschent, M.D.
David A. Follett, M.D.
Keith S. Tobin, M.D.
William Losie, M.D.
Karen B. Wagner, M.D.
Shelley E. Wertheim, M.D.
Peter Roumanis, M.D.
Kathy J. Tobin, M.D.
Ronald S. Wagner, M.D.
Philip Karver, M.D.
Joseph Tuvia, M.D.
Fred A. Petrulli, M.D.
Mykola Mohuchy, M.D.

61 East 77th Street, New York, NY 10021 • TEL. 212-777-3111 • FAX: 212-772-0468 • www.lenoxhillradiology.com

KEITH ROACH,MD
505 EAST 70TH STREET
NEW YORK, NY 10021
        Patient Name: Alfano, Steven
        Date of Birth: 01/14/1958
        Identification#: 139521
        Accession: 670023
        Exam Date: 07/08/2005

Dear Dr. Roach,

EXAM: MRI OF THE LUMBAR SPINE

TECHNIQUE: Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 3. 0 Tesla MRI unit.
HISTORY: Pain and stiffness, comparison exams, 6/9/2000 and 8/20/2001
FINDINGS: Curvature and alignment are maintained. Developmentally small lower spinal canal.

L5-S1 prominent spurs; disc bulging and facet joint arthropathy superimposed contribute to moderate spinal stenosis, mass-effect upon the thecal sac and S1 nerve roots. Foramen are patent.

L4-L5 spurring and disc bulging, exuberant facet joint arthropathy contribute to moderate spinal stenosis. Bilateral foraminal narrowing, without exiting nerve-root sleeve displacement.

L3-L4 mild spurring of the disc bulging and facet joint arthropathy contributes to mild spinal stenosis. Proximal foraminal narrowing on the left, without exiting nerve root sleeve displacement.

Conus medullaris ends at L1 and is unremarkable as is the subarachnoid space. No evidence of a paraspinal mass:
IMPRESSION:
1. L5-S1 moderate spinal stenosis related to spondylosis and degenerative disc bulging. Relatively stable.
2. Moderate spinal stenosis L4-L5, interval progressed related to facet joint degenerative change.

Thank you for referring this patient.

Electronically Signed By:  Shelley Wertheim, MD        07/08/2005

Mark Sodders
Claim Manager
CIGNA Disability Management Solutions





CIGNA Group Insurance
Life · Accident · Disability

October 4, 2005

Routing  212E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 x5693
Facsimile 860.733.2907
Mark.Sodders@Cigna.com

Steven Alfano
3800 Waldo Avenue
13-G
Bronx, NY 10463

RE:    Claimant:    Steven Alfano
       Policy #:    NYK 1972
       Policyholder:  Weill Medical College of Cornell University
       CIGNA Life Insurance Company of New York

Dear Ms. Alfano:

Thank you for your inquiry received in our office on September 30, 2005. Enclosed is a copy of your Long Term Disability claim for the above group insurance policy, inclusive of the recent FCE.

Should you have any questions, please contact the undersigned at 800.352.0611 x5693.

Sincerely,

Mark Sodders

CIGNA Group Insurance products and services are provided exclusively by underwriting subsidiaries of CIGNA Corporation, including Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

From: Eva & Steven Alfano  To: Mark Sodders

**FACSIMILE COVER PAGE**

Date: 9/30/2005  Time: 3:18:16 PM

Page 1 of 2

| To : | Mark Sodders | From : | Eva & Steven Alfano |
|------|--------------|--------|----------------------|
| Sent : | 9/30/2005 at 3:18:16 PM | Pages : | 2 (including Cover) |
| Subject : | LTD FILE | | |

MARK,

PER OUR TELEPHONE CONVERSATION, PLEASE SEND ME A FULL COPY OF MY FILE.

STEVEN ALFANO



September 30, 2005

To:    Mark Sadders
       Cigna

From: Steven Alfano
       Petit: NYK0001972

Please send me complete copy of my file at Cigna. I also request a copy of the
Functional Capacity Evaluation performed this summer.

Steven Alfano
2800 Waldo Ave.
Apt. 13-E
Bronx, NY 10463

CLICNY 0701

Page 1 of 2

Acenza: Task

**Task** **Contents** **Notes (0/0)**

## Task: Claimant Contact

Start Date: 09/30/2005    Due Date: 10/11/2005

**Details**

Name: STEVEN ALFANO    SSN: 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    DOB: 01/14/1968

Account Name: WEILL MEDICAL COLLEGE OF CORNE    Account #: NYK0001972    Incurred Date: 06/08/2000

Claim Manager: Mark Sodders    Incident #: 513554    Claim Eff Dt Status: 09/28/2005 - Closed

Contact Information · Interview Documentation · Spouse Information

**Contact Information**

Title: Inform Cx re Denial

First Phone Call    Date: 09/30/2005 01:11 PM    User ID: Mark Sodders

Result: Successful

Second Phone Call    Date:    User ID:

Result:    Date:    User ID:

Generate Letter/Fax    Date:    User ID:

Incoming Call    Date:    User ID:

Mail Received

Contact Comments

Called cx at 718-884-2067 to inform of denial and appeal process. Cx stated his
understanding, and will wait on denial letter to speak with NP. In addition, cx will be
faxing over a written request for his file copy.
MDSodders CM

**Interview Documentation**

Primary Diagnosis/Symptoms/Co-Morbid Conditions

Treating Physicians/Treatment Frequency/Current Treatment Plan/Hospitalization

CLICNY 0702

Acenza: Task

Functionality/Job Duties/Set Expectations

**Spouse Information**

First Name      MI      Last Name      Doe

SSN      Date of Birth

Is Spouse Employed?      If Employed

Date of Birth of Youngest Dependent

Other Income Benefits

**Comments**

Called cx at 718-884-2067 to inform of denial and appeal process. Cx stated his
understanding, and will wait on denial letter to speak with AP. In addition, cx will be
faxing over a written request for his file copy.
MDSodders CM

| Last Changed User | Mark Sodders | | Last Changed Date | 09/30/2005 02:12 PM |
|---|---|---|---|---|
| | Due Date | Created By | Assigned To | Title |
| | | Mark Sodders | Mark Sodders | ALFANO,STEVEN — 090449848 — 01/14/1958 |

**Active Contents**

| Type | Due Date | Created By | Assigned To | Title |
|---|---|---|---|---|
| LTD | 09/05/2005 | Mark Sodders | | ALFANO,STEVEN — 090449848 — 01/14/1958 |

Status: Completed      Assigned To: Mark Sodders      Created: 09/30/2005 01:16 PM

CLICNY 0703

## FILE CLOSING

Claimant Name: _____ Steven Alfano _____

Social Security Number: _____ 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 _____

Reason for Closure: _____ NOT JD OO _____

Date Closed in SRO: _____ 9/28/05 _____

Does the Policy Have Pension Supplement Coverage? (Circle One)

&gt; Yes    DO NOT DESTROY

&gt; No    CONTINUE

Destruction Date: _____ 9/28/12 _____

Closing Case Manager Name: _Mary Meds_    Date: _9/28/05_

DATE ENTERED ON TRACKER: _____

## FILE RE-OPENING

Case Manager's Name. _____

OPID _____

DATE REMOVED FROM DOLINS _____

REASON: _____ ERISA APPEAL    _____ LITIGATION

PM/PC _____

SHIP DATE: _____

CLERICAL: Please be aware that unless we have indicated that this file should be retained in our office, it should be prepared for shipment to Home Office-Closed File Department

**Mark Sodders**
Claim Manager
CIGNA Disability Management Solutions





**CIGNA Group Insurance**
Life · Accident · Disability

September 28, 2005

Routing 212E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 x5693
Facsimile 860.731.2907
Mark.Sodders@Cigna.com

Weill Medical College
Attn: benefits administrator
445 E. 69th Street  RM 220
New York, NY 10021

RE:    Claimant:    Steven Alfano
       DOB:         01/14/1958
       Policy #:    NYK 1972
       Policyholder: Weill Medical College of Cornell University
       CIGNA Life Insurance Company of New York

We have completed our investigation of the above captioned claim for Long Term Disability
benefits and must deny benefits.

We have advised the above named insured of the reason for the denial and his right to
appeal this denial.

If you or the employee should have any questions, please feel free to contact our office.

Sincerely,

Mark Sodders

"CIGNA" and "CIGNA Group Insurance" are registered service marks and refer to various operating subsidiaries of CIGNA Corporation. Products and services are provided by these subsidiaries and not by CIGNA Corporation. These subsidiaries include Life Insurance Company of North America, CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company.

**Mark Sodders**
Claim Manager
CIGNA Disability Management Solutions



**CIGNA Group Insurance**
Life · Accident · Disability

September 28, 2005

Routing: 2J2E
12225 Greenville Avenue
Suite 1000 LB 179
Dallas, TX 75243-9382
Telephone 800.352.0611 x5693
Facsimile 860.731.2907
Mark.Sodders@Cigna.com

Steven Alfano
3800 Waldo Avenue, 13-G
Bronx, NY 10463

RE:   Claimant:    Steven Alfano
      Policy #:     NYK 1972
      Policyholder: Weill Medical College of Cornell University
      CIGNA Life Insurance Company of New York

Dear Mr. Alfano:

We have carefully reviewed your claim for Long Term Disability benefits and must advise
you that we cannot consider any benefits payable to you after September 28, 2005.

Under the terms of the Weill Medical College group insurance policy (NYK 1972), Disability
is defined as follows:

## Disability

An Employee will be considered Disabled if because of Injury or Sickness:
1. he is unable to perform all the material duties of his regular occupation;
   or
2. he is earning less than 80% of his Indexed Covered Earnings.

## Overview of Eligibility for Benefits

In order to determine your continued eligibility for disability benefits, we considered your
claim file as a whole as well as medical information provided by your treating physicians,
the results of your Functional Capacity Evaluation, the results of a Transferable Skills
Analysis, a file review by our Associate Medical Director with a conversation with your
treating provider and information provided by you.

Your original date of Disability is June 6, 2000.  You are claiming a period of disability from
your occupation as a Compensation Manager (Wage and Salary Manager), a sedentary
occupation, secondary to symptoms related to lumbar degenerative disc disease and lumbar
radiculopathy.  Monthly Benefits commenced on December 3, 2000.  You must be

CIGNA Group Insurance products and services are provided exclusively by or through operating subsidiaries of CIGNA Corporation, including Life Insurance Company of North America. CIGNA Life Insurance Company of New York, and Connecticut General Life Insurance Company. "CIGNA" is used to refer to these subsidiaries and is a registered service mark.

Steven Alfano
September 28, 2005
Page 2

considered Disabled per the aforementioned definition of Total Disability to receive
Monthly Benefits.

According to your July 20, 2004 Activities of Daily Living and Disability Questionnaire, you
state an inability to work due to constant back and leg pain causing an inability to
concentrate or perform mental tasks. You state that this condition is worse with sitting,
standing or walking. You state that you must lie down frequently through the day for one
to two hours at a time. You state that you do not go for walks and that you do not have a
routine exercise program. You state that you drive short distances; 10 miles or up to 30
minutes. You indicate that you watch TV three hours daily five days weekly. You do not
indicate that you cook, clean, shop, do laundry, yardwork, garden, read or attend other
activities such as school, religious services, and volunteer work. You indicate that have a
Business degree.

You report that you are treated by Dr. Keith Roach and Dr. Michael Alexiadres. The current
medications you list as taking are Oxycontin, Vioxx, Zestril, and Prevacid.

We reviewed the medical information submitted by Dr. Alexiadres. These records show
treatment for pain in your left shoulder and right anterolateral hip pain in 2002. On June
13, 2002, you had a left shoulder arthroscopic decompression and acromioclavicular
resection. On April 16, 2003, you had a right hip arthroscopy, labrectomy. As of May 22,
2003, you were released to see Dr. Alexiadres on an as needed basis.

We reviewed the medical records submitted by Dr. Roach's office. The diagnosis provided in
these records is spinal stenosis, L5-S1 and cervical degenerative disc disease. These records
included: your June 9, 2000 Lumbar MRI, which showed a moderate to severe L5-S1
spondylosis with impingement at the L5 nerve root; pre-operative evaluations for your
shoulder and hip surgeries; your MRI of your right hip on May 23, 2002, that showed
superficial cartilage loss over the right joint, acetabular dysplasia, a torn hyperplastic
degenerated anterior acetabular labrum; your September 14, 2004 x-rays of your neck,
showing Degenerative Disc Disease with space narrowing & osteophytes at the C6-C7 level,
and left foraminal narrowing secondary to osteophyte formation.

According to Dr. Roach' October 10, 2004 Physical Abilities Assessment form, you were
noted to have limitations in the following areas: occasional sitting, standing, walking,
lifting, carrying, pushing and pulling up to ten pounds, climbing regular stairs and ladders.

Based on the aforementioned physical limitations and restrictions as provided by Dr. Roach,
occupations were identified on the basis of these functionally limiting factors, your
education, work history and experience.

We submitted a copy of the physical work requirements for these occupations to Dr. Roach
on January 20, 2005, for his review and comments. We have a certified receipt from Dr.
Roach's office dated January 27, 2005. On March 7, 2005, we submitted a second request for
Dr. Roach's review and comments. We attempted to follow-up via telephone on March 4,

CLICNY 0707

Steven Alfano
September 28, 2005
Page 3

2005 and March 28, 2005. Due to the lack of response from Dr. Roach, we notified you on
April 11, 2005 of our intention to schedule a Functional Capacities Evaluation. You
informed us that you will have Dr. Roach submit his response before scheduling this
Functional Capacities Evaluation.

On April 19, 2005, Dr. Roach submitted his response, and stated that you are physically
unable to perform the occupations in our January 20, 2005 request to him. Dr. Roach states
that your primary disability is being able to set for prolonged periods; you are physical
unable to sit without frequent need for standing, laying down, or using ice on your back.

Our Associate Medical Director contacted Dr. Roach on June 8, 2005, due to the conflicting
information provided by Dr. Roach, from his aforementioned Physical Abilities Assessment
form, the resulting occupations identified and his April 19, 2005 response.

Dr. Roach informed our Associate Medical Director that conflicting information is due to a
misinterpretation of his response on the Physical Abilities Assessment form. Dr. Roach
stated that his work restrictions for you are based primarily on your reports to him, but also
on his own observations of your behavior during examinations. Dr. Roach indicated that
your limitations stem from your back; your hip is not impairing. Dr. Roach stated that if
you return to work, it should be for four hours total, with increases as tolerated; a Functional
Capacity Evaluation would provide more specific functionality guidelines.

Therefore, in order to obtain information concerning your functionality, a Functional
Capacity Evaluation was scheduled to document how your medical conditions are affecting
your functionality.

We received a letter from Dr. Roach dated June 14, 2005. Dr. Roach stated in his letter to us
that you have some residual functional capacity to do sedentary work. However, you are
limited by your need for sitting, standing and laying down as needed during the day. Dr.
Roach indicated that you are not capable of performing even sedentary work neither for
more than 30 minutes at a time, nor for two hours total during the day. Dr. Roach
reiterated that your hip/femur condition is not disabling; your primary problem is your neck
and back. Dr. Roach again stated that his work restrictions for you are based primarily on
your history and on his own observations of your behavior during twenty to thirty minute
examinations.

On July 26, 2005, you completed the aforementioned Functional Capacity Evaluation. This
report shows that, while you did no complete all the tests, you gave consistent effort and
were able to safely perform in the sedentary duty category for an 8 hour day, in accord with
the U.S. Department of Labor Standards. This report does highlight your need to drastically
change your position with sitting for a duration of greater than ten to fifteen minutes.

A Transferable Skills Analysis dated August 9, 2005, based on the aforementioned results of
the Functional Capacity Evaluation and your past training, education and experience,
inclusive of the need to allow for alternation of your position when necessary, identifies and

CLICNY 0798

Steven Alfano
September 28, 2005
Page 4

confirms that you retain the capacity to perform your own occupation as a Compensation
Manager and six additional sedentary occupations, all commensurate with your Long Term
Disability income requirement of $49,839.84 annually.

We have information from your treating physician that state you experience problems
secondary to back and neck pain. A Functional Capacity Evaluation shows you are able to
operate at a sedentary level occupation, in accord with the U.S. Department of Labor
Standards. The Transferable Skills Analysis dated August 9, 2005 identifies and confirms that
you retain the capacity to perform your own occupation based on the Functional Capacity
Evaluation restrictions.

### Summary

Based upon the pertinent vocational and medical documentation contained in the file, we
have determined that you retain the capacity to perform your own occupation as identified
in the formal Transferable Skills Analysis. Therefore, we must deny your claim for Long-
Term Disability benefits beyond September 28, 2005.

In reviewing your claim, CIGNA Life Insurance Company of New York considered your
claim file as a whole for purposes of determining your entitlement to benefits. The Policy
provides that CIGNA Life Insurance Company of New York would pay benefits only if you
were prevented by Disability as defined above, and would continue to provide information
to us validating such. However, based on the information listed above, you do not meet the
definition of disability. As such, your claim is denied as of September 28, 2005, and to
prevent financial hardship, we will pay benefits through October 27, 2005, and no benefits
are payable under Policy number NYK 1972 beyond October 27, 2005.

### Appeal Rights

If you are not satisfied or do not agree with the reason(s) for the denial of your claim, you
may request a review of this denial by writing to CIGNA Life Insurance Company of New
York representative signing this letter and addressing it to :

CIGNA Disability Management Solutions
12225 Greenville Ave
Suite 655-LB179
Dallas, TX  75243-9382

The written request for review must be sent within 180 days of receipt of this letter and state
the reasons why you feel your claim should not have been denied. Your appeal should be in
writing and can be made by your or your duly authorized representative. It must contain:

- The reasons for your appeal and/or disagreement, and
- Medical evidence or documentation to support your position.

Steven Alfano
September 28, 2005
Page 5

**THE APPEAL MUST BE MADE WITHIN 180 DAYS OF THE DATE YOU RECEIVE THIS LETTER.**

Please note that you have a right to bring legal action for benefits under ERISA section 502(a) if your appeal is denied.

You may request review of this denial by writing to the CIGNA Life Insurance Company of New York representative signing this letter. The written request for review must be sent within 180 days of receipt of this letter and state the reasons why you feel your claim should not have been denied. Please include any documentation which you feel supports your claim. Under normal circumstances, you will be notified in writing of the final decision within 30 days of the date your request is received. If there are special circumstances requiring delay, you will be notified of the reason for delay within 30 days thereafter. A final decision will be made no later than 90 days after your request is received.

We realize there may be factors of which we are unaware, and if you feel this determination is incorrect, we shall be pleased to review any evidence you may wish to submit which will support your claim, and if the information warrants, alter our decision.

Nothing contained in this letter should be construed as a waiver of any rights or defenses under the policy. This determination has been made in good faith and without prejudice under the terms and conditions of the contract, whether or not specifically mentioned herein. Should you have any information which would prove contrary to our findings, please submit it to us. We will be pleased to review any information you may wish to submit.

In reviewing your claim, we considered your claim file as a whole for the purposes of determining your entitlement to plan benefits. The weight of the medical evidence in your claim file does not document a disability severe enough to render you disabled under the meaning and terms of the above group insurance plan.

Sincerely,

Mark Sodders

```
GXIRM01                         SRQ NON-MEDICAL CLAIM INQUIRY              09/28/05
BA OF RCD  8313                                         LAST UP DT 01 21 2003
CLM OFF CD C020                                               OP ID J404


CERT NAME STEVEN              ALFANO
CLMT NAME STEVEN              ALFANO

CLM STATUS A2            CLM STATUS EFF DT 01 21 2003   CLM NO 01


PALLM/VECTOR CERT                  EFF DT           CD    AOC A


INCUR DT        06 06 2000
HIRE DT         05 05 1991  LST DT WORKED   06 06 2000  DT PORTED
PRIM ICD9       72252       SEC ICD9                    UL PLAN CODE
PRIM DX         SE          SEC DX                      BILLING LOC
CAUSE/LOSS CD   054         PRE-X STATUS     6          LOCATOR CODE 01
OCC CODE        01          RATED/PORTED CD 3           NO MOS SPLIT
EIN                         TRUE SIBI                   SMOKE IND


NEXT TASK:      FUNCTION:   KEYS : NYK              0001972        000
                KEYS CONTINUED   : S099449648 0001 01
```

```
GXIRM02                 SRO NON-MEDICAL COVERAGE INQUIRY              09/28/05
BA OF RCD  8313                                      LAST UP DT 12 22 2004
CLM OFF CD C020                                      OF ID 8313

CLMT NAME   STEVEN          CLMT DOB      01 14 1958 CLM STATUS    A2
COV STATUS EFF 01 21 2003   INCUR DT      06 06 2000 RESERVE IND   R
HIRE DT        05 05 1991   LST DT WORKED 06 06 2000
CAUSE/LOSS CD  054          PRIM DX       SE         PRIM ICD9     72252
BEN PD TO DT $ +  120337.93 BEN PD THRU DT 10 02 2005 ADV PAY IND

BEN ST DT       12 03 2000 BEN PER CD    07         BEN FREQ     M   SAM
BEN TERM DT     01 13 2023 TERM TYPE     3          WAIT PER CD· 06  WOP
RECVD DT        12 07 2000 COV STATUS    AC         RESERVE $
ANY OCC DT      01 13 2023 SPOUSE OPTION   MI LMT 1 PENS SUPP N    FMI IND  Y

DT NOTIFIED     05 30 2002 DECISION DT   02 06 2001 AOC A
RESISTED CLM CD  A          DT RESOLVED

COMMENTS
PF6-2ND COVERAGE SCREEN, PF7-BENEFITS, PF8-REPETITIVE PAY, PF9-TAX
NEXT TASK:     FUNCTION:   KEYS : NYK              0001972           000
               KEYS CONTINUED  : S099449648 0001 01 80B
```

```
GXIRM07                  SRO NON-MEDICAL COVERAGE INQUIRY              09/28/05
BA OF RCD  8313                                          LAST UP DT 12 22 2004
CLM OFF CD C020                                               OP ID 8313

O/P DEDUCT ST DT          O/P DEDUCT $           O/P TOTAL $
INTEGRATION METH 3        LTD BEN MIN $   100.00 LTD BEN MAX $  15000.00
OVERRIDE $      4153.32   OVERRIDE PCT  70.00    BASIC PCT       60.00
EARNS FREQ      M         SALARY $     5933.32 BASIC AMT        3559.99
EE CONTRIB PCT  050       SPECIAL ID                          ROUND IND A

ESTIMATED RTW DT          ACTUAL RTW DT           ACTUAL RTW IND
MED APRV THRU DT          ER BEHAVIOR  _ _ _      EE BEHAVIOR   _ _ _

COMMENT CODE 1            COMMENT DT 1
COMMENT CODE 2            COMMENT DT 2
COMMENT CODE 3            COMMENT DT 3
REPORT COMMENTS


PF6-1ST COVERAGE SCREEN, PF7-BENEFITS, PF8-REPETITIVE PAY, PF9-TAX
NEXT TASK:    FUNCTION:  KEYS : NYK          0001972        000
              KEYS CONTINUED  : S099449648 0001 01 80B
```

CLICNY 0713

```
GXIRM03                    SRO NON-MEDICAL BENEFIT INQUIRY              09/28/05
BA OF RCD  8313                                       LAST UP DT 12 22 2004
CLM OFF CD C020                                          OP ID 8313

BEN FREQ        M           BEN ST DT     12 03 2000   BEN TERM DT   01 13 2023
EARNS FREQ      M           SALARY $          5933.32  BEN PD THRU   10 02 2005
INTEGR METHOD   3           LTD BEN MIN $      100.00  LTD BEN MAX $ 15000.00
OVERRIDE $         4153.32  OVERRIDE PCT       70.00   BASIC PCT        60.00
ROUND IND       A           BASIC $           3559.99
                                                       GROSS BEN $    4153.32

OFFSET        OFFSET CD      OFF STAT CD      OFFSET EFF DT      OFFSET $
   1             04               1           12 01 2000          1510.00
   2             06               1           12 01 2002           755.00
   3
   4
   5
NET BEN EFF DT 12 03 2004        NET BEN TYPE C       NET BEN $     2125.32

PF1-FORWARD, PF6-COVERAGE, PF7-BENEFITS, PF8-REPETITIVE PAY, PF9-TAX
NEXT TASK:     FUNCTION:   KEYS : NYK               0001972         000
               KEYS CONTINUED   : S099449648 0001 01 80B
```

CLICNY 0714

```
GXIRM04                        SBO NON-MEDICAL TAX INQUIRY              09/28/05
BA OF RCD  8313                                        LAST UP DT 12 08 2000
CLM OFF CD C020                                            OP ID 4304

BEN FREQ M            BEN ST DT 12 03 2000             BEN TRM DT 01 13 2023

FICA EXEMPT TYPE 00   FICA ST DT 06 06 2000 FICA END DT 12 31 2000

FIT EXEMPT TYPE  00
FIT ST DT            FIT END DT             FIT $         FIT PCT

SIT ST DT            SIT END DT             SIT $         SIT PCT    SIT ST NY

SUTA ST DT           SUTA END DT            SUTA $                   SUTA ST NY



PF6-COVERAGE, PF7-BENEFITS, PF8-REPETITIVE PAY
NEXT TASK:    FUNCTION:    KEYS : NYK              0001972         000
              KEYS CONTINUED   : S099449648 0001 01 80B
```



## Claim Direction Staffing Form

Please complete the sections that are applicable for the staffing purpose

### Claim Information:

| Staffing Date: | September 23, 2005 | Claim Manager: | Mark Sudders |
|---|---|---|---|
| Cx Name: | Steven Alfano | SSN: | 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 |
| DOB/Age: | 01/14/58 | Height/WT: | 6'3"/280 lbs. |
| Employer | Weill Medical College | Occupation: | Wage & Salary Manager |
| Incur Date: | 06/06/2000 | Date of Hire: | 05/05/1991 |
| | | Employment term Date: | After ID of 06/06/2000 |
| BSD or AO Date | 12/03/2000 | Claim Received Date: | 12/07/2000 |
| Prior Claim ? | No | MI Max date: | 24 mos. |
| Diagnosis/ICD 9 code: | | | |
| Status: | II    Ongoing  XX | A/O _____    Appeal _____    Pre-Ex _____ | |

Specific staffing questions that need to be addressed :
Claim direction
Claim synopsis: please see printed claim strategy:

### Vocational / Occupational History:

| Occupational requirements (DOT MUST BE ON FILE & TABBED) | | |
|---|---|---|
| X☐ Sedentary   ☐ Light  ☐ Medium   ☐ Heavy  ☐ Very Heavy | | |
| Policy definition of disability please check: | DOT on file: no, just JD | |
| Own Occ XX   Any Occ ____ Other: | | |
| Training/Education/Experience | Dominant hand: Left | VRC assigned: ____ Yes X ____ No |
| Bus Degree in 1982 | | |

### Medical / Offsets:

| Provider | Specialty | Initial OV | LOV | TX | PAA? | R | L |
|---|---|---|---|---|---|---|---|
| | | Treating Physicians (name, specialty, initial & LOV, frequency): | | | | | |
| E. Roach, M.D. | IM | | | | | | |
| M. Alexiades | Ortho Sx | | | | | | |
| | | | | | | | |
| Projected RTW Date and Provider: | | No work | | | | | |
| CGT Guidelines: | | | | | | | |
| Other Benefits: | | ☐ STD   ☐ WC  X☐ SSDI  ☐ SSR  ☐ Pension  ☐ Other | | | | | |

1

CLICNY 0716

# Claim Direction Staffing Form

Please complete the sections that are applicable for the staffing purpose

## Comments/ Review outcome/Rationale/Plan:

| MD_____    NCM/BHS_____    VRC_____ |
| --- |
| |
| Future Claim Direction/Actions  (Please indicate person responsible for action) |
| 1. Based on FCE/TSA results, claim s/b denied; A.I. indicates |
| 2. RTW 4b gradual, but a greed FCE consist. Ethograficulars |
| 3. |
| 4. |
| F/U Medical _____        SSDI _____ |
| VOC Rehab _____         F/U W/C _____ |
| SIU _____                     Other _____ |

## Parties in Attendance:

| Please list printed staffing participant names with  signatures: |
| --- |
| 1. Mary Jeddis |
| 2. Clam Kellengy |
| 3. |
| 4. |
| Date: 9/27/05 |

2

 

## TRANSFERABLE SKILLS ANALYSIS

**Claimant's Name:** Steven Alfano
**Referrer:** Mark Sodders, CM

**Date:** 08/09/05
**Policyholder:** Weill Medical College
**Policy #:** NYK 1972

**Referrer Request:** Please complete a TSA to determine the claimant's transferable work skills and residual functional capacities, and do those occupations exist at or above wage requirements?

**Documents Reviewed/Resources Used:** JD, DQs, DOT, OASYS, FCE dated 07/26/05 by Jacqueline Genovese, MSPT, ERI Salary Assessor, and the OOH.

**RC Response:** The following information obtained from the file was utilized in determining what occupations Mr. Alfano is qualified and able to perform.

**Work Experience:**

| Occupational Title | YRs | DOT | SVP | Phy |
|---|---|---|---|---|
| Wage & Salary Manager | 1991-00 | 166.167-022 | 8 | Sedentary |
| Asst. Director of HR | 1990 | 166.117-018 | 8 | Sedentary |
| Wage & Salary Manager/Analyst | 1982-90 | 166.167-022 | 8 | Sedentary |

**Education & Training:** High School; Bachelors Degree in Business Administration/Psychology; 1 year of Graduate Work in MIS

**Diagnosis/L&R's:** Spinal Stenosis
Limitations include: Sedentary work level with no significant lifting or carrying; continuous ability for seeing, hearing, taste/smelling; occasional ability for sitting, standing, walking, pushing up to 20 lbs., pulling up to 14 lbs., reaching overhead and at desk level, bilateral fine manipulation, simple and firm grasping, and using the feet for foot controls; no climbing, balancing, stooping, kneeling, crouching or crawling, reaching below the waist, working overtime shifts. All other areas were marked as not applicable to the diagnosis. The type of job would need to be one that would allow alternation of position when necessary.

**Indexed BME:** $6,465.79
**Wage Requirement:** $5,172.63 a month, or $29.84 an hour

**Transferable Skills:** Directing, controlling, or planning the activities of others, dealing with people, making judgments and decisions, speaking and signaling, coordinating, performing some handling activities, negotiating, analyzing, mentoring.

**Occupations the claimant can perform in the labor market of: Bronx, NY.**

| Title | DOT | SVP | Phy | Wages | Wage Source |
|---|---|---|---|---|---|
| Compensation Manager | 166.167-022 | 8 | Sedentary | $77,500 | ERI 7/1/05 **** |
| Manager, Data Processing | 169.167-030 | 8 | Sedentary | $77,500 | ERI 7/1/05 |
| Manager, Computer Operations | 169.167-082 | 8 | Sedentary | $77,500 | ERI 7/1/05 |
| Manager, Employee Welfare | 166.117-014 | 7 | Sedentary | $90,410 | OES 2003 |
| Manager, Employment Agency | 187.167-098 | 7 | Sedentary | $69,609 | ERI 7/1/05 |
| Conciliator | 169.207-010 | 8 | Sedentary | $65,040 | OES 2003 |
| Credit Analyst | 241.267-022 | 7 | Sedentary | $72,520 | OES 2003 |

(**** is own occupation)

**Summary:**
A Transferable Skills Analysis was completed using the above noted information. Suitable positions were identified that meet Mr. Alfano's skills, education, work history, and wage replacement requirements, including his own job with the policyholder at the time of disability. Also, the positions indicated would be the type that would allow much personal autonomy and ability to accommodate oneself for physical positions throughout the workday. The most appropriate wage source was utilized for occupations using the most up to date source available.

Ginny Schmidt, M.S., CRC
Rehab Specialist