```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
STEVEN ALFANO,                                          :

                          Plaintiff,                    :         07 Civ. 9661 (GEL)
            - against -
                                                        :
CIGNA LIFE INSURANCE COMPANY OF
NEW YORK, LONG TERM DISABILITY                          :
INSURANCE PLAN FOR CORNELL
UNIVERSITY MEDICAL COLLEGE, WEILL                       :
MEDICAL COLLEGE OF CORNELL
UNIVERSITY RETIREMENT PLAN FOR                          :
FACULTY AND EXEMPT EMPLOYEES,
CHILDREN'S TUITION SCHOLARSHIP PLAN,                    :
CORNELL UNIVERSITY GROUP LIFE
INSURANCE PLAN, CORNELL UNIVERSITY                      :
MEDICAL COLLEGE HEALTH INSURANCE
PLAN, and WEILL MEDICAL COLLEGE OF                      :
CORNELL UNIVERSITY DENTAL ASSISTANCE
PLAN,                                                   :

                          Defendants.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## DEFENDANT CIGNA LIFE INSURANCE COMPANY OF NEW YORK'S STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

Pursuant to Local Rule 56.1 of the United States District Court for the Southern District of New York, defendant CIGNA Life Insurance Company of New York ("CLICNY") respectfully submits this Statement of Undisputed Facts pursuant to Local Civil Rule 56.1:

1.  Plaintiff Steven Alfano ("Plaintiff" or "Alfano") was employed by Cornell Weill Medical College ("WMC") as a Wage and Salary Manager. (Complaint, dated October 23, 2007 ("Complaint"), ¶ 22).

2.  WMC offers its employees long term disability insurance with benefits provided pursuant to a policy, NYK-1972, issued by CLICNY to WMC ("Policy"). (Complaint ¶

15; Administrative Record at CLICNY 588, attached to Declaration of Emily A. Hayes, dated July 25, 2008, as Exhibit A (documents from the Administrative Record are hereinafter cited as CLICNY ____)).

3. The Policy was originally issued to Cornell Medical College by INA Life Insurance Company with an effective date of July 1, 1989. (CLICNY 588). INA Life Insurance Company is now known as CIGNA Life Insurance Company of New York. (Complaint ¶ 8).

4. As an employee of WMC, Plaintiff was insured by the Policy. (Complaint ¶ 3).

5. The Policy requires that, in order to be eligible for long term disability benefits, a claimant be continuously disabled throughout the 180 day benefit waiting period. (Complaint ¶ 6; CLICNY 598).

6. The Policy contains the following definition of disability:

DISABILITY. An Employee will be considered Disabled if because of Injury or Sickness:
1. he is unable to perform all the material duties of his regular occupation or
2. he is earning less than 80% of his Indexed Basic Earnings.

(CLICNY 593).

7. The Policy provides for a monthly payment of the lesser of (1) or (2):

(1) 60% of the Employee's Monthly Basic Earnings at the time that he becomes Disabled, rounded to the nearer dollar up to a maximum of $15,000, and reduced by the amount of all Other Benefits, for that month, excluding any Other Benefits received by or on behalf of the Employee's dependants.
(2) 70% of the Employee's Monthly Basic Earnings at the time that he becomes Disabled, reduced by the amount of all Other Benefits which the Employee and his dependants receive for that month.

(CLICNY 598).

8. The Policy also includes a cost of living adjustment. (Complaint ¶ 17; CLICNY 603).

9. The Policy's definition of "Other Benefits" includes, among other things, Social Security

2

disability benefits. (CLICNY 600).

10. The maximum duration of payment of benefits is the earlier of (1) the date the Employee ceases to be disabled; or (2) the Employee's 65th birthday. (CLICNY 604).

11. Plaintiff stopped working on June 6, 2000 because of back problems, among other problems, and subsequently filed a claim for LTD benefits through WMC in December 2000. (CLICNY 515-32).

12. With Plaintiff's claim, WMC included a position description dated March 1999 for the position of Wage and Salary Manager. (CLICNY 529-31). The position description summarizes the position as: "Under general direction, is responsible for the administration of WMC's non-academic Wage and Salary program, the annual performance appraisal program, and temporary employee administration," and includes a list of seventeen position activities. (CLICNY 529-31). The description also lists the following minimum requirements:

> College degree with courses in statistics and minimum of five years of managerial wage and salary experience, with in-depth knowledge of point-factor compensation systems; plus a background including experience in employee relations. Excellent written and oral communication skills, supervisory skills, and knowledge of mainframe payroll/personnel systems and micro computers required.

(CLICNY 531).

13. Plaintiff also submitted various medical records from his treating physicians, including Dr. Farmer, Dr. Scelsa, Dr. Snow, Dr. Schiff, Dr. McCance, and Dr. Alexiades, and a disability questionnaire dated December 15, 2000. (CLICNY 438-39, 448-55, 475-77, 483-94, 515-32).

14. Plaintiff submitted another version of the position description for "Manager, Compensation," dated September 2000. (CLICNY 272-73). CLICNY also received this

3

description from WMC in 2002. (CLICNY 478-79). The position summary stated: "Under the general direction of the Senior Director, Human Resources, administers the non-academic compensation program to ensure internal and external equity and compliance with internal policy and federal and local laws governing wage and salary," and the description included a list of six major responsibilities. (CLICNY 272-73). It also included the following physical requirements: "Work performed in modern office environment. Most work performed sitting at desk. Must be able to use Personal Computer, telephone, copier, facsimile, calculator on a daily basis. Must be able to sit for extended periods." (CLICNY 273).

15. On February 6, 2001, CLICNY claim manager Lara D'Ambrosio spoke to Rosemary Cius of Weill Medical College's human resources department to clarify the Plaintiff's occupational requirements. (CLICNY 382). Ms. Cius stated that Plaintiff's job is sedentary, that he had the ability to get up and move about as needed, and that his job required no lifting. (Id.).

16. Plaintiff's claim was initially denied by letter dated February 12, 2001 after CLICNY determined that he did not satisfy the 180 day benefit waiting period, as the medical records received from Dr. Alexiades, Dr. Scelsa, and Dr. Snow did not contain any limitations or restrictions that would prevent Plaintiff from doing his own sedentary occupation. (CLICNY 376-80).

17. The decision letter included a statement that, in a medical record dated July 20, 2000, Dr. Scelsa released Plaintiff to work with restrictions that fell within his own occupation requirements. (Id., CLICNY 453-55).

18. Plaintiff appealed the denial by letter dated March 19, 2001 from his then-attorney

4

Adam Cohen. (CLICNY 371).

19. By letter dated April 12, 2001, CLICNY upheld the denial for the same reasons. (CLICNY 362-65).

20. Plaintiff submitted a second appeal by letter dated April 15, 2002 and submitted additional medical records. (CLICNY 279-317).

21. Plaintiff supplemented his appeal by letter dated August 3, 2002, submitting additional medical records, including spinal MRIs and office notes and reports from Dr. Alexiades, Dr. Farmer, and Dr. Roach. (CLICNY 248-54).

22. Plaintiff applied for Social Security disability benefits and his application was granted on September 5, 2002. (CLICNY 257-67).

23. A file review was done by David Trotter, MD, an orthopedic surgeon. In a report dated December 10, 2003, after reviewing all of the medical information in the file, Dr. Trotter concluded that the medical information supported the apparent inability of Plaintiff to perform his regular occupation from June 6, 2000 to December 10, 2003. (CLICNY 233-36).

24. Based on Dr. Trotter's report, CLICNY reversed the initial denial decision and Plaintiff's claim was re-opened. (CLICNY 105, 231).

25. Plaintiff was notified of the decision by letter dated January 24, 2003, and was paid benefits due from December 3, 2000 to February 2, 2003. (CLICNY 186).

26. A revised decision letter was issued on April 10, 2003 to clarify the applicable Policy definition of disability. (CLICNY 168).

27. After Plaintiff's benefits were approved, CLICNY continued to review his claim periodically to see whether he continued to meet the Policy definition of disability.

2054649.1

(CLICNY 172).

28. CLICNY periodically received and reviewed updated documents from the Plaintiff and his physicians, including medical records and disability questionnaires. (CLICNY 113-32, 159-61, 968-69, 1021-25).

29. CLICNY received a Physical Ability Assessment form ("PAA") from Dr. Roach dated October 20, 2004, which stated that plaintiff could, among other things, occasionally sit, stand, and walk. (CLICNY 968-69).

30. An exploratory transferable skills analysis (TSA) was done on November 18, 2004 by Vocational Rehab Counselor ("VRC") Rosemary Jenkins using the PAA, as well as information from Plaintiff's disability questionnaires and job description. (CLICNY 73).

31. The exploratory TSA identified four sedentary occupations that Plaintiff would be capable of given the restrictions provided by Dr. Roach in the PAA: personnel manager (DOT # 166.117-018), employment manager (DOT # 166.167-030), employment agency manager (DOT # 187.167-098), department manager (DOT # 189.167-022). (Id., CLICNY 69).

32. The exploratory TSA was reviewed by Holly Jule, VRC, who, in a report dated December 13, 2004, noted that one of the occupations identified by Ms. Jenkins was Plaintiff's own occupation, that all of the occupations allowed for the ability to get up and move about, alternate sitting, standing and walking at the employee's discretion, and that the Plaintiff's job, according to information received from his employer, allowed for the ability to alternate positions as needed. (CLICNY 69, 944-52).

33. By letter dated January 20, 2005, the DOT definitions of the four identified occupations were sent to Dr. Roach for his review. (CLICNY 886).

6

34. By letter dated April 19, 2005, Dr. Roach stated that the Plaintiff was incapable of doing the four identified occupations because he was physically unable to sit for prolonged periods of time without frequent need for standing, lying down, or using ice on his back. (CLICNY 872).

35. CLICNY medical director Scott Taylor, DO, performed a file review which included a telephone call with Dr. Roach. (CLICNY 58, 855-56).

36. In his report, dated June 8, 2005, Dr. Taylor noted that, in their telephone call, Dr. Roach stated that the difference between the two documents was due to a misinterpretation of what the PAA form meant, that over the entire work day Plaintiff could work three to four hours collectively, and that he could not sit continuously for more than thirty minutes at a time, at which time he would have to move to another activity. (855-56). Dr. Roach also stated that, if Plaintiff returned to work, it needed to be a gradual transition, starting with four hours at a time and increased as needed. (Id.). Dr. Roach stated that a Functional Capacity Evaluation ("FCE") would be helpful to ascertain plaintiff's physical capabilities. (Id.)

37. Based on his review of the file and conversation with Dr. Roach, Dr. Taylor concluded that the limitations and restrictions, including no sitting for prolonged periods of time and required position changes, were not supported as evidenced by the absence of clinically measurable tests or documented abnormalities in strength or range of motion testing. (Id.) Dr. Taylor recommended an FCE to determine his functional capacity. (Id.)

38. Plaintiff attended an FCE on July 26, 2005 with an external physical therapist, Jacqueline Genovese of Sports Physical Therapy of New York. (CLICNY 725-49).

39. Ms. Genovese concluded in her report that Plaintiff was currently functioning safely at a

2054649.1

sedentary level for an 8 hour period according to New York Department of Labor standards. (CLICNY 725).

40. On August 9, 2005, a TSA was done by Ginny Schmidt, VRC, based on the conclusions of the FCE, and the limitations of a sedentary occupation with no significant lifting or carrying, with the occasional ability to sit, stand and walk, and which must allow for position changes when necessary. (CLICNY 718).

41. Ms. Schmidt identified seven occupations that were consistent with these limitations as well as Plaintiff's wage replacement requirement, including his regular occupation. (Id.)

42. Based on Dr. Taylor's report, the FCE and the TSA, CLICNY concluded that Plaintiff was no longer disabled because he was capable of doing his regular occupation and that benefits should be terminated effective October 27, 2005. (CLICNY 40).

43. Plaintiff was notified of the termination by letter dated September 28, 2005, which stated in part:

Based upon the pertinent vocational and medical documentation contained in the file, we have determined that you retain the capacity to perform your own occupation as identified in the formal Transferable Skills Analysis. Therefore, we must deny your claim for Long-Term Disability benefits beyond September 28, 2005.

In reviewing your claim, CIGNA Life Insurance Company of New York considered your claim file as a whole for purposes of determining your entitlement to benefits. The Policy provides that CIGNA Life Insurance Company of New York would pay benefits only if you were prevented by Disability as defined [in the Policy], and would continue to provide information to us validating such. However, based on the information listed above, you do not meet the definition of disability. As such, your claim in denied as of September 28, 2005, and to prevent financial hardship, we will pay benefits through October 27, 2005, and no benefits are payable under Policy number NYK 1972 beyond October 27, 2005.

(CLICNY 668-72).

44. Plaintiff appealed the termination twice and it was upheld by CLICNY each time, by letters dated March 29, 2006 and December 27, 2006. (CLICNY 629-30, 655-56).

2054649.1

45. Plaintiff's first appeal was submitted by attorney Adam Cohen by letter dated February 22, 2006. Plaintiff submitted additional medical records including disability forms completed by Dr. Alexiades, dated January 11, 2006, and Dr. Roach, dated January 6, 2006, and a July 18, 2005 MRI of the lumbar spine. (CLICNY 678-98).

46. The additional records were reviewed by a CLICNY nurse case manager, Kay Rhodes, on March 3, 2006, who noted that the:

> Additional medical provided is insufficient to support a change in severity of deficits that significantly impacts function after the FCE. This is evidenced by the FCE which was performed on 7/25/06 revealing that the [claimant] had functionality at the sedentary level. The VRC identified positions that included the restrictions and limitations for alternating [claimant] position when necessary. The forms that were completed by the APs with the additional medical provided vague responses from both APs with no objective measurable findings for range of motion and neurological deficits. . . . The [restrictions and limitations] the forms gave were inconsistent with what the [claimant] tested in capabilities on the FCE on 7/26/05.

(CLICNY 34-35).

47. The file was reviewed by the LTD appeal team on March 28, 2006. Medical director Dr. Mendez noted, after reviewing the file and additional records reviewed that "FCE reviewed along with job requirements. Validity measures met. Exam concluded Mr. Alfano was able to perform his sedentary level work duties. So original decision remains supported." (CLICNY 657).

48. Plaintiff was notified that the decision was upheld by letter dated March 29, 2006, which noted that the information submitted had been reviewed by a medical director, who concluded that he was able to function at a sedentary level, and that the new information did not provide any clinical findings that would alter functional abilities as demonstrated in the FCE. (CLICNY 655-56).

49. The March 29, 2006 decision letter concluded that CLICNY understood that the Plaintiff

has spinal stenosis, but that "the presence of a condition, diagnosis, or treatment plan does not equate disability under the policy. Based on the documentation on file regarding your functionality you do not meet the definition of Disability and we must affirm the previous denial of your claim." (Id.)

50. Plaintiff submitted a second appeal by letter from Cohen dated September 15, 2006, enclosing a letter from Dr. Roach dated August 24, 2006 stating that Mr. Alfano continued to be totally disabled from spinal stenosis. (CLICNY 641-45).

51. CLICNY referred the file for a peer review, which was done by Michael Weiss, M.D., an orthopedic surgeon, who prepared a report dated November 13, 2006. (CLICNY 631-34, 635-37).

52. Dr. Weiss attempted to contact Dr. Alexiades and Dr. Roach but neither doctor returned his telephone calls. (CLICNY 631).

53. Dr. Weiss reviewed the entire file, including the additional information submitted on appeal, and concluded that the restrictions and limitations given by Plaintiff's treating physicians were not supported by documentation from October 27, 2005 to the present. (CLICNY 631-34). Dr. Weiss stated that the FCE recommended sedentary work duties. Dr. Weiss stated that the Plaintiff would be capable of sedentary duty, that he would be restricted from prolonged sitting and would require intermittent sitting, and that he would also be restricted to limited walking, not greater than one block. (Id.)

54. At CLICNY's request, Dr. Weiss attempted to reach Dr. Alexiades by telephone several more times, but his calls were not returned. (CLICNY 634).

55. Dr. Weiss prepared an addendum to his report dated November 13, 2006. (CLICNY 634). Dr. Weiss discussed his review of two documents from Dr. Roach, a letter dated

2054649.1

April 19, 2005 and a report dated June 14, 2005, which both stated that Plaintiff was unable to do sedentary work. (Id.) Dr. Weiss stated that while these documents contain Dr. Roach's impressions, they do not contain objective physical findings which would clearly correlate with the Plaintiff's complaints or provide a specific reason why he could not function at a sedentary to light duty level. (Id.)

56. CLICNY upheld its decision, and Plaintiff was notified by letter dated December 7, 2006 from appeal claims manager Medha Bharadwaj. (CLICNY 629-30). The letter concluded that, while CLICNY did not dispute that Plaintiff was somewhat limited or restricted due to his diagnoses and treatment as he had originally received long term disability benefits, "an explanation of Mr. Alfano's functionality and how his functional capacity prevented him from continuously performing the material duties of his occupation beyond 10/27/05 was not clinically supported. The presence of a condition, diagnosis or treatment does not necessarily equate to a presence of a clinically disabling condition or decreased level of functionality." (Id.)

57. With his second appeal, Plaintiff exhausted his administrative remedies. (Id.)

Dated:   White Plains, New York
         July 25, 2008

Respectfully submitted,

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By: _____
Fred N. Knopf (FNK 4625)
Emily A. Hayes (EH 5243)
*Attorneys for the Defendant CIGNA Life Insurance Company of New York*
3 Gannett Drive
White Plains, New York 10604
(914) 323-7000

2054649.1

CERTIFICATE OF SERVICE

I hereby certify that on July 25, 2008, the foregoing Statement of Material Facts Pursuant to Local Rule 56.1 was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*Emily A. Hayes*

Emily A. Hayes (EH 5243)
3 Gannett Drive
White Plains, New York 10604-3407
Phone (914) 323-7000
Facsimile (914) 323-7001
emily.hayes@wilsonelser.com