| EE: ALFANO, STEVEN | SSN: 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 | DOI: 06/06/2000 | ER: WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY(DIS) | ID: 854973378660580 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |

### View the Details for an Incident Note

Add a New Incident Note    (last record)

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 06/17/2002 08:02:07 AM Edit | Current Case Plan | Narrative | RYAN, MARY | ICARE |

### ICARE Note Text

Paperwork sent as an appeal was set up by Intake as new claim but was recognized as a "no load". Appeal was tracked to DAllas Appeals Team on 6/4/02. Copy of correspondence will be again referred & this Unilnyx file closed out at assigned in error.

MR

Add a New Incident Note    (last record)

CLICNY 0533

**Gysin, Cindy A    1115**

| | |
|---|---|
| **To:** | Heath, Elizabeth E    212 |
| **Cc:** | Ryan, Mary D    1115 |
| **Subject:** | Steven Alfano  099 44 9648 |

Good Morning Elaine.

We received a new claim on our Job Que for the above person.  It does not appear to be loaded in SRO.  The only claim in the SRO appears to be a closed case.  Can you let me know what is going on with this claim?  It appears the clmt. is requesting disability for the same time frame as the closed claim = 6/6/00.  We need to know if this is a new submission or an error. Thanks.

1

CLICNY 0534



| EE: ALFANO, STEVEN | SSN: 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 | DOI: 06/06/2000 | ER: WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY(DIS) | ID: 854973378660580 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |

### View the Details for an Incident Note

(first record)    Add a New Incident Note    

| Date/Time Created | Subject | Detail | Author | Source |
|---|---|---|---|---|
| 06/12/2002 02:46:29 PM | Correspondence | Narrative | HEATH, ELAINE | ICARE |

### ICARE Note Text

| CLAIM ENTERED IN UNILYX, NO SRO LOAD NEEDED PER MARY ROBERTS |
|---|

(first record)    Add a New Incident Note    

CLICNY 0535

**Compliance Checklist**

| Claimant Name: | ALFANO, STEVEN |
|---|---|
| SS #: | 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 |
| CM Name: | MARY RYAN |

Date Received:    06/12/02

Acknowledgement Must Be Sent By:    **06/21/02**

Call to claimant must be made by:    **06/18/02**

Alert to Other Benefits as required.

| 1st Delay: | Date Must be Sent |
|---|---|
| | 07/11/02 |

| If 1st Delay Sent on: | 2nd Delay Must be Sent By: |
|---|---|
| 06/26/02 | 07/25/02 |
| 06/27/02 | 07/26/02 |
| 06/28/02 | 07/27/02 |
| 06/29/02 | 07/28/02 |
| 06/30/02 | 07/29/02 |
| 07/01/02 | 07/30/02 |
| 07/02/02 | 07/31/02 |
| 07/03/02 | 08/01/02 |
| 07/04/02 | 08/02/02 |
| 07/05/02 | 08/03/02 |
| 07/06/02 | 08/04/02 |
| 07/07/02 | 08/05/02 |
| 07/08/02 | 08/06/02 |
| 07/09/02 | 08/07/02 |
| 07/10/02 | 08/08/02 |
| 07/11/02 | 08/09/02 |

| If 2nd Delay Sent on: | 3rd Delay Must Be Sent By: |
|---|---|
| 07/10/02 | 08/08/02 |
| 07/11/02 | 08/09/02 |
| 07/12/02 | 08/10/02 |
| 07/13/02 | 08/11/02 |
| 07/14/02 | 08/12/02 |
| 07/15/02 | 08/13/02 |
| 07/16/02 | 08/14/02 |
| 07/17/02 | 08/15/02 |
| 07/18/02 | 08/16/02 |
| 07/19/02 | 08/17/02 |
| 07/20/02 | 08/18/02 |
| 07/21/02 | 08/19/02 |
| 07/22/02 | 08/20/02 |
| 07/23/02 | 08/21/02 |
| 07/24/02 | 08/22/02 |
| 07/25/02 | 08/23/02 |
| 07/26/02 | 08/24/02 |
| 07/27/02 | 08/25/02 |
| 07/28/02 | 08/26/02 |
| 07/29/02 | 08/27/02 |
| 07/30/02 | 08/28/02 |
| 07/31/02 | 08/29/02 |
| 08/01/02 | 08/30/02 |
| 08/02/02 | 08/31/02 |
| 08/03/02 | 09/01/02 |
| 08/04/02 | 09/02/02 |
| 08/05/02 | 09/03/02 |
| 08/06/02 | 09/04/02 |
| 08/07/02 | 09/05/02 |
| 08/08/02 | 09/06/02 |
| 08/09/02 | 09/07/02 |

NO SRO Coded
Mary can
8/7/02.

Duplicate
Copy

Date Sent: _____
In Compliance ?: _____

Appeals = Dallas

CLICNY 0536



**LAW OFFICES OF**
## ADAM S. COHEN
81 MAIN STREET, SUITE 300
WHITE PLAINS, NEW YORK 10601

(914) 421-0080
(718) 681-3907
FAX: (914) 421-0035

ADAM S. COHEN*

DONALD N. SILVERMAN
ROBIN A. BIKKAL
OF COUNSEL

*ADMITTED IN NY AND CT

1015 GRAND CONCOURSE
BRONX, NY 10452

9 W. PROSPECT AVENUE
MT. VERNON, NY 10550

April 15, 2002

RECEIVED

JUN 1 0 2002

CIGNA-DALLAS

Jennifer Houghton
Case Manager
Integrated Claim Services
CIGNA Group Insurance
Routing 1760
255 East Avenue
Rochester, NY 14604-2624

| | |
|---|---|
| Re: | Steven Alfano |
| SS #: | 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 |
| Policy #: | NYK 1972 |
| Policy Holder: | Weill Medical College |
| Underwriters: | CIGNA Life Insurance Co. of America |

Dear Ms. Houghton:

This letter is written in further support of the claim of Steven Alfano for Long-Term Disability benefits under policy number NYK 1972. It is our contention that Mr. Alfano has been and continues to remain totally disabled since he stopped working on June 5, 2000.

In accordance with your definition of disability, Steven Alfano will be considered disabled if, because of injury or illness, he is unable to perform the material duties of his regular occupation, or if he is earning less than 80% of his Indexed Covered Earnings.

It is undisputed that Steven Alfano last worked as a Manager of Compensation on June 5, 2000. This is, in essence, a sedentary position. After he ceased working, Mr. Alfano completed a disability questionnaire form for your office wherein he complains of constant back pain and numbness. He also indicates that he suffers from a dropped left foot. As a result of these problems Mr. Alfano is unable to sit, stand or walk for any amount of time, and he must frequently lie down to rest his back. Mr. Alfano states that his condition is aggravated by sitting, which produces pain and numbness. He further indicates that his injuries are degenerative in nature and that he applied for Social Security Disability benefits because he does not anticipate being able to return to work.

On June 9, 2000 Mr. Alfano had an MRI of the lumbar spine performed which shows that he suffers from moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, a degenerative type III end-plate marrow change, an annular disc bulge, facet osteoarthritis and a prominent posterolateral osteophyte formation. The MRI also reveals

impingement on the inferior aspect of the exiting L5 nerve root and moderate spinal stenosis. A copy of the MRI report is enclosed herewith.

Mr. Alfano has also undergone EMG/NCV studies of his lower back on July 20, 2000. These tests were performed by Andrew Schiff, M.D. This study shows that Mr. Alfano suffers from an L5-S1 lumbar radiculopathy. The physical examination associated with the EMG/NCV test demonstrates that he has an antalgic gait, cannot walk on his heels and toes and has decreased sensation in the left lower extremity. A copy of these records is annexed hereto.

A second MRI was performed on Mr. Alfano on August 18, 2001. This MRI confirms the L5-S1 spondylosis and the stenosis at that level of the spine. It also shows mild L4-5 spinal stenosis and impingement on the thecal sac at the L5-S1 level of the spine as well. The MRI further demonstrates moderate facet osteoarthritis and narrowing of the neural foramen at the L4-5 level of the spine. A copy of this MRI report is enclosed herewith.

Mr. Alfano's claim for disability benefits is further strengthened by the reports of his treating doctors. Michael M. Alexiades, M.D., one of Steven Alfano's treating physicians, indicates in a report dated June 20, 2000 that Mr. Alfano is unable to work and will not be able to do so until at least August 5, 2000. A copy of Dr. Alexiades' report is enclosed herewith.

The records of James C. Farmer, M.D., formerly Mr. Alfano's treating spinal surgeon, also show that he is totally disabled. Dr. Farmer states that in April of 2000 Mr. Alfano's back "went out" and he began to experience severe pain. This pain apparently radiates down Mr. Alfano's leg into his posterior thigh and posterior calf. Dr. Farmer's records also indicate that Mr. Alfano suffers from numbness "in his entire foot." His leg pain can be worse than his back pain, and his left leg is worse than his right leg. In fact, Dr. Farmer finds that Mr. Alfano suffers from "fatigue" in his left leg. Dr. Farmer further notes that Mr. Alfano's back pain increases with prolonged sitting, standing and walking, and the pain significantly limits Mr. Alfano. Dr. Farmer opines that because of the severely limited range of motion in his low back with its concomitant left leg weakness, Mr. Alfano may need to undergo lumbar fusion surgery. Certainly, if Mr. Alfano's condition is so severe that surgery is a strong possibility, this supports his argument that he is disabled and unable to perform his occupational duties.

We also enclose two reports from Dr. Alexiades which clearly demonstrate that Mr. Alfano is totally disabled and entitled to benefits. The first report is dated May 10, 2001. In that report Dr. Alexiades states that Mr. Alfano suffers from L5-S1 spondylosis with stenosis and radiculopathy. He suffers from back pain, left leg pain and numbness due to this condition, and radiculopathy. His prognosis demonstrates a positive straight leg raising test as well as weakness in his leg. His prognosis is poor, and he must lie down during the day because of the pain. Dr. Alexiades notes that he has already undergone physical therapy, epidural injections and anti-inflammatory medication, all without success. Dr. Alexiades indicates in this report that Mr. Alfano can only occasionally lift or carry a maximum of ten pounds and can never lift anything on a frequent basis. He further cannot bend, crawl or climb and can only occasionally squat or reach for items. With these limitations as noted by Dr. Alexiades, there is no way that Mr. Alfano can perform his job duties. He therefore must be found disabled and entitled to benefits.

The second report we have submitted from Dr. Alexiades, dated February 7, 2002, confirms the findings of the May 10, 2001 report in every way. In this report Dr. Alexiades again indicates that Mr. Alfano must lie down during the day, stating that this must be done two or three times per day for one-half to two hours each time. He opines that Mr. Alfano can only sit for 20 minutes continuously and a maximum of two hours in an eight hour workday; stand only 15

CLICNY 0538

minutes continuously and a maximum of less that one and one half hours in an eight hour workday; and walk for one block continuously and less than one hour in an eight hour workday. He also states that Mr. Alfano can only lift or carry a maximum of five pounds occasionally and nothing frequently.

Finally, we submit the February 12, 2002 report of treating physician Keith Roach, M.D. Dr. Roach's report completely supports all of the findings of Dr. Alexiades. Dr. Roach diagnoses Mr. Alfano as suffering from an L5-S1 spondylosis with spinal stenosis. His examination of Mr. Alfano reveals that he suffers from low back pain with numbness and pain radiating down his right leg, weakness in his legs, decreased patellar reflexes and diminished sensation. Dr. Roach states that Mr. Alfano must lie down three times per day, for up to two hours, because of these conditions. He further states that Mr. Alfano can only sit for 20 minutes continuously and a maximum of two hours in an eight hour workday; stand only 15 minutes continuously and a maximum of one hour in an eight hour workday; and walk for one block continuously and one hour in an eight hour workday. He opines, as does Dr. Alexiades, that Mr. Alfano can only lift or carry a maximum of five pounds occasionally and nothing frequently.

On the basis of these medical reports and records we hereby assert that Steven Alfano is disabled under the terms of policy NYK 1972 and is therefore entitled to Long-Term Disability benefits pursuant to that policy. He certainly has not worked and has been unable to work during the Benefit Waiting Period, as he has not worked since June 5, 2000. This also shows that he has earned less than 80% of his Indexed Covered Earnings, since he has no earnings whatsoever since June 5, 2000. Indeed, it is clear from the medical records that since June 5, 2000 it is not physically possible for Mr. Alfano to have performed work which would have equaled at least 80% of his Indexed Covered Earnings.

It is also beyond dispute that he cannot perform all of the material duties of his occupation, and has been unable to do so since June 5, 2000. According to his job description, Mr. Alfano's prior work for your insured was performed at the sedentary level. The United States Department of Labor defines sedentary work as lifting and carrying ten pounds on an occasional basis and five pounds on a frequent basis as well as sitting most of the time. See Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (U.S. Department of Labor Employment and Training Administration 1993).

The medical evidence establishes that Mr. Alfano cannot frequently perform any lifting or carrying, and has been unable to do so since June of 2000. The numerous reports from Dr. Alexiades and Dr. Roach amply display that he has not been able to do such activities since at least June 20, 2000 (the date of Dr. Alexiades's first report). Additionally, the reports from these physicians indicate that he cannot even lift ten pounds occasionally, as is required to perform his work. These documents also display that he cannot sit for more that two hours total during a workday, thus showing that he cannot perform the sitting requirements for his job.

Wherefore, based on the medical records submitted with this letter, we hereby request that you find Steven Alfano totally disabled as of June 5, 2000, and entitled to benefits as of the expiration of the Benefit Waiting Period.

Additionally, you may be aware that as of April 1, 2001 Mr. Alfano converted his group Long-Term Disability coverage to a personal disability plan. The Certificate Number of that plan is GKC 700835. We hereby demand, without prejudice to this claim in any way, that CIGNA also find him disabled pursuant to the terms of the individual plan as well as the NYK 1972 policy, and grant him benefits immediately under that plan.

If you need any additional information regarding this matter, please contact the undersigned. We kindly request that you forward your decision to this office and Mr. Alfano once it has been made.

Very truly yours,

Adam S. Cohen, Esq.

ASC/ac
cc:    Steven Alfano
       Scott D. Paules, Individual Conversion Unit
Enc.

ROM : SOGO SPORTS MEDICINE          FAX NO. : 212 2881524          Jun. 22 2000 09:33AM  P2



# LENOX HILL RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

Page 1 of 2

Carmel Dunovan, M.D.

Erich Eidenschenk, M.D.

David A. Follett, M.D.

Hisoo Jeannie Choe, M.D.

William Louie, M.D.

Keith S. Tobin, M.D.

61 East 77th Street

New York, NY 10021

TEL 212-772-3111

FAX 212-288-1637

FAX 212-861-1796

June 12, 2000

MICHAEL ALEXIADES, MD

Patient:     ALEANO, STEVEN
             MRI LUMBAR SPINE

ID: 139521

20000608139521I

## MRI OF THE LUMBAR SPINE 6/9/2000:

Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit.

42 year-old with low back pain and left-sided radiculopathy. There are no prior studies for comparison.

There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type III end-plate marrow change and prominent posterolateral osteophyte formation. The remaining lumbar discs are within normal. Small, benign-appearing hemangiomata are seen within the L4 and L5 vertebral bodies. No destructive marrow lesions are seen. The conus medullaris is at the lower L1 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. Paraspinal soft tissues are grossly normal.

At the L1-2 through L4-5 levels, there are no disc protrusions, significant disc bulges, spinal stenosis or neural foraminal narrowing.

At L5-S1, there is anular disc bulge and posterolateral osteophytes and facet osteoarthritis present. There is impingement upon the inferior aspect of the exiting left L5 nerve root seen on the sagittal images. There is moderate spinal stenosis. The right neural foramen is patent.

IMPRESSION: MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.
MILD IMPINGEMENT ON THE INFERIOR ASPECT OF THE LEFT L5 NERVE ROOT AS DESCRIBED ABOVE.
MODERATE L5-S1 SPINAL STENOSIS.

---

MRI          CAT SCAN      BONE          ULTRASOUND   NUCLEAR
HIGHFIELD 1.5T • MID FIELD • OPEN MRI    HELICAL    DENSITOMETRY    MRI          MEDICINE
                 GENERAL X-RAY   FLUOROSCOPY   MAMMOGRAPHY

CLICNY 0541

## ELECTROMYOGRAPHY LABORATORY
## DEPARTMENT OF NEUROLOGY
## BETH ISRAEL MEDICAL CENTER
## NEW YORK, NEW YORK

| | |
|---|---|
| NAME | ALFANO, STEVEN |
| SOCIAL SEC # | 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 |
| EXAM DATE | 07/20/2000 |
| REFERRED BY | Andrew Schiff, M.D. |

| AGE | 42 | HEIGHT (INCHES) | 76 | TEMP | 32 | SEX | Male |
|---|---|---|---|---|---|---|---|

**History:** Mr. Alfano is a 42-year-old man referred for possible left lumbosacral radiculopathy. Two months ago, he made a sudden movement and felt sudden lower back pain and stiffness. A few days later, he began to feel radiation of the pain into the left buttock, posterior thigh to the ankle.

He has had lower back pain intermittently for many years since a car accident in 1997. Since that time, he has intermittently noted some weakness in his left leg, particularly in the calf when pushing off with his foot. Occasionally, he thought there was some weakness in the anterior thigh. Sitting for a long time aggravates the pain. Sitting slightly flexed and hunched over was partially alleviating. He also had pain while lying down at night in the posterior thigh. For four months, he has had some urinary retention and erectile dysfunction. He saw a urologist who found no abnormalities.

He recently saw an orthopedic surgeon. He had an MRI of his lumbosacral spine which showed spondylosis and stenosis at L5/S1, with impingement of the left L5 nerve root at the lateral recess. He has had two epidural steroid injections, which have provided only mild benefit. A third and final one was planned. Constitutional symptoms, such as weight loss, fever, and rash, were absent.

**Past Medical History:** Migraines, hypertension, reflux esophagitis.

**Drug Allergies:** Codeine caused headache (aggravation of migraines) and nausea.

**Social History:** Works for human resources. Does desk work. He has been out of work since the beginning of June (a month and a half).

**Family History:** No history of diabetes.

ALFANO, STEVEN
07/20/2000

Medications:  Imitrex p.r.n., Norvasc, Prevacid.

Review of Systems:  See above.  No diabetes.  No recent trauma.
Other systems were reviewed and were negative.

General Examination:  Appearance:  Appeared well, in no distress.
Integument:  No dermatomal eruptions in the legs.  Neck:  Supple.
Extremities:  No clubbing, cyanosis or edema.  Straight-leg raising
was negative bilaterally.  Patrick's maneuver was, also, negative
bilaterally.

Neurologic Examination:

Mental Status:  Alert and oriented x 3.  Fluent speech.  He gave a
detailed description of his symptoms and recalled dates well.

Cranial Nerves:  Extraocular movements intact.  Face symmetric.

Motor:  No atrophy, fasciculations, or pronator drift.  Strength
was 5/5 in all groups, although there was some give-way in left
plantar and dorsiflexion of the foot and toes.  Strength seemed
normal.

Gait:  Slightly antalgic.  Able to stand, but not walk, on his
heels and toes; this was painful.

Coordination:  Finger-to-nose and tandem gait steady.

Sensory:  Negative Romberg.  Pin was diminished in the left
lateral border of the foot.  Vibration was impaired in the great
toes bilaterally.  Pin and vibration were, otherwise, intact.

Reflexes:  Reflexes 2+ throughout.  Plantar responses were flexor
bilaterally.

Electrophysiologic Findings:  Bilateral peroneal and tibial motor
conduction studies were normal.  Left tibial and bilateral peroneal
F-wave minimal latencies were prolonged.  Right tibial F-wave
minimal latencies were normal.  Bilateral sural and peroneal sensory
responses were normal.  Bilateral tibial H-reflex latencies were
prolonged.  Needle EMG of bilateral gluteus maximus, left leg, and
lumbosacral paraspinal muscles showed no spontaneous activity.
There was borderline decreased recruitment in the left tibialis
anterior and quadriceps muscle, but motor unit potential morphology
was normal throughout.

Clinical/Electrophysiologic Impression:  There were nonspecific
neurogenic abnormalities in both legs of uncertain significant.
Late responses were prolonged bilaterally.  These findings did not
clearly differentiate bilateral L5/S1 radiculopathies from mild
polyneuropathy.  There was not definitive electrophysiologic
evidence of either.

Taken together, the clinical and electrophysiologic features suggest

CLICNY 0543

ALFANO, STEVEN
07/20/2000

the patient has left S1, more than L5, radiculopathy. There was no associated weakness or reflex change. Further conservative management is planned, at this point. He will follow up for a third epidural injection. In the interim, he was told to stop the Motrin and to start Pamelor 25 mg p.o. q.h.s., to be increased to 50 mg p.o. q.h.s. in seven days, and to 75 mg p.o. q.h.s. at the end of two weeks, if tolerated. He was also started on Ultram one or two tablets p.o. q.i.d. p.r.n. pain. The side effects of the medicine were fully explained. He will hold off exercising for now. He was told that he could return to work, and that he should get up from his desk a few times an hour to stretch and walk around. He was also told he should avoid lifting anything heavy (greater than ten pounds). The patient will see me in followup in six weeks. I requested that he try to bring a copy of his MRI of lumbosacral spine films, if available.



Stephen Scelsa, M.D.
Director of the Neuromuscular Division
Assistant Professor of Neurology

SS/TL975/01190
T: 07/21/2000

CLICNY 0544

| Motor Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency ms | Amp mV | Dur ms | Dist mm | Vel m/sec | Comment |
| R.Peroneal Ankle-EDB | 4.26 | 4.2 | 7.32 | | | NI |
| R.Tibial Ankle-AH | 4.00 | 11.3 | 6.40 | | | NI |
| L.Tibial AK-AH | 4.04 | 12.1 | 6.82 | | | NI |
| L.Tibial Pop-AH | 15.1 | 9.6 | 7.80 | 520.0 | 46.8 | NI |
| L. Peroneal AK-EDB | 5.82 | 7.4 | 6.75 | | | NI |
| L. Peroneal BFH-EDB | 14.3 | 6.5 | 8.04 | 420 | 49.5 | NI |
| L.Peroneal AFH-AK | 16.2 | 6.3 | 8.16 | 91 | 48 | NI |

| F-Waves | | | |
|---|---|---|---|
| Nerve | Latency(ms) Min | Latency(ms) Max | Comment |
| R.Peroneal EDB | 59.0 | | ↑Lat |
| R.Tibial AH | 58.2 | 63.6 | NI |
| L.Tibial AH | 59.7 | 63.0 | ↑Lat |
| L.Peroneal EDB | 58.9 | 61.8 | ↑Lat |

| Sensory Nerve Conduction | | | | | | |
|---|---|---|---|---|---|---|
| Nerve | Latency | Amp uV | Dur | Distance mm | Velocity m/s | Comment |
| L.Peroneal Leg-Dorsum Ft | 2.69 | 10.1 | 3.12 | 130.0 | 48.3 | NI |
| R.Sural Calf-LatMal | 3.50 | 16.9 | 1.95 | 160.0 | 45.7 | NI |
| L.Sural Calf-LatMal | 3.30 | 17.2 | 1.71 | 150.0 | 45.5 | NI |
| R.Peroneal Leg-Dorsum Ft | 2.42 | 8.11 | 1.94 | 120.0 | 49.6 | NI |

Alfano, Steven, 099449648          July 20, 2000

CLICNY 0545

| H Reflex | | | |
|---|---|---|---|
| Nerve | Latency<br>mS | Amplitude<br>uV | Comment |
| L.Tibial H Reflex | 36.5 | | ↑Lat |
| R.Tibial H Reflex | 38 | | ↑Lat |

| Routine Needle EMG Examination | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Muscle | Fib<br>PSW | Fasc | Misc | MUP | | | Rec<br>Patt | Comment |
| | | | | Amp | Dur | Phase | | |
| L.Glut Max | 0 | 0 | | | | | | Nl |
| L.Quad | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Tib Ant | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Per Longus | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.Gastroc | 0 | 0 | | Nl | Nl | Nl | Normal | Nl |
| L.L-PSpinal L4,5 | 0 | 0 | | | | | | Nl |
| L.L-PSpinal L5,S1 | 0 | 0 | | | | | | Nl |
| R.Glut Max | 0 | 0 | | | | | | Nl |

Alfano,Steven, 099449648          July 20, 2000

CLICNY 0546



**LENOX HILL** RADIOLOGY & MEDICAL IMAGING ASSOCIATES P.C.

Page 1 of 1

Carmel Donovan, M.D.

Erich Eidenschenk, M.D.

David A. Follett, M.D.

61 East 77th Street

New York, NY 10021

TEL: 212-772-3111
FAX: 212-288-1637
FAX: 212-861-1796

www.lenoxhillradiology.com

William Louie, M.D.

Keith S. Tobin, M.D.

Lynn Ladetsky, M.D.

Scott R. Gerst, M.D.

JAMES C FARMER, MD

Patient: ALFANO, STEVEN          ID: 139521     20010817551501395211

**MRI OF THE LUMBAR SPINE**     8/18/01:

Sagittal and coronal proton density, sagittal T1 and T2 FSE weighted images of the lumbar spine with axial proton density weighted images of L1-2 through L5-S1 were obtained on a 1.5 Tesla MRI unit. 43 year-old with chronic low back pain and bilateral radiculopathy. Comparison is made to report of prior study 6/9/00.

There is normal lumbar lordosis and alignment. There are no fractures or subluxations. There is moderate-to-severe L5-S1 spondylosis with disc space narrowing, disc desiccation, degenerative type II end-plate marrow change and vacuum disc phenomena. The remaining lumbar intervertebral discs are normal. There are no destructive marrow processes. Small, typical hemangiomata are seen within the L4 and L5 vertebral bodies. The conus medullaris is at the approximate L1-2 level. There are no abnormalities of the distal thoracic spinal cord or conus medullaris. There are no intraspinal mass lesions. The paraspinal soft tissues are grossly normal.
At L1-2 through L3-4, there are no disc protrusions, significant disc bulges spinal stenosis or neural foraminal narrowing.
At L4-5, there is minimal anular disc bulge and moderate facet osteoarthritis. There are mild developmentally shortened pedicles and mild spinal stenosis. There is also mild narrowing of both neural foramen. This shows slight interval increase.
At L5-S1, there is a prominent posterior disc osteophyte complex impinging upon the anterior thecal sac causing moderate spinal stenosis. This disc osteophyte complex measures 8 mm cephalocaudad x 7 mm AP x 20 mm transverse dimension. This has shown slight interval increase in size by report. However direct comparison to prior study is suggested for interval change. There is moderate facet osteoarthritis and mild moderate left sided neural foraminal narrowing.

IMPRESSION:
1. MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS.
2. POSTERIOR DISC OSTEOPHYTE COMPLEX AT L5-S1 CAUSING MODERATE SPINAL STENOSIS.
3. MILD L4-5 SPINAL STENOSIS.

Thank you for referring this patient.
Electronically Signed By:        William Louie, MD                    8/20/01

MRI          CAT SCAN      ULTRASOUND      NUCLEAR         PET
HIGHFIELD 1.5T • MIDFIELD • OPEN MRI     HELICAL          HDI          MEDICINE
GENERAL X-RAY     FLUOROSCOPY    MAMMOGRAPHY   BONE DENSITOMETRY
ACCREDITED BY THE AMERICAN COLLEGE OF RADIOLOGY
MRI • ULTRASOUND • MAMMOGRAPHY

07/05/1994  23:28    21273412788    MMALEXIADESMDPC    PAGE  01



## JOAN AND SANFORD I. WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY
Human Resources Department
445 East 69th Street, Room 220
New York, New York 10021
(212) 746-1197  Fax: (212) 746-0988

### Medical Certification for Family and Medical Leave

| Name (Last, First, Middle Init.) ALFANO, STEVEN | Social Security Number 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 | Room No. OH-220 |
|---|---|---|
| Position WAGE & SALARY MGR | Dept. / Div. Human Resources | Extension 61038 |
| Employee's Signature | | Date 7/5/00 |

**To be completed by an authorized health care provider. The information sought on this form relates only to the condition for which the employee is taking FMLA Leave.**

The attached *Description of Serious Health Condition* describes what is meant by a "serious health condition" under the Family and Medical Leave Act. Does the patient's condition qualify under any of the categories described? If so, please check the applicable category.

(1)___ (2)___ (3)___ (4)✓ (5)___ (6)___, or   None of the above___

Describe the medical facts which support your certification, including a brief statement as to how the medical facts meet the criteria for one of these categories: _____

_____

Date patient will be/was unable to work because of this condition 7/3/00 Probable Date Treatment of this condition will end 8/5/00 *

Date patient will be able to return to work 8/5/00 * OR PENDING NEUROLOGIST'S EXAM

Will it be necessary for the employee to take work only intermittently or to work on a less than full schedule as a result of the condition (including for treatment described below)? Yes ☑ No ☐

If yes, give the probable duration ___undetermined___

If the condition is a pregnancy (condition #3) or chronic condition (condition #4), state whether the patient is presently incapacitated and the likely duration and frequency of episodes of incapacity: _____

Continued on the reverse....

057   1/91 (Rev.)

CLICNY 0548

From: Steven Alfano  To: Valerie Grubman    Date: 6/22/00  Time: 9:32:36 AM

FROM : SAGA SPORTS MEDICINE    FAX NO. : 212 2881524    Jun. 21 2000 02:23PM  P2

From: Steven  To: Venna/ Dr Kexiades    Date: 9/19/00  Time: 12 47 49 PM    Page 3 of 4

If additional treatments will be required for the condition, provide an estimate of the probable number of such treatments:
approximately 3

If the patient will be absent from work or other daily activities because of treatment on an intermittent or part-time basis, also provide any estimate of the probable number and interval between such treatment , actual or estimated dates of treatment if known, and period required for recovery if any:  3 - 4 days

If any of these treatments will be provided by another provider of health service (e.g., physical therapist), please state the nature of the treatments:  Epidural injections

If a regimen of continuing treatment by the patient is required under your supervision, provide a general description of such regimen (e.g., prescription drugs, physical therapy requiring special equipment): _____

Is employee able to perform work of any kind? (If "No", skip the next question) Yes ☐  No ☒
Is employee able to perform any one or more of the functions of the employee's position? (Answer after reviewing statement from employer of essential functions of employee's position, or if none provided, after discussing with employee.) Yes ☐  No ☐  If Yes, list the essential function the employee is unable to perform:

no lifting, Prolonged Standing / Sitting

If neither of the above statements apply, is it necessary for the employee to be absent from work for treatment?
Yes ☑  No ☐

| Print Name of Health Care Provider<br>Michael M. Alexiades MD | Type of Practice or Specialty<br>Orthopedics | |
|---|---|---|
| Signature of Health Care Provider | | Date<br>6-20-00 |
| Address<br>159 East 74th St Ny Ny 10021 | Telephone Number<br>212-734-1288 | |

*This form should be submitted to the Human Resources Department - Weill Medical College at the above address.*

CLICNY 0549

From Lie Hero to Kleissssesssen        Sale 11/3/00, 1mm 11:34 am        10.5 170
NOV 3, 3003 (TUE) 11 44                                    77429.09        PAGE 3/9



### JAMES C. FARMER, M.D.
### Hospital for Special Surgery
### 535 E. 70th St.
### New York, N.Y. 10021

Alfano, Steven                                        D.O.B.:
August 31, 2000                                       MR#:

Mr. Alfano is a 42 year old male who reports he has had a long history of intermittent low back pain. In April of this year, his back went out and he began to experience pain that was severe. He notes that prior to the episode in April, he felt that his low back pain had overall increased in severity for the last 2 years or so. He has also noted some leg pain involving his posterior thigh and posterior calf. He at times has felt some numbness in his entire foot. Overall, he notes that his leg pain is worse than his low back pain and that the left leg is significantly worse than the right. He reports he has had episodes of occasional urinary retention in the past and saw a urologist who did not recommend any treatment. His bowel function is normal. He notes his pain is made better with rest and is made worse with prolonged sitting, standing and walking. His treatment to date has consisted of Vioxx, Nortriptyline and physical therapy in the past and recent epidural steroid injections which gave him some day relief of pain.

**Past Medical History:**      Significant for borderline hypertension and migraines.

**Past Surgical History:**     Non-contributory.

**Medications:**              Vioxx, Nortriptyline and Norvasc.

**Allergies:**                He has a drug allergy to Codeine.

**Family History:**           Significant for colon cancer in his father and hypertension in his mother.

**Social History:**           He has a 25 pack a year smoking history and does not drink.

**Review of Systems:**  Negative in detail.

**Physical Examination:**      Physical examination today reveals a well developed, well nourished male in no acute distress. He walks with a normal gait. Examination of his lumbar spine does not show any skin abnormalities and there is no tenderness to palpation. He is able to forward flex, bring his fingers to within 6 inches of the floor and extends approximately 30 degrees. He laterally bends bilaterally which is symmetric. Neurologically, motor strength is 5/5 in the lower extremities bilaterally with intact sensation. Deep tendon reflexes are 1+ and symmetric in the lower extremities. His toes are downgoing and there is no clonus. Range of motion of the hips is full and painless. Neural tension signs are negative. Dorsalis pedis pulses are 1+ and symmetric.

CLICNY 0550

FROM LAW FIRM  TO 7.95555611 48
NOV. 21. 2000 (TUE)  11:44
7742
PAGE. 9/9



## JAMES C. FARMER, M.D.

Alfano, Steven
August 31, 2000
Page two

MR#:

**MRI:**       An MRI scan of his lumbar spine was reviewed from June 12, 2000. This shows evidence of severe degenerative changes within the disk at L5-S1. There does appear to be some moderate stenosis at this level.

**Impression:**       Degenerative disk disease at L5-S1 with bilateral lower extremity pain.

**Recommendations:** At this point, I have reviewed with the patient in detail the nature of the diagnosis of lumbar degenerative disk disease along with treatment options and risks and benefits. At this point, he has not had any significant conservative management with the exception of the epidural. I do feel that he should undergo some physical therapy to see if this will improve his back and lower extremity symptoms. I have asked that he continue to take the anti-inflammatories. I have asked that he follow up with me in approximately 4-6 weeks time to see how he is doing. Should his symptoms still be persistent at that point, then we will discuss the options available to him.

James C. Farmer, M.D.

JCF/lss

CLICNY 0551



## JAMES C. FARMER, M.D.
### Hospital for Special Surgery
### 535 E. 70th St.
### New York, N.Y. 10021

Alfano, Steven                                          D.O.B.:
September 14, 2000                                      MR#:

Mr. Alfano returns today for follow up. He reports that he has performed the physical therapy but has had no improvement whatsoever in his pain and feels that overall the therapy has exacerbated his pain. He does have some intermittent fatigue in the left leg with prolonged walking but notes his primary complaint is his lower back pain. He does feel that at times he has weakness in his tibialis anterior on the left. He denies any bowel or bladder symptoms or night pain.

**Physical Examination:**     Today shows his lumbar spine is non-tender to palpation. He does tend to get significant back pain with forward flexion. His neurologic examination is stable. Neural tension signs are negative.

**Impression:**     Degenerative disk disease of the lumbar spine with some intermittent radicular symptoms on the left probably secondary to L5 nerve root compression noted on the MRI.

**Recommendation:**     At this point, I have reviewed with the patient in detail the nature of the diagnosis of degenerative disk disease and lumbar radiculopathy along with treatment options and risks and benefits. At this point, he reports his back pain is severe and continues to limit him significantly on a daily basis. I do feel it is likely that the pain he is experiencing is from the significant degenerative changes seen at L5-S1. He feels that his pain is severe and continues to limit him on a daily basis and wishes to consider surgical intervention. I have explained to him that I do feel that we would need to obtain a discogram to clearly discern that the L5-S1 disk is the painful level and whether the levels above are normal. After the discogram if it is confirmatory, then I would recommend he have a new MRI as his old one is greater than 3 months old. He is going to have the above performed and will follow up with me afterwards to review it or sooner should he have any questions, problems or concerns.

James C. Farmer, M.D.

JCF/lss

**JAMES C. FARMER, M.D.**
Hospital for Special Surgery
535 E. 70th St.
New York, N.Y. 10021

Alfano, Steven
November 7, 2000

D.O.B.:
MR#:

Mr. Alfano returns today for follow up. He is still having significant low back pain. He does have some lower extremity pain but notes the low back pain is predominant. He denies any change in his bowel or bladder symptoms. He is not having any night pain.

**Physical Examination:**  Today shows no change in range of motion of his lumbar spine. His neurologic exam is stable from a motor and sensory standpoint. Neural tension signs are negative.

**Impression:**  Low back pain with degenerative disk disease.

**Recommendation:**  At this point, the patient wishes to continue with conservative management and wishes to perform more physical therapy, which I think, is reasonable. A prescription was given for this. Additionally, he asked for a renewal for his Vioxx, which was given for 50 mg PO QD PRN. I have asked him to follow up with me when his physical therapy is complete to reevaluate him or sooner should he have any questions, problems or concerns.

James C. Farmer, M.D.

JCF/lss

**JAMES C. FARMER, MD**
**Hospital for Special Surgery**
535 E. 70th Street
New York, N.Y. 10021

Alfano, Steven
February 26, 2001

D.O.B.:
MR#:          068-94-43

Mr. Alfano returns today for follow up. He reports he has lost 40 lbs. since his last visit with me. He has had no change in his low back pain and notes he is still severely limited. He is having some intermittent pain in his left buttock and posterior thigh. He denies any bowel or bladder symptoms or night pain. He reports his pain is still severe with sitting and that he is currently still taking Vioxx for pain relief. He has not started physical therapy yet.

**Physical Examination:**     Physical examination today shows his lumbar spine continues to be nontender. He continues to have severely limited forward flexion due to his pain. Extension is not painful. Neurologically his exam is stable. He continues to have some weakness of the left EHL and tibialis anterior which appear to be give-out with repetitive testing. Deep tendon reflexes are unchanged. Range of motion of the hips is full and painless.

**X-rays:**     No new x-rays were obtained today.

**Impression:**     Low back pain with left lower extremity symptoms and lumber degenerative disk disease.

**Recommendations:**     At this point I have reinforced with the patient that I do want him to begin the physical therapy and I would also like him to see Neurology again to reevaluate the intermittent weakness he gets in the left leg. I do believe that a significant portion of his symptoms are coming from the degenerative disk disease and if he does not improve with conservative care he may require a lumbar fusion. He understands all of this. All of his questions were answered.

He is going to follow up with me in six weeks time to reevaluate him or sooner should he have any questions, problems or concerns.

James C. Farmer, MD

/fls

<u>PHYSICIAN'S REPORT FOR CLAIM OF</u>

<u>DISABILITY DUE TO PHYSICAL IMPAIRMENT</u>

Patient's Name: Steven Alfano

Patient's Address: 3800 Waldo Avenue
Bronx, Ny 10463
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

Dear Doctor

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments.

5/15/96 and 2/4/02

2. Describe in detail the patient's symptoms (complaints, including pain).

Left Leg pain and numbness with associated back pain

3. Describe in detail the patient's signs (clinical findings).

(1) Straight leg raise
Weakness on walking on toes

4. Give the laboratory tests and results.

MRI (+) for L5 S1 Spondylosis with
L5 nerve root Impingement + Stenosis

5. Diagnoses. L5 S1 Spondylosis with Stenosis
and Radiculopathy

2

CLICNY 0556

6. Prognosis _DOOR_

7. Have any of the patient's medical conditions lasted or can any be expected to last at least twelve months?

Yes _X_          No_____

8. Does the patient have to lie down during the day?

Yes _X_          No_____.     If yes, for how long and for what reasons? _1/2h - 2hrs  two to three times_ _per day_

9. Describe the treatment the patient has received. _____

_Physical Therapy_
_Epidural injection_
_Anti inflammatories_

3

10. Give the medications prescribed for the patient, including the dosage.

_OTC NSAIDS + 50mg Vioxx (7/31/00_

Do any of the medications have any side effects or limit the patient's activities?

Yes_____     No __✓__     If yes, explain._____

11. Does or could any condition cause the patient pain?

Yes __✓__     No_____     If yes, explain_ See above

If yes, does any medication affect the patient's pain and how does it affect the pain?

_temporary decrease in pain

4

12. Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

(a) The patient can:

(i) Sit up to ___20 minutes___ continuosly and a total of ___2 hours___ in an 8-hour workday;

(ii) Stand up to ___15 minutes___ continuously and a total of ___< 1 1/2 hrs___ in an 8-hour workday;

(iii) Walk up to ___< 1 block___ continuously and a total of ___< 1 hour___ in an 8-hour workday;

(b) During an entire 8-hour workday:*

(i) The patient can lift (pounds):

|  | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | | |

(ii) The patient can carry (pounds):

|  | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | | |

(iii) The patient can:

|  | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | (✓) | ( ) | ( ) | ( ) |
| Squat | (✓) | (✓) | ( ) | ( ) |
| Crawl | (✓) | ( ) | ( ) | ( ) |
| Climb | (✓) | (✓) | ( ) | ( ) |
| Reach | ( ) | (✓) | ( ) | ( ) |

5

CLICNY 0559

\*Occassionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%.

(v)  The patient can use hands for repetitive action such as:

|  | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | ( ✓ ) Yes ( ) No | ( ✓ ) Yes ( ) No | ( ✓ ) Yes ( ) No |
| Left | ( ✓ ) Yes ( ) No | ( ✓ ) Yes ( ) No | ( ✓ ) Yes ( ) No |

(v)  The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

| Right | Left | Both |
|---|---|---|
| ( ✓ ) Yes ( ) No | ( ✓ ) Yes ( ) No | ( ✓ ) Yes ( ) No |

13.  The patient has restrictions in activities involving:

|  | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | ( ✓ ) | ( ) | ( ) |
| Being around moving machinery | ( ) | ( ✓ ) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | ( ✓ ) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | ( ✓ ) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | ✓ | | | |

14.  This question applies only if its number is circled.  The Social Security Administration has established what is called a "Listing of Impairments."  If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled.  Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints.  Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain _____

_____

_____

_____

_____

_____

6

CLICNY 0560

15. Can the patient travel alone on a daily basis.

    (a) By bus?    Yes_____    No_____

    (b) By subway?    Yes_____    No_____

16. Other comments_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____    Date 2-7-02
Physician (signed)

Michael M. Alexiades, MD
Physician (print name)

159 East 74th St Ny Ny 10021
Address

212-734-1288
Telephone Number

7

CLICNY 0561

PHYSICIAN'S REPORT FOR CLAIM OF

DISABILITY DUE TO PHYSICAL IMPAIRMENT

Patient's Name:    Steven Alfino

SS# 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

Patient's Address:   3800 Waldo Avenue
                     Bronx, NY 10463

Dear Doctor  Keith Roat, M.D.

Please answer each of the following questions about the patient. They
concern the patient's claim of entitlement to disability benefits under the
Social Security Act. Since this form will be used by the Social Security
Administration in deciding if the patient is disabled, please make sure
that it is legible and that every question is answered completely. If a
question is not applicable to the patient, please do indicate.

1.  Give first and last dates of treatment and the average frequency of
    treatments:

    1st visit for back pain 2/06/00  with Dr. Arthur Schiff  last time 2/14/00 etc.

2.  Describe in detail the patient's symptoms (complaints, including pain).

    ① some back pain = numbness and pain reduced due to
       surgery 7/10  occasionally  pain  10/10.

3. Describe in detail the patient's signs (clinical findings).

4. Give the laboratory tests and results.

5. Diagnoses:

2

CLICNY 0563

6. Prognosis _____

___ u-likely ~ bypass with surgery _____

_____

_____

_____

7. Have any of the patient's medical conditions lasted or can any be
   expected to last at least twelve months?

   Yes ___✓___          No _____

8. Does the patient have to lie down during the day?

   Yes _✓___          No _____     If yes, for how long and for what

   reasons? _____

   1/2 – 2 hours of po 3 times daily _____

_____

_____

_____

9. Describe the treatment the patient has received. _____

   physical therapy

   epidural injuries

   anti-inflammatds

   narcotics

_____

_____

_____

3

CLICNY 0564

10.  Give the medications prescribed for the patient, including the dosage:

_see____ ___ _____ ___

Do any of the medications have any side effects or limit the patient's activities?

Yes_____    No __✗__    If yes, explain._____

11.  Does or could any condition cause the patient pain?

Yes __✗__    No _____    If yes, explain_____

The _____ ___ _____ __ ___ _____ ____

If yes, does any medication affect the patient's pain and how does it affect the pain?

_narcotics_ can _decrease_ the pain _temporarily_

4

12. Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

   (a)  The patient can:

      (i)   Sit up to ___20 m.___ continuously and a total of ___2 hrs___ in an 8-hour workday;

      (ii)  Stand up to ___15 min___ continuously and a total of ___1 hour___ in an 8-hour workday;

      (iii) Walk up to ___1 block___ continuously and a total of ___1 hr___ in an 8-hour workday;

   (b)  During an entire 8-hour workday:*

      (i)   The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | ( ✓ ) | ( ) | ( ) |
| 6-10 | ( ✓ ) | ( ) | ( ) | ( ) |
| 11-20 | ( c ) | ( ) | ( ) | ( ) |
| 21-25 | ( ✓ ) | ( ) | ( ) | ( ) |
| 26-50 | ( c ) | ( ) | ( ) | ( ) |
| 51-100 | ( ✓ ) | ( ) | ( ) | ( ) |

      (ii)  The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | ( ✓ ) | ( ) | ( ) |
| 6-10 | ( ✓ ) | ( ) | ( ) | ( ) |
| 11-20 | ( ✓ ) | ( ) | ( ) | ( ) |
| 21-25 | ( ✓ ) | ( ) | ( ) | ( ) |
| 26-50 | ( ✓ ) | ( ) | ( ) | ( ) |
| 51-100 | ( ✓ ) | ( ) | ( ) | ( ) |

      (iii) The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | ( ✓ ) | ( ) | ( ) | ( ) |
| Squat | ( ✓ ) | ( ) | ( ) | ( ) |
| Crawl | ( ✓ ) | ( ) | ( ) | ( ) |
| Climb | ( ✓ ) | ( ) | ( ) | ( ) |
| Reach | ( ) | ( ✓ ) | ( ) | ( ) |

5

CLICNY 0566

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%:

(v)  The patient can use hands for repetitive action such as:

|  | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | ( ✓ ) Yes  ( ) No | ( ✓ ) Yes  ( ) No | ( ✓ ) Yes  ( ) No |
| Left | ( ✓ ) Yes  ( ) No | ( ✓ ) Yes  ( ) No | ( ) Yes  ( ) No |

(v)  The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

|  Right  |  Left  |  Both  |
|---|---|---|
| ( ✓ ) Yes  ( ) No | ( ✓ ) Yes  ( ) No | ( ✓ ) Yes  ( ) No |

13.  The patient has restrictions in activities involving:

|  | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | ( ✓ ) | ( ) | ( ) |
| Being around moving machinery | ( ) | ( ✓ ) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | ( ✓ ) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | ( ✓ ) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | | | | |

14.) This question applies only if its number is circled.  The Social Security Administration has established what is called a "Listing of Impairments."  If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled.  Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints.  Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain  yes,  spinal  stenosis  respectively

1.05  &  [C]

6

CLICNY 0567

15. Can the patient travel alone on a daily basis:

    (a)  By bus?    Yes_____    No_____

    (b)  By subway?    Yes_____    No_____

16. Other comments _____

_____

_____

_____

_____

_____

_____

_____


Date _2/12/02_

_____
Physician (signed)

_Krol Rozel_
Physician (print name)

_505 E 70v St   NY, NY 10021_
Address

_2t 746  2379_
Telephone Number

7

PHYSICIAN'S REPORT FOR CLAIM OF

DISABILITY DUE TO PHYSICAL IMPAIRMENT

SS#: 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

Patient's Name:     Steven Alfano

Patient's Address:   3800 Waldo Avenue
                     Bronx, New York 10463

Dear Doctor Alexiades:

Please answer each of the following questions about the patient. They concern the patient's claim of entitlement to disability benefits under the Social Security Act. Since this form will be used by the Social Security Administration in deciding if the patient is disabled, please make sure that it is legible and that every question is answered completely. If a question is not applicable to the patient, please do indicate.

1. Give first and last dates of treatment and the average frequency of treatments.

   5/15/96 through 7/31/01

2. Describe in detail the patient's symptoms (complaints, including pain).

   (1) leg pain and numbness with associated back pain

3. Describe in detail the patient's signs (clinical findings).

(+) Stresses for pain
Weakness on walking on toes

4. Give the laboratory tests and results.

MRI - (+) for L5S1 spondylosis with
(+) L5 nerve root impingement
+ Stenosis

5. Diagnoses. L5S1 spondylosis with stenosis
and radiculopathy

6. Prognosis _____ *poor* _____

_____

_____

_____

7. Have any of the patient's medical conditions lasted or can any be
   expected to last at least twelve months?

   Yes _✓_                    No _____

8. Does the patient have to lie down during the day?

   Yes _✓_          No _____.     If yes, for how long and for what
   reasons? _____ *variable 2° pain* _____

_____

_____

_____

_____

9. Describe the treatment the patient has received. _____

   *Physical therapy*
   *Epidural injections*
   *anti-inflammatories*

_____

_____

_____

_____

_____

3

CLICNY 0571

10. Give the medications prescribed for the patient, including the dosage.

_OTC NSAIDs_

Do any of the medications have any side effects or limit the patient's activities?

Yes_____    No__✓___    If yes, explain._____

11. Does or could any condition cause the patient pain?

Yes__✓___    No_____    If yes, explain _see above_

If yes, does any medication affect the patient's pain and how does it affect the pain?

_Temporary decrease in pain_

4

CLICNY 0572

12.  Please answer each question by estimating the degree of the patient's ability to do the following on a daily basis.

  (a)  The patient can:

    (i)   Sit up to _____ continuously and a total of _____ in an 8-hour workday;

    (ii)  Stand up to _____ continuously and a total of _____ in an 8-hour workday;

    (iii) Walk up to _____ continuously and a total of _____ in an 8-hour workday;

  (b)  During an entire 8-hour workday:*

    (i)   The patient can lift (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | ( ) | (✓) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | | |

    (ii)  The patient can carry (pounds):

| | Never | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Up to 5 | ( ) | (✓) | ( ) | ( ) |
| 6-10 | (✓) | ( ) | ( ) | ( ) |
| 11-20 | (✓) | ( ) | ( ) | ( ) |
| 21-25 | (✓) | ( ) | ( ) | ( ) |
| 26-50 | (✓) | ( ) | ( ) | ( ) |
| 51-100 | (✓) | ( ) | | |

    (iii) The patient can:

| | Not at all | Occasionally | Frequently | Continuously |
|---|---|---|---|---|
| Bend | (✓) | ( ) | ( ) | ( ) |
| Squat | ( ) | ( ) | ( ) | ( ) |
| Crawl | (✓) | ( ) | ( ) | ( ) |
| Climb | (✓) | (✓) | ( ) | ( ) |
| Reach | ( ) | | | |

5

*Occasionally equal 1% to 33%, frequently equals 34% to 66% continuously equals 67% to 100%.

(v) The patient can use hands for repetitive action such as:

|  | Simple Grasping | Pushing and Pulling of Arm Controls | Manipulation |
|---|---|---|---|
| Right | (✓) Yes (✓) No | (✓) Yes ( ) No | (✓) Yes ( ) No |
| Left | (✓) Yes ( ) No | (✓) Yes ( ) No | ( ) Yes ( ) No |

(v) The patient can use feet for repetitive movements, as in pushing and pulling of leg controls:

|  | Right | Left | Both |
|---|---|---|---|
|  | (✓) Yes ( ) No | (✓) Yes ( ) No | (✓) Yes ( ) No |

13. The patient has restrictions in activities involving:

|  | None | Mild | Moderate | Total |
|---|---|---|---|---|
| Unprotected heights | ( ) | (✓) | ( ) | ( ) |
| Being around moving machinery | ( ) | (✓) | ( ) | ( ) |
| Exposure to marked changes in temperature and humidity | (✓) | ( ) | ( ) | ( ) |
| Driving a motor vehicle | (✓) | ( ) | ( ) | ( ) |
| Exposure to dust, fumes & gases | ✓ | | | |

14. This question applies only if its number is circled. The Social Security Administration has established what is called a "Listing of Impairments." If an individual's impairment is either listed or is determined to be medically the equivalent of a listed impairment the individual is deemed to be disabled. Attached is a copy of that portion of the Listing of Impairments that relates to the patient's complaints. Does the patient have an impairment that meets or equals the Listings of Impairments?

If yes, explain_____

_____

_____

6

CLICNY 0574

15. Can the patient travel alone on a daily basis.

    (a)  By bus?      Yes_____     No_____

    (b)  By subway?  Yes_____     No_____

16. Other comments_____

_____

_____

_____

_____

_____

_____

_____

_____

Date__5-10-01__

_____
Physician (signed)

Michael DA. Alexiades, MD
Physician (print name)

159 East 74th St
Address

212-734-1288
Telephone Number

7

CLICNY 0575

Master Summary Report                                    Page 1 of 7

| EE: ALFANO, STEVEN | SSN: 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 | DOI: 06/06/2000 | ER: WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY(DIS) | ID: 854973378660580 |
|---|---|---|---|---|
| WCC: | LTD: | STD: | ICMS: | Other: |



## CIGNA Group Insurance
Life · Accident · Disability

**Intake Number:** 854973378660580        **Type of Incident:** Illness
**Employer Name:** WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY
**DOI:** 06/06/2000                      **First Day Off:** 06/06/2000
**INTAKE CLAIM TYPE :** Long Term Disability    **LOB:** DIS
**HMO Code:**

[ Collapse All ]

### Employee Information

| SSN : 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 | Employee ID : | Work Permit No : 00( |
|---|---|---|
| Name: ALFANO, STEVEN | | |
| DOB: 01/14/1958 | Age: 44 | Gender: MALE |
| Marital Status: UNKNOWN | Preferred Language: | Tax State: NY |

### Addresses

| Work Location : | Addr1: 445 E. 69TH ST. RM 220 |
|---|---|
| | Addr2: |
| | City: NEW YORK |
| | County: |
| | State: NY    Zip: 10021    Country: US |

| Residence : | Addr1: 3800 WALDO AVE. |
|---|---|
| | Addr2: 13-G |
| | City: BRONX |
| | County: BRONX |
| | State: NY    Zip: 10463    Country: US |

CLICNY 0576

**Phone**

| Type | Number |
|------|--------|
| Residence - Telephone | 999.999.9999 |
| Office - Telephone | 212.746.1197 |

**Email Addresses**

**Address1:** NOT PROVIDED

## Condition

**Description:** MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS WITH DISC SPACE NARROWING, DI
DESICCATION, A DEGENERATIVE TYPE III END-PLATE MARROW CHANGE, AN ANNULAR DISC E
FACET OSTEOARTHRITIS AND A PROMINENT POSTEROLATERAL OSTEOPHYTE FORMATION.
**Incident Type:** Illness
**Diagnosis(ICD9):** 721 SPONDYLOSIS ET AL
**Condition Fatal?**                    **Date of Death:**

## Illness

**Is Illness Work Related? ?**                              **Date Symptoms First Appeared: (**
**Are You Claiming WC? ?**                                 **Prior Related Illness? ?**
**Jurisdiction:** NEW YORK                                 **Other Carrier WC Claim Number:**
**Dispute WC?**
**Why:**

**Claimant Location**
**Symptoms First Appeared:** Other
**Place Description:**
**Address1:**
**Address2:**
**City:**
**State:**                          **Zip:**          **Country:**

**Illness Specifics**
**Describe Cause of Illness:**
**Cause of Illness:** Illness – Non Occupational          **Other Medical Conditions:**
**Describe:**

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp           06/12/2002

CLICNY 0577

Master Summary Report

## Medical

**Receiving or Scheduled Treatment:** Y
**Hospitalized:** ?          **Date Admitted:**
                            **Date Discharged:**
**Surgery:** ?              **Date Performed:**
**Verbal Auth:**            **Restrictions:**          **Restriction Description:**

### Medical Instruction

### Providers

**Name:** JAMES C FARMER          **Type:**              **MedReturns:** N
**Facility/Group:**               **TIN:**               **Specialty:** Other

**Business:**                     **Addr1:** 61 EAST 77TH STREET
                                  **Addr2:**
                                  **City:** NEW YORK
                                  **County:** NEW YORK
                                  **State:** NY    **Zip:** 10021          **Country:** US
**Phone:**
Office - Telephone                212.772.3111
Office - Fax Machine              212.288.1637


**Treatment(Date/Description):**
            UNKNOWN

**TreatmentNotes:**

**Name:** MICHAEL ALEXIADES       **Type:** Specialist          **MedReturns:** N
**Facility/Group:**               **TIN:**                       **Specialty:** Orthopedic

**Business:**                     **Addr1:** 159 EAST 74TH ST.
                                  **Addr2:**
                                  **City:** NEW YORK
                                  **County:** NEW YORK
                                  **State:** NY    **Zip:** 10021          **Country:** US
**Phone:**
Office - Telephone                212.734.1288
Office - Fax Machine              999.999.9999 x9999

CLICNY 0578

**Treatment(Date/Description):**

       UNKNOWN

**TreatmentNotes:**

## Employer Information

**Employer Name:** WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY       **Company Number:** 000004903

**Eligibility Loc ID Number:**       **Eligibility Client Loc Code:**

**Location ID Number:** 000018001       **Client Location Code:**

**Location Name:** WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY

**Address1:** 445 E. 69TH ST. RM 220

**Address2:**

**City:** NEW YORK

**County:**

**State:** NY    **Zip:** 10021    **Country:** US

### Contacts

**Name:** HR UNKNOWN       **Type:** Reported To

**Phone:**

Office - Telephone       212.746.1197

### Intake Selected Policy Coverage Information

**Coverage Type:** LTD       **Policy #:** NYK0001972    **Suffix:**

**Policy Effective:** 07/01/1989       **Policy End:**    **Employee Effective:**

**Prem. Paid Thru:**       **Contribution %:** 0    **Contribution Method:** Pre Tax

### Eligibility Enrollment Information

**\* NO Eligibility Enrollment Data**



CLICNY 0579

Master Summary Report

## Initial Caller Information

**Received Date:** 06/10/2002
**Caller Name:** STEVEN ALFANO
**Role:** Employee

**Received Time:** 11:23:00 AM
**Phone:** 999.999.9999
**Reason for Call:** Intake

**Source:** Fax

## Employment Information

**Hire Date:** 05/05/1991
**Union Indicator:** ?
**Organization Code:**
**Employer Name:** WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY
**Nature of Business:** UNKNOWN
**Job Title:** UNKNOWN
**Description of Job Duties:** UNKNOWN

**Emp. Status:**
**Union Local #:**
**Organization Name:**
**Present Position Start Date:**

**Department Name:**
**Occupation Class:**

**Effective Date:**
**Union Name:**

## Wages and Pay Data

**Full Time:** ?

**Bonus Eligibility Indicator:**

**Amount:** $1.00

**Date of Last Earnings Change:** 09/01/2001

**Earnings Mode:** W

**Salary Mode:** HOU

| Compensation List Types |
|---|

| Any other income or benefits | | |
|---|---|---|
| Offset Code | Weekly Amt | Start |

| Regular Weekly Work Schedule (Hours) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Shift | Shift Start Time | Shift End Time | Mon | Tue | Wed | Thu | Fri | Sat | Sun |

## Return to Work

**Lost Time Indicator:** Y
**Employee Returned to Work?** ?
**What specifically prevents work:**

**Last Date Worked:** 06/05/2000
**Expected Return Date:**

**LDW Paid in Full:**
**# of Hrs Wkd Last Da**

CLICNY 0580

| Period of Lost Time: | | | | |
|---|---|---|---|---|
| First Day Off | RTW Date | Duty Type | Job | RTW Ho |
| 06/06/2000 | | | | |

**RTW Notes:** UNKNOWN

## Notes

LLVAHL                                     06/12/2002

RECEIVED CLAIM BY MAIL HIT FAX BY MISTAKE. ************RECEIVED ADDITIONAL INFORMAT
CLAIM WAS LOADED INTO SRO, BUT WAS NEVER LOADED INTO UNILYNX. PER MARY ROBER
INFORMATION OFF SRO AND GIVEN INFORMATION AND LOADED THE CLAIM TO UNILYNX.

## Employer Confirmation Information

| Data Element | Value | Confirmation M |
|---|---|---|
| **EE Work Address** | **Addr1:** 445 E. 69TH ST. RM 220 **Addr2: City:** NEW YORK **County: State:** NY **Zip:** 10021 **Country:** US | None |
| **Department Name** | | None |
| **Job Title** | UNKNOWN | None |
| **Occupation Classification** | | None |
| **Description of Job Duties** | UNKNOWN | None |
| **Union Indicator** | ? | None |
| **Union Number** | | None |
| **Date of Hire** | 05/05/1991 | None |
| **Date of Last Earnings Change** | 09/01/2001 | None |
| **Last Day Worked** | 06/05/2000 | None |
| **# Hours Worked Last Day** | 0 | None |
| **Expected RTW Date** | | None |
| **Full Time** | ? | None |

http://ic.group.cigna.com/ClaCare/View/pgSpHostData.Asp                06/12/2002

CLICNY 0581

Master Summary Report 

| | | |
|---|---|---|
| Earnings Amount | 1.00 | None |
| Payment Mode | WEEKLY | None |
| First Day Off | 06/06/2000 | None |
| Coverage Type | STD | None |
| Policy Number | NYK0001972 | None |
| Policy Effective Date | 07/01/1989 | None |
| Premium Paid Thru Date | 07/01/1989 | None |
| Contribution % | 0 | None |
| Contribution Method | Pre Tax | None |

## Other Contacts

http://ic.group.cigna.com/ClaimCare/View/pgSpHostData.Asp        06/12/2002

CLICNY 0582



**CIGNA** Group Insurance
Life • Accident • Disability

June 12, 2002

120 WHITE PLAINS ROAD
SUITE 208
TARRYTOWN, NY 10591
Telephone 800-376-0725
Facsimile 800-377-4286

To: ALFANO, STEVEN
3800 WALDO AVE.
13-G
BRONX, NY 10463

Re: ALFANO, STEVEN
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

WEILL MEDICAL COLLEGE OF CORNELL
Policy / Coverage #  NYK0001972
Long   Term Disability Claim

Dear Mr. Alfano:

We have received the information you reported to our customer service center on 06/12/2002.

Please review the information on the enclosed Proof of Loss Form. **If any information is incorrect, please make the necessary changes, sign, and date the Proof of Loss Form and the Disclosure Authorization. Please return the forms to our office within 10 days of receipt of this letter.**   Your claim will be handled by the following office:

> **CIGNA Group Insurance**
> **120 WHITE PLAINS ROAD**
> **TARRYTOWN, NY 10591**
> **1-800-376-0725**

To certify the information reported, you must return a *signed* **Proof of Loss Form and Disclosure Authorization** to our office, whether changes were made or not. Your claim will continue to be processed while we are waiting for receipt of these forms.

Please be advised, the authorization to release information form will be used by CIGNA Group Insurance for the following reasons:

- To obtain medical information from your attending physician regarding the disability for which you filed your disability claim.
- To obtain pre disability earnings from your employer, and any offset information that may apply.
- To facilitate return to work efforts with your employer.

You may wish to review your insurance coverage with your employer, to determine if you are eligible for other benefits.

Thank you for your cooperation. Should you have any questions, please do not hesitate to call the office noted above.

Sincerely,
CIGNA Group Insurance

612286

*Policy / Coverage Nos. NYK0001972*
*Integrated STD/LTD*
*Disability Proof of Loss*

**CIGNA Group Insurance**
Life • Accident • Disability
Administered by:
Life Insurance Company of North America
Connecticut General Life Insurance Company
Life Insurance Company of New York
CIGNA Claim Office
1(800) 36-CIGNA , 1(800) 362-4462

 **CIGNA**

Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or (2) conceals for the purposes of misleading, information concerning any material fact, commits a fraudulent insurance act. For residents of the following states, please see enclosure: Colorado, Florida, Maryland, New Jersey, New York, Oregon, Pennsylvania, or Virginia.

| INSTRUCTIONS FOR FILING A CLAIM |
|---|
| This form is a single application for Short Term and Long Term Disability Benefits and contains the information reported to our service center. |

**To The Employee:**  A. Please review this information carefully.
B. Make any changes you feel are necessary.
C. Sign the section marked Employee Certification and the Disclosure Authorization.
D. Return the signed forms to our office.

If these instructions are not followed, your claim may be subject to a delay or return.

| EMPLOYEE INFORMATION | | | |
|---|---|---|---|
| Name of Employee (Last, First, Middle): <br> ALFANO, STEVEN | Date of Birth: <br> 01/14/1958 | Social Security Number: <br> 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 | Sex: <br> ◉Male ○Female ○Unknown |
| Address (Street, Apt): <br> 3800 WALDO AVE. 13-G | | | |
| City: <br> BRONX | State: <br> NY | Zip Code: <br> 10463 | Telephone No.: <br> (999)999-9999 |

Please describe your condition:
MODERATE-TO-SEVERE L5-S1 SPONDYLOSIS WITH DISC SPACE NARROWING, DISC DESICCATION, A DEGENERATIVE TYPE III END-PLATE MARROW CHANGE, AN ANNULAR DISC BULGE, FACET OSTEOARTHRITIS AND A PROMINENT POSTEROLATERAL OSTEOPHYTE

| PLEASE COMPLETE SECTIONS A, B OR C - AND THE REMAINDER OF THE APPLICATION | | | |
|---|---|---|---|
| **A** Is this an Injury? <br> ○Yes ◉No ○Unknown | Date of Injury: | Time of Injury: | Is this work related? <br> ○Yes ○No ○Unknown |
| Describe the cause of Injury: | | | |
| **B** Is this an Illness? <br> ◉Yes ○No ○Unknown | Date of Illness: <br> 04/01/2000 | | Is this work related? <br> ○Yes ○No ◉Unknown |
| Describe the cause of Illness: | | | |
| **C** Is this an Pregnancy? <br> ○Yes ◉No ○Unknown | Delivery/Due Date: | Delivery Method: | Were there complications? <br> ○Yes ○No ○Unknown |
| Describe the Complications: | | | |

| Are you currently losing time from work? <br> ◉Yes ○No ○Unknown | If yes, what specifically prevents you from working? | |
|---|---|---|
| Last Day Worked: <br> 06/05/2000   # hours worked: 0.00 | Date first unable to work: <br> 06/06/2000 | Date You Plan to Return to Work |
| Have you had the same or similar condition in the past? ○Yes ○No ◉Unknown | If yes, when did it occur (dates)? | Please describe: |

Please list any states in which you may be liable for filing tax returns.
NY

Are you receiving any other income or benefits? If so, please complete the following.

| Benefit Type | Gross Weekly Amount | Date Began | Paid thru Date |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

612286

Page 1 of 2

CLICNY 0584

Please list any hospitals, clinics or physicians that treated you for your condition:

| Name & Address | Telephone No. | Specialty | First Treatment Date | Last Treatment Date |
|---|---|---|---|---|
| JAMES FARMER<br>61 EAST 77TH STREET<br>NEW YORK, NY 10021 | (212) 772-3111 | Other | | |
| MICHAEL ALEXIADES<br>159 EAST 74TH ST.<br>NEW YORK, NY 10021 | (212) 734-1288 | Orthopedic | | |
| | | | | |
| | | | | |

## EMPLOYMENT INFORMATION

| Occupation:<br>UNKNOWN | | Date Hired:<br>05/05/1991 | Basic Earnings:<br>$1.00 | Frequency:<br>WEEKLY | Date of last change in earnings: |
|---|---|---|---|---|---|

Please provide a brief description of daily job duties:

UNKNOWN

Please check the appropriate items regarding this employee:

☐ Exempt   ☒ Non-Exempt   ☐ Management   ☒ Non-Management
☐ Supervisory   ☒ Non-Supervisory   ☐ Salaried   ☐ Hourly
☐ Full Time   ☒ Part Time   Hours/Week _____
☐ Union - Local # _____   ☒ Non-Union

| Has Employee been laid off?<br>◯ Yes ⦿ No ◯ Unknown | Or terminated?<br>◯ Yes ⦿ No ◯ Unknown | If yes, please indicate the date and reason: |
|---|---|---|

| STD Policy / Covg. Number: | Effective date of employee's STD coverage: | Was STD Insurance issued on the basis of a statement of physical condition?<br>◯ Yes ◯ No ◯ Unknown |
|---|---|---|

| Percent of Employee's STD contribution:<br>         % | Employee's contributions were made on:<br>◯ Pre-Tax Basis   ◯ Post-Tax Basis | Premium Paid Thru Date: |
|---|---|---|

| LTD Policy / Covg. Number:<br>NYK0001972 | Effective date of employee's LTD coverage: | Was LTD Insurance issued on the basis of a statement of physical condition?<br>◯ Yes ◯ No ⦿ Unknown |
|---|---|---|

| Percent of Employee's LTD contribution:<br>0 % | Employee's contributions were made on:<br>◯ Pre-Tax Basis   ⦿ Post-Tax Basis | Premium Paid Thru Date: |
|---|---|---|

## EMPLOYEE WORK LOCATION

| Employer Name:<br>WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY | Contact Person: |
|---|---|
| Address (include Street, City, State & Zip):<br>445 E. 69TH ST. RM 220  NEW YORK NY  10021 | Telephone No.: |

## ADDITIONAL EMPLOYERS (If applicable)

| Employer Name: | Title | Contact Person: |
|---|---|---|
| Address (include Street, City, State & Zip): | | Telephone No.: |

| Name of Employee (Last, First, Middle):<br>ALFANO, STEVEN | Social Security Number:<br>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 |
|---|---|

### CERTIFICATION

This is to certify the facts as indicated above are true to the best of my knowledge and belief.

Date of signature:

Signature of Employee:

The issuance of this form is not an admission of the existence, nor does it recognize the validity, of any claim and is without prejudice to the company's legal rights in the premises.

612286

CLICNY 0585

# *Disclosure Authorization*



CIGNA Group Insurance
Life • Accident • Disability

**CIGNA**

Insured's Name (Please Print)  ALFANO, STEVEN

I AUTHORIZE: any doctor, physician, healer, health care practitioner, hospital, clinic, other medical facility, professional, or provider of health care, medically related facility or association, medical examiner, or pharmacy to give the Insurance Company named below (Company) or their employees and authorized agents or authorized representatives, any medical and nonmedical information or records that they may have concerning my health condition, or health history, or regarding any advice, care or treatment provided to me. This information and/or records may include, but is not limited to: 1) cause, treatment, diagnoses, prognoses, consultations, examinations, tests or prescriptions of advice of my physical or mental condition of information concerning me which may be needed to determine policy claim benefits with respect to Insured. This may also include (but is not limited to) information concerning: mental illness, psychiatric, alcohol or drug use and any disability, and also HIV related testing, infection, illness, and AIDS (Acquired Immune Deficiency Syndrome.)

I AUTHORIZE: any financial institution, accountant, tax preparer, insurer or reinsurance consumer reporting agency, insurance support organization, Insured's agent, employer, group policyholder, business associate, benefit plan administrator, family members, friends, neighbors or associates, governmental agency including the Social Security Administration or any other organization or person having knowledge of me to give the Company or their employees and authorized agents, or authorized representatives, any information or records that they have concerning me, my occupation, my activities, employee/employment records, earnings or finances, applications for insurance coverage, prior claim history, work history, and work related activities.

I AUTHORIZE: the Company to contact my employer to investigate and evaluate return to work opportunities. I understand that in doing so the Company may release medical information and other information related to my physical limitations to my employer.

I UNDERSTAND: the information obtained will be included as part of the proof of claim and will be used by the Company to determine eligibility for claim benefits and any amounts payable with respect to the Claimant. This authorization shall apply to all records, information and events that occur over the duration of the claim. A photocopy of this form is as valid as the original and I or my authorized representative may request one. I may revoke this authorization at any time for information not then obtained by writing to the Company. The information obtained will not be released to anyone else EXCEPT: a) reinsuring companies; b) the Medical Information Bureau, Inc., which operates Health Claim Index (HCI); c) fraud or overinsurance detection bureaus; d) anyone performing business, medical or legal functions with respect to the claim; e) for audit or statistical purposes; f) as may be required by law; g) as I may further authorize.

Claimant's Signature  _____   Date: _____
(Claimant or Claimant's authorized representative)

Relationship, if other than Claimant   _____

Claimant's Social Security Number   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  _____

**Insurance Company Name**  Life Insurance Company of North America  _____

612286

CLICNY 0586

## IMPORTANT CLAIM NOTICE FOR THE FOLLOWING STATES:

***Colorado Residents:*** It is unlawful to knowingly provide false, incomplete or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable from insurance proceeds shall be reported to the Colorado division of insurance within the department of regulatory agencies.

***Florida Residents:*** Any person who knowingly and with intent to injure, defraud or deceive any insurer files a statement of claim or an application containing any false, incomplete or misleading information is guilty of a felony of the third degree.

***Maryland Residents:*** Any person who, knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information ; or (2) conceals for the purpose of misleading, information concerning any fact material thereto, may be committing a fraudulent insurance act.

***New Jersey Residents:*** Any person who knowingly files a statement of claim containing any false or misleading information is subject to criminal and civil penalties.

***New York Residents:*** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed $5000 and the stated value of the claim for each such violation.

***Pennsylvania Residents:*** Any person who, knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

***Oregon Residents:*** Any person who knowingly and with intent to defraud any insurance company or other person: (1) files an application for insurance or statement of claim containing any materially false information; or, (2) conceals for the purpose of misleading, information concerning any material fact, may have committed a fraudulent insurance act.

***Virginia Residents:*** Any person who, with the intent to defraud or knowing that he is facilitating a fraud against an insurer, submits application or files a claim containing a false or deceptive statement may have violated state law.

612286