UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STEVEN ALFANO,

                            Plaintiff,

- against -

INA LIFE INSURANCE COMPANY OF NEW YORK, LONG TERM DISABILITY INSURANCE PLAN FOR CORNELL UNIVERSITY MEDICAL COLLEGE, WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY RETIREMENT PLAN FOR FACULTY AND EXEMPT EMPLOYEES, CHILDREN'S TUITION SCHOLARSHIP PLAN, CORNELL UNIVERSITY GROUP LIFE INSURANCE PLAN, CORNELL UNIVERSITY MEDICAL COLLEGE HEALTH INSURANCE PLAN and CORNELL UNIVERSITY MEDICAL COLLEGE DENTAL INSURANCE PLAN,

                            Defendants.

07 Civ. 9661 (GEL)

## COUNTER STATEMENT OF FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

      In accordance with LOCAL CIVIL RULE 56.1, Plaintiff, Steven Alfano, hereby submits the following Counter Statement of Material Facts in opposition to defendant CIGNA's Motion for Summary Judgment:

      1.     Cornell Weill Medical College ("WMC") hired Plaintiff on August 5, 1991 (CLICNY104, 272-273, 527, 529-531, 668, 879).[1]

      2.     WMC provides a Long Term Disability ("LTD") Insurance Plan For Cornell University Medical College (the "LTD Plan") whose benefits are provided through a group

---

1 CLICNY refers to documents from the administrative record or claim file that CIGNA produced in this litigation.

insurance contract, number NYK-1972 (the "Policy"), that INA issued (Exhibit A pp. 4, 21; CLICNY588; Answer ¶¶3, 15).[2]

  3. Admit.

  4. As an employee of WMC, Plaintiff was a participant in the LTD Plan (Answer ¶ 3).

  5. In order for a participant to be eligible under the LTD Plan a claimant must be continuously disabled throughout the 180 day waiting period, known as an elimination period (Exhibit A p. 6).

  6. The LTD Plan defines "Disability" as being "unable to perform all the material duties of your regular occupation; or you are earning less than 80% of your Indexed Basic Earnings" (Exhibit A p. 13; CLICNY43; 44, 593, 668, 721).

  7. The LTD Plan provides, a "Monthly Benefit" equal either to (a) 60% of the employee's "Basic Earnings," which is reduced by "Other Benefits" "excluding any Other Benefits your dependents receive," or (b) 70% of the employee's "Basic Earnings," which is reduced by "Other Benefits" including those received by dependents, (Exhibit A p. 6-8; CLINCY598-601).

  8 The LTD Plan provides for benefits being adjusted for five annual cost of living increases of 3% (Complaint ¶17, CLICNY603).

  9. The LTD Plan's definition of "Other Benefits" includes Social Security benefits that Plaintiff, but not his family, may receive as a result of Plaintiff's disability (Exhibit A p. 7).

  10. The maximum benefit period under the LTD Plan for a disability that began prior to age 61 is to age 65 (Exhibit A p. 14; CLICNY604; Answer ¶18).

  11. Plaintiff stopped working on June 5, 2000 because of his back pain, and in December 2000, filed a claim for LTD benefits (CLICNY513, Answer ¶ 46).

  12. Admit.

---

[2] Exhibit A refers to the LTD Plan that was attached as Exhibit A to Plaintiff's Rule 56.1 Statement of Facts.

13. Dr. Farmer, Dr. Scelsa, Dr. Snow, Dr. McCance and Dr. Alexiades submitted medical records, tests and reports that showed Plaintiff was incapable of doing sedentary work (CLICNY 113-138, 283-284, 290-291, 293-296, 350, 438-39, 448-55, 475-77, 483-94, 515-32).

14. Admit.

15. CIGNA has a telephone record that says Plaintiff's job is sedentary and that he can move about as needed (CLICNY382).

16. By letter dated February 12, 2001, CIGNA notified Plaintiff it was denying his LTD claim on the grounds that Plaintiff do "the sedentary physical demand level as outlined by the U.S. Department of Labor's Dictionary of Occupational Titles" (the "DOT") (CLICNY 379, Answer ¶ 55).

17. CIGNA's February 12, 2001 letter included a record from Dr. Scelsa dated July 20, 2000 releasing Plaintiff to work, but CIGNA's letter excluded Dr. Scelsa's subsequent report dated December 12, 2000 in which he said Plaintiff could only sit between 2.5 and 5.5 hours during a work day (CLICNY 483-484). Moreover, CIGNA also cited Dr. McCance's report, but it fails to show that Plaintiff can do sedentary work, to the contrary, it provides the objective clinical findings that show Plaintiff could not sit for 6 hours a day (CLICNY 453-455).

18. Admit.

19. After Plaintiff notified CIGNA of his intent to appeal by letter dated March 19, 2001 (which CIGNA failed to produce, Answer ¶ 59), by letter dated April 10, 2001, Plaintiff requested an additional 60 days because he was awaiting medical evidence (Answer ¶ 59). By letter dated April 12, 2001, while acknowledging Plaintiff's April 10, 2001 letter, CIGNA upheld its denial (Answer ¶60).

20. Plaintiff's second appeal included a report dated February 7, 2002 from Dr. Alexiades that diagnosed Plaintiff with spondylosis, stenosis and radiculopathy, and concluded that Plaintiff (a) must lie down .5 – 2 hours, two or three times, during an eight hour work day, and (b) **was limited to sitting only two (2) hours in 8 hour work day** (CLICNY 297-303).

Also included was a report dated February 12, 2002 from Dr. Keith Roach who also concluded Plaintiff (a) must lie down .5 – 2 hours, three times, during an eight hour work day, and (b) **was limited to sitting only two (2) hours in 8 hour work day** (CLICNY304-310). In a letter dated July 12, 2002, Dr. Alexiades diagnosed Plaintiff with lumbar spondylosis, stenosis and radiculoapthy, and concluded that Plaintiff (a) had to lie down 1.5 to 2 hours a day, (b) could not sit, stand or walk for prolonged time, (c) could not lift or carry more than 5 pounds, (d) had no change in condition since June 5, 2000, and (e) remained totally disabled (CLICNY 253-254).

   21. Plaintiff supplemented his appeal by letter dated August 3, 2002 that included additional medical records, MRIs and reports stating that Plaintiff remained totally disabled (CLICNY248-254).

   22. Plaintiff applied for Social Security Disability ("SSD") benefits because the LTD Plan required Plaintiff to do so; otherwise, the LTD Plan would have deducted the estimated amount of the SSD benefits from Plaintiff's LTD benefits (Exhibit A p. 9; CLICNY 467-468, 514, 601). On August 27, 2002, the Social Security Administration (the "SSA") concluded that Plaintiff was totally disabled as of June 5, 2000, and awarded him a monthly SSD benefit (CLICNY257-267; Answer ¶30). A United States Administrative Law Judge ("ALJ") determined that Plaintiff's impairments were so severe that not only was he unable to perform his past work as a wage and salary administrator, but also was unable to do any other type of work as well (CLICNY266). CIGNA accepted the SSA decision without question in order to reduce Plaintiff's LTD benefit by the amount of his SSD benefits (CLICNY173-185, 217-228, 231; Answer ¶33); however, CIGNA subsequently rejected the SSA decision without question when it decided to terminate Plaintiff's LTD benefits (CLICNY706-709). CIGNA never explained why it rejected the findings and conclusions of the ALJ and the SSA's vocational expert (CLICNY706-710). CIGNA failed to explain (a) why it accepted the physical therapist's conclusion over the opinions of Plaintiff's doctors, (b) what medical records showed that Plaintiff's condition had improved, (c) how Plaintiff could do sedentary work when the FCE and

Dr. Roach limited Plaintiff's ability to sit to less than 2.5 hours in an 8 hour day, (d) why the decision of the SSA that Plaintiff could not do his regular occupation was wrong, and (e) how Plaintiff could perform at a sedentary level if unable to lift or carry any weight (CLICNY706-710).

23.     By letter dated December 2, 2002, CIGNA notified Plaintiff that it needed to "consult a health care professional with the appropriate training and experience in the field of medical (sic) involved in the medical judgment;" however, it failed to explain why none of Plaintiff's doctors were such a physician, or why the conclusions of Dr. Alexiades, Dr. Roach, and the SSA, which were based on the clinical exam findings, surgeries and diagnostic tests, were insufficient to find Plaintiff totally disabled (CLICNY 243).  On December 10, 2002, Dr. David Trotter, an orthopedist, completed his report for CIGNA, and concluded that "The medical documentation does support the claimant's apparent inability to perform his occupation as a wage and salary manager considered to be overwhelmingly in the sedentary category" (CLICNY 235).  Dr. Trotter also concluded that the medical records showed Plaintiff's severe multilevel spinal stenosis and nerve root impingement/radiculopathy precluded him from working his full time sedentary occupation as a wage and salary manager (CLICNY235).  Dr. Trotter added that Plaintiff's symptomatic stenosis and nerve root impingement would persist regardless of what position he assumed (CLICNY235).  Dr. Trotter concluded that Plaintiff was disabled from his usual occupational activities **even on a part time basis** (CLICNY236).

24.     On December 30, 2002, Karen Haley, a CIGNA nurse, concluded that the medical records supported Plaintiff's inability to perform sedentary work (CLICNY106).  On January 14, 2003, Medha Bharadwaj, CIGNA's case manager, determined that Plaintiff could not do his sedentary occupation because his symptoms and abnormal exam and test findings supported ongoing severe multilevel spinal stenosis and nerve root impingement severe enough to preclude performing his occupation (Tr. 84-85;[3] CLICNY105).  Bharadwaj found that: (a) Plaintiff's L5-

---

3  "Tr." refers to pages from Bharadwaj's deposition transcript.

S1 nerve roots appeared to be resulting in radiculopathy of the lower extremity, (b) surgery was indicated, (c) Plaintiff's pain correlated with his medical findings; and (d) Plaintiff's large body habitus may have contributed to his severe spinal pathology (CLICNY105). Based on the additional information that Plaintiff's attorney submitted, and "Based on the medical evidence in file supporting cx's [claimant's] inability to perform his occupation, along with the peer review findings" Bharadwaj reversed the prior denial (CLICNY105, 231).

25.     On January 24, 2003, CIGNA informed Plaintiff that his LTD benefits had been approved without stating why the prior decisions were reversed, and that future benefits required Plaintiff to prove he was unable to engage in the essential duties of "any occupation." (CLICNY186).

26.     By letter dated March 27, 2003, the LTD Plan pointed out the CIGNA's January 24, 2003 letter was incorrect because Plaintiff only had to prove that he was unable to perform his specific occupation, and directed CIGNA to issue a corrected letter (CLICNY169). Therefore, by letter dated April 10, 2003, CIGNA corrected its error, and wrote Plaintiff that future benefits only required him to prove that he was unable to engage in the essential duties of his regular occupation (CLICNY168, Answer ¶ 88).

27.     On January 27, 2003, just three days after notifying Plaintiff that his LTD benefits had been approved, CIGNA claimed that Plaintiff's medical status was unclear (CLICNY172).

28.     On April 25, 2003 and July 24, 2003, CIGNA requested records from Drs. Roach and Alexiades respectively (CLICNY 113-136, 968-969) and forms from Plaintiff (CLICNY159-161, 1021-1025). On August 19, 2003, CIGNA's Senior Claim Manager, Roberto Castellon, reviewed Plaintiff's submissions and concluded that the medical records supported total disability (CLICNY103).

29.     CIGNA asked Dr. Roach to complete CIGNA's Physical Ability Assessment ("PAA") form (Def. br. p. 4).[4] On October 20, 2004, **Dr. Roach checked the most restrictive**

---

4   "Def. br." refers to Defendant's memorandum of law dated July 24, 2008.

**boxes on the PAA for, among other things, sitting, standing, walking, which was occasionally, less than 2.5 hours, during an 8 hour day, as well as for lifting and carrying, which failed to provide a box for less than 10 pounds** (CLICNY968-969, 975-976).  A month earlier, on September 14, 2004, Plaintiff had x-rays taken of his cervical spine, which revealed degenerative disc disease, disc space narrowing and osteophytes at the C6-7 level (CLICNY963).

30. Because the definition of disability never changes under the LTD Plan an employee's ability to perform the material duties of any occupation other than one's regular occupation is not relevant (Exhibit A p. 13; CLICNY43, 44, 593, 721; Answer ¶20).  CIGNA's November 18, 2004 exploratory transferable skills analysis ("TSA") was irrelevant because by letter dated March 27, 2003, the LTD Plan pointed that Plaintiff only had to prove that he was unable to perform his regular occupation, which is why by letter dated April 10, 2003, CIGNA corrected its error, and wrote Plaintiff that future benefits only required him to prove that he was unable to engage in the essential duties of his regular occupation (CLICNY168-169, Answer ¶ 88).  Based on Dr. Roach's October 20, 2004 PAA, which limited Plaintiff to sitting for less than 2.5 hours a day, CIGNA's exploratory TSA identified 9 occupations with potential transferable skills for Plaintiff could perform (CLICNY99).  On November 20, 2006, Plaintiff reminded CIGNA that Plaintiff's narcotic pain medication caused extremely significant drowsiness that prevented him from working, but CIGNA ignored that information when preparing the exploratory TSA (CLICNY638).

31. The exploratory TSA was irrelevant because by letter dated March 27, 2003, the LTD Plan pointed that Plaintiff only had to prove that he was unable to perform his regular occupation, which is why by letter dated April 10, 2003, CIGNA corrected its error, and wrote Plaintiff that future benefits only required him to prove that he was unable to engage in the essential duties of his regular occupation (CLICNY168-169, Answer ¶ 88).  The exploratory TSA also failed to explain how Plaintiff would be capable of doing the four sedentary

occupations it identified given Dr. Roach's restriction of sitting for less than 2.5 hours a day since the DOT requires the ability to sit for at least 6 hours a day (CLICNY968-969).

32. The exploratory TSA was irrelevant because by letter dated March 27, 2003, the LTD Plan pointed that Plaintiff only had to prove that he was unable to perform his regular occupation, which is why by letter dated April 10, 2003, CIGNA corrected its error, and wrote Plaintiff that future benefits only required him to prove that he was unable to engage in the essential duties of his regular occupation (CLICNY168-169, Answer ¶ 88). The exploratory TSA also failed to explain how Plaintiff would be capable of doing the four sedentary occupations it identified given Dr. Roach's restriction of sitting for less than 2.5 hours a day since the DOT requires the ability to sit for at least 6 hours a day (CLICNY968-969).

33. Even though on November 30, 2004, Dr. Roach informed CIGNA that Plaintiff had a class 5 physical impairment, which is a severe limitation of functional capacity; incapable of even minimal sedentary activity, and even though CIGNA knew that Plaintiff was only required to prove that he was unable to engage in his regular occupation and could not sit for 6 hours during a work day, CIGNA asked Dr. Roach if Plaintiff could do four occupations identified by the exploratory TSA (CLICNY69, 73, 95, 168, 169, 886-94, 903, 957, 961).

34. By letter dated April 19, 2005, Dr. Roach reiterated that Plaintiff was incapable of sedentary work, including the four occupations from the exploratory TSA, not only because he was physically unable to sit for prolonged periods, but also because he needed to lay down, and use ice packs and for the reasons set forth in the decision of the SSA. (CLICNY872, 883; Answer ¶ 102).

35. Admit.

36. By letter dated June 14, 2005, Dr. Roach corrected Dr. Taylor's summary of their June 8, 2005 conversation, and stated that **Plaintiff could only work for 30 minutes at a time and not for more than two hours total in a day** (CLICNY843). Dr. Roach explained that based upon his treating and observing Plaintiff, he remained unable to do sedentary work

because of his daily need for narcotic pain medication, need to lie down ad lib, and limited ability to sit, which showed that his condition had not improved during the past five years (CLICNY843).

37.    While Dr. Roach even explained to Dr. Taylor why the clinical findings showed Plaintiff remained unable to work full time, Dr. Taylor failed to cite any medical evidence that indicated Plaintiff's medical condition had improved, and he also failed to explain why the same medical evidence that CIGNA found had supported the approval of Plaintiff's claim no longer supported it (CLICNY885-886).

38.    Plaintiff insisted that Plaintiff attend an FCE on July 26, 2006, which it paid for, that was performed by Jacqueline Genovese of Sports Physical Therapy of New York (CLICNY725-749).

39.    The FCE **the test results showed, exactly as Dr. Roach and Dr. Alexiades concluded, that Plaintiff could only sit on an occasional basis, between 1 and 33% of the time, or equal to less than 2.5 hours** (CLICNY301, 308, 688, 695, 728, 734, 843, 961, 968, 975). The FCE test results also showed that Plaintiff was unable to do any lifting – floor to knuckle, knuckle to shoulder, or floor to shoulder – or carrying (CLICNY728, 734). The FCE test results further showed that Plaintiff could not stoop, kneel, crouch, or crawl due to decreased range of motion, and weakness and buckling of the lower extremities (CLICNY728, 730, 734). The FCE added that Plaintiff walked with a cane, an abnormal posture, had limited flexibility, severely limited range of motion, including significantly limited lumbar range of motion, and had limited lower extremity strength (CLICNY 730). The FCE also concluded that Plaintiff could not sit for more than 10 -15 minutes at a time (CLICNY 731). The FCE found Plaintiff was "very cooperative," gave "maximal" effort, and "consistent performance" that was not "self limiting", but was unable to complete the static and dynamic lifting and step tests due to "frequent buckeling (sic) and increased risk of falling," and twice needed assistance to avoid falling down (CLICNY 730, 731). The FCE stated that it stopped the Canadian Fitness Tests

"due to the safety risk," and that Plaintiff had to lie down during the testing (CLICNY 730). Despite all of the "clinically measurable tests" from the FCE that show Plaintiff cannot meet the DOT physical demands for sedentary work, the physical therapist who performed the FCE concluded that Plaintiff could function "safely at a sedentary level for an eight hour period" (CLICNY 726).

40. On August 9, 2005, even though Plaintiff's ability to do other occupations was irrelevant, CIGNA asked Ginny Schmidt, a CIGNA vocational consultant, to do a TSA, to identify occupations that Plaintiff supposedly could do based on the FCE (CLICNY 718-723). The TSA was irrelevant because by letter dated March 27, 2003, the LTD Plan pointed that Plaintiff only had to prove that he was unable to perform his regular occupation, which is why by letter dated April 10, 2003, CIGNA corrected its error, and wrote Plaintiff that future benefits only required him to prove that he was unable to engage in the essential duties of his regular occupation (CLICNY168-169, Answer ¶ 88).

41. Schmidt failed to point out that the FCE limited Plaintiff to sitting for less than 2.5 hours a day (CLICNY46, 728, 734). The TSA failed to explain how Plaintiff would be capable of doing the seven sedentary occupations it identified given the FCE restriction of sitting for less than 2.5 hours a day since the DOT requires the ability to sit for at least 6 hours a day (CLICNY85-86, 728, 734).

42. CIGNA decided to terminate Plaintiff's benefits based on the FCE and TSA (CLICNY717).

43. By letter dated September 28, 2005, applying the definitions from the U.S. Department of Labor Standards used in the DOT, CIGNA notified Plaintiff that his LTD benefits were being terminated (104, 668-672, 879; Tr. 41-42).

44. CIGNA went through the motions of reviewing the medical and vocational evidence, and upheld the termination of Plaintiff's LTD benefits by letters dated March 29, 2006

and then its final decision by Medha Bharadwaj in a letter dated December 27, 2006 (CLICNY629-360, 655-656).

45.  Plaintiff appealed on February 22, 2006 by submitting Dr. Alexiades' January 11, 2006 report that provided that Plaintiff (a) had to lie down for .5 to 2 hours at a time two or three times during the day, (b) was limited to sitting for a total of 2 hours during an 8 hour work day, was limited to standing and walking for less than 1.5 hours during an 8 hour work day, and (d) was limited to lifting and carrying between 0 and 5 pounds and then only on an occasional basis (CLICNY684-690). Plaintiff also submitted Dr. Roach's January 6, 2006 report that provided that Plaintiff (a) had to lie down several times a day, sometimes hourly, and for up to several hours, (b) was limited to sitting for a total of 2 hours during an 8 hour work day, (c) was limited to standing and walking for less than 1 hour, during an 8 hour work day, and (d) was limited to lifting and carrying between 0 and 5 pounds and then only on an occasional basis during an 8 hour work day (CLICNY691-697).  The third document that Plaintiff submitted was his July 8, 2005 lumbar MRI that revealed that his back condition had deteriorated in that while the August 18, 2001 MRI revealed that only the thecal sac, which encloses the nerve roots, was being impinged at the L5-S1 level, the 2005 MRI revealed "mass effect upon thecal sac and S1 nerve roots" (CLICNY698).

46.  On March 3, 2006, a CIGNA nurse named Kay Rhodes reviewed the additional records "to assess if there has been a change in cx [Plaintiff's] condition providing a severity of deficits that impact his functionality since the FCE"; however, CIGNA failed to asses if there had been a change in Plaintiff's condition that impacted his functionality between the time his claim was approved on August 19, 2003, by CIGNA's Senior Claim Manager, Roberto Castellon (CLICNY103) and the FCE (CLICNY675).  Ms. Rhodes failed to cite any medical evidence showing that Plaintiff's condition improved (CLICNY673-675).  While Ms. Rhodes claimed that Plaintiff had no neurological deficits (CLICNY675), (a) Dr. Alexiades' report stated that Plaintiff had a positive straight leg raise, numbness associated with back pain, and weakness on

walking on toes (CLICNY684-690), and (b) Dr. Roach's report stated that Plaintiff had back pain radiating down the leg, quadriceps weakness, decreased patellar reflex, and positive straight leg raises (CLICNY691-697). Ms. Rhodes failed to identify the neurological deficits that supported Plaintiff's disability in 2003 when CIGNA approved his benefits, or explain how those deficits no longer supported Plaintiff's claim (CLICNY673-675). Ms. Rhodes stated that Plaintiff had no objective evidence to support his claim (CLICNY675), but failed to explain why the 2005 MRI that she reviewed, which showed progression from the prior MRI, or Dr. Alexiades' and Dr. Roach's clinical observations, were not objective evidence (CLICNY 673-675). Ms. Rhodes failed to explain why Plaintiff's orthopedic deficits were not disabling (CLICNY673-675). Ms. Rhodes failed to explain why Dr. Roach's and Dr. Alexiades' opinions were unreliable and why the opinion of the FCE physical therapist was reliable (CLICNY673-675).

47. On March 28, 2006, CIGNA had a doctor Mendez, whose credentials and first CIGNA failed to identify, reviewed Plaintiff's file, and his entire one paragraph analysis was: "FCE reviewed along with job requirements. Validity measures met. Exam concluded Mr. Alfano was able to perform his sedentary – level work. So original decision remains supported. (CLICNY657). Dr. Mendez failed to explain why he rejected every piece of medical evidence, including the MRIs, Dr. Alexiades' and Roach's January 2006 reports and treatment records, the reports of all the doctors upon which CIGNA approved benefits in 2003, the operative reports, the prescribed pain medication and Plaintiff's symptoms, and Trotter report, the FCE test data, in favor of the opinion of the physical therapist who did the FCE (CLICNY657, 726-749).

48. In an attempt to evade the fact that no medical records showed that Plaintiff's medical condition had improved since the August 19, 2003 approval of continued benefits by Roberto Castellon (CLICNY103), by letter dated March 29, 2006, CIGNA upheld its termination

of LTD benefits by erroneously referring to the termination as a denial of benefits, and refusing to consider any of the medical evidence predating October 28, 2005 (CLICNY655-656).

49.  The only explanation CIGNA offered for rejecting the additional medical reports from Dr. Alexiades and Dr. Roach was a purported lack of "any clinical findings" (CLICNY656). However, Dr. Alexiades and Dr. Roach stated that the clinical findings that supported Plaintiff's limited functionality included: positive straight leg raises, numbness associated with back pain, weakness on walking on toes, back pain radiating down the leg, quadriceps weakness, and decreased patellar reflex (CLICNY684-697). Moreover, CIGNA failed to explain what clinical findings that had supported Plaintiff's entitlement to benefits for the last several years were either no longer present or had showed improvement since the January 2006 reports from Dr. Alexiades and Dr. Roach were consistent with the medical evidence submitted prior to the FCE, and showed that Plaintiff's level of functionality had actually gotten worse (CLICNY655-656, 684-698). CIGNA's rationale for terminating Plaintiff's benefits was Dr. Mendez' two sentence review, which was based on the conclusion of the FCE physical therapist, not the FCE data that limited Plaintiff to sitting for less than 2.5 hours during an 8 hour work day (CLICNY655-657, 726-749).

50.  On September 15, 2006, Plaintiff appealed with a report dated August 24, 2006 from Dr. Roach in which he concluded that Plaintiff continued to be totally disabled from his spinal stenosis, and required large doses of narcotics whose side effects were so severe that he lacked the ability to concentrate well enough to perform his work tasks (CLICNY641-646).

51.  On October 30, 2006, CIGNA paid Michael Weiss, who according to his own

web site specializes in hip and knee replacements,[5] to review some of Plaintiff's medical records, and summarized the claim by stating it was denied based on the conclusion from an FCE that Plaintiff could do sedentary work (CLICNY635-637).

52.   Because Dr. Taylor ignored, misrepresented and disregarded what Dr. Roach said concerning Plaintiff's inability to work, Dr. Roach realized it was futile to speak with Dr. Weiss (CLICNY631, 843).  Dr. Weiss stated that he saw "no further need to contact either Dr. Alexiades or Dr. Roach (CLICNY 633).

53.   CIGNA asked Weiss to review some of Plaintiff's medical records, which he listed (CLICNY632-633, 636, Tr. 72-73), and his entire four sentence analysis that concluded Plaintiff could do sedentary work based on the FCE, even though it limited Plaintiff to sitting for less than 2.5 hours during an 8 hour day, was:

> Upon review of the medical information, the restrictions and limitations precluding the claimant from sedentary work capacity are not supported in the documentation provided to me from 10/27/05 to present.  A functional capacity evaluation of 7/26/05 recommended sedentary work duties.  The claimant would be capable of sedentary duty, but would be restricted from prolonged sitting, in that he would require intermittent standing.  He would also be restricted to limited walking, not greater than one block.

(CLICNY632, 728, 734).

54.   Because Dr. Weiss stated that he saw "no further need to contact either Dr. Alexiades or Dr. Roach (CLICNY 633), CIGNA asked him to call Dr. Alexiades, but not Dr. Roach, because Dr. Roach made clear to Dr. Taylor that he did not support CIGNA's claim that Plaintiff could work (CLICNY634, 843; CIGNA's 56.1 Statement ¶54).

55.   Because his report was deemed inadequate, Dr. Weiss completed an "addendum" on November 22, 2006, in which he asserted that Dr. Roach failed to provide "objective physical

---

5 http://www.tririversortho.com/physician_detail.asp?id=3

findings" to support Plaintiff's inability to do sedentary work; however, Dr. Weiss failed to explain what objective physical findings supported his conclusion that Plaintiff's condition improved so he could perform sedentary work (Tr. 82; CLICNY634). Dr. Weiss failed to explain why he rejected (a) records from Dr. McCance, Dr. Snow, Dr. Farmer, Dr. Scelsa, Dr. Roach, and Dr. Alexiades, (b) the three lumbar, right shoulder, left shoulder, and right hip MRIs, (c) the right hip x-rays, (d) the functional assessments of Drs. Alexiades and Roach, (e) the operative reports, (f) Dr. Trotter's IME, (g) Dr. Roach's letters to Dr. Taylor, and (h) the FCE test data, all in favor of the opinion of the FCE physical therapist (CLICNY 631-633). Dr. Weiss failed to explain how Plaintiff could be capable of sedentary duty when the FCE limited Plaintiff to sitting for less than 2.5 hours a day (CLICNY 631-633). Dr. Weiss also failed to explain (a) what objective physical findings that supported CIGNA's prior opinion that Plaintiff was disabled, no longer existed, and (b) why Dr. Roach's objective physical findings that Plaintiff had back pain radiating down the leg, quadriceps weakness, decreased patellar reflex, and positive straight leg raises, failed to support his conclusion that Plaintiff was only capable of sitting for less than 2.5 hours a day (CLICNY631-634).

56.    By letter dated December 7, 2006, Medha Bharadwaj issued CIGNA's final decision that terminated Plaintiff's benefits on the grounds that his inability to do his regular occupation was no longer "clinically supported" (CLICNY629-630; Tr. 19-22, 24. Bharadwaj admitted that her December 7, 2006 decision concluding Plaintiff could work as a Wage and Salary Manager was the opposite of her January 14, 2003 conclusion that Plaintiff could not do so (Tr. 88-89; CLICNY105, 629-630). When asked what exam abnormalities that supported Plaintiff's claim on January 14, 2003 no longer supported his claim beyond December 7, 2006, Bharadwaj testified "I don't know" (Tr. 89-90). When asked what symptoms that supported

15

Plaintiff's claim on January 14, 2003 no longer supported his claim beyond December 7, 2006, Bharadwaj testified "I don't know" (Tr. 90). When Bharadwaj was asked what documents other than the FCE and Weiss peer review showed Plaintiff could now resume working , Bharadwaj testified that there were unspecified medical records in the file (Tr. 90).[6] However, after reviewing the medical records in the file that were submitted after January 14, 2003 and before December 7, 2006, Bharadwaj admitted that she could not identify any (Tr. 89, 98-99). Bharadwaj testified that in order to determine if a person was able to do sedentary work, she had to know the DOT physical demands for sedentary work, and compare those demands to the medical data (Tr. 57-58). However, despite admitting that shed has reviewed thousands of claims for CIGNA for over ten years, including hundreds of claims involving sedentary work, Bharadwaj testified that she did not know the physical demands of sedentary work or how many hours of sitting a day it required! (Tr. 35-36, 41-44, 46-50, 57-59). When asked how she could tell if a claimant could do sedentary work if she did not know how many hours of sitting it required, Bharadwaj testified, "I don't know" (Tr. 50, 55). Bharadwaj testified that she did not simply defer to the conclusion of the physical therapist who did the FCE, but made her own independent review to see if the test data supported the conclusion (Tr. 40, 50, 51). However, when asked what FCE test data supported Plaintiff's ability to work, Bharadwaj testified that she did not know (Tr. 51, 63). Nonetheless, Bharadwaj testified that "everything" in the FCE supported Plaintiff's ability to do sedentary work (Tr. 68), but when asked to point out

---

6  Bharadwaj testified that she could not tell from the Weiss peer review what records he believed supported Plaintiff's ability to do sedentary work (Tr. 77). Bharadwaj also testified that she did not know what Dr. Weiss meant by prolonged sitting or intermittent standing (Tr. 78). When asked how she could use her independent judgment to determine if Dr. Weiss's conclusion, that Plaintiff could do sedentary work, was valid if she did not what he meant by prolonged sitting or intermittent standing, Bharadwaj testified "I don't know" (Tr. 78, 79-80).

16

everything in the FCE data that did so, Bharadwaj testified "I don't know" and explicitly withdrew her statement that "everything" supported it (Tr. 69).  When asked in turn about each of the FCE test data findings to see if they supported Plaintiff's ability to do sedentary work, Bharadwaj repeatedly testified "I don't know" (Tr. 52, 53, 64-70).  When asked how she could use her independent judgment to determine if the FCE physical therapist's conclusion, that Plaintiff could do sedentary work, was correct since she did not know what data in the FCE supported Plaintiff's ability to do sedentary work, Bharadwaj testified that she did not know (Tr. 64).  **Bharadwaj admitted that if the DOT required the ability to sit for between 2.5 and 5.5 hours a day, then the FCE, which revealed Plaintiff could only sit between 0 and 2.5 hours day, would not support Plaintiff's ability to do sedentary work (Tr. 55-56).  Bharadwaj further admitted that if the DOT required sitting for more than 5.5 hours a day for sedentary work, then the FCE would not support Plaintiff's ability to do sedentary work (Tr. 56).**  Bharadwaj testified that she agreed with Dr Weiss' opinion by drawing her own conclusion regarding whether his opinion was correct (Tr. 34).  However, Bharadwaj failed to explain why she rejected six years of treatment records, operative reports, diagnostic tests, functional assessments, Dr. Trotter's report, and the objective FCE test data, in favor of the opinion of Dr. Weiss who merely adopted the conclusion of the FCE physical therapist, which contradicted her own FCE findings (CLICNY629-630).  This makes no sense if, as Bharadwaj testified, she gave equal weight to the opinions of Plaintiff's treating doctors along with Dr. Weiss (Tr. 31-32).  CIGNA purported to rely on the U.S. Department of Labor's standards for sedentary work (CLICNY379, 670, 671), yet CIGNA failed to explain where the DOT identifies any occupation that can be performed if a person is limited to sitting for less than 2.5 hours, as well as restricted from lifting and carrying any weight (CLICNY629-630).

    57.    Admit.

Dated: Jericho, NY
         August 8, 2008

                                      **LAW OFFICES OF JEFFREY DELOTT**

                        By:     _____
                                 Jeffrey Delott, Esq. (JD8688)

                                 Attorneys for Plaintiff
                                 366 North Broadway
                                 Suite 410
                                 Jericho, NY  11753
                                 (516) 939-2999