*Law Offices of Jeffrey Delott*
*366 North Broadway*
*Suite 410*
*Jericho, NY  11753*
*516-939-2999*

August 8, 2008

Gerard E. Lynch
United States District Court Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 910
New York, NY 10007

**Re: <u>Steven Alfano v. INA Life Insurance Company of New York,  07 civ 9661</u>**

Dear Judge Lynch:

     I represent the Plaintiff in the above referenced action.  Plaintiff's Memorandum of Law in Opposition to CIGNA's Summary Judgment Motion is a little over the 25 page limit of the Court's motion practice rules as the conclusion sentence was extended to page 26.

     Rather than taking the Court's time to rule upon a request by Plaintiff to address the *de minimis* extension, your law clerk suggested I note the situation and ask that you accept the brief as is.

Respectfully yours,
**LAW OFFICES OF JEFFREY DELOTT**

By:    _____

Jeffrey Delott, Esq.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**STEVEN ALFANO,**

                    Plaintiff,

    - against -


**INA LIFE INSURANCE COMPANY OF NEW YORK, LONG TERM DISABILITY INSURANCE PLAN FOR CORNELL UNIVERSITY MEDICAL COLLEGE, WEILL MEDICAL COLLEGE OF CORNELL UNIVERSITY RETIREMENT PLAN FOR FACULTY AND EXEMPT EMPLOYEES, CHILDREN'S TUITION SCHOLARSHIP PLAN, CORNELL UNIVERSITY GROUP LIFE INSURANCE PLAN, CORNELL UNIVERSITY MEDICAL COLLEGE HEALTH INSURANCE PLAN and CORNELL UNIVERSITY MEDICAL COLLEGE DENTAL INSURANCE PLAN,**

                    Defendants.

**07 Civ. 9661 (GEL)**


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO CIGNA'S MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**


**LAW OFFICES OF JEFFREY DELOTT**
Attorneys for Plaintiff
366 North Broadway
Suite 410
Jericho, NY  11753
(516) 939-2999

# TABLE OF CONTENTS

Page

Table of Authorities..................................................................................................................... ii

PRELIMINARY STATEMENT …………………………………………………………………..1

ARGUMENT..................................................................................…..........................................1

I.    CIGNA BASED ITS ENTIRE DECISION ON A PHYSICAL THERAPIST'S
      ERRONEOUS CONCLUSION …...........................................................................................1

II.   CIGNA FAILED TO IDENTIFY ANY EVIDENCE SHOWING THAT PLANTIFF HAD
      REGAINED THE ABILITY TO DO SEDENTARY WORK…………………………...... 8

III.  CIGNA KNOWS THE DOT REQUIRES THAT SUMMARY JUDGMENT BE
      GRANTED IN PLAINTIFF'S FAVOR……...………………………………………………13

IV.   THE COURT'S REVIEW SHOULD INCLUDE CIGNA'S DEPOSITION  …..…………20

V.    CIGNA APPLIED THE WRONG BURDEN OF PROOF ……………………………………24

CONCLUSION ……………..….......…………………………………….....………….....................26

TABLE OF AUTHORITIES

**Cases**

*Adams v. Prudential Ins. Co.*, 280 F.Supp.2d 731, 740 (N.D.Ohio 2003) ……………………………… 23

*Alexander v. Winthrop, Stimson LTD Coverage*, 497 F.Supp.2d 429 (E.D.N.Y. 2007)……..…………7, 23

*Black & Decker v. Nord,* 538 U.S. 822, 831 (2003) ………………………………………………………7

*Burch v. Bowen*, 1987 WL 9193 (S.D.N.Y. Mar 30, 1987)…………….……....................................……17

*Connors v. Connecticut General Life Ins. Co.,* 272 F.3d 127 (2d Cir 2001) …………………….…. 9, 15

*Dawes v. First Unum*, 851 F.Supp. 118, 122 (S.D.N.Y. 1994) …………………………………………19

*Demirovic v. Building Service 32 B-J Pension Fund,* 467 F.Supp.2d 208, 212 (2d Cir. 2006) ……………….. 24

*Dirnberger v. Unum*, 246 F.Supp.2d 927 (W.D.Tenn. 2002) …………………………………………23

*Glenn v. MetLife*, 128 S.Ct. 2343 (2008) …………………………………………………………… 2

*Godfrey v. BellSouth*, 89 F.3d 755, 758-59 (11th Cir. 1996) …………………………………………23

*Gomez v. Sullivan*, 1989 WL 160559 (E.D.N.Y. Dec 21, 1989)………………………………………....17

*Keiser v. First Unum,* 2005 WL 1349856 at *11-12 (S.D.N.Y. June 8, 2005)……………………………22

*Keppler v. Heckler*, 587 F.Supp. 1319 (S.D.N.Y. 1984) ……………………………….........................17

*Kinstler v. First Reliance Standard,*181 F.3d 243, 252-53 (2d Cir. 1999) ………………………………19

*Krizek v. CIGNA,* 2005 WL 928637 (N.D.N.Y. Mar. 22, 2005)……………………………………………15

*Lijoj v. Continental Casualty,* 2006 WL 322229 at *10 (E.D.N.Y. Fe, 13, 2006) ………………22, 23, 24

*Locher v. Unum Life Ins. Co. of Am.,* 389 F.3d 288, 295 (2d Cir.2004) …………………………………22, 24

*Mazzella v. Secretary of U.S. Dept. of HHS*, 588 F.Supp. 603 (S.D.N.Y. 1984)…………………….…...17

*McOsker v. Paul Revere Life, Ins. Co.,* 279 F.3d 586 (8th Cir. 2002) ……………………….………...……10

*Miller v. United Welfare Fund*, 72 F.3d 1066, 1070 (2d Cir.1995) …………………………… 20, 21, 23

*Myers v. Hercules Inc.,*253 F.3d. 761, 767-767 (4th Cir. 2001) ……………………………………………14

*Nagele v. Electronic Data Systems Corp.,* 193 F.R.D. 94, 103 (W.D.N.Y. 2000) ……………………21, 23

*O'Grady v. Heckler*, 588 F.Supp. 850 (E.D.N.Y.1984)……………………………………………….……17

*Paese v. Hartford Life and Accident Ins. Co,* 2004 WL 764760,
     *vacated in part on other grounds*, 449 F.3d 435 (2d Cir. 2006)……………………….…………7

*Parker v. Sullivan*, 1992 WL 77552 (S.D.N.Y. Apr. 8, 1992) ………………………………………....17

*Rappa v. Connecticut General Life Ins. Co*., 2007 WL 4373949 (E.D.N.Y. Dec. 11, 2007)….…... 9–13, 25

*Reittinger v.Verizon Communications Inc.,* 2006 WL 3327676 at *2 (N.D.N.Y. Nov. 15, 2006) ………22

*Soron* v. *Liberty Life Assurance Co. of Boston,* 2005 WL 1173076 (N.D.N.Y. May 2, 2005)………...……12

*Troy v. Unum Life Ins. Co. of America*, 2006 WL 846355 (S.D.N.Y. Mar 31, 2006) ………………..23, 24

*Troupe v. Heckler*, 618 F.Supp. 248 (S.D.N.Y. 1985) …………………………………………………17

*Ubides v. Secretary of Dept. of HHS,* 1986 WL 978 (S.D.N.Y. Jan 15, 1986)…………………..………18

*Visser v. Heckler*, 1986 WL 2205 (S.D.N.Y. Feb 10, 1986) ………………………………………..…….17

**Other**

**Dictionary of Occupational Titles ("DOT")** …………………………………………………*passim*

## PRELIMINARY STATEMENT

CIGNA denies and terminates so many disability claims in bad faith that last month ABC News' "Good Morning America" did an expose on CIGNA's unethical practices. http://abcnews.go.com/GMA/story?id=5257491&page=1.  The administrative record in this case and CIGNA's papers show that this is yet another instance where CIGNA terminated a disability claim without any justifiable basis for doing so.

CIGNA's papers not only fail to establish a prima facie case for its summary judgment motion, but also show that there is no genuine issue of material fact to defeat Plaintiff's summary judgment motion.  As a substantive matter, CIGNA admitted that (a) it relied on the opinion of the Functional Capacity Evaluation ("FCE") physical therapist and ignored the actual FCE test data; (b) that it based its decision on the Dictionary of Titles (the "DOT"), yet it failed to the DOT's standards; and (c) no evidence showed Plaintiff's medical condition had improved between the time it approved and subsequently terminated Plaintiff's long term disability ("LTD") benefits.  As a procedural matter, CIGNA's papers show that it failed to apply the correct burden of proof in evaluating the evidence.

## ARGUMENT

### I.    CIGNA BASED ITS ENTIRE DECISION ON A PHYSICAL THERAPIST'S ERRONEOUS CONCLUSION

This entire case revolves around the opinion of Jacqueline Genovese, the physical therapist that CIGNA paid to perform Plaintiff's FCE.  Plaintiff's moving papers showed that the FCE test data corroborated the conclusions of his treating doctors, the Social Security

Administration (the "SSA")[1] and CIGNA's Dr. Trotter, that Plaintiff was unable to meet the physical demands of sedentary work.  On the other hand, CIGNA's moving papers show that it disregarded the FCE test data (as well as the medical evidence) in favor of the vocational opinion of Ms. Genovese, which was contradicted by her own findings and observations, and who is not qualified to render a vocational opinion.

CIGNA stated that the purpose of the FCE was to determine Plaintiff's functional capacities (Def. br. p. 12).  However, CIGNA did not need the FCE to determine Plaintiff's functional capacities because CIGNA already had given its Physical Abilities Assessment ("PAA") form to Dr. Roach to assess Plaintiff's functional capacities.  If the PAA was an inadequate mechanism to establish Plaintiff's functionality, then why did CIGNA require Dr. Roach to complete it?  The answer reveals CIGNA's bad faith.  If the PAA had showed that Plaintiff could sit for 6 hours a day, then CIGNA still would not have required him to attend the FCE.  CIGNA duplicitously implies that the FCE was needed because there were no "clinically measurable tests" to help determine Plaintiff's functionality (Def. br. p. 12).  However, if that were true, then CIGNA failed to explain (a) what clinically measurable tests supported Plaintiff's functionality before CIGNA terminated his LTD benefits in 2005, and (b) how it found Plaintiff disabled prior to 2005 without an FCE.

The FCE test results completely support Plaintiff's inability to do sedentary work.  The FCE was 24 pages long.  Incredibly, CIGNA failed to refer to a single factual finding contained in the 24 page FCE report that allegedly shows Plaintiff can do sedentary work.

---

1  The Supreme Court just ruled that an insurance company's failure to reconcile its own conclusion, that an LTD claimant could work, with the SSA's conclusion that the claimant could not, was a basis for reversing a district court's judgment in favor of the insurer even under a deferential arbitrary and capricious standard of review.  *Glenn v. MetLife*, 128 S.Ct. 2343 (2008).

The only thing in the 24 page FCE report that CIGNA refers to is Ms. Genovese's conclusion that Plaintiff could do sedentary work "for an 8 hour period according to NY Department of Labor standards" (Def. br. pp. 5, 12).  Ms. Genovese is not a vocational consultant and is unqualified to conclude that Plaintiff can do sedentary work according to NY Department of Labor Standards.[2]  CIGNA failed to cite any evidence showing that Ms. Genovese even knew what the physical demands are for sedentary work.  CIGNA never cited any FCE clinically measureable test data that supposedly supports Ms. Genovese's conclusion. As Plaintiff's moving papers revealed, Medha Bharadwaj, who reviewed thousands of disability claims for CIGNA and who issued the final decision terminating Plaintiff's LTD benefits, admitted that she did not know what the physical demands are for sedentary work (Tr. 35-36, 41-44, 46-50, 57-59).[3]  Furthermore, CIGNA failed to ask any vocational consultant if Plaintiff could do sedentary work if limited to sitting for less than 2.5 hours a day as revealed by the FCE.

CIGNA disregarded the functionality evidence that Dr. Roach provided in the PAA that CIGNA demanded he complete because CIGNA insisted on having an FCE for "clinically measureable tests".  The FCE corroborated Dr. Roach's PAA, as well as Dr. Alexiades' functional assessment.  Both the FCE test data and Dr. Roach's and Dr. Alexiades' functional evaluations provided that Plaintiff was limited to sitting for less than 2.5 hours a day (CLICNY301, 308, 688, 695, 728, 734, 843, 961, 968, 975).  Incredibly, CIGNA then ignored all 23 pages of FCE's clinically measureable tests and instead relied on Ms. Genovese' vocational conclusion - that the FCE test results showed Plaintiff had a sedentary functional capacity – as an excuse to terminate Plaintiff's LTD benefits.

---

2  CIGNA failed to state if the New York Department of Labor standard is different than the DOT standard.  Any difference would be irrelevant because the FCE used DOT definitions and physical demands standards.

Plaintiff appealed the termination of his LTD benefits by submitting reports from his treating doctors that assessed his functional capacity and summarized the medical findings supporting their assessments and a new lumbar MRI (CLICNY678-698).  However, CIGNA claimed that none of the evidence that Plaintiff submitted on appeal sufficed to change the "conclusion" of the FCE (Def. br. 13).  However, there was no need for Plaintiff to have submitted any evidence to change the "conclusion" of the FCE because the vocational conclusion of Ms. Genovese was not even supported by her own FCE test findings.  To the contrary, as Plaintiff's moving papers showed, Medha Bharadwaj was unable to find a single clinically measureable test finding in the 24 page FCE report that supposedly supported the conclusion that Plaintiff could do sedentary work (Tr. 52, 53, 64-70).  When asked what data in the FCE allegedly showed that Plaintiff could do sedentary work, Ms. Bharadwaj testified, "I don't know." (Tr. 63).

CIGNA's medical reviews exhibited continued reliance on Ms. Genovese's erroneous conclusion instead of the actual FCE test findings.  CIGNA argued that the reviews by its nurse Kay Rhodes, and a doctor Mendez (CIGNA failed to identify Mendez's first name or his credentials) showed that the FCE conclusion of Ms. Genovese was correct (Def. br. p. 13).  CIGNA failed to identify any clinically measureable test supporting Ms. Genovese's conclusion.

Rhodes hypocritically criticized the additional medical evidence that Plaintiff submitted on appeal for failing to mention "the <u>findings</u> of the FCE in correlation" to the Plaintiff's evidence (CLICNY34)(emphasis added).  Rhodes and everyone else at CIGNA failed to identify a single finding of the FCE that allegedly supported the conclusion that Plaintiff could do sedentary work.  Ironically, Rhodes rejected the reports of Drs. Roach and Alexiades because

---

3  "Tr." refers to pages of Medha Bharadwaj's deposition transcript, which is attached to Plaintiff's 56.1 Statement.

they purportedly contained "vague responses," yet not only did the FCE data corroborate their reports, but their provided the very same type of information requested by CIGNA's PAA form. Similarly, Rhodes rejected Plaintiff's medical reports because they supposedly lacked range of motion measurements and neurological deficits, but Rhodes failed to state what FCE range of motion measurements or neurological findings supported Ms. Genovese's conclusion.  Rhodes rejected Dr. Roach's and Dr. Alexiades' conclusions because they were supposedly inconsistent with the FCE.  In doing so, Rhodes ignored that Dr. Roach and Dr. Alexiades both concluded that Plaintiff was limited to sitting for only 2 hours during an 8 hour day, which is exactly what the FCE revealed (CLICNY301, 308, 688, 695, 728, 734, 843, 961, 968, 975).

Dr. Mendez' review was just as absurd as Rhodes'.  Mendez's entire analysis was:

FCE reviewed along with job requirements.  Validity measures met.  Exam concluded Mr. Alfano was able to perform his sedentary – level work.  So original decision remains supported.

(CLICNY657).  Dr. Mendez failed to identify any FCE clinically measureable test finding that showed Plaintiff could do sedentary work.  Instead, Mendez focused solely on Ms. Genovese's conclusion that Plaintiff could do sedentary work as a basis for his conclusion that the termination decision was supported.  Dr. Mendez failed to explain why he rejected every piece of medical evidence, including the MRIs, Dr. Alexiades' and Roach's January 2006 reports and treatment records, the operative reports, the prescribed pain medication, Plaintiff's symptoms, the conclusion of the SSA, the Trotter report, as well as the clinically measureable FCE tests, all in favor of Ms. Genovese's vocational conclusion (CLICNY657, 726-749).

If not confirmed by CIGNA's own claim file, it is hard to conceive of a more bumbling analysis of the medical evidence, unless of course CIGNA was intentionally trying to concoct an

excuse to terminate Plaintiff's LTD benefits that it knew was unsupportable.  Based on the

Rhodes and Mendez reviews, CIGNA conceded that Naomi Landis decided to uphold the

termination of Plaintiff's LTD benefits because there were no "clinical findings that would alter

the functional abilities demonstrated in the FCE" (Def. br. p. 13).  There was no reason why

Plaintiff would want to alter the functional abilities demonstrated in the FCE because the FCE

demonstrated that Plaintiff could not even sit for 2.5 hours a day, which CIGNA admitted is the

major physical demand of sedentary work (Tr. 44, 46).

For his final appeal, Plaintiff submitted a report from Dr. Roach that reiterated Plaintiff

remained under his care and that he "would be happy to provide any other information required,

but I see no reason why this is necessary – there is absolutely no doubt of his condition and his

disability." (CLICNY641-646).  For its final medical review, CIGNA paid Dr. Michael Weiss to

look at some of Plaintiff's medical records.  CIGNA's moving papers show that the Weiss peer

review perpetuated the erroneous reliance on Ms. Genovese's conclusion.

Weiss' entire analysis was only four sentences:

Upon review of the medical information, the restrictions and limitations precluding the
claimant from sedentary work capacity are not supported in the documentation provided
to me from 10/27/05 to present.  A functional capacity evaluation of 7/26/05
recommended sedentary work duties.  The claimant would be capable of sedentary duty,
but would be restricted from prolonged sitting, in that he would require intermittent
standing.  He would also be restricted to limited walking, not greater than one block."

(CLICNY632).  As CIGNA's papers show, Dr. Weiss relied on Ms. Genovese's erroneous

conclusion to the exclusion of all of the FCE test data.  Dr. Weiss failed to explain why he

rejected (a) records from Dr. McCance, Dr. Snow, Dr. Farmer, Dr. Scelsa, Dr. Roach, and Dr.

Alexiades, (b) the three lumbar, right shoulder, left shoulder, and right hip MRIs, (c) the right

hip x-rays, (d) the functional assessments of Drs. Alexiades and Roach, (e) the operative reports,

(f) Dr. Trotter's IME, (g) Dr. Roach's letters to Dr. Taylor, (h) Nurse Haley's review, (i) the SSA decision, and (j) the FCE test data, all in favor of the opinion of the FCE physical therapist (CLICNY631-633). Dr. Weiss failed to explain how Plaintiff could do sedentary duty when the clinically measureable FCE tests and Dr. Roach and Dr. Alexiades limited Plaintiff to sitting for less than 2.5 hours a day (CLICNY631-633).

CIGNA argued that Medha Bharadwaj made the final decision terminating Plaintiff's LTD benefits "based on previous documentation received by CLICNY and Dr. Weiss' report" (Def. br. p. 14). However, Bharadwaj admitted that she was unable to identify a single document other than the FCE and Weiss review that showed Plaintiff could do sedentary work (Tr. 99). CIGNA's excuse for rejecting the opinions of Dr. Alexiades and Dr. Roach, and his other treating physicians was that *Black & Decker v. Nord,* 538 U.S. 822, 831 (2003) held CIGNA was not required to defer to the opinions of Plaintiff's treating doctors. However, the Second Circuit stated that while under *Nord* no special deference is <u>required</u> for treating doctors, a district court engaging in a *de novo* review can chose to give more weight to a treating physician's conclusions if the opinions are reliable and probative. *Paese v. Hartford Life Accident Ins. Co.,* 449 F.3d 435, 442 (2d Cir. 2006). Similarly, *Alexander v. Winthrop, Stimson, Putnam and Roberts Long Term Disability Coverage*, 497 F.Supp.2d 429, 438 (E.D.N.Y. 2007) pointed out that *Nord* does not *prohibit* reviewing courts from ascribing greater weight to the opinions of treating physicians than to the opinions of non-treating physicians. *Alexander,* 497 F.Supp.2d at 438 (citing *Nord,* 538 U.S. at 834) explained that that while *Nord* "declined to import the treating physician rule into the ERISA context, the Supreme Court has cautioned that "[p]lan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a

treating physician." It is absurd to argue that a preponderance of evidence, or even substantial evidence, supported Bharadwaj's conclusion that Plaintiff could resume sedentary work.

II.    **CIGNA FAILED TO IDENTIFY ANY EVIDENCE SHOWING THAT PLANTIFF HAD REGAINED THE ABILITY TO DO SEDENTARY WORK**

It is undisputed that Plaintiff only had to show that he was disabled from his regular occupation to receive benefits under the LTD Plan (CLICNY168, 169). It is undisputed that on January 14, 2003, Medha Bharadwaj concluded that Plaintiff was disabled from his regular occupation because his symptoms, abnormal exam and tests findings[4] supported ongoing severe multilevel spinal stenosis and nerve root impingement severe enough to preclude performing his sedentary work duties (CLICNY105, Def. br. 11; Tr. 89). It is undisputed that on December 7, 2006, Bharadwaj issued CIGNA's final decision finding that Plaintiff was no longer disabled from his regular occupation (CLICNY629-630; Tr. 88). In doing so, CIGNA failed to answer what evidence showed that Plaintiff's condition improved between the time Bharadwaj approved and then terminated Plaintiff's benefits LTD benefits on the ground that he had regained the ability to perform all of the duties of his regular occupation.[5] CIGNA also failed to identify any

---

4    A June 12, 2000 lumbar MRI revealed that Plaintiff had moderate to severe spondylosis and spinal stenosis at the L5-S1 level, with mild impingement of the left L5 nerve root (CLICNY283). On July 20, 2000, an EMG indicated Plaintiff had either an L5-S1 radiculopathy or polyneuropathy (CLICNY284, 485-489). On September 14, 2004, Plaintiff had x-rays of his cervical spine, which revealed degenerative disc disease, disc space narrowing and osteophytes at the C6-7 level (CLICNY963). An October 12, 2001 MRI of Plaintiff's right shoulder revealed tendonosis, hypertrophic changes, bursitis, and a labral tear (CLICNY132). On November 11, 2001, Plaintiff had a left shoulder MRI, which revealed hypertrophic acromion changes, mild inflammation, and abnormal supraspinatus tendon (CLICNY130). On April 30, 2002, a right hip MRI revealed cartilage loss, dysplasia, torn and degenerated labrum, while hip x-rays revealed pelvic asymmetry, and bony and chondral lesions (CLICNY123-125).

5    CIGNA failed to explain what clinical evidence supported Plaintiff's disability before October 27, 2005, but not after that date (CLICNY629-630; Tr. 99). CIGNA failed to explain why it rejected six years of treatment records, operative reports, diagnostic tests, functional assessments, Dr. Trotter's report, the objective FCE test data, and SSA's decision in favor of Ms. Genovese's opinion, which contradicted her own FCE test findings (CLICNY629-630). The SSA determined that Plaintiff was he unable to perform his past work and any other type of work as well (CLICNY266), which is significant because the SSA uses the same DOT standards. The LTD Plan required Plaintiff

evidence that showed Plaintiff's condition improved between the time that Robert Castellon approved Plaintiff's continued LTD benefits on August 19, 2003 (CLICNY103) and CIGNA's final decision by Bharadwaj on December 7, 2006(CLICNY629-630; Tr. 88).

This is not the first case where CIGNA has reversed its prior decision that a claimant was disabled in the absence of any evidence that the claimant's medical condition had changed.  This is the same issue that the Second Circuit in *Connors v. Connecticut Gen. Life Ins. Co.*, 272 F.3d 127 (2d Cir. 2001), and the district court in *Rappa v. Connecticut General Life Ins. Co.*, 2007 WL 4373949 (E.D.N.Y. Dec 11, 2007) addressed, and in both cases CIGNA just happened to be the defendant.  In both *Connors* and *Rappa* the courts found that CIGNA failed to explain how a claimant that CIGNA found disabled subsequently was no longer disabled where no medical evidence showed that the claimant's medical condition had improved.  In *Connors,* 272 F.3d at 136, the Second Circuit ruled that CIGNA erred in reversing its position that the claimant was disabled because there was "no significant change in Connors's physical condition".  Despite the admonition by the Second Circuit, CIGNA has refused to discontinue its improper tactics.

Last December, in *Rappa*, 2007 WL 4373949 at *10, the district court reiterated that CIGNA cannot reverse its decision that a claimant is disabled under an LTD Plan without evidence showing that the claimant's medical condition improved:

> Accordingly, despite CGLIC's position that Rappa has improved, there is no sound basis in the record to conclude that Rappa's back condition, which CGLIC originally found to be disabling with respect to his prior occupation, has in fact improved.  Decisions to terminate benefits in the absence of a change in condition have been held to have been arbitrary and capricious.  *See Connors v. Connecticut Gen.*

---

to apply for Social Security Disability ("SSD") benefits; otherwise, the LTD Plan would deduct the estimated amount of the SSD benefits (Plaintiff's 56.1 Statement Ex. A p. 9; Answer ¶27; CLICNY514, 601).  CIGNA refused to explain why it accepted the SSA decision without question in order to reduce Plaintiff's LTD benefits by the amount of the SSD benefits (CLICNY173-185, 217-228, 231; Answer ¶33); but rejected the SSA decision without question when it decided to terminate Plaintiff's LTD benefits (CLICNY706-710).

*Life Ins. Co.,* 272 F.3d 127, 136 (2d Cir.2001)(a "reversal in policy preceded by no significant change in [plaintiff's] physical condition" is reason to accord less weight to the defendant's evidence); *McOsker v. Paul Revere Life Ins. Co.,* 279 F.3d 586, 589 (8th Cir.2002)("[U]nless information available to an insurer alters in some significant way, the previous payment of benefits is a circumstance that must weigh against the propriety of an insurer's decision to discontinue those payments."). Therefore, the TSA's conclusion that Rappa can do certain sedentary jobs because he can sit for up to 30 minutes at a time does not provide CGLIC with a sufficient basis on which to deny Rappa's benefits.

Significantly, *Rappa* reviewed CIGNA's decision under a deferential arbitrary and capricious standard.[6]

The evidence that Plaintiff submitted from Dr. Roach and Dr. Alexiades showed that there was no functional improvement. On February 12, 2002, Dr. Roach concluded Plaintiff (a) must lie down .5 – 2 hours, three times, during an 8 hour work day, and (b) was limited to sitting only two hours in 8 hour work day (CLICNY304-310). On October 20, 2004, Dr. Roach concluded, among other things, that Plaintiff was limited to sitting only occasionally, which was less than 2.5 hours during an 8 hour day (CLICNY968-971, 975). Furthermore, on November 30, 2004, Dr. Roach said Plaintiff had a class 5 physical impairment, which is a severe limitation of functional capacity; incapable of even minimal sedentary activity (CLICNY961). Finally, on January 6, 2006, Dr. Roach concluded that Plaintiff (a) had to lie down several times a day, sometimes hourly, and for up to several hours, (b)was limited to sitting for a total of 2 hours during an 8 hour work day, (c) was limited to standing and walking for less than 1 hour, during an 8 hour work day, and (d) was limited to lifting and carrying between 0 and 5 pounds and then

---

6   The court's ultimate conclusion in *Rappa*, 2007 WL 4373949 at *12, was clear:

> In short, the evidence relied upon by CGLIC (skewed readings of the reports of Drs. Vergara and Fisk, Kern's response to CGLIC's questions, and the FCA and TSA) is, in light of the opinions of Rappa's examining physicians and the lack of evidence that Rappa's condition has improved, insubstantial. Because CGLIC's decisions to terminate Rappa's benefits and then deny their reinstatement were not based upon substantial evidence, they were arbitrary and capricious.

only on an occasional basis during an 8 hour work day (CLICNY691-697, Answer ¶ 134). These reports show that there was no improvement in Plaintiff's medical condition.  Dr. Roach even explained to CIGNA's Dr. Taylor why the clinical findings showed Plaintiff remained unable to work full time (CLICNY843).

Dr. Alexiades' records also show that Plaintiff's condition did not change.  On February 7, 2002, Dr. Alexiades diagnosed Plaintiff with spondylosis, stenosis and radiculopathy, and concluded that Plaintiff (a) must lie down .5 – 2 hours, two or three times, during an 8 hour work day, and (b) was limited to sitting only two hours in 8 hour work day (CLICNY297-303).  On July 12, 2002, Dr. Alexiades concluded that Plaintiff (a) had to lie down 1.5 to 2 hours a day, (b) could not sit, stand or walk for prolonged time, (c) could not lift or carry more than 5 pounds, (d) had no change in condition since June 5, 2000, and (e) remained totally disabled (CLICNY253-254).  On January 11, 2006, Dr. Alexiades concluded Plaintiff (a) had to lie down for .5 to 2 hours at a time two or three times during the day, (b) was limited to sitting for a total of 2 hours during an 8 hour work day, was limited to standing and walking for less than 1.5 hours during an 8 hour work day, and (d) was limited to lifting and carrying between 0 and 5 pounds and then only on an occasional basis (CLICNY684-690, Answer ¶ 133).  It is noteworthy that Dr. Alexiades' conclusions were very similar to those of Dr. Roach.

The diagnostic tests also show that Plaintiff's condition did not improve.  First of all, the fact that Plaintiff's medical records show that his condition remained stable is very telling because it should have improved after stopping the physical demands of work.  Nonetheless, the diagnostic evidence shows that Plaintiff's condition actually got worse.  While Plaintiff's August 18, 2001 MRI revealed that only the thecal sac, which encloses the nerve roots, was being

11

impinged at the L5-S1 level, Plaintiff's July 8, 2005 lumbar MRI revealed that there was a "mass effect upon thecal sac and S1 nerve roots" (CLICNY698). Furthermore, the "clinically measureable" FCE test data showed that Plaintiff's condition had not improved. Consistent with the PAA's that Dr. Alexiades and Dr. Roach completed, the FCE revealed that Plaintiff could not even sit for 2.5 hours a day (CLICNY726, 734).

Despite the fact that no medical test or clinical finding showed that Plaintiff's condition had improved, CIGNA concluded Plaintiff could resume sedentary work. Dr. Taylor failed to cite a single piece of medical evidence that indicated Plaintiff's medical condition had improved, and failed to explain why the same medical evidence that CIGNA found had supported the approval of Plaintiff's claim no longer supported it (CLICNY885-886). Weiss also failed to identify any medical test or clinical finding showing a change in Plaintiff's condition (CLICNY631-634).[7] The only two documents that Bharadwaj identified as supporting CIGNA's final decision to terminate Plaintiff's LTD benefits on the grounds that his condition had improved so he could resume his sedentary work were the FCE and the Weiss peer review, which depended entirely on the FCE. However, Ms. Bharadwaj admitted that she could not identify a single fact from the 24 pages of FCE test data that showed Plaintiff could do sedentary work (Tr. 52, 53, 64-70). Bharadwaj relied on the Weiss peer review to terminate Plaintiff's LTD benefits. However, Bharadwaj never bothered to inquire whether any of the medical

_____

7  *Rappa*, 2007 WL 4373949 at *11, ruled that opinions, like those of Dr. Weiss and Dr. Taylor, cannot be relied upon in the face of substantial contradictory evidence from treating and examining physicians because the former are not based on any interaction with Plaintiff, but rather merely on review of the paper record. *Rappa* also criticized reports like the Weiss peer review where he did not prepare his own independent report, but was merely given specific questions by CIGNA, and in answering those questions failed to rebut the findings of Plaintiff's treating physicians, all of whom stated that Plaintiff is permanently disabled and could not return to work. *See also, Soron* v. *Liberty Life Assurance Co. of Boston,* No. 5:02CV1514, 2005 WL 1173076, at *12 (N.D.N.Y. May 2, 2005) (discussing the logically superior probative value of reports prepared by treating physicians as compared to the lesser value of those prepared by non-examining reviewers).

findings that she relied on when approving Plaintiff's LTD benefits no longer existed or showed improvement when she terminated those benefits.

As the district court ruled against CIGNA in *Rappa,* which was reviewed under the deferential arbitrary and capricious standard, it is clear that the Court should rule against CIGNA here under non-deferential *de novo* review, for failing to identify any medical records that show a significant change in Plaintiff's condition.

## III.   CIGNA KNOWS THE DOT REQUIRES THAT SUMMARY JUDGMENT BE GRANTED IN PLAINTIFF'S FAVOR

Plaintiff's moving papers showed that he was unable to meet the physical demands of sedentary work as defined by the DOT.  On the other hand, CIGNA's moving papers show that it disregarded the DOT standards even though explicitly conceding that they applied.

The basic vocational facts are not in dispute.  It is undisputed that Plaintiff's regular occupation was sedentary (Def. br. p. 1).[8]  It is also undisputed that CIGNA used "the sedentary physical demand level as outlined by the U.S. Department of Labor's Dictionary of Occupational Titles" to evaluate Plaintiff's ability to work (CLICNY379).  The FCE used the physical demand categories from the DOT (CLICNY726).  Bharadwaj testified that CIGNA uses the definitions from the DOT to determine the physical demands of sedentary work (Tr. 41-42).  Nor is it disputed that in order to determine if a claimant could perform all the material duties of his

---

8  CIGNA noted that it received two job descriptions: one from March 1999 for a Wage and Salary Manager; and the other from December 2000 for a Manager, Compensation" (Def. br. 15-16).  It is not disputed that both positions are sedentary.  In fact, the latter makes clear that "Most work performed sitting at desk.  Must be able to sit for extended periods" (CLICNY273, 479), which indicates that unlike most sedentary positions that require a person to sit for at least 6 hours a day, Plaintiff's position required him to sit for even more than 6 hours.

regular occupation CIGNA had to compare that occupation's physical demands with the claimant's functional limitations (Tr. 57-58).[9]

On October 20, 2004, nearly two years after finding that Plaintiff was unable to do his regular occupation, CIGNA asked Dr. Roach to complete CIGNA's PAA form (Def. br. p. 4). Dr. Roach's first finding was that Plaintiff was limited to sitting only occasionally, which the PAA, using the DOT standard, defined as less than 2.5 hours during an 8 hour day (Def. br. p. 4; CLICNY968).[10] Nevertheless, while the DOT requires the ability to sit for at least 6 hours during an 8 hour day for sedentary work,[11] CIGNA decided that an exploratory transferable skills analysis ("TSA") was needed (CLICNY80). To make matters even worse, CIGNA admitted that it was a mistake under the LTD Plan to consider Plaintiff's ability to work at any occupation other than his regular occupation (CLICNY168, 169). Because CIGNA knows that the DOT requires at least 6 hours of sitting to perform sedentary work CIGNA intentionally refused to compare the DOT's physical demands for sedentary work with Plaintiff's functional limitations. CIGNA failed to explain how Plaintiff could do his regular occupation, or any other sedentary occupation, if limited to sitting for less than 2.5 hours during an 8 hour day.

---

9  Nonetheless, Ms. Bharadwaj claimed that she did not know how many hours of sitting Plaintiff's sedentary regular occupation required, even though she had reviewed thousands of claims for CIGNA (Tr. 27, 35-36, 41-44, 46-50, 57-59).

10  If CIGNA were to argue that Plaintiff could stand and walk when not sitting, that argument would have to fail as a matter of law and fact. As a factual matter, it is illogical to assume that Plaintiff can engage in the more strenuous activities of standing and walking for as long as he can sit. The PAA stated that Plaintiff cannot sit, stand or walk for even 2.5 hours a day. Adding those three activities together does not even equal an 8 hour day. In *Myers v. Hercules Inc.,* 253 F.3d. 761, 767-767 (4th Cir. 2001), a case involving a claimant with a bad back, the court ruled that the LTD insurance claims administrator could not conclude from a physical capacities assessment form that a claimant could alternate between sitting and standing because the only reasonable interpretation was that if an occupation were limited to a particular physical activity then the claimant was limited to that activity for the number of hours listed on the form. Otherwise, the form would indicate that a claimant for could work for well in excess of an 8 hour work day. Similarly, it would be ludicrous to read Dr. Roach's PAA as permitting Plaintiff to work for up to 24 hours a day sitting, standing, walking, pushing, pulling, climbing and using foot controls.

CIGNA went out of its way to avoid mentioning the DOT's physical demands for sedentary work. CIGNA admits that on April 19, 2005, Dr. Roach concluded Plaintiff was incapable of doing the four sedentary occupations identified by the exploratory TSA because Plaintiff lacked the ability to sit (Def. br. p. 4). It was obvious to Dr. Roach that a person needs to be able to sit for more than 2.5 hours a day to do full time sedentary work. Illogically, CIGNA argued that it was inconsistent for Dr. Roach to say Plaintiff could not do full time sedentary work despite the fact he was only able to sit for between 0 and 2.5 hours during an 8 hour work day, and therefore a medical review was needed (Def. br. pp. 4-5). Dr. Roach told CIGNA's Dr. Taylor that Plaintiff could only work a total of two hours during an entire work day (CLICNY843). Therefore, Dr. Taylor rejected Dr. Roach's findings and conclusions, which raises the question of why did he bother contacting Dr. Roach at all (CLICNY885-886). In other words, if Dr. Roach had indicated that Plaintiff could do sedentary work, then Dr. Taylor would have accepted Dr. Roach's conclusion, but because Dr. Roach explained why Plaintiff could not work full time, Dr. Taylor rejected Dr. Roach's opinion, and insisted that Plaintiff attend an FCE in the hope that it would provide test data to terminate Plaintiff's LTD benefits. Unless he intended only to rely on the FCE test data, Dr. Taylor failed to explain why a physical therapist's opinion about Plaintiff's functionality would be more reliable than a treating doctor's functional assessment based upon his examinations of Plaintiff.

Because the clinically measureable FCE test data corroborated the opinion of Dr. Alexiades and Dr. Roach that Plaintiff could only sit 2 hours a day CIGNA was forced to ignore the FCE test results since they showed Plaintiff could not meet the DOT's physical demands for

---

11  CIGNA knows from both *Connors v. Connecticut General Life Ins. Co.,* 272 F.3d 127, 136 n. 5 (2d Cir 2001) and *Krizek v. CIGNA,* 2005 WL 928637 at *5 n. 5 (N.D.N.Y. Mar. 22, 2005), that "Sedentary work ... generally

sedentary work. Therefore, CIGNA argued that after Plaintiff "completed the various testing," Ms. Genovese concluded Plaintiff had a sedentary work capacity (Def. br. p. 5). In asserting that conclusion, CIGNA failed to refer to any results from "the various testing" that allegedly supported Ms. Genovese's conclusion. Either CIGNA negligently overlooked the fact that none of the clinically measureable FCE tests showed Plaintiff could do the DOT's physical demands for sedentary work, or CIGNA knew the FCE test data showed Plaintiff could not do sedentary work, so it fraudulently relied on Ms. Genovese's erroneous conclusion.

There are only two possibilities for CIGNA's failure to evaluate Plaintiff's ability to work by comparing the DOT physical demands for sedentary work to the functional assessments of Drs. Alexiades and Roach and the FCE test data. CIGNA's failure to make those comparisons could have been a grossly negligent failure to follow its own procedures. Alternatively, CIGNA's failure to make those comparisons was an intentional decision to terminate Plaintiff's benefits in bad faith. CIGNA's brief indicates that the latter is more the more likely alternative. CIGNA admitted that Plaintiff's sedentary job "involved mainly sitting" (Def. br. p. 18). CIGNA argues that Plaintiff can do his regular occupation because he does not have to sit for 8 hours continuously (Def. br. p. 18). CIGNA's argument reveals its bad faith.

Evidence that CIGNA fraudulently, *i.e.,* intentionally relied on Ms. Genovese's conclusion despite knowing that it was contradicted by the FCE test data, is the conspicuous manner in which CIGNA went out of its way to have its vocational consultant, Ginny Schmidt (and everyone else at CIGNA) avoid any reference to the number of hours a day that Plaintiff was capable of sitting. CIGNA and Schmidt state that they relied "on the <u>conclusions</u> of the FCE and the limitations of a sedentary occupation" (Def. br. p. 5)(emphasis added). However,

---

involves up to two hours of standing or walking and six hours of sitting in an eight-hour work day."

neither Schmidt nor CIGNA ever mention the fact that Plaintiff was limited to sitting for less

than 2.5 hours a day according to BOTH the FCE and Dr. Roach and Dr. Alexiades.  Similarly,

neither Schmidt nor CIGNA ever mention the fact that according to the DOT, a person must be

able to sit for more than 5.5 hours during an 8 hour work day to be able to sedentary work.

CIGNA's refusal to follow its own procedures by comparing Plaintiff's limitations with

the DOT physical demands for sedentary work shows that its justification for terminating

Plaintiff's benefits was knowingly wrong.  CIGNA spent nearly half of the argument section of

its moving brief discussing how it supposedly reviewed the vocational evidence correctly (Def.

br. 15-18).  CIGNA admitted that sitting is the primary requirement for sedentary work (Tr. 44,

46).  CIGNA's utter failure to mention either how many hours Plaintiff could sit during an 8

hour work day or how long Plaintiff could sit continuously is concrete evidence that it failed to

evaluate Plaintiff's claim properly or in good faith.  CIGNA's glaring omission is due to the fact

that it is beyond settled that according to the DOT sedentary work requires the ability to sit for at

least 6 hours a day, [12] and both Plaintiff's doctors and CIGNA's FCE test data provide that

---

12  It is well settled that the DOT defines sedentary work as the ability to sit for at least six (6) hours a day:

> that plaintiff could sit for only five hours per day further demonstrates that
> plaintiff is unable to perform the range of activities encompassed in the category
> of sedentary work.  The physical exertional requirements of jobs involving sedentary
> work are defined by the Secretary in accordance with the criteria set forth in the *Dictionary of Occupational
> Titles* published by the Department of Labor.  20 C.F.R. § 404.1567.  As the courts have explained:
> The *Dictionary of Occupational Titles,* which is a generally accepted guide in
> gauging employment capability in these cases, states that sedentary work implies
> a capacity to sit for *at least* 6 hours in an eight hour work day.

*Mazzella v. Secretary of U.S. Dept. of Health and Human Services,* 588 F.Supp. 603, 606-607 (S.D.N.Y. Mar 8,
1984)(citations omitted); *Keppler v. Heckler*, 587 F.Supp. 1319, 1323 (S.D.N.Y. 1984); *Troupe v. Heckler*, 618
F.Supp. 248, 253 (S.D.N.Y. 1985); *Burch v. Bowen*, 1987 WL 9193 at *7  (S.D.N.Y. Mar 30, 1987); *Parker v.
Sullivan*, 1992 WL 77552 at *5 (S.D.N.Y. Apr. 8, 1992); *Visser v. Heckler***,** 1986 WL 2205 at *5 (S.D.N.Y. Feb 10,
1986); *Gomez v. Sullivan*, 1989 WL 160559 at *2 (E.D.N.Y. Dec. 21, 1989)(adding "Courts have repeatedly held
that sedentary work requires sitting for at least six hours in an eight-hour day"); *O'Grady v. Heckler,* 588 F.Supp.
850, 855 (E.D.N.Y.1984)("The term 'sedentary' in the Social Security Regulations has the same meaning as it has in
*The Dictionary of Occupational Titles* .... That authority defines sedentary work to comprise a capacity to sit for a

Plaintiff cannot even sit for half that amount of time (CLICNY726, 734).

CIGNA terminated Plaintiff's benefits based on the FCE, which was performed "in accord with the U.S. Department of Labor Standards" (CLICNY670, 671). CIGNA purported to rely on the U.S. Department of Labor's standards for sedentary work (Tr. 41, 379, 670, 671), yet CIGNA failed to explain where the DOT identifies any occupation that can be performed if a person is limited to sitting for less than 2.5 hours, as well as restricted from lifting and carrying any weight (CLICNY629-630). Even though Ms. Bharadwaj testified that she has evaluated thousands of claims for CIGNA for over a decade, and that she used her independent judgment to determine if the FCE data and PAA supported Plaintiff's ability to do sedentary work, she testified that she did not know what the physical demands of sedentary work are (Tr. 35-36, 41-44, 46-50, 57-59). Therefore, Bharadwaj could not have compared the physical demands of Plaintiff's regular occupation with his physical limitations.

Nowhere in CIGNA's memorandum of law does it mention who compared Dr. Roach's or Dr. Alexiades' functional assessment, which said Plaintiff could only sit for 2 hours and lift 0 to 5 pounds, to the DOT's physical demands for sedentary work. Similarly, nowhere in CIGNA memorandum of law does it mention who compared the FCE findings, which said Plaintiff could sit only between 0 and 2.5 hours a day and lift 0 pounds, to the DOT's physical demands for sedentary work.

Comparing the PAA's of Dr Alexiades and Dr. Roach and the FCE measureable tests to the physical demands of Plaintiff's regular occupation shows that Plaintiff is entitled to summary judgment. Plaintiff's medical condition is so severe that CIGNA's FCE showed he could only

---

least six hours in an eight hour workday."); *Ubides v. Secretary of Dept. of HHS*, 1986 WL 978 at *6 (S.D.N.Y. Jan. 15, 1986).

18

sit for between 0 and 2.5 hours a day (CLICNY728, 734). **The FCE test results showed exactly what Dr. Roach and Dr. Alexiades had concluded;** *i.e.***, that Plaintiff could only sit on an occasional basis, between 1 and 33% of the time, which is equal to less than 2.5 hours during an 8 hour work day** (CLICNY301, 308, 688, 695, 728, 734, 843, 961, 968, 975). Plaintiff's medical condition certainly prevents him from standing and walking for more than he can sit as those activities are more strenuous than sitting. That is precisely why Dr. Roach sent CIGNA a letter to Taylor on June 14, 2005 explaining that Plaintiff could only work for 30 minutes at a time and not for more than two hours total in a day because based upon his treating and observing Plaintiff, he remained unable to do sedentary work because of his daily need for narcotic pain medication, need to lie down ad lib, and limited ability to sit (CLICNY843). For CIGNA's argument – that Plaintiff's medical condition has improved to allow him to resume his regular occupation - to make sense, Plaintiff would have to be allowed to lie down at work for the majority of the day. CIGNA knows that no "position of the same general character as the insured's previous job," allows for a person to lie down especially for the majority of the day. *Dawes v. First Unum*, 851 F.Supp. 118, 122 (S.D.N.Y. 1994); *Kinstler v. First Reliance Standard,* 181 F.3d 243, 252-53 (2d Cir. 1999). Thus, CIGNA's argument shows that its failure to evaluate Plaintiff's ability to work by comparing the DOT physical demands for sedentary work to the functional assessments of Drs. Alexiades and Roach and the FCE test data was not merely due to a failure to follow its own procedures, but rather, was the result of its bad faith.

Regardless of whether CIGNA's decision to terminate Plaintiff's benefits was the result of negligence or bad faith, the unassailable fact is that Ms. Bharadwaj admitted that according to the DOT standards the FCE showed that Plaintiff could not do sedentary work. **Ms. Bharadwaj**

**admitted that if the DOT required the ability to sit for between 2.5 and 5.5 hours during an 8 hour work day, then the FCE would not support Plaintiff's ability to do sedentary work (Tr. 55-56).  Additionally, Ms. Bharadwaj testified that if the DOT required sitting for more than 5.5 hours a day for sedentary work, then the FCE would not support Plaintiff's ability to do sedentary work (Tr. 56).**  As noted above, and in Plaintiff's moving papers, the case law unanimously holds that the DOT requires the ability to sit for at least 6 hours a day to do sedentary work.  Because Bharadwaj admitted that Plaintiff could not do his regular occupation if the DOT required the ability to sit for more than 2.5 hours a day, Plaintiff's summary judgment motion should be granted and CIGNA's summary judgment motion should be denied.

## IV.    THE COURT'S REVIEW SHOULD INCLUDE CIGNA'S DEPOSITION

Recognizing that the deposition testimony of Medha Bharadwaj would be devastating to its case, CIGNA argued that Plaintiff is not entitled to submit additional documentation outside the claim file that it produced as the administrative record, but nonetheless admitted that the case law allows for such upon a showing of good cause (Def. br. p.10).  However, the deposition testimony of a plan administrator is precisely the type of evidence that gets added to the record, as evidenced by the Second Circuit's decision in *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir.1995).

In *Miller,* 72 F.3d at 1072, the Second Circuit relied upon the deposition testimony of the in affirming the district court's conclusion that the administrative decision was arbitrary and capricious because the trustees had failed to consider the factors relevant to the claim:

First, as Judge Bartels found, the nursing notes could not have been evidence in favor of the Fund's decision since the Trustees at best gleaned no information from them and at worst did not understand them. In reviewing the denial of Potok's claim, the subcommittee did not actually examine the nursing notes; rather, it relied on the summary provided by Byrne. As Byrne's deposition indicates, however, he found no evidence in the notes to justify the Fund's ultimate denial of the claim. While Byrne first stated that the notes supported the Fund's conclusion in part, Byrne later testified that he did not "really" reach any conclusions or obtain any information on the basis of the nursing notes, which at best he "understood somewhat" or could not understand at all.

Applying the Second Circuit's reasoning to the facts here show that the deposition testimony of the plan administrator should also be considered. The FCE could not have been evidence in favor of CIGNA's decision because Bharadwaj's testimony shows that CIGNA at best gleaned no information from the testing and in fact did not understand the information (Tr. 50-52, 54-55, 63-70). Bharadwaj's testimony reveals that CIGNA did not actually examine the 23 pages of FCE test results; rather, it relied on the summary conclusion of Ms. Genovese, which was contradicted by all of the FCE test data and her own observations. Bharadwaj initially stated that everything in the 24 page FCE report supported CIGNA's decision to terminate Plaintiff's LTD benefits (Tr. 68), but then she subsequently testified that she did not reach any conclusions or obtain any information on the basis of the test data, and could not identify a single test finding that showed Plaintiff could do sedentary work (Tr. 63-70, 99), which shows that she could not understand the FCE at all despite her testimony that she used her independent judgment to evaluate the validity of the physical therapist's conclusion (Tr. 40, 43, 44, 48, 51, 54, 64, 79, 80).

As explained by the court in *Nagele v. Electronic Data Systems Corp.,* 193 F.R.D. 94, 103 (W.D.N.Y. 2000):

[I]n *Miller,* the court approved, and relied upon, pretrial discovery in an ERISA case challenging the denial of benefits pursuant to a plan under the arbitrary and capricious

21

standard to assist the court in evaluating (i) the exact nature of information considered by the fiduciary in making its decision, (ii) whether the fiduciary was competent to evaluate the information in the administrative record, (iii) how the fiduciary reached its decision, and (iv) whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a "fair and full review" of the claim.

Those are the exact areas of inquiry that were the subject of the Bharadwaj deposition.  For example, Bharadwaj was asked about her education and work background to see whether she was competent to evaluate the medical and vocational evidence in the record; what information she reviewed; whether she used her independent judgment in reaching her conclusions; and whether she sought technical assistance to understand vocational data and issues.

"The Second Circuit has found "good cause" to exist where there was a demonstrated conflict of interest and the procedures employed in arriving at the claim determination were flawed."  *Reittinger v. Verizon Communications Inc.,* 2006 WL 3327676 at *2 (N.D.N.Y. Nov. 15, 2006)(citing *Locher v. Unum Life Ins. Co. of Am.,* 389 F.3d 288, 295 (2d Cir.2004)(holding that "Good cause" exists, among other instances, where there was a "conflict of interest" in the administrative reviewing body (in that the body was both the claims reviewer and the claims payor-which is true here), along with some other procedural irregularity or deficiency).  While *Locher,* 389 F.3d at 296, held that a conflicted administrator does not *per se* constitute good cause, the Second Circuit did not preclude finding good cause based solely on being conflicted. Good cause may exist even where the administrator is not conflicted by determining benefit eligibility and paying the benefit.  *Keiser v. First Unum,* 2005 WL 1349856 at *11-12 (S.D.N.Y. June 8, 2005).

An example of a flawed procedure that provided good cause to admit additional evidence into the record is discussed in *Lijoj v. Continental Casualty,* 2006 WL 322229 at *10 (E.D.N.Y.

Fe, 13, 2006).  In *Lijoj,* 2006 WL 322229 at *10,* the insurance company was unable to identify procedures for handling and evaluating claims, such as how to assess conflicting medical testimony, and what basis existed for the insurer to credit its own FCE, while finding the claimant's assessment to be lacking in objective medical findings.  The same is true here. CIGNA admitted that Dr. Roach's reports show that Plaintiff cannot do sedentary work, but claimed that Dr. Weiss rejected Dr. Roach's opinion for lack of objective physical findings (Def. br. p. 8).  Weiss failed to explain why Dr. Alexiades' and Dr. Roach's clinical findings of positive straight leg raises, numbness associated with back pain, weakness on walking on toes, back pain radiating down the leg, quadriceps weakness, and decreased patellar reflex sufficed (CLICNY684-697).[13]  Moreover, CIGNA failed to identify what objective findings supported Dr. Weiss' opinion or why Weiss' opinion was credited over Dr. Roach's.[14]

Just as was the case in *Lijoj*, weighing and crediting conflicting and objective medical findings is exactly what Bharadwaj testified about (Tr. 31-32, 57, 82, 89-91, 95), and there is good cause for its admission.  In *Troy v. Unum Life Ins. Co.*, 2006 WL 846355 at *10 (S.D.N.Y. Mar. 31, 2006), Senior District Judge Haight ruled that "Plaintiff's proffer of [a] deposition is relevant to the Court's evaluation of defendant's determination and to the credibility of

---

13  Weiss and CIGNA also failed to explain how Plaintiff could work because of the side effects of his medication. On August 24, 2006, Dr. Roach concluded that Plaintiff continued to be totally disabled from his spinal stenosis, and required large doses of narcotics (CLICNY646, Answer ¶ 153 or 155).  Plaintiff pointed out that the side effects of his medication were so severe that he lacked the ability to concentrate well enough to perform his work tasks (CLICNY641-645).  A termination or denial of benefits is arbitrary and capricious if the insurer ignores the effects of the medication that the plaintiff takes on a daily basis due to the condition.  *Adams v. Prudential Ins. Co.*, 280 F.Supp.2d 731, 740 (N.D.Ohio 2003)(citing *Godfrey v. BellSouth*, 89 F.3d 755, 758-59 (11th Cir. 1996)(affirming denial of benefits was arbitrary and capricious); *Dirnberger v. Unum*, 246 F.Supp.2d 927 (W.D.Tenn. 2002); *Alexander v. Winthrop, Stimson, Putnam and Roberts LTD Coverage*, 497 F.Supp.2d 429, 440 (E.D.N.Y. 2007).
14  Dr. Weiss failed to explain what objective physical findings supported his conclusion that Plaintiff's condition improved so he could perform sedentary work (CLICNY634).  Dr. Weiss also failed to explain (a) what objective physical findings that supported CIGNA's prior opinion that Plaintiff was disabled no longer existed, and (b) why Dr. Roach's objective physical findings that Plaintiff had back pain radiating down the leg, quadriceps weakness, decreased patellar reflex, and positive straight leg raises, failed to support his conclusion that Plaintiff was only

competing factual claims." Here, Bharadwaj's deposition is just as relevant to the Court's evaluation of CIGNA's determination and to the credibility of competing factual claims. *Miller, Nagele, Rettinger, Locher, Lijoj, and Troy* all warrant the Court's review of the Bharadwaj deposition.

### V.    CIGNA APPLIED THE WRONG BURDEN OF PROOF

Under the LTD Plan and Policy, Plaintiff is disabled if he is "unable to perform all the material duties of his regular occupation (Plaintiff's 56.1 Statement Exhibit A, p.13; CLICNY593). CIGNA admitted that whether or not Plaintiff is disabled is subject to *de novo* review (Def. br. p. 1). CIGNA admitted that under *de novo* review, the issue is whether there is a preponderance of evidence showing that Plaintiff is disabled (Def. br. p. 11). However, CIGNA's moving papers show that it did not bother to determine if a preponderance of evidence supported Plaintiff's disability.

CIGNA conceded that it terminated Plaintiff's LTD benefits merely because substantial evidence supported its decision (Def. br. p. 1). In the very next paragraph after admitting that the issue is whether a preponderance of evidence showed Plaintiff was disabled, CIGNA admitted that its decision that Plaintiff no longer "was disabled was based on substantial evidence in the Administrative Record" (Def. br. pp. 11, 14). The question is not whether substantial evidence arguably supported CIGNA's decision, but rather, the issue is whether a preponderance of the evidence supported it. Whether or not substantial evidence supports a decision is the burden of proof that applies when the claims administrator has discretionary authority so an arbitrary and capricious standard of review applies. *Demirovic v. Building*

---

capable of sitting for less than 2.5 hours a day (CLICNY631-634).

*Service 32 B-J Pension Fund,* 467 F.3d 208, 212 (2d Cir. 2006).  That is precisely what the court

told CIGNA in *Rappa v. Connecticut General Life Ins. Co*., 2007 WL 4373949, *7 (E.D.N.Y.

Dec 11, 2007):

> The Second Circuit has elaborated that "[w]here the plan reserves such
> discretionary authority, denials are subject to the more deferential arbitrary
> and capricious standard, and may be overturned only if the decision is
> without reason, unsupported by substantial evidence or erroneous as a matter
> of law.

Thus, CIGNA's papers undeniably show that it erroneously imposed a higher burden of proof

upon Plaintiff than the LTD Plan and policy allowed.

Notwithstanding the above, CIGNA's papers show that as a substantive matter, even if

CIGNA only needed to show that its decision was supported by substantial evidence, it failed to

do so.  As Plaintiff's moving papers demonstrated, and CIGNA's papers show, CIGNA based its

decision to terminate Plaintiff's LTD benefits on the opinion of Ms. Genovese that Plaintiff

could do sedentary work.  However, Plaintiff's moving papers showed that Ms. Genovese's

conclusion was inconsistent and unsupported by her own FCE test data.  As Plaintiff's moving

papers demonstrated, and CIGNA's papers show, CIGNA stated that it based its decision to

terminate Plaintiff's LTD benefits on the DOT's standards, yet CIGNA ignored the DOT

standards.  As Plaintiff's moving papers demonstrated, and CIGNA's papers show, CIGNA

claimed that Plaintiff could resume his sedentary occupation, but failed to identify any medical

evidence that showed Plaintiff's medical condition had improved.

**<u>Conclusion</u>**

For the reasons set forth above, Plaintiff's motion for summary judgment should be granted in its entirety, and defendant's summary judgment motion should be denied in its entirety.

Dated:  Jericho, NY
        August 8, 2008

                                        **RESPECTFULLY SUBMITTED,**
                                        **LAW OFFICES OF JEFFREY DELOTT**
                                        Attorneys for Plaintiff


                              By:      _____
                                       Jeffrey Delott, Esq. (JD8688)

                                        366 North Broadway
                                        Suite 410
                                        Jericho, NY  11753
                                        (516) 939-2999

26