UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

STEVEN ALFANO,

                Plaintiff,

      -against-

CIGNA LIFE INSURANCE COMPANY OF
NEW YORK, et al.,

                Defendants.

-------------------------------------------------------------x



07 Civ. 9661 (GEL)

**OPINION AND ORDER**

Jeffrey Delott, Law Offices of Jeffrey Delott,
Jericho, New York, for plaintiff.

Fred N. Knopf, Emily A. Hayes (of Counsel),
Wilson, Elser, Moskowitz, Edelman & Dicker LLP,
White Plains, New York, for defendant CIGNA Life
Insurance Company of New York.

GERARD E. LYNCH, District Judge:

      Plaintiff Steven Alfano commenced this action against defendant CIGNA Life Insurance

Company of New York ("CIGNA"), challenging the termination of his long-term disability

benefits under Section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974

("ERISA"), codified at 29 U.S.C. § 1132(a)(1)(B).  In a January 30, 2009, Opinion and Order,

this Court granted plaintiff's motion for summary judgment and ordered the retroactive

reinstatement and continuation of his benefits on the ground that there was no sound basis in the

record to support CIGNA's finding that plaintiff's back condition – initially found to be

disabling with respect to his regular occupation – had in fact improved.   See Alfano v. CIGNA

Life Ins. Co. of New York, No. 07 Civ. 9661, 2009 WL 222351, at *23 (S.D.N.Y. Jan. 30, 2009).

Plaintiff now moves for attorney's fees, costs, and prejudgment interest. The motion will be granted.

## I.    Attorney's Fees

The decision whether to award attorney's fees in an ERISA action is a matter squarely within a court's discretion. See 29 U.S.C. § 1132(g)(1). In Chambless v. Masters, Mates & Pilots Pension Plan, 815 F.2d 869 (2d Cir. 1987), the Second Circuit set forth the factors that should be considered in exercising that discretion. These factors include: (1) defendant's culpability or bad faith, (2) defendant's ability to withstand payment, (3) the extent to which an award would deter others from similar conduct, (4) the relative merits of the parties' positions, and (5) whether the action confers a common benefit on a class. See id. at 871. Applying these factors, an award of attorney's fees in this matter is appropriate.

Although a court should consider a defendant's culpability or bad faith in determining whether to award attorney's fees in an ERISA action, bad faith is not a prerequisite, as a court can find a defendant culpable without necessarily concluding that the defendant acted in bad faith. See Slupinski v. First UNUM Life Ins. Co., 554 F.3d 38, 48 (2d Cir. 2009); Paese v. Hartford Life Accident Ins. Co., 449 F.3d 435, 450-51 (2d Cir. 2006); Locher v. UNUM Life Ins. Co. of Am., 389 F.3d 288, 298-99 (2d Cir. 2004). For purposes of this inquiry, a defendant is culpable where it has "violated ERISA, thereby depriving plaintiff[] of [his] rights under a pension plan and violating a Congressional mandate." Salovaara v. Eckert, 222 F.3d 19, 28 (2d Cir. 2000); see also Rappa v. Connecticut Gen. Life Ins. Co., No. 03 Civ. 5286, 2005 WL 6244543, at *1 (E.D.N.Y. June 28, 2005) ("[A] defendant's culpability can be demonstrated by the violation of ERISA and the attendant deprivation of a plaintiff's rights under a pension

2

plan."). CIGNA may not have acted outrageously or in subjective bad faith, but the Court's

finding that plaintiff was clearly entitled to long-term disability benefits, and that there was no

sound basis for CIGNA's termination of such benefits, renders CIGNA culpable. While this

factor might weigh more heavily in plaintiff's favor had CIGNA acted in bad faith, it

nevertheless counsels in favor of an award of attorney's fees.

CIGNA, with net income of $292 million and revenues of $19.1 billion in 2008, clearly

has the ability to satisfy an award of attorney's fees. However, the Second Circuit has held that a

defendant's ability to pay does not weigh heavily in favor of such an award. See Lauder v. First

UNUM Life Ins. Co., 284 F.3d 375, 383 (2d Cir. 2002). Thus, while a defendant's *inability* to

pay an award weighs in its favor, its *ability* to pay generally is neutral in effect. See id. For

present purposes, then, it is sufficient to note that this factor does not weigh in CIGNA's favor.

The third factor – whether an award of attorney's fees would deter others like CIGNA

from engaging in similar conduct – weighs heavily in favor of the plaintiff. It is undisputed that

the costs of litigating a denial of benefits under ERISA can be high, even when the benefits

themselves may not be generous. Not only must losing plaintiffs pay their own fees, but all

plaintiffs assume the risk of an award of fees against them. See 29 U.S.C. § 1132(g)(1) ("[T]he

court in its discretion may allow a reasonable attorney's fee and costs of action to *either* party.")

(emphasis added). Forcing plaintiffs to pay their own fees when they win would likely deter

many from pursuing their rights. Cf. Slupinski, 554 F.3d at 47 ("Congress intended the fee

provisions of ERISA to encourage beneficiaries to enforce their statutory rights."). Moreover, a

grudging approach to fee awards would provide an incentive for potential defendants to deny

even meritorious claims. Consequently, if otherwise justified, an award of attorney's fees serves

3

to level the playing field, deterring unscrupulous or careless plan administrators, and – at a minimum – reducing any incentives insurance companies may have to wrongfully deny claimants benefits. While the Court gives no particular credence to plaintiff's reliance on media reports (P. Mem. 1, 5-6) that neither bear directly on this case nor provide any basis for believing that CIGNA itself is a persistent offender, these reports – together with relevant case law – are reminders that abuse exists and needs to be deterred.

An assessment of the relative merits of the parties' positions – the fourth factor – also counsels in favor of granting plaintiff's petition for an award of fees. As previously discussed, plaintiff established a clear entitlement to long-term disability benefits under the Plan. Although CIGNA contends that certain of its arguments were meritorious (D. Mem 2-3, 5), these arguments pertained largely to collateral issues. The fact that CIGNA correctly recited the applicable standard of review or took a position on some issue that was reasonable or even right is less important than the Court's resolution of the ultimate issue presented. The bottom line determination in this case is that CIGNA attempted to defend a denial of benefits that, in the end, simply was not justified.

With respect to the fifth factor, despite plaintiff's argument that "a determination finding fault with an insurer's conduct in an individual action can be considered to confer a common benefit on a group of plan participants in that the insurer will be deterred from terminating benefits without reason" (P. Mem. 6 (quotation omitted)), this action confers no common benefit on a class. Plaintiff's case did not challenge or alter any across-the-board rule or practice, but instead dealt only with the facts of his own situation. Thus, other than the general deterrent effect already counted in plaintiff's favor in connection with the third factor, this case confers no

4

common benefit. Accordingly, this factor weighs in CIGNA's favor.

Viewed in toto, then, only the fifth factor favors CIGNA, and – as the Second Circuit has made clear – the "failure to satisfy [this] Chambless factor does not preclude an award of attorneys' fees." Locher, 389 F.3d at 299. While all of the other factors may not overwhelmingly favor the plaintiff, the merits of plaintiff's claims and the need for deterrence lead to the conclusion that an award of fees is, in fact, appropriate.

Having determined that plaintiff is entitled to an award of fees, the only remaining issue is the proper amount of that award. In an ERISA case, such an amount is ordinarily determined by use of the lodestar method. See Seitzman v. Sun Life Ass. Co. of Canada, Inc., 311 F.3d 477, 487 (2d Cir. 2002). Under this method, the fee award is generated by multiplying a reasonable hourly rate by a reasonable number of hours expended. See Central States Southeast & Southwest Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 249 (2d Cir. 2007). Applying this method, plaintiff contends that he is entitled to reimbursement of $122,490.00 in attorney's fees, which amount constitutes payment for 272.20 hours of work by a single attorney at an hourly rate of $450.00. (P. Mem. 7.) CIGNA, however, contests the rate at which plaintiff contends his counsel should be compensated, as well as the reasonableness of the number of hours counsel expended during the course of this litigation. (D. Mem. 6-14.)

A.    Hourly Rate

It is well-established that "district courts have the discretion to independently review and assess the reasonableness of [an attorney's] claimed rates." Anderson v. Sotheby's, Inc., No. 04 Civ. 8180, 2006 WL 2637535, at *1 (S.D.N.Y. Sept. 11, 2006) (quotation omitted). In doing so, a "district court must ascertain whether 'the requested rates are in line with those prevailing in

5

the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989) (emphasis omitted), quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984). Contrary to CIGNA's arguments, an hourly rate of $450.00 per hour for an attorney with plaintiff's counsel's expertise is entirely reasonable. Plaintiff has cited case law upholding fee awards calculated at this rate (see P. Mem. 7-9), and the mere fact that these cases arise primarily from jurisdictions in California does not, as CIGNA contends (D. Mem. 7), automatically render them irrelevant. To the contrary, New York – like California – is an expensive market for attorney's fees, and fees deemed reasonable in California may therefore serve as a useful point of reference in determining the reasonableness of fees in New York. Moreover, case law from New York adopts similar rates under analogous circumstances, see Curry v. American Int'l Group, Inc. Plan No. 502, 579 F. Supp. 2d 424, 426-27 (S.D.N.Y. 2008), thus bolstering the reasonableness of plaintiff's requested hourly rate.

Any claim by CIGNA that plaintiff's counsel has not adequately demonstrated his expertise because he has not provided a list of representative cases, or any indication as to whether those cases were successful (D. Mem. 6-7), is wholly devoid of merit. Plaintiff's counsel has submitted sworn testimony indicating that he has twenty-five years of litigation experience – several of which were spent with a nationally-known leading plaintiff's firm in the field – and that he has handled hundreds, if not thousands, of disability cases. (Delott Aff. ¶¶ 4, 8.) Moreover, as indicated by his conduct of this case, he is not only highly competent, but also successful. CIGNA has cited no case law or other authority requiring any further showing. Thus, on these facts, and in light of plaintiff's counsel's possession of even more experience than

6

the twenty years possessed by the attorney awarded $450 per hour in King v. CIGNA Corp., No. 06 Civ. 7025, 2007 WL 4365504, at *3 (N.D. Cal. Dec. 13, 2007), and the eighteen years possessed by the attorney awarded $400 per hour in Curry v. American International Group, Inc. Plan No. 502, 579 F. Supp. 2d at 426-27, plaintiff will be compensated for attorney's fees at the reasonable rate of $450 per hour.

B. Hours Expended

Not only do district courts have the discretion to assess the reasonableness of an attorney's claimed rates, but they also have the discretion to assess the reasonableness of the hours worked. See Anderson, 2006 WL 2637535, at *1. In exercising this discretion, however, the Court is mindful that any attorney's hours can be second-guessed and, if scrutinized, questionable time records can nearly always be identified. CIGNA argues that the number of hours billed for many of the tasks listed in counsel's contemporaneous time records are "unnecessary and excessive." (D. Mem. 1, 8-14.) While the majority of these time records are entirely reasonable, there are a limited number of instances in which the time counsel expended was either unnecessary or excessive.

Counsel's records reflect that he spent 4.1 hours on various tasks related to default judgment.[1] This expenditure of time was unnecessary, as CIGNA had not been served at the time counsel performed the work, and it is highly unlikely that a major institutional defendant like CIGNA would simply default, or that a default judgment would be granted against it if it missed a deadline but subsequently requested additional time to satisfy the underlying procedural

---

[1] Although CIGNA asserts that plaintiff's counsel spent 3.8 hours on default judgment-related tasks, this Court's review of the relevant time records reveals that counsel, in fact, spent 4.1 hours on such tasks.

7

or substantive requirement.  Accordingly, the time spent on these tasks will be disregarded.

CIGNA's remaining arguments categorically attacking expenditures of time must be rejected, as any contention that plaintiff should be precluded from recovering fees for research relating to motions that ultimately were not made is baseless.  A competent attorney will explore various theories and lines of argument, some of which may entail motions of one kind or another, but not all of which will – in the end – prove to be advisable courses of action.  So long as the lines of inquiry pursued by plaintiff's counsel were ones a reasonable attorney would have pursued, the time spent is compensable.  CIGNA does not argue that the issues plaintiff's counsel researched were matters that a reasonably competent attorney should have known would *not* lead to productive motions.  Instead, it simply cites research on issues that ultimately were not raised, either because plaintiff's counsel determined that the arguments were without merit or because the development of other events rendered the arguments unnecessary.  This is an insufficient basis for categorically rejecting these expenditures of time.  Accordingly, apart from CIGNA's arguments concerning the time spent on default judgment, the contention that plaintiff's counsel expended unnecessary amounts of time is rejected.

In general, the amount of time plaintiff's counsel spent on various tasks associated with this litigation is well within the bounds of reasonableness.  There are a few instances, however, in which the expenditure of time is excessive and ought to be adjusted downward.  In particular, plaintiff's counsel claims that he spent 25.2 hours on plaintiff's 56.1 statement.  While this is not itself an unreasonable amount of time to spend on such a statement, it is unreasonable under the circumstances of this case because plaintiff's 56.1 statement was largely duplicative of the complaint and thus should have been fairly easy to prepare.  Plaintiff is correct in his assertion

8

that, unlike the complaint, the 56.1 statement required record citations. However, plaintiff's counsel billed a significant number of hours for his review of the record and therefore should have been sufficiently familiar with the location in the record of the facts cited in the 56.1 statement to be able to supply the references more efficiently. Accordingly, the expenditure of time on the 56.1 statement will be reduced by 12.6 hours.

Plaintiff also seeks reimbursement for counsel's work in connection with his summary judgment motion. Although the 22.9 hours counsel spent drafting the summary judgment motion are entirely reasonable given the length and complexity of the brief,[2] the hours spent on research and review of the record are somewhat excessive and will be reduced. Thus, plaintiff will be credited 22.9 hours for the drafting of the motion for summary judgment, but the approximately 30 hours spent on research related to that motion will be reduced by 15 hours, and the approximately 35.5 hours spent reviewing the record will be reduced by 5.3 hours. While CIGNA argues that counsel's time reviewing the record should be reduced by an even greater amount, counsel inherited this case from the lawyers who handled it at the administrative level (Delott Aff. ¶ 2) and thus had a legitimate need to familiarize himself with the very extensive record. In light of this fact, CIGNA's request for further reductions in the number of hours

---

[2] CIGNA cites Rappa v. Connecticut General Life Insurance Company in support of its argument that even the number of hours counsel spent drafting the summary judgment motion was unreasonable. (D. Mem. 11.) In Rappa, the court reduced the number of hours counsel spent drafting a motion for summary judgment from 32 to 20. See Rappa, 2005 WL 6244543, at *4. That case, however, provides no support for CIGNA's position that the amount of time counsel spent drafting the summary judgment motion in this case was unreasonable. The 22.9 hours that plaintiff's counsel spent drafting the motion fall well below the expenditure that the Rappa court deemed unreasonable. Moreover, crediting CIGNA's argument would require a comparison of the quality and size of two briefs in two different cases – an assessment this Court is in no position to make.

expended on this task is denied.

Based on the foregoing analysis, the 272.20 hours expended by counsel on this matter will be reduced to 235.20 hours.  Under the lodestar method, which multiplies this reasonable number of hours expended by the reasonable hourly rate of $450.00, plaintiff is entitled to $105,840.00 in attorney's fees.

**II.      Costs**

Plaintiff also seeks reimbursement of $1,576.76 in litigation costs, representing $500.00 in service fees invoiced by Certified Lawyers, $17.50 in postage fees, $61.51 in copying costs related to the motion for summary judgment, $350.00 in filing fees, $609.50 in deposition costs, and $38.25 in transportation costs.  In light of plaintiff's documentation of these costs, and CIGNA's failure to object to plaintiff's accounting, plaintiff's motion for $1,576.76 in costs is granted.

**III.      Prejudgment Interest**

Plaintiff argues that an award of prejudgment interest is necessary to fully compensate him for his actual damages, as CIGNA has had access to, and benefitted from, funds to which he was entitled. (P. Mem. 10.)  Plaintiff further contends that this Court should award interest at the rate of 9%. (Id.)  Although CIGNA does not seriously attempt to oppose an award of prejudgment interest, it does argue that awarding interest at a rate of 9% would be tantamount to imposing an otherwise impermissible penalty on it. (D. Mem. 14-16.)  It therefore requests that the Court adopt the Treasury rate as the applicable prejudgment interest rate. (Id. 16.)

"In a suit to enforce a right under ERISA, the question of whether or not to award prejudgment interest is ordinarily left to the discretion of the district court." Jones v. UNUM

Life Ins. Co. of Am., 223 F.3d 130, 139 (2d Cir. 2000).  In exercising this discretion, a court must consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court."  Id.

In making this assessment, the Court is mindful that "[l]ike an award of attorney's fees for a successful ERISA claim by an employee benefit plan participant, 'prejudgment interest is an element of [the plaintiff's] complete compensation.'"  Slupinski, 554 F.3d at 54 (alteration in original), quoting Osterneck v. Ernst & Whinney, 489 U.S. 169, 175 (1989) (quotation omitted). In addition, prejudgment interest may be required to prevent a defendant from enjoying a windfall as a result of its wrongdoing.  See Slupinski, 554 F.3d at 54.

In light of the foregoing, plaintiff is clearly entitled to prejudgment interest.  For more than three years, plaintiff has lacked access to funds to which he was entitled.  This Court will not ignore the time value of money, and the benefit that plaintiff could have derived from those funds had the funds been issued at the appropriate time and invested during the pendency of his proceedings – administrative, judicial, or otherwise.  To do so would be to inadequately compensate plaintiff.  See Alexander v. Winthrop, Stimson, Putnam & Roberts Long Term Disability Coverage, 497 F. Supp. 2d 429, 444 (E.D.N.Y. 2007) ("There is no indication that [an award of prejudgment interest] will result in over-compensation.  The actual damages to plaintiff exceed the value of the benefits wrongfully denied by defendants, since the denial has deprived her of the investment value of those benefits over a period of several years. . . .  Equity thus dictates that plaintiff be repaid with interest.").

11

The second factor, considerations of fairness and the relative equities of the award, also weighs in plaintiff's favor, as CIGNA had no sound basis for concluding that plaintiff's condition – which it once recognized as sufficiently disabling to give rise to long-term disability benefits – had improved. CIGNA's baseless conclusion that its termination of plaintiff's benefits was justified permitted it the unfair use of money that should have been paid to plaintiff long ago.

Finally, because "private actions by beneficiaries seeking in good faith to secure their rights under employee benefit plans are important mechanisms for furthering ERISA's remedial purpose," Salovaara, 222 F.3d at 28, quoting Meredith v. Navistar Int'l Transp. Co., 935 F.2d 124, 129 (7th Cir. 1991), awarding prejudgment interest where a defendant has improperly withheld payment from a plaintiff for a significant period of time encourages plaintiffs to bring such actions by ensuring that they will be made whole should they succeed on their claims.

Because the factors bearing on the propriety of an award of prejudgment interest all weigh in his favor, plaintiff's request for interest will be granted, and the Court need only decide the applicable interest rate. Consistent with plaintiff's request, numerous courts have awarded prejudgment interest at a rate of 9%. See, e.g., Morgenthaler v. First Unum Life Ins. Co., No. 03 Civ. 5941, 2006 WL 2463656, at *4 (S.D.N.Y. Aug. 22, 2006); In re Livent, Inc., 360 F. Supp. 2d 568, 572-73 (S.D.N.Y. 2005); Sheehan v. Met. Life Ins. Co., No. 01 Civ. 9182, 2005 WL 1020874, at *2-3 (S.D.N.Y. Apr. 29, 2005). Moreover, while there is no applicable federal statute establishing a prejudgment interest rate, New York has adopted a statutory prejudgment interest rate of 9%, N.Y. CPLR § 5004, thus making an objective legislative judgment that 9% is an appropriate rate. Although CIGNA argues that the Treasury rate constitutes a more

12

appropriate rate (D. Mem. 16), there is no reason to think that that rate more accurately captures the time value of money in New York, or the true loss to plaintiff, particularly given the New York State Legislature's determination otherwise.  Accordingly, plaintiff's request for prejudgment interest at a rate of 9% is granted.

While prejudgment interest ordinarily accrues from the date on which a fiduciary denies a participant benefits, see Cottrill v. Sparrow, Johnson & Ursillo, Inc., 100 F.3d 220, 223-24 (1st Cir. 1996), this rule should be modified in the instant case, as CIGNA gave plaintiff notice of the termination of his benefits on September 28, 2005, but continued paying such benefits through October 27, 2005.  In light of this fact, plaintiff will be awarded prejudgment interest at the rate of 9% for the period between October 27, 2005, and the date of entry of judgment in this case.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for attorney's fees, costs, and prejudgment interest is granted.  Plaintiff shall be awarded prejudgment interest at the rate of 9% for the period between October 27, 2005, and January 30, 2009, the date of entry of judgment in this case, and judgment shall be entered for plaintiff in the amount of $105,840.00 for attorney's fees and $1,576.76 for costs, for a total of $107,416.76.

SO ORDERED.

Dated: New York, New York
       April 2, 2009

GERARD E. LYNCH
United States District Judge

13